THEANE EVANGELIS, SBN 243570
tevangelis@gibsondunn.com
DHANANJAY S. MANTHRIPRAGADA, SBN 254433
dmanthripragada@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA 90071-3197
Telephone: 213.229.7000
Facsimile: 213.229.7520

MICHELE L. MARYOTT, SBN 191993
mmaryott@gibsondunn.com
SHAUN A. MATHUR, SBN 311029
smathur@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
3161 Michelson Drive
Irvine, CA 92612-4412
Telephone: 949.451.3800
Facsimile: 949.451.4220

Attorneys for Plaintiff Postmates Inc.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

Postmates, Inc.,

Plaintiff,

v.

10,356 Individuals,

Defendants.

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

**DEMAND FOR JURY TRIAL**

Plaintiff Postmates Inc. ("Postmates") files this Complaint to enforce its contractual agreements with independent couriers to resolve disputes through individual arbitration, free from interference by unconstitutional state laws that impermissibly target arbitration contracts for unfavorable treatment. Postmates does not seek damages from Defendants or to discourage independent couriers from pursing legitimate claims against Postmates in individual arbitration. Nor does it seek to evade its obligation to pay arbitration filing fees for properly instituted arbitrations. Rather, Postmates seeks to forestall abusive litigation tactics by certain plaintiffs' attorneys who repeatedly file thousands of arbitration demands at the same time, including on behalf of individuals who are not actually represented by these attorneys or indisputably have no claims; insist that millions of dollars in arbitration filing fees be paid up front; and demand that all arbitrations be administered together and proceed simultaneously—all to use the threat of massive arbitration filing fees as leverage to extract the highest possible payout from corporate defendants. Postmates and independent couriers agreed to resolve all disputes in individual arbitration, and both this de facto class arbitration tactic and newly enacted California Senate Bill 707 ("SB 707")—codified at California Code of Civil Procedure sections 1281.97, 1281.98, and 1281.99—interfere with and undermine the parties' agreement and the Federal Arbitration Act, 9 U.S.C. §§ 1–16 ("FAA").

Accordingly, Postmates requests declaratory and injunctive relief determining that any attempt by Defendants—who are 10,356 purported users of the Postmates platform—to pursue de facto class arbitration against Postmates violates the parties' agreement to resolve disputes in individual arbitration, and that those purported users may not enforce SB 707 against Postmates because it is preempted by the FAA and unconstitutional.

## INTRODUCTION

1. Postmates brings this lawsuit to enforce its contractual agreements with 10,356 individuals to resolve disputes in individual arbitration, free from interference by unconstitutional state laws that impermissibly target arbitration agreements for

unfavorable treatment.

2. Postmates operates an online and mobile app-based platform, through which consumers connect with local merchants and (if consumers request delivery) independent couriers to facilitate the purchase, fulfillment, and (when applicable) local delivery of purchased products from merchants to consumers.

3. Postmates requires each independent courier to execute a contract governing the parties' relationship before the courier may access the Postmates platform and begin receiving delivery opportunities.

4. That contract, known as the Fleet Agreement, is governed by the FAA and includes a Mutual Arbitration Provision that requires couriers who do not opt out of the provision to resolve all disputes with Postmates in *individual* arbitration. The Mutual Arbitration Provision expressly prohibits class, collective, and representative arbitration proceedings.

5. The Supreme Court has recognized that the "traditional individualized arbitration" envisioned by Congress when it enacted the FAA offers parties numerous benefits, "not least the promise of quicker, more informal, and often cheaper resolutions for everyone involved." *Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1621, 1623 (2018). As a result, the Supreme Court has repeatedly emphasized that "private arbitration agreements [must be] enforced according to their terms," *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 344 (2011)—"including terms providing for individualized proceedings," *Epic Sys.*, 138 S. Ct. at 1619.

6. Defendants are 10,356 individuals who allege that they used the Postmates platform to identify delivery opportunities. They contend that they have executed the Fleet Agreement, that their claims fall within the scope of the Mutual Arbitration Provision, and that they have been misclassified as independent contractors rather than employees.

7. Rather than resolve their disputes in individual arbitration as required by the Mutual Arbitration Provision, these individuals initiated, through their purported

counsel at Keller Lenkner LLC, a de facto class arbitration against Postmates by simultaneously filing 10,356 boilerplate arbitration demands with the American Arbitration Association ("AAA") on February 15, 2020 (the "AAA Arbitration").[1]

8. The demands are virtually identical, assert generic claims, and seek identical forms of relief. They provide no individualized information about the work the individuals purportedly performed while using the Postmates platform.

9. Keller Lenkner has insisted—consistent with its prior practice of seeking to arbitrate thousands of individuals' claims against Postmates in a de facto class manner—that all arbitration filing fees be paid up front before any arbitrations may commence, that all arbitrations be administered together, and that all arbitrations proceed at the exact same time.[2] And consistent with Keller Lenkner's demands, the AAA has collectively assessed over $4 million in initial administrative filing fees under its "Group Administrative Filing Fee Schedule" (as opposed to its fee schedule for individual arbitrations), and otherwise has administered the demands collectively.

10. The parties never agreed to arbitrate in this manner, and it is evident that Keller Lenkner's strategy is designed solely to extract a ransom-style settlement regardless of the merits of the underlying demands. Because "arbitration is a matter of contract," *AT&T Techs., Inc. v. Comm's Workers of Am.*, 475 U.S. 643, 648 (1986), the Court should declare that the pending arbitrations may not be conducted in a de facto class manner and enjoin the 10,356 individuals from proceeding with the pending AAA Arbitration.

---

[1] Postmates uses the phrase "de facto class arbitration" to describe Keller Lenkner's scheme because, like class arbitration, Keller Lenkner's scheme sacrifices the principal advantages of traditional individual arbitration, and is not the individual arbitration envisioned by the FAA or the Fleet Agreement.

[2] In fact, Keller Lenkner is attempting to have far more than 10,356 arbitration demands against Postmates administered collectively. This is the fourth time Keller Lenkner has filed hundreds or thousands of virtually identical arbitration demands against Postmates simultaneously, with the apparent expectation that the demands would be administered collectively. Those other simultaneous filings are the subject of other litigation. *See Adams v. Postmates Inc.*, No. 3:19-cv-03042 (N.D. Cal.); *Adams v. Postmates Inc.*, No. 19-17362 (9th Cir.); *McClenon v. Postmates Inc.*, No. 1:19-cv-06415 (N.D. Ill.).

11. The Court also should enjoin the 10,356 individuals from enforcing the newly enacted California Code of Civil Procedure Sections 1281.97, 1281.98, and 1281.99, otherwise known as "SB 707."

12. On February 24, 2020, the AAA assessed initial filing fees against Postmates, and stated that Postmates' "portion of [the] filing fees is due on or before March 16, 2020." The AAA also stated that "these matters are subject to California Code of Civil Procedure [Sections] 1281.97 and 1281.98," and that it would close the cases if Postmates' portion of the filing fees is not received by April 15, 2020.

13. SB 707 provides that a party who drafts an arbitration agreement places itself at risk of severe punishment by courts for failing to pay certain fees, irrespective of the amount of the unpaid fee, the extent of the delay in paying, or the reason for the failure to pay. SB 707 states that a drafting party's failure to pay arbitration fees—either the initial fees or any other fees that come due during arbitration—"within 30 days after the due date" is "in material breach of the arbitration agreement, is in default of the arbitration, and waives its right to compel arbitration." Cal. Code Civ. Proc. § 1281.97(a).

14. SB 707 is preempted by the FAA because it stands as an obstacle to the FAA's objectives by directly targeting and discouraging the drafting of arbitration agreements by engrafting onto arbitration agreements—and no other type of contract—a highly restrictive and onerous definition of material breach, and then punishing that breach by mandating default, sanctions, waiver of arbitration, and even contempt of court without any opportunity to justify the breach or argue its non-materiality.

15. SB 707 also violates the United States and California Constitutions' Contracts Clauses because it substantially impairs the parties' expectations as to what constitutes a material breach, and is neither an appropriate nor reasonable way to achieve a legitimate public purpose. SB 707 is designed to ensure that parties to mandatory arbitration agreements pay their arbitration filing fees. But by its terms, SB 707 is both overinclusive and underinclusive. It is overinclusive because it applies to drafting

parties, like Postmates, that permit non-drafting parties to opt out of arbitration. And it is underinclusive because it applies only to drafting parties, and does not punish non-drafting parties for not paying their arbitration filing fees.

16. The Court should declare that the parties' disputes may not be arbitrated in a de facto class manner, that SB 707 is preempted by the FAA, and that SB 707 is unconstitutional. The Court also should enjoin the AAA Arbitration and enforcement of SB 707 against Postmates.

**THE PARTIES**

17. Plaintiff Postmates is a corporation organized under the laws of the State of Delaware, with its principal office located in San Francisco, California. Postmates operates an online marketplace and mobile platform, through which consumers connect with local merchants and (if consumers request delivery) independent couriers to facilitate the purchase, fulfillment, and (when applicable) local delivery of purchased products from merchants to customers.

18. Defendants are 10,356 individuals who allege that they executed the Fleet Agreement, that their claims fall within the scope of the Mutual Arbitration Provision, and that they used Postmates' platform to identify delivery opportunities and make deliveries in California. All 10,356 individuals are purportedly represented by Keller Lenkner. Details for each of the 10,356 individuals are listed in Exhibit A.

**JURISDICTION AND VENUE**

19. This civil action arises under the United States Constitution, 9 U.S.C. § 1 *et seq.*, and 28 U.S.C. §§ 2201.

20. This Court has subject matter jurisdiction over this action under 28 U.S.C. §§ 1331 and 1367.

21. Declaratory relief is authorized by 28 U.S.C. §§ 2201 and 2202, as well as Federal Rule of Civil Procedure 57.

22. Injunctive relief is authorized by Federal Rule of Civil Procedure 65.

23. Venue is proper in this district under 28 U.S.C. § 1391(b).

24. A preliminary injunction enjoining the 10,356 individuals from pursuing the AAA Arbitration and enforcing SB 707 against Postmates would preserve the status quo and protect Postmates' rights during this proceeding, and a permanent injunction would protect its rights after this proceeding ends.

25. This Court has personal jurisdiction over the 10,356 individuals because they are domiciled in California and/or claim to have used the Postmates platform in California.

## FACTS

### A. Postmates' Platform Connects Consumers, Merchants, And Couriers.

26. Postmates' innovative online marketplace and mobile platform connect consumers and merchants to facilitate the purchase, fulfillment, and (when applicable) local delivery of goods from merchants to customers. When consumers place orders through Postmates' platform, they can decide whether to pick up an order in person or have it locally delivered. If consumers choose delivery, nearby independent couriers receive a notification through the app and can choose whether to accept the consumer's offer and pick up and complete the requested delivery.

27. The service that Postmates provides is access to its app. Postmates is not a delivery company and does not hire delivery persons; it creates technology and operates an online marketplace and mobile platform. Postmates has about 1,200 actual employees. These employees are dedicated to sales, engineering, analytics, strategy, design, support (of consumers, merchants, and couriers who use the platform), and other functions.

### B. Under The Fleet Agreement, Couriers Agree To Resolve Disputes In Individual Arbitration.

28. Anyone can sign up to be a courier, and all new couriers must accept Postmates' Fleet Agreement before they may access the Postmates platform to receive delivery opportunities. The Fleet Agreement governs the relationship between Postmates and independent contractor couriers. It expressly provides that couriers are

independent contractors and contains a conspicuous Mutual Arbitration Provision, which couriers may opt out of if they choose. *See Lee v. Postmates Inc.*, 2018 WL 6605659, at *6 (N.D. Cal. Dec. 17, 2018) (Postmates' Fleet Agreement provides reasonable notice of the Mutual Arbitration Provision).

29. Arbitration is not a mandatory condition of couriers' contractual relationship with Postmates, and therefore couriers may opt out of the Mutual Arbitration Provision by submitting an opt-out notice within thirty days of accepting the Fleet Agreement.

30. Couriers who accept the Fleet Agreement and do not exercise their right to opt out of the Mutual Arbitration Provision agree to resolve any disputes with Postmates in individual arbitration. All-caps text on the first page of the May 2018 and April 2019 Fleet Agreements also provides that "unless [couriers] opt out of arbitration," they must resolve disputes "on an individual basis" through "final and binding arbitration."

31. The "Mutual Arbitration Provision is governed exclusively by the Federal Arbitration Act (9 U.S.C. §§ 1–16)." May 11, 2019 Fleet Agreement § 10A(i).

32. The Mutual Arbitration Provision contains an express Class Action Waiver and Representative Action Waiver. The Class Action Waiver states:

> **CLASS ACTION WAIVER—PLEASE READ**. Postmates and You mutually agree that any and all disputes or claims between the Parties will be resolved in *individual arbitration*. The Parties further agree that by entering into this Agreement, they waive their right to have any dispute or claim brought, heard or arbitrated as a class and/or collective action, or to participate in any class and/or collective action, and an arbitrator shall not have any authority to hear or arbitrate any class and/or collective action ("Class Action Waiver").

*Id.* § 10B(ii).

33. The Mutual Arbitration Provision also contains a delegation clause, which provides that "any dispute relating to the interpretation, applicability, enforceability, or formation" of the Mutual Arbitration Provision must be decided by an arbitrator, not a court. *Id.* § 10A(ii). However, that clause does "not apply to *any dispute* relating to or

arising out of the Class Action Waiver and Representative Action Waiver, which must proceed in a court of competent jurisdiction and cannot be heard or arbitrated by an arbitrator." *Id.*

34. The 10,356 individuals are therefore bound to arbitrate with Postmates on an individual basis.

35. The Mutual Arbitration Provision provides that Postmates and couriers "shall equally share filing fees and other similar and usual administrative costs, as are common to both court and administrative proceedings." *Id.* § 10B(vi).

36. Postmates and couriers have used the arbitration procedures set forth in the Fleet Agreement to resolve numerous disputes, and Postmates is currently engaged in at least 90 arbitrations under the Fleet Agreement.

**C. Keller Lenkner Simultaneously Files Over 5,000 Arbitration Demands.**

37. Keller Lenkner has engaged in a practice of using social media to recruit couriers who are bound by individual arbitration agreements, and then simultaneously filing thousands of arbitration demands, insisting that all arbitration filing fees be paid up front, and demanding that all arbitrations be administered together and proceed at the same time—in the hopes that it can extract a settlement, regardless of the merits of the underlying claims. This tactic gives rise to the parties' dispute.

38. In March 2019, Keller Lenkner wrote to Postmates stating that it "represents more than 3,000" couriers in California and Illinois, and threatening to "proceed with every arbitration simultaneously" unless the parties could "agree on an alternative process for resolving [its] clients' claims." Counsel attached a list of purported clients and two draft arbitration demands—one designed to collectively apply to each purported California client, and a second designed to collectively apply to each purported Illinois client. Counsel also posited that AAA likely would assess "more than $20 million" in "arbitration retainers and filing fees" alone if arbitrations commenced, and insisted that agreeing to "an alternative process" would be desirable because "roughly 500 additional drivers engage [the] firm each week."

39. Postmates would not abandon its Mutual Arbitration Provision, so in April and May 2019, Keller Lenkner simultaneously filed demands on behalf of 5,693 individuals.

40. Postmates expressed that it stands by its arbitration agreement, and that it is ready and willing to arbitrate individual claims brought under the terms of each individual claimant's Fleet Agreement and AAA's Rules. But because Keller Lenkner sought to commence arbitrations in a manner other than the individual arbitration required under the Mutual Arbitration Provision, Postmates explained that no arbitration proceedings had actually begun. Postmates also requested that AAA assess administrative filing fees as cases are actually administered and prosecuted, rather than up front regardless of when the cases could actually proceed. AAA rejected Postmates' argument and request, and instead assessed over $11 million in filing fees against Postmates, due before even a single arbitration could proceed.

41. In June 2019, Keller Lenkner filed a Petition for an Order Compelling Arbitration and a Motion to Compel Arbitration in the Northern District of California, seeking an order requiring Postmates to "pay all arbitration filing fees" associated with the 5,257 purported demands it had filed on behalf of California couriers. Petition for Order Compelling Arbitration, filed in *Adams v. Postmates Inc.*, No. 3:19-cv-03042, Dkt. 1 (N.D. Cal. June 3, 2019). Postmates argued that Keller Lenkner improperly sought to compel de facto class arbitration in violation of the Mutual Arbitration Provision's Class Action Waiver, and filed a cross-motion to compel truly individual arbitrations. Cross-Motion to Compel Arbitration and Stay Proceedings, filed in *Adams v. Postmates Inc.*, No. 3:19-cv-03042, Dkt. 228 (N.D. Cal. June 27, 2019).

42. While *Adams* was pending, Keller Lenkner filed a Petition to Compel Arbitration in the Northern District of Illinois, asserting that Postmates had failed to pay arbitration filing fees and seeking an order requiring Postmates to "pay all arbitration filing fees" associated with the 200 purported demands it had filed on behalf of Illinois couriers. Petition to Compel Arbitration, filed in *McClenon v. Postmates Inc.*, No. 1:19-

cv-06415, Dkt. 1 (N.D. Ill. Sept. 26, 2019). Postmates again argued that Keller Lenkner improperly sought to compel de facto class arbitration, and filed a cross-motion to compel individual arbitration as required by the Mutual Arbitration Provision and Class Action Waiver. Cross-Motion to Compel Arbitration, filed in *McClenon v. Postmates Inc.*, No. 1:19-cv-06415, Dkt. 18 (N.D. Ill. Nov. 29, 2019).

43. In September 2019, Keller Lenkner filed another set of identical arbitration demands against Postmates on behalf of 1,250 individuals who claimed to have performed delivery services using the Postmates app in California and Illinois. AAA eventually closed those cases, and Keller Lenkner has not pursued them further.

**D. The Parties Commence Individual Arbitrations.**

44. On October 22, 2019, the Northern District of California entered an order granting in part and denying in part the parties' cross-motions to compel arbitration. Order, filed in *Adams v. Postmates Inc.*, No. 3:19-cv-03042, Dkt. 253 (N.D. Cal. Oct. 22, 2019). The court ordered the parties to arbitrate "in accordance with the Mandatory Arbitration Provision contained in the applicable Fleet Agreement," but it declined to issue an order "compelling Postmates to pay outstanding and future arbitration fees" or to order couriers "to refile their demands and to proceed in a specific manner." *Id.*

45. That same day, Keller Lenkner refiled boilerplate arbitration demands on behalf of 5,255 *Adams* petitioners. Of those petitioners, 715 never accepted the Fleet Agreement; another 480 did no work on Postmates' platform; and an additional 95 released their claims in the settlement approved in *Singer v. Postmates, Inc.*, No. 4:15-cv-01284-JSW, Dkt. 98 (N.D. Cal. Apr. 25, 2018). Moreover, multiple other law firms claim to represent about 586 of the *Adams* claimants in separate arbitrations against Postmates. Two claimants filed arbitration demands against Postmates more than a year ago through separate counsel, and those arbitrations have commenced. And a separate law firm informed Postmates that it represents 8,964 claimants—584 of whom are claimants in *Adams*, and 1,368 of whom appear on a client list that Keller Lenkner provided in October 2019.

46. Nevertheless, Keller Lenkner insisted that Postmates pay *all* arbitration filing fees up front before even one arbitration could commence. Postmates declined to pay filing fees because the *Adams* petitioners refused to arbitrate individually in accordance with the terms of the Fleet Agreement.

47. On November 27, 2019, the *Adams* petitioners filed a motion for an order to show cause, arguing that Postmates should be held in civil contempt because it had not paid filing fees for all 5,255 claimants—even though the court had expressly declined to order Postmates to do so. Motion for an Order to Show Cause, filed in *Adams v. Postmates Inc.*, No. 3:19-cv-03042, Dkt. 256 (N.D. Cal. November 27, 2019). The court issued an order to show cause on December 3, 2019. Postmates responded on December 11, 2019, explaining that it was prepared to arbitrate on a truly individual basis, but that claimants had refused to proceed with a single arbitration unless Postmates paid filing fees for all of them. Postmates' Response to Order to Show Cause, filed in *Adams v. Postmates Inc.*, No. 3:19-cv-03042, Dkt. 262 (N.D. Cal. Dec. 11, 2019).

48. In December 2019, after further negotiations, the parties agreed to proceed with the arbitration of fifty claims on an individual basis, with a full reservation of rights. Postmates paid filing fees for the arbitrations of those individuals and answered those individuals' demands. In February 2020, the AAA began assigning arbitrators to those claims, with a different arbitrator assigned to each claim.

49. In March 2020, as individual arbitrators were confirmed, the parties began participating in preliminary hearings and briefing motions. It has taken months for arbitrations to begin. Although Postmates paid filing fees for fifty arbitrations in December 2019, as of March 25, 2020, only 21 arbitrators had been confirmed and only two arbitrators had conducted preliminary hearings.

**E. California Enacts SB 707.**

50. SB 707, signed by Governor Newsom on October 13, 2019, went into effect on January 1, 2020.

51. SB 707's purpose is to ensure that parties to mandatory arbitration

agreements timely pay their filing fees, so that individuals who have been forced to submit to mandatory arbitration to resolve employment or consumer disputes are able to have their disputes resolved in a timely manner.

52. SB 707 provides that a party who drafts an arbitration agreement and fails to pay its arbitration fees "within 30 days after the due date" set by the arbitration provider is in "material breach of the arbitration agreement, is in default of the arbitration, and waives its right to compel arbitration." Cal. Civ. Proc. Code § 1281.97(a). By its terms, SB 707 applies to both mandatory and permissive arbitration agreements, and it does not apply if a non-drafting party fails to pay filing fees.

53. If the drafting party fails to pay arbitration fees, then the non-drafting party may proceed with its claim in court or compel arbitration. *See id.* § 1281.97(b). If the non-drafting party elects to proceed in court, then the non-drafting party is entitled to recover attorneys' fees and costs incurred as a result of the breach and may recover additional non-monetary sanctions—including evidentiary sanctions, default on the underlying claims, and contempt of court. *See id.* § 1281.99. If the non-drafting party seeks to compel arbitration, then the non-drafting party is entitled to recover attorneys' fees and costs related to the arbitration. *See id.* § 1281.97(b). The law has the intent and effect of discouraging parties from drafting arbitration agreements, despite the FAA's "command to place [arbitration] agreements on an equal footing with all other contracts." *Kindred Nursing Ctrs. Ltd. P'ship v. Clark*, 137 S. Ct. 1421, 1429 (2017).

**F. Keller Lenkner Files Another De Facto Class Arbitration Against Postmates, And AAA Begins Administering the Demands Collectively.**

54. On February 15, 2020, after SB 707 had gone into effect, Keller Lenkner simultaneously filed an additional 10,356 demands against Postmates on behalf of purported California couriers. The claims concern alleged worker misclassification and alleged violations of California wage and hour laws, California's Unfair Competition Law, and unspecified "applicable Municipal Codes." Some couriers' demands also assert claims for alleged violations of the Fair Labor Standards Act, 29 U.S.C. §§ 206,

207 (“FLSA”).

55. Keller Lenkner notified Postmates of the filing via a single e-mail to Postmates’ counsel. That e-mail contained a link to a Dropbox folder that contained 10,356 demands and three versions of the Fleet Agreement, titled Exhibits A, B, and C. Each of the demands referenced one of the exhibits in the Dropbox folder.

56. As with previous sets of demands, the 10,356 demands filed on February 15 were virtually identical.[3] Where the demand forms instruct claimants to “describe the nature of each claim” “in detail,” each demand reads:

> Claimant has been a courier for Postmates. Postmates has misclassified Claimant as an independent contractor instead of an employee. Claimant seeks all available relief under the following provisions, as shown to be applicable following discovery of information exclusively within Postmates’s control: California Labor Code, Wage Order No. 9 (Minimum Wage & Overtime); Applicable Municipal Codes (Minimum Wage, Overtime, Sick Time, & Notice Violations); California Labor Code § 226 (Wage Statement & Records Access); and Cal. Bus. & Prof. Code § 17200 (Unfair & Unlawful Business Practices).

57. Certain demands also include a claim under the FLSA, 29 U.S.C. §§ 206 *et seq*. Those demands read:

> Claimant has been a courier for Postmates. Postmates has misclassified Claimant as an independent contractor instead of an employee. Claimant seeks all available relief under the following provisions, as shown to be applicable following discovery of information exclusively within Postmates’s control: 29 U.S.C. §§ 206, 207 (Minimum Wage & Overtime); California Labor Code, Wage Order No. 9 (Minimum Wage & Overtime); Applicable Municipal Codes (Minimum Wage, Overtime, Sick Time, & Notice Violations); California Labor Code § 226 (Wage Statement & Records Access); and Cal. Bus. & Prof. Code § 17200 (Unfair & Unlawful Business Practices).

---

[3] Multiple experts have questioned the ethics of Keller Lenkner’s de facto class arbitrations. For example, nationally recognized ethics professor Nancy Moore has opined that Keller Lenkner has “engaged in numerous violations of [its] professional responsibilities,” and “breached its fiduciary duties to its clients by pursuing a mass arbitration approach without disclosing the risks of doing so.” Declaration of Professor Nancy J. Moore, filed in *In re: CenturyLink Sales Practices & Sec. Litig.*, No. 0:17-md-02795-MJDKMM, Dkt. 510 (D. Minn. Jan. 10, 2020).

58. Each of the 10,356 demands seeks the same type of relief: interest; arbitration costs; punitive or exemplary damages; "[d]eclaratory relief; appropriate individual relief, damages; penalties; and restitution." Each demand states a different "amount of claim" that is "subject to amendment according to proof." The demands do not attempt to explain how the "amount of claim" was calculated or what type of relief it represents.

59. On February 24, 2020, AAA notified Postmates of Keller Lenkner's filing. AAA made it clear that it intended to administer the 10,356 demands collectively. Its e-mail to Postmates regarding the demands bore the subject line "10,356 Individuals v. Postmates, Inc." The e-mail explained that the cases would "be administered in accordance with the 'Administrative Group Filing Fees' section" of the AAA Employment/Workplace Fee Schedule, and stated that Postmates must pay $4,689,000 in initial filing fees by March 16, 2020.

60. The e-mail also explicitly stated that the purported couriers' claims were "subject to California Code of Civil Procedure 1281.97 and 1281.98," and therefore "payment must be received by April 15, 2020 or the AAA may close the parties' cases." It also asserted that "[t]he AAA will not grant any extensions to this payment deadline."

61. The same day, AAA sent Postmates a single invoice for $4,689,000 in filing fees for the 10,356 arbitrations.

62. Postmates is ready and willing to arbitrate with individual couriers on an individual basis—as it has done in the past and continues to do—but it will not arbitrate in any manner other than the one set forth in the parties' agreement.

## **COUNT I**

## **(Declaratory Judgment: Violation Of Agreement To Arbitrate Individually)**

63. Postmates repeats and realleges paragraphs 1 through 62 as though fully set forth herein.

64. Postmates and the 10,356 individuals contractually agreed to resolve disputes in binding individual arbitration. Couriers expressly waived their right to bring

class or collective arbitrations against Postmates.

65. Despite this agreement, these individuals have sought to commence de facto class arbitration in violation of the parties' agreement.

66. Postmates is compelled to seek relief in this Court because arbitration is a creature of contract, and AAA has no authority to administer a de facto class arbitration between the 10,356 individuals and Postmates. Postmates has not consented to class, collective, or representative arbitration of claims (or any form of arbitration aside from traditional individual arbitration), and for good reason—Defendants' tactics sacrifice the principal advantages of arbitration by making the process more formal, less efficient, and more expensive than traditional individual arbitration.

67. Declaratory relief from this Court will resolve this controversy.

68. As alleged herein, a real, substantial, and immediate controversy is presented regarding the rights, duties, and liabilities of the parties. Postmates therefore requests a declaratory judgment from this Court under 28 U.S.C. § 2201 *et seq*. and Federal Rule of Civil Procedure 57 that the 10,356 individuals' claims are not arbitrable on a de facto class basis, and that couriers who wish to bring claims must do so in individual arbitrations.

**COUNT II**

**(Declaratory Judgment: FAA Preemption Of SB 707)**

69. Postmates repeats and realleges paragraphs 1 through 68 as though fully set forth herein.

70. Under the Supremacy Clause of the Constitution, the "laws of the United States . . . shall be the supreme law of the land; and the judges in every state shall be bound thereby, anything in the Constitution or laws of any State to the contrary notwithstanding." U.S. Const. art. VI, cl. 2. As a result, any state law that "conflicts with § 2 of the Federal Arbitration Act . . . violates the Supremacy Clause." *Southland Corp. v. Keating*, 465 U.S. 1, 10 (1984). In addition, any state laws that "stan[d] as an obstacle to the accomplishment and execution of the full purposes and objectives of

Congress," as expressed in federal law, are preempted and invalid. *See, e.g.*, *Barnett Bank of Marion Cty., N.A. v. Nelson*, 517 U.S. 25, 31 (1996) (quoting *Hines v. Davidowitz*, 312 U.S. 52, 67 (1941)).

71. State laws that "single[] out arbitration agreements for disfavored treatment" are preempted by the FAA. *Kindred*, 137 S. Ct. at 1425.

72. SB 707 targets and discourages the drafting of arbitration agreements. It applies only to arbitration agreements, even though "[c]ourts may not . . . invalidate arbitration agreements under state laws applicable only to arbitration agreements." *Doctor's Assocs., Inc. v. Casaratto*, 517 U.S. 681, 687 (1996). The law engrafts onto arbitration agreements—and no other type of contract—a highly restrictive and onerous definition of material breach, and then punishes that breach by mandating attorneys' fees and costs, and permitting default, sanctions, waiver of arbitration, and even contempt of court without any opportunity to justify the breach or argue its non-materiality.

73. SB 707 is therefore preempted, because it stands as an obstacle to Congress's objectives in enacting the FAA.

74. Declaratory relief from this Court will resolve this controversy.

75. As alleged herein, a real, substantial, and immediate controversy is presented regarding the rights, duties, and liabilities of the parties. Postmates therefore requests a declaratory judgment from this Court under 28 U.S.C. § 2201 *et seq*. and Federal Rule of Civil Procedure 57 that the Federal Arbitration Act preempts SB 707 as applied to arbitration agreements within the scope of the FAA.

**COUNT III**

**(Declaratory Judgment: SB 707 Violates United States and California Constitutions)**

76. Postmates repeats and realleges paragraphs 1 through 75 as though fully set forth herein.

77. The Contracts Clause of the Constitution prohibits states from passing any "law impairing the obligation of contracts." U.S. Const. art. I, sec. X, cl. 1.

78. Similarly, the California Constitution prohibits the Legislature from enacting any "law impairing the obligation of contracts." Cal. Const. art I, § 9.

79. SB 707 substantially impairs the parties' contractual relationship and expectations as to what constitutes a material breach of the Mutual Arbitration Provision. The Mutual Arbitration Provision states that filing fees are to be shared equally by the parties, but it does not say that failure to pay filing fees per se constitutes a material breach of the contract. SB 707 thus engrafts onto the parties' agreement a new and unanticipated definition of a material breach. And after expanding the definition of material breach, SB 707 prescribes severe penalties for such a breach, penalties that the parties neither bargained for nor anticipated.

80. SB 707 is not a reasonable or appropriate method of advancing a legitimate public purpose. SB 707 is designed to ensure that parties to mandatory arbitration agreements pay their arbitration filing fees. But by its terms, SB 707 is both overinclusive and underinclusive. It is overinclusive because it applies to drafting parties, like Postmates, that permit non-drafting parties to opt out of arbitration. And it is underinclusive because it applies only to drafting parties, and does not penalize non-drafting parties for failing to pay their arbitration filing fees. Further, SB 707 fails to recognize that "'efficient' breaches" are "acceptable, even desirable, in our economic system," *Rich & Whillock, Inc. v. Ashton Dev., Inc.*, 157 Cal. App. 3d 1154, 1159 (1984), because it establishes severe, mandatory sanctions for the failure to pay arbitration filing fees, regardless of the reason for the failure.

81. Declaratory relief from this Court will resolve this controversy.

82. As alleged herein, a real, substantial, and immediate controversy is presented regarding the rights, duties, and liabilities of the parties. Postmates therefore requests a declaratory judgment from this Court pursuant to 28 U.S.C. § 2201 *et seq.* and Rule 57 of the Federal Rules of Civil Procedure that SB 707 violates the Contracts Clause of the U.S. Constitution.

**COUNT IV**

**(Injunctive Relief: Enjoining The AAA Arbitration)**

83. Postmates repeats and realleges paragraphs 1 through 82 as though fully set forth herein.

84. The 10,356 individuals have asserted claims for compensatory damages, punitive damages, declaratory relief, injunctive relief, penalties, and restitution against Postmates in the AAA Arbitration and, on information and belief, will continue to pursue such claims unless enjoined.

85. Unless the 10,356 individuals are enjoined from pursuing their claims on a de facto class basis, Postmates will suffer irreparable harm because it will (i) be deprived of its right to select the method of dispute resolution by which it expressly agreed to resolve disputes, (ii) be forced to arbitrate claims it has not agreed to arbitrate on a class basis, and (iii) be compelled to incur the substantial time and expense of defending itself in the class arbitration proceeding, or risk an adverse outcome in that proceeding, even though Postmates is not legally compelled to arbitrate the claims against it on a de facto class basis. Being compelled to arbitrate on a class basis a dispute the parties have not agreed to resolve on a class basis constitutes irreparable harm as a matter of law.

86. The balance of equities weighs heavily in favor of an injunction.

87. The public interest would be served by enjoining the 10,356 individuals from pursuing their claims against Postmates in a de facto class arbitration because the parties' agreement precludes class-based resolution of their disputes.

88. Therefore, this Court should enter an injunction enjoining the AAA Arbitration.

**COUNT V**

**(Injunctive Relief: Enjoining Enforcement of SB 707)**

89. Postmates repeats and realleges paragraphs 1 through 88 as though fully set forth herein.

90. For the reasons explained above, SB 707 violates and is preempted by the

FAA and unconstitutional.

91. The AAA has stated that the 10,356 individuals' demands are subject to SB 707 and that it may close the arbitrations if Postmates does not pay filing fees by April 15, 2020.

92. The 10,356 individuals' counsel has taken Postmates to court and sought sanctions for nonpayment of arbitration filing fees in the past. *See* Motion for an Order to Show Cause, filed in *Adams v. Postmates Inc.*, No. 3:19-cv-03042, Dkt. 256 (N.D. Cal. November 27, 2019).

93. Unless SB 707 is enjoined, Postmates faces irreparable harm. It will be forced to choose between either paying millions of dollars in non-refundable arbitration filing fees for arbitrations that were filed in violation of the parties' arbitration agreement, or risking significant mandatory and permissive sanctions for nonpayment of filing fees.

94. The balance of equities weighs heavily in favor of an injunction. In the absence of an injunction, Postmates will be irreparably harmed. If an injunction issues, the 10,356 individuals will not be harmed by the lack of enforcement of SB 707. Rather, they will continue to be free to pursue their claims in individual arbitration, as required by their contractual agreements with Postmates.

95. The public interest would be served by enjoining the enforcement of SB 707 because the statute is preempted by the FAA and unconstitutional.

**PRAYER FOR RELIEF**

WHEREFORE, Postmates respectfully requests that this Court enter an order:

1. Declaring that the 10,356 individuals are not permitted to pursue their claims against Postmates in arbitration on a de facto class basis;

2. Preliminarily and permanently enjoining the 10,356 individuals from pursuing any de facto class claims against Postmates in the AAA Arbitration;

3. Declaring that SB 707 is preempted by the FAA and therefore may not be enforced against Postmates;

4. Declaring that SB 707 is unconstitutional;

5. Preliminarily and permanently enjoining the 10,356 individuals from enforcing SB 707 against Postmates;

6. Awarding Postmates' costs of suit; and

7. Granting such other relief as may be just and proper.

Dated: March 25, 2020

By: /s/ *Theane Evangelis*
Theane Evangelis

Attorneys for Plaintiff Postmates Inc.