1  THEANE EVANGELIS, SBN 243570
   tevangelis@gibsondunn.com
2  DHANANJAY S. MANTHRIPRAGADA, SBN 254433
   dmanthripragada@gibsondunn.com
3  GIBSON, DUNN & CRUTCHER LLP
   333 South Grand Avenue
4  Los Angeles, CA 90071-3197
   Telephone: 213.229.7000
5  Facsimile: 213.229.7520

6  MICHELE L. MARYOTT, SBN 191993
   mmaryott@gibsondunn.com
7  SHAUN A. MATHUR, SBN 311029
   smathur@gibsondunn.com
8  GIBSON, DUNN & CRUTCHER LLP
   3161 Michelson Drive
9  Irvine, CA 92612-4412
   Telephone: 949.451.3800
10 Facsimile: 949.451.4220

11 Attorneys for Plaintiff POSTMATES INC.

12                  UNITED STATES DISTRICT COURT

13                 CENTRAL DISTRICT OF CALIFORNIA

14 POSTMATES INC.,                    CASE NO. 2:20-cv-02783-PSG_

15              Plaintiff,            **MEMORANDUM IN SUPPORT OF POSTMATES' MOTION FOR PRELIMINARY INJUNCTION BY APRIL 15, 2020**

16      v.

17 10,356 INDIVIDUALS,

18              Defendants.           **Hearing:**
                                      Date:    May 4, 2020
19                                    Time:    1:30 P.M.
                                      Judge:   Hon. Philip S. Gutierrez

20

21

22

23

24

25

26

27

28

Gibson, Dunn &
Crutcher LLP

# TABLE OF CONTENTS

Page

I. INTRODUCTION ..................................................................................... 1

II. FACTUAL BACKGROUND AND PROCEDURAL HISTORY ........................... 3

    A.    Postmates' Online Platform Connects Customers, Merchants, And Couriers ......................................................................................... 3

    B.    Independent Couriers Agree To Resolve Disputes In Individual Arbitration ..................................................................................... 3

    C.    Keller Lenkner Simultaneously Files Over 5,000 Arbitration Demands ......................................................................................... 4

    D.    The Parties Commence 50 Arbitrations ............................................ 7

    E.    California Enacts SB 707 .................................................................. 8

    F.    Keller Lenkner Files Another De Facto Class Arbitration Against Postmates ....................................................................................... 8

    G.    Postmates Files This Lawsuit ........................................................... 9

III. LEGAL STANDARD ............................................................................. 10

IV. ARGUMENT ....................................................................................... 11

    A.    Postmates Is Likely To Succeed On The Merits ............................. 11

        1.    The Individuals Have Pursued Improper De Facto Class Arbitration ........................................................................... 11

        2.    SB 707 Is Preempted By The FAA And Unconstitutional ........... 14

            a.    SB 707 Singles Out Arbitration Agreements ...................... 14

            b.    SB 707 Unconstitutionally Impairs Postmates' Contracts ..................................................................... 17

    B.    Postmates Will Be Irreparably Harmed Absent Injunctive Relief .......... 20

    C.    The Balance Of The Equities Tips Sharply In Postmates' Favor .......... 23

    D.    The Public Interest Favors A Preliminary Injunction .......................... 25

V. CONCLUSION ...................................................................................... 25

Gibson, Dunn & Crutcher LLP

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Abernathy v. DoorDash, Inc.*,
   3:19-cv-07545 (N.D. Cal.)..................................................................... 13

*Adams v. Postmates Inc.*,
   No. 3:19-cv-03042 (N.D. Cal.) ............................................................... 6

*Alliance for the Wild Rockies v. Cottrell*,
   632 F.3d 1127 (9th Cir. 2011) ............................................................... 10

*Allied Structural Steel Co. v. Spannaus*,
   438 U.S. 234 (1978).................................................................. 18, 19, 20

*Am. Beverage Ass'n v. City & Cty. of S.F.*,
   916 F.3d 749 (9th Cir. 2019) ................................................................. 25

*Am. Trucking Ass'ns, Inc. v. City of Los Angeles*,
   559 F.3d 1046 (9th Cir. 2009) ............................................................... 20

*Amchem Prods., Inc. v. Windsor*,
   521 U.S. 591 (1997)............................................................................. 14

*Arc of Cal. v. Douglas*,
   757 F.3d 975 (9th Cir. 2014) ................................................................. 20

*AT&T Mobility LLC v. Bernardi*,
   2011 WL 5079549 (N.D. Cal. Oct. 26, 2011) .................................. 12, 21

*AT&T Mobility LLC v. Concepcion*,
   563 U.S. 333 (2011)............................................2, 11, 12, 13, 14, 15, 16

*Atl. Mut. Ins. Co. v. C.I.R.*,
   523 U.S. 382 (1998)............................................................................. 12

*Blair v. Rent-A-Center, Inc.*,
   928 F.3d 819 (9th Cir. 2019) ................................................................. 15

*Boardman v. Pac. Seafood Grp.*,
   822 F.3d 1011 (9th Cir. 2016) ............................................................... 24

Gibson, Dunn &
Crutcher LLP

# TABLE OF AUTHORITIES
(continued)

Page(s)

*Brown v. Dillard's, Inc.*,
  430 F.3d 1004 (9th Cir. 2005) ........................................................... 17, 19

*Brown v. Grimes*,
  192 Cal. App. 4th 265 (2011) ............................................................ 17, 19

*Cal Fire Local 2881 v. Cal. Pub. Emps' Ret. Sys.*,
  6 Cal. 5th 965 (2019) ........................................................................ 18

*Cal. Pharmacists Ass'n v. Maxwell-Jolly*,
  563 F.3d 847 (9th Cir. 2009) ............................................................ 24, 25

*Calfarm Ins. Co. v. Deukmejian*,
  48 Cal. 3d 805 (1989) ....................................................................... 18

*Campanelli v. Allstate Life Ins. Co.*,
  322 F.3d 1086 (9th Cir. 2003) .......................................................... 19

*Camping Constr. Co. v. Dist. Council of Iron Workers*,
  915 F.2d 1333 (9th Cir. 1990) .......................................................... 23

*In re: CenturyLink Sales Practices & Sec. Litig.*,
  No. 0:17-md-02795 (D. Minn.) .......................................................... 5

*Chamber of Commerce of the U.S. v. Becerra*,
  2020 WL 605877 (E.D. Cal. Feb. 7, 2020) .......................... 2, 15, 16, 17, 22, 24, 25

*Chamber of Commerce of U.S. v. Edmondson*,
  594 F.3d 742 (10th Cir. 2010) .......................................................... 21

*Cole v. Caviar LLC*,
  Case No. BC719079 (L.A. Super. Ct.) ............................................... 2

*COR Clearing, LLC v. LoBue*,
  2016 WL 9088704 (C.D. Cal. June 16, 2016) .................................... 24, 25

*Doctor's Assocs., Inc. v. Casaratto*,
  517 U.S. 681 (1996) .......................................................................... 16

*Epic Sys. Corp. v. Lewis*,
  138 S. Ct. 1612 (2018) ........................................................ 11, 14, 15, 16, 17

# TABLE OF AUTHORITIES
(continued)

Page(s)

*Garcia v. Google, Inc.*,
766 F.3d 929 (9th Cir. 2014) ................................................................. 20

*Gen. Motors Corp. v. Romein*,
503 U.S. 181 (1992) .............................................................................. 18

*Goldie's Bookstore, Inc. v. Super. Ct.*,
739 F.2d 466 (9th Cir. 1984) ................................................................. 21

*Hellinger v. Farmers Grp., Inc.*,
91 Cal. App. 4th 1049 (2001) ................................................................ 18

*Herrington v. Waterstone Mortg. Corp.*,
907 F.3d 502 (7th Cir. 2018) ................................................................. 13

*Ingram Micro Inc. v. Signeo Int'l, Ltd.*,
2014 WL 3721197 (C.D. Cal. July 22, 2014) ........................................ 25

*Johnson v. Couturier*,
572 F.3d 1067 (9th Cir. 2009) ............................................................... 23

*KH Outdoor, LLC v. City of Trussville*,
458 F.3d 1261 (11th Cir. 2006) ............................................................. 25

*Kindred Nursing Ctrs. Ltd. P'ship v. Clark*,
137 S. Ct. 1421 (2017) ............................................................. 15, 16, 17

*Lamps Plus, Inc. v. Varela*,
139 S. Ct. 1407 (2019) ................................................ 1, 11, 12, 14, 15, 23

*Mayo v. Dean Witter Reynolds, Inc.*,
258 F. Supp. 2d 1097 (N.D. Cal. 2003) ................................................. 16

*McClenon v. Postmates Inc.*,
No. 1:19-cv-06415 (N.D. Ill.) .................................................................. 6

*Merrill Lynch Inv. Managers v. Optibase, Ltd.*,
37 F.3d 125 (2d Cir. 2003) .................................................................... 21

*Monterey Mech. Co. v. Wilson*,
125 F.3d 702 (9th Cir. 1997) ................................................................. 21

**TABLE OF AUTHORITIES**
(continued)

Page(s)

*Morales v. Trans World Airlines, Inc.*,
    504 U.S. 374 (1992)......................................................................................3, 21

*Morgan Stanley & Co., LLC v. Couch*,
    134 F. Supp. 3d 1215 (E.D. Cal. 2015) .......................................22, 23, 25

*OppenheimerFunds Distrib., Inc. v. Liska*,
    2011 WL 5984036 (S.D. Cal. Nov. 28, 2011)..................................23, 24

*PaineWebber, Inc. v. Hartmann*,
    921 F.2d 507 (3d Cir. 1990) ...............................................................22

*Pension Plan for Pension Tr. Fund of Operating Eng'r v. Weldway
    Constr., Inc.*,
    920 F. Supp. 2d 1034 (N.D. Cal. 2013)................................................21

*Perry v. Thomas*,
    482 U.S. 483 (1987)............................................................................15

*Philip Morris USA Inc. v. Scott*,
    561 U.S. 1301 (2010)..........................................................................21

*Philippines v. Marcos*,
    862 F.2d 1355 (9th Cir. 1988) ............................................................11

*Postmates v. Adams*,
    No. 19-17362 (9th Cir. 2020) ...............................................................7

*Preston v. Ferrer*,
    552 U.S. 346 (2008)......................................................................11, 15

*Rimler v. Postmates*,
    No. CGC-18-567868 (S.F. Super. Ct.) ...................................................6

*RUI One Corp. v. City of Berkeley*,
    371 F.3d 1137 (9th Cir. 2004) .............................................................18

*S. Cal. Gas Co. v. City of Santa Ana*,
    336 F.3d 885 (9th Cir. 2003) ...............................................................19

*Shell Offshore, Inc. v. Greenpeace, Inc.*,
    709 F.3d 1281 (9th Cir. 2013) .............................................................10

# TABLE OF AUTHORITIES
(continued)

Page(s)

*Southland Corp. v. Keating,*
  465 U.S. 1 (1984) ................................................................................... 15, 20

*Sunlight Prod. Techs., Ltd. v. MPOWERD Inc.,*
  2015 WL 12655472 (C.D. Cal. Mar. 23, 2015) ...................................... 23, 25

*Sveen v. Melin,*
  138 S. Ct. 1815 (2018) ........................................................................... 18, 19

*Textile Unlimited, Inc. v. A..BMH & Co.,*
  240 F.3d 781 (9th Cir. 2001) ........................................................................ 21

*Till v. SCS Credit Corp.,*
  541 U.S. 465 (2004) ...................................................................................... 13

*Walsh v. Zazzali,*
  2016 WL 7647556 (C.D. Cal. Feb. 8, 2016) ......................................... 23, 25

*Winter v. Nat. Res. Def. Council, Inc.,*
  555 U.S. 7 (2008) .................................................................................... 10, 20

*In re Workers' Comp. Refund,*
  46 F.3d 813 (8th Cir. 1995) .......................................................................... 19

*World Grp. Sec. v. Tiu,*
  2003 WL 26119461 (C.D. Cal. July 22, 2003) ..................................... 24, 25

**Statutes**

9 U.S.C. § 2 ....................................................................................................... 14

9 U.S.C. § 4 ........................................................................................... 2, 11, 25

29 U.S.C. §§ 206–207 ......................................................................................... 8

Cal. Civ. Proc. Code § 1281.97(a) ................................................ 8, 14, 16, 19

Cal. Civ. Proc. Code § 1281.97(b) ...................................................... 8, 14, 22

Cal. Civ. Proc. Code § 1281.97(d) ................................................................. 14

Cal. Civ. Proc. Code § 1281.99 ......................................................... 8, 14, 16

## TABLE OF AUTHORITIES
(continued)

Page(s)

**Other Authorities**

Cal. Off. of Legis. Couns., SB 707, Legislative Counsel's Digest, Chapt.
870 (2019)..................................................................................................... 19

Cal. Sen. Rules Comm., Off. of Sen. Floor Analyses, Third Reading of
Sen. Bill No. 707, 2019-2020 Reg. Sess. (2019)......................................... 19

Employment-Related Mass-Claims Protocol, CPR Int'l Inst. for Conflict
Prevention & Resolution (Nov. 4, 2019), https://tinyurl.com/ry3rznb ................... 13

Employment/Workplace Fee Schedule (effective Nov. 1, 2019),
https://tinyurl.com/yx7hxyaa ......................................................................... 9

SB-707 Arbitration agreements: enforcement, 6/19/19 - Assembly Floor
Analysis, https://tinyurl.com/vb34m7g ....................................................... 8

**Rules**

AAA Commercial Arb. Rules, R-4(e)(iv) ............................................................. 6

AAA Employment Arb. Rules, R-7.................................................................... 10

AAA Employment Arb. Rules, R-43................................................................. 16

**Constitutional Provisions**

Cal. Const. art I, § 9 .......................................................................................... 18

U.S. Const. art I, § 10, cl. 1............................................................................... 18

# I. INTRODUCTION

This case arises out of a scheme perpetrated by Defendants' counsel at Keller Lenkner LLC, a 20-person law firm, to commence de facto class arbitration on behalf of 10,356 Individuals in violation of agreements to resolve disputes with Postmates in *individual* arbitration.  By using social media to recruit these individuals as "clients," holding their claims until they number in the thousands, simultaneously filing thousands of boilerplate arbitration demands, and insisting on the simultaneous administration and commencement of all arbitrations, Keller Lenkner has sought to arbitrate claims in a manner that sacrifices the principal advantages of traditional individual arbitration so that it may use the threat of millions of dollars in nonrefundable arbitration filing fees to coerce a class-action-type settlement.  What's more, Keller Lenkner filed many of the arbitration claims on behalf of people who never even signed up to use the Postmates platform or completed a single delivery.  Keller Lenkner's scheme relies on a recently enacted California statute, SB 707, which violates the Federal Arbitration Act ("FAA"), as well as the United States and California Constitutions' Contracts Clauses.

To avoid suffering imminent and irreparable harm as a result of Keller Lenkner's tactic and SB 707, Postmates moves for a preliminary injunction enjoining Defendants from participating in the pending de facto class arbitration, and from enforcing SB 707 against Postmates.  Postmates respectfully requests that the Court issue an injunction by April 15, 2020—the date Postmates will become subject to penalties under SB 707.[1]

Each Defendant purportedly signed Postmates' Fleet Agreement and agreed to resolve their disputes with Postmates in individual arbitration.  The FAA strongly favors individual arbitration, and courts may not—absent express contractual authorization—compel parties to arbitrate in *any* manner that "sacrifices the principal advantage[s]" of the "individualized form of arbitration envisioned by the FAA"—its "low costs, greater efficiency[,] and speed." *Lamps Plus, Inc. v. Varela*, 139 S. Ct. 1407, 1412, 1419 (2019).

---

[1]  As explained in the accompanying Notice of Motion, Postmates respectfully makes this request in lieu of seeking a temporary restraining order in view of COVID-19.

Here, Keller Lenkner's scheme violates the parties' agreements and undermines traditional individual arbitration. Even the attorney who "invented" this "pressure tactic" admits it is a "joke" to think that "1,000 people are going to do an individual arbitration," *Cole v. Caviar LLC*, Case No. BC719079, February 25, 2020 Hr'g Tr. at 8:17–10:11 (L.A. Super. Ct.)—meaning people who may have real claims will never have their day in arbitration due to this "tactic." Because a court may compel arbitration only in the "manner provided for in such agreement," 9 U.S.C. § 4, Postmates is entitled to declaratory judgment that it may not be compelled to de facto class arbitration.

As for SB 707, Postmates is likely to show that this punitive law is preempted by the FAA and violates the United States and California Constitutions' Contracts Clauses. The FAA preempts state laws that target arbitration and interfere with the FAA's objectives. *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339–43 (2011). SB 707 does exactly that: it applies *only* to arbitration agreements, and provides that *only* drafting parties of such agreements shall be in material breach (and subject to significant sanctions) if they fail to pay arbitration fees—even if the non-drafting party has failed to pay its fees or otherwise materially breached the agreement. SB 707 singles out arbitration for unequal treatment and discourages companies from drafting arbitration agreements—contrary to the FAA's objective of "promot[ing] arbitration." *Id.* at 345. Another California law targeting arbitration was recently enjoined as preempted because it will "have a deterrent effect on [companies'] use of arbitration agreements given the [significant] sanctions associated with violating the law." *Chamber of Commerce of the U.S. v. Becerra*, 2020 WL 605877, at *13 (E.D. Cal. Feb. 7, 2020). So too here.

SB 707 also violates the federal and state Contracts Clauses by substantially impairing Postmates' individual arbitration agreements. SB 707 effectively forgives a courier's noncompliance with the parties' agreement, yet it requires Postmates to continue performing under the contract even if the courier has materially breached the contract. SB 707 thus undermines the parties' reasonable expectations—and it does so to discourage companies from drafting arbitration agreements in the first place.

The harm Postmates would suffer absent an injunction would be irreparable. Since Keller Lenkner first deployed this tactic against Postmates in March 2019, Postmates has tried everything in its power to resolve the parties' disputes in truly individual arbitration as the Fleet Agreement requires. Postmates has asked AAA to explain how it would (and whether it could) individually administer all the cases at the same time, has asked that AAA immediately commence administering the cases and assess fees as cases are actually able to proceed, and has asked that Keller Lenkner agree to arbitrate 50 cases at a time on a rolling basis. But Postmates' efforts to resolve the parties' disputes in an individual manner have been rejected. Instead, AAA and Keller Lenkner have demanded that Postmates pay all filing fees up front and waive its right to arbitrate as its contract requires, or risk suffering severe penalties under SB 707. Postmates thus faces an impossible choice—either pay millions of dollars in unrecoverable filing fees to AAA and accede to de facto class arbitration in violation of its arbitration agreement, or insist on individual arbitration and expose itself to unrecoverable and severe penalties under a preempted and unconstitutional state law. The law does not require Postmates to make this choice. *See Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 381 (1992). Thus, a preliminary injunction is warranted.

## II.  FACTUAL BACKGROUND AND PROCEDURAL HISTORY

### A. Postmates' Online Platform Connects Customers, Merchants, And Couriers

Postmates operates an online marketplace and mobile platform through which consumers connect with local merchants and, if consumers request delivery, independent couriers to facilitate the purchase, fulfillment, and, when applicable, delivery of products from merchants to consumers. Decl. of Patricia Cartes Andres ¶ 4. When consumers place orders through Postmates' platform, they can decide whether to pick up the order or have it delivered. *Id.* If a consumer chooses delivery, couriers receive a notification and can choose whether to pick up and deliver the goods. *Id.*

### B. Independent Couriers Agree To Resolve Disputes In Individual Arbitration

Anyone can sign up to be a courier. *Id.* ¶ 8. But before couriers can access

Postmates' platform to begin receiving delivery opportunities, they must accept Postmates' Fleet Agreement, which is presented to individuals during an online registration process. *Id.* ¶¶ 8–11, Exs. A–C. The Fleet Agreement expressly provides that couriers are "independent contractor[s]." *Id.* ¶ 12, Ex. A §§ 1A, 2A.

The Fleet Agreement contains a Mutual Arbitration Provision that is governed by the FAA. *Id.* ¶ 13, Ex. A § 10A(i). Couriers may opt out of arbitration by submitting an opt-out notice within 30 days of accepting the Fleet Agreement. *Id.* Ex. A § 10B(ix). But couriers who do not opt out "agree to resolve any disputes" with Postmates "exclusively through final and binding arbitration." *Id.* § 10A(i). The Mutual Arbitration Provision contains an express Class Action Waiver and Representative Action Waiver. *Id.* § 10B(ii)–(iii). The Class Action Waiver states:

> **CLASS ACTION WAIVER—PLEASE READ.** Postmates and You mutually agree that any and all disputes or claims between the Parties will be resolved in *individual arbitration*. The Parties further agree that by entering into this Agreement, they waive their right to have any dispute or claim brought, heard or arbitrated as a class and/or collective action, or to participate in any class and/or collective action, and an arbitrator shall not have any authority to hear or arbitrate any class and/or collective action.

*Id.* § 10B(ii) (emphasis added).

The Mutual Arbitration Provision also contains a delegation clause, which provides that "any dispute relating to the interpretation, applicability, enforceability, or formation" of the Mutual Arbitration Provision must be decided by an arbitrator, not a court. *Id.* § 10A(ii). But the delegation clause expressly does "not apply to *any dispute* relating to or arising out of the Class Action Waiver"—including a claim that the Class Action Waiver is "unenforceable, unconscionable, void, or voidable"—"which must proceed in a court of competent jurisdiction." *Id.* §§ 10A(ii), 10B(iv) (emphasis added).

### C. Keller Lenkner Simultaneously Files Over 5,000 Arbitration Demands

In an end run around recent Supreme Court decisions affirming the enforceability of class waivers in arbitration agreements, certain plaintiffs' lawyers—including Keller Lenkner—are attempting to coerce class-action-style settlements by using social media to recruit couriers as "clients," sitting on the couriers' claims for extended periods,

simultaneously filing thousands of arbitration demands in their names, insisting that millions of dollars in arbitration filing fees be paid up front, and demanding that all arbitrations be administered together and proceed at the same time.[2]

Keller Lenkner first deployed this tactic against Postmates in March 2019, when it wrote to Postmates stating that it "represents more than 3,000" couriers, and threatening to "proceed with every arbitration simultaneously" unless the parties "agree[d] on an alternative process" for resolving the claims. Decl. of Theane Evangelis ¶ 3, Ex. A. Counsel stated that AAA would assess "more than $20 million" in arbitration fees alone if arbitrations commenced, and threatened additional fees because "roughly 500 additional drivers engage [the] firm each week." *Id.* ¶ 3, Ex. A.

Postmates would not abandon its individual arbitration provision, so in April and May 2019, Keller Lenkner simultaneously filed demands on behalf of over 5,000 California and Illinois couriers. *Id.* ¶¶ 4, 5, Exs. B–D. Rather than serve individual arbitration demands, counsel filed the demands by submitting one cover letter, a single document reciting the alleged claimants' generic grievances, and a spreadsheet listing the claimants on whose behalf counsel purported to act. *Id.* ¶¶ 4, 5, Exs. B, D. The demands identified no facts, legal theories, or desired remedies specific to any particular claimant—all in violation of the Mutual Arbitration Provision's and AAA's filing requirements. *Id.* ¶¶ 4, 5, Ex. B, D (each demand must have "a statement of the legal

---

[2] Multiple experts have opined that Keller Lenkner's de facto class arbitration scheme violates legal-ethics rules. For example, nationally recognized ethics professor Nancy Moore has opined that Keller Lenkner has "engaged in numerous violations of [its] professional responsibilities," and "breached its fiduciary duties to its clients by pursuing a mass arbitration approach without disclosing the risks of doing so." *In re: CenturyLink Sales Practices & Sec. Litig.*, No. 0:17-md-02795, Dkt. 510 ¶¶ 8, 15 (D. Minn. Jan. 10, 2020). Professor Moore averred under oath that Keller Lenkner "actively misle[d]" clients by "falsely stating or implying" that Keller Lenkner was pursuing individual arbitration, that "there were no known conflicts of interest among its thousands of clients," and that "Keller Lenkner's unreasonable legal fees would be paid by [the company] and not by the clients." *Id.* ¶ 9. In truth, Keller Lenkner had pursued "claims in an aggregated, consolidated manner"—putting its clients at "risk that they will be found to have materially breached the [individual] arbitration contract." *Id.* ¶¶ 11, 12, 17. Keller Lenkner also refused to spend even "15 minutes per client" on a "pre-demand discussion on an individual basis"—demonstrating that it had "refus[ed] to investigate" its clients' claims on an "individualized" basis, in violation of the clients' contracts. *Id.*

and factual basis of the claim," and "a description of the remedy sought"); AAA Commercial Arb. Rules, R-4(e)(iv).

Postmates expressed that it was ready and willing to arbitrate individual claims. Evangelis Decl. ¶ 6. But because Keller Lenkner sought to arbitrate in a contractually forbidden manner, Postmates explained that no arbitration proceedings had begun. *Id.* ¶¶ 6, 9, Ex. E. Postmates also requested that AAA assess fees as cases are actually administered, rather than up front regardless of when the cases could actually proceed. *Id.* ¶ 9, Ex. E. AAA rejected Postmates' request, declined to appoint a special master to determine whether claimants violated the Mutual Arbitration Provision, and assessed over $11 million in up front filing fees against Postmates. *Id.* ¶ 11, Ex. F. AAA provided no assurances that Postmates could obtain a refund if claimants failed to pursue their claims, or if some claimants had never even signed the Fleet Agreement. Nor did AAA explain how it would administer all the arbitrations at the same time.

In June 2019, Keller Lenkner filed a petition to compel arbitration in the Northern District of California, seeking an order requiring Postmates to "pay all arbitration filings fees" associated with the 5,257 purported demands it had filed on behalf of California couriers. *Adams v. Postmates Inc.*, No. 3:19-cv-03042, Dkt. 1 (N.D. Cal. June 3, 2019). Postmates argued that Keller Lenkner improperly sought to compel de facto class arbitration in violation of the Mutual Arbitration Provision's Class Action Waiver, and filed a cross-motion to compel truly individual arbitrations. *Adams*, Dkt. 228. Keller Lenkner filed a similar action in the Northern District of Illinois. *McClenon v. Postmates Inc.*, No. 1:19-cv-06415, Dkt. 1 (N.D. Ill. Sept. 26, 2019).

In September 2019, Keller Lenkner filed an additional 1,250 generic arbitration demands. Evangelis Decl. ¶ 18. Postmates requested a stay pending resolution of a class settlement pending in *Rimler v. Postmates*, No. CGC-18-567868 (S.F. Super. Ct.), and that individual arbitrators be assigned to 50 claimants to begin the dispute resolution process. *Id.* ¶ 20, Ex. J. Keller Lenkner opposed and insisted that Postmates pay all fees before even a single arbitration could commence. *Id.* ¶ 21, Ex. K. AAA denied

Postmates' requests and eventually closed those cases. *Id.* ¶ 32, Ex. H at 12.

### D. The Parties Commence 50 Arbitrations

On October 22, 2019, the *Adams* court granted in part and denied in part the parties' cross-motions to compel arbitration. *Adams*, Dkt. 253. The court ordered the parties to arbitrate "in accordance with the Mandatory Arbitration Provision," but it declined to order "Postmates to pay outstanding and future arbitration fees" or to order couriers "to refile their demands and to proceed in a specific manner." *Id.* Postmates has appealed the court's order. *See Postmates v. Adams*, No. 19-17362 (9th Cir. 2020).

That same day, Keller Lenkner refiled boilerplate arbitration demands on behalf of 5,255 *Adams* claimants. Evangelis Decl. ¶ 17, Ex. H at 23. Of those claimants, 715 never accepted the Fleet Agreement; another 480 performed no work on Postmates' platform; and an additional 95 had released their claims in a prior settlement. *Id.* ¶ 39, Ex. M. Multiple other law firms also claim to represent about 586 claimants in separate arbitrations against Postmates. *Id.* ¶ 45. Indeed, two claimants had filed separate arbitration demands against Postmates more than a year prior through separate counsel, and those arbitrations have commenced. *Id.* And a separate law firm informed Postmates that it represents 8,964 claimants—584 of whom are claimants in *Adams*, and 1,368 of whom appear on a client list that Keller Lenkner provided Postmates in October 2019. *Id.* Nevertheless, Keller Lenkner insisted that Postmates pay *all* arbitration filing fees up front before even one arbitration could commence. *Id.* ¶ 40, Ex. N.

On November 27, 2019, Keller Lenkner moved for an order to show cause, arguing that Postmates should be held in civil contempt because it had not paid filing fees for all 5,255 *Adams* claimants. *Adams*, Dkt. 256. Postmates explained that it was prepared to arbitrate on a truly individual basis, and that it could not be held in contempt because the court expressly declined to order Postmates to pay fees. *Adams*, Dkt. 262.

In December 2019, the parties agreed to proceed with 50 arbitrations, and Postmates paid fees for 50 arbitrations. Evangelis Decl. ¶¶ 34–38, 44, Ex. H at 1–11. As of April 3, 2020, only three preliminary hearings have been conducted. *Id.* at ¶ 44.

### E. California Enacts SB 707

Purportedly concerned that certain arbitration agreements "are contained within contracts of adhesion" and that many individuals "have been forced to submit to mandatory arbitration to resolve an employment or consumer dispute," the California Legislature enacted SB 707, effective January 1, 2020. SB-707 Arbitration agreements: enforcement, 6/19/19 - Assembly Floor Analysis, https://tinyurl.com/vb34m7g.

SB 707 provides that a party who drafts an arbitration agreement and fails to pay its arbitration fees "within 30 days after the due date" is in "material breach of the arbitration agreement, is in default of the arbitration, and waives its right to compel arbitration." Cal. Civ. Proc. Code § 1281.97(a). SB 707 applies *only* to arbitration agreements and penalizes *only* drafting parties—even if the non-drafting party fails to pay its arbitration fees or otherwise materially breaches the agreement. If the drafting party fails to pay its fees, then the non-drafting party may proceed with its claim in court or compel arbitration. *Id.* § 1281.97(b). If the non-drafting party proceeds in court, it is entitled to recover attorneys' fees and costs and may recover additional non-monetary sanctions—including evidentiary sanctions, default on the underlying claims, and contempt of court. *Id.* § 1281.99. If the non-drafting party elects to compel arbitration, it is entitled to recover its attorneys' fees and costs of arbitration. *Id.* § 1281.97(b).

### F. Keller Lenkner Files Another De Facto Class Arbitration Against Postmates

On February 15, 2020, Keller Lenkner simultaneously filed an additional 10,356 demands against Postmates. Evangelis Decl. ¶ 46, Ex. S. The claims concern alleged worker misclassification and alleged violations of California wage and hour laws, California's Unfair Competition Law, and unspecified "applicable Municipal Codes." *Id.* ¶ 46, Ex. S. Many couriers' demands also assert claims for alleged violations of the Fair Labor Standards Act, 29 U.S.C. §§ 206–207 ("FLSA"). *Id.* ¶ 46, Ex. S. This latest attempt by Keller Lenkner to arbitrate in an improper manner is the subject of this case.

As with the prior sets of demands, the new 10,356 demands are virtually identical and generically state that the claimant "has been a courier" and that "Postmates has

misclassified Claimant as an independent contractor." *Id.* ¶ 46, Ex. S. Although each demand seeks the same type of relief, each states a different "amount of claim" that is "subject to amendment according to proof." *Id.* ¶ 46, Ex. S. The demands do not explain how the "amount of claim" was calculated or what type of relief it represents. *Id.* ¶ 46, Ex. S. As before, numerous claimants have no viable claims: at least 470 never accepted the Fleet Agreement, another 340 completed no work on Postmates' platform, and another 136 released their claims in a prior settlement. Cartes Andres Decl. ¶¶ 16–18.

AAA notified Postmates of the new filing on February 24, 2020. Evangelis Decl. ¶ 47, Ex. T at 8. AAA stated that the demands would be administered according to its Employment Arbitration Rules, and made clear that it intended to administer the 10,356 demands *collectively*, as even its e-mail to Postmates bore the subject line "**10,356 Individuals v. Postmates, Inc.**" *Id.* ¶ 47, Ex. T at 8 (emphasis added). The e-mail— which applied to all the cases—also stated that the cases would "be administered" under the "'Administrative Group Filing Fees' section" of the AAA Employment/Workplace Fee Schedule (as opposed to the fee schedule for individual demands), and stated that Postmates must pay $4,689,600 in initial fees by March 16, 2020. *Id.* ¶ 47, Ex. T at 8.[3]

AAA also stated that the demands are subject to SB 707 and that "payment must be received by April 15, 2020 or the AAA may close the parties' cases." *Id.* ¶ 47, Ex. T at 8. AAA asserted that it "will not grant any extensions to this payment deadline." *Id.* Ex. T at 8. AAA invoiced Postmates for $4,689,600 in up front filing fees. *Id.* ¶ 48.

**G. Postmates Files This Lawsuit**

Postmates filed this lawsuit on March 25, 2020. Dkt. 1. The next day, Postmates informed AAA that it had filed a lawsuit concerning the 10,356 demands. Evangelis Decl. ¶ 50, Ex. T at 7–8. Postmates also requested that AAA suspend administration of

---

[3]   Under AAA's Group Administrative Filing Fee Schedule, the company must pay an "initial administrative filing fee of $400 per case," and another "administrative fee of $1,750 per case" "prior to the arbitrator selection process." Employment/Workplace Fee Schedule at 3–4 (effective Nov. 1, 2019), https://tinyurl.com/yx7hxyaa. Thus, even if Postmates were to pay the $4,689,600 in initial filing fees, AAA would assess an additional $18,123,000 in fees before an arbitrator is even appointed.

these matters for 60 days under Employment Rule 1, which provides that "AAA will suspend administration for 60 days" if "a party seeks judicial intervention with respect to a pending arbitration" "within 30 days after the AAA's commencement of administration." *Id.* ¶ 50, Ex. T at 7–8.

AAA denied Postmates' request for a 60-day stay on March 27. *Id.* ¶ 51, Ex. T at 2. AAA stated that Rule 1 could not be invoked because AAA's "administration of these cases has not commenced," *id.* Ex. T at 2, even though Rule 4 states that an "arbitration shall be initiated" when "[t]he initiating party" pays "its . . . filing fee." Postmates asked AAA to explain its decision in light of Rule 4, to explain "how matters that AAA says have not even 'commenced' can nevertheless be 'closed,'" and to "schedule an administrative conference so that Postmates may better understand AAA's reasoning." *Id.* ¶ 52, Ex. T at 2. AAA rejected Postmates' requests, stating that it "will schedule an administrative call" only "[u]pon receipt of [Postmates'] share of the initial filing fees," *id.* ¶ 53, Ex. T at 1—contrary to its practice and Rule that "[t]here is no administrative fee" for "an administrative conference," AAA Employment Arb. Rules, R-7.

## III.  LEGAL STANDARD

"A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). The Ninth Circuit uses a "sliding scale" approach to preliminary injunctions, under which "the elements of the preliminary injunction test are balanced, so that a stronger showing of one element may offset a weaker showing of another." *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011). Where, as here, "the balance of equities tips sharply in the plaintiff's favor," the Court may issue a preliminary injunction where "there are serious questions going to the merits—a lesser showing than likelihood of success on the merits." *Shell Offshore, Inc. v. Greenpeace, Inc.*, 709 F.3d 1281, 1291 (9th Cir. 2013). "Serious questions" involve only "a fair chance of success

on the merits." *Philippines v. Marcos*, 862 F.2d 1355, 1362 (9th Cir. 1988).

## IV.  ARGUMENT

### A. Postmates Is Likely To Succeed On The Merits

Postmates is likely to prevail, and has at least raised "serious questions," on its arguments that (1) Defendants have pursued de facto class arbitration in violation of the parties' arbitration agreements and the FAA, and (2) SB 707 is preempted by the FAA and is unconstitutional under the federal and state Contracts Clauses.

### 1.    The Individuals Have Pursued Improper De Facto Class Arbitration

Postmates is likely to prevail on its claim that Defendants may not compel Postmates to de facto class arbitration—which, like class arbitration—"sacrifices the principal advantage[s]" of "traditional individualized arbitration," *Lamps Plus*, 139 S. Ct. at 1412, 1414, and is prohibited by the FAA and the Mutual Arbitration Provision.

Under the FAA, a court may compel parties to arbitrate only "in the manner provided for in such agreement" to arbitrate.  9 U.S.C. § 4.  "The FAA was enacted in 1925 in response to widespread . . . hostility to arbitration agreements." *Concepcion*, 563 U.S. at 339.  Congress sought to facilitate "streamlined proceedings and expeditious results," *Preston v. Ferrer*, 552 U.S. 346, 357 (2008), by "ensur[ing] that private arbitration agreements are enforced according to their terms," *Concepcion*, 563 U.S. at 344—"including terms providing for individualized proceedings," *Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1619 (2018).   Congress recognized that "traditional individualized arbitration" has much to offer, *id.* at 1623, "not least the promise of quicker, more informal, and often cheaper resolutions for everyone involved," *id.* at 1621.  As a result, courts may not—absent express contractual authorization—compel parties to arbitrate in *any* manner that is "fundamental[ly] differen[t]" from the "individualized form of arbitration envisioned by the FAA," *Lamps Plus*, 139 S. Ct. at 1416, or that "hinder[s]," "frustrate[s]," or "interferes with [the] fundamental attributes of arbitration and thus creates a scheme inconsistent with the FAA," *Concepcion*, 563 U.S. at 344, 346.  For example, parties may not be compelled to class arbitration if their

agreement is silent or ambiguous on the issue—there must be "a contractual basis for concluding that the[y] *agreed* to do so." *Lamps Plus*, 139 S. Ct. at 1416–17. "[C]lass arbitration fundamentally changes the nature of the traditional individualized arbitration envisioned by the FAA," *id.* at 1412, because it "sacrifices the principal advantage of arbitration—its informality—and makes the process slower, more costly, and more likely to generate procedural morass than final judgment," *id.* at 1416.

Here, the Mutual Arbitration Provision requires each Defendant to arbitrate in an individual manner, yet Keller Lenkner's tactic of simultaneously filing thousands of arbitration demands, insisting that all fees be paid up front, and demanding that they all proceed at the same time sacrifices the principal advantages of traditional individual arbitration. Keller Lenkner's scheme (1) "makes the process slower" and "more costly," (2) "requires procedural formality," and (3) imposes substantial "pressure" on defendants to "settl[e] questionable claims." *Concepcion*, 563 U.S. at 348–50; *see also AT&T Mobility LLC v. Bernardi*, 2011 WL 5079549, at *6 (N.D. Cal. Oct. 26, 2011).

*First*, Congress enacted the FAA to "reduc[e] the cost and increase[e] the speed of dispute resolution," *Concepcion*, 563 U.S. at 344–45, but Keller Lenkner's scheme is specifically designed to be *more expensive* and *less efficient* than traditional individual arbitration. Rather than file arbitration demands as clients are actually retained, Keller Lenkner waited until it amassed a long list of clients and then simultaneously filed over 10,000 generic arbitration demands and insisted that all filing fees be paid up front. In fact, many claimants last agreed to the 2017 or 2018 versions of the Fleet Agreement, and have not used the Postmates platform in months, if not years. Cartes Andres Decl. ¶ 18. Requiring Postmates to pay over $4 million in up-front, nonrefundable fees to commence arbitration is more expensive than requiring Postmates to pay fees on a case-by-case basis as cases are actually administered. After all, "a dollar today is worth more than a dollar tomorrow." *Atl. Mut. Ins. Co. v. C.I.R.*, 523 U.S. 382, 384 (1998). And under "the principle of the time value of money," paying $4 million up front is a greater expense than paying $4 million over time as arbitration services are actually provided.

1   *Till v. SCS Credit Corp.*, 541 U.S. 465, 487 (2004) (Thomas, J., concurring).

2       Keller Lenkner's scheme also is less efficient than traditional individual

3   arbitration.  Neither Keller Lenkner nor any arbitration provider could handle *thousands*

4   of arbitrations at the same time and maintain the "efficient, streamlined procedures" that

5   Congress intended.  *Concepcion*, 563 U.S. at 344.  In fact, since Postmates paid fees for

6   50 arbitrations in December 2019, only three preliminary hearings have been held.

7   Other companies Keller Lenkner has targeted have had a similar experience.  *Abernathy*

8   *v. DoorDash, Inc.*, No. 3:19-cv-07545, Dkt. 157-2 ¶¶ 5–8 (N.D. Cal. Jan. 16, 2020).

9       *Second*, Keller Lenkner's scheme "requires procedural formality" to account for

10  the years it would otherwise take to conduct each arbitration on a truly individual basis.

11  *Concepcion*, 563 U.S. at 349.  In fact, multiple arbitration providers recently published

12  new protocols in an attempt to accommodate Keller Lenkner's tactic.  For example, the

13  International Institute for Conflict Prevention & Resolution ("CPR") recognized that this

14  tactic is a recent phenomenon, and published a new protocol that uses bellwether

15  procedures so that the parties and organization may avoid the time and expense of

16  initiating thousands of arbitration cases that will never be arbitrated.  *See* Employment-

17  Related Mass-Claims Protocol, CPR Int'l Inst. for Conflict Prevention & Resolution

18  (Nov. 4, 2019), https://tinyurl.com/ry3rznb.  That such protocols now exist demonstrates

19  that this approach is a "relatively recent development" that was not "envisioned by

20  Congress when it passed the FAA in 1925." *Concepcion*, 563 U.S. at 349.

21      *Third*, as in class arbitration, the "lawyers are in charge," *Herrington v.*

22  *Waterstone Mortg. Corp.*, 907 F.3d 502, 509 (7th Cir. 2018), and Keller Lenkner's tactic

23  "involv[es] higher stakes"—it is specifically designed to impose substantial "pressure"

24  on defendants to "settl[e] questionable claims," *Concepcion*, 563 U.S. at 348.  Indeed,

25  Keller Lenkner has sought to use the collective costs of administering thousands of

26  arbitrations as leverage to extract an "'in terrorem' settlement[]," *id.* at 350—even

27  though scores of its "clients" have no viable claims because they never signed the Fleet

28  Agreement, never performed any work on the Postmates platform, or released their

claims in a prior settlement.  Evangelis Decl. ¶ 39, Ex. M.  Worse still, Keller Lenkner has sought a class-action-type settlement without any of the protections that ordinarily accompany such settlements to protect absent individuals, *see Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620–22 (1997)—a particularly pronounced concern here given the serious ethical issues that Keller Lenkner's scheme raises, *see supra* n.2.

Keller Lenkner's scheme is "markedly different" from the individual arbitration that the parties agreed to, *Lamps Plus*, 139 S. Ct. at 1416, and thus Postmates is entitled to declaratory judgment that it may not be compelled to arbitrate in this manner.

### 2.   SB 707 Is Preempted By The FAA And Unconstitutional

Postmates is likely to establish that SB 707 is preempted by the FAA and unconstitutional under the federal and state Contracts Clauses.  SB 707 provides that a party who drafts an arbitration agreement and fails to pay arbitration fees within 30 days of a due date "is in material breach of the arbitration agreement, is in default of the arbitration, and waives its right to compel arbitration."  Cal. Civ. Proc. Code § 1281.97(a).  SB 707 entitles the non-drafting party to (a) proceed in court, obtain its attorneys' fees and costs, and seek additional non-monetary sanctions (including default on the underlying claims) or (b) compel arbitration and obtain attorneys' fees and costs. *Id.* § 1281.97(b), (d); *id.* § 1281.99.  SB 707 thus engrafts onto arbitration agreements a highly onerous definition of material breach and has the intent and effect of discouraging parties from drafting arbitration agreements.  SB 707 is preempted and unconstitutional.

### a.   SB 707 Singles Out Arbitration Agreements

Section 2 of the FAA provides that arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2.  The FAA reflects a "liberal federal policy favoring arbitration, . . . and the fundamental principle that arbitration is a matter of contract."  *Concepcion*, 563 U.S. at 339.  Courts must therefore "place arbitration agreements on an equal footing with other contracts," *id.*, and "rigorously . . . enforce arbitration agreements according to their terms," *Epic Sys.*, 138 S. Ct. at 1621.

The FAA preempts state laws that "flout[]" its "command to place [arbitration] agreements on an equal footing with all other contracts." *Kindred Nursing Ctrs. Ltd. P'ship v. Clark*, 137 S. Ct. 1421, 1429 (2017). Section 2's savings clause "establishes a sort of 'equal-treatment' rule for arbitration contracts," *Epic Sys.*, 138 S. Ct. at 1622, under which arbitration agreements may "be invalidated by generally applicable contract defenses, such as fraud, duress, or unconscionability, but not by defenses that apply *only to arbitration*," *Concepcion*, 563 U.S. at 339 (emphasis added). And even where a state rule puts arbitration agreements on equal footing, it is still preempted if it "stand[s] as an obstacle to the accomplishment of the FAA's objectives." *Id.* at 343. Accordingly, "[a] state-law rule can be preempted by the FAA in two ways," *Blair v. Rent-A-Center, Inc.*, 928 F.3d 819, 825 (9th Cir. 2019): (1) where it "interferes with [the] fundamental attributes of arbitration," *Lamps Plus*, 139 S. Ct. at 1418, and (2) where it "singles out arbitration agreements for disfavored treatment," *Kindred*, 137 S. Ct. at 1425.

The Supreme Court has repeatedly held that California laws disfavoring arbitration are preempted. In *Concepcion*, the Court held that a California rule "conditioning the enforcement of certain arbitration agreements on the availability of classwide arbitration procedures" was preempted because it "interferes with arbitration." 563 U.S. at 336, 346. And in *Preston*, it held that a California rule requiring exhaustion of administrative remedies before arbitration was preempted because it "frustrated" the FAA's "policy favoring arbitration when the parties contract for that mode of dispute resolution." 552 U.S. at 349, 358; *see also Perry v. Thomas*, 482 U.S. 483, 491 (1987); *Southland Corp. v. Keating*, 465 U.S. 1, 10 (1984). SB 707 is no different.

*First*, SB 707 is preempted because it "stands as an obstacle to the accomplishment of the FAA's objectives." *Blair*, 928 F.3d at 828. "'The FAA was designed to promote arbitration,' as it reflects a 'national policy favoring arbitration.'" *Chamber of Commerce*, 2020 WL 605877, at *13 (quoting *Concepcion*, 563 U.S. at 345–46). "Any law, therefore, that 'stands as an obstacle to the accomplishment . . . of the full purposes and objectives of Congress . . . is pre-empted by the FAA.'" *Id.*

SB 707 undermines the FAA's objectives by targeting and discouraging the drafting of arbitration agreements. Beyond stating that a drafting party is automatically in material breach of its arbitration agreement if it does not pay arbitration fees for any reason, SB 707 mandates "monetary sanction[s]" and permits significant non-monetary sanctions, including "eviden[tiary] sanction[s]," "terminating sanction[s]," and even a "contempt sanction." Cal. Civ. Proc. Code § 1281.99(a)–(b). These penalties far exceed those available for an ordinary breach of contract under state law. Like AB 51, which was recently enjoined as preempted by the FAA, SB 707 will "have a deterrent effect on [companies'] use of arbitration agreements given the [significant] sanctions associated with violating the law." *Chamber of Commerce*, 2020 WL 605877, at *13.

Moreover, SB 707 prevents arbitration agreements from being enforced "according to their terms." *Epic Sys.*, 138 S. Ct. at 1619; *Concepcion*, 563 U.S. at 344. Parties to arbitration agreements agree to certain terms, including, as relevant here, the rules for filing fees and the consequences for failing to pay those fees. *See* AAA Employment Arb. Rules, R-43. The FAA preempts state laws that (as here) "would impose inconsistent and conflicting procedural rules upon those specifically agreed upon by the parties." *Mayo v. Dean Witter Reynolds, Inc.*, 258 F. Supp. 2d 1097, 1114 (N.D. Cal. 2003). SB 707's usurpation of the procedural rules to which the parties agreed directly impedes the FAA's command. *Epic Sys.*, 138 S. Ct. at 1619.

*Second*, SB 707 "is preempted by the FAA because it singles out arbitration" agreements for "unequal treatment," *Chamber of Commerce*, 2020 WL 605877, at *10, 11, 13, by precluding drafting parties from enforcing arbitration agreements under a rule "applicable only to [such] agreements," *Doctor's Assocs., Inc. v. Casaratto*, 517 U.S. 681, 687 (1996). Indeed, "on its face," *Kindred*, 137 S. Ct. at 1426, SB 707 applies *only* to arbitration agreements, and provides that *only* the "drafting party" is "in material breach of the arbitration agreement, is in default of the arbitration, and waives its right to compel arbitration" if it fails to pay certain arbitration fees "within 30 days after the due date"—regardless of the reason for the nonpayment, Cal. Civ. Proc. Code

1    § 1281.97(a); *see also Chamber of Commerce*, 2020 WL 605877, at \*11.

2         SB 707 conditions a drafting party's ability to enforce its agreement on its

3    continued payment of arbitration fees—even if the non-drafting party first breached the

4    agreement by seeking to arbitrate in a contractually forbidden manner, refusing to pay

5    its own fees, or otherwise.  In other words, even if the non-drafting party materially

6    breaches the agreement, SB 707 requires a drafting party to continue performing as a

7    condition to enforcing the agreement.  Under ordinary contract law, a drafting party

8    would be "discharged from its duty to perform under the contract" if the other party

9    materially breaches the contract, *Brown v. Grimes*, 192 Cal. App. 4th 265, 277 (2011)—

10   meaning that it would ordinarily not have to continue paying fees to enforce the

11   agreement against the breaching party.  SB 707 thus subjects arbitration agreements "to

12   uncommon barriers" by requiring the drafting party of an arbitration agreement—and no

13   other type of agreement—to continue performing just to enforce its agreement, or risk

14   having the agreement invalidated.  *Kindred*, 137 S. Ct. at 1427.

15        SB 707 also "fails to put arbitration agreements on an equal plane with other

16   contracts" by permitting a breaching non-drafting party to enforce the agreement if the

17   drafting party later refuses to pay arbitration fees as a result of the non-drafting party's

18   breach.  *Kindred*, 137 S. Ct. at 1426–27.  Permitting breaching non-drafting parties to

19   arbitration agreements—and no other type of agreement—to enforce the agreement is

20   plainly contrary to the very "bedrock principle of California contract law" that SB 707

21   purports to implement:  that "he who seeks to enforce a contract must show that he has

22   complied with the conditions and agreements of the contract on his part to be

23   performed."  *Brown v. Dillard's, Inc.*, 430 F.3d 1004, 1010 (9th Cir. 2005).

24        Courts have been instructed to be wary of "new devices and formulas" that fail to

25   put arbitration agreements on equal footing with other contracts.  *Epic Sys.*, 138 S. Ct.

26   at 1623.  SB 707 is "just such a device," *id.*, and is therefore preempted by the FAA.

27        **b.      SB 707 Unconstitutionally Impairs Postmates' Contracts**

28        SB 707 also violates the Contracts Clauses of the United States and California

Constitutions, both of which prohibit the legislature from enacting a "law impairing the obligation of contracts." Cal. Const. art I, § 9; U.S. Const. art I, § 10, cl. 1. The Contracts Clauses "restrict[] the power of States to disrupt contractual arrangements," *Cal Fire Local 2881 v. Cal. Pub. Emps' Ret. Sys.*, 6 Cal. 5th 965, 977 (2019) (quoting *Sveen v. Melin*, 138 S. Ct. 1815, 1821 (2018)); indeed, the federal Contracts Clause "was perhaps the strongest single constitutional check on state legislation during our early years as a Nation," *Allied Structural Steel Co. v. Spannaus*, 438 U.S. 234, 241 (1978).

To determine whether a statute violates the Contracts Clause, courts "appl[y] a two-step test." *Sveen*, 138 S. Ct. at 1821.[4] The threshold issue is whether the statute has "operated as a substantial impairment of a contractual relationship." *Id.* at 1821–22. If the statute imposes a substantial impairment, "the inquiry turns to . . . whether the state law is drawn in an 'appropriate' and 'reasonable' way to advance 'a significant and legitimate public purpose.'" *Id.* at 1822. Both elements are satisfied here.

**<u>Substantial Impairment</u>.** The substantial impairment inquiry has three components: "whether there is a contractual relationship, whether a change in law impairs that contractual relationship, and whether the impairment is substantial." *Gen. Motors Corp. v. Romein*, 503 U.S. 181, 186 (1992). The first component is satisfied if there is an agreement regarding the specific terms at issue. *RUI One Corp. v. City of Berkeley*, 371 F.3d 1137, 1147 (9th Cir. 2004). Courts evaluating whether the impairment is substantial consider "the extent to which the law undermines the contractual bargain, interferes with a party's reasonable expectations, and prevents the party from safeguarding or reinstating his rights." *Sveen*, 138 S. Ct. at 1822.

Here, SB 707 substantially impairs Postmates' arbitration agreement to which each Defendant purportedly agreed—and, specifically, the requirement that *both* parties abide by their contractual obligations and pay their share of filing fees. The Mutual Arbitration Provision provides that, as a condition of commencing arbitration,

---

[4] The same analysis applies to the California Constitution's Contracts Clause. *See Calfarm Ins. Co. v. Deukmejian*, 48 Cal. 3d 805, 830 (1989); *Hellinger v. Farmers Grp., Inc.*, 91 Cal. App. 4th 1049, 1062 (2001).

"Postmates *and* [courier] shall equally share filing fees and other similar and usual administrative costs, as are common to both court and administrative proceedings." Cartes Andres Decl. Ex. A § 10B(vi)(2) (emphasis added). But SB 707 substantially impairs the parties' agreements by requiring *only* Postmates to pay its share of the arbitration fees—even if the courier materially breaches the contract by filing an arbitration demand in contravention of the agreement's individual arbitration mandate, failing to pay its share of the fees, or otherwise. SB 707 forgives a courier's non-compliance with the parties' agreement, yet requires Postmates to continue performing under the contract even if the courier has already materially breached. *See* Cal. Civ. Proc. Code § 1281.97(a). SB 707 "defeats the expectations of the parties," *S. Cal. Gas Co. v. City of Santa Ana*, 336 F.3d 885, 890 (9th Cir. 2003), both of which entered into the agreement expecting that one party's material breach would excuse the other's continued performance, *Dillard's*, 430 F.3d at 1010; *Grimes*, 192 Cal. App. 4th at 277.

**"Appropriate" and "Reasonable" Tailoring.** Courts next inquire "whether the state law is drawn in an appropriate and reasonable way to advance a significant and legitimate public purpose." *Sveen*, 138 S. Ct at 1822. Where, as here, the law imposes a substantial impairment, a "more searching . . . examination of the legislation" is warranted. *Campanelli v. Allstate Life Ins. Co.*, 322 F.3d 1086, 1098 (9th Cir. 2003); *In re Workers' Comp. Refund*, 46 F.3d 813, 819 (8th Cir. 1995) ("heightened impairment triggers heightened scrutiny"). Even "significant and legitimate public purposes" cannot justify impairment of contracts without "moderation or reason" or if it is done "in the spirit of oppression." *Allied Structural*, 438 U.S. at 243.

Here, SB 707 is not reasonably tailored to a legitimate purpose. The law was enacted to ensure that drafting parties pay arbitration fees when individuals "have been *forced* to submit to *mandatory* arbitration" as a condition of employment. Cal. Sen. Rules Comm., Off. of Sen. Floor Analyses, Third Reading of Sen. Bill No. 707, 2019-2020 Reg. Sess., at 4 (2019) (emphases added); Cal. Off. of Legis. Couns., SB 707, Legislative Counsel's Digest, Chapt. 870, at 3 (2019). But targeting and disfavoring

arbitration agreements is not a legitimate purpose; it is an *illegal* purpose that violates clearly established federal law. *See Keating*, 465 U.S. at 13 (holding that the FAA is to be "unencumbered by state law constraints"). Even so, the law's text goes much further than its stated purpose and authorizes substantial penalties on *all* drafting parties of arbitration agreements—including companies like Postmates that indisputably do not "force" individuals to submit to "mandatory" arbitration as a condition of employment. Indeed, every courier may opt out of arbitration by submitting an opt out request within 30 days of signing the Fleet Agreement. That SB 707's text goes far beyond its stated purpose in order to reach *all* drafting parties of *all* arbitration agreements demonstrates that the law was enacted "in the spirit of oppression" and to discourage the drafting of arbitration agreements—in violation of federal law. *Allied Structural*, 438 U.S. at 243.

## B. Postmates Will Be Irreparably Harmed Absent Injunctive Relief

A preliminary injunction is necessary to prevent *imminent* and *irreparable* harms to Postmates if Defendants are permitted to arbitrate in a de facto class manner and to enforce SB 707 against Postmates.[5] *See Winter*, 555 U.S. at 20, 22.

By April 15—the date by which AAA will "close" the Defendants' demands so that Defendants may enforce SB 707—Postmates will face an impossible choice: it can either pay over $4 million in unrecoverable arbitration filing fees to AAA and commence de facto class arbitration in contravention of the terms of the parties' arbitration agreements, or it can insist on individual arbitration and not pay the fees, which would subject it to unrecoverable and severe penalties under SB 707 (including being forced to arbitrate Defendants' de facto class demands anyway). Whichever option Postmates chooses, irreparable harm follows. *See Am. Trucking Ass'ns, Inc. v. City of Los Angeles*,

---

[5] Postmates timely sought injunctive relief as soon as practicable. Postmates and Keller Lenkner participated in a full-day mediation on March 31, 2020, in an attempt to resolve this dispute and others. Evangelis Decl. ¶ 54. Those efforts were unsuccessful, and on the morning of April 2, 2020, Keller Lenkner insisted that the cases proceed and advanced filing fees for 100 cases—necessitating this motion. *Id.* Postmates thus has not delayed seeking relief here. *See, e.g., Arc of Cal. v. Douglas*, 757 F.3d 975, 991 (9th Cir. 2014) ("waiting to file for preliminary relief until a credible case for irreparable harm can be made is prudent rather than dilatory"); *Garcia v. Google, Inc.*, 766 F.3d 929, 938 (9th Cir. 2014) (similar).

559 F.3d 1046, 1057 (9th Cir. 2009) ("an imminent harm" exists where "a very real penalty attaches to the [moving parties] regardless of how they proceed"); *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 381 (1992) (irreparable injury exists where moving party, in light of threat of enforcement of unconstitutional state law, is left with the untenable choice between obeying the law or facing penalties for its violation).

*First*, if Postmates chooses to abandon individual arbitration and simply pay the filing fees to avoid SB 707's penalties, Postmates would (a) be assenting to improper de facto class arbitration, and (b) suffer economic loss in the form of filing fees that would not be recoverable in the ordinary course of litigation because they would be paid to AAA—not Defendants.  *See Philip Morris USA Inc. v. Scott*, 561 U.S. 1301, 1304 (2010) (Scalia, J., in chambers) ("If expenditures cannot be recouped, the resulting loss may be irreparable."); *see also Chamber of Commerce of U.S. v. Edmondson*, 594 F.3d 742, 770–71 (10th Cir. 2010) (same); *Textile Unlimited, Inc. v. A..BMH & Co.*, 240 F.3d 781, 786 (9th Cir. 2001) (affirming irreparable harm finding stemming from incurring unrecoverable arbitration costs in arbitration proceeding to which party did not agree); *accord Merrill Lynch Inv. Managers v. Optibase, Ltd.*, 37 F.3d 125, 129 (2d Cir. 2003); *Pension Plan for Pension Tr. Fund of Operating Eng'r v. Weldway Constr., Inc.*, 920 F. Supp. 2d 1034, 1049 (N.D. Cal. 2013); *Bernardi*, 2011 WL 5079549, at *10.

*Second*, if Postmates chooses to insist on the individual arbitration to which the parties agreed, as opposed to de facto class arbitration, and *declines* to pay the arbitration fees, Postmates would suffer a constitutional violation at the hands of SB 707.  Even an "*alleged* constitutional infringement will often alone constitute irreparable harm." *Monterey Mech. Co. v. Wilson*, 125 F.3d 702, 715 (9th Cir. 1997) (emphasis added); *Goldie's Bookstore, Inc. v. Super. Ct.*, 739 F.2d 466, 472 (9th Cir. 1984) (same).

Postmates also would face severe penalties under SB 707.  Specifically, it would give Defendants their choice of either:  (a) compelling Postmates to arbitrate their de facto class demands, pay filing fees, and pay Keller Lenkner's attorneys' fees and costs—all without a mechanism for challenging whether arbitration was validly

commenced, Cal. Civ. Proc. Code § 1281.97(b)(2)—or (b) proceeding in court notwithstanding the parties' arbitration agreement, obtaining attorneys' fees and costs, and seeking additional non-monetary sanctions, *id.* § 1281.97(b)(1). SB 707 would permit Defendants to flout the terms of their arbitration agreements and, in doing so, to subject the *opposing party* to terminating sanctions and even contempt.

SB 707 thus ensures that regardless whether Postmates pays the AAA fees by April 15, the individual arbitration requirement that the parties agreed to will be eviscerated. Courts have held that state laws that force parties to either forgo arbitration provisions or face unrecoverable penalties give rise to irreparable harm. In *Chamber of Commerce*, for example, the court found that irreparable harm flowed from a California law that would have required businesses to either provide opt-out provisions in arbitration clauses or risk incurring civil penalties. 2020 WL 605877, at *16–18. The law impermissibly forced businesses to choose between noncompliance "risk[ing] criminal prosecution and civil enforcement action," or being "'coerced into compliance' for fear of penalties," which would result in "businesses [] inevitably 'forego[ing] their federally protected rights to enter into predispute arbitration agreements.'" *Id.* at *16. The same is true here. If Postmates does not comply with SB 707, it would be subject to mandatory fee-shifting and to evidentiary, case-terminating, and contempt sanctions. If, instead, Postmates pays the arbitration fees to *avoid* SB 707's penalties, it would be acceding to de facto class arbitration and lose the benefit of its individual arbitration requirement—*i.e.*, "contractual behavior governed by the FAA and likely protected under the Supremacy Clause." *Id.* at *17.

Moreover, "most, if not all courts hold that being required to arbitrate a dispute that the parties did not agree to arbitrate is per se irreparable harm." *Morgan Stanley & Co., LLC v. Couch*, 134 F. Supp. 3d 1215, 1235 (E.D. Cal. 2015), *aff'd*, 659 F. App'x 402 (9th Cir. 2016); *PaineWebber, Inc. v. Hartmann*, 921 F.2d 507, 515 (3d Cir. 1990) (party "would suffer irreparable harm if it were forced to submit to the arbitrator's jurisdiction"). Even cases with contrary holdings confirm that the choice posed by SB

707 does in *this context*.  In *Camping Construction Co. v. District Council of Iron Workers*, 915 F.2d 1333, 1349 (9th Cir. 1990), the Ninth Circuit held that "the short time and slight expense involved in the typical arbitration" did not qualify as irreparable harm, as the objecting party "would probably save time and money" by submitting to arbitration in the individual setting there.  *Id.*  Not so here, as SB 707 would require Postmates to shoulder over $4 million in fees *just to begin arbitrating* and *still* require it to submit to de facto class arbitration so intrinsically different from individual arbitration that it fundamentally changes the nature of the dispute.  *Lamps Plus*, 139 S. Ct. at 1416.

The "choice" SB 707 imposes on Postmates—either arbitrate in a manner contrary to the parties' agreement and pay $4 million in unrecoverable fees, or insist on individual arbitration and subjecting itself to penalties—is an irreparable injury.

## C. The Balance Of The Equities Tips Sharply In Postmates' Favor

The balance of the equities favors an injunction, which would (i) preserve Postmates' rights under the FAA, the federal and state constitutions, and its agreements with the individual Defendants to resolve disputes through individual arbitration, and (ii) spare Postmates the expense of paying nonrefundable filing fees that it is not lawfully required to pay in the first place, while (iii) imposing no burdens on Defendants.

The balance of the equities favors an injunction where, as here, the plaintiff would "be required to expend time and resources litigating claims" in arbitration that the other party "has no right to pursue." *Morgan Stanley*, 134 F. Supp. 3d at 1236–37; *Walsh v. Zazzali*, 2016 WL 7647556, at *6 (C.D. Cal. Feb. 8, 2016) (same); *OppenheimerFunds Distrib., Inc. v. Liska*, 2011 WL 5984036, at *5 (S.D. Cal. Nov. 28, 2011) (same).  Courts also have concluded that equity favors an injunction where a party would be forced to make expenditures that likely cannot be recovered—like the $4 million in nonrefundable filing fees that Postmates would be forced to pay here.  *See Johnson v. Couturier*, 572 F.3d 1067, 1081–82 (9th Cir. 2009); *Sunlight Prod. Techs., Ltd. v. MPOWERD Inc.*, 2015 WL 12655472, at *8 (C.D. Cal. Mar. 23, 2015) (granting injunction where the plaintiff "ha[d] already received a bill for $15,560 from the AAA for fees associated

1   with the arbitration"). Thus, the Court should enjoin enforcement of SB 707 to preserve

2   Postmates' rights under its agreements and spare Postmates the significant costs of a de

3   facto class arbitration that Defendants have no right to pursue in the first place.

4          Enjoining enforcement of SB 707 also is necessary to preserve Postmates' rights

5   under the FAA and the U.S. and California Constitutions. Postmates has shown that SB

6   707 likely is incompatible with the FAA and the Contracts Clause, and that Postmates

7   would continue to suffer irreparable harm if defendants are permitted to invoke it.

8   Although Defendants have an interest in invoking SB 707 to shift the cost of arbitration

9   onto Postmates to extort a favorable settlement, "the interest of preserving the

10  Supremacy Clause is paramount," and "it would not be equitable" to permit the violation

11  of Postmates' rights under federal law. *Cal. Pharmacists Ass'n v. Maxwell-Jolly*, 563

12  F.3d 847, 852–53 (9th Cir. 2009), *vacated and remanded on other grounds by* 565 U.S.

13  606 (2012); *see Chamber of Commerce*, 2020 WL 605877, at *18 (equities favored

14  enjoining enforcement of AB 51 to avoid invading plaintiffs' rights under the FAA).

15         In the unlikely event Defendants are permitted to proceed with de facto class

16  arbitration and SB 707 is found not preempted, Defendants would have suffered no

17  harm. A preliminary injunction would preserve the status quo until the parties' dispute

18  is resolved. *Boardman v. Pac. Seafood Grp.*, 822 F.3d 1011, 1023 (9th Cir. 2016)

19  (affirming preliminary injunction where defendants did not "establish[] how maintaining

20  the status quo . . . will injure them"); *OppenheimerFunds*, 2011 WL 5984036, at *5.

21  Although an injunction would mean that Defendants' "ability to arbitrate th[eir]

22  dispute[s] would . . . be delayed," they would "not [be] precluded" from arbitrating their

23  disputes in the manner required by the parties' agreements. *COR Clearing, LLC v.*

24  *LoBue*, 2016 WL 9088704, at *4 (C.D. Cal. June 16, 2016); *World Grp. Sec. v. Tiu*, 2003

25  WL 26119461, at *8 (C.D. Cal. July 22, 2003) (granting injunction where "Defendant

26  may be able to obtain full recovery" in later arbitration).

27         Postmates, by contrast, is likely to suffer a battery of irreparable injuries absent

28  an injunction, including the loss of its rights under the FAA to pursue the method of

dispute resolution by which it expressly agreed to resolve disputes with Defendants. *See Chamber of Commerce*, 2020 WL 605877, at *18 (equities favored injunction when "[i]n the unlikely event AB 51 is later found compatible with the FAA and not preempted, defendants will have suffered the minimal harm of delayed enforcement, whereas plaintiffs are likely to have suffered harm that cannot be remedied"). Moreover, Defendants "ha[ve] no legitimate interest in enforcing [SB 707 as] an unconstitutional" statute. *KH Outdoor, LLC v. City of Trussville*, 458 F.3d 1261, 1272 (11th Cir. 2006).

### D. The Public Interest Favors A Preliminary Injunction

A preliminary injunction also is in the public interest. Courts may only order arbitration to proceed "in the manner provided for in [the parties'] agreement," 9 U.S.C. § 4, and thus "[a]llowing an arbitration to proceed [contrary to] an agreement to arbitrate does not serve the public interest," *COR Clearing*, 2016 WL 9088704, at *4–5; *see also Walsh*, 2016 WL 7647556, at *6 (same). Courts routinely enjoin arbitrations where, as here, the arbitration would not comport with the parties' agreements. *E.g.*, *Morgan Stanley*, 659 F. App'x at 406; *Sunlight Prod. Techs.*, 2015 WL 12655472, at *8; *Ingram Micro Inc. v. Signeo Int'l, Ltd.*, 2014 WL 3721197, at *5 (C.D. Cal. July 22, 2014); *World Grp. Sec.*, 2003 WL 26119461, at *8.

It also is in the public interest to enjoin enforcement of SB 707. "'[I]t would not be equitable or in the public's interest to allow'" a continuing violation of federal law, "'especially when there are no adequate remedies available to compensate [the plaintiff] for the irreparable harm that would be caused by the continuing violation.'" *Chamber of Commerce*, 2020 WL 605877, at *18 (quoting *Cal. Pharmacists*, 563 F.3d at 852–53). Moreover, "it is always in the public interest to prevent the violation of a party's constitutional rights." *Id.* (quoting *Am. Beverage Ass'n v. City & Cty. of S.F.*, 916 F.3d 749, 758 (9th Cir. 2019)). The public interest supports a preliminary injunction.

### V. CONCLUSION

Postmates respectfully requests that the Court preliminarily enjoin Defendants from pursuing de facto class arbitration and enforcing SB 707 against Postmates.

Dated:  April 3, 2020

THEANE EVANGELIS
DHANANJAY S. MANTHRIPRAGADA
MICHELE L. MARYOTT
SHAUN A. MATHUR
GIBSON, DUNN & CRUTCHER LLP

By:  /s/ *Theane Evangelis*
               Theane Evangelis

Attorneys for Plaintiff POSTMATES INC.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Gibson, Dunn &
Crutcher LLP

26