THEANE EVANGELIS, SBN 243570
  tevangelis@gibsondunn.com
DHANANJAY S. MANTHRIPRAGADA, SBN 254433
  dmanthripragada@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA 90071-3197
Telephone: 213.229.7000
Facsimile: 213.229.7520

MICHELE L. MARYOTT, SBN 191993
  mmaryott@gibsondunn.com
SHAUN A. MATHUR, SBN 311029
  smathur@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
3161 Michelson Drive
Irvine, CA 92612-4412
Telephone: 949.451.3800
Facsimile: 949.451.4220

Attorneys for Plaintiff POSTMATES INC.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| POSTMATES INC.,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>10,356 INDIVIDUALS,<br><br>　　　　　Defendants. | CASE NO. 2:20-cv-02783-PSG<br><br>**DECLARATION OF THEANE EVANGELIS IN SUPPORT OF POSTMATES' MOTION FOR PRELIMINARY INJUNCTION**<br><br>**Hearing:**<br>Date:　May 4, 2020<br>Time:　1:30 p.m.<br>Judge:　Hon. Philip S. Gutierrez |

## DECLARATION OF THEANE EVANGELIS

I, Theane Evangelis, hereby declare and state:

1.  I am an attorney duly licensed to practice law before all the courts of the State of California as well as the United States District Court for the Central District of California. I am a partner at the law firm of Gibson, Dunn & Crutcher LLP, and am one of the attorneys of record for Plaintiff Postmates Inc. in the above-entitled action. Unless otherwise stated, I have personal knowledge of the matters stated herein, and if asked to testify thereto, I would do so competently.

2.  I submit this declaration in support of Postmates' Motion for Preliminary Injunction.

3.  On March 6, 2019, counsel for Defendants, Keller Lenkner LLC, wrote to Postmates' General Counsel, asserting that Keller Lenkner "represents more than 3,000 Postmates drivers in California and Illinois" who allegedly had been misclassified as independent contractors. Counsel stated that his law firm would "proceed with every arbitration simultaneously" unless the parties could "agree on an alternative proves for resolving [his] clients' claims." Counsel further stated that "proceeding to arbitration would obligate Postmates to pay AAA more than $20 million," and that "[t]hese numbers will continue to grow, as roughly 500 additional drivers engage our firm each week." A true and correct copy of Keller Lenkner's March 6, 2019 letter is attached as **Exhibit A**.

4.  On April 22, 2019, Keller Lenkner sent the following documents to AAA: (1) a cover letter requesting that AAA invoice Postmates for arbitration filing fees related to 4,925 alleged claimants; (2) a single document setting forth the alleged claimants' grievances in generic terms that were not specific to any particular individual; (3) a spreadsheet listing the 4,925 alleged claimants to whom Keller Lenkner asserted that the claims document uniformly applied; (4) a packet of fee waiver applications asserting that 4,593 of the alleged claimants were entitled to fee waivers pursuant to California Code of Civil Procedure section 1284.3; and (5) copies of Postmates' May

2018 and April 2019 Fleet Agreements. These documents were sent to counsel for Postmates via email. A true and correct copy of Keller Lenkner's April 22, 2019 cover letter is attached as **Exhibit B**. A true and correct copy of the grievance document, which was provided as Attachment B to Keller Lenkner's April 22, 2019 letter, is attached as **Exhibit C**.

5. On May 13, 2019, Keller Lenkner sent to AAA by email: (1) a cover email requesting that AAA invoice Postmates for arbitration filing fees related to 768 alleged claimants; (2) a spreadsheet listing the 768 alleged claimants; (3) a single document setting forth the alleged California claimants' grievances in generic terms that were not specific to any particular individual; (4) a single document setting forth the alleged Illinois claimants' grievances in generic terms that were not specific to any particular individual; and (5) a copy of Postmates' May 2018 Fleet Agreement. These documents were sent to counsel for Postmates via email. A true and correct copy of Keller Lenkner's May 13, 2019 cover email is attached as **Exhibit D**.

6. AAA assigned a single administrator to collectively administer all of the claimants' purported claims. Postmates expressed that it was ready and willing to arbitrate claims individually, but explained to AAA that Keller Lenkner's purported arbitration demands were insufficient to initiate arbitration under the Fleet Agreement. Nevertheless, AAA determined that it would administer the arbitrations and assess filing fees under its "Employment/Workplace Fee Schedule," which, at the time, called for assessment of a $1,900 administrative fee payable at the time of filing by a business against whom an arbitration demand was submitted.

7. Postmates and Keller Lenkner engaged in numerous meet and confer calls, in which Postmates raised concerns regarding whether Keller Lenkner actually represents each claimant it purports to represent. Keller Lenkner did not provide any proof demonstrating that it in fact represents each individual that it claims to represent.

8. Although it maintained that Keller Lenkner had not properly commenced arbitration, Postmates agreed to mediate with Keller Lenkner. The parties exchanged

Gibson, Dunn &
Crutcher LLP

1  mediator strike lists and selected a mediator, but the parties were unable to schedule a
2  formal mediation to take place in May, and Keller Lenkner refused to mediate in June
3  or July 2019.

4        9.    On May 31, 2019, AAA requested Postmates' position on whether AAA
5  may properly assess fees. Postmates responded by letter the same day, explaining that
6  no arbitration proceedings had begun because Keller Lenkner's arbitration demands
7  were deficient under the terms of the Fleet Agreement and AAA's rules. A true and
8  correct copy of Postmates' May 31, 2019 letter to AAA is attached as **Exhibit E**.

9        10.    On June 3, 2019 Keller Lenkner filed a Petition to Compel Arbitration in
10  the Northern District of California, seeking an order compelling Postmates to pay over
11  $11,000,000 in arbitration filing fees to AAA and commence arbitration with 5,257
12  purported California claimants. *Adams v. Postmates Inc.*, No. 3:19-cv-03042, Dkt. 1
13  (N.D. Cal. June 3, 2019). On the same day, the claimants also filed a Motion to Compel
14  Arbitration seeking the same relief. *Adams*, Dkt. 4. Postmates argued that Keller
15  Lenkner improperly sought to compel de facto class arbitration in violation of the Mutual
16  Arbitration Provision's Class Action Waiver, and filed a cross-motion to compel truly
17  individual arbitrations. *Adams*, Dkts. 112, 228.

18        11.    On June 7, 2019, AAA stated that it would "decline to administer" the
19  purported claims further unless Postmates paid $11,022,400 in "administrative fees" by
20  June 13, 2019. A true and correct copy of AAA's June 7, 2019 letter is attached as
21  **Exhibit F**.

22        12.    On June 10, 2019, Postmates responded to AAA and requested that AAA
23  suspend proceedings under AAA's Rules in light of the issues raised in *Adams*.
24  Postmates explained that it "is ready to arbitrate individual claims properly brought
25  under the terms of each individual's Fleet Agreement and AAA's rules," but that the
26  purported "[c]laimants have exploited AAA's rules by filing a collective demand and
27  simply referring to it as a group of 'individual' demands." Postmates reiterated that it
28  "is fully prepared to proceed with—and pay its share of the filing fees for—the

individual arbitration of any claimant who perfects his arbitration demand, provided that AAA can develop some type of reasonable payment plan that compensates AAA for administration costs *as cases are actually administered and prosecuted*, rather than inequitably and needlessly assessing fees for all cases at filing regardless of when a case will actually be able to proceed." A true and correct copy of Postmates' June 10, 2019 letter to AAA is attached as **Exhibit G**.

13. On June 11, 2019, the claimants sent new purported arbitration demands to Postmates by mail. These new purported demands continued to assert generic claims that appeared to have been copied and pasted thousands of times.

14. On June 17, 2019, AAA reiterated its position that Keller Lenkner's demands triggered arbitration proceedings and the imposition of filing fees, and offered to stay proceedings for $300 per claimant (over $1.5 million in total). A true and correct copy of the e-mail communications between AAA, Keller Lenkner, and Postmates between June 17, 2019 and December 6, 2019 are attached as **Exhibit H**. Keller Lenkner then requested that AAA "confirm that [Postmates] failed to meet the June 13 deadline and that AAA will decline to administer the cases due to [Postmates'] non-payment." A true and correct copy of this e-mail is attached as **Exhibit I**.

15. On June 19, 2019, Postmates stated that it is "open to a solution" but "cannot agree to the one AAA proposed this week, which would offer no protection against the future assessment of $10+ million in immediately-payable fees irrespective of whether claimants intend to and actually do pursue arbitrations diligently." Ex. H at 25. AAA responded on June 21, 2019, stating that it would close the cases but that AAA "will abide by any court order directing the manner in which the underlying arbitrations should or should not proceed." Ex. H at 24.

16. On October 22, 2019, the *Adams* Court entered an order granting in part and denying in part the cross-motions to compel arbitration. *Adams*, Dkt. 253. The court ordered the parties to arbitrate "in accordance with the Mandatory Arbitration Provision contained in the applicable Fleet Agreement," but it declined to issue an order

"compelling Postmates to pay outstanding and future arbitration fees" or to order couriers "to refile their demands and to proceed in a specific manner." *Id.* Postmates has appealed the court's order. *See Postmates v. Adams*, No. 19-17362 (9th Cir. 2020).

17. The same day, Keller Lenkner refiled substantively identical demands on behalf of 5,255 claimants with AAA, and asked AAA to invoice Postmates for filing fees. *See* Ex. H at 23.

18. On September 24, 2019, Keller Lenkner filed an arbitration demand on behalf of 1,250 additional claimants, seven days after learning that Postmates had entered into a proposed settlement in another case.

19. On September 26, 2019, Keller Lenkner filed a Petition to Compel Arbitration in the Northern District of Illinois, seeking an order requiring Postmates to "pay all arbitration filing fees" associated 200 demands previously filed on behalf of Illinois couriers. *McClenon v. Postmates Inc.*, No. 1:19-cv-06415, Dkt. 1 (N.D. Ill. Sept. 26, 2019). Postmates argued that Keller Lenkner sought to compel de facto class arbitration, and filed a cross-motion to compel individual arbitration as required by the Mutual Arbitration Provision's Class Action Waiver. *McClenon*, Dkts. 17, 18.

20. On October 25, 2019, Postmates sent AAA a letter requesting that the new 1,250 claimants' claims be held in abeyance pending approval of a class action settlement pending in *Rimler v. Postmates*, No. CGC-18-567868 (S.F. Super. Ct.). Postmates proposed that individual arbitrators be assigned to 50 randomly-selected claimants to resolve threshold demand sufficiency and filing fee disputes, and that arbitration proceed on the merits for any claimants who submitted a sufficient demand. As part of this proposal, 50 arbitrations would proceed on a rolling basis, so that 50 arbitrations were proceeding at all times. A true and correct copy of Postmates' October 25, 2019 letter is attached as **Exhibit J**.

21. On October 29, 2019, Keller Lenkner rejected Postmates' proposal in a letter to AAA. It stated that it would not consent to a "cap" on the number of arbitration demands AAA would administer at a given time and insisted that Postmates "submit

payment for each Claimant's individual arbitration without further delay." It did not explain how all claimants' arbitrations could proceed simultaneously. A true and correct copy of Keller Lenkner's October 29, 2019 letter is attached as **Exhibit K**.

22. On October 29, 2019, AAA notified Postmates that it had determined that the claimants had met their filing fee requirements as to the 5,255 demands that Keller Lenkner filed after this Court issued its October 22, 2019 Order, and requested that Postmates remit $10.1 million in filing fees by November 19, 2019. *See* Ex. H at 21.

23. On November 1, 2019, AAA acknowledged receipt of Postmates' October 25 letter and Keller Lenkner's October 29 letter. AAA stated that it was "available to work with the parties where they are able to reach an agreement" on procedures for administering the arbitrations, "such as moving forward on a rolling basis." A true and correct copy of this e-mail is attached as **Exhibit L**.

24. On November 19, 2019, Postmates wrote to AAA requesting a short extension of the payment deadline in view of the preliminary approval hearing scheduled in *Rimler* because the settlement would release the claimants' claims against Postmates, Keller Lenkner had filed a motion to intervene in that case, and a hearing was scheduled for November 22, 2019. AAA granted an extension. *See* Ex. H at 19–20.

25. On November 20, 2019, Postmates wrote to AAA and Keller Lenkner to inform them that Postmates had filed a notice of appeal in *Adams*, and to emphasize that it is "ready, willing, and able to conduct truly individualized arbitrations in a manner that is workable and manageable for all involved." Postmates reiterated its proposal that an arbitrator be appointed to resolve threshold issues for 50 randomly-selected claimants. It also stated that it was "willing to entertain alternative proposals from AAA and Claimants," and that it "believe[d] that the parties would greatly benefit from a proposal from AAA, in particular, on how truly individualized arbitrations could realistically proceed." Ex. H at 18.

26. On November 22, 2019, Keller Lenkner responded to Postmates' November 20 e-mail, providing an "update" on the *Rimler* settlement approval hearing,

and rejecting Postmates' proposal for commencing 50 arbitrations. Keller Lenkner did not offer a counter-proposal of its own. Instead, it stated that "[t]he only next step to which [it] will agree is for Postmates to pay the filing fees AAA has determined are required." Ex. H at 17–18.

27. On November 22, 2019, AAA responded, stating that because "the parties have been unable to reach an agreement on an alternative process for handling the demands for arbitration filed by Claimants," Postmates' fees remained due on November 25, 2019. It noted that "[i]f there is not an agreement on an alternative process and fees are not paid, the AAA will decline to administer these cases and the files will be closed." Ex. H at 16–17.

28. On November 25, 2009, Postmates wrote to AAA and Keller Lenkner, explaining that the *Rimler* court continued the preliminary approval hearing to January 31, 2020, and requesting an extension of the payment deadline as a result. Postmates also urged AAA "to propose or explain how Claimants' demands could realistically proceed." It acknowledged that "AAA may believe that Claimants will not agree to any proposal from either Postmates or AAA," but said "that is no reason for AAA not to propose a solution to the manageability issues raised by mass arbitration." Postmates further explained that Keller Lenkner was insisting that Postmates pay all fees upfront, even though the *Adams* court expressly declined to order Postmates to pay such fees. Ex. H at 15–16.

29. Keller Lenkner opposed Postmates' November 25 request for an extension of the payment deadline. The same day, AAA responded and stated that "absent agreement of the parties on an alternative process," Postmates' fees remained due on November 25. Ex. H at 14–15.

30. Postmates followed up the same day, stating that it understood AAA's correspondence to mean "that AAA has no objection to Postmates' proposal . . . to have arbitrations commence," and that "the reason AAA will not administer the demands according to Postmates' proposal is that Claimants' counsel will not agree to the

proposal and the 'only next step' that Claimants' counsel agrees to is the payment by Postmates of all assessed filing fees." Postmates asked AAA "to clarify if any of this is incorrect." Ex. H at 13.

31. On November 26, 2019, Keller Lenkner responded, claiming that Postmates proposal sought to "prioritiz[e] some Claimants' demands over others and delay[] most Claimants' arbitrations indefinitely." Keller Lenkner also stated that "AAA made an administrative determination that Claimants met all of their filing requirements," that "the only step remaining is for Postmates to remit the full payment that AAA has determined Postmates owes," and that "if Postmates fails to pay its filing fees, that refusal will cause AAA to administratively close Petitioners' arbitrations." Ex. H at 13.

32. That same day, AAA wrote to Postmates and Keller Lenkner to inform them that it had administratively closed the files. Ex. H at 12. Postmates responded and reiterated its request that AAA explain how it proposed to administer Petitioners' arbitrations. Postmates specifically requested "that AAA send the parties a list of all arbitrators that AAA would make available for arbitration of these matters and their availability over the next year or more (whatever information is available)." Ex. H at 11.

33. On November 27, 2019, Keller Lenkner filed a motion for an order to cause in *Adams*, arguing that Postmates should be held in civil contempt because it had not paid filing fees for all 5,255 claimants. *Adams*, Dkt. 256. Postmates explained that it was prepared to arbitrate on a truly individual basis, and that it could not be held in contempt because the court had expressly declined to order Postmates to pay fees. *Adams*, Dkt. 262.

34. On November 27, 2019, Postmates wrote to AAA and Keller Lenkner to request that AAA reopen its files as to the 5,255 *Adams* claimants. It also "offer[ed] to remit payment for 50 randomly-selected arbitrations," under an express reservation of its right to raise demand sufficiency issues with the arbitrators. It explained that its

proposal "will allow the parties to begin arbitrating expeditiously and in a manner that allows them to better understand how AAA intends to administer all 5,000-plus arbitrations simultaneously." Postmates stated that it was "not married to this proposal" and would "gladly entertain a proposal from Petitioners or AAA on how all the arbitrations could proceed—simultaneously, staged, or otherwise." It also repeated its request "that AAA share a list of all arbitrators that AAA would make available for arbitration of these matters and their availability." Ex. H at 10–11.

35. On November 29, 2019, Keller Lenkner responded to Postmates' November 27 proposal by stating that they now had no objection to reopening the arbitrations of 50 claimants, but "that would provide no basis to reopen the arbitrations" of other claimants. They asserted that each claimant has an "individual right to arbitrate without delay," but did not propose a method for arbitrating the claims of 5,255 claimants "without delay." Ex. H at 9–10.

36. On December 3, 2019, Postmates explained that it "is prepared to move forward, under a reservation of rights, with 50 arbitrations and pay fees associated with those 50," and requested that AAA "send an invoice for the 50 which will be paid expeditiously." Postmates also reiterated its request for "basic information from the AAA so that it can evaluate what would happen to the remaining claims," and explained that it "is entitled to understand the effect of Claimants' improper attempts to overwhelm the system, and to know whether it is being asked to pay fees for arbitrations long before they ever proceed." Ex. H at 6. In response, Keller Lenkner stated that "[i]f Postmates truly wants to proceed with 50 arbitrations without conditions, it should identify those individuals and pay the requisite filing fees so the process can commence as to those 50 claimants." Ex. H at 6.

37. On December 4, 2019, Postmates inquired whether AAA would be sending an invoice for filing fees or otherwise moving forward with reopening 50 arbitrations. Postmates also asked whether "AAA is refusing to provide the requested information as to the other matters." Ex. H at 4.

38. On December 6, 2019, AAA held an administrative conference with the parties. During the conference, Postmates reiterated its offer to remit filing fees for 50 arbitrations, and asked AAA to reopen the remaining matters and provide the requested information. Keller Lenkner did not object to beginning 50 arbitrations, but it insisted that the remaining matters should not be reopened. The AAA administrator also refused to provide the requested information. When asked why, the AAA administrator stated that AAA does not provide services for free. To address that concern, and to ensure that it has sufficient information to evaluate how AAA would administer the other 5,205 arbitrations, Postmates offered to pay AAA for its time spent providing the requested information, and to pay for any additional hearings regarding Postmates' requests for information and for the reopening of all matters. The AAA administrator stated that Postmates could submit a formal request in writing, which would be reconsidered and escalated within AAA. Following the administrative conference, AAA and Postmates sent emails memorializing the discussions. Ex. H at 1–2.

39. On December 10, 2019, Postmates submitted a formal request to AAA. It asked AAA for specific categories of information, including "a list of all arbitrators that AAA would make available for arbitration of these matters and their availability over the next year or more." Postmates also identified 50 claimants whose arbitrations should begin immediately. And it identified 1,299 claimants who indisputably have no claims: 715 claimants who have never accepted the Fleet Agreement, 480 additional claimants who never used the Postmates platform to make a delivery, 95 additional claimants whose claims had been released as part of the class action settlement finally approved in *Singer v. Postmates, Inc.*, No. 4:15-cv-01284-JSW, Dkt. 98 (N.D. Cal. Apr. 25, 2018), and 9 claimants who had elected not to move forward. A true and correct copy of Postmates' request to AAA is attached as **Exhibit M**.

40. On December 11, 2019, Keller Lenkner wrote to AAA and Postmates, arguing that "Postmates has no basis to ask AAA to reverse its decision to close Claimants' arbitrations." Keller Lenkner also suggested that Postmates should be

required to pay filing fees for claimants who never signed the Fleet Agreement, stating that Postmates "has now waived three times over any objection regarding the existence of a valid arbitration agreement with Claimants." Keller Lenkner further stated that "substantially all of the people Postmates cannot find could likely be identified based on supplemental information we could provide," but did not provide any "supplemental information." A true and correct copy of this e-mail is attached as **Exhibit N**.

41. Keller Lenkner also separately wrote to Postmates' counsel concerning "the list of *Adams* Petitioners Postmates sent to AAA who Postmates claims it cannot locate in its records and are therefore not a party to a valid arbitration agreement with Postmates." Keller Lenkner did not deny that 480 claimants never used the Postmates platform to make a delivery, or that 95 additional claimants released their claims in the *Singer* settlement. Nor did it express any specific disagreement as to a single one of the 715 claimants identified by Postmates as not having signed the Fleet Agreement. Instead, Keller Lenkner again suggested that Postmates should be forced to arbitrate with claimants who never signed the Fleet Agreement, stating that "Postmates is under a federal Court order to arbitrate with each *Adams* Petitioner and cannot disregard that order simply because it regrets its tactical to [sic] decision not [to] raise certain arguments with the *Adams* Court." Keller Lenkner then offered to "provide supplemental information to help [Postmates] identify the remaining Petitioners," but asked that Postmates first confirm that "it has conducted a proper search." Keller Lenkner did not explain what it considered to be a "proper search." A true and correct copy of this e-mail is attached as **Exhibit O**.

42. Postmates wrote three e-mails in response. In the first e-mail, Postmates explained that Keller Lenkner did not "object[] to the immediate commencement of the 50 arbitrations," "to the AAA providing the information that Postmates has requested from the AAA on numerous occasions," or "to the AAA complying with its 'limited' procedures, at Postmates' expense, in order to provide the requested information." Postmates also observed that Keller Lenkner did not disagree "as to a single one of the

715 people identified by Postmates as not having signed the Fleet Agreement," "as to a single one of the 480 people identified by Postmates as not having ever completed a delivery on the Postmates platform," or "as to a single one of the 95 people identified as having already settled the very claims that [Keller Lenkner] purports to want to bring again on their behalf." And Postmates stated that Keller Lenkner's "failure to disagree as to any of these people constitutes a stunning admission that the AAA should not invoice any fees for these claims and they should not be permitted to proceed even if, after the AAA provides the requested information, any other claims are permitted to proceed." Postmates invited Keller Lenkner to provide any "additional information that may answer" why Keller Lenkner "wrongfully asserted that over 1,200 people had valid claims to pursue in the AAA." A true and correct copy of this e-mail is attached as **Exhibit P**.

43. In the second e-mail, Postmates stated that it would provide "the applicable arbitration agreement" for each of the 50 claimants whose claims shall proceed to arbitration, even though "it is Keller Lenkner's obligation" to do so under Rule 4 of AAA's Commercial Arbitration Rules and Mediation Procedures. Postmates also asked AAA to confirm whether it has the applicable arbitration agreement for each of the remaining 5,205 claimants. A true and correct copy of this e-mail is attached as **Exhibit Q**. In the third e-mail, Postmates asked Keller Lenkner to provide any "additional information that Postmates might consider in evaluating whether one or more of the people identified in Postmates' correspondence was allegedly included by error." A true and correct copy of this e-mail is attached as **Exhibit R**.

44. On December 13, 2019, AAA sent an invoice to Postmates for the filing fees associated with 50 claimants identified in its letter, which Postmates timely paid. AAA began assigning arbitrators to those claims, with a different arbitrator assigned to each claimant's case. As of April 3, 2020, only 27 arbitrators have been confirmed and only 3 have held preliminary hearings.

45. Postmates has learned that multiple law firms other than Keller Lenkner claim to represent about 586 Petitioners in separate arbitration proceedings against Postmates. First, two Petitioners—Monica Garcia and Cynthia Hall—filed arbitration demands against Postmates more than a year ago through separate counsel. Postmates paid filing fees for those two arbitrations, and those arbitrations have commenced. Yet, Keller Lenkner filed arbitration demands seemingly on these two individuals' behalf, asserting claims that are identical or substantially similar to the claims they previously asserted. And Keller Lenkner and AAA have demanded that Postmates pay filing fees for these individuals, even though Postmates already paid those fees and commenced arbitrations. Second, a separate law firm has communicated to Postmates that it represents 8,964 claimants, and threatened to file arbitration demands on behalf of each. That law firm provided Postmates with a list of each purported claimant's name. That list includes the names of 584 *Adams* claimants, and a total of 1,368 names that also appear on a client list provided by Keller Lenkner in October 2019 for purposes of demanding data for its purported California clients. Postmates cannot guarantee that each overlapping name corresponds to the same person, but that so many names match raises questions about who actually represents these individuals.

46. On February 15, 2020, Keller Lenkner simultaneously filed an additional 10,356 demands against Postmates, each alleging worker misclassification and violations of California wage and hour laws, California's Unfair Competition Law, and unspecified "applicable Municipal Codes." Many couriers' demands also assert claims for alleged violations of the Fair Labor Standards Act, 29 U.S.C. §§ 206–207 ("FLSA"). A true and correct copy of three samples of these arbitration demands is attached as **Exhibit S**. As with previous sets of demands, the new 10,356 demands are virtually identical, and use boilerplate language stating only that the claimant "has been a courier for Postmates" and that "Postmates has misclassified Claimant as an independent contractor." Although each demand seeks the same type of relief, each demand states a different "amount of claim" that is "subject to amendment according to proof." The

demands do not explain how the "amount of claim" was calculated or what type of relief it represents.

47. On February 24, 2020, AAA emailed counsel for Postmates confirming receipt of the 10,356 demands. AAA stated that the demands would be administered according to its Employment Arbitration Rules, and that AAA intended to administer the 10,356 demands collectively, as its e-mail to Postmates bore the subject line "10,356 Individuals v. Postmates, Inc." The e-mail also explained that the cases would "be administered in accordance with the 'Administrative Group Filing Fees' section" of the AAA Employment/Workplace Fee Schedule (as opposed to the filing fee schedule for truly individual demands), and stated that Postmates must pay $4,689,600 in initial filing fees by March 16, 2020. AAA stated that the demands are subject to SB 707 and that "payment must be received by April 15, 2020 or the AAA may close the parties' cases." A true and correct copy of the e-mail communications between AAA, Postmates, and Keller Lenkner between February 24, 2020 and March 31, 2020 is attached as **Exhibit T**.

48. The same day, AAA invoiced Postmates for $4,689,600 in filing fees for the 10,356 arbitrations.

49. On March 25, 2020, Postmates filed a complaint in this Court, seeking declaratory and injunctive relief on the grounds that Defendants violated their agreements to resolve disputes against Postmates in individual arbitration, and that SB 707 is preempted by the FAA and unconstitutional. Dkt. 1.

50. The next day, Postmates informed AAA via e-mail that it had filed a lawsuit concerning the 10,356 purported arbitration demands. Postmates requested that AAA suspend administration of these matters for 60 days pursuant to AAA's Employment Rule 1, which provides that "the AAA will suspend administration for 60 days" if "a party seeks judicial intervention with respect to pending arbitration" "within 30 days after the AAA's commencement of administration." Ex. T at 7–8.

51. On March 27, 2020, AAA denied Postmates' request for a 60-day stay, stating that Employment Rule 1 could not be invoked until all filing fees have been paid

by both parties. AAA then reminded counsel that these matters were subject to SB 707, and Postmates' "payment must be received by April 15, 2020 or the AAA may close these cases." Ex. T at 2.

52. On March 30, 2020, Postmates responded to AAA asking for a further explanation of its decision in light of AAA Employment Rule 4's statement that an "arbitration *shall* be initiated" when "[t]he initiating party" pays "its . . . filing fee." Postmates further requested explanation of how matters that AAA states have not even "commenced" can nevertheless be "close[d]." Postmates also requested "that AAA schedule an administrative conference so that Postmates may better understand AAA's reasoning and discuss these issues." Ex. T at 2.

53. On March 31, 2020, AAA denied Postmates' request for an administrative conference without providing further explanation of its reasoning for denying the 60-day stay. Ex. T at 1.

54. Postmates and Keller Lenkner participated in a full-day mediation on March 31, 2020, in an attempt to resolve this dispute. The parties could not reach a resolution.

55. On April 2, 2020, Keller Lenkner sent an email to AAA and Postmates' counsel advising that 100 of the 10,356 Defendants "have advanced Postmates's share of the filing and administrative fees by wire." Keller Lenkner requested "that AAA assign these matters to arbitrators immediately so that [they] may seek an interim award for reimbursement of these fees and other remedies for Postmates's failure to comply with its arbitration agreement and AAA's Rules." Keller Lenkner also requested that AAA not give Postmates the opportunity to review strike lists for the matters. A true and correct copy of this email is attached as **Exhibit U**.

I declare under penalty of perjury under the laws of the State of California and the United States of America that the foregoing is true and correct and that I executed this Declaration on April 3, 2020, in Los Angeles, California.

//

Gibson, Dunn & Crutcher LLP

                                                                                                 Theane Evangelis

Gibson, Dunn & Crutcher LLP