THEANE EVANGELIS, SBN 243570
  tevangelis@gibsondunn.com
DHANANJAY S. MANTHRIPRAGADA, SBN 254433
  dmanthripragada@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA  90071-3197
Telephone:  213.229.7000
Facsimile:   213.229.7520

MICHELE L. MARYOTT, SBN 191993
  mmaryott@gibsondunn.com
SHAUN A. MATHUR, SBN 311029
  smathur@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
3161 Michelson Drive
Irvine, CA  92612-4412
Telephone:  949.451.3800
Facsimile:   949.451.4220

Attorneys for Plaintiff POSTMATES, INC.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| POSTMATES INC., | CASE NO. 2:20-cv-02783-PSG-JEM |
| Plaintiff, | **DECLARATION OF PATRICIA CARTES ANDRES IN SUPPORT OF POSTMATES' *EX PARTE* APPLICATION FOR TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE WHY A PRELIMINARY INJUNCTION SHOULD NOT ISSUE** |
| v. | |
| 10,356 INDIVIDUALS, | |
| Defendants. | |
| | **Hearing:**<br>Date:      TBD<br>Time:      TBD<br>Judge:    Hon. Philip S. Gutierrez |

### Declaration of Patricia Cartes Andres

I, Patricia Cartes Andres, hereby declare and state:

1.      I am currently employed as the Director of Trust and Safety and Insurance Operations for Postmates Inc. ("Postmates").  I have been employed by Postmates since January 8, 2018.  I make this declaration in support of Postmates' Application for Temporary Restraining Order and Order to Show Cause Why a Preliminary Injunction Should Not Issue, and I am authorized to make these statements on behalf of Postmates.

2.      In my current position for Postmates, I have personal knowledge of Postmates' business model, Postmates' software and other technology, and Postmates' contracts with the independent contractor couriers who use Postmates' technology.  I have access to and personal knowledge of the matters and information set forth in this declaration, and if called upon to testify thereto, can and would competently do so.  The information set forth in this declaration is true and based on my own personal knowledge (unless otherwise stated).  The documents and records discussed in this declaration are maintained in the regular course of Postmates' business.

**A.      Postmates is a Technology Company that Connects Merchants, Consumers, and Independent Couriers**

3.      Postmates is a technology company headquartered in San Francisco, California that was founded in May 2011.

4.      Postmates operates an online marketplace and mobile platform (the "Postmates App") through which consumers connect with local merchants and, if consumers request delivery, independent couriers, to facilitate the purchase, fulfillment, and, when applicable, local delivery of purchased goods from merchants to the consumers.  When consumers place orders from the local merchants, such as restaurants or grocery stores, through the Postmates App, they can decide whether to pick up the order in person or have it locally delivered.  If a consumer chooses delivery, nearby independent couriers receive a notification and can choose whether to accept the consumer's offer to pick up the consumer's goods and complete the requested delivery.

5.      Consumers can submit delivery requests in the Postmates App tailored to their specific delivery needs.  For example, a consumer can request delivery of anything from takeout to groceries from a diverse set of local merchants, including small businesses for whom the Postmates App provides an efficient and expansive tool to reach new customers.  The consumer can connect with a merchant and, if they desire delivery, with an independent courier through the Postmates App to ensure local delivery of any item from any store or restaurant within minutes.

6.      Each independent courier who uses the Postmates App is free to work as much or as little as he or she wants—there is no set schedule, minimum-hours requirement, or minimum-delivery requirement.  When a consumer requests a delivery using the Postmates App, the app sends basic information about the delivery request to the closest available independent couriers, who may accept, reject, or ignore the request.

7.      Postmates is a means for independent couriers to become their own bosses and operate their own delivery businesses.  Individual couriers can operate as they please.  Independent couriers are provided unprecedented autonomy, as they have the freedom and flexibility to use multiple competitor apps simultaneously to maximize their income.  Indeed, Postmates does not have a policy preventing couriers from "multi-apping"—i.e., using other applications such as Lyft or Uber at the same time as the Postmates App to take on multiple forms of on-demand work.  As a result, couriers can transition from using the Postmates App to other applications simply by swiping their phones.  In this way, couriers enjoy an extraordinary level of freedom and flexibility: they work when they want, where they want, and how they want.

**B.      Postmates Contracts with Independent Couriers**

8.      Anyone can sign up to be a courier.  But before couriers can access Postmates' platform to begin receiving delivery opportunities, they must agree to Postmates' Fleet Agreement.

9.    A true and correct copy of the 2019 Fleet Agreement, which went into effect on May 11, 2019 and is currently presented to couriers who sign up to use Postmates' platform, is attached hereto as **Exhibit A.**

10.    A true and correct copy of the 2018 Fleet Agreement, which went into effect on May 11, 2018, is attached hereto as **Exhibit B.**

11.    A true and correct copy of the 2017 Fleet Agreement, which went into effect on March 1, 2017, is attached hereto as **Exhibit C.**

12.    Each version of the Fleet Agreement expressly provides that couriers are independent contractors.  *See* Ex. A § 1A; Ex. B § 7A; Ex. C § 7A.

13.    Each version of the Fleet Agreement contains a substantively similar Mutual Arbitration Provision with a Class Action Waiver, delegation clause, and the ability for couriers to opt out of arbitration within 30 days of accepting the Fleet Agreement.  *See* Ex. A §§ 10A, 10B(ii), 10B(ix); Ex. B §§ 11A, 11B(ii), 11B(ix); Ex. C §§ 11A, 11B(ii), 11B(ix).

**C.    Postmates Has No Record That Thousands of Claimants Signed Up For the Postmates App, Accepted the Fleet Agreement, or Made Deliveries.**

14.    Postmates has searched its records for information regarding the 10,356 individuals who filed arbitration demands against Postmates with the American Arbitration Association on February 15, 2020.

15.    Based on claimants' names and e-mail addresses, Postmates has no record that at least 1,600 of the claimants ever signed up to use the Postmates platform.

16.    Postmates' records show that of the 10,356 claimants, at least 470 signed up to use the platform but did not accept the Fleet Agreement and therefore never used the Postmates app to make a delivery.

17.    At least another 340 claimants signed up to use the platform and accepted the Fleet Agreement, but have never completed a delivery.

18.    At least 136 claimants made their last delivery using the Postmates app on or before June 2, 2017.

19.     Moreover, another law firm claims to represent a number of the 10,356 claimants.  On March 21, 2020, another law firm filed arbitration demands on behalf of 6,881 individuals, 565 of which appear to be among the 10,356 claimants on whose behalf Keller Lenkner also filed arbitration demands.

I declare under penalty of perjury under the laws of the State of California and the United States of America that the foregoing is true and correct.

Executed in San Francisco, California, on this 8th day of April 2020.

_____

Patricia Cartes Andres

Gibson, Dunn & Crutcher LLP