THEANE EVANGELIS, SBN 243570
tevangelis@gibsondunn.com
DHANANJAY S. MANTHRIPRAGADA, SBN 254433
dmanthripragada@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA 90071-3197
Telephone: 213.229.7000
Facsimile: 213.229.7520

MICHELE L. MARYOTT, SBN 191993
mmaryott@gibsondunn.com
SHAUN A. MATHUR, SBN 311029
smathur@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
3161 Michelson Drive
Irvine, CA 92612-4412
Telephone: 949.451.3800
Facsimile: 949.451.4220

Attorneys for Plaintiff POSTMATES INC.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

POSTMATES INC.,

Plaintiff,

v.

10,356 INDIVIDUALS,

Defendants.

CASE NO. 2:20-cv-02783-PSG-JEM

**POSTMATES' REPLY IN SUPPORT OF ITS *EX PARTE* APPLICATION FOR TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE WHY A PRELIMINARY INJUNCTION SHOULD NOT ISSUE**

**Hearing:**
Date: TBD
Time: TBD
Judge: Hon. Philip S. Gutierrez

# TABLE OF CONTENTS

Page


I. INTRODUCTION ..... 1

II. ARGUMENT ..... 2

A. The Court Has Subject Matter Jurisdiction ..... 2

B. Postmates Filed Its Application For A TRO As A Last Resort ..... 3

C. Postmates Is Likely To Succeed On The Merits ..... 5

1. Defendants Have Pursued Improper De Facto Class Arbitration ..... 5

2. SB 707 Is Preempted By The Federal Arbitration Act ..... 7

3. SB 707 Violates The Federal And State Contracts Clauses ..... 8

D. Postmates Will Be Irreparably Harmed Absent Immediate Injunctive Relief ..... 9

E. The Balance Of Equities And Public Interest Favor An Injunction ..... 10

F. Defendants' Sanctions Request Is Without Merit ..... 12

III. CONCLUSION ..... 12

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*2Die4Kourt v. Hillair Capital Mgmt., LLC*,
2016 WL 4487895 (C.D. Cal. Aug. 23, 2016) .......... 1, 4

*Adams v. Postmates, Inc.*,
No. 19-17362 (9th Cir.) .......... 6

*Adams v. Postmates Inc.*,
No. 3:19-cv-03042-SBA (N.D. Cal.) .......... 2, 6

*Am. Soc'y for Journalists & Authors, Inc. v. Becerra*,
2020 WL 1434933 (C.D. Cal. Mar. 20, 2020) .......... 4

*Arc of Cal. v. Douglas*,
757 F.3d 975 (9th Cir. 2014) .......... 4

*AT&T Mobility LLC v. Concepcion*,
563 U.S. 333 (2011) .......... 5, 7, 8

*Brown v. Dillard's, Inc.*,
430 F.3d 1004 (9th Cir. 2005) .......... 7, 9

*Brown v. Grimes*,
192 Cal. App. 4th 265 (2011) .......... 7, 9

*Buckeye Check Cashing, Inc. v. Cardegna*,
546 U.S. 440 (2006) .......... 8

*Cal. Trucking Ass'n v. Becerra*,
2020 WL 248993 (S.D. Cal. Jan. 16, 2020) .......... 3

*Camping Constr. Co. v. Dist. Council of Iron Workers*,
915 F.2d 1333 (9th Cir. 1990) .......... 10

*Chamber of Commerce of the U.S. v. Becerra*,
2020 WL 605877 (E.D. Cal. Feb. 7, 2020) .......... 8, 9, 10, 11, 12

*City of Colton v. Am. Promotional Events, Inc.-W.*,
614 F.3d 998 (9th Cir. 2010) .......... 3

**TABLE OF AUTHORITIES**
(continued)

Page(s)

*Cole v. Caviar LLC*,
Case No. BC719079 (L.A. Super. Ct.) ........ 5

*COR Clearing, LLC v. LoBue*,
2016 WL 9088704 (C.D. Cal. June 16, 2016) ........ 11

*Cuviello v. City of Vallejo*,
944 F.3d 816 (9th Cir. 2019) ........ 4

*Epic Sys. Corp. v. Lewis*,
138 S. Ct. 1612 (2018) ........ 7

*Geographic Expeditions, Inc. v. Estate of Lhotka ex rel. Lhotka*,
599 F.3d 1102 (9th Cir. 2010) ........ 2

*Hemphill v. Wright Family, LLC*,
234 Cal. App. 4th 911 (2015) ........ 7

*Kindred Nursing Ctrs. Ltd. P'ship v. Clark*,
137 S. Ct. 1421 (2017) ........ 7, 8

*Lamps Plus, Inc. v. Varela*,
139 S. Ct. 1407 (2019) ........ 5, 7

*McClenon v. Postmates Inc.*,
No. 1:19-cv-6415 (N.D. Ill.) ........ 2

*Medtronic, Inc. v. Mirowski Family Ventures, LLC*,
571 U.S. 191 (2014) ........ 2, 3

*Mission Power Eng'g Co. v. Cont'l Cas. Co.*,
883 F. Supp. 488 (C.D. Cal. 1995) ........ 5, 12

*Morales v. Trans World Airlines, Inc.*,
504 U.S. 374 (1992) ........ 10

*Morgan Stanley & Co., LLC v. Couch*,
134 F. Supp. 3d 1215 (E.D. Cal. 2015) ........ 9

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
460 U.S. 1 (1983) ........ 11

**TABLE OF AUTHORITIES**
(continued)

Page(s)

*Nat'l Ass'n of Wheat Growers v. Zeise*,
309 F. Supp. 3d 842 (E.D. Cal. 2018) ........ 12

*Perry v. Thomas*,
482 U.S. 483 (1987) ........ 8

*Peterson v. Minidoka Cty. Sch. Dist. No. 331*,
118 F.3d 1351 (9th Cir. 1997) ........ 6

*Preston v. Ferrer*,
552 U.S. 346 (2008) ........ 8

*RoDa Drilling Co. v. Siegal*,
552 F.3d 1203 (10th Cir. 2009) ........ 4

*Rodriguez v. Robbins*,
715 F.3d 1127 (9th Cir. 2013) ........ 4

*Southland Corp. v. Keating*,
465 U.S. 1 (1984) ........ 8

*Standard Ins. Co. v. Saklad*,
127 F.3d 1179 (9th Cir. 1997) ........ 2

*Sunlight Prod. Techs., Ltd. v. MPOWERD Inc.*,
2015 WL 12655472 (C.D. Cal. Mar. 23, 2015) ........ 11

*Susan B. Anthony List v. Driehaus*,
573 U.S. 149 (2014) ........ 3

*Sveen v. Melin*,
138 S. Ct. 1815 (2018) ........ 8

**Statutes**

9 U.S.C. § 4 ........ 11

28 U.S.C. § 1331 ........ 1

28 U.S.C. § 1367 ........ 2

Cal. Code Civ. Proc. § 1281.97(a) ........ 8

## TABLE OF AUTHORITIES
(continued)

Page(s)

Cal. Code Civ. Proc. § 1281.97(b) .......... 10

Cal. Code Civ. Proc. § 1281.97(d) .......... 10

Cal. Code Civ. Proc. § 1281.99(a)–(b) .......... 8

Cal. Code Cov. Proc, § 1281.99(b)(3) .......... 10

**Rules**

L.R. 65-1 .......... 12

# I. INTRODUCTION

Behind Defendants' inflammatory rhetoric and manufactured outrage are several key concessions. Defendants do not dispute that Keller Lenkner's de facto class arbitration scheme sacrifices the benefits of traditional individual arbitration, prevents couriers who may have viable claims from having their day in arbitration, and raises a host of serious ethical issues. *E.g.*, App. at 5 n.1. They do not dispute that 946 Defendants never signed up to use the Postmates platform, never completed a single delivery, or released their claims in a prior settlement. Nor do they dispute that 565 Defendants have filed separate, overlapping arbitration demands through other counsel.

Rather than defend the propriety of their counsel's tactics or mount a serious defense to SB 707's unlawfulness, Defendants focus on two procedural arguments: that this Court supposedly lacks jurisdiction, and that Postmates did not seek injunctive relief fast enough. Both arguments are without merit. This Court has subject matter jurisdiction because many Defendants assert Federal Labor Standards Act claims in their underlying arbitration demands, which in turn means that a federal court would have jurisdiction over an action by Defendants seeking to compel arbitration. Postmates' claims under the Declaratory Judgment Act are anticipatory of that federal action, which means that this Court has subject matter jurisdiction under 28 U.S.C. § 1331.

As for Defendants' repeated cries of delay, they ignore Postmates' proactive attempts to avoid the need to seek relief in Court. Indeed, Postmates sought to exhaust every avenue before seeking judicial intervention. After AAA set an April 15, 2020 deadline for payment of over $4 million of initial arbitration filing fees, Postmates asked AAA to temporarily stay the arbitrations, and mediated with Keller Lenkner on March 31, 2020 on an expedited basis. In short, Postmates took steps "to informally settle [its] claims" and "obviate the need for an injunction," instead of rushing to court and requesting emergency relief. *2Die4Kourt v. Hillair Capital Mgmt., LLC*, 2016 WL 4487895, at *8 (C.D. Cal. Aug. 23, 2016). Had Postmates made no such efforts, Defendants would surely have argued that seeking judicial relief was premature.

Because Postmates faces imminent and irreparable harm due to Keller Lenkner's improper scheme to use arbitration filing fees as a cudgel and their attempt to leverage an unconstitutional statute, the Court should issue a temporary restraining order.

## II. ARGUMENT

### A. The Court Has Subject Matter Jurisdiction

Defendants' subject matter jurisdiction argument ignores how federal courts assess jurisdiction in declaratory judgment actions. In such actions, courts examine whether the declaratory judgment *defendant* could have brought a coercive action in federal court. *See, e.g.*, *Medtronic, Inc. v. Mirowski Family Ventures, LLC*, 571 U.S. 191, 197 (2014) ("federal courts, when determining declaratory judgment jurisdiction, often look to the 'character of the threatened action'" and "ask whether 'a coercive action' brought by 'the declaratory judgment defendant'" would "'present a federal question'"); *Standard Ins. Co. v. Saklad*, 127 F.3d 1179, 1181 (9th Cir. 1997) ("[a] person may seek declaratory relief in federal court if the one against whom he brings his action could have asserted his own rights there"). Here, Defendants could have filed a petition to compel arbitration against Postmates in federal court, and that lawsuit would have arisen under federal law because many Defendants assert claims under the Fair Labor Standards Act. *See Geographic Expeditions, Inc. v. Estate of Lhotka ex rel. Lhotka*, 599 F.3d 1102, 1106 (9th Cir. 2010) ("a federal court has jurisdiction over a petition to compel arbitration if the federal court would have jurisdiction over the underlying substantive dispute"). And the Court would have supplemental jurisdiction over any remaining state-law claims under 28 U.S.C. § 1367.

Defendants' counsel is well-versed in this basis for federal jurisdiction, as it has twice invoked it in lawsuits against Postmates involving similar arbitration demands. *See Adams v. Postmates Inc.*, No. 3:19-cv-03042-SBA, Dkt. 1 ¶ 10 (N.D. Cal. June 3, 2019); *McClenon v. Postmates Inc.*, No. 1:19-cv-6415, Dkt. 1 ¶ 13 (N.D. Ill. Sept. 26, 2019). Defendants' assertion that there is no federal jurisdiction here ignores that Postmates' declaratory judgment claim anticipates a threatened federal action like

*Adams* and *McClenon*. "Consequently this declaratory judgment action, which avoids that threatened action, also 'arises under' federal . . . law." *Medtronic*, 571 U.S. at 198.

Defendants' ripeness argument also lacks merit. "'[R]ipeness of a declaratory judgment action depends upon whether the facts alleged, under all the circumstances, show that there is a substantial controversy between the parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.'" *City of Colton v. Am. Promotional Events, Inc.-W.*, 614 F.3d 998, 1004–05 (9th Cir. 2010). Such a controversy exists here: Defendants have violated their agreements with Postmates to resolve disputes in individual arbitration, and have threatened to institute an enforcement action against Postmates under SB 707. *See* Dkt. 7 ¶ 111; *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 159, 164 (2014) (pre-enforcement actions are justiciable where there is a credible threat of enforcement); *Cal. Trucking Ass'n v. Becerra*, 2020 WL 248993, at *3 (S.D. Cal. Jan. 16, 2020). Nothing more is required. The Court has subject matter jurisdiction over this case.

**B. Postmates Filed Its Application For A TRO As A Last Resort**

Postmates has done everything in its power to avoid the need for expedited relief. On March 5, 2020, days after AAA notified Postmates it was assessing over $4 million in filing fees, Keller Lenkner contacted Postmates' counsel about mediating the parties' dispute. Evangelis Decl. ¶ 54. The parties agreed to engage in a full-day mediation on an expedited basis on March 31. *Id.* But to preserve the option of seeking judicial intervention in the event mediation was unsuccessful, Postmates filed this action on March 25. *Id.* ¶ 49; Dkt. 1. Postmates promptly informed AAA that it had filed a Complaint to enjoin Defendants' de facto class arbitration, and requested a 60-day suspension of the arbitration under AAA's Employment Rule 1. *Id.* ¶ 50, Ex. T at 7–8. AAA denied Postmates' request at Keller Lenkner's insistence. *Id.*, Ex. T at 2. The next business day, on March 30, Postmates asked AAA for a further explanation of its decision and requested an administrative conference. *Id.* ¶ 52. On March 31, AAA denied Postmates' requests, *id.* ¶ 53, and the parties were unsuccessful in reaching an

agreement in mediation, *id.* ¶ 54. The morning of April 2, Keller Lenkner insisted that the cases proceed and advanced filing fees for 100 cases. *Id.* On April 3, Postmates filed a motion for preliminary injunction. Dkt. 8. After the Court struck Postmates' motion, Dkt. 14, Postmates filed this *ex parte* application the following day.

Unlike the plaintiffs in *American Society for Journalists & Authors, Inc. v. Becerra*, 2020 WL 1434933 (C.D. Cal. Mar. 20, 2020), Postmates has been attempting diligently to avoid the irreparable harm it now faces without necessitating the Court's involvement. When parties postpone seeking temporary injunctive relief to attempt "to informally settle their claims," or otherwise "obviate the need for an injunction," some delay is "not unreasonable, nor does it suggest a lack of irreparable harm." *2Die4Kourt*, 2016 WL 4487895, at *8; *see Rodriguez v. Robbins*, 715 F.3d 1127, 1145 n.12 (9th Cir. 2013) (four-month delay not unreasonable when parties were in settlement talks); *RoDa Drilling Co. v. Siegal*, 552 F.3d 1203, 1212 (10th Cir. 2009) (affirming preliminary injunction where "[the plaintiff's] delay in filing its complaint arose from its attempts to resolve the dispute, rather than a decision merely to 'sit on its rights'"). Moreover, "delay is only one factor among the many that [courts] consider in evaluating whether a plaintiff is likely to suffer irreparable harm," and courts are "'loath to withhold relief solely on that ground.'" *Cuviello v. City of Vallejo*, 944 F.3d 816, 833 (9th Cir. 2019).

Further, it was not clear that Postmates would suffer irreparable harm until March 31, when AAA refused to entertain further discussion on Postmates' request for a stay of arbitration, and when the parties' attempt to mediate proved unsuccessful. Evangelis Decl. ¶¶ 53–54. "[W]aiting to file for preliminary relief until a credible case for irreparable harm can be made is prudent rather than dilatory." *Arc of Cal. v. Douglas*, 757 F.3d 975, 991 (9th Cir. 2014). And Defendants cannot show any prejudice as a result of Postmates' out-of-court attempt to obviate the need for an injunction. *See Rodriguez*, 715 F.3d at 1145 n.12 (affirming preliminary injunction where the defendant "identifie[d] no prejudice that it ha[d] suffered as a result of th[e] delay"). Defendants' counsel claims they had "less than 24 hours" to respond to Postmates' application, Opp.

at 17, but the application is nearly identical to the preliminary injunction motion Postmates filed a week ago.[1]

Because Postmates is "without fault" in waiting to file this application, *Mission Power Eng'g Co. v. Cont'l Cas. Co.*, 883 F. Supp. 488, 493 (C.D. Cal. 1995), and Defendants have suffered no prejudice, any brief delay is no reason to deny relief.

**C. Postmates Is Likely To Succeed On The Merits**

**1. Defendants Have Pursued Improper De Facto Class Arbitration**

Postmates is likely to prevail on its claim for declaratory judgment that it may not be compelled to de facto class arbitration. Where, as here, the parties have agreed to resolve their disputes in "individual arbitration," Decl. of Patricia Cartes Andres ¶ 9, Ex. A § 10B(ii), courts may not compel arbitration in any manner that "hinder[s]," "frustrate[s]," *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 346 (2011), or "sacrifices the principal advantage[s]" of the "traditional individualized arbitration envisioned by the FAA," *Lamps Plus, Inc. v. Varela*, 139 S. Ct. 1407, 1412, 1414 (2019).

Here, Defendants' counsel at Keller Lenkner uses social media to recruit thousands of "clients" and sits on those individuals' claims for months on end. It then simultaneously files thousands of arbitration demands, insists that all filing fees be paid up front, and demands that all the arbitrations be administered and proceed at the same time. Defendants do not dispute that this gambit sacrifices all the benefits of traditional individual arbitration by "mak[ing] the process slower" and "more costly," "requir[ing] procedural formality," and imposing substantial "pressure" on defendants to enter into "'in terrorem' settlements" based on "questionable claims." *Concepcion*, 563 U.S. at 348–50; App. at 11–14. Nor do Defendants dispute that it is a "joke" to think that 10,356 Individuals would be able to "do an individual arbitration" at the same time. Hr'g Tr. at

[1] When forced to go to Court, Postmates sought to avoid filing an *ex parte* application, and instead requested that the Court set an expedited briefing schedule on its preliminary injunction motion, not to gain any advantage but to reduce the burden on Defendants (who would have had more time to respond than if Postmates had immediately filed an *ex parte* application). *See* Dkt. 8. After the Court made clear that Postmates could obtain expedited relief only through an *ex parte* application for a temporary restraining order, Postmates promptly filed such an application. *See* Dkts. 14, 17.

8:17–10:11, *Cole v. Caviar LLC*, Case No. BC719079 (L.A. Super. Ct. Feb. 25, 2020).

Instead, Defendants contend that the *Adams* court already decided this issue against Postmates. Opp. at 18. That is wrong. There, the parties filed cross-motions to compel arbitration, and the court granted in part both parties' motions and ordered them to arbitrate. *Adams*, Dkt. 253 at 1. Critically, the court refused to order "Postmates to pay the arbitrator's fee." *Id.* at 12. And the court declined to address whether the *Adams* petitioners sought de facto class arbitration. *Id.* at 11. Far from exonerating Keller Lenkner of the charge that its scheme sacrifices the principal advantages of traditional individual arbitration, the *Adams* court did not even address the question. Nor did the *Adams* court decide the issue in its order on Postmates' motion to stay pending appeal, as the issue there was limited to whether an arbitrator or a court must resolve whether the *Adams* petitioners sought de facto class arbitration. *Adams*, Dkt. 261 at 1, 7–11.

As for the *Adams* court's resolution of that threshold issue—which turns on the proper interpretation of the Mutual Arbitration Provision's delegation clause—the *Adams* court's ruling is not binding on this Court, has been appealed, and is wrong. *See Adams v. Postmates, Inc.*, No. 19-17362, Dkt. 8 at 27–33 (9th Cir. Feb. 20, 2020) (Postmates' Opening Appellant Brief). Section 10A(ii) of the Fleet Agreement requires an arbitrator "to resolve any dispute relating to the interpretation, applicability, enforceability, or formation of [the] Mutual Arbitration Provision." Cartes Andres Decl., Ex. A § 10A(ii). But the very next sentence expressly carves out "any dispute relating to or arising out of the Class Action Waiver . . . , which must proceed in a court of competent jurisdiction." *Id.* Whether Keller Lenkner's approach to arbitration violates the Class Action Waiver is a "dispute" that must be decided by a court.

The *Adams* court relied on Section 10B(iv), which states that "any claim that all or part of this Class Action Waiver . . . is unenforceable, unconscionable, void, or voidable shall be determined only by a court." *Id.* § 10B(iv). According to the *Adams* court, the specific list of claims in Section 10B(iv) limits the meaning of "any dispute" in Section 10A(ii). But that interpretation flouts the rule that terms should be read "so

that they harmonize with each other," *Peterson v. Minidoka Cty. Sch. Dist. No. 331*, 118 F.3d 1351, 1359 (9th Cir. 1997), and renders "any dispute" "nugatory, inoperative or meaningless." *Hemphill v. Wright Family, LLC*, 234 Cal. App. 4th 911, 915 (2015).

Defendants argue that "[c]lasswide arbitration includes absent parties." Opp. at 18. But that is beside the point. The Supreme Court's refusal to force parties into class arbitration absent their agreement stems not from the inclusion of absent parties, but from class arbitration's propensity to "sacrifice[] the principal advantage[s]" of traditional individual arbitration. *Lamps Plus*, 139 S. Ct. at 1416. In fact, courts may not compel arbitration in *any* manner that is "markedly different from . . . traditional individual arbitration," *id.* at 1415, unless there is a contractual basis for concluding that the parties "*agreed* to" do so, *id.* at 1419. Here, the parties agreed to arbitrate only in an individual manner, not in the "fundamental[ly] differen[t]" manner that Keller Lenkner recently deployed in an effort to coerce a class-action-type settlement. *Id.* at 1416.

**2. SB 707 Is Preempted By The Federal Arbitration Act**

The FAA preempts state laws that "target arbitration either by name or by more subtle methods, such as by interfering with fundamental attributes of arbitration." *Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1622 (2018). SB 707 falls on both grounds.

By its terms, SB 707 is "tailor-made to arbitration agreements" and "singl[es] out those contracts for disfavored treatment." *Kindred Nursing Ctrs. Ltd. P'ship v. Clark*, 137 S. Ct. 1421, 1427 (2017). It engrafts onto arbitration agreements a highly onerous definition of material breach. It requires drafting parties of arbitration agreements—and *only* arbitration agreements—to continue performing under the agreement as a "condition[] [to] enforc[ing]" it against a breaching non-drafting party, *Concepcion*, 563 U.S. at 336, contrary to the rule that one party's breach relieves the other of performing, *Brown v. Grimes*, 192 Cal. App. 4th 265, 277 (2011). And it permits a non-drafting party who has breached the agreement to enforce it or abandon it altogether and proceed in court, even though a party seeking to enforce an agreement must show that they have complied with it. *Brown v. Dillard's, Inc.*, 430 F.3d 1004, 1010 (9th Cir. 2005).

Defendants insist that SB 707 cannot be preempted because it "does not render a contract to arbitrate unenforceable in any way." Opp. at 19. Wrong again. The statute states in the very first sentence that a drafting party who does not pay arbitration fees within 30 days of the due date "is in material breach of the arbitration agreement, is in default of the arbitration, and waives its right to compel arbitration"—*i.e.*, a drafting party that does not pay its arbitration fees (regardless of the reason for the nonpayment) may not enforce the arbitration agreement. Cal. Code Civ. Proc. § 1281.97(a).

Defendants next argue that "it is absurd to suggest that a statute that promotes compliance with arbitration agreements is hostile to their enforcement." Opp. at 20. But the question is not whether a state law is hostile to the enforcement of arbitration agreements *after* they have been entered into, but instead whether the law discourages parties from entering into arbitration agreements *at all*. *See Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 443 (2006). And because of the significant penalties that SB 707 imposes on drafting parties, Cal. Code Civ. Proc. § 1281.99(a)–(b), SB 707 will have a "deterrent effect on the use of" arbitration agreements, *Chamber of Commerce of the U.S. v. Becerra*, 2020 WL 605877, at *13 (E.D. Cal. Feb. 7, 2020)—contrary to the FAA's intent "to promote arbitration," *Concepcion*, 563 U.S. at 345.

Congress enacted the FAA to combat "widespread . . . hostility to arbitration agreements." *Concepcion*, 563 U.S. at 339. Yet, California has repeatedly enacted statutes and adopted rules that target arbitration and interfere with the fundamental attributes of arbitration, and the Supreme Court has repeatedly held that those statutes and rules are preempted by the FAA. *See id.* at 346; *Preston v. Ferrer*, 552 U.S. 346, 358 (2008); *Perry v. Thomas*, 482 U.S. 483, 491 (1987); *Southland Corp. v. Keating*, 465 U.S. 1, 10 (1984). California has a history of passing laws that conflict with the FAA, and SB 707 is simply California's latest attempt to erect an "uncommon barrier[]" to the entrance and enforcement of arbitration agreements. *Kindred*, 137 S. Ct. at 1427.

**3. SB 707 Violates The Federal And State Contracts Clauses**

Postmates is likely to establish that SB 707 violates the Contracts Clause. *See*

*Sveen v. Melin*, 138 S. Ct. 1815, 1821–22 (2018). Defendants argue that SB 707 alters only "the contractual remedies available to Claimants" for a breach of the agreement. Opp. at 21. Not so. SB 707 foists upon the parties a new and unanticipated definition of material breach. And it upends the parties' reasonable expectations going into the agreement. Under ordinary contract law, one party's material breach of the contract relieves the other party of continued performance, *Grimes*, 192 Cal. App. 4th at 277, and the party seeking to enforce the contract must show that it has complied, *Dillard's*, 430 F.3d at 1010. But SB 707 interferes with these expectations by (a) requiring Postmates to continue performing under the agreement and pay arbitration fees even if a courier has materially breached the agreement, and (b) permitting a courier who has breached the agreement to nevertheless enforce the agreement and compel arbitration. And SB 707 does so without any legal, let alone legitimate, justification. Indeed, the law's "primary target . . . is agreements to arbitrate," *Chamber of Commerce*, 2020 WL 605877, at *11—a patently illegitimate target under the FAA and the Supremacy Clause.

**D. Postmates Will Be Irreparably Harmed Absent Immediate Injunctive Relief**

By April 15, Postmates faces an untenable choice: either abandon its individual arbitration agreement and pay over $22 million in total unrecoverable filing fees out of fear of SB 707's penalties, or stand by its individual arbitration agreement and face SB 707's penalties designed to discourage parties from entering into arbitration agreements. The choice that Keller Lenkner's scheme and SB 707 forces upon Postmates *is itself* the guarantee of irreparable harm. *Chamber of Commerce*, 2020 WL 605877, at *16–18.

If Postmates chooses to pay over $4 million in initial fees and over $18 million in additional fees, it will be waiving its right to individual arbitration and acceding to Defendants' contractually forbidden de facto class arbitration scheme. This would permit Defendants to drag Postmates through a de facto class arbitration that flouts the parties' agreement—an irreparable harm that cannot be remedied. *See Morgan Stanley & Co., LLC v. Couch*, 134 F. Supp. 3d 1215, 1235 (E.D. Cal. 2015). Defendants cite authority holding that needlessly undergoing a single arbitration is not necessarily an

irreparable injury, but these cases establish only that "the short time and slight expense involved in the typical arbitration" is not itself sufficient to establish irreparable harm. *Camping Constr. Co. v. Dist. Council of Iron Workers*, 915 F.2d 1333, 1349 (9th Cir. 1990). They say nothing about the years it would take to resolve Defendants' claims on a de facto class basis. Nor do they address that the $22 million Postmates would have to pay to begin de facto class arbitration is *unrecoverable*, as it "cannot be recouped" in the ordinary course of this litigation. *Chamber of Commerce*, 2020 WL 605877, at *16.

If Postmates chooses not to pay AAA's fees, it will be at the mercy of SB 707, which imposes penalties—including, potentially, criminal contempt penalties—based solely on the fact of nonpayment. *See* Cal. Code Civ. Proc. § 1281.97(b), (d); *id.*, § 1281.99(b)(3). Defendants counter that Postmates could raise its constitutional and preemption arguments *after* non-payment and after intentionally risking sanctions by doing exactly what SB 707 impermissibly forbids, but this ignores that such an "option" is an irreparable injury sufficient to justify a temporary restraining order. *See Chamber of Commerce,* 2020 WL 605877, at *18 ("No matter the choice—continue to utilize arbitration agreements and risk criminal and civil sanctions or avoid arbitration agreements for fear of non-compliance with a statute that is likely preempted—the result is the same: California employers are faced with likely irreparable harm.").

Moreover, because AAA has assessed fees for *all 10,356* arbitrations at the same time and refused to stay the arbitrations, Postmates' potential exposure under SB 707 is unavoidably massive, as it cannot decline to pay in just one arbitration as a test case to challenge SB 707. *See Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 381 (1992) ("When enforcement actions are imminent—and at least when repetitive penalties attach to continuing or repeated violations and the moving party lacks the realistic option of violating the law once and raising its federal defenses—there is no adequate remedy at law."). Thus, no matter which choice Postmates makes, irreparable harm follows unless the Court enjoins the de facto class arbitration proceeding and enforcement of SB 707.

**E. The Balance Of Equities And Public Interest Favor An Injunction**

Defendants' arguments regarding the balancing of the equities and the public interest also miss the mark. Postmates is not "attempting to deny Defendants access to justice," Opp. at 27; it is seeking to secure rights that are guaranteed under its arbitration agreements, by the FAA, and by the federal and state constitutions. Such interests are "'paramount,'" and "it would not be equitable or in the public's interest to allow [Defendants] to continue to violate" federal and state law by proceeding with de facto class arbitration or by enforcing SB 707. *Chamber of Commerce*, 2020 WL 605877, at *18. Postmates' interests in avoiding de facto class arbitration to which it never agreed, and in avoiding penalties under an unlawful state statute, far outweigh Defendants' interest in immediately proceeding with arbitration in violation of the parties' agreement.

Moreover, if Keller Lenkner were truly interested in "obtaining prompt arbitration of [Defendants'] claims," Opp. at 27, it could have simply filed individual arbitration demands in accordance with the Fleet Agreement. And it could have *filed arbitration demands promptly* upon being retained, rather than strategically waiting to file *any* demands before amassing enough clients to file thousands at once to exert maximum settlement pressure. App. at 12. Moreover, the hundreds of Defendants who never signed up to use Postmates' platform or completed a delivery have no interest in "obtaining prompt arbitration of their claims," Opp. at 27, because they never entered into an agreement to arbitrate and/or do not have any arbitrable claims in the first place.

Defendants are wrong that the public interests embodied in the FAA weigh against an injunction. *See* Opp. at 27–28. Although there is a "liberal federal policy" favoring the efficient resolution of disputes in arbitration, *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983), "the policy favoring arbitration is based on the presumption" that the arbitration is actually permitted by the parties' agreement. *Sunlight Prod. Techs., Ltd. v. MPOWERD Inc.*, 2015 WL 12655472, at *9 (C.D. Cal. Mar. 23, 2015). For this reason, "[a]llowing an arbitration to proceed" in a manner "without an agreement" to do so "does not serve the public interest." *COR Clearing, LLC v. LoBue*, 2016 WL 9088704, at *5 (C.D. Cal. June 16, 2016); 9 U.S.C. § 4.

Defendants also argue that "two strong public interests embodied in California law" (California wage-and-hour laws and SB 707) weigh against injunctive relief. Opp. at 28. But entering temporary injunctive relief has no bearing on California's "interest in enforcing its wage-and-hour laws." *Id.* Defendants may resolve their disputes under California wage-and-hour laws by filing individualized arbitration demands under the Fleet Agreement, instead of insisting on de facto class arbitration before proceeding with any arbitrations. And "California has no legitimate interest in enforcing [SB 707,] an unconstitutional [and preempted] law." *Nat'l Ass'n of Wheat Growers v. Zeise*, 309 F. Supp. 3d 842, 854 (E.D. Cal. 2018); *Chamber of Commerce*, 2020 WL 605877, at *18.

**F. Defendants' Sanctions Request Is Without Merit**

The Court should issue a temporary restraining order. If it does not, it should "set [a] hearing on the order to show cause." L.R. 65-1. But it should not impose sanctions. Defendants' arguments fall into three categories: (1) disagreement on the merits; (2) misleading allegations of delay in seeking relief; and (3) complaints about the quick opposition deadlines inherent in a temporary restraining order proceeding. Opp. at 25. None of those—whether independently or taken together—warrant sanctions.

Defendants cite *Mission Power* in support of its request for sanctions, but the court there did not impose sanctions, despite being faced with a non-urgent request for relief made via "the seventh ex parte motion filed in this case in just the last two months." 883 F. Supp. at 489. Here, by contrast, Postmates' right to individual arbitration and to not be subject to a preempted and unconstitutional state law is imminently at stake, and Postmates has done all it can to promptly seek relief in the least disruptive manner possible in light of the unfortunate reality that AAA's deadline falls in the midst of a global pandemic that has affected courts and litigants alike—first by seeking a stay from AAA, then by mediating, and then by seeking a preliminary injunction. That Postmates has now had to turn to the abbreviated TRO procedures is no grounds for sanctions.

**III. CONCLUSION**

Postmates' motion for a temporary and preliminary injunction should be granted.

Dated: April 10, 2020

THEANE EVANGELIS
DHANANJAY S. MANTHRIPRAGADA
MICHELE L. MARYOTT
SHAUN A. MATHUR
GIBSON, DUNN & CRUTCHER LLP

By: /s/ *Theane Evangelis*
Theane Evangelis

Attorneys for Plaintiff POSTMATES INC.