UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 20-2783 PSG (JEMx) | Date | April 15, 2020 |
|---|---|---|---|
| Title | Postmates Inc. v. 10,356 Individuals | | |

Present: The Honorable    Philip S. Gutierrez, United States District Judge

| Wendy Hernandez | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter |
| Attorneys Present for Plaintiff(s): | Attorneys Present for Defendant(s): |
| Not Present | Not Present |

**Proceedings (In Chambers):      The Court DENIES the application**

Before the Court is Plaintiff Postmates Inc.'s ("Postmates" or "Plaintiff") ex parte application for a temporary restraining order and order to show cause why a preliminary injunction should not issue. *See* Dkt. # 17 ("*App.*"). Defendants in this action have opposed, *see* Dkt. # 19, 21 ("*Opp.*"), and Plaintiff replied, *see* Dkt. # 28 ("*Reply*"). The Court finds the matter appropriate for decision without oral argument. *See* Fed. R. Civ. P. 78; L.R. 7-15. Having considered the moving, opposing, and reply papers, the Court **DENIES** the application.

I.      Background

A.      Postmates and the Fleet Agreement

Postmates operates an online marketplace and mobile platform through which consumers connect with local merchants and, if consumers request delivery, independent couriers to facilitate the purchase, fulfillment, and delivery of products from merchants to consumers. *See Declaration of Patricia Cartes Andres*, Dkt. # 17-27 ("*Andres Decl.*"), ¶ 4. When consumers place orders through Postmates' platform, they can decide whether to pick up the order or have it delivered. *Id.* If a consumer chooses delivery, couriers receive a notification and can choose whether to pick up and deliver the goods. *Id.*

Anyone can sign up to be a courier. *Id.* ¶ 8. Before couriers can access Postmates' platform to begin receiving delivery opportunities, they must accept Postmates' Fleet Agreement, which is presented to individuals during an online registration process. *Id.* ¶¶ 8–11, Exs. A–C. The Fleet Agreement provides that couriers are "independent contractor[s]." *Id.* ¶ 12, Ex. A §§ 1A, 2A. Each version of the Fleet Agreement from 2017 through 2019 contains a substantively similar Mutual Arbitration Provision with a Class Action Waiver, delegation

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 20-2783 PSG (JEMx) | Date | April 15, 2020 |
|---|---|---|---|
| Title | Postmates Inc. v. 10,356 Individuals | | |

clause, and the ability for couriers to opt out of arbitration within 30 days of accepting the Fleet Agreement. *Id.* ¶ 13.

The Fleet Agreement contains a Mutual Arbitration Provision that is governed by the Federal Arbitration Act ("FAA"). *Id.* ¶ 13, Ex. A § 10A(i). Couriers may opt out of arbitration by submitting an opt-out notice within 30 days of accepting the Fleet Agreement. *Id.*, Ex. A § 10B(ix). For those that do not opt out, the Provision states that Postmates and the courier "mutually agree to resolve any disputes between them exclusively through final and binding arbitration instead of filing a lawsuit in court." *Id.* § 10A(i). The Mutual Arbitration Provision contains an express Class Action Waiver and Representative Action Waiver. *Id.* § 10B(ii)–(iii). The Class Action Waiver states:

> CLASS ACTION WAIVER—PLEASE READ. Postmates and You mutually agree that any and all disputes or claims between the Parties will be resolved in individual arbitration. The Parties further agree that by entering into this Agreement, they waive their right to have any dispute or claim brought, heard or arbitrated as a class and/or collective action, or to participate in any class and/or collective action, and an arbitrator shall not have any authority to hear or arbitrate any class and/or collective action.

*Id.* § 10B(ii).

The Mutual Arbitration Provision also contains a delegation clause, which provides:

> *Only an arbitrator*, and not any federal, state, or local court or agency, shall have the *exclusive authority* to *resolve any dispute relating to the interpretation, applicability, enforceability*, or formation of this Mutual Arbitration Provision, including without limitation any dispute concerning *arbitrability*. *However, as stated in Section 10B.iv below, the preceding clause shall not apply to any dispute relating to or arising out of the Class Action Waiver and Representative Action Waiver,* which must proceed in a court of competent jurisdiction and cannot be heard or arbitrated by an arbitrator.

*Id.* § 10A(ii) (emphasis added). Section 10B.iv provides:

> Notwithstanding any other clause contained in this Agreement, this Mutual Arbitration Provision, or the American Arbitration Association Commercial Arbitration Rules ("AAA Rules"), *any claim that all or part of this Class Action Waiver and/or Representative Action Waiver is unenforceable, unconscionable, void, or voidable* shall be determined only by a court of competent jurisdiction and not by an arbitrator. As stated above, all

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 20-2783 PSG (JEMx) | Date | April 15, 2020 |
|---|---|---|---|
| Title | Postmates Inc. v. 10,356 Individuals | | |

other disputes regarding interpretation, applicability, enforceability, or formation of this Mutual Arbitration Provision shall be determined exclusively by an arbitrator.

*Id.* § 10B(iv) (emphasis added).

B.     The *Adams* Action

On March 6, 2019, counsel for Defendants here, Keller Lenkner LLC, wrote to Postmates' General Counsel, asserting that Keller Lenkner "represents more than 3,000 Postmates drivers in California and Illinois" who allegedly had been misclassified as independent contractors.  *See Declaration of Theane Evangelis*, Dkt. # 17-4 ("*Evangelis Decl.*"), ¶ 3, Ex. A.  Counsel stated that their law firm would "proceed with every arbitration simultaneously" unless the parties could "agree on an alternative process for resolving [their] clients' claims."  *Id.*

In April and May 2019, Keller Lenkner filed demands on behalf of over 5,000 California and Illinois claimants (the "*Adams* Claimants").  *Id.* ¶¶ 4–5, Exs. B–D.  The Firm submitted a cover letter, a document setting forth the alleged claimants' grievances, a spreadsheet listing the alleged claimants, a packet of fee waiver applications, and copies of Postmates' 2018 and 2019 Fleet Agreements.  *Id.*  AAA assigned a single administrator to administer the claimants' purported claims.  *Id.* ¶ 6.  AAA determined that it would administer the arbitrations and assess filing fees under its "Employment/Workplace Fee Schedule," which called for an assessment of a $1,900 administrative fee payable at the time of filing by a business against whom an arbitration demand is submitted.  *Id.*  On May 31, 2019, the deadline for Postmates' payment of arbitration filing fees, the AAA contacted Postmates for its position on whether the AAA could properly assess fees against Postmates, and Postmates responded that in its view no arbitration proceedings had begun because the arbitration demands were improper.  *See id.* ¶ 9.

In June 2019, the claimants filed a Petition to Compel Arbitration in the Northern District of California, seeking an order compelling Postmates to pay arbitration filing fees and commence arbitration.  *See Adams v. Postmates, Inc.*, 414 F. Supp. 3d 1246, 1249–51 (N.D. Cal. 2019) ("*Adams I*").  Postmates filed an opposition and Cross-Motion, agreeing that the claims should be resolved by arbitration but arguing the arbitration demands were "tantamount to a de facto class action, which is barred under the Class Action Waiver," and asking the court to compel arbitration and enter an order "(1) requiring each Petitioner to refile his or her demand as an individual arbitration demand that sets forth the facts and legal theories of relief applicable to the particular Petitioner; and (2) requiring each Petitioner, after refiling, to proceed to arbitration on an individual basis."  *Id.* at 1251.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 20-2783 PSG (JEMx) | Date | April 15, 2020 |
|---|---|---|---|
| Title | Postmates Inc. v. 10,356 Individuals | | |

On October 22, 2019, the court granted in part and denied in part the parties' motions. *See generally id.* The Court ordered the parties to arbitrate in accordance with the Mandatory Arbitration Provision of the Fleet Agreement, but it declined to order Postmates to pay the outstanding or future arbitration fees, or to order the claimants to "refile their demands and to proceed in a specific manner." *See id.* Applying the Fleet Agreement's delegation clause, the court ordered that Postmates must arbitrate not only the claimants' misclassification claims, but also its own arguments regarding "the sufficiency of Petitioners' arbitration demands and how the arbitration should be conducted." *Id.* at 1252–56; *see also Abernathy v. DoorDash, Inc.*, No. C 19-07545 WHA, 2020 WL 619785, at *4 (N.D. Cal. Feb. 10, 2020). Postmates has appealed the court's order. *See Postmates v. Adams*, No. 19-17362 (9th Cir. 2020). Postmates filed a motion to stay the *Adams* decision pending its appeal to the Ninth Circuit. *See Adams v. Postmates, Inc.*, No. 19-3042 SBA, 2020 WL 1066980, at *2–*3 (N.D. Cal. Mar. 5, 2020) ("*Adams II*"). On March 5, 2020, the court denied the motion. *See id.*

On November 20, 2019, Postmates emailed AAA and requested that only fifty randomly-selected *Adams* Claimants' arbitrations commence. *See Evangelis Decl.*, Ex. H at 19. Defendants disagreed. *Id.* at 17–18. AAA responded that Plaintiff's fees remained due, and when the fees were not received, AAA administratively closed the arbitrations. *Id.* at 12–18; *Opp.* 8:14–26. In December 2019, the parties agreed to proceed with fifty arbitrations, and Postmates paid the filing fees necessary for fifty arbitration demands to proceed, with the other matters remaining closed. *See Evangelis Decl.* ¶¶ 34–38, 44, Ex. H at 1–11.

C.    SB 707

The California Legislature enacted Senate Bill 707, effective January 1, 2020. In relevant part, the law states:

> In an employment or consumer arbitration that requires, either expressly or through application of state or federal law or the rules of the arbitration administrator, the drafting party to pay certain fees and costs before the arbitration can proceed, if the fees or costs to initiate an arbitration proceeding are not paid within 30 days after the due date, the drafting party is in material breach of the arbitration agreement, is in default of the arbitration, and waives its right to compel arbitration under Section 1281.2.

Cal. Civ. Proc. Code § 1281.97(a). It further states that, "[i]f the drafting party materially breaches the arbitration agreement and is in default," the employee or consumer may either "(1) Withdraw the claim from arbitration and proceed in a court of appropriate jurisdiction," or "(2) Compel arbitration in which the drafting party shall pay reasonable attorney's fees and costs

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 20-2783 PSG (JEMx) | Date | April 15, 2020 |
|---|---|---|---|
| Title | Postmates Inc. v. 10,356 Individuals | | |

related to the arbitration." *Id.* § 1281.97(b). If the non-drafting party proceeds in court, the "court shall impose a monetary sanction" against the drafting party "by ordering the drafting party to pay the reasonable expenses, including attorney's fees and costs," and may impose other sanctions including evidentiary sanction, default on the underlying claims, and contempt of court. *Id.* § 1281.99.

     C.     <u>This Action</u>

On February 15, 2020, the Defendants in this action, represented by Keller Lenkner, filed 10,356 arbitration demands against Postmates. *See Evangelis Decl.* ¶ 46, Ex. S. Each Defendant alleges worker misclassification and violations of California wage and hour laws, as well as "applicable Municipal Codes," and many allege violations of the Fair Labor Standards Act. *Id.* Defendants' demands followed the same format as those of the *Adams* Claimants. *See Opp.* 10:5–11.

AAA notified Postmates of the new filing on February 24, 2020. *See Evangelis Decl.* ¶ 47, Ex. T at 8 ("*AAA Email*"). The email confirmed AAA's receipt of "ten thousand three hundred and fifty-six (10,356) individual demands for arbitration involving the above referenced parties, each of which has been filed in accordance with a contract containing a clause providing for administration by the AAA." *Id.* The email stated that the preliminary review had determined that the cases would "be administered" under the "American Arbitration Association ('AAA') Employment Arbitration Rules," and in accordance with the "'Administrative Group Filing Fees' section" of the AAA Employment/Workplace Fee Schedule, and stated that Postmates must pay a total of $4,689,600 in initial fees by March 16, 2020. *Id.* AAA also stated that the demands are subject to SB 707 and that "payment must be received by April 15, 2020 or the AAA may close the parties' cases." *Id.* AAA asserted that it "will not grant any extensions to this payment deadline." *Id.* AAA invoiced Postmates for $4,689,600 in filing fees. *See Evangelis Decl.* ¶ 48.

On March 25, 2020, Postmates filed this action. *See Complaint*, Dkt. # 1 ("*Compl.*"). The next day, Postmates informed AAA that it had filed a lawsuit concerning the 10,356 demands. *See Evangelis Decl.* ¶ 50; *AAA Email* at 7–8. Postmates also requested that AAA suspend administration of these matters for 60 days under Employment Rule 1, which provides that "AAA will suspend administration for 60 days" if "a party seeks judicial intervention with respect to a pending arbitration" "within 30 days after the AAA's commencement of administration." *Id.* AAA denied Postmates' request on March 27. *See Evangelis Decl.* ¶ 51; *AAA Email* at 2.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 20-2783 PSG (JEMx) | Date | April 15, 2020 |
|---|---|---|---|
| Title | Postmates Inc. v. 10,356 Individuals | | |

Postmates amended its complaint.  *See First Amended Complaint*, Dkt. # 7 ("*FAC*").  Postmates brings the following causes of action:

Count I: Declaratory Judgment: Postmates Cannot Be Compelled to Arbitrate on a De Facto Class Basis.  *Id.* ¶¶ 77–86.

Count II: Declaratory Judgment: FAA Preemption of SB 707.  *Id.* ¶¶ 87–93.

Count III: Declaratory Judgment: SB 707 Violates United States and California Constitutions.  *Id.* ¶¶ 94–100.

Count IV: Injunctive Relief: Enjoining the AAA Arbitration.  *Id.* ¶¶ 101–06.

Count V: Injunctive Relief: Enjoining Enforcement of SB 707.  *Id.* ¶¶ 107–14.

On April 3, 2020, Plaintiff filed a motion "for a preliminary injunction by April 15, 2020," noticing the motion for hearing on May 4, 2020.  *See* Dkt. # 8.  On April 7, 2020, the Court struck the motion because it was noticed for a hearing date closed on the Court's calendar.  *See* Dkt. # 14.

On April 8, 2020, Plaintiff filed an ex parte application for temporary restraining order and order to show cause why a preliminary injunction should not issue.  *See App*.  Plaintiff requests that the Court enjoin Defendants from: "(1) participating in the de facto class arbitration currently pending before the American Arbitration Association ('AAA'); and (2) enforcing any provision of California Senate Bill 707 ('SB 707'), codified at California Code of Civil Procedure sections 1281.97, 1281.98, and 1281.99, against Postmates."  *See Notice* 2.  Plaintiff requests that the Court issue a preliminary injunction by April 15, 2020.  *Id.*

II.      Legal Standard

An application for a TRO must satisfy the same legal standard governing the issuance of a preliminary injunction.  *See Cal. Indep. Sys. Operator Corp. v. Reliant Energy Servs., Inc.*, 181 F. Supp. 2d 1111, 1126 (E.D. Cal. 2001).  Accordingly, a party seeking a TRO must establish each of the following elements: (1) a likelihood of success on the merits, (2) a likelihood of irreparable injury to the plaintiff if injunctive relief is not granted, (3) a balance of hardships favoring the plaintiff, and (4) an advancement of the public interest.  *See Winter v. Nat. Res. Def. Council*, 555 U.S. 7, 20 (2008).  Further, a TRO "should be restricted to serving [its] underlying purpose of preserving the status quo and preventing irreparable harm just so long as is necessary

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 20-2783 PSG (JEMx) | Date | April 15, 2020 |
|---|---|---|---|
| Title | Postmates Inc. v. 10,356 Individuals | | |

to hold a hearing, and no longer." *Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers Local No. 70*, 415 U.S. 423, 439 (1974). The Ninth Circuit uses a "sliding scale" approach, under which "the elements of the preliminary injunction test are balanced, so that a stronger showing of one element may offset a weaker showing of another." *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011). "An application for a temporary restraining order involves the invocation of a drastic remedy which a court of equity ordinarily does not grant, unless a very strong showing is made of a necessity and desirability of such action." *Vaccaro v. Sparks*, No. SACV 11-00164, 2011 WL 318039, at *1 (C.D. Cal. Jan. 28, 2011) (quoting *Youngstown Sheet & Tube Co. v. Sawyer*, 103 F. Supp. 978, 980 (D.D.C. 1952)).

III.     Discussion

        The Court turns first to the parties' arguments regarding this Court's jurisdiction. The Court then takes the *Winter* factors in turn. Finally, the Court addresses Defendants' request for sanctions.

        A.      Subject Matter Jurisdiction

        A party seeking declaratory relief must show: (1) an actual controversy (2) regarding a matter within federal court subject matter jurisdiction; but even if these requirements are met, the court still has discretion to decline to entertain the declaratory relief action. *See Calderon v. Ashmus*, 523 U.S. 740, 745–46 (1998); *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127–28 (2007).

        Plaintiff asserts that subject matter jurisdiction exists in this case "pursuant to 9 U.S.C. § 4 and 28 U.S.C. §§ 1331 and 1367 because the underlying controversy involves claims arising under federal law." *FAC* ¶¶ 20–21. Defendants argue that there is not subject matter jurisdiction over this case because Postmates' declaratory relief claims do not arise under federal law. *See Opp.* 15:26–18:2.

        Before declaratory relief can be granted, federal subject matter requirements must be satisfied. *See Vaden v. Discover Bank*, 556 U.S. 49, 70 n.19 (2009). The Declaratory Judgment Act ("DJA") does not independently confer jurisdiction. A case cannot "arise under" the DJA for purposes of 28 U.S.C. § 1331. *Franchise Tax Bd. of State of Cal. v. Constr. Laborers Vacation Tr. for S. Cal.*, 463 U.S. 1, 16 (1983). Rather, in declaratory relief actions, whether the claim "arises under" federal law is determined by the nature of the underlying coercive claim: the claim that the declaratory judgment defendant may assert against the plaintiff. *See, e.g., id.* at 19 ("Federal courts have regularly taken jurisdiction over declaratory judgment suits in which,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 20-2783 PSG (JEMx) | Date | April 15, 2020 |
|---|---|---|---|
| Title | Postmates Inc. v. 10,356 Individuals | | |

if the declaratory judgment defendant brought a coercive action to enforce its rights, that suit would necessarily present a federal question."); *Medtronic, Inc. v. Mirowski Family Ventures, LLC*, 571 U.S. 191, 197 (2014) ("[F]ederal courts, when determining declaratory judgment jurisdiction, often look to the character of the threatened action . . . they ask whether a coercive action brought by the declaratory judgment defendant [] would necessarily present a federal question.") (internal quotations omitted); *Standard Ins. Co. v. Saklad*, 127 F.3d 1179, 1181 (9th Cir. 1997) ("A person may seek declaratory relief in federal court if the one against whom he brings his action could have asserted his own rights there."). However, if, "but for the availability of the declaratory judgment procedure, the federal claim would arise only as a defense to a state created action, jurisdiction is lacking." *Franchise Tax Bd. of State of Cal.*, 463 U.S. at 16.

Plaintiff's FAC's five counts seek declaratory and injunctive relief alleging that: (1) Defendants have violated their agreements to arbitrate individually with Postmates; (2) if Defendants were to bring a claim against Postmates under SB 707, Postmates would show the claim is preempted by the FAA and/or violates the Contracts Clauses of the federal and state constitutions. *See generally FAC*.

The FAA allows federal courts to review arbitration agreements only to the extent a party invokes Section 4 of the FAA and does so in a controversy where the court would have jurisdiction over the underlying substantive dispute. *See Opp.* 16:14–16; *Vaden*, 556 U.S. at 53 ("Section 4 of the Federal Arbitration Act, 9 U.S.C. § 4, authorizes a United States district court to entertain a petition to compel arbitration if the court would have jurisdiction, save for the arbitration agreement, over a suit arising out of the controversy between the parties." (internal quotation marks omitted)); *Geographic Expeditions, Inc. v. Estate of Lhotka ex rel. Lhotka*, 599 F.3d 1102, 1106 (9th Cir. 2010) ("a federal court has jurisdiction over a petition to compel arbitration if the federal court would have jurisdiction over the underlying substantive dispute"). Plaintiff argues that Defendants could have filed a petition to compel arbitration against Postmates in federal court. *See Reply* 2:15–18; *Adams v. Postmates Inc.*, No. 4:19-cv-03042-SBA, Dkt. # 1 ¶ 10 (N.D. Cal. June 3, 2019) (action to compel brought by Defendants' counsel in federal court based on similar arbitration claims to those here); *see also Morgan Stanley & Co., LLC v. Couch*, 134 F. Supp. 3d 1215, 1221–23 (E.D. Cal. 2015). Plaintiff argues that that lawsuit would have arisen under federal law because many Defendants assert claims under the Fair Labor Standards Act. *See Reply* 2:16–18.

Ultimately, Plaintiff has made a persuasive argument that there is subject matter jurisdiction given that it is seeking declaratory relief to avoid a threatened action which would itself arise under federal law. *See Medtronic*, 571 U.S. at 198 ("Consequently this declaratory

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 20-2783 PSG (JEMx) | Date | April 15, 2020 |
|---|---|---|---|
| Title | Postmates Inc. v. 10,356 Individuals | | |

judgment action, which avoids that threatened action, also 'arises under' federal . . . law."). Accordingly, the Court concludes at this time, based on the parties' briefing, it likely has jurisdiction to consider Plaintiff's application.

      B.     *Winter* Factors

          i.     *Likelihood of Success on the Merits*

Plaintiff argues that it is likely to succeed on the merits of its claims that: (1) Defendants may not compel Postmates to participate in "de facto class arbitration"; and (2) SB 707 is preempted by the FAA and unconstitutional under the Contracts Clauses of the federal and state constitutions. *See App.* 11:7–10.

The Court concludes that Plaintiff is unlikely to succeed on the merits of its first argument, that Defendants have impermissibly filed "de facto class arbitration." *See App.* 11:12–14:7. First, the issue is likely delegated to the arbitrator. In *Adams*, the court considered the argument Plaintiff raises in the context of cross-motions to compel arbitration, concluding that the issue was properly delegated to the arbitrator based on the language of the Fleet Agreement. *See Adams I*, 414 F. Supp. 3d at 1248. As here, Plaintiff sought an order compelling the petitioner couriers to refile their arbitration demands and proceed in an "individual" basis rather than by "de facto class arbitration." *See id.* at 1248, 1251. The Court concluded, first, that the delegation clause in the arbitration agreement "clearly and unmistakably" delegates gateway questions of arbitrability to the arbitrator, and, applying contract interpretation principles, concluded that the exception to the delegation clause was limited specifically to challenges to "the enforceability of the Class Action and Representative Action Waivers," rather than more generally to "any dispute" concerning the waiver. *See id.* at 1252–55 (emphasis in original). The court held that Plaintiff's argument as to whether the *Adams* Claimants' arbitration claims improperly constituted an attempt to arbitrate on a classwide basis was explicitly delegated to the arbitrator. *See id.* at 1254; *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 527 (2019). The court also explained that, based on AAA rules, whether the couriers' demands comported with the requirements of the Mutual Arbitration Provision is "within the arbitrator's exclusive authority." *See Adams I*, 414 F. Supp. 3d at 1254–55 (citing AAA Comm. Arb. Rules, Rule R-4(c) ("It is the responsibility of the filing party to ensure that any conditions precedent to the filing of a case are met prior to filing for an arbitration, as well as any time requirements associated with the filing. Any dispute regarding whether a condition precedent has been met may be raised to the arbitrator for determination.")); *Adams II*, 2020 WL 1066980, at *4. The *Adams* court granted the motions to compel arbitration, but declined to order Plaintiff to pay filing fees, concluding that the payment of arbitration fees

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 20-2783 PSG (JEMx) | Date | April 15, 2020 |
|----------|------------------------|------|----------------|
| Title | Postmates Inc. v. 10,356 Individuals | | |

was a "procedural condition precedent to be decided by the arbitrator," citing to the AAA Commercial Arbitration Rules incorporated in the Fleet Agreement. *See id.* at 1255. The Court finds the reasoning in *Adams* persuasive, and that the issue Plaintiff raises is likely delegated to the arbitrator.

In addition, even if the Court were to consider Plaintiff's arguments, the Court is not convinced that Plaintiff is likely to succeed. Plaintiff argues that parties may not be compelled to class arbitration, and that Defendants are doing so here, relying on *Lamps Plus, Inc. v. Varela*, 139 S. Ct. 1407, 1416 (2019). There, after a data breach, an employee sued his employer in federal court bringing claims on behalf of a putative class of employees whose information had been compromised; rather than compel arbitration on an individual basis, the court authorized arbitration on a classwide basis. *See id.* at 1412–13. There was no express mention of class proceedings in the arbitration agreement. *See id.* The Supreme Court held that an ambiguous agreement cannot provide a contractual basis for compelling class arbitration. *See id.* at 1415, 1419. Here, in contrast, AAA determined that Defendants had brought "individual" arbitration demands. *See AAA Email* at 8. While Plaintiff likens the efforts by Defendants' counsel to class arbitration by emphasizing that Defendants are represented by the same counsel and filed many demands at the same time with similar allegations, here, Defendants have filed individual demands in their own names, and are thus not "rais[ing] serious due process concerns by adjudicating the rights of *absent class members* of the plaintiff class." *See Lamps Plus*, 139 S. Ct. at 1416 (emphasis added); *see also AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 347–48 (2011) ("Classwide arbitration includes absent parties."); *Sakkab v. Luxottica Retail N.A., Inc.*, 803 F.3d 425, 435 (9th Cir. 2015); *Blair v. Rent-A-Center, Inc.*, No. 17-17221, 2019 WL 2701333, at *3–9 (9th Cir. June 28, 2019); *App.* 11:23–14:3; *Evangelis Decl.*, Ex. S. The fact that there are numerous claims does not automatically render them brought on a class basis. *See Adams II*, 2020 WL 1066980, at *4 ("Petitioners did what they are contractually required to do: submit individual arbitration demands to the arbitrator. The mere fact that Petitioners filed over 5,000 demands within a short span of time does not transform those individual demands into a de facto class arbitration, as Postmates posits."). Plaintiff's arguments focus solely on arguably abusive tactics by Defendants' *counsel* to seek a settlement, but do not point to anything about *Defendants' claims themselves* that make them "class actions." *See App.* 11–14.

The Court concludes that Plaintiff is unlikely here to succeed in demonstrating: (1) that the Court, rather than the arbitrator, may decide this question and/or (2) that Defendants are proceeding as "de facto class arbitration." *See also Adams II*, 2020 WL 1066980, at *4. Nor has Plaintiff raised serious questions going to the merits. Accordingly, Plaintiff is unlikely to obtain an injunction from this Court "enjoin[ing] Defendants . . . from participating in" the arbitration pending before the AAA. *See Notice* 2. Accordingly, the Court need not reach whether Plaintiff

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 20-2783 PSG (JEMx) | Date | April 15, 2020 |
|---|---|---|---|
| Title | Postmates Inc. v. 10,356 Individuals | | |

is likely to succeed on the merits of its arguments regarding SB 707, as Plaintiff is unlikely to succeed in demonstrating that it is appropriate for it to decline to proceed by arbitration. Any argument regarding Defendants' ability to obtain penalties under SB 707 is contingent on Plaintiff's continued refusal to pay the fees to arbitrate Defendants' claims, and the Court is not convinced of any need for immediate injunctive relief.

ii.     *Irreparable Harm*

"[P]laintiffs seeking preliminary relief [must] demonstrate that irreparable injury is *likely* in the absence of an injunction," not merely that it is possible. *Arc of Cal. v. Douglas*, 757 F.3d 975, 990 (9th Cir. 2014) (quoting *Winter*, 555 U.S. at 22). Plaintiff alleges that it faces irreparable harm by April 15, the date it will be forced to choose between "(a) paying millions of dollars in unrecoverable arbitration filing fees and acceding to de facto class arbitration in contravention of the parties' individual arbitration agreements, and (b) insisting on individual arbitration and exposing itself to substantial penalties under a recently enacted California statute, SB 707, which is preempted by the Federal Arbitration Act and unconstitutional under the federal and state constitutions." *See Notice* 2.

As to the first harm, being required to pay arbitration filing fees, Plaintiff argues that this is irreparable harm because although monetary loss typically is not sufficient, the fees here are not recoverable. *See App.* 21:4–23:9. Plaintiff also argues that "being required to arbitrate a dispute that the parties did not agree to arbitrate is per se irreparable harm." *Id.* 22:21–22; *Morgan Stanley & Co.*, 134 F. Supp. 3d at 1235 (finding irreparable harm if required to arbitrate by party that waived its arbitration rights), aff'd, 659 F. App'x 402 (9th Cir. 2016); *Pension Plan for Pension Tr. Fund for Operating Engineers v. Weldway Const., Inc.*, 920 F. Supp. 2d 1034, 1049 (N.D. Cal. 2013) ("Several Circuits have held that a party is irreparably harmed by incurring costs arbitrating a dispute that the court has concluded is non-arbitrable.").

The Court disagrees for several reasons. First, "[m]ere litigation expense, even substantial and unrecoupable cost, does not constitute irreparable injury." *Renegotiation Bd. v. Bannercraft Clothing Co. Inc.*, 415 U.S. 1, 24 (1974); *Nationwide Biweekly Admin. Inc. v. Owen*, 873 F.3d 716, 736 n.20 (9th Cir. 1990); *see also In re Cintas Corp. Overtime Pay Arbitration Litig.*, No. C06-1781-SBA, 2009 WL 1766595, at *5 (N.D. Cal. June 22, 2009) ("[A]ny additional cost resulting from the Respondents' involvement in the pending arbitration, as a matter of law, does not constitute irreparable harm.") (citing *Graphic Commc'ns. Union, Chi. Paper Handlers' & Electrotypers' Local No. 2 v. Chi. Tribune Co.*, 779 F.2d 13 (7th Cir. 1985)); *Adams II*, 2020 WL 1066980, at *5. Second, the Ninth Circuit has concluded that being required to "arbitrate disputes that may not be arbitrable" does not constitute irreparable injury. *Camping*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 20-2783 PSG (JEMx) | Date | April 15, 2020 |
|---|---|---|---|
| Title | Postmates Inc. v. 10,356 Individuals | | |

*Const. Co. v. Dist. Council of Iron Workers*, 915 F.2d 1333, 1349 (9th Cir. 1990) ("The district court's principal error lies in its assumption that unnecessarily undergoing arbitration proceedings constitutes irreparable injury.  That is simply not the case."); *see also Abernathy v. S. Cal. Edison*, 885 F.2d 525, 529 (9th Cir. 1989) ("[I]t seems clear that an order compelling arbitration does not ordinarily harm the losing party irreparably.").  Third, Plaintiff does *not* argue that Defendants' wage and hour claims themselves are *non-arbitrable*, that the parties did not agree to arbitrate them, or that there was no agreement to arbitrate at all, unlike the cases Plaintiff cites, but instead takes issue with the method Defendants' counsel has used here.  *See generally App*.  Plaintiff does not attempt to show how prevailing on its "class arbitration" argument would reduce its filing fees, or how Defendants would be required to proceed.  *See Opp.* 22.  As the *Adams* court concluded, Plaintiff agreed to broad, mandatory arbitration in the Fleet Agreement for couriers' wage and hour claims, and it is likely that, unless Defendants "abandon their claims, which seems unlikely," Plaintiff will have to pay the arbitration filing fees at some point.  *See Adams II*, 2020 WL 1066980, at *5–6 ("It strains credulity for Postmates to argue that the amount of filing fees due constitute irreparable harm when that 'harm' is entirely of its own making.").

As to Plaintiff's argument regarding the penalties it may face under SB 707, that is contingent on: (1) *Plaintiff* refusing to pay the filing fees pursuant to the Fleet Agreement, (2) Defendants filing a motion to compel arbitration invoking SB 707, and (3) a court or tribunal imposing SB 707 penalties.  *See Opp.* 23.  If Plaintiff is correct in its arguments, and the court or tribunal concludes that SB 707 is preempted or unconstitutional, it will not face any penalties at all.  *See Opp.* 23.

The Court concludes that Plaintiff has not carried its burden to demonstrate that it will suffer irreparable harm absent an immediate injunction and that its injuries are "more likely than not."  *See Winter*, 555 U.S. at 22.

### iii.      Balance of Equities and Public Interest

Plaintiff argues that the balance of equities tips in its favor because it is likely to suffer "a battery of irreparable injuries absent an injunction, including the loss of its rights under the FAA to pursue the method of dispute resolution by which it expressly agreed to resolve disputes with Defendants," and the burden of paying arbitration filing fees.  *See App.* 23–25.  Defendants, Plaintiff argues, would not suffer harm because any delay in Defendants' ability to arbitrate their disputes "would be nominal."  *Id.*  Defendants respond that they have a "well-recognized and compelling interest in obtaining prompt arbitration of their claims."  *Opp.* 23–24.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 20-2783 PSG (JEMx) | Date | April 15, 2020 |
|---|---|---|---|
| Title | Postmates Inc. v. 10,356 Individuals | | |

The Court concludes the balance of equities tips against an injunction. Defendants have an interest in being permitted to pursue their wage and hour claims in arbitration, which "is supposed to be a speedy and inexpensive alternative to litigation," and which the agreement they entered into and Postmates' drafted expressly requires. *See PaineWebber Inc. v. Farnam*, 843 F.2d 1050, 1052 (7th Cir. 1988); *see also Camping Const. Co.*, 915 F.2d at 1349 ("Here, the lengthy delay caused by the preliminary injunction granted below represents near-total vitiation of the salutary effect which the typically quick and inexpensive arbitration is presumed to have on labor-management relations."); *Bushley v. Credit Suisse First Boston*, 360 F.3d 1149, 1153 (9th Cir. 2004) ("The Federal Arbitration Act represents Congress's intent 'to move the parties to an arbitrable dispute out of court and into arbitration as quickly and easily as possible.'"); *In re Cintas Corp. Overtime Pay Arbitration Litig.*, 2009 WL 1766595, at *5 ("Imposing a stay of the arbitration would serve only to delay conclusion of the dispute further, which is antithetical to the spirit and intent of the arbitration process."). The Court cannot conclude that the balance of equities tips in favor of enjoining Defendants from arbitration, and while Plaintiff contends that Defendants would "not be precluded from arbitrating their disputes in the manner required by the parties' agreements," Plaintiff does not explain what kind of injunction Plaintiff would craft or how Defendants would be required to proceed. *See App.* 23–25.

The public interest also does not favor an injunction here. California has a public interest in the enforcement of its wage and hour laws. *See Jimenez v. Menzies Aviation Inc.*, No. 15-CV-02392-WHO, 2015 WL 5591722, at *4 (N.D. Cal. Sept. 23, 2015). And, as discussed above, Defendants have an interest in having their claims heard in a timely manner.

### iv. *Whether There is an Emergency*

Finally, the Court notes that Plaintiff has made no showing that waiting a few weeks to hold a hearing and have full briefing from both sides would cause irreparable injury, especially given the fact that this Court and the country is in the midst of a pandemic. *See Art Ask Agency v. Individuals, Corps., Ltd. Liab. Companies, Partnerships & Unincorporated Associations Identified on Schedule A Hereto*, No. 20-CV-1666, 2020 WL 1427085, at *2 (N.D. Ill. Mar. 18, 2020) ("[T]he world is in the midst of a global pandemic . . . . The Court can still hear emergency motions, but resources are stretched and time is at a premium. [] If there's ever a time when emergency motions should be limited to genuine emergencies, now's the time."); Order of the Chief Judge 20-042. Plaintiff itself appears to recognize this. *See* Dkt. # 8 ("Postmates does not believe that seeking a temporary restraining order would be appropriate in this case."). Plaintiff has not proved there is a need for emergency relief.

### v. *Conclusion*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 20-2783 PSG (JEMx) | Date | April 15, 2020 |
|---|---|---|---|
| Title | Postmates Inc. v. 10,356 Individuals | | |

The Court concludes that Plaintiff has not demonstrated a temporary restraining order is warranted under the *Winter* factors.  The Court also declines to set a hearing on the order to show cause at this time.

> C.     Sanctions

Defendants request that sanctions be imposed pursuant to this Court's Standing Order which states "[e]x parte applications are solely for extraordinary relief and should be used with discretion.  Sanctions may be imposed for misuse of ex parte applications." *Standing Order* ¶ 10.  The Court concludes that Plaintiff's ex parte application, while ultimately unsuccessful, has not abused the ex parte procedure so as to warrant sanctions.

IV.     Conclusion

For the foregoing reasons, the Court **DENIES** Plaintiff's application for a temporary restraining order.  Plaintiff may file a regularly noticed preliminary injunction motion if it chooses.  The Court **DENIES** Defendants' request for sanctions.

**IT IS SO ORDERED**.