THEANE EVANGELIS, SBN 243570
  tevangelis@gibsondunn.com
DHANANJAY S. MANTHRIPRAGADA, SBN 254433
  dmanthripragada@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA 90071-3197
Telephone: 213.229.7000
Facsimile: 213.229.7520

MICHELE L. MARYOTT, SBN 191993
  mmaryott@gibsondunn.com
SHAUN A. MATHUR, SBN 311029
  smathur@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
3161 Michelson Drive
Irvine, CA 92612-4412
Telephone: 949.451.3800
Facsimile: 949.451.4220

Attorneys for Plaintiff POSTMATES INC.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| POSTMATES INC.,<br><br>    Plaintiff,<br><br>v.<br><br>10,356 INDIVIDUALS,<br><br>    Defendants. | CASE NO. 2:20-cv-02783-PSG-JEM<br><br>**POSTMATES' RESPONSE TO COURT'S ORDER TO SHOW CAUSE RE: JOINDER AND DISCRETIONARY DISMISSAL**<br><br>**HEARING REQUESTED**<br><br>**Hearing:**<br>Date: June 29, 2020<br>Time: 1:30 p.m.<br>Place: Courtroom 6A<br>Judge: Hon. Philip S. Gutierrez |

Gibson, Dunn &
Crutcher LLP

# TABLE OF CONTENTS

Page

I. INTRODUCTION ..................................................................................................1

II. ARGUMENT .......................................................................................................2

    A.    Joinder of All Defendants Is Proper..........................................................2

        1.    Postmates' Claims Arise from the Same Transactions and Occurrences...................................................................................2

            a.    Defendants' Mass Arbitration Demands Were Filed in One Transaction...................................................................3

            b.    Defendants' Claims Arise out of the Same Transaction .......5

        2.    Postmates' Claims Raise Questions Common to All Defendants .............................................................................5

    B.    The Court Should Entertain and Resolve This Declaratory Judgment Suit........................................................................................6

        1.    A Substantial Case or Controversy Arising Under Federal Law Exists...............................................................................7

        2.    The *Herron* Factors Weigh in Favor of the Exercise of Jurisdiction...........................................................................8

III. CONCLUSION ..................................................................................................10

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Adams v. Postmates Inc.*,
   414 F. Supp. 3d 1246 (N.D. Cal. 2019) .................................................................. 5, 9

*Aetna Cas. & Sur. Co. v. Merritt*,
   974 F.2d 1196 (9th Cir. 1992) ..................................................................................... 9

*AF Holdings, LLC v. Does 1-1058*,
   752 F.3d 990 (D.C. Cir. 2014) ..................................................................................... 4

*Allstate Ins. Co. v. Herron*,
   634 F.3d 1101 (9th Cir. 2011) ........................................................................ 6, 8, 9, 10

*Almont Ambulatory Surgery Ctr., LLC v. UnitedHealth Grp., Inc.*,
   99 F. Supp. 3d 1110 (C.D. Cal. 2015) ..................................................................... 4, 5

*Alvarez v. T-Mobile USA, Inc.*,
   822 F. Supp. 2d 1081 (E.D. Cal. 2011) ....................................................................... 8

*Blesedell v. Mobil Oil Co.*,
   708 F. Supp. 1408 (S.D.N.Y. 1989) ............................................................................ 5

*Boyd v. DoorDash, Inc.*,
   No. 19-cv-07646 (N.D. Cal.) ....................................................................................... 9

*Chamberlain v. Allstate Ins. Co.*,
   931 F.2d 1361 (9th Cir. 1991) ..................................................................................... 8

*Desert Empire Bank v. Ins. Co. of N. Am.*,
   623 F.2d 1371 (9th Cir. 1980) ..................................................................................... 6

*In re EMC Corp.*,
   677 F.3d 1351 (Fed. Cir. 2012) ................................................................................... 4

*Epic Sys. Corp. v. Lewis*,
   138 S. Ct. 1612 (2018) ................................................................................................. 1

*First Options of Chicago, Inc. v. Kaplan*,
   514 U.S. 938 (1995) ..................................................................................................... 9

# TABLE OF AUTHORITIES
(*continued*)

Page(s)

*Franchise Tax Bd. of Cal. v. Constr. Laborers Vacation Tr. for S. Cal.*,
   463 U.S. 1 (1983)..........................................................................................................6

*Gilmore v. James*,
   274 F. Supp. 75 (N.D. Tex. 1967) ...............................................................................5

*Gov't Employees Ins. Co. v. Dizol*,
   133 F.3d 1220 (9th Cir. 1998) ...................................................................................10

*League to Save Lake Tahoe v. Tahoe Reg'l Planning Agency*,
   558 F.2d 914 (9th Cir. 1977) ..............................................................................2, 4, 6

*Lee v. Cook County*,
   635 F.3d 969 (7th Cir. 2011) .......................................................................................5

*McClenon v. Postmates Inc.*,
   No. 1:19-cv-06415 (N.D. Ill.) .....................................................................................5

*MedImmune, Inc. v. Genentech, Inc.*,
   549 U.S. 118 (2007).........................................................................................2, 6, 7

*Medtronic, Inc. v. Mirowski Family Ventures, LLC*,
   571 U.S. 191 (2014)....................................................................................................7

*Moore v. N.Y. Cotton Exch.*,
   270 U.S. 593 (1926)....................................................................................................3

*Palo Alto Tenants Union v. Morgan*,
   321 F. Supp. 908 (N.D. Cal. 1970)..............................................................................8

*Saval v. BL Ltd.*,
   710 F.2d 1027 (4th Cir. 1983) .....................................................................................4

*Susan B. Anthony List v. Driehaus*,
   573 U.S. 149 (2014)....................................................................................................7

*United Mine Workers of Am. v. Gibbs*,
   383 U.S. 715 (1966)....................................................................................................2

*Vaden v. Discover Bank*,
   556 U.S. 49 (2009)...................................................................................................7, 9

# TABLE OF AUTHORITIES
(*continued*)

Page(s)

**Statutes**

9 U.S.C. § 4 ..................................................................................................................... 8

28 U.S.C. § 2201(a) ..................................................................................................... 6, 8

**Other Authorities**

7 Wright & Miller, *Federal Practice & Procedure* (3d ed. 2014) ................................... 5

**Rules**

Fed. R. Civ. P. 20(a)(2) .............................................................................................. 2, 5

# I. INTRODUCTION

On February 15, 2020, Defendants collectively filed 10,356 boilerplate, near-identical arbitration demands in a single email, alleging the same generic facts and seeking the same relief arising out of Postmates' alleged misclassification of couriers as independent contractors. The American Arbitration Association ("AAA") dubbed the action "10,356 Individuals v. Postmates, Inc.," and sent Postmates a single invoice for initial arbitration filing fees according to AAA's "Group Filing Fee[]" schedule, which AAA applies when "similar claims" are filed against "the same party" and counsel "is consistent or coordinated across all cases." Citing California's SB 707, AAA made collective demand sufficiency determinations and stated that it would close all the cases unless payment was received by April 15, 2020. Defendants claim that they agreed to resolve disputes in individual arbitration, but their insistence on having identical claims collectively filed, administered, and adjudicated is the antithesis of individual arbitration. *See Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1623 (2018) (courts "must be alert to new devices and formulas" that undermine individual arbitration). Postmates filed this action for "declaratory and injunctive relief determining that Defendants . . . may not compel Postmates" to arbitrate in any manner that contravenes the parties' individual arbitration agreement, and "that Defendants may not enforce SB 707 against Postmates because it is preempted by the FAA and unconstitutional." Dkt. 7 at 2.

The Court has requested briefing on (1) whether Defendants have properly been joined under Federal Rule of Civil Procedure 20, and (2) whether the Court should entertain Postmates' Declaratory Judgment Act suit. Dkt. 34. As explained below, joinder is proper and the Court should entertain Postmates' request for declaratory relief.

*First*, joinder is appropriate because this case arises out of one transaction and presents common questions. Defendants simultaneously filed 10,356 generic arbitration demands against Postmates in a single transaction; insisted that AAA open, administer, and close the cases together (which it has); and threatened to jointly move to enforce SB 707 against Postmates. This case therefore concerns Defendants' attempt to collectively

arbitrate (contrary to the parties' agreement to individually arbitrate) and enforce SB 707 (contrary to federal law). "[J]oinder of claims, parties and remedies is strongly encouraged," *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 724 (1966), and permitting Postmates to proceed against all Defendants would "expedite the final determination of [the parties'] disputes" and "prevent[] [thousands of] lawsuits," *League to Save Lake Tahoe v. Tahoe Reg'l Planning Agency*, 558 F.2d 914, 917 (9th Cir. 1977).

*Second*, the Court should entertain this declaratory judgment suit. An actual case or controversy exists under Article III, as AAA has administratively closed 10,256 Defendants' cases, and Defendants have twice threatened to collectively file a petition to compel arbitration invoking SB 707. *See MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 128–32 (2007). Further, all the discretionary factors favor the Court hearing this lawsuit—which would promote judicial economy by resolving all non-arbitrable issues between the parties in the forum most convenient to Defendants, would not require resolution of any thorny issues of state law, and would reduce the risk of duplicative litigation. Though the Court's Order to Show Cause expresses skepticism, Defendants' mass demands raise important, non-arbitrable threshold issues of federal law, and there is nowhere for Postmates to turn but this Court for answers to them.

The Court should find that joinder is proper and retain jurisdiction over this case.

## II. ARGUMENT

### A. Joinder of All Defendants Is Proper

All Defendants in this lawsuit are properly joined. Defendants may be joined if (1) "any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences," and (2) "any question of law or fact common to all defendants will arise in the action." Fed. R. Civ. P. 20(a)(2). Both elements are satisfied here.

#### 1. Postmates' Claims Arise from the Same Transactions and Occurrences

For the purposes of Rule 20 joinder, the lenient "same transaction" requirement is satisfied where there exists a mere "logical relationship" between even otherwise

separate transactions. *See Moore v. N.Y. Cotton Exch.*, 270 U.S. 593, 610 (1926) ("'[t]ransaction' is a word of flexible meaning," and claims arise from the "same transaction" when they are connected by a "logical relationship").

Here, Postmates' claims against each Defendant arise from the exact same transactions and facts that evidence Defendants' mass arbitration scheme and the improper manner in which they have sought to arbitrate, and Defendants' threat to collectively enforce SB 707. Further, Defendants' underlying claims arise out of Postmates' single decision to classify couriers, including Defendants, as contractors.

### a. Defendants' Mass Arbitration Demands Were Filed in One Transaction

Postmates seeks a declaration that it cannot be compelled to arbitrate in any manner other than the individual manner to which it agreed, including the collective manner in which Defendants have sought to arbitrate their near-identical claims. Postmates also seeks to enjoin Defendants from pursuing any such improper arbitrations. *See* Dkt 7 at 26–27. This case therefore arises out of the manner in which *all* Defendants have sought to *collectively* arbitrate their claims, and the circumstances surrounding Defendants' coordinated mass arbitration demands. For example:

- On February 15, 2020, *all* Defendants' arbitration demands were submitted simultaneously by their purported counsel. *Id*. ¶ 61. The demands were sent to Postmates and AAA via a single email containing a single link to a single Dropbox folder containing the 10,356 demands, each of which was virtually identical. *Id.* ¶¶ 63–65.
- AAA began administering the 10,356 arbitration demands on February 24, 2020 by sending Postmates a single email, which titled the action "10,356 Individuals v. Postmates, Inc.," rather than sending separate communications for each individual arbitration. *Id.* ¶ 67.
- AAA applied its "Administrative *Group* Filing Fees," which applies to "similar claims" brought by the same counsel at the same time, and stated that Postmates must pay $4,689,000—an aggregate filing fee for *all* the arbitrations—in order to proceed. *Id.* AAA sent an invoice for the same amount the next day. *Id.*

*Almont Ambulatory Surgery Center, LLC v. UnitedHealth Group, Inc.*, 99 F. Supp. 3d 1110 (C.D. Cal. 2015), is instructive. There, the plaintiff named as defendants 422 different ERISA plans and employers sponsoring the ERISA plans. *Id.* at 1187. The court held that the claims "against each defendant arose out of the same series of

transactions or occurrences" because the plaintiff alleged that each plan had denied benefits through the allegedly improper practices of an administrator *that all the plans had in common*. *Id.* at 1187–88. Rather than requiring a granular analysis of every instance of each defendant's denial of benefits, the court reasoned that "each discrete claim is part of the larger systematic behavior alleged in the FAC." *Id.* at 1188.

So too here. The relief Postmates seeks in this case arises from its allegation that the *manner* in which all Defendants have aggregated their demands and pursued them collectively as part of a concerted mass arbitration scheme violates the parties' agreements to arbitrate individually. Dkt. 7 ¶¶ 63–66. This is sufficient to establish that the dispute before the Court arises out of the same transaction or occurrence. *See League to Save Lake Tahoe*, 558 F.2d at 917 (reversing dismissal of construction defendants where common nucleus of fact was that each had received administrative approval for construction projects, even though each defendant's underlying project was distinct).

In its April 20, 2020 Order, the Court cited several cases for the proposition that factual similarity cannot be "coincidental," and that claims cannot lack an "actual link" between one another. *In re EMC Corp*, 677 F.3d 1351, 1359 (Fed. Cir. 2012); *see also Saval v. BL Ltd.*, 710 F.2d 1027, 1031 (4th Cir. 1983) ("cars were purchased at different times, were driven differently, and had different service histories," and the only commonality between joined parties is that their cars "experienced similar problems"); *AF Holdings, LLC v. Does 1-1058*, 752 F.3d 990, 998 (D.C. Cir. 2014) (defendants' only connection is that they happened to "use[] the same protocol" to access a file at different times). But there is no coincidence here. Every Defendant filed a boilerplate demand against Postmates on February 25, 2020 through the same email sent by the same lawyer, and AAA administered those demands collectively. And Defendants have now twice threatened to collectively enforce SB 707 against Postmates in connection with their mass arbitrations. Postmates' suit alleges that such mass arbitration violates the parties' contract, and that SB 707 is unenforceable. Postmates' claims are thus *predicated* on a transactional connection between the demands, and joinder is appropriate.

### b. Defendants' Claims Arise out of the Same Transaction

This lawsuit derives from Defendants' method of pursuing arbitration and is not about Defendants' underlying claims, but even those underlying claims involve common facts. Specifically, each Defendant's arbitration demand relies on the single, common, overarching allegation that Postmates has misclassified each Defendant as an independent contractor through its contracts and policies applicable to *all* Defendants. *See* Dkt. 7 ¶ 56. This too satisfies Rule 20. *See Blesedell v. Mobil Oil Co.*, 708 F. Supp. 1408, 1422 (S.D.N.Y. 1989) (a "company-wide policy" is one "series of transaction or occurrences"); *Gilmore v. James*, 274 F. Supp. 75, 90 (N.D. Tex. 1967) (joinder proper where the common "series of occurrences . . . is [a] statewide policy" applicable to all employees), *aff'd*, 389 U.S. 572, 572 (1968) (per curiam).

The grounds for joinder advanced here—Defendants' unitary attempt to collectively arbitrate their claims, and Postmates' single decision to classify as independent contractors couriers who use the Postmates platform—has served as the basis for Rule 20 joinder of thousands of Postmates couriers in two separate lawsuits by Defendants' counsel seeking to compel Postmates to pay all filing fees relating to their mass arbitration demands. *See, e.g.*, *Adams v. Postmates Inc.*, 414 F. Supp. 3d 1246 (N.D. Cal. 2019); *McClenon v. Postmates Inc.*, No. 1:19-cv-06415 (N.D. Ill.). In *Adams*, for instance, over 5,000 claimants filed a single petition to compel arbitration of disputes materially identical to those asserted by Defendants, and the court there issued a single decision ordering all 5,000 claimants to arbitrate. *Adams*, 414 F. Supp. 3d at 1249–51.

### 2. Postmates' Claims Raise Questions Common to All Defendants

Postmates also satisfies the second element of Rule 20, which requires only that "any question of law or fact common to all defendants will arise in the action." Fed. R. Civ. P. 20(a)(2)(B). A "common question need not predominate," *Lee v. Cook County*, 635 F.3d 969, 971 (7th Cir. 2011); Postmates need only show "at least one common question of law or fact," *Almont Ambulatory Surgery Center, LLC*, 99 F. Supp. 3d at 1187 (quoting 7 Wright & Miller, *Federal Practice & Procedure* § 1653 (3d ed. 2014)).

Here, the two core factual and legal questions apply to each Defendant's dispute with Postmates: (1) whether the collective manner in which Defendants have sought to arbitrate against Postmates violates the Mutual Arbitration Provision, and (2) whether SB 707 is unenforceable because it is preempted by the Federal Arbitration Act or unconstitutional under the federal and state Contracts Clauses. Dkt. 7 ¶¶ 15–16. Because these questions are common to all Defendants (and are the two most important factual and legal questions in this case), the common question test is plainly satisfied.

Moreover, joinder "comport[s] with the principles of fundamental fairness" and would not prejudice any Defendant. *Desert Empire Bank v. Ins. Co. of N. Am.*, 623 F.2d 1371, 1375 (9th Cir. 1980). Defendants filed their arbitration demands collectively to begin with, and have threatened to join thousands of claimants in a single petition to compel arbitration. Joinder also would serve judicial economy and avoid the multiplicity of actions and potential for inconsistent decisions that would arise from dismissing any Defendants. *See League to Save Lake Tahoe*, 558 F.2d at 917 (reversing dismissal where joinder would "afford complete relief" to plaintiff and "prevent[] the possibility of multiple lawsuits").

## B. The Court Should Entertain and Resolve This Declaratory Judgment Suit

This Court also should exercise its discretion to "declare the rights and other legal relations" between Postmates and Defendants, 28 U.S.C. § 2201(a), as to both the meaning of the parties' individual arbitration agreement and the enforceability of SB 707. Courts may exercise jurisdiction over a declaratory judgment action so long as an actual controversy involving a federal question presently exists between the parties. *See MedImmune*, 549 U.S. at 127–28; *Franchise Tax Bd. of Cal. v. Constr. Laborers Vacation Tr. for S. Cal.*, 463 U.S. 1, 19 (1983). Where those statutory requirements are met, courts have discretion whether to exercise jurisdiction. *See Allstate Ins. Co. v. Herron*, 634 F.3d 1101, 1107 (9th Cir. 2011). Here, an actual case or controversy arising under federal law exists, and the Court should entertain this suit.

### 1. A Substantial Case or Controversy Arising Under Federal Law Exists

"[A] substantial controversy" between the parties "of sufficient immediacy and reality" exists "to warrant the issuance of a declaratory judgment." *MedImmune*, 549 U.S. at 127. In *MedImmune*, the Court held that an actual controversy existed even though the patent licensee had yet to terminate or be in breach of its license agreement—it was sufficient that the licensee "assert[ed] that no royalties [were] owing," and that the licensor "claim[ed] a right to royalties" and threatened "to enjoin sales [of the licensee's product] if royalties [were] not forthcoming." *Id.* at 128. The Court also explained that "[t]here is no dispute" that Article III jurisdiction "would have been satisfied [had] petitioner . . . taken the final step of refusing to make royalty payments" under the license agreement, thereby paving the way for the licensor to bring an action against the licensee. *Id.*; *see also Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014) (justiciable controversy exists where threatened injury poses a "substantial risk").

Here, a live controversy exists between the parties because Defendants improperly sought to commence arbitration in a manner that violates the parties' agreement to arbitrate individually. AAA closed the matters on April 20, 2020. And Defendants have twice threatened to file an action to compel arbitration and to invoke SB 707—a statute that is preempted by the FAA and unconstitutional. *See, e.g.*, Manthripragada Decl. ¶¶ 3–4 & Ex. 1. In fact, the day after this Court issued its Order to Show Cause, Defendants' counsel "confirm[ed] that [it] intends to file a motion to compel arbitration on behalf of its clients whose arbitrations have been administratively closed." *Id.* Ex. 1. That action remains imminent, so a "definite and concrete" dispute exists. *MedImmune*, 549 U.S. at 127.

Moreover, Defendants' threatened action "would necessarily present a federal question" because many Defendants assert claims under the Fair Labor Standards Act. Dkt. 7 ¶ 61; *Medtronic, Inc. v. Mirowski Family Ventures, LLC*, 571 U.S. 191, 197 (2014); *Vaden v. Discover Bank*, 556 U.S. 49, 70 n.19 (2009) (actions predicated on arbitration demands asserting federal law claims arise out of federal law). The Court

Gibson, Dunn & Crutcher LLP

would have supplemental jurisdiction over any state-law claims under 28 U.S.C. § 1367.

The statutory prerequisites for jurisdiction under 28 U.S.C. § 2201 are met.

### 2. The *Herron* Factors Weigh in Favor of the Exercise of Jurisdiction

Where, as here, the requirements of the Declaratory Judgment Act are met, courts generally examine eight discretionary factors relating to judicial economy and fairness when determining whether to hear a suit. *See Herron*, 634 F.3d at 1107. Here, each factor points in favor of this Court exercising jurisdiction.

*First*, although this case involves a state statute (SB 707), Postmates is not asking the Court to make any "needless determination[s] of state law." *Id.* In fact, the *interpretation* of SB 707 is not even at issue in this case. Rather, Postmates' arguments as to SB 707 are *federal* in nature, as Postmates asserts that SB 707 is preempted by the FAA and unconstitutional under *any* possible interpretation. *See* Dkt. 7 ¶ 16. Federal courts properly exercise jurisdiction to resolve the constitutionality of a state law where constitutionality does not hinge on an "ambiguity in the interpretation" of the statute. *Palo Alto Tenants Union v. Morgan*, 321 F. Supp. 908, 910 (N.D. Cal. 1970).

*Second*, Postmates has not engaged in "forum shopping." *Herron*, 634 F.3d at 1107. Although Postmates' principal place of business is San Francisco, Dkt. 7 ¶ 17, the plurality of Defendants reside and work in Los Angeles, *see* Manthripragada Decl. ¶ 5. Thus, proceeding in this district is *more* convenient for a larger number Defendants—especially if discovery commences on, among other things, whether any of the individuals for whom Postmates has no records actually have contractual relationships with Postmates. *See* 9 U.S.C. § 4; *Alvarez v. T-Mobile USA, Inc.*, 822 F. Supp. 2d 1081, 1086 (E.D. Cal. 2011) (ordering discovery to resolve "hotly contested" issue whether "an agreement to arbitrate . . . was ever formed"). And at any rate, courts have found this factor to weigh against jurisdiction only when a plaintiff files in federal court "to avoid state court proceedings," *Chamberlain v. Allstate Ins. Co.*, 931 F.2d 1361, 1367 (9th Cir. 1991), which is not the case here, as any action brought in state court to compel arbitration or enforce SB 707 would be removable to federal court under

*Vaden*. *See Vaden*, 556 U.S. at 70 n.19; *Boyd v. DoorDash, Inc.*, No. 19-cv-07646, Dkt. 1 (N.D. Cal. Nov. 20, 2019) (removing Keller Lenkner's petition to compel mass arbitration to federal court because some underlying arbitrations assert federal claims).

*Third*, there is no risk of "duplicative litigation," *Herron*, 634 F.3d at 1107, as there is "no . . . action pending" in any other jurisdiction between Postmates and Defendants. *Aetna Cas. & Sur. Co. v. Merritt*, 974 F.2d 1196, 1199 (9th Cir. 1992). Defendants have yet to file the motion to compel arbitration that their counsel has indicated is forthcoming, Manthripragada Decl. ¶¶ 3–4, but it is reasonable to expect that any such motion would be brought on behalf of every Defendant seeking to compel arbitration or enforce SB 707—especially in light of Defendants' counsel's previous availment of such a procedure in both *Adams* and *McClenon*. And if Defendants sought to initiate a *separate* proceeding, Postmates would move to transfer that case before this Court, further eliminating the risk of duplicative proceedings.

*Fourth*, this suit would resolve *all* non-arbitrable "aspects of the controversy," *Herron*, 634 F.3d at 1107, in one proceeding. The parties agree that Defendants' underlying misclassification-based claims must be arbitrated, *see Adams*, 414 F. Supp. 3d at 1249, but this Court can adjudicate both remaining controversies between the parties: whether Defendants' mass arbitration scheme violates the parties' individual arbitration agreements, and whether SB 707 is preempted or unconstitutional. To be sure, the parties disagree on whether the Court or an arbitrator must decide whether Defendants' mass arbitration scheme violates the Mutual Arbitration Provision. But *whether* that issue has been delegated is undoubtedly for the Court, is core to the parties' dispute, and should not be finally decided when weighing whether to exercise discretion over this case at all. *See First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 939 (1995) ("courts should not assume that the parties agreed to" delegate issues "unless there is clear and unmistakable evidence that they did so"). And in any event, there is no question that the enforceability of SB 707—which Defendants have repeatedly threatened to invoke through court proceedings—is ripe for this Court's resolution.

Gibson, Dunn & Crutcher LLP

*Fifth*, for the same reasons, this action will clarify the legal relations at issue, as it will determine whether Defendants' mass arbitration demands are valid under the parties' agreements, and whether they may enforce SB 707. *See Herron*, 634 F.3d at 1107. In fact, this Court is the *only* forum in which Postmates can litigate the issue whether Defendants' mass arbitration scheme is contrary to the parties' agreement, since AAA has refused to make a determination on that issue. *See* Dkt. 7 ¶ 42.

*Sixth*, there is no risk that one party will obtain an unjust res judicata advantage. *Herron*, 634 F.3d at 1107. Every arbitration claimant who simultaneously filed a demand on February 25, 2020 has been properly joined as a Defendant here, meaning that any adjudication of the parties' rights will necessarily adjudicate *all* parties' rights.

*Seventh*, there is no risk that the federal and state court systems will be entangled. *Id.* There is no state court action pending between the parties, and the issues raised here turn entirely on federal, not state, law. *See Gov't Employees Ins. Co. v. Dizol*, 133 F.3d 1220, 1225 (9th Cir. 1998) (courts decline jurisdiction if "parallel state proceedings involving the same issues and parties" exist when "the declaratory action is filed").

*Eighth*, as previously noted, this proceeding is convenient for the parties, *Herron*, 634 F.3d at 1107, because it will resolve their non-arbitrable disputes in the home forum of the largest number of Defendants. *See supra* at 8.

The Court should exercise jurisdiction over this case. All parties to the dispute are already joined, there is no other litigation between them, and the parties' dispute involves federal questions that this Court is in the best position to answer.

### III. CONCLUSION

The Court should find that joinder of all Defendants is proper, and exercise its discretion to entertain this declaratory judgment action.

Dated: May 8, 2020

THEANE EVANGELIS
DHANANJAY S. MANTHRIPRAGADA
MICHELE L. MARYOTT
SHAUN A. MATHUR
GIBSON, DUNN & CRUTCHER LLP

By: /s/ *Theane Evangelis*
      Theane Evangelis

Attorneys for Plaintiff POSTMATES INC.