Aaron Zigler (#327318)
  amz@kellerlenkner.com
Ashley Keller (*pro hac vice*)
  ack@kellerlenkner.com
KELLER LENKNER LLC
150 N. Riverside Plaza, Suite 4270
Chicago, Illinois 60606
(312) 741-5220

Warren Postman (*pro hac vice*)
wdp@kellerlenkner.com
KELLER LENKNER LLC
1300 I Street, N.W., Suite 400E
Washington, D.C. 20005
(202) 749-8334

Keith A. Custis (#218818)
  kcustis@custislawpc.com
CUSTIS LAW, P.C.
1999 Avenue of the Stars
Suite 1100
Los Angeles, California 90067
(213) 863-4276

*Attorneys for Defendants/Cross-Petitioners*

## UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF CALIFORNIA

POSTMATES INC.,

     *Plaintiff*,

     vs.

10,356 INDIVIDUALS,

     *Defendants*.

_____

GREENWOOD, et al.,

     *Cross-Petitioners*,

     vs.

POSTMATES INC.,

     *Cross-Respondent*.

Case No:  2:20-cv-02783-PSG

**CROSS-PETITIONERS' MOTION TO COMPEL ARBITRATION**

*[Memorandum of Points and Authorities; Declarations of Warren Postman and Marquel Reddish; [Proposed] Order]*

**Judge:**    Hon. Philip S. Gutierrez
**Date:**     July 20, 2020
**Time:**    1:30 p.m.

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that on July 20, 2020, at 1:30 p.m. or as soon thereafter as the matter may be heard, Cross-Petitioners ("Petitioners") will and hereby do move this Court, pursuant to Section 4 of the Federal Arbitration Act ("FAA"), 9 U.S.C. § 4, for an order compelling Cross-Respondent Postmates Inc. to arbitrate Petitioners' underlying misclassification claims.

Each Petitioner and Postmates entered into an agreement—the "Fleet Agreement"—requiring them to arbitrate any disputes relating to whether that Petitioner is an independent contractor or a Postmates employee. And each Petitioner filed an individual demand for arbitration with the American Arbitration Association ("AAA") as required by the Fleet Agreement. Postmates refused to comply with AAA's administrative determinations regarding the filing fees Postmates must pay under the agreement and AAA's rules—fees AAA requires before it will empanel arbitrators and begin Petitioners' arbitrations. Accordingly, Postmates has "fail[ed], neglect[ed], or refus[ed] . . . to arbitrate under a written agreement for arbitration." 9 U.S.C. § 4. Pursuant to the FAA, this Court should "direct[] that such arbitration proceed in the manner provided for in [the parties'] agreement." *Id.* Further, under Cal. Code Civ. P. § 1281.97, Postmates should be ordered to proceed to arbitration in which it must pay each Petitioner's reasonable costs and attorneys' fees.

This motion is based on this notice of motion, the attached memorandum of points and authorities, the declarations of Warren Postman and Marquel Reddish, all records on file with this Court, and such further oral and written arguments as may be presented at, or prior to, the hearing on this matter.

This motion is made following the conference of counsel pursuant to L.R. 7-3, which took place through a series of emails and a phone call spanning from April 21, 2020 through May 22, 2020. Postman Decl. ¶¶ 23–32.

1

2

Dated: May 22, 2020

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Keith A. Custis (#218818)
  kcustis@custislawpc.com
CUSTIS LAW, P.C.
1875 Century Park East, Suite 700
Los Angeles, California 90067
(213) 863-4276

Respectfully submitted,

/s/ Warren Postman

Warren Postman (*pro hac vice*)
  wdp@kellerlenkner.com
KELLER LENKNER LLC
1300 I Street, N.W., Suite 400E
Washington, D.C. 20005
(202) 749-8334

Aaron Zigler (#327318)
  amz@kellerlenkner.com
Ashley Keller (*pro hac vice*)
  ack@kellerlenkner.com
KELLER LENKNER LLC
150 N. Riverside Plaza, Suite 4270
Chicago, Illinois 60606
(312) 741-5220

*Attorneys for Defendants/Cross-Petitioners*

# **<u>TABLE OF CONTENTS</u>**

I.          INTRODUCTION................................................................................1

II.        BACKGROUND.................................................................................3

     A.    Postmates Imposes a Broad Arbitration Clause on Couriers. ...................3

     B.    Postmates Refuses to Arbitrate with More Than 5,000 Couriers, But Is Ordered to Arbitrate by the Federal Court in *Adams v. Postmates*. .........9

     C.    Petitioners File Demands for Arbitration Against Postmates, and AAA Determines That Those Demands Meet Its Filing Requirements............11

     D.    Postmates Preemptively Sues Some Petitioners to Bar Them from Proceeding with Arbitrations in the Manner Approved in *Adams*. .........12

     E.    Postmates Works With a Plaintiffs' Firm That Has Not Been Appointed Class Counsel to Pursue a Prohibited Class Action................................13

III.      STATEMENT OF ISSUES TO BE DECIDED (L.R. 7-4) ....................14

IV.     ARGUMENT ....................................................................................14

     A.    The Parties Formed an Arbitration Agreement That Covers the Present Disputes. ...............................................................................................16

     B.    Postmates Has Breached the Mutual Arbitration Provision. ...................16

     C.    Postmates Cannot Offer Any Legitimate Justification for Its Refusal to Comply with Its Own Arbitration Agreement. ........................................17

         1.    Postmates's Meritless Complaints That Petitioners' Demands for Arbitration Violate the Class-Action Waiver Must Be Arbitrated....18

         2.    Disagreements Regarding Filing Fees Must be Resolved by AAA. .19

     B.    This Court Should Compel Postmates to Arbitrate................................22

V.      CONCLUSION .................................................................................25

# <u>TABLE OF AUTHORITIES</u>

**CASES**                                                                                     **PAGE(s)**

*Adams v. Postmates, Inc.*,
  No. 19-3042 SBA, 2020 WL 1066980 (N.D. Cal. Mar. 5, 2020).............*passim*

*Adams v. Postmates, Inc.*,
  414 F. Supp. 1246 (N.D. Cal. 2019)............................................*passim*

*Allemeir v. Zyppah, Inc.*,
  No. 18-7437-PA, 2018 WL 6038340 (C.D. Cal. Sept. 21, 2018).....................22

*Am. Express Co. v. Italian Colors Rest.*,
  570 U.S. 228 (2013) ............................................................... 8

*AT&T Mobility LLC v. Concepcion*,
  563 U.S. 333 (2011) ....................................................... 8, 14, 18

*Blair v. Rent-A-Center, Inc.*,
  No. 17-17221, 2019 WL 2701333 (9th Cir. June 28, 2019) ............................ 18

*Brown v. Dillard's, Inc.*,
  430 F.3d 1004 (9th Cir. 2005)............................................... 16, 20

*C & L Enters., Inc. v. Citizen Band Potawatomi Indian Tribe of Okla.*,
  532 U.S. 411 (2001) ....................................................... 14, 19

*Chiron Corp. v. Ortho Diagnostic Sys., Inc.*,
  207 F.3d 1126 (9th Cir. 2000)........................................... 1, 2, 15, 21

*Halloran v. Davis*,
  No. 2:12-cv-01011-CBM, 2013 WL 12153551 (C.D. Cal. Aug. 15,
  2013)............................................................................22

*Henry Schein, Inc. v. Archer & White Sales, Inc*.,
  139 S. Ct. 524 (2019) ...................................................2, 15, 16, 17

*Lifescan, Inc. v. Premier Diabetic Servs., Inc.*,
  363 F.3d 1010 (9th Cir. 2004)........................................................20

*Postmates, Inc. v. Greenwood, et al.*,
  No. CV20-2783 PSG, 2020 WL 1908302 (C.D. Cal. Apr. 15,
  2020)....................................................................*passim*

**CASES (cont.)**                                                      **PAGE(s)**

*Pre-Paid Legal Servs. v. Cahill*,
   786 F.3d 1287 (10th Cir. 2015) ............................................................ 20

*Rent-A-Ctr., W., Inc. v. Jackson*,
   561 U.S. 63 (2010) .............................................................................. 18

*Sakkab v. Luxottica Retail N.A., Inc.*,
   803 F.3d 425 (9th Cir. 2015) ............................................................... 18

*Sink v. Aden Enters., Inc.*,
   352 F.3d 1197 (9th Cir. 2003) ....................................................... 16, 20

*Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ.*,
   489 U.S. 468 (1989) ............................................................................. 22

*Williams v. Tully*,
   No. C-02-05687-MMC, 2005 WL 645943 (N.D. Cal. Mar. 18,
   2005)...................................................................................................... 20

**STATUTES**

9 U.S.C. § 4...........................................................................3, 14, 15, 21

Cal. Code Civ. P. § 1281.97 .........................................................3, 23, 24

**OTHER AUTHORITIES**

AAA Class Action Arb. Rule R-11 ..................................................... 6

AAA Comm. Arb. Rule R-1 .............................................................. 6

AAA Comm. Arb. Rule R-1(a) ......................................................... 5

AAA Comm. Arb. Rule R-2..........................................................5, 16, 19

AAA Comm. Arb. Rule R-53.............................................................. 10

AAA Comm. Arb. Rule R-56......................................................5, 10, 16, 19

AAA Comm. Arb. Rule R-8 ..........................................................5, 19

**OTHER AUTHORITIES (cont.)**                              **PAGE(s)**

Br. of Chamber of Commerce of the United States of America, et al.
   as Amici Curiae in Support of Petitioners, *Am. Express Co. v.*
   *Italian Colors Rest.*, 2012 WL 6759408 (2012)....................................................8

Decl. of Ashley Campbell ISO Def.'s Mot. to Compel Arbitration and
   Stay Civil Proceedings, *Costa v. Postmates, Inc.*,
   3:19-cv-03046-JST (N.D. Cal. Nov. 27, 2019)....................................................4

Employment/Workplace Fee Schedule, American Arbitration
   Association (Nov. 1, 2019), https://kl.link/2RI81eu ...........................................6

Order Granting Mot. to Compel Arbitration and Stay Civil
   Proceedings, *Costa, et al., v. Postmates Inc.*,
   4:19-cv-03046-JST (N.D. Cal. Oct. 3, 2019)..................................................6, 7

Postmates's Mot. to Compel Arbitration and Stay Civil Proceedings,
   *Costa, et al. v. Postmates, Inc.*,
   4:19-cv-03046-JST (N.D. Cal. June 13, 2019) ..........................................*passim*

Postmates's Mot. to Compel Arbitration and Stay Civil Proceedings,
   *Lee v. Postmates Inc.*,
   3:18-cv-03421-JCS (N.D. Cal July 20, 2018)..................................................6, 7

S.B. 707, S. Judiciary Comm., 2019-2020, Reg. Sess. (Cal. 2019) .......................23

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.   INTRODUCTION

Cross-Petitioners ("Petitioners") are 5,290 couriers who work for Postmates Inc.   Petitioners allege that Postmates misclassifies them as independent contractors—depriving them of a minimum wage, overtime pay, and other protections required by federal, state, and local law.[1]  Postmates has largely avoided liability for misclassifying its workers by requiring couriers to sign a "Fleet Agreement" that contains a "Mutual Arbitration Provision" ("MAP").  The MAP bars both Petitioners and Postmates from participating in any class action, and it requires them to resolve their claims in individual arbitration administrated by the American Arbitration Association ("AAA").  The MAP also contains a delegation clause that requires the parties to arbitrate threshold disputes about whether or how arbitration should proceed.

Postmates has repeatedly relied on the MAP to prevent its couriers from litigating misclassification claims in a class action.  And Postmates has aggressively enforced its delegation clause to require that plaintiffs arbitrate any threshold arguments about whether arbitration was appropriate in the first place.  Postmates has been successful in keeping misclassification claims out of court thanks to a line of Supreme Court decisions holding that the Federal Arbitration Act ("FAA") requires strict enforcement of arbitration agreements.  These precedents produce a simple test: a court must grant a motion to compel arbitration if: (1) the parties have entered into a valid arbitration agreement and (2) the agreement covers the dispute. *Chiron Corp. v. Ortho Diagnostic Sys., Inc*., 207 F.3d 1126, 1130 (9th Cir. 2000).  If the parties have delegated to an arbitrator threshold questions about whether the

---

[1] Postmates filed suit against 10,356 Postmates couriers who filed demands for arbitration against Postmates on February 15, 2020.  Of those courier Defendants, 4,933 are Petitioners.  In addition to the 4,933 Petitioners who filed demands for arbitration in February 2020, 357 Petitioners are new parties who filed demands for arbitration against Postmates on September 24, 2019.

parties should arbitrate, the court must compel arbitration wherever the parties have entered into a valid arbitration agreement. *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 530 (2019).

In this case, that simple test produces a simple answer. Postmates has entered into a binding agreement with each Petitioner to arbitrate the Petitioner's claims before AAA. Each Petitioner's misclassification claims fall within the scope of the arbitration agreement. And any arguments about the sufficiency of a Petitioner's demand or how the arbitration should proceed must themselves be arbitrated, under the MAP's delegation clause. As a result, this Court should compel arbitration as to each Petitioner. *Chiron*, 207 F.3d at 1130 ("By its terms, the Act 'leaves no place for the exercise of discretion by a district court, but instead mandates that district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed.'" (quoting *Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, 218 (1985))).

Postmates was all too happy to enforce this clear framework when a small number of couriers attempted to bring claims in court. But as soon as Postmates faced a large number of claims in arbitration, it started trying to run from the same law it previously invoked. Knowing it would default on its filing-fee obligations at AAA, Postmates preemptively sought from this Court a temporary restraining order to prevent Petitioners from pursuing their claims. *Postmates, Inc. v. Greenwood, et al.,* No. CV20-2783 PSG (JEMX), 2020 WL 1908302, at *4 (C.D. Cal. Apr. 15, 2020). According to Postmates, because too many couriers had brought claims against it, each Petitioner's individual arbitration demand somehow had become a demand for class arbitration, in violation of the MAP's class-action waiver. *Id.* The Court denied Postmates's motion, finding that the MAP's broad delegation clause likely reserved Postmates's class arbitration argument for an arbitrator, and that even if the Court could decide the issue, Postmates could not "point to anything about

[Petitioners'] claims themselves that make them 'class actions'." *Id*. at *6, *7. In so doing, the Court found persuasive the reasoning of another federal court decision involving a large group of couriers who successfully secured a motion to compel against Postmates for refusing to pay the filing fees necessary to commence their arbitrations. *Id*. (citing *Adams v. Postmates, Inc.,* 414 F. Supp. 1246 (N.D. Cal. 2019) (*Adams I*)). Postmates's "class arbitration" argument has already failed to convince this Court and the *Adams* court and, if raised in opposition to this motion to compel, should be rejected again.

Postmates's steadfast refusal to arbitrate with Petitioners notwithstanding its clear obligations to do so warrants two related remedies. First, the Court should issue an order directing that arbitration proceed immediately "in the manner provided for in [its] agreement," 9 U.S.C. § 4, which includes complying with AAA's administrative determinations and deadlines. Second, for all Petitioners who filed their demands for arbitration on February 15, 2020, the Court should award substantive remedies recently enacted in California Senate Bill 707, codified at Cal. Code Civ. P. § 1281.97. Effective January 1, 2020, where a business is more than 30 days overdue in its obligation to pay arbitration costs, the business shall be compelled to arbitration in which it must pay the claimant's costs and reasonable attorneys' fees.

## II.   BACKGROUND

### A.   Postmates Imposes a Broad Arbitration Clause on Couriers.

Since at least 2015, Postmates has required every Courier to sign a contract containing a MAP before making any delivery for the company. *See* WP086–87.[2] Each Fleet Agreement contains a MAP through which Postmates and the courier "mutually agree to resolve any disputes between them exclusively through final and binding arbitration instead of filing a lawsuit in court." May 2019 Fleet Agreement

---

[2] Exhibits attached to the Declaration of Warren Postman are bates-stamped WP001–129.

§ 10A.[3]   The arbitration must be individual: both Petitioners and Postmates "mutually agree that any and all disputes or claims between the Parties will be resolved in individual arbitration," and "waive their right to have any disputes or claim brought, heard or arbitrated as a class and/or collective action, or to participate in any class and/or collection action, and an arbitrator shall not have any authority to hear or arbitrate any class and/or collection ('Class Action Waiver')." *Id.* § 10B.ii.

When Postmates makes changes to its Fleet Agreement, it requires active couriers to "click through" the new agreement before they can continue making deliveries. Reddish Decl. ¶ 8; MR0001–5290 ¶¶ 6; *Costa v. Postmates, Inc.*, 3:19-cv-03046-JST, Decl. of Ashley Campbell ISO Def.'s Mot. to Compel Arbitration and Stay Civil Proceedings ¶¶ 9–12, ECF No. 23-1 (N.D. Cal. Nov. 27, 2019).[4] Each Petitioner has signed a declaration confirming she is a Postmates courier and estimating the date of her most recent delivery. Reddish Decl. ¶ 9; MR0001–5290 ¶¶ 6; Ex. A to Cross-Pet. (listing applicable agreement for each Petitioner as of the date the Petitioner signed her declaration). The applicable Fleet Agreement for each Petitioner is the version in effect at the time the Petitioner last made a delivery for Postmates. *Id.*

---

[3] Postmates has made minor revisions to its agreement with its couriers over the years, but the key arbitration provisions have remained substantially the same. The only relevant difference between the agreements is that older versions required Postmates to pay all the AAA filings fees, *see* Ex. B to Cross-Pet., 2017 Fleet Agreement § 10B.vi(2) (effective March 1, 2017) & Ex. C to Cross-Pet., 2018 Fleet Agreement § 11B.vi(2) (effective May 11, 2018), whereas Fleet Agreement versions after April 3, 2019 attempt to shift onto Petitioners half of the AAA filing fee, Ex. D to Cross-Pet., April 2019 Fleet Agreement § 10B.vi(2) (effective April 3, 2019) & Ex. E to Cross-Pet., May 2019 Fleet Agreement § 10B.vi(2) (effective May 11, 2019). As explained below, AAA does not require Petitioners to split the filing fees with Postmates; instead it caps the filing fee amount for claimants like Petitioners, requiring Postmates to pay the difference. *See infra* at 5–6. Exhibit A to the Cross-Petition lists the contract applicable to each Petitioner's claims. Where there is no material difference between the Fleet Agreement versions, this motion cites the May 2019 Fleet Agreement.

[4] Exhibits attached to the Declaration of Marquel Reddish are bates-stamped MR0001–5290.

If the parties dispute their obligation to commence arbitration under the MAP, or how that provision should be applied, that dispute itself must be submitted to an arbitrator. *See* May 2019 Fleet Agreement § 10A.ii ("Only an arbitrator, and not any federal, state, or local court or agency, shall have the exclusive authority to resolve any dispute relating to the interpretation, applicability, enforceability, or formation of this Mutual Arbitration Provision, including without limitation any dispute concerning arbitrability."). The only exception to this broad delegation clause is that a court may decide whether the MAP's "Class Action Waiver and/or Representative Action Waiver is unenforceable, unconscionable, void, or voidable." *Id.* § 10A.iv. Petitioners do not contend that the Class- and Representative-Action Waivers are "unenforceable, unconscionable, void or voidable" and instead ask this Court to compel exclusively individual arbitration. The arbitration clause also provides that each Petitioner's arbitration shall be governed by the AAA Commercial Arbitration Rules. *Id.* §§ 10A.vi(1), 10A.viii.

By designating the Commercial Arbitration Rules to govern disputes, Postmates and couriers are "deemed to have made th[o]se rules a part of their arbitration agreement" and thereby "authorize the AAA to administer the arbitration." Commercial Rules 1(a), 2, available at https://kl.link/2yspRMx. Once an individual arbitrator is appointed, "[t]he arbitrator shall interpret and apply the[] rules insofar as they relate to the arbitrator's powers and duties." Commercial Rule 8. But before an individual arbitrator has been appointed, or where a rule does not involve the "arbitrator's powers and duties," the rules "shall be interpreted and applied by the AAA." *Id.* AAA is authorized to "<u>require</u> the parties to deposit in advance of any hearings such sums of money <u>as it deems necessary</u> to cover the expense of the arbitration, including the arbitrator's fee." Commercial Rule 56 (emphases added).

The Commercial Rules specify the fee schedule for Petitioners' arbitrations. AAA's Employment Fee Schedule applies where, as here, workers bring claims asserting they were misclassified as independent contractors. Commercial Rule 1, n*. The Employment Fee Schedule in effect when Petitioners filed their demands imposes different fees based on the type of demand for arbitration and other factors. For example, it imposes a $3,250 administrative fee when a "party mak[es] a demand for treatment of a claim, counterclaim, or additional claim as a collective action arbitration." Employment Fee Schedule at 1, available at https://kl.link/2RI81eu. And it imposes a $3,350 filing fee for "a party making a demand for treatment of a claim, counterclaim, or additional claim as a class arbitration." *Id*; Class Action Rule 11, available at https://kl.link/2WqXAh9. Under the fee schedule for demands filed by individual claimants, AAA caps the claimant's initial filing fee at $300, and imposes a filing fee of $1,900 on companies responding to arbitration demands. Employment Fee Schedule at 1. Under the group schedule for individual claimants, AAA caps the claimant's initial filing fee at $200 and imposes a $400 filing fee on companies responding to arbitration demands. *Id*. at 4. Once both parties satisfy the initial filing fee, AAA imposes an additional fee before the arbitrator selection process. *Id*. at 4. AAA caps the claimant's arbitrator selection fee at $100 and imposes at $1,750 fee on the company. *Id*.[5]

Postmates has repeatedly relied on its MAP to force Couriers' misclassification claims to arbitration. *Compare Costa*, Def. Postmates Inc.'s Mot. to Compel Arbitration and Stay Civil Proceedings, ECF No. 23 (June 13, 2019) *with*

---

[5] Before November 1, 2019, all individual demands were subject to the fee schedule for individuals. Employment Fee Schedule at 1 (Amended and Effective November 1, 2019). After November 1, 2019, individual demands that meet the following criteria are subject to the group filing fee schedule: (a) more than 25 individual claimants file "similar claims for arbitration or mediation"; (b) "[c]laims are against or on behalf of the same party or parties"; and (c) "[c]ounsel for the parties is consistent or coordinated across all cases." Employment Fee Schedule at 1.

1   *id.*, Order Granting Mot. to Compel Arbitration and Stay Civil Proceedings, ECF
2   No. 39 (Oct. 3, 2019) (order vacated on other grounds); *compare Lee v. Postmates*
3   *Inc.*, 3:18-cv-03421-JCS at Mot. to Compel Arbitration, ECF No. 14 (N.D. Cal. July
4   20, 2018) *with id.*, 2018 WL 4961802 (N.D. Cal. Oct. 15, 2018)*, motion to certify*
5   *appeal granted,* No. 18-CV-03421-JCS, 2019 WL 1864442 (N.D. Cal. Apr. 25,
6   2019) (granting motion to compel); *compare id.*, Mot. to Compel Arbitration, ECF
7   No. 36 (Nov. 5, 2018) *with id.*, 2018 WL 6605659, at *8 (N.D. Cal. Dec. 17, 2018)*,*
8   *motion to certify appeal granted,* No. 18-CV-03421-JCS, 2019 WL 1864442 (N.D.
9   Cal. Apr. 25, 2019) (granting motion to compel arbitration).  In doing so, Postmates
10  has explained that a courier must "resolve any dispute with Postmates—including
11  her classification as an independent contractor—through final and binding
12  arbitration." *Lee*, Mot. to Compel at 4, ECF No. 14.

13          Postmates also has consistently prevailed in arguing that its broad delegation
14  clause delegates to an arbitrator almost all threshold disputes regarding arbitrability.
15  See *Costa*, Order at 4–5, ECF No. 39 ("Whether the Mutual Arbitration Provision in
16  the 2019 Fleet Agreement provided Plaintiffs with another opportunity to opt out of
17  arbitration is a question of contract interpretation disputed by the parties, which has
18  been 'delegated . . . to an arbitrator' pursuant to the delegation provision." (quoting
19  *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 530 (2019)).  As
20  Postmates has explained: "because 'a valid agreement exists, and because the
21  agreement delegates the arbitrability to the arbitrator,' the Court must enforce the
22  delegation clause 'according to its terms.'" *Costa*, Mot. to Compel at 11, ECF No.
23  23 (internal alterations omitted) (citing *Henry Schein*, 139 S. Ct. at 529–30).

24          The caselaw on which Postmates has relied to compel arbitration reflects a
25  decades-long campaign by defendants for strict enforcement of arbitration
26  agreements, including their broad delegation clauses.  Employment-rights attorneys
27  have long argued that allowing defendants to eliminate class actions is unfair,
28

MEMORANDUM IN SUPPORT OF MOTION TO COMPEL ARBITRATION
CASE NO. 2:20-cv-02783-PSG

because bringing claims individually is highly inefficient and prevents employees from vindicating their rights in any meaningful numbers. But the business community successfully rebutted those arguments before the Supreme Court by emphasizing that defendants typically pay most of the costs of arbitration, and by contending that individual arbitration offers an adequate forum for any and all plaintiffs to vindicate their rights. *See, e.g., Concepcion*, 563 U.S. at 337 (requiring individual arbitration while noting that AT&T's arbitration agreement requires AT&T to "pay all costs" of the arbitration). For example, in *American Express Company v. Italian Colors Restaurant*, 570 U.S. 228 (2013), the U.S. Chamber of Commerce—which touts itself as "the world's largest business federation"—assured the Supreme Court that class-action waivers would not preclude access to justice because plaintiffs' firms could vindicate the rights of thousands of clients at once in individual arbitration:

> Although bilateral arbitration requires each claimant to bring a separate proceeding, nothing about arbitration prevents claimants (or their attorneys) from sharing the expenses of expert witnesses, fact investigation, and attorney preparation. . . .

> For example, prior to *Concepcion* a plaintiff had filed a putative class action alleging that AT&T improperly measures the amount of data used by iPhones and iPads. . . . Subsequently, counsel for [the plaintiff] filed separate demands for arbitration on behalf of over 1,000 claimants—each making virtually identical allegations and relying on the same expert witness . . . .

> These examples demonstrate that, especially in an era in which the Internet and social media can be used effectively to reach out to potential claimants, individual plaintiffs (and their counsel) can readily identify other businesses or individuals with similar claims who can share in the costs of pursuing claims.

Br. of the Chamber of Commerce of the United States of America, et al., at *27–30, *Am. Express Co. v. Italian Colors Rest.*, 2012 WL 6759408 (Dec. 28, 2012).

**B.**   **Postmates Refuses to Arbitrate with More Than 5,000 Couriers, But Is Ordered to Arbitrate by the Federal Court in *Adams v. Postmates*.**

In March 2019, Petitioners' counsel first informed Postmates that it represented thousands of Postmates couriers who intended to file individual arbitration demands against the company. WP009.  After unfruitful discussions with Postmates's outside counsel, Petitioners' counsel formally initiated arbitration by serving arbitration demands on AAA and Postmates on April 22 and May 13, 2019, on behalf of approximately 5,700 couriers (the "*Adams* Claimants").  Postman Decl. ¶ 5.  Per AAA's rules and practices, AAA will only invoice a respondent for filing fees after it determines that the claimant (1) has filed a demand that meets AAA's requirements; and (2) has satisfied her filing fee obligation.  Postman Decl. ¶ 6.  By directing Postmates to pay its share of its filing fees by May 31, 2019 for the first set of demands, and June 6, 2019 for the second set of demands, AAA had determined that the *Adams* Claimants' demands met AAA's filing requirements.  WP002-03.

Deploying what would become a familiar tactic, Postmates ignored AAA's payment determination for three weeks.  Only on the night of AAA's May 31 filing-fee deadline—some five weeks after the *Adams* Claimants had filed their initial demands—did Postmates object for the first time to the form, substance, and service of the demands.  WP004–06.  AAA rejected each objection as inconsistent with AAA rules, and confirmed that the *Adams* Claimants had met AAA's filing requirements.  WP007–09.  But notwithstanding AAA's administrative determinations that the *Adams* Claimants' demands met AAA's filing requirements, Postmates continued to refuse to proceed with the *Adams* Claimants' arbitrations.  WP009; Postman Decl. ¶ 10.  Having not received Postmates's share of filing fees necessary for a single claimant's arbitration to proceed, AAA administratively closed the *Adams* Claimants' arbitrations.  *Id.*

On June 3, 2019, the *Adams* Claimants filed a motion to compel arbitration against Postmates. *Adams I*, 414 F. Supp. 3d at 1250. Postmates opposed the motion to compel on the ground that the *Adams* Claimants sought "de facto class arbitration." *Id.* at 1248. On October 22, 2019, the court ordered the parties "to arbitrate Petitioners' misclassification claims . . . in accordance with the Mandatory Arbitration Provision contained in the applicable Fleet Agreement." *Id.* at 1256. Applying the Fleet Agreement's delegation clause, the court ordered that Postmates must arbitrate not only the claimants' misclassification claims, but also its own arguments regarding "the sufficiency of Petitioners' arbitration demands and how the arbitration should be conducted." *Id.* at 1255–56. The court also noted that even if it "were to construe the exception to the delegation clause in the manner urged by Postmates, the outcome of the instant motions would be same." *Id.* at 1254.

The court further emphasized that the Fleet Agreement "specifies that the AAA Commercial Arbitration Rules shall govern any arbitration between the parties," and that "[t]hose Rules include provisions regarding the payment of arbitration fees, *see* AAA Comm. Arb. Rules, Rule R-53 (Administrative Fees), *id.* R-56 (Deposits)." *Id.* at 1255. Relying on the Fleet Agreement's incorporation of the AAA Commercial Rules, the court concluded that the "payment of arbitration fees . . . is . . . to be decided by the arbitrator." *Id.*

Although Postmates in *Adams* repeatedly asserted that Petitioners' counsel was improperly using the costs of individual arbitration to leverage a settlement, the court saw through that baseless smear. As the court explained:

> Throughout its various briefs, Postmates expends considerable energy accusing Petitioners of using the cost of the arbitration process as a means of coercing Postmates into settling their claims expeditiously. However, under the Fleet Agreement drafted by Postmates which its couriers are required to sign, Petitioners had no option other than to submit their misclassification claims in the form of an arbitration demand—which is precisely what they did. Since the Fleet Agreement bars class actions, each demand must be submitted on an individual

basis. Thus, the possibility that Postmates may now be required to submit a sizeable arbitration fee in response to each individual arbitration demand is a direct result of the mandatory arbitration clause and class action waiver that Postmates has imposed upon each of its couriers.

*Id*. at 1252 n.2.[6]

## C. Petitioners File Demands for Arbitration Against Postmates, and AAA Determines That Those Demands Meet Its Filing Requirements.

On September 24, 2019, while the *Adams* motion to compel was still pending, 357 Petitioners served individual demands against Postmates with the AAA (the "September Petitioners"). Postman Decl. ¶ 13. On February 15, 2020, 4,933 Petitioners served individual demands against Postmates with the AAA (the "February Petitioners"). Postman Decl. ¶ 13. Petitioners' demands followed the same format as those of the *Adams* Claimants, *compare* WP010–11 (example *Adams* demand) *with* WP012–13 & WP014–15 (example February and September Petitioner demand)—a format that AAA and the *Adams* court have repeatedly held to be proper. WP007–09; *Adams I*, 414 F. Supp. 3d at 1252, n.2 ("[U]nder the Fleet Agreement drafted by Postmates which its couriers are required to sign, Petitioners had no option other than to submit their misclassification claims in the form of an arbitration demand—which is precisely what they did."); *Adams II*, 2020 WL 1066980, at *6 ("Petitioners did what they are contractually required to do: submit individual arbitration demands to the arbitrator. The mere fact that Petitioners filed over 5,000 demands within a short span of time does not transform those individual demands into a de facto class arbitration, as Postmates posits.").

AAA again determined that each Petitioner had met his or her individual filing requirements. WP016–19 & WP022–23. As a result, under the applicable fee

[6] Postmates has continued to refuse to arbitrate with the *Adams* Claimants. *See Adams v. Postmates, Inc.*, No. 19-3042 SBA, 2020 WL 1066980, at *3, n.4 (N.D. Cal. Mar. 5, 2020) (*Adams II*). On December 3, 2019, the Court ordered Postmates to show cause why contempt sanctions should not issue. *Id*. Briefing on that order is complete, and the parties are awaiting the court's decision. *Id*.

1   schedule, Postmates was obligated to pay $785,400 by October 21, 2019 for the
2   commencement of the September Petitioners' arbitrations and $2,220,400 by
3   March 16, 2020 for the February Petitioners.  *Id.*  After several rounds of back-and-
4   forth between the parties, AAA eventually set November 6, 2019 as the final
5   deadline for Postmates to pay the fees associated with the September Petitioners'
6   arbitrations.  WP020.  On November 8, AAA confirmed that Postmates had not paid
7   the fees and administratively closed the September Petitioners' arbitrations.  WP021.
8   As for the February Petitioners, AAA emphasized that "AAA will not grant
9   extensions to this payment deadline," and that because the arbitrations were "subject
10  to California Code of Civil Procedure 1281.97 and 1281.98" that "payment must be
11  received by April 15, 2020"—thirty days after the March 16 deadline—"or the AAA
12  may close the parties' cases."  WP022–23.

13  **D.    Postmates Preemptively Sues Some Petitioners to Bar Them from**
14  **      Proceeding with Arbitrations in the Manner Approved in *Adams*.**

15        Instead of paying the filing fees due on March 25, Postmates sued those
16  claimants who filed demands for arbitration on February 15, 2020, including the
17  February Petitioners.  *Greenwood*, 2020 WL 1908302, at *4.

18        Postmates filed an ex parte application for a temporary restraining order on
19  April 9, requesting that the Court enjoin the February Petitioners from "(1)
20  participating in a de facto class arbitration currently pending before the American
21  Arbitration Association ('AAA'); and (2) enforcing any provision of California
22  Senate Bill 707 ('SB 707') . . . against Postmates."  *Greenwood*, 2020 WL 1908302,
23  at *5.  On April 15, the Court denied Postmates's motion, holding Postmates was
24  not likely to succeed in its arguments.  *Id.* at *9.  Specifically, the Court found "the
25  reasoning in *Adams* persuasive, and that the issue [Postmates] raises is likely
26  delegated to the arbitrator" and that even if the Court were to decide Postmates's "de
27
28

1   facto class arbitration" argument that the filing of "numerous claims does not
2   automatically render them brought on a class basis." *Id*. at *6, *7.

3       On April 20, 2020, AAA confirmed that Postmates had failed to pay its share
4   of the initial filing fee necessary to commence the February Petitioners' arbitrations,
5   other than for the 100 claimants who advanced Postmates's fees with the intent of
6   recovering those fees before an arbitrator.  WP024.  However, in response to an
7   inquiry from Petitioners' counsel, WP025, AAA confirmed that it will re-open and
8   administer Petitioners' arbitrations if a court orders Postmates to comply with
9   AAA's requirements and proceed with arbitration.  WP026 ("That is correct.  The
10  AAA will abide by any court order compelling arbitration before AAA.").

11  **E.   Postmates Works With a Plaintiffs' Firm That Has Not Been Appointed**
12  **Class Counsel to Pursue a Prohibited Class Action.**

13      Postmates has spent years successfully compelling misclassification claims to
14  individual arbitration.  But once Postmates faced a significant number of claims in
15  individual arbitration, Postmates attempted to enter into a class-wide settlement on
16  behalf of all California couriers.  *See* WP040 § 2.36.  On July 19, 2019, Postmates
17  conducted a mediation with LLR, who is counsel in *Rimler v. Postmates*, a PAGA
18  case pending in California state court.  Postman Decl. ¶ 19.  On October 8, LLR
19  moved for preliminary approval of a "settlement-only" class.  *Id*.¶ 20.  The motion
20  asks the state court to certify a settlement releasing not only the PAGA claims to
21  which *Rimler* was originally limited, but also the individual claims of all California
22  couriers, including Petitioners, whom Postmates knows are <u>already</u> represented by
23  counsel and have filed individual actions.  *Id*.  The *Rimler* court has raised a host of
24  "concerns" regarding the fairness of that settlement and the degree to which it fails
25  to protect absent class members, and has required additional rounds of briefing to
26  address those concerns, most recently at an April 29 hearing.  *Id*. ¶ 21.

27      Although the settlement imposes significant obstacles to effectuating a valid

28

opt out, WP057–58 § 7.1, anyone who cannot overcome those obstacles <u>will lose his</u> <u>or her claims and receive nothing</u>, WP058 § 7.4.  Further, even for those couriers who receive some compensation, the settlement only requires Postmates to pay each class member an average of $34.08 (assuming a 50% participation rate)—orders of magnitude less than the amount Petitioners already paid to file their claims at AAA.  Postman Decl. ¶ 22.  Each Petitioner has reviewed the current version of the proposed *Rimler* settlement and class notice and does "not believe [she] will want to participate in the proposed settlement in *Rimler*.  And [she] do[es] not want to delay pursuing [her] claim in arbitration while the court considers whether to grant preliminary approval of the settlement."  Reddish Decl. ¶ 9; MR0001–5290 ¶¶ 8.

## III.   STATEMENT OF ISSUES TO BE DECIDED (L.R. 7-4)

This motion presents two primary issues: (1) whether the Court should compel Postmates to adhere to its arbitration agreement and comply with AAA's administrative determinations regarding the requirements for commencing Petitioners' arbitrations; and (2) whether this Court should, pursuant to California Senate Bill 707, compel arbitration in which Postmates must pay Petitioners' costs and reasonable attorneys' fees.

## IV.   ARGUMENT

The FAA requires that courts strictly "enforce [arbitration agreements] according to their terms."  *Concepcion*, 563 U.S. at 339.  As part of that mandate, the FAA codifies the right of a party to specific performance of an arbitration agreement.  *See* 9 U.S.C. § 4 (A party to an arbitration agreement who is "aggrieved by the alleged failure" of another party to arbitrate may obtain an "order directing that such arbitration proceed in the manner provided for in such agreement.").  Petitioners and Postmates have entered into valid agreements to arbitrate Petitioners' claims.  Those agreements call for administration by AAA under AAA's Commercial Rules.  They further require that any arguments about how to apply the

arbitration agreements be submitted to the arbitrator—which of course requires the parties to meet AAA's administrative requirements so an arbitrator can be appointed.

Petitioners did everything required of them to commence arbitration under the MAP and AAA's Rules. AAA made an administrative determination that Petitioners had met all their requirements. AAA further determined that Postmates was obligated under AAA's Rules to pay its share of the filing fees so Petitioners' arbitrations could commence. The MAP makes those rules binding on Postmates. *See C & L Enters., Inc. v. Citizen Band Potawatomi Indian Tribe of Okla.*, 532 U.S. 411, 419 n.1 (2001) (when specified by contract, AAA Rules "are not secondary interpretive aides that supplement [the] reading of the contract; they are prescriptions incorporated by the express terms of the agreement itself"). Although Postmates has repeatedly enforced its MAP and its delegation clause to avoid facing claims in court, Postmates now refuses to commence arbitration "in the manner provided for in [its] agreement." 9 U.S.C. § 4. Postmates has offered no explanation for refusing to arbitrate other than its twice-rejected argument that the volume of demands turns otherwise individual demands into demands for class arbitration. But in addition to being meritless, that argument must be resolved only by AAA and the arbitrator; it provides no basis for this Court to decline to compel arbitration.

Postmates's actions make clear that it does not actually support the right of a meaningful number of couriers to pursue arbitration; rather, it is willing to comply with the MAP it drafted only so long as a small number of couriers invoke it. That is not a choice Postmates's contract and the FAA allow it to make. This Court should compel Postmates to arbitrate. If the Court does so, California law requires that Postmates be ordered to pay the February Petitioners' costs and reasonable attorneys' fees in the resulting arbitrations.

**A.      The Parties Formed an Arbitration Agreement That Covers the Present Disputes.**

The FAA requires courts to compel arbitration where (1) the parties have entered into a valid arbitration agreement, and (2) the agreement covers the dispute. *See Chiron Corp.,* 207 F.3d at 1130.  Where, as here, the parties have delegated questions regarding whether or how the parties must arbitrate, the court need only determine that the parties have entered into a valid arbitration agreement.  *See Schein*, 139 S. Ct. at 530.

Each Petitioner is a Postmates courier subject to an agreement to arbitrate with Postmates and has identified the specific version of the agreement she believes governs her claims.  *See* Reddish Decl. ¶ 9; MR001–5290.  Postmates does not dispute that all Postmates couriers are required to sign the Fleet Agreement (and therefore the MAP) before they can begin making deliveries for Postmates.  *See, e.g., Costa*, Campbell Decl. ¶¶ 4–12, ECF No. 23-1.  That the parties have entered into a valid arbitration agreement is sufficient by itself to compel arbitration.  *Schein*, 139 S. Ct. at 530.  Postmates's agreement delegates to the arbitrator any question regarding the application of the arbitration agreement.  *See* May 2019 Fleet Agreement § 10A.ii.  Therefore, any dispute about whether or how the arbitration agreement between Postmates and Petitioners applies to Petitioners' claims must itself be resolved in arbitration.  Regardless, there also is no dispute that Petitioners' claims are arbitrable: the arbitration agreement explicitly identifies a dispute over a Couriers' "classification as an independent contractor" as one that must be arbitrated.  *Id.* § 10A.i.

**B.      Postmates Has Breached the Mutual Arbitration Provision.**

AAA made an administrative determination that Petitioners met their filing requirements.  WP016–19 & WP022–23.  It further exercised its administrative authority to "require the parties to deposit in advance of any hearings such sums of

1  money as it deems necessary to cover the expense of the arbitration, including the
2  arbitrator's fee." Commercial Rule 56. Specifically, it required that Postmates pay
3  filing fees according to the Employment Arbitration Fee Schedule so it could
4  empanel arbitrators to oversee Petitioners' individual arbitrations. *See supra*
5  WP016–19 & WP022–23. Postmates refused to comply with AAA's deadlines,
6  causing AAA to administratively close Petitioners' arbitrations. WP021 & WP024.

7       A party defaults on its obligation to arbitrate when its failure to meet its fee
8  obligations causes the arbitral forum to close the arbitration. *Brown v. Dillard's,*
9  *Inc.*, 430 F.3d 1004, 1013 (9th Cir. 2005); *Sink v. Aden Enters., Inc.*, 352 F.3d 1197,
10 1199–1200 (9th Cir. 2003). This well-established rule reflects common sense.
11 Before AAA has closed an arbitration, it retains administrative authority over the
12 parties and will direct them to take the necessary steps to commence arbitration. *See*
13 Commercial Rule 2. But after AAA closes an arbitration, AAA will no longer take
14 steps to commence the arbitration. The FAA entitles Petitioners to relief for
15 Postmates's unambiguous breach of contract.

16 **C.    Postmates Cannot Offer Any Legitimate Justification for Its Refusal to**
17 **Comply with Its Own Arbitration Agreement.**

18      Under the Fleet Agreement's delegation clause and the AAA Rules, any
19 arguments about Petitioners' compliance with the MAP cannot be decided by this
20 Court and must instead be submitted to an arbitrator. *See Schein*, 139 S. Ct. at 530
21 ("Just as a court may not decide a merits question that the parties have delegated to
22 an arbitrator, a court may not decide an arbitrability question that the parties have
23 delegated to an arbitrator."). The issues Postmates has raised to date provide no
24 basis for refusing to proceed to arbitration. To the contrary, as the *Adams* court has
25 already held, they are simply additional, threshold disputes that Postmates is
26 obligated to arbitrate.

27

28

1
2
3

       1.    *Postmates's Meritless Complaints That Petitioners' Demands for Arbitration Violate the Class-Action Waiver Must Be Arbitrated.*

4
5
6
7
8

     In both *Adams* and before this Court, Postmates has argued that it should not have to proceed with couriers' claims because too many couriers filed demands for arbitration and the volume transforms otherwise individual demands into impermissible class arbitrations.  That twice-rejected argument is just as meritless on its third attempt.

9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24

     The MAP's broad delegation clause requires that an arbitrator decide all disputes regarding the arbitrability of Petitioners' demands.  2019 Fleet Agreement § 10A.ii.  The only exception is challenges to the enforceability of the class- and representative- action waivers.  *Id.* § 10B.iv; *see also Costa*, ECF No. 23 at 8 n.3 (arguing the MAP's delegation clause has only "two limited exceptions": "[d]isputes <u>challenging</u> the [i] Mutual Arbitration Provision's class action or [ii] representative action waiver." (emphasis added)).  Because no parties challenge the enforceability of the waivers, Postmates's arguments must be submitted to an arbitrator.  *Adams I*, 414 F. Supp. 3d at 1254; *Adams II*, 2020 WL 1066980, at *4 ("[T]he court is unpersuaded that Postmates has any chance of succeeding on its interpretation of the delegation clause."); *Greenwood*, 2020 WL 1908302, at *6 ("The Court finds the reasoning in *Adams* persuasive, and that the issue [Postmates] raises is likely delegated to an arbitrator.").  Before Postmates can raise its meritless arguments that Petitioners failed to comply with threshold requirements to arbitrate, it first must comply with its own "antecedent agreement" to submit those arguments to an arbitrator.  *Rent-A-Center*, 561 U.S. at 70.

25
26
27

     Further, even if the Court were to decide Postmates's class arbitration argument, it does not pass the straight face test.  As the Supreme Court has observed, "[c]lasswide arbitration <u>includes absent parties</u>."  *AT&T Mobility LLC v.*

28

*Concepcion*, 563 U.S. 333, 347–48 (2011) (emphasis added); *see also Sakkab v. Luxottica Retail N.A., Inc.*, 803 F.3d 425, 435 (9th Cir. 2015); *Blair v. Rent-A-Center, Inc.*, No. 17-17221, 2019 WL 2701333, at *3–9 (9th Cir. June 28, 2019) (holding that complexity does not create class arbitration; class arbitration requires representative litigation). Here, each Petitioner filed an individual demand for arbitration in his or her own name. WP012–15. No Petitioner purports to resolve claims on behalf of absent parties. *Id.* And once commenced, Postmates is well aware that the demands proceed in an individual manner. *Id.* ¶ 12. Petitioners individual demands are not transformed to demands for class arbitration merely because a large number of couriers filed similar claims at the same time, which creates pressure on Postmates that it would not have faced if only a single courier had filed a claim.[7] *Adams*, 414 F. Supp. at 1252 n.2 ("[T]he possibility that Postmates may not be required to submit a sizeable arbitration fee in response to each individual arbitration demand is a direct result of the mandatory arbitration clause and the class action wavier that Postmates has imposed upon each of its couriers); *Adams II*, 2020 WL 1066980, at *6 ("The mere fact that Petitioners filed over 5,000 demands within a short span of time does not transform those individual demands into a de facto class arbitration, as Postmates posits."); *Greenwood*, 2020 WL 1908302, at *7 (same).

> 2. *Disagreements Regarding Filing Fees Must be Resolved by AAA.*

Postmates also cannot justify its refusal to arbitrate by attempting to dispute AAA's filing-fee determinations. Under AAA's Rules, which the parties expressly incorporated into their agreement, AAA has the exclusive authority to interpret those

---

[7] Ironically, it is precisely because each Petitioner's demand is individual that Postmates faces such sizeable filing fees. Had Petitioners filed a class or collective arbitration, the filing fee would have totaled only $3,250 or $3,350. *See supra at__*; *see also Adams II*, 2020 WL 1066980, at *6 ("Postmates's obligation to tender $10 million in filing fees is a result of the Fleet Agreement.").

rules, subject to subsequent review in some instances by an arbitrator.  As noted, "[w]hen parties agree to arbitrate under [AAA rules,]" they "thereby authorize the AAA administer the arbitration," Commercial Rule 2.  And where no arbitrator is yet available, the rules "shall be interpreted and applied by the AAA."  Commercial Rule 8.  The rules clearly authorize AAA to require a business to submit filing fees in order to appoint an arbitrator.  Commercial Rule 56.  And the Employment Fee Schedule further provides that "[t]he employer or company's share of filing fees is due as soon as the employee or individual meets his or her filing requirements." Employment Fee Schedule at 2.  These rules "are not secondary interpretive aides that supplement [the] reading of the contract; they are prescriptions incorporated by the express terms of the agreement itself." *C&L Enters.*, 532 U.S. at 419 n.1.  AAA applied its rules.  And under the plain terms of the parties' contract and AAA Rules, AAA's administrative determination cannot be second-guessed in court.

Where a party disagrees with AAA's administrative determinations, it may be able to submit that disagreement to the arbitrator once he or she is appointed.[8]  What it cannot do, however, is ignore AAA's determination and prevent an arbitral appointment in the first place.  An unbroken line of cases confirms this conclusion. *See Lifescan*, 363 F.3d at 1011–13 (conclusively deferring to determination of AAA to require fees from party); *see also Pre-Paid Legal Servs. v. Cahill*, 786 F.3d 1287, 1297 (10th Cir. 2015) (holding that a party defaulted on its arbitration agreement when AAA terminated the arbitration due to the party's nonpayment); *Williams v. Tully*, No. C-02-05687-MMC, 2005 WL 645943, at *7 (N.D. Cal. Mar. 18, 2005) ("[T]he AAA . . . ha[s] the authority, under the AAA Rules, to require [parties] to pay certain of the estimated arbitration fees in advance, and to terminate the arbitration when [they] fail[] to do so.").  As the court in *Williams* explained, "[o]nce

---

[8] Notably, in the handful of cases proceeding in arbitration, Postmates has not asked a single individual arbitrator for a determination that the individual case before the arbitrator was part of an improper class.  Postman Decl. ¶ 13.

it is determined . . . that the parties are obligated to submit the subject matter of a dispute to arbitration, 'procedural' questions which grow out of the dispute and bear on its final disposition should be left to the arbitrator."   2005 WL 645943 at *5. Where a party refuses to pay filing fees imposed by the arbitral forum required under its arbitration agreement, it has breached that agreement.  *See, e.g.*, *Pre-Paid Legal Servs.*, 786 F.3d at 1294 ("Mr. Cahill breached the arbitration agreement by failing to pay his fees in accordance with AAA rules."); *Brown*, 430 F.3d at 1009–10 ("Dillard's clearly breached the arbitration agreement" by failing to pay its "share of the filing fee"); *Sink*, 352 F.3d at 1201 ("Aden's failure to pay required costs of arbitration was a material breach of its obligations in connection with the arbitration.").

Postmates can hardly complain that it is required to arbitrate the question of whether it must arbitrate with Petitioners, as Postmates has argued for years that its delegation clause requires precisely that result.  *See supra* 7.  Postmates also cannot be heard to complain that the cost of proceeding with individual arbitrations is high. As the *Adams* observed:

> Postmates expends considerable energy accusing Petitioners of using the cost of the arbitration process as a means of coercing Postmates into settling their claims expeditiously.   However, under the Fleet Agreement drafted by Postmates which its couriers are required to sign, Petitioners had no option other than to submit their misclassification claims in the form of an arbitration demand—which is precisely what they did.  Since the Fleet Agreement bars class actions, each demand must be submitted on an individual basis.  Thus, the possibility that Postmates may now be required to submit a sizeable arbitration fee in response to each individual arbitration demand is a direct result of the mandatory arbitration clause and class action waiver that Postmates has imposed upon each of its couriers.

*Adams I*, 414. F. Supp. at 1252 n.2; *see also Greenwood*, 2020 WL 1908302 at *8 ("As the *Adams* court concluded, [Postmates] agreed to broad, mandatory arbitration in the Fleet Agreement for couriers' wage and hour claims, and it is likely that, unless Defendants 'abandon their claims, which seems unlike,' [Postmates] will have to

1    pay the arbitration filing fees at some point.").  As this Court and the *Adams* court
2    pointed out, Petitioners had no option other than to submit their misclassification
3    claims in the form of an individual arbitration demand.  Postmates cannot complain
4    about costs that are the direct—and entirely foreseeable—consequence of requiring
5    each courier to bring claims individually in a forum that charges separate filing fees
6    for each arbitration.

7    **B.      This Court Should Compel Postmates to Arbitrate.**

8           Because Postmates and each Petitioner entered into a valid arbitration
9    agreement covering that Petitioner's underlying wage-and-hour claims, and because
10   Postmates has breached that agreement, this Court's role is clear:  It should "enforce
11   the arbitration agreement in accordance with its terms," *Chiron Corp. v. Ortho*
12   *Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000), and issue an "order
13   directing that such arbitration proceed in the manner provided for in such
14   agreement," 9 U.S.C. § 4; *see also Chiron*, 207 F.3d at 1130 ("By its terms, the Act
15   'leaves no place for the exercise of discretion by a district court, but instead mandates
16   that district courts shall direct the parties to proceed to arbitration on issues as to
17   which an arbitration agreement has been signed.'" (quoting *Dean Witter Reynolds*
18   *Inc. v. Byrd*, 470 U.S. 213, 218 (1985)).

19          The Court should order two remedies to address Postmates's non-compliance.
20          First, where, as here, a party has refused to comply with AAA's administrative
21   determinations requiring the party to submit fees to commence arbitration, the proper
22   remedy is for the Court to order the party to comply with those determinations.
23   *Allemeir v. Zyppah, Inc.*, No. 18-7437-PA, 2018 WL 6038340, at *1 (C.D. Cal. Sept.
24   21, 2018), is on all fours with this case.  The petitioner in *Allemeir* filed a demand
25   for arbitration with AAA against his former employer, and AAA determined that he
26   had satisfied his filing requirements.  *Id.* at *1.  AAA then ordered the employer to
27   pay its share of the filing fees.  *Id.*  But the employer repeatedly disregarded AAA's

28

requests that the employer pay its share of the filing fees, causing AAA ultimately to close petitioner's arbitration due to the employer's nonpayment. *Id.* at *1–2. The district court granted a motion to compel and ordered the employer to proceed with the petitioner's arbitration by "pay[ing] any fees that the AAA allocate[d] to it and . . . comply[ing] with any other requirements that the AAA impose[d]." *Id.* at *4; *see also Halloran v. Davis*, No. 2:12-cv-01011-CBM, 2013 WL 12153551, at *3 (C.D. Cal. Aug. 15, 2013) (ordering the parties to "submit their claims to arbitration and pay arbitration fees and costs as required by the rules and procedures of the AAA"). The exact same relief is warranted here.

Second, for the February Petitioners, the Court should award substantive remedies under California contract law, which governs arbitration agreements where, as here, the law furthers rather than undermines enforcement of agreements to arbitrate. *See Volt Info. Scis., Inc. v. Bd. of Trustees of Leland Stanford Junior Univ.*, 489 U.S. 468, 477 (1989) ("The FAA contains no express pre-emptive provision, nor does it reflect a congressional intent to occupy the entire field of arbitration."). The California Legislature recently codified and expanded upon the remedies for a breach of an arbitration agreement. *See* S.B. 707, 2019–2020 Reg. Sess. (Cal. 2019), codified at Cal. Code Civ. P. § 1281.97, available at https://kl.link/2RprQal.[9]  Consistent with traditional contract law, Senate Bill 707 confirms that a party to an arbitration agreement may require specific performance of a breaching party, including an order that the breaching party pay the fees necessary to proceed with arbitration. *Id.*

Senate Bill 707 further provides:

(a) In an employment or consumer arbitration that requires, either expressly or through application of state or federal law or the rules of the arbitration administrator, the drafting party to pay certain fees and costs before the arbitration

---

[9] Senate Bill 707 took effect on January 1, 2020.

can proceed, if the fees or costs to initiate an arbitration proceeding are not paid within 30 days after the due date, the drafting party is in material breach of the arbitration agreement . . . .

> (b) If the drafting party materially breaches the arbitration agreement and is in default under subdivision (a), the employee or consumer may . . . :
>
> (2) Compel arbitration in which the drafting party shall pay reasonable attorney's fees and costs related to the arbitration.

§ 1281.97.[10]

As stated on its face, Senate Bill 707 requires that an employer who breaches its agreement be compelled to pay the claimant's reasonable attorney's fees and costs related to the arbitration <u>without regard to whether the claimant prevails in the arbitration</u>.

The impetus for Senate Bill 707 was precisely the tactic Postmates employed in this case. As explained in a report by the Senate Judiciary Committee:

> Recently, a concerning and troubling trend has arisen: employers are refusing to pay required fees to initiate arbitration, effectively stymieing the ability of employees to assert their legal rights. For example, . . . [a]s a result of [a ruling compelling arbitration], 12,500 drivers for Uber were forced to file individual arbitration demands in order to have their claims heard. However, very few of these driver's cases have proceeded [because Uber failed to pay the required filing fees].

WP101-102. As the Assembly Judiciary Committee made clear, the Bill was intended to "deter bad actors" who place employees "in limbo, with no avenue to pursue their legal rights." WP116. This is particularly important where a company's breach blocks wage claims, which are quite "significant to the employee, who may not be able to pay bills, rent or other expenses that could result in the loss of their residence, or damage to their credit rating, while the dispute remains unresolved."

---

[10] The Bill expressly defines employee to include "any person who is, was, or who claims to have been misclassified as an independent contractor." *Id.* § 1280(f).

1   WP116–17.

2     Applying the text and purpose of this provision produces a clear result in this

3   case.  The February Petitioners brought arbitrations against Postmates in which "the

4   rules of the arbitration administrator" require Postmates to "pay certain fees and

5   costs before the arbitration can proceed." § 1281.97(a).  Because "the fees or costs

6   to initiate an arbitration proceeding [have not been] paid within 30 days after the due

7   date, the drafting party is in material breach of the arbitration agreement."  *Id.*

8   Accordingly, the February Petitioners have the right to "[c]ompel arbitration in

9   which the drafting party shall pay reasonable attorney's fees and costs related to the

10   arbitration."  § 1281.97(b)(2).  This result serves the clear purpose of the statute—

11   to deter Postmates and other employers from continuing to obstruct the arbitration

12   process that they have used so long to their advantage.[11]

13           **V. CONCLUSION**

14     For the foregoing reasons, Petitioners' motion to compel arbitration should be

15   granted.

16

17

18

19

20

21

22

23

24     [11] In Postmates's Amended Complaint and during briefing on its TRO, Postmates argued that SB 707 cannot be enforced because it is preempted by the

25   FAA and it violates the Contracts Clause.  *See* Am. Compl. ¶¶ 87–100, ECF No. 7; Br. ISO Mot. for TRO, pp. 14–20, ECF No. 17-1.  As explained in Defendants'

26   opposition to the TRO, both arguments lack merit because SB 707 helps enforce arbitration agreements rather than interfere with them.  *See* Defs.' Opp'n to TRO,

27   pp. 19–21, ECF No. 21.  Should Postmates raise the same arguments in its opposition

28   to this motion, Petitioners will address them further on reply.

Dated: May 22, 2020

Keith A. Custis (#218818)
  kcustis@custislawpc.com
CUSTIS LAW, P.C.
1999 Avenue of the Stars
Suite 1100
Los Angeles, California 90067
(213) 863-4276

Respectfully submitted,

/s/ Warren Postman

Warren Postman (*pro hac vice*)
  wdp@kellerlenkner.com
KELLER LENKNER LLC
1300 I Street, N.W., Suite 400E
Washington, D.C. 20005
(202) 749-8334

Aaron Zigler (#327318)
  amz@kellerlenkner.com
Ashley Keller (*pro hac vice*)
  ack@kellerlenkner.com
KELLER LENKNER LLC
150 N. Riverside Plaza, Suite 4270
Chicago, Illinois 60606
(312) 741-5220

*Attorneys for Defendants/Cross-Petitioners*

MEMORANDUM IN SUPPORT OF MOTION TO COMPEL ARBITRATION
CASE NO. 2:20-cv-02783-PSG