Aaron Zigler (#327318)
   amz@kellerlenkner.com
Ashley Keller (*pro hac vice*)
   ack@kellerlenkner.com
KELLER LENKNER LLC
150 N. Riverside Plaza, Suite 4270
Chicago, Illinois 60606
(312) 741-5220

Warren Postman (*pro hac vice*)
   wdp@kellerlenkner.com
KELLER LENKNER LLC
1300 I Street, N.W., Suite 400E
Washington, D.C. 20005
(202) 749-8334

Keith A. Custis (#218818)
   kcustis@custislawpc.com
CUSTIS LAW, P.C.
1875 Century Park East, Suite 700
Los Angeles, California 90067
(213) 863-4276

*Attorneys for Defendants/Cross-Petitioners*

## UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| POSTMATES INC., | Case No:  2:20-cv-02783-PSG |
| *Plaintiff*, | |
| vs. | **DECLARATION OF WARREN POSTMAN IN SUPPORT OF CROSS-PETITIONERS' MOTION TO COMPEL ARBITRATION** |
| 10,356 INDIVIDUALS2, | |
| *Defendants*. | **Judge:** Hon. Philip S. Gutierrez |
| | **Date:** July 20, 2020 |
| | **Time:** 1:30 p.m. |
| GREENWOOD, et al., | |
| *Cross-Petitioners*, | |
| vs. | |
| POSTMATES INC., | |
| *Cross-Respondent*. | |

1    I, Warren Postman, declare based on personal knowledge as follows:

2    1.    I am a Partner at Keller Lenkner LLC, counsel for Petitioners in this

3    matter.

4    2.    I have personal knowledge of the facts stated herein, and if called upon

5    as a witness, I could and would testify competently thereto.

6    3.    This declaration is submitted in support of Petitioners' Motion to

7    Compel Arbitration.

8    **A.    Postmates Refused to Arbitrate with More Than 5,000 Couriers, But Is**

9    **Ordered to Arbitrate by the Federal Court in Adams *v. Postmates*.**

10    4.    In March 2019, Keller Lenkner first informed Postmates that it

11    represented thousands of Postmates couriers who intended to file individual

12    arbitration demands against the company.  A true and correct copy of that initial

13    communication is attached at WP009.

14    5.    After unfruitful discussions with Postmates's outside counsel, Keller

15    Lenkner formally initiated arbitration by serving arbitration demands on the

16    American Arbitration Association ("AAA") and Postmates on April 22 and May 13,

17    2019, on behalf of approximately 5,700 couriers (the "*Adams* Claimants").

18    6.    Based on my experience with arbitrations at the AAA and AAA's rules

19    and practices, it is my understanding that AAA will only invoice a respondent for

20    filing fees after it determines that the claimant (1) has filed a demand that meets

21    AAA's requirements, and (2) has satisfied her filing fee obligation.

22    7.    On May 10, 2019, AAA set May 31, 2019 as the deadline for Postmates

23    to pay its share of the filing fees for the April demands.  A true and correct copy of

24    that email is attached at WP002.  On June 6, 2019, AAA set June 6, 2019 as the

25    deadline for Postmates to pay for the May demands.  At true and correct copy of that

26    email is attached at WP003.

27    8.    Postmates ignored AAA's payment determination for three weeks.

28    Only on the night of AAA's May 31 filing-fee deadline—some five weeks after the

April *Adams* Claimants had filed their demands—did Postmates object for the first time to the form, substance, and service of the demands.  A true and correct copy of that letter is attached at WP004–06.

9.     AAA rejected each objection as inconsistent with AAA rules, and confirmed that the *Adams* Claimants had met AAA's filing requirements.  A true and correct copy of a letter from the AAA dated June 7, 2019, confirming that "[t]he AAA determine Claimant has met the filing requirements under the Rules and Fee Schedule" is attached at WP007–08.  A true and correct copy of an email from the AAA dated June 21, 2019 stating "[a]s previously advised, the AAA determined Claimant met the filing requirements under our Commercial Arbitration Rules, Rule R-4, and the Employment/Workplace Fee Schedule" is attached at WP009.

10.     On June 21, 2019, having not received Postmates's share of the filing fees necessary to commence arbitration, AAA administratively closed the *Adams* Claimants' arbitrations.  *Id*.

11.     On June 3, 2019, the *Adams* Claimants filed a motion to compel arbitration against Postmates.  On October 22, 2019, the *Adams* court granted the motion.  *See Adams v. Postmates*, 414 F. Supp. 1246 (N.D. Cal. 2019) (*Adams I*).

12.     For the few *Adams* Claimants for whom Postmates has paid the filing fees necessary to commence their arbitrations, Postmates was able to draft individual answering documents with over 10 pages per claimant detailing its specific defenses to each individual claimant's claims.  Those arbitrations are proceeding before individual arbitrators, and all hearings, briefing, and discovery has been limited to the individual claimant's claims.  Further, Postmates has not once moved to dismiss the claimant's arbitration because the claimant's demand for arbitration was an improper demand for class arbitration.  Postmates's conduct in the individual arbitrations that have commenced demonstrates that Postmates is well aware that once it pays the individual fees to empanel individual arbitrations those arbitrations do in fact proceed in an individual manner.

**B.     Petitioners File Demands for Arbitration Against Postmates, and AAA Determines Those Demands Meet Its Filing Requirements.**

13.     On September 24, 2019, while the *Adams* motion to compel was still pending, 357 Petitioners served individual demands against Postmates with the AAA (the "September Petitioners").   On February 15, 2020, 4,933 Petitioners served individual demands against Postmates with the AAA (the "February Petitioners").[1]

14.     Petitioners demands followed the same format as those of the *Adams* Claimants.  A true and correct copy of an example *Adams* demand is attached at WP010–11.  A true and correct copy of an example demand from September 24, 2019 is attached at WP012–13.  A true and correct copy of an example demand from February 15, 2020 is attached at WP014–15.[2]

15.     Just like the *Adams* Claimants, AAA determined that each Petitioner had met his or her individual filing requirements.  As a result, under the applicable fee schedule, Postmates was obligated to pay $ 785,400 by October 21, 2019 for the commencement of the September Petitioners' arbitrations and $2,220,400 by March 16, 2020 for the February Petitioners.[3]

- A true and correct copy of an email from AAA dated September 30, 2019 stating the September Petitioners had met their filing requirements and setting October 21, 2019 as the filing fee deadline is attached at WP016–17.

---

[1] Keller Lenkner served in total 1,250 demands for arbitration on September 24, 2019, and 10,356 demands on February 15, 2020.  But only 5,290 are Petitioners in this action.

[2] All sample demands have been redacted to keep personal identifying information confidential, such as street address, phone number, and email address. Pending the Court's Order on Petitioners' Motion to Seal, ECF No. 41, Petitioners have conditionally filed unredacted versions under seal at WP_UNREDACTED_010–15.

[3] Because the total number of demands served is greater than demands served by Petitioners, the total amount AAA invoiced Postmates is greater than the amount Postmates owes for Petitioners' arbitrations.

- A true and correct copy of an email from AAA dated November 1, 2019 stating "[w]e have made any administrative determination that the minimum filing requirements have been met by" the September Petitioners and noting November 4, 2019 as the new deadline for Postmates to pay its fees is attached at WP018–19.

- A true and correct copy of an email from AAA dated November 5, 2019 giving Postmates until November 6, 2019 to pay its fees for the September Petitioners is attached at WP020.

- A true and correct copy of an email from AAA dated February 24, 2020 stating the February Petitioners had met their filing requirements and setting March 16, 2020 as the deadline for Postmates to pay its share of the filing fees is attached at WP022–23.  That email also emphasized that AAA will not grant extensions to this payment deadline," and that because the arbitrations were "subject to California Code of Civil Procedure 1281.97 and 1281.98" that "payment must be received by April 15, 2020"—thirty days after the March 16 deadline—"or the AAA may close the parties' cases."

16.   On November 8, 2020, AAA confirmed that "Respondent has failed to submit the previously requested filing fees for these matters; accordingly, we have administratively closed our files."  A true and correct copy of that email is attached at WP021.

17.   On April 20, 2020, AAA confirmed that other than the 100 claimants who advanced Postmates's fees with the intent of recovering those fees before an arbitrator, Postmates had failed to pay its share of the initial filing fee necessary to commence the February Petitioners' arbitrations.  AAA further stated that it "will decline to administer any future cases involving" Postmates, and that Postmates was required to "remove [AAA's] name from its arbitration agreement so there is no confusion to the public."  A true and correct copy of that email is attached at WP024.

18.     The next day, Petitioners' counsel sought confirmation that, although AAA stated it would no longer administer arbitrations for Postmates, "AAA will administer future arbitrations if a court compels Postmates to arbitrate under the terms of an agreement calling for arbitration before AAA."  A true and correct copy of that email is attached at WP025.   AAA confirmed Petitioners' counsel understanding, stating "That is correct.   The AAA will abide by a court order compelling arbitration before the AAA."  A true and correct copy of that email is attached at WP026.

**C.     Postmates Works With a Plaintiffs' Firm That Has Not Been Appointed Class Counsel to Pursue a Prohibited Class Action.**

19.     On July 19, 2019, Postmates conducted a mediation with another law firm, Lichten & Liss-Riordan, who is counsel in *Rimler v. Postmates* (Case No. CGC-18-567868) in the Superior Court of the State of California For the County of San Francisco.  *See* Decl. of Shannon Liss-Riordan ¶ 7 (Oct. 8, 2019).  *Rimler* was originally a PAGA only action  *Id.* ¶ 4.

20.     On October 8, 2019, LLR moved for preliminary approval of "settlement-only" class.  *See generally* Pls.' Mot. for Preliminary Approval of Class Action Settlement (Oct. 8, 2019).  The motion asks the state court to certify a settlement releasing not only the PAGA claims to which *Rimler* was originally limited, but also the individual claims of all California couriers, including Petitioners, whom Postmates knows are already represented by counsel and have filed individual actions.  *Id*.

21.     The *Rimler* court has raised a host of "concerns" regarding the fairness of that settlement and the degree to which it fails to protect absent class members, and has required additional rounds of briefing to address those concerns.  *See* Order re Mot. for Preliminary Approval of Class Settlement (Nov. 26, 2019); Order After Hearing Re Plaintiffs' Continued Mot. for Preliminary Approval (May 5, 2020).

22.     A true and correct copy of the current version of the proposed settlement

agreement is attached at WP027–74.  It contains the following relevant terms:

- The proposed settlement purports to prohibit class members who are represented by counsel from authorizing their counsel to sign an opt-out form on their behalf.  § 7.1. And even if a class member personally signs an opt-out form, the settlement suggests counsel could not assist a class member in submitting his or her opt-out form.  *Id*.

- It seeks to release the claims of approximately 411,000 California couriers for $11.5 million.  § 2.44.  After deducting LLR's proposed fees of $3.83 million, § 2.38, PAGA penalties of $187,500,  § 2.23, service awards to lead plaintiffs of $25,000, §§ 2.24, 2.32, and settlement administration fees of $450,000, § 2.35, each class member would receive an average of $34.08 (assuming a 50% participate rate), an order of magnitude less than the amount each Petitioner already satisfied to file her claims at AAA.

*** 

23.   On April 21, I informed counsel for Postmates that Keller Lenkner intended to file a motion to compel on behalf of clients whose arbitrations had been closed as a result of Postmates's failure to pay its filing fees.  In May of 2019, Postmates sent revised arbitration agreements to our clients directly and required them to sign the agreement as a condition of continuing to work for Postmates.  I was accordingly concerned that Postmates might attempt to moot our motion by sending our clients an agreement that purported to eliminate their right to arbitrate at AAA, which was the subject of the forthcoming motion to compel.  I therefore reminded counsel for Postmates that it would violate Rule 4.2 of the California Rules of Professional Conduct if they attempted to send a binding legal agreement directly to our clients, whom they know are represented by counsel.

24.   On April 22, counsel for Postmates confirmed that Postmates intended to send our clients a new agreement that they would have to sign as a condition of

continued to work for Postmates and that would potentially eliminate their right to arbitrate at AAA.  I replied to reiterate our position that this would violate Rule 4.2 and stated that we would be willing to confer regarding how to proceed with individual arbitrations of those clients claims, which would obviate the need for our motion.

25.     On April 24, counsel for Postmates stated that they would be willing to send us a draft agreement and schedule a call to confer about how to proceed, provided we treated the draft agreement as confidential.

26.     On April 25, I confirmed the that we would treat the draft agreement as confidential and asked counsel for Postmates to tell me when they could be available for a call.

27.     Having received no response from counsel for Postmates, I followed up by email on May 19, repeated that we would be filing a motion to compel, and asked to confer.

28.     On May 21, my partner, Ashley Keller, and I participated in a phone discussion with counsel for Postmates, Dhananjay Manthriprgada, James Fogelman, and Shaun Mathur.  On the call, Mr. Manthripragada said Postmates was interested in discussing a process and arbitral forum through which the parties could resolve their claims in individual arbitration.  In response to my questions, Mr. Manthripragada said Postmates is willing to commence individual arbitrations with all of Keller Lenkner's clients, and to have all of their arbitrations promptly assigned to arbitrators right away.

29.     This was surprising to me, as Postmates has refused for the better part of a year to proceed with more than 150 arbitrations at AAA.  Mr. Keller and I responded that, if Postmates is now willing to engage in such a process, it should do so at AAA under the rules required by the Fleet Agreement.  Postmates was not willing to agree to this on the phone in part because Mr. Fogelman believed AAA would not administer future arbitrations involving Postmates absent a judicial order

compelling arbitration. But Mr. Fogelman suggested that we send Postmates a proposal in writing.

30. On May 22, I sent counsel for Postmates the following proposal:

> Postmates should pay the filing fees AAA required for the remaining *Adams* Petitioners so that AAA can immediately assign those arbitrations to arbitrators. That will result in individual arbitration of each claimant's claims. It will be the precise process agreed to under the parties' agreements and ordered by a federal court. And AAA has made clear that it will administer those arbitrations. Indeed, taking your statements yesterday at face value, we do not understand Postmates's refusal to move forward with the *Adams* claimants. If Postmates now concedes that it is possible to conduct thousands of individual arbitrations at once without producing a "de facto class arbitration," then the only objection Postmates could have to individual arbitration at AAA is that AAA's fees are too high. That is plainly not a legitimate objection given that Postmates agreed by contract to arbitrate at AAA under AAA's Rules and fee schedule.
>
> If Postmates pays the filing fees to proceed with the remaining *Adams* Petitioners, we will happily discuss a similar process for our remaining clients. But if Postmates will not comply with its agreement even when it is under a federal court order to do so, we respectfully do not believe you when you say Postmates is interested in commencing individual arbitration with all of our clients in the manner required by the Fleet Agreement. For this same reason, we do not think it is in the interests of our clients to delay their motion to compel arbitration when Postmates has to date shown no willingness to engage in individual arbitration with each client as required by the Fleet Agreement voluntarily.

31. Postmates did not accept Petitioners' offer. Because Postmates was not willing to commit to arbitrate with the *Adams* Claimants for whom Postmates is under a federal court order to do so, Claimants informed Postmates that they do not trust Postmates's counsel when they say "Postmates is interested in commencing individual arbitrations with all of [Keller Lenkner's] clients in the manner required by the Fleet Agreement." Claimants informed Postmates that they were at an "impasse."

32. A true and correct copy of the email chain described in Paragraphs 23–31 is attached at WP121–29.

33. A true and correct copy of Postmates's Motion to Compel Arbitration filed in *Winns v. Postmates Inc.* (Case No. CGC-17-562282) filed in the California

1 | Superior Court in San Francisco County on January 23, 2018 is attached at WP075–
2 | 95.

3 |        34.    A true and correct copy of the California Senate Judiciary Committee's
4 | Report on Senate Bill 707 is attached at WP096–108.

5 |        35.    A true and correct copy of the California Assembly Committee on
6 | Judiciary's Report on Senate Bill 707 is attached at WP109–120.

7 |

8 | I affirm that the foregoing is true under penalty of perjury under the laws of the
9 | United States.

10 |

11 | Signed on May 22, 2020 in Arlington, Virginia.

12 |                          /s/ Warren Postman
13 |                          Warren Postman

DECLARATION OF WARREN POSTMAN ISO MOTION TO COMPEL ARBITRATION
CASE NO. 2:20-cv-02783-PSG

1  **PROOF OF SERVICE**

2         At the time of service, I was over 18 years of age and not a party to this action.

3  I am employed in Washington, D.C. My business address is 1300 I Street N.W., Suite

4  400E, Washington, D.C. 2005.   On March 22, 2020, I served true copies of the

5  following document(s) described as:

6  •   EXHIBITS TO THE DECLARATION OF WARREN POSTMAN IN

7       SUPPORT OF CROSS-PETITIONERS' MOTION TO COMPEL

8       ARBITRATION (WP_UNREDACTED_010–15)

9  on the interested parties in this action as follows:

10
11         THEANE EVANGELIS, SBN 243570
             tevangelis@gibsondunn.com
12         DHANANJAY S. MANTHRIPRAGADA, SBN 254433
           dmanthripragada@gibsondunn.com
13         GIBSON, DUNN & CRUTCHER LLP
           333 South Grand Avenue
14         Los Angeles, CA 90071-3197
15         Telephone: 213.229.7000
           Facsimile: 213.229.7520
16
17         MICHELE L. MARYOTT, SBN 191993
             mmaryott@gibsondunn.com
18         SHAUN A. MATHUR, SBN 311029
19           smathur@gibsondunn.com
           GIBSON, DUNN & CRUTCHER LLP
20         3161 Michelson Drive
21         Irvine, CA 92612-4412
           Telephone: 949.451.3800
22         Facsimile: 949.451.4220
23

24         [ X ]  (BY E-MAIL) I caused the foregoing documents to be sent to the
25  persons at the electronic notification addresses listed above (or on the attached
26  service list).  I did not receive, with a reasonable time after the transmission, any
27  electronic message or other indication that the transmission was unsuccessful.
28

1

2       [ X ]   (BY MAIL) By causing the placement of the envelope for collection

3    and mailing following our ordinary business practices. I am readily familiar with

4    firm's practice of collection and processing correspondence for mailing. Under that

5    practice it would be deposited with U.S. postal service (or its equivalent) on that same

6    day (or if outside business hours, the next available business day) with postage

7    thereon fully prepaid.

8

9    I affirm that the foregoing is true under penalty of perjury under the laws of the

10   United States.

11

12   Signed on May 22, 2020 in Arlington, Virginia.

13

14                                                  /s/ Warren Postman

15                                                  Warren Postman

16

17

18

19

20

21

22

23

24

25

26

27

28