# Keller | Lenkner

March 6, 2019

Mr. Robert H. Rieders
General Counsel
Postmates Inc.
201 Third Street, Suite 200
San Francisco, CA 94103

Re:     Arbitration Demands

Dear Mr. Rieders:

Keller Lenkner LLC currently represents more than 3,000 Postmates drivers in California and Illinois. Our investigation shows that Postmates has misclassified these drivers as independent contractors, resulting in violations of their rights under federal, state, and local wage-and-hour laws. As required by Postmates' fleet agreement, we are prepared to serve individual demands for arbitration for each client with the American Arbitration Association ("AAA"). Attached are draft arbitration demands, as well as a list of clients for your reference.

Although Postmates' fleet agreement requires individual arbitration, we understand that individual arbitration is expensive. As you know, Postmates' fleet agreement requires Postmates to pay all arbitration-related costs, including arbitration retainers and filing fees. Applying its Employment/Workplace Fee Schedule, AAA will require Postmates to pay a $2,200 filing fee, a $750 administrative fee, and an arbitrator's retainer of $4,000 or more.

If we conclude that it is necessary to proceed to arbitration, we believe it is in our clients' interests to proceed with every arbitration simultaneously. Based on 3,000 drivers, proceeding to arbitration would obligate Postmates to pay AAA more than $20 million—to say nothing of Postmates' attorneys' fees and its underlying liability, which we believe is substantial. These numbers will continue to grow, as roughly 500 additional drivers engage our firm each week.

Before we serve demands on AAA that will trigger Postmates' obligation to pay the costs outlined above, it would be sensible for the parties to explore whether we can agree on an alternative process for resolving our clients' claims. Provided that Postmates would agree to at least a short period of tolling, we would agree to wait to file our clients' demands in order to discuss such an alternative process.

Please let me know if there is a convenient time between now and March 13, 2019, when you or a member of your team is available to discuss next steps. Feel free to contact me by email at ack@kellerlenkner.com. Thank you in advance for your prompt attention to this matter.

Sincerely,

Ashley Keller

WP0001

| From: | AAA Heather Santo |
| --- | --- |
| To: | Ashley Keller; Manthripragada_Dhananjay S. |
| Cc: | Tom Kayes; McKenna_Madeleine; Maryott_Michele L.; Evangelis_Theane |
| Subject: | RE: Individuals v. Postmates Case # 01-19-0001-2994 |
| Date: | Friday, May 10, 2019 4:45:41 PM |
| Attachments: | imagebe8ec5.PNG |
| | Feliu Disclosure - 4925 Individuals v. Postmates - May 9_2019.pdf |

Dear Counsel,

This will confirm a conference call with Mediator Al Feliu will be held on Monday, May 13th at 11:00 am Eastern Time.  Please use the following dial-in information to join the call.

Phone: 888.537.7715
Passcode: 47609078#

Attached is Mediator Feliu's Notice of Appointment and Disclosures.  Should you have any questions or concerns please let me know.

At this time we do not have the agreement of the parties to keep the arbitration on hold while pursuing mediation. As such, we are requesting Respondent remit their share of the arbitration filing fees in the amount of $1,900 per case by May 31, 2019.  Should you need an invoice and/or wire transfer instructions to facilitate payment please let me know. Should the parties reach agreement to hold the arbitration cases in abeyance, this fee will not be due until such time as the cases become active.

Sincerely,

Heather Santo



**Heather Santo**

American Arbitration Association

1301 Atwood Ave, Suite 211N, Johnston, RI 02919
T: 401 431 4703  F: 401 435 6529  E: heathersanto@adr.org
adr.org | icdr.org | aaamediation.org



The information in this transmittal (including attachments, if any) is privileged and/or confidential and is intended only for the recipient(s) listed above. Any review, use, disclosure, distribution or copying of this transmittal is prohibited except by or on behalf of the intended recipient. If you have received this transmittal in error, please notify me immediately by reply email and destroy all copies of the transmittal. Thank you.

| | |
|---|---|
| **From:** | AAA Heather Santo |
| **To:** | Ashley Keller; Manthripragada_Dhananjay S. |
| **Cc:** | Tom Kayes; McKenna_Madeleine; Maryott_Michele L.; Evangelis_Theane |
| **Subject:** | RE: Individuals v. Postmates Case # 01-19-0001-2994 |
| **Date:** | Thursday, May 16, 2019 11:44:12 AM |
| **Attachments:** | image003.png |
| | image5079f9.PNG |

Dear Counsel,

This will acknowledge receipt of 768 additional individuals filing against Postmates, Inc.

At this time we do not have the agreement of the parties to keep the arbitrations on hold while pursuing mediation. As such, we are requesting Respondent remit payment for the arbitration filing fees in accordance with the contract, in the amount of $2,200 per case, by June 6, 2019.  Should you need an invoice and/or wire transfer instructions to facilitate payment please let me know. Should the parties reach agreement to hold the arbitration cases in abeyance, this fee will not be due until such time as the cases become active.

Sincerely,

Heather Santo



**Heather Santo**

American Arbitration Association

1301 Atwood Ave, Suite 21N, Johnston, RI 02919
T: 401 431 4703  F: 401 435 6529  E: heathersanto@adr.org
adr.org | icdr.org | aaamediation.org



The information in this transmittal (including attachments, if any) is privileged and/or confidential and is intended only for the recipient(s) listed above. Any review, use, disclosure, distribution or copying of this transmittal is prohibited except by or on behalf of the intended recipient. If you have received this transmittal in error, please notify me immediately by reply email and destroy all copies of the transmittal. Thank you.

# GIBSON DUNN

Gibson, Dunn & Crutcher LLP

333 South Grand Avenue
Los Angeles, CA 90071-3197
Tel 213.229.7000
www.gibsondunn.com

Dhananjay S. Manthripragada
Direct: +1 213.229.7366
Fax: +1 213.229.6366
DManthripragada@gibsondunn.com

May 31, 2019


VIA ELECTRONIC MAIL

Ms. Heather Santo
American Arbitration Association
1301 Atwood Ave., Suite 211N
Johnston, RI 02919

Re:     Postmates, Inc. Purported Arbitration Demands

Dear Ms. Santo:

I write in response to your voicemail of this morning asking for Postmates' position on the assessment of arbitration administration fees for Keller Lenkner's purported arbitration demands alleging claims against Postmates.  Postmates' position is that the fees assessed are improper for a number of reasons.

*First*, as stated in AAA's Employment/Workplace Fee Schedule, "[t]he employer or company's share of filing fees is due as soon as the employee or individual meets *his or her* filing requirements."  Empl. Fee Sched. at 2 (emphasis added).  You have made clear that you believe that Keller Lenkner's demands have met AAA's filing requirements, and while we disagree, there can be no dispute that each of Keller Lenkner's purported clients has not met *"his or her"* filing requirements, which are laid out in the Postmates Fleet Agreement to which each claimant allegedly assented.  That contract requires that anyone who "wishes to initiate arbitration" must "notify the other Party in writing via certified mail, return receipt requested, or hand delivery within the applicable statute of limitations period."  Fleet Agreement, ¶ 10B(i).[1]  Keller Lenkner, in contrast, served arbitration demands via email.

Similarly, the Fleet Agreement states that a "demand for arbitration must include (1) the name and address of the Party seeking arbitration, (2) a statement of the legal and factual basis of the claim, and (3) a description of the remedy sought" (*id.*) and states that "all disputes or claims between the Parties will be resolved in individual arbitration" (*id.* at ¶ 10B(iii)).  Notwithstanding these filing requirements, Keller Lenkner has filed one, mass arbitration demand purporting to cover each claimant, which does not lay out any specific facts, theories, or remedies sought for each claimant, as is required by the Fleet Agreement. This circumvents the Fleet Agreement's express requirement that all arbitrations must take

---

[1]  Available at https://fleet.postmates.com/legal/agreement.

Beijing · Brussels · Century City · Dallas · Denver · Dubai · Frankfurt · Hong Kong · Houston · London · Los Angeles · Munich
New York · Orange County · Palo Alto · Paris · San Francisco · São Paulo · Singapore · Washington, D.C.

WP0004

**GIBSON DUNN**

Ms. Heather Santo
May 31, 2019
Page 2

place on an *individualized* basis.  In sum, *not a single one* of Keller Lenkner's purported clients has met "his or her filing requirements," so it is premature for AAA to assess *any* administrative fees against Postmates.

*Second*, if the claimants *did* meet their filing requirements under the Fleet Agreement, the vast majority of claimants failed to meet AAA's requirement that "[a]rbitration . . . shall be initiated by the initiating party . . . filing with the AAA a Demand for Arbitration, *the administrative filing fee*, and a copy of the applicable arbitration agreement."  Comm. R. 4(a) (emphasis added).  Instead, the claimants filed fee waiver affidavits based on California Code of Civil Procedure Section 1284.3, which only applies to "consumer arbitrations."  Cal. Code Civ. Proc. § 1284.3(a).  A "consumer arbitration" is, according to California's Ethics Standards for Neutral Arbitrators in Contractual Arbitration,[2] one in which, among other things, the party "was *required* to accept the arbitration provision in the contract."  Ethics Standard 2(d)(3).  Postmates' Fleet Agreement, in contrast, provides an opt-out provision for anyone who does not wish to arbitrate, and specifically states that "[a]rbitration is not a mandatory condition of Your contractual relationship with Postmates, and therefore You may opt out of this Mutual Arbitration Provision."  Fleet Agreement, ¶ 10B(ix).  Therefore, Keller Lenkner's purported clients asserting inapplicable fee waivers have not met AAA's filing requirements, and Postmates' filing fees should not be assessed.

*Third*, even assuming that the fee waivers the majority of claimants have asserted are proper (they are not), Postmates understands that AAA intends to shift costs waived by those fee waivers to Postmates.  That is improper.  While the California fee waiver statute does not *prohibit* AAA from "shift[ing] fees that would otherwise be charged or assessed upon a consumer party to a nonconsumer party" (Cal. Code Civ. Proc. § 1284.3(b)(1)), nothing in AAA's rules, fee schedule, or other materials suggests a policy of doing so.  To the contrary, AAA's hardship provisions simply state that "[t]he AAA may, in the event of extreme hardship on the part of any party, *defer or reduce* the administrative fees."  Comm. R. 53 (emphasis added).  In fact, the only provision permitting the *shifting* of fees is the following statement on AAA's "employment" webpage: "Arbitrator compensation and *administrative fees are not subject to reallocation by the arbitrator except upon the arbitrator's determination that a claim or counterclaim was filed for purposes of harassment or is patently frivolous*."[3]  In short, there is simply no basis in AAA's policies for shifting any waived costs onto Postmates.

---

[2]  Available at https://www.courts.ca.gov/documents/ethics_standards_neutral_arbitrators.pdf

[3]  Available at https://www.adr.org/employment.

**GIBSON DUNN**

Ms. Heather Santo
May 31, 2019
Page 3


It is clear that for the reasons described above, the fees that AAA plans to assess against Postmates are both premature, and will likely reflect inaccurate amounts payable if and when invoiced. Therefore, we request that AAA withdraw its informal request for the payment of administrative fees at this time.  Thank you very much for your prompt attention to the resolution of this matter.

Sincerely,

Dhananjay S. Manthripragada



Northeast Case Management Center
Heather Santo
Assistant Vice President
1301 Atwood Avenue, Suite 211N
Johnston, RI 02919
Telephone: (866)293-4053
Fax: (866)644-0234

June 7, 2019

Via E-mail

Ashley Keller, Esq.                           Dhananjay S. Manthripragada, Esq.
Travis Lenkner, Esq.                          Michele Maryott, Esq.
Warren Postman, Esq.                          Theane Evangelis, Esq.
Keller Lenkner                                Gibson Dunn
150 North Riverside Plaza, Suite 4270         333 South Grand Avenue
Chicago, IL 60606                             Los Angeles, CA 90071

Case Number: 01-19-0001-2994

Individual Claimants
-vs-
Postmates, Inc.

Dear Counsel:

This will confirm an administrative conference call was held on June 6, 2019 with Ashley Keller, Travis Lenkner and Warren Postman for Claimants and Michele Maryott and Theane Evangelis for Respondent wherein the following items were discussed:

- The parties are not in agreement to hold the cases in abeyance pending the hearing and subsequent ruling from the court on the pending motions. As such, we will continue with administration.

- Respondent has raised an arbitrability issue regarding the filing requirements. The AAA determined Claimant has met the filing requirements under our Rules and Fee Schedule, however Respondent may bring their challenge to the individual arbitrators once appointed.  The parties are not in agreement to appoint a Special Master to decide this issue.

- The Fee Waivers submitted by Claimants were properly filed.

- The AAA did not shift any costs as a result of the fee waivers.  The AAA's Employment/Workplace Fee Schedule is the applicable fee schedule for these matters pursuant to the footnote contained within Rule 1 of the Commercial Arbitration Rules, which states, in part, the following:

  *\* Beginning October 1, 2017, AAA will apply the Employment Fee Schedule to any dispute between an individual employee or an independent contractor (working or performing as an individual and not incorporated) and a business or organization and the dispute involves work or work-related claims, including any statutory claims and including work-related claims under independent contractor agreements...*

WP0007

768 of the Claimants filed for arbitration under the Postmates Fleet Agreement Effective May 11, 2018 in which the agreement states Postmates shall pay the arbitrator's and arbitration fees and costs. The initial administrative fee is $2,200 per case. The AAA assessed Respondent $1,900 for the remaining 4,912 cases pursuant to the Employment/Workplace Fee Schedule.

- The AAA has extended the deadline for Respondent's share of the administrative filing fees, totaling $11,022,400.00, to June 13, 2019.  If payment is not received by that date, the AAA will decline to administer these cases.

Please let me know if you have any questions.

Sincerely,


Heather Santo
Assistant Vice President
Direct Dial: (401)431-4703
Email: Heathersanto@adr.org
Fax: (866)644-0234


cc: Madeleine McKenna, Esq.
    Tom Kayes, Esq.

| From: | AAA Heather Santo |
|---|---|
| To: | Evangelis_Theane; "ack@kellerlenkner.com"; McKenna_Madeleine; Travis Lenkner; Warren Postman; Maryott_Michele L.; Cochrane_Thomas; Manthripragada_Dhananjay S. |
| Cc: | Joanne Saint-Louis_JD |
| Subject: | RE: Individuals v. Postmates, Inc - Case 01-19-0001-2994 |
| Date: | Friday, June 21, 2019 3:15:18 PM |
| Attachments: | image002.png |
| | image4110fe.PNG |

Dear Counsel,

This will acknowledge e-mails dated June 17, 2019 and June 20, 2019 from the parties on the above case.

As previously advised, the AAA determined Claimant met the filing requirements under our Commercial Arbitration Rules, Rule R-4 and Employment/Workplace Fee Schedule and that Respondent may bring their arbitrability challenges to the individual arbitrators once appointed after the filing fees were paid.

This will confirm neither party agreed to AAA's offer, in our June 17, 2019 email, to have the company pay an initial fee of $300.00 per case to allow parties to further consider mediation or other process options or until a determination of the court action has been completed. As such, the AAA is closing these cases. The initial fees paid by Claimants will be refunded. An invoice for AAA's mediation fee and the compensation of the mediator will be sent to Respondent under separate cover.

The AAA will abide by any court order directing the manner in which the underlying arbitrations should or should not proceed. Please keep us advised.

Please let me know if you have any questions.

Sincerely,

Heather Santo



**Heather Santo**

American Arbitration Association

1301 Atwood Ave, Suite 211N, Johnston, RI 02919
T: 401 431 4703  F: 401 435 6529  E: heathersanto@adr.org
adr.org | icdr.org | aaamediation.org



The information in this transmittal (including attachments, if any) is privileged and/or confidential and is intended only for the recipient(s) listed above. Any review, use, disclosure, distribution or copying of this transmittal is prohibited except by or on behalf of the intended recipient. If you have received this transmittal in error, please notify me immediately by reply email and destroy all copies of the transmittal. Thank you.

AMERICAN ARBITRATION ASSOCIATION

**EMPLOYEE ARBITRATION RULES DEMAND FOR ARBITRATION**

**To ensure your demand is processed promptly, please include a copy of the Arbitration Agreement, Plan or Contract.**

| | |
|---|---|
| **Mediation:** If you would like the AAA to contact the other parties and attempt to arrange mediation, please check this box ☐. | |

## Parties (Claimant)

| | | |
|---|---|---|
| Name of Claimant: Aaron Burris (KL Tracking ID No. 4851106) | | |
| Address: ███████ | | |
| City: Oakland | State: CA | Zip: 94601 |
| Phone No.: ███████ | Phone No.: ███████ | |
| Email Address: ███████████████████ | | |
| Representative's Name (if known): Ashley Keller | | |
| Firm (if applicable): Keller Lenkner LLC | | |
| Representative's Address: 150 N Riverside Plaza, Suite 4270 | | |
| City: Chicago | State: IL | Zip Code: 60606 |
| Phone No.: (312) 741-5222 | Fax No.: | |
| Email Address: ack@kellerlenkner.com | | |

## Parties (Respondent)

| | | |
|---|---|---|
| Name of Respondent: Postmates Inc. | | |
| Address: 201 Third Street, Suite 200 | | |
| City: San Francisco, CA | State: CA | Zip Code: 94103 |
| Phone No.: (415) 939-0318 | Fax No.: | |
| Email Address: | | |
| Representative's Name (if known): Dhananjay S. Manthripragada | | |
| Firm (if applicable): Gibson Dunn & Crutcher LLP | | |
| Representative's Address: 333 South Grand Avenue | | |
| City: Los Angeles | State: CA | Zip Code: 90071 |
| Phone No.: (213) 229-7366 | Fax No.: | |
| Email Address: dmanthripragada@gibsondunn.com | | |

Claim: What was/is the employee/worker's annual wage range? ■ Less than $100,000 ☐ $100,000-$250,000 ☐ Over $250,000
*Note: This question is required by California law.*

Amount of Claim: Claimant declines to specify the amount in controversy at this time, as the information needed to calculate damages is exclusively within the control of Postmates.

Claim involves: ■ Statutorily Protected Rights ☐ Non-Statutorily Protected Rights

WP0010

**AMERICAN ARBITRATION ASSOCIATION**

## EMPLOYEE ARBITRATION RULES DEMAND FOR ARBITRATION

In detail, please describe the nature of each claim. You may attach additional pages if necessary: Claimant has been a courier for Postmates. Postmates has misclassified Claimant as an independent contractor instead of an employee. Claimant seeks all available relief under the following provisions, as showing to be applicable following discovery of information exclusively within the control of Respondent: 29 U.S.C §§ 206, 207 (Minimum Wage & Overtime); California Labor Code, Wage Order No. 9 (Minimum Wage & Overtime); Applicable Municipal Codes (Minimum Wage, Overtime, Sick Time, & Notice Violations); California Labor Code § 226 (Wage Statement and Records Access); and Cal. Bus. & Prof. Code § 17200 (Unfair and Unlawful Business Practices).

Other Relief Sought: ■ Attorneys Fees ■ Interest ■ Arbitration Costs ■ Punitive/ Exemplary
■ Other: Declaratory relief; appropriate equitable relief; damages, penalties, and restitution.

Please describe the qualifications for arbitrator(s) to hear this dispute:
Under the parties' arbitration agreement, "[t]he arbitration shall be heard by one arbitrator selected in accordance with the AAA Rules. The arbitrator shall be an attorney with experience in the law underlying the dispute." § 10b.vi.1.

Hearing: Estimated time needed for hearings overall:  6              hours or              days

Hearing Locale: Claimant requests a hearing location in, or reasonably near, the same county in which Claimant resides.

*(check one)* ■ Requested by Claimant ☐ Locale provision included in the contract

Filing Fee requirement or $300 (max amount per AAA) – Claimant has paid the filing fee.

Filing by Company: ☐ $2,200 single arbitrator ☐ $2,800 three arbitrator panel

Notice: To begin proceedings, **please send a copy of this Demand and the Arbitration Agreement, along with filing fee as provided for in the Rules,** to: American Arbitration Association, Case Filing Services, 1101 Laurel Oak Road, Suite 100, Voorhees, NJ 08043. Send the original Demand to the Respondent.

| Signature (may be signed by a representative): | Date: |
|---|---|
| *[signature]* | June 11, 2019 |

Pursuant to Section 1284.3 of the California Code of Civil Procedure, consumers with a gross monthly income of less than 300% of the federal poverty guidelines are entitled to a waiver of arbitration fees and costs, exclusive of arbitrator fees. This law applies to all consumer agreements subject to the California Arbitration Act, and to all consumer arbitrations conducted in California. Only those disputes arising out of employer plans are included in the consumer definition. If you believe that you meet these requirements, you must submit to the AAA a declaration under oath regarding your monthly income and the number of persons in your household. Please contact the AAA's Western Case Management Center at 1-800-778-7879. If you have any questions regarding the waiver of administrative fees, AAA Case Filing Services can be reached at 877-495-4185. Please visit our website at www.adr.org if you would like to file this case online. AAA Customer Service can be reached at 800-778-7879.

WP0011

# AMERICAN ARBITRATION ASSOCIATION

**COMMERCIAL ARBITRATION RULES**
**DEMAND FOR ARBITRATION**

**To ensure your demand is processed promptly, please include a copy of the Arbitration Agreement, Plan or Contract.**

**Mediation:** If you would like the AAA to contact the other parties and attempt to arrange mediation, please check this box ☐.

## Parties (Claimant)

Name of Claimant: Abdul Shaikh (KL Tracking No. 6021021)

Address: ████████████████

| City: Redlands | State: California | Zip Code: 92373 |
|---|---|---|

| Phone No.: ██████████ | Fax No.: |
|---|---|

Email Address: ████████████████████████

Representative's Name: Ashley Keller

Firm: Keller Lenkner LLC

Representative's Address: 150 N Riverside Plaza, Suite 4270

| City: Chicago | State: Illinois | Zip Code: 60606 |
|---|---|---|

| Phone No.: 3127415222 | Fax No.: |
|---|---|

Email Address: ack@kellerlenkner.com

## Parties (Respondent)

Name of Respondent: Postmates Inc.

Address: 201 Third Street, Suite 200

| City: San Francisco | State: California | Zip Code: 94103 |
|---|---|---|

| Phone No.: | Fax No.: |
|---|---|

Email Address:

Representative's Name: Dhananjay S. Manthripragada

Firm: Gibson, Dunn & Crutcher LLP

Representative's Address: 333 South Grand Avenue

| City: Los Angeles | State: California | Zip Code: 90071 |
|---|---|---|

| Phone No.:2132297366 | Fax No.: |
|---|---|

Email Address: DManthripragada@gibsondunn.com

Claim: What was/is the employee/worker's annual wage range? ☑ Less than $100,000 ☐ $100,000-$250,000 ☐ Over $250,000
*Note: This question is required by California law.*

Amount of Claim: Claimant declines to specify the amount in controversy at this time, as the information needed to calculate damages is exclusively within Postmates's control.
Claim involves: ☑ Statutorily Protected Rights ☐ Non-Statutorily Protected Rights

**AMERICAN ARBITRATION ASSOCIATION**

**COMMERCIAL ARBITRATION RULES
DEMAND FOR ARBITRATION**

In detail, please describe the nature of each claim. You may attach additional pages if necessary:

Claimant has been a courier for Postmates. Postmates has misclassified Claimant as an independent contractor instead of an employee. Claimant seeks all available relief under the following provisions, as shown to be applicable following discovery of information exclusively within Postmates's control. California Labor Code, Wage Order No. 9 (Minimum Wage and Overtime); applicable Municipal Codes (Minimum Wage, Overtime, Sick Time, and Notice Violations); California Labor Code § 226 (Wage Statement and Records Access); and Cal. Bus. & Prof. Code § 17200 (Unfair and Unlawful Business Practices).

Other Relief Sought: ☑ Attorneys Fees   ☑ Interest   ☑ Arbitration Costs   ☑ Punitive/ Exemplary
☑ Other: Declaratory relief; appropriate individual equitable relief, damages; penalties; and restitution

Please describe the qualifications for arbitrator(s) to hear this dispute:

Under the applicable arbitration agreement, "[t]he arbitration shall be heard by one arbitrator selected in accordance with AAA rules. The arbitrator shall be an attorney with experience in the law underlying the dispute." 2018 Fleet Agreement § 11B.vi.1.

Hearing: Estimated time needed for hearings overall: 6 hours

Hearing Locale: Claimant requests a hearing location in, or reasonable near, the county in which Claimant resides.

*(check one)* ☑ Requested by Claimant   ☐ Locale provision included in the contract

Filing Fee requirement or $300 (max amount per AAA) – Postmates is required to pay all filing fees. See 2018 Fleet Agreement § 11B.vi.2.

Filing by Company:   ☐ $2,200 single arbitrator   ☐ $2,800 three arbitrator panel

Notice: To begin proceedings, **please send a copy of this Demand and the Arbitration Agreement, along with filing fee as provided for in the Rules,** to: American Arbitration Association, Case Filing Services, 1101 Laurel Oak Road, Suite 100, Voorhees, NJ 08043. Send the original Demand to the Respondent.

| Signature (may be signed by a representative): | Date: |
| --- | --- |
|  | September 24, 2019 |

Pursuant to Section 1284.3 of the California Code of Civil Procedure, consumers with a gross monthly income of less than 300% of the federal poverty guidelines are entitled to a waiver of arbitration fees and costs, exclusive of arbitrator fees. This law applies to all consumer agreements subject to the California Arbitration Act, and to all consumer arbitrations conducted in California. Only those disputes arising out of employer plans are included in the consumer definition. If you believe that you meet these requirements, you must submit to the AAA a declaration under oath regarding your monthly income and the number of persons in your household. Please contact the AAA's Western Case Management Center at 1-800-778-7879. If you have any questions regarding the waiver of administrative fees, AAA Case Filing Services can be reached at 877-495-4185. Please visit our website at www.adr.org if you would like to file this case online. AAA Customer Service can be reached at 800-778-7879.

**AMERICAN ARBITRATION ASSOCIATION**

**COMMERCIAL ARBITRATION RULES**
**DEMAND FOR ARBITRATION**

**To ensure your demand is processed promptly, please include a copy of the Arbitration Agreement, Plan or Contract.**

**Mediation:** If you would like the AAA to contact the other parties and attempt to arrange mediation, please check this box ☐.

## Parties (Claimant)

| | | |
|---|---|---|
| Name of Claimant: Parisa Aalami (KL Tracking No. 5743046) | | |
| Address: ███████████ | | |
| City: Corona Del Mar | State: California | Zip Code: 92625 |
| Phone No.: ███████ | Fax No.: | |
| Email Address: ████████████████████████ | | |
| Representative's Name: Aaron Zigler | | |
| Firm: Keller Lenkner LLC | | |
| Representative's Address: 150 N Riverside Plaza, Suite 4270 | | |
| City: Chicago | State: Illinois | Zip Code: 60606 |
| Phone No.: 3122107278 | Fax No.: | |
| Email Address: amz@kellerlenkner.com | | |

## Parties (Respondent)

| | | |
|---|---|---|
| Name of Respondent: Postmates Inc. | | |
| Address: 201 Third Street, Suite 200 | | |
| City: San Francisco | State: California | Zip Code: 94103 |
| Phone No.: | Fax No.: | |
| Email Address: | | |
| Representative's Name: Dhananjay S. Manthripragada | | |
| Firm: Gibson, Dunn & Crutcher LLP | | |
| Representative's Address: 333 South Grand Avenue | | |
| City: Los Angeles | State: California | Zip Code: 90071 |
| Phone No.: 2132297366 | Fax No.: | |
| Email Address: DManthripragada@gibsondunn.com | | |

Claim: What was/is the employee/worker's annual wage range? ☑ Less than $100,000 ☐ $100,000-$250,000 ☐ Over $250,000
*Note: This question is required by California law.*

Amount of Claim: $21000, subject to amendment according to proof.
Claim involves: ☑ Statutorily Protected Rights   ☐ Non-Statutorily Protected Rights

**AMERICAN ARBITRATION ASSOCIATION**

**COMMERCIAL ARBITRATION RULES**
**DEMAND FOR ARBITRATION**

---

In detail, please describe the nature of each claim. You may attach additional pages if necessary:

Claimant has been a courier for Postmates. Postmates has misclassified Claimant as an independent contractor instead of an employee. Claimant seeks all available relief under the following provisions, as shown to be applicable following discovery of information exclusively within Postmates's control: California Labor Code, Wage Order No. 9 (Minimum Wage & Overtime); Applicable Municipal Codes (Minimum Wage, Overtime, Sick Time, & Notice Violations); California Labor Code § 226 (Wage Statement & Records Access); and Cal. Bus. & Prof. Code § 17200 (Unfair & Unlawful Business Practices).

Claimant's claims fall within the scope of the arbitration provision contained in the Postmates Fleet Agreement, effective 5/11/2019, which Claimant was required to sign as a condition of making deliveries for Postmates. That agreement is included as Exhibit C in the Dropbox folder by which Claimant served this demand on AAA and Postmates.

---

Other Relief Sought: ☑ Attorneys Fees   ☑ Interest   ☑ Arbitration  Costs  ☑ Punitive/ Exemplary
☑ Other: Declaratory relief; appropriate individual equitable relief, damages; penalties; and restitution

---

Please describe the qualifications for arbitrator(s) to hear this dispute:

Under the applicable arbitration agreement, "[t]he arbitration shall be heard by one arbitrator selected in accordance with AAA rules. The arbitrator shall be an attorney with experience in the law underlying the dispute." §10B.vi.

---

Hearing: Estimated time needed for hearings overall: 6 hours

---

Hearing Locale: Claimant requests a hearing location in, or reasonable near, the county in which Claimant resides.

*(check one)* ☑ Requested by Claimant  ☐ Locale provision included in the contract

---

Filing Fee requirement or $300 (max amount per AAA) – Claimant will satisfy the filling fee requirement.

Filing by Company:  ☐ $2,200 single arbitrator  ☐ $2,800 three arbitrator panel

---

Notice: To begin proceedings, **please send a copy of this Demand and the Arbitration Agreement, along with filing fee as provided for in the Rules,** to: American Arbitration Association, Case Filing Services, 1101 Laurel Oak Road, Suite 100, Voorhees, NJ 08043. Send the original Demand to the Respondent.

---

| Signature (may be signed by a representative): | Date: |
|---|---|
| | February 14, 2020 |

---

Pursuant to Section 1284.3 of the California Code of Civil Procedure, consumers with a gross monthly income of less than 300% of the federal poverty guidelines are entitled to a waiver of arbitration fees and costs, exclusive of arbitrator fees. This law applies to all consumer agreements subject to the California Arbitration Act, and to all consumer arbitrations conducted in California. Only those disputes arising out of employer plans are included in the consumer definition. If you believe that you meet these requirements, you must submit to the AAA a declaration under oath regarding your monthly income and the number of persons in your household. Please contact the AAA's Western Case Management Center at 1-800-778-7879. If you have any questions regarding the waiver of administrative fees, AAA Case Filing Services can be reached at 877-495-4185. Please visit our website at www.adr.org if you would like to file this case online. AAA Customer Service can be reached at 800-778-7879.

**From:** AAA Heather Santo <heathersanto@adr.org>
**Sent:** Monday, September 30, 2019 11:30 AM
**To:** Warren Postman <wdp@kellerlenkner.com>; Sean Duddy <skd@kellerlenkner.com>; Manthripragada, Dhananjay S. <DManthripragada@gibsondunn.com>; AAA Heather Santo <heathersanto@adr.org>
**Subject:** 1,250 Individuals v. Postmates

[External Email]
Dear Counsel,

This will acknowledge receipt on September 24, 2019 of 1,250 individual Demands for Arbitration alleging claims against Postmates. Upon review of the documents, the AAA's Commercial Arbitration Rules and Mediation Procedures and the Employment/Workplace Fee Schedule shall apply to these disputes.  We have assigned AAA Case # 01-19-0003-0610 to these matters. Please note all individual arbitrations will be assigned their own case numbers upon receipt of Respondent's portion of filing fees.

Pursuant to the Employment/Workplace Fee Schedule a filing fee of $300.00 is due from the individuals when claims are filed, unless the agreement provides that the individual pay less. A fee of $1,900.00 per case is due from the company, unless the agreement provides that the company pay more.

Claimants have met their filing fee requirements for the 333 Claimants subject to the 2019 Fleet Agreement. Accordingly, we request that the company pay its share of the fees in the amount of $632,700.00 ($1,900.00 for 333 cases) on or before October 21, 2019.

For the remaining 917 Claimants subject to the 2017 and 2018 Fleet agreement, in which the arbitration agreement states Postmates will pay all fees, we request that the company pay fees in the amount of $2,017,400.00 ($2,200.00 for 917 cases) on or before October 21, 2019.

Payment may be submitted via check, wire transfer or credit card. Attached are the AAA Wire Transfer instructions. If paying by check, please reference the above case number, and mail your payment to:

Attention: Larry Allston
American Arbitration Association
13727 Noel Road, Suite 700
Dallas, TX  75240

If you wish to pay by credit card, please contact me directly and I will provide an AAA Paylink.

Please note: no answering statement or counterclaim is due at this time.  The AAA will notify the parties of the response deadlines when all fees have been received.

Should you have any questions, please do not hesitate to contact me.

Sincerely,

WP0016

**Heather Santo**

American Arbitration Association

1301 Atwood Ave, Suite 211N, Johnston, RI 02919
T: 401 431 4703  F: 401 435 6529  E: heathersanto@adr.org
adr.org | icdr.org | aaamediation.org

The information in this transmittal (including attachments, if any) is privileged and/or confidential and is intended only for the recipient(s) listed above. Any review, use, disclosure, distribution or copying of this transmittal is prohibited except by or on behalf of the intended recipient. If you have received this transmittal in error, please notify me immediately by reply email and destroy all copies of the transmittal. Thank you.

This message may contain confidential and privileged information for the sole use of the intended recipient. Any review, disclosure, distribution by others or forwarding without express permission is strictly prohibited. If it has been sent to you in error, please reply to advise the sender of the error and then immediately delete this message.

Please see our website at https://www.gibsondunn.com/ for information regarding the firm and/or our privacy policy.

WP0017

**From:** AAA Heather Santo <heathersanto@adr.org>
**Sent:** Friday, November 1, 2019 1:21 PM
**To:** Warren Postman <wdp@kellerlenkner.com>; Manthripragada, Dhananjay S. <DManthripragada@gibsondunn.com>
**Cc:** Evangelis, Theane <TEvangelis@gibsondunn.com>; Maryott, Michele L. <MMaryott@gibsondunn.com>; Mathur, Shaun <SMathur@gibsondunn.com>; Ashley Keller <ack@kellerlenkner.com>; Cochrane, Thomas <TCochrane@gibsondunn.com>; Sean Duddy <skd@kellerlenkner.com>
**Subject:** RE: 1,250 Individuals v. Postmates

[External Email]
Dear Counsel,

This will acknowledge receipt of Claimants' letter dated October 29, 2019.  This will also acknowledge receipt of the parties' emails below. The AAA does not require further positions on the issues raised by Postmates in their October 25, 2019 letter and responded to by Claimants in their October 29, 2019 letter.

AAA's filing requirements are specified under Rule 4 of the Commercial Arbitration Rules.  We have made an administrative determination that the minimum filing requirements have been met by Claimants. Respondent may raise any further challenges to the arbitrator(s) once appointed.

The AAA will not proceed with administration until Respondent's filing requirements are satisfied.

The Association is available to work with the parties where they are able to reach agreement.  Where the parties are unable to reach agreement on ceasing administration or altering the process such as moving forward on a rolling basis, we must proceed in accordance with our Rules and Fee Schedule.

Respondent has stated they are unable to identify over 200 of the 1,250 individuals. It does not appear Claimants have been provided a list of those individuals.  We encourage the parties to work together and confirm whether a contractual relationship exists.

While the parties discuss the relationship for the approximate 200 individuals, we will place those matters on hold.

We request Respondent remit fees for the remaining cases (approximately 1,050) by the extended deadline of November 4, 2019.  If there is not an agreement by the parties and fees are not paid, the AAA will decline to administer these cases and the files will be closed.

Please do not hesitate to contact me should you have any questions.

Sincerely,

Heather Santo

**Heather Santo**

American Arbitration Association

1301 Atwood Ave, Suite 211N, Johnston, RI 02919
T: 401 431 4703  F: 401 435 6529  E: heathersanto@adr.org
adr.org  |  icdr.org  |  aaamediation.org

The information in this transmittal (including attachments, if any) is privileged and/or confidential and is intended only for the recipient(s) listed above. Any review, use, disclosure, distribution or copying of this transmittal is prohibited except by or on behalf of the intended recipient. If you have received this transmittal in error, please notify me immediately by reply email and destroy all copies of the transmittal. Thank you.

**From:** AAA Heather Santo <heathersanto@adr.org>
**Sent:** Tuesday, November 5, 2019 1:46 PM
**To:** Manthripragada, Dhananjay S. <DManthripragada@gibsondunn.com>; Warren Postman
<wdp@kellerlenkner.com>
**Cc:** Evangelis, Theane <TEvangelis@gibsondunn.com>; Maryott, Michele L.
<MMaryott@gibsondunn.com>; Mathur, Shaun <SMathur@gibsondunn.com>; Ashley Keller
<ack@kellerlenkner.com>; Cochrane, Thomas <TCochrane@gibsondunn.com>; Sean Duddy
<skd@kellerlenkner.com>
**Subject:** RE: 1,250 Individuals v. Postmates

[External Email]
Dear Counsel:

In order for any issues to be put before the Administrative Review Council for determination, AAA's
minimum filing requirements must be met, which includes payment of the initial filing fees by the
parties. We previously determined Claimants met their minimum initial filing requirements and as such
Respondent's fees were due November 4, 2019.  AAA previously provided Respondent an extension of
time to remit payment of their share of the fees.  Absent receipt of payment by Respondent by
Wednesday, November 6, 2019, we will decline to administer these cases and the files will be closed.

Sincerely,

Heather Santo

**Heather Santo**

American Arbitration Association

1301 Atwood Ave, Suite 211N, Johnston, RI 02919
T: 401 431 4703  F: 401 435 6529  E: heathersanto@adr.org
adr.org  |  icdr.org  |  aaamediation.org

T e fo a o    s as  a ( cud ga ce s, fa y) sp v eged a d/o co f de  a a d s  e ded o y fo  e ec p e  (s) s ed
a ove. A y ev ew, use, d sc osu e, d s   u o o copy g of  s as  a s po   ed excep  y o o  e a f of  e  e ded ec p e . If you
 ave ece ved  s as  a  e o , p ease o fy e   ed a d e a y y ep y e a a d des o y a cop es of  e as  a . T a k you.

**From:** **AAA Heather Santo** heathersanto@adr.org 
**Subject:** RE: 1,250 Ind v dua s v. Postmates
**Date:** November 8, 2019 at 9:01 AM
**To:** Warren Postman wdp@ke er enkner.com, Manthr pragada, Dhananjay S. DManthr pragada@g bsondunn.com
**Cc:** Evange s, Theane TEvange s@g bsondunn.com, Maryott, M che e L. MMaryott@g bsondunn.com, Mathur, Shaun SMathur@g bsondunn.com, Ash ey Ke er ack@ke er enkner.com, Cochrane, Thomas TCochrane@g bsondunn.com, Sean Duddy skd@ke er enkner.com

Dear Counsel:
Respondent has failed to submit the previously requested filing fees for these matters; accordingly, we have administratively closed our files.  Claimants filing fees will be refunded under separate cover.

Please do not hesitate to contact me, should you have any questions.

Sincerely,

Heather Santo

**Heather Santo**

American Arbitration Association

1301 Atwood Ave, Suite 211N, Johnston, RI 02919
T: 401 431 4703  F: 401 435 6529  E: heathersanto@adr.org
adr.org | icdr.org | aaamediation.org



The information in this transmittal (including attachments, if any) is privileged and/or confidential and is intended only for the recipient(s) listed above. Any review, use, disclosure, distribution or copying of this transmittal is prohibited except by or on behalf of the intended recipient. If you have received this transmittal in error, please notify me immediately by reply email and destroy all copies of the transmittal. Thank you.

**From:**        AAA Cheryl Florio <CherylFlorio@adr.org>
**Sent:**        Monday, February 24, 2020 3:06 PM
**To:**        Warren Postman; Ashley Keller; Sean Duddy; Travis Lenkner; Marquel Reddish; Brett Walker; Tom Kayes; Manthripragada, Dhananjay S.; Fogelman, James P.; Mathur, Shaun; Evangelis, Theane; Cochrane, Thomas; Maryott, Michele L.; McKenna, Madeleine
**Cc:**        AAA Cheryl Florio
**Subject:**    10,356 Individuals v. Postmates, Inc.

Dear Counsel,

This confirms AAA's receipt on February 15, 2020 of ten thousand three hundred and fifty-six (10,356) individual demands for arbitration involving the above referenced parties, each of which has been filed with us in accordance with a contract containing a clause providing for administration by the AAA.

The outcome of our preliminary administrative review, which is subject to review by the arbitrators, is that these disputes will be administered in accordance with the American Arbitration Association ("AAA") Employment Arbitration Rules amended and in effect November 1, 2009, and the Employment/Workplace Fee Schedule amended and in effect November 1, 2019, both of which can be found on our website, www.adr.org.  Pursuant to the applicable fee schedule, these cases will be administered in accordance with the "Administrative Group Filing Fees" section of the schedule.

Claimants have met their filing fee requirements for the 7,620 Claimants subject to the 2019 Fleet Agreement. Accordingly, we request that the company pay its share of the fees in the amount of $3,048,000.00.

For the remaining 2,736 Claimants subject to the 2017 & 2018 Fleet Agreement, in which the arbitration agreement states Postmates will pay all fees, we request that the company pay fees in the amount of $1,641,600.00

Respondent's portion of filing fees is due on or before March 16, 2020. Respondent's invoice will follow under separate cover.  **Please note that these matters are subject to California Code of Civil Procedure 1281.97 and 1281.98. As such, payment must be received by April 15, 2020 or the AAA may close the parties' cases.  The AAA will not grant any extensions to this payment deadline.**

Payment may be submitted via check, money order, credit card, or wire transfer. Money orders and checks should be made payable to the American Arbitration Association and mailed to American Arbitration Association, 13727 Noel Road, Suite 700, Dallas, TX 75340. When submitting payment, please include a copy of your invoice to ensure that payment is properly applied.  To pay online by credit card, please contact the undersigned directly and request an AAA Paylink.

The AAA's administrative fees are based on filing and service charges. Arbitrator compensation is not included in this schedule. The AAA may require the arbitrators' compensation deposits in advance of any hearings. Unless the individuals, post-dispute choose to pay a portion of the arbitrators' compensation, the company shall pay such compensation in total.

Please note: no answering statements or counterclaims are due at this time. The AAA will notify the parties of the response deadlines when initial filing fees have been received.

If you have any questions, please email the undersigned and we will be happy to assist you.

Thank you,

WP0022



**AAA Cheryl Florio**
**Manager of ADR Services**

American Arbitration Association

T: 401 431 4887  F: 866 644 0234  E: CherylFlorio@adr.org
1301 Atwood Ave, Suite 211N, Johnston, RI 02919
adr.org  |  icdr.org  |  aaamediation.org



The information in this transmittal (including attachments, if any) is privileged and/or confidential and is intended only for the recipient(s) listed above. Any review, use, disclosure, distribution or copying of this transmittal is prohibited except by or on behalf of the intended recipient. If you have received this transmittal in error, please notify me immediately by reply email and destroy all copies of the transmittal. Thank you.

WP0023

| | |
|---|---|
| **From:** | AAA Cheryl Florio <CherylFlorio@adr.org> |
| **Sent:** | Monday, April 20, 2020 1:56 PM |
| **To:** | Warren Postman; Ashley Keller; Sean Duddy; Travis Lenkner; Marquel Reddish; Brett Walker; Tom Kayes; Manthripragada, Dhananjay S.; Fogelman, James P.; Mathur, Shaun; Evangelis, Theane; Cochrane, Thomas; Maryott, Michele L.; McKenna, Madeleine |
| **Cc:** | AAA Cheryl Florio; AAA Heather Santo |
| **Subject:** | RE: 10,356 Individuals v. Postmates, Inc. |

Dear Counsel:

This will confirm Claimants advanced the initial and arbitrator selection fees for Respondent's share on 100 of the 10,356 cases. Claimants intend to seek recovery of the aforementioned fees from the arbitrator(s) once appointed. Inasmuch as the AAA has not received payment from Respondent for the 10,356 cases and the deadline of April 15, 2020 has passed, we are closing the remaining 10,256 cases. Claimants initial filing fees for the 10,256 cases will be refunded.

We hoped that this situation did not escalate to this level, but we want you to be aware that it is the policy of the AAA that if a company does not comply with our request to pay the administrative fees stated in the Employment/Workplace Fee Schedule, the AAA will decline to administer any future cases involving the Respondent. We ask that Respondent remove our name from its arbitration agreements so there is no confusion to the public.

Please do not hesitate to contact me should you have any questions.

Sincerely,

Cheryl Florio



**AAA Cheryl Florio**
**Manager of ADR Services**

American Arbitration Association

T: 401 431 4887  F: 866 644 0234  E: CherylFlorio@adr.org
1301 Atwood Ave, Suite 211N, Johnston, RI 02919
adr.org  |  icdr.org  |  aaamediation.org



The information in this transmittal (including attachments, if any) is privileged and/or confidential and is intended only for the recipient(s) listed above. Any review, use, disclosure, distribution or copying of this transmittal is prohibited except by or on behalf of the intended recipient. If you have received this transmittal in error, please notify me immediately by reply email and destroy all copies of the transmittal. Thank you.

WP0024

**From:**          Warren Postman
**Sent:**          Tuesday, April 21, 2020 1:37 PM
**To:**            AAA Cheryl Florio; Ashley Keller; Sean Duddy; Travis Lenkner; Marquel Reddish; Brett Walker;
                   Manthripragada, Dhananjay S.; Fogelman, James P.; Mathur, Shaun; Evangelis, Theane; Cochrane,
                   Thomas; Maryott, Michele L.; McKenna, Madeleine
**Cc:**            AAA Heather Santo
**Subject:**       RE: 10,356 Individuals v. Postmates, Inc.


Ms. Florio,

Our understanding is that, although AAA will not administer future cases involving Postmates absent a court order, AAA
<u>will</u> administer future arbitrations if a court compels Postmates to arbitrate under the terms of an agreement calling for
arbitration before AAA.

We would appreciate if AAA could confirm this understanding.

Sincerely,

**Warren D. Postman**
Partner

Keller | Lenkner
1300 I Street, N.W., Suite 400E | Washington, D.C. 20005
202.749.8334 | Website | Email

---

WP0025

.

**From:**          AAA Heather Santo <heathersanto@adr.org>
**Sent:**          Tuesday, April 21, 2020 2:11 PM
**To:**            Warren Postman; Ashley Keller; Sean Duddy; Travis Lenkner; Marquel Reddish; Brett Walker;
                   Manthripragada, Dhananjay S.; Fogelman, James P.; Mathur, Shaun; Evangelis, Theane; Cochrane,
                   Thomas; Maryott, Michele L.; McKenna, Madeleine
**Cc:**            AAA Cheryl Florio
**Subject:**       RE: 10,356 Individuals v. Postmates, Inc.


Mr. Postman,

That is correct.  The AAA will abide by any court order compelling arbitration before AAA.

Sincerely,

Heather Santo




### Heather Santo

American Arbitration Association

1301 Atwood Ave, Suite 211N, Johnston, RI 02919
T: 401 431 4703  F: 401 435 6529  E: heathersanto@adr.org
adr.org  |  icdr.org  |  aaamediation.org



The information in this transmittal (including attachments, if any) is privileged and/or confidential and is intended only for the recipient(s) listed above. Any review, use, disclosure, distribution or copying of this transmittal is prohibited except by or on behalf of the intended recipient. If you have received this transmittal in error, please notify me immediately by reply email and destroy all copies of the transmittal. Thank you.

WP0026

SHANNON LISS-RIORDAN (SBN 310719)
(sliss@llrlaw.com)
ANNE KRAMER (SBN 315131)
(akramer@llrlaw.com)
LICHTEN & LISS-RIORDAN, P.C.
729 Boylston Street, Suite 2000
Boston, MA 02116
Telephone:     (617) 994-5800
Facsimile:     (617) 994-5801

*Attorneys for Plaintiffs Jacob Rimler,
Giovanni Jones, Dora Lee, Kellyn Timmerman,
and Joshua Albert, on behalf of themselves and
others similarly situated and in their capacities as
Private Attorney General Representatives*

GIBSON, DUNN & CRUTCHER LLP
THEANE EVANGELIS, SBN 243570
  tevangelis@gibsondunn.com
DHANANJAY S. MANTHRIPRAGADA,
  SBN 254433
  dmanthripragada@gibsondunn.com
333 South Grand Avenue
Los Angeles, CA 90071-3197
Telephone:     213.229.7000
Facsimile:     213.229.7520

MICHELE L. MARYOTT, SBN 191993
  mmaryott@gibsondunn.com
3161 Michelson Drive
Irvine, CA 92612-4412
Telephone:     949.451.3800
Facsimile:     949.475.4668

*Attorney for Defendant Postmates Inc.*

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

## FOR THE COUNTY OF SAN FRANCISCO

| | |
|---|---|
| JACOB RIMLER, GIOVANNI JONES, DORA LEE, KELLYN TIMMERMAN, and JOSHUA ALBERT, on behalf of themselves and others similarly situated and in their capacities as Private Attorney General Representatives,<br><br>     Plaintiffs,<br>  v.<br><br>POSTMATES INC.,<br><br>     Defendant. | Case No. CGC-18-567868<br><br>**CLASS ACTION SETTLEMENT AGREEMENT AND RELEASE** |

WP0027

This Class Action Settlement Agreement and Release, including Exhibits A through C hereto ("Settlement Agreement" or "Agreement"), is made and entered into by, between, and among Plaintiffs Jacob Rimler, Giovanni Jones, Dora Lee, Kellyn Timmerman, and Joshua Albert ("Plaintiffs") on behalf of themselves and the Settlement Class, as defined below, on the one hand, and Defendant Postmates Inc. ("Defendant" or "Postmates") on the other hand. Plaintiffs and Defendant (collectively, the "Parties") enter into this Agreement to effect a full and final settlement and preclusive judgment resolving all claims brought or that could have been brought against Postmates in the following putative collective, representative, and class actions: (1) Rimler v. Postmates, Inc., Case No. CGC-18-567868 in the Superior Court of California, San Francisco County, and the related appeal docketed at No. A156450 in the California Court of Appeal, First Appellate District; (2) Lee v. Postmates, Inc., Case No. 3:18-cv-03421-JCS, in the United States District Court for the Northern District of California, and the related appeals docked at Nos. 19-15024 and 19-80055 in the United States Court of Appeals for the Ninth Circuit; and (3) Albert v. Postmates, Inc., Case No. 18-cv-07592-JCS, in the United States District Court for the Northern District of California; including as amended pursuant to this Agreement (taken together, the three cases shall be referred to as "the Action"), and all claims based on or reasonably related thereto.  This Agreement is intended to fully and finally compromise, resolve, discharge, and settle the Released Claims, as defined and on the terms set forth below, and to the full extent reflected herein, subject to the approval of the Court.

## I.      RECITALS

This Agreement is made in consideration of the following facts:

1.1.      WHEREAS, on July 5, 2018, Plaintiff Jacob Rimler filed a California Private Attorneys General Act ("PAGA"), Labor Code §§ 2698, *et seq.* representative action complaint in the Superior Court of California, San Francisco County (Case No. CGC-18-567868), asserting on behalf of himself and all couriers classified by Postmates as independent contractors in California various wage-related claims against Postmates arising from Postmates'

WP0028

alleged misclassification of couriers as independent contractors.  On July 11, 2018, Plaintiff Rimler filed a First Amended Complaint, which added Plaintiff Giovanni Jones ("the <u>Rimler</u> action");

1.2.     WHEREAS, on August 17, 2018, Postmates filed a Petition for an Order Compelling Arbitration, which the <u>Rimler</u> Plaintiffs opposed.  On January 2, 2019, the Court denied Postmates' Petition, and Postmates filed a notice of appeal.  Before any briefing was conducted on the appeal, Postmates and the <u>Rimler</u> Plaintiffs agreed to mediate the <u>Rimler</u> Action and requested an extension of briefing deadlines in light of the mediation, which the Court granted;

1.3.     WHEREAS, on May 8, 2018, Plaintiff Dora Lee filed a class action complaint in the Superior Court of California, San Francisco County (Case No. CGC-18-566394) on behalf of herself and a proposed class consisting of all couriers in California classified by Postmates as independent contractors, asserting various wage-related claims against Postmates arising from Postmates' alleged misclassification of couriers as independent contractors.  On June 8, 2018, Postmates filed a Notice of Removal to the United States District Court for the Northern District of California, Case No. 3:18-cv-03421-JCS.  On July 23, 2018, Postmates filed a Motion to Compel Arbitration.  On October 15, 2018, the Court granted Plaintiff Lee's Motion for Leave to Amend the Complaint to add Plaintiffs Kellyn Timmerman and Joshua Albert, and granted Postmates' Motion to Compel Arbitration of Plaintiff Lee's claims.  On November 6, 2018, Postmates filed a Motion to Compel Arbitration for Plaintiff Timmerman.  On December 17, 2018, the Court granted Postmates' Motion to Compel Arbitration and dismissed the case so that Plaintiffs Lee and Timmerman could pursue an appeal to the United States Court of Appeals for the Ninth Circuit.  On January 4, 2019, Plaintiffs Lee and Timmerman filed a notice of appeal, which is pending as Ninth Cir. Case No. 19-15024 (together with the case dismissed by the Northern District of California, the "<u>Lee</u> Action").  Subsequently, Plaintiffs Lee and Timmerman moved the District Court to certify its orders for interlocutory review.  The Court

WP0029

granted the motion, and Plaintiffs Lee and Timmerman filed a petition in Ninth Cir. Case No. 19-80055, seeking permission to appeal.  On July 30, 2019, the Ninth Circuit denied the petition;

1.4.    WHEREAS, on December 17, 2018, the District Court in <u>Lee</u> severed Plaintiff Joshua Albert's claims to proceed as a separate case, Northern District of California Case No. 3:18-cv-07592-JCS.  On January 4, 2019, Plaintiff Albert filed a Second Amended Complaint asserting a PAGA claim based on various wage-related claims against Postmates arising from Postmates' alleged misclassification of couriers as independent contractors (the "<u>Albert</u>" Action).  The parties were engaged in written discovery until they requested and received a stay to participate in mediation;

1.5.    WHEREAS, Plaintiffs allege generally that Postmates improperly classified them and all putative Settlement Class Members as independent contractors rather than employees, and assert derivative claims related thereto;

1.6.    WHEREAS, Postmates denies the allegations in the Action; maintains that each courier's claims must be individually arbitrated pursuant to any arbitration agreement to which that courier may be bound; denies that it has engaged in any wrongdoing; denies that any Settlement Class Member was ever an employee of Postmates; denies that Plaintiffs' allegations state valid claims; denies that a litigation class could properly be certified in the Action; denies that Plaintiffs' claims could properly be maintained as a collective, class or representative action; and states that it is entering into this Settlement Agreement solely to eliminate the burden, expense, and delay of further litigation and arbitrations, and on the express conditions that: (a) if for any reason the Settlement is not finalized according to the terms of this Agreement, the Settlement and the documents generated as a result of the Settlement shall be void *ab initio*, and shall not be admissible or usable for any purpose in any of the cases included in the Action or any other civil or administrative proceeding or arbitration; and (b) this Settlement and the documents generated as a result of the Settlement are not admissible or

WP0030

usable in any other civil or administrative proceeding or arbitration, except to the extent necessary to enforce this Settlement and the orders, judgment and agreements arising from this Settlement;

1.7.    WHEREAS, a bona fide dispute exists as to whether any amount of wages or penalties are due from Postmates to any putative Settlement Class Member or to the California Labor and Workforce Development Agency ("LWDA");

1.8.    WHEREAS, in preparation for mediation, Postmates and Plaintiffs engaged in extensive informal discovery, exchanging information, documents and voluminous data, which enabled the parties and the mediator to thoroughly evaluate Plaintiffs' claims and the claims of the putative Settlement Class Members, and the likely outcomes, risks, and expense of pursuing litigation;

1.9.    WHEREAS, the Plaintiffs and Postmates attended an in-person mediation session with professional mediator Tripper Ortman of Ortman Mediation, who is experienced in mediating class action disputes, before agreeing to the terms of this arm's-length Settlement;

1.10.    WHEREAS, as a result of the mediation, Plaintiffs and Plaintiffs' Counsel believe that the global Settlement provides a favorable recovery for the Settlement Class, based on the claims asserted, the evidence developed, and the damages that might be proven against Postmates in the Action.  The Plaintiffs and Plaintiffs' Counsel further recognize and acknowledge the expense and length of continued proceedings necessary to prosecute the Action against Postmates through trial and appeals.  They also have considered the uncertain outcome and the risk of any litigation, especially in complex litigation such as the Action, as well as the difficulties and delays inherent in any such litigation.  They are also mindful of the inherent challenges of proof and the strength of the defenses to the alleged claims, and therefore believe that it is desirable that the Released Claims be fully and finally compromised, settled, and resolved with prejudice as set forth herein, subject to the approval of the Court;

WP0031

1.11.   WHEREAS, Plaintiffs and Plaintiffs' Counsel, based on their own independent investigations and evaluations, have examined the benefits to be obtained under the terms of this Settlement Agreement, have considered the claims of the Plaintiffs, the claims of the average Settlement Class Member, the risks associated with the continued prosecution of the Action, and the likelihood of success on the merits of the Action, and believe that, after considering all the circumstances, including the uncertainties surrounding the risk of further litigation and the defenses that Postmates has asserted and could assert, the proposed Settlement set forth in this Agreement is fair, reasonable, adequate, in the best interests of the Plaintiffs and the Settlement Class, and confers substantial benefits upon the Settlement Class;

1.12.   WHEREAS, Plaintiffs warrant and represent that they are effecting this Settlement and executing this Agreement after having received full legal advice as to their respective rights and have had the opportunity to obtain independent counsel to review this Agreement;

1.13.   WHEREAS, the Parties further agree that the Agreement, the fact of this Settlement, any of the terms of this Agreement, and any documents filed in connection with the Settlement shall not constitute, or be offered, received, claimed, construed, or deemed as, an admission, finding, or evidence of: (i) any wrongdoing by any Released Parties; (ii) any violation of any statute, law, or regulation by Released Parties; (iii) any liability on the claims or allegations in the Action on the part of any Released Parties; (iv) any waiver of Postmates' right to arbitration or the enforceability of any Postmates arbitration agreement; or (v) the propriety of certifying a litigation class or pursuing representative relief under PAGA in the Action or any other proceeding; and shall not be used by any Person for any purpose whatsoever in any administrative or legal proceeding, including but not limited to arbitrations, other than a proceeding to enforce the terms of the Agreement.  There has been no final determination by any court as to the merits of the claims asserted by Plaintiffs against Postmates, nor has there

WP0032

been any final determination as to whether a class should be certified or whether representative claims may properly be pursued, other than for settlement purposes only;

1.14.   WHEREAS, for settlement purposes only, Postmates will stipulate to the certification of class claims that are subject to the certification requirements of California Code of Civil Procedure section 382, on the express condition that if this Settlement Agreement is not preliminarily or finally approved, this paragraph, the Settlement Agreement, and any class certified pursuant to the Settlement Agreement are all void *ab initio*.  Postmates disputes that certification is proper for the purposes of litigating the class claims proposed in or flowing from the claims asserted in the <u>Rimler</u>, <u>Lee</u>, or <u>Albert</u> lawsuits;

1.15.   WHEREAS, the Parties desire to compromise and settle all Released Claims, including, all issues and claims that have been, could have been, or should have been brought against Postmates or related persons in the Action, and all claims brought on a putative class and representative basis in the <u>Rimler</u>, <u>Lee</u>, and <u>Albert</u> lawsuits;

1.16.   NOW, THEREFORE, IT IS HEREBY STIPULATED, CONSENTED TO, AND AGREED, by the Plaintiffs for themselves and on behalf of the Settlement Class and by Postmates, that, subject to the approval of the Court, the Action (including <u>Rimler</u>, <u>Lee</u>, and <u>Albert</u>, the lawsuits that comprise the Action) shall be settled, compromised, and dismissed, on the merits and with prejudice, and the Released Claims shall be finally and fully compromised, settled, and dismissed as to the Released Parties, in the manner and upon the terms and conditions hereafter set forth in this Settlement Agreement.

## II.   DEFINITIONS

In addition to the terms defined elsewhere in this Settlement Agreement, capitalized terms used in this Settlement Agreement shall have the meanings set forth below:

2.1   "Authorized Claimant" means any Settlement Class Member who submits a valid and timely Claim that qualifies for a payment under the terms of this Settlement

WP0033

Agreement and who by validly and timely submitting the Claim using the Claim Form consents to join as a party plaintiff in the Fair Labor Standards Act ("FLSA") claims in this Action.

2.2   "Authorized Claimants' Released Claims" means all of the Settlement Class Members' Released Claims as well as any and all claims, debts, liabilities, demands, obligations, guarantees, penalties, costs, expenses, attorneys' fees, damages, liquidated damages, action or causes of action of whatever kind or nature, whether known or unknown, contingent or accrued, against the Released Parties or any of them based on putative violations of federal law based on or related to the claims asserted in or that could have been asserted in this Action under the FLSA. "Authorized Claimants' Released Claims" include any unknown claims that an Authorized Claimant does not know or suspect to exist in his or her favor, which if known by him or her, might have affected this Settlement Agreement and release of the Released Parties.

2.3   "Bar Date" means the final time and date by which a Claim Form must be postmarked or submitted to the Settlement Administrator for a Settlement Class Member to be eligible to receive an Individual Settlement Payment. The Bar Date shall be sixty (60) days after the Notice Distribution Date and shall be specifically identified and set forth in the Preliminary Approval Order and the Settlement Class Notice.

2.4   "Claim" means the submission to be made by a Settlement Class Member using the Claim Form, which form shall serve as the Settlement Class Member's means of requesting payment from the Total Settlement Amount and serve as that Settlement Class Member's Consent to Join as a party plaintiff to the FLSA claims asserted in this Action pursuant to 29 U.S.C. § 216(b).

2.5   "Claim Form" means the document included in the Settlement Class Notice without material variation from the relevant portion of Exhibit A. The Claim Form, if signed by a Settlement Class Member and timely and validly submitted to the Settlement Administrator, shall serve as that Settlement Class Member's Consent to Join as a party plaintiff to the FLSA claims asserted in this Action pursuant to 29 U.S.C. § 216(b), and effect a full and complete

WP0034

release of all claims under the FLSA based on or reasonably related to the claims asserted in this Action. To be valid, a Claim Form must be signed without any deletion or amendment to its language regarding the release of the FLSA claims and without any deletion or amendment to any other portion. If the Court does not finally approve this Settlement Agreement, any Consent to Join and release of the FLSA claims filed on behalf of any Settlement Class Member shall be void *ab initio*.

2.6    "Consent to Join" means a Settlement Class Member's consent to join as a party plaintiff to the FLSA claims asserted in this Action pursuant to 29 U.S.C. § 216(b). A Settlement Class Member's signed Claim Form that is timely and validly submitted to the Settlement Administrator shall serve as that Settlement Class Member's Consent to Join.

2.7    "Courier" means any individual who has been approved to use or has used the Postmates platform as an independent contractor courier.

2.8    "Superior Court" means the Superior Court of California, San Francisco County.

2.9    "Dispute Resolution Fund" means the fund consisting of Two Hundred and Fifty Thousand dollars and no cents ($250,000) set aside from the Total Settlement Amount to be used: (i) to resolve any bona fide disputes that may arise regarding the calculation and disbursement of Individual Settlement Payments according to the Plan of Allocation, as provided in Section III(8)(f); and (ii) to disburse Individual Settlement Payments to individuals mistakenly excluded from the Settlement Class, as provided in Section III(8)(f). The Dispute Resolution Fund shall be paid from the Total Settlement Amount.

2.10    "Effective Date" means seven (7) days after which both of the following events have occurred: (i) the Court's Final Approval order and Judgment has been entered, and (ii) the Court's Final Approval order and Judgment have become Final.

2.11    "Estimated Miles" means the estimated total number of miles from the location where a delivery offer is accepted to the location where orders are picked up and to the location

WP0035

where orders are delivered, for each Settlement Class Member during the Settlement Period, as determined by Postmates' records.

2.12    "Exclusion/Objection Deadline" means the final date by which a Settlement Class Member may either (i) object to any aspect of the Settlement (pursuant to the Preliminary Approval Order and Section VIII), or (ii) request to be excluded from the Settlement (pursuant to the Preliminary Approval Order and Section VII).  The Exclusion/Objection Deadline shall be sixty (60) days after the Notice Distribution Date, and shall be specifically identified and set forth in the Preliminary Approval Order and the Settlement Class Notice.

2.13    "Final" when referring to a judgment or order, means that (i) the judgment is a final, appealable judgment; and (ii) either (a) no appeal has been taken from the judgment as of the date on which all times to appeal therefrom have expired, or (b) an appeal or other review proceeding of the judgment having been commenced, such appeal or other review is finally concluded and no longer is subject to review by any court, whether by appeal, petitions for rehearing or re-argument, petitions for re-hearing *en banc*, petitions for writ of certiorari, or otherwise, and such appeal or other review has been finally resolved in such manner that affirms the judgment order in its entirety.

2.14    "Final Approval" means the Court's entry of an order that the Named Plaintiffs and Postmates will seek from the Court, to be agreed upon by the Parties, and the entry of which shall reflect the Court's Judgment finally approving the Settlement Agreement.

2.15    "Final Approval Hearing" means the hearing that is to take place after the entry of the Preliminary Approval Order and after the Notice Distribution Date for purposes of:  (i) entering Final Approval; (ii) determining whether the Settlement Agreement shall be approved as fair, reasonable, and adequate; (iii) ruling upon an application by Settlement Class Counsel for Attorneys' Fees; and (iv) ruling on the application for a Settlement Class Counsel Award.

2.16    "General Released Claims" includes all of the Settlement Class Members' Released Claims, with the addition of: (i) violations of Title VII of the Civil Rights Act of 1964;

(ii) violations of the Civil Rights Act of 1866; (iii) violations of the Americans with Disabilities Act; (iv) violations of any and all potential claims against Postmates that could be brought under corresponding state or local law; and (v) any claims for wages, penalties, breach of an express or implied contract, breach of the covenant of good faith and fair dealing, breach of fiduciary duty, fraud, misrepresentation, defamation, slander, retaliation, discrimination, harassment, wrongful termination, infliction of emotional distress, loss of future earnings or profits or any other claims based upon any state or federal public policy, or any other alleged wrongful conduct or injury, arising out of or in any way connected with any acts or omissions occurring during the Settlement Period, based on the claims that were alleged in the Action or that arise out of or relate to Plaintiffs' relationship with Postmates or the services Plaintiffs provided using Postmates' platform, or that arise out of or relate to the facts alleged in the action, in addition to all claims based on or arising under the federal and state law sections included in the Settlement Class Members' Released Claims and any other equivalent federal, state, or local law of any state or locality in which Plaintiffs reside and/or used Postmates' platform as an independent contractor courier.

2.17   "Individual Settlement Payment" means the amount payable from the Total Settlement Amount to each Settlement Class Member who does not timely and properly request exclusion from the Settlement Class and submits a Claim Form.  The Individual Settlement Payment shall be calculated pursuant to Section V herein.

2.18   "Judgment" means the judgment to be entered in the Action on Final Approval of this Settlement.

2.19   "Legally Authorized Representatives" means an administrator/administratrix, personal representative, or executor/executrix of a deceased Settlement Class Member's estate; a guardian, conservator, or next friend of an incapacitated Settlement Class Member; or any other legally appointed Person responsible for handling the business affairs of a Settlement Class Member who is not the Settlement Class Member's counsel.

CLASS ACTION SETTLEMENT AGREEMENT AND RELEASE
Case No. CGC-18-567868

WP0037

2.20    "Notice Distribution Date" means the date of the initial distribution of the Settlement Class Notice to Settlement Class Members as set forth in Section VI.

2.21    "Opt-Out List" means the Court-approved list of all persons who timely and properly request exclusion from the Settlement Class as set forth in Section VII.

2.22    "PAGA Claims" means Plaintiffs Rimler, Jones, and Albert's representative claims seeking penalties pursuant to PAGA, as alleged in the <u>Rimler</u> and <u>Albert</u> Complaints and/or based on any other provision of the Labor Code, Wage Orders, or any other statute or regulation based upon independent contractor misclassification to the fullest extent permitted by law.

2.23    "PAGA Payment" means a total payment of $250,000 to settle all claims under the PAGA.  From this amount, 75% will be paid to the LWDA for civil penalties pursuant to the PAGA and 25% will be distributed to Settlement Class Members.

2.24    "Plaintiffs" means Jacob Rimler, Giovanni Jones, Dora Lee, Kellyn Timmerman, and Joshua Albert.

2.25    "Plaintiffs' Counsel" means Lichten & Liss-Riordan, P.C.

2.26    "Plan of Allocation" means the plan for allocating the Total Settlement Amount between and among Settlement Class Members as approved by the Court.

2.27    "Preliminary Approval Date" means the date that the Court enters the Preliminary Approval Order and thus: (i) preliminarily approves the Settlement Agreement, and the exhibits thereto, and (ii) enters an order providing for notice to the Settlement Class, an opportunity to opt out of the Settlement Class, an opportunity to submit timely objections to the Settlement, a procedure for submitting Claims, and setting a hearing on the fairness of the terms of the Settlement Agreement, including approval of the Settlement Class Counsel Award.

2.28    "Preliminary Approval Order" means the order that the Plaintiffs and Postmates will seek from the Court, without material variation from Exhibit B.  Entry of the Preliminary Approval Order shall constitute preliminary approval of the Settlement Agreement.

2.29    "Released Claims" shall be construed as broadly as possible to effect complete finality over this litigation involving Postmates.  "Released Claims" include (i) Settlement Class Members' Released Claims, (ii) General Released Claims, and (iii) Authorized Claimants' Released Claims.  Notwithstanding any other provision of this Settlement Agreement, "Released Claims" do not include claims for personal injuries.  Moreover, the release of any claims under the FLSA contemplated by this Settlement Agreement shall be effectuated only after a Settlement Class Member has timely and validly submitted a Claim and thereby Consented to Join as a party to the FLSA claims asserted in this action pursuant to 29 U.S.C. § 216(b).

2.30    "Released Parties" means (i) Postmates Inc. and its past, present, and future parents, subsidiaries, affiliates, divisions, joint ventures, licensees, franchisees, and any other legal entities, whether foreign or domestic, that are owned or controlled by Postmates (but not including couriers who use the Postmates platform); and (ii) the past, present, and future shareholders, officers, directors, members, investors, agents, employees, agents, consultants, representatives, fiduciaries, insurers, attorneys, legal representatives, predecessors, successors, and assigns of the entities listed in (i).

2.31    "Second Amended Complaint" means the Second Amended Complaint, without material variation from Exhibit C, that Settlement Class Counsel shall seek to file in Rimler, the lead lawsuit, pursuant to Paragraph 3.6 and shall file concurrently with the submission of the motion for preliminary approval of the Settlement so that the Second Amended Complaint may be filed promptly upon entry of the Preliminary Approval Order.  The Second Amended Complaint shall (i) add Dora Lee, Kellyn Timmerman, and Joshua Albert as named Plaintiffs, and (ii) add the claims alleged in the Lee and Albert actions, including any and all class and representative action claims, and also any and all potential claims necessary to effectuate the release described herein.

WP0039

2.32    "Service Awards" means the amount approved by the Court to be paid to each Plaintiff in addition to their respective Individual Settlement Payments, in recognition of their efforts in coming forward as named plaintiffs and as consideration for a full, general, and comprehensive release of the General Released Claims.  The Service Award amount payable to Plaintiffs is not to exceed Five Thousand Dollars ($5,000) each.

2.33    "Settlement" means the settlement of this Action between and among Plaintiffs and Postmates, as set forth in this Settlement Agreement, including all attached Exhibits, which are an integral part of this Settlement Agreement and are incorporated in their entirety by reference.

2.34    "Settlement Administrator" means the administrator selected by the parties, Simpluris.

2.35    "Settlement Administrator Expenses" means the maximum amount to be paid to the Settlement Administrator from the Total Settlement Amount, which shall be $450,000.  All Settlement Administrator Expenses are to be paid exclusively from the Total Settlement Amount.

2.36    "Settlement Class" means any and all individuals who entered into an agreement with Postmates to use the Postmates platform as an independent contractor to offer delivery services to customers, and used the Postmates platform as an independent contractor courier to accept or complete at least one delivery in California during the Settlement Period.

2.37    "Settlement Class Counsel" means Lichten & Liss-Riordan, P.C.

2.38    "Settlement Class Counsel Award" means (i) the attorneys' fees for Settlement Class Counsel's litigation and resolution of the Action, including the Rimler, Lee, and Albert lawsuits, and any and all arbitrations and claims resolved by this Settlement, as awarded by the Court, and (ii) all expenses and costs incurred by Settlement Class Counsel in connection with litigation and resolution of Rimler, Lee, and Albert, and any and all arbitrations and claims

WP0040

resolved by this Settlement, as awarded by the Court, which, together, may not exceed thirty-three percent (33%) of the Total Settlement Amount.

2.39    "Settlement Class Information" means information regarding Settlement Class Members that Postmates will in good faith compile from its records and provide to the Settlement Administrator, solely for purposes of the Settlement Administrator's administration of the settlement, and for no other purpose.  Settlement Class Information shall be provided to the Settlement Administrator and shall include, if possible, for each Settlement Class Member: full name, last known address, email address, and Estimated Miles.  Because Settlement Class Members' private information is included in the Settlement Class Information, the Settlement Administrator shall maintain the Settlement Class Information in confidence and shall use and disclose Settlement Class Information only for purposes of this Settlement and for no other purpose; access shall be limited to employees of the Settlement Administrator with a need to use the Settlement Class Information as part of the administration of the Settlement.

2.40    "Settlement Class Member" means any member of the Settlement Class.

2.41    "Settlement Class Members' Released Claims" means any and all present and past claims, actions, demands, causes of action, suits, debts, guarantees, obligations, damages, penalties, rights or liabilities, of any nature and description whatsoever, known or unknown, existing or potential, recognized now or hereafter, contingent or accrued, expected or unexpected, pursuant to any theory of recovery (including but not limited to those based in contract or tort, common law or equity, federal, state, or local law, statute, ordinance, or regulation, and for claims for compensatory, consequential, punitive or exemplary damages, statutory damages, penalties, interest, attorneys' fees, costs, or disbursements) that are based on or reasonably related to the claims alleged in or that could have been alleged in the *Rimler* Second Amended Complaint, including any allegations in *Lee*, *Albert*, and/or *Rimler* preceding said amended complaint, and all misclassification claims, and specifically including: claims pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.*; California Labor

Code sections 132a, 201-204, 206.5, 207, 208, 210-214, 216, 218, 218.5, 218.6, 221-224, 225.5, 226, 226.3, 226.7, 226.8, 227, 227.3, 245-249, 351, 353, 432.5, 450, 510, 512, 551-552, 558, 1174, 1174.5, 1182.12, 1194, 1194.2, 1194.3, 1197, 1197.1, 1198, 2753, 2802, 2804; the Private Attorneys General Act ("PAGA"), California Labor Code section 2698 *et seq.*; California Code of Civil Procedure section 1021.5; California Code of Regulations, title 8, sections 11010 and 11040; Industrial Welfare Commission Wage Orders; California Business and Professions Code sections 17200 *et seq.*;  and any other similar state, federal, local, or common law, statute, regulation, or ordinance for unpaid wages, minimum wages, regular wages, tips, overtime wages (including but not limited to calculation of the correct overtime or regular rate), working more than six days in seven, expense reimbursement, wage statements, payroll recordkeeping, reporting time, improper deduction of wages, failure to provide workers' compensation insurance, meal periods, rest breaks, sick leave, final pay, penalties for timely payment of wages upon discharge, waiting time penalties, PAGA penalties, unfair business practices, all claims arising out of or relating to the statutory causes of action described herein, restitution, interest, costs and expenses, attorneys' fees, declaratory relief, injunctive relief, liquidated damages, exemplary or punitive damages, civil penalties, equitable remedies, and/or pre- or post-judgment interest at any time during the Settlement Period.

2.42    "Settlement Class Notice" means the notice of class, representative, and collective action settlement and enclosed Claim Form to be provided to Settlement Class Members, without material variation from the relevant portion of Exhibit A.

2.43    "Settlement Period" means June 3, 2017 through October 17, 2019.

2.44    "Total Settlement Amount" means Eleven Million Five Hundred Thousand Dollars and zero cents ($11,500,000), which will resolve all Released Claims, and is the maximum amount that Postmates is obligated to pay under this Settlement Agreement under any circumstances to resolve and settle this Action, subject to Court approval.  The Total Settlement Amount includes all costs and fees, including, but not limited to, the Settlement Class Counsel

16

CLASS ACTION SETTLEMENT AGREEMENT AND RELEASE
Case No. CGC-18-567868

WP0042

Award, Settlement Administrator Expenses, escrow costs and expenses, Service Awards, interest, taxes and tax expenses, all payments to the Settlement Class and Plaintiffs, Settlement Class Members' tax obligations arising out of the Settlement, and the PAGA Payment.

2.45    "Void Date" means the date by which any checks issued to Settlement Class Members shall become void, i.e., on the 181st day after mailing.

### III.    SUBMISSION OF THE SETTLEMENT AGREEMENT TO THE COURT FOR PRELIMINARY AND FINAL APPROVAL

3.1    Upon execution of this Settlement Agreement, the Plaintiffs shall submit to the Court a motion for preliminary approval of the Settlement.  The motion for preliminary approval shall include a proposed plan for sending the Settlement Class Notice to Settlement Class Members within twenty (20) days after the Preliminary Approval Date (the "Notice Distribution Date"), and establishing a period of sixty (60) days from the Notice Distribution Date within which any Settlement Class Member (i) may request exclusion from the respective Settlement Class, (ii) object to the proposed Settlement, or (iii) object to Settlement Class Counsel's request for the Settlement Class Counsel Award and for Service Awards to the Plaintiffs (the Exclusion/Objection Deadline).  The motion for preliminary approval shall also request that any hearing on final approval of the Settlement and any determination on the request for a Settlement Class Counsel Award and Service Awards (the Final Approval Hearing) be set for after the Exclusion/Objection Deadline; that Settlement Class Counsel shall file a petition for the Settlement Class Counsel Award and Service Awards at least twenty-one (21) days before the Exclusion/Objection Deadline; that any opposition briefs on such motions and petitions be filed fourteen (14) days before the Final Approval Hearing; and that any reply briefs on such motions and petitions be filed seven (7) days before the Final Approval Hearing.

3.2    The Parties stipulate, for settlement purposes only, to certification of the Settlement Class under California Code of Civil Procedure § 382 and California Rules of Court, Rule 3.769, excluding the Settlement Class's PAGA Claims, on the express condition that if the Settlement is not Preliminarily or Finally Approved, this paragraph, the Settlement Agreement,

WP0043

and any class certified pursuant to the Settlement Agreement are all void *ab initio*. The Parties also agree that this stipulation is in no way an admission that class certification is proper under the standard applied for litigation purposes, and that this stipulation shall not be admissible, and may not be used by any person for any purpose whatsoever, in any legal or administrative proceeding, including but not limited to arbitrations, other than a proceeding to enforce the terms of the Agreement, as further set forth in this Agreement. Postmates expressly reserves the right to oppose certification of any purported class should the settlement fail to become final and effective.

3.3     The Settlement is not intended to and may not be deemed to affect the enforceability of any arbitration agreement between Postmates and any member of the Settlement Class, including Plaintiffs.

3.4     Settlement Class Counsel and Plaintiffs agree to cooperate in good faith and to use their best efforts to seek a stay in the <u>Lee</u> Action and to keep the <u>Albert</u> Action stayed pending Final Approval of the Settlement, and upon Final Approval of the Settlement, Settlement Class Counsel and Plaintiffs agree to dismiss the <u>Lee</u> and <u>Albert</u> Actions with prejudice.

3.5     The Parties stipulate to the form of, and agree to submit to the Court for its consideration this Settlement Agreement, and the following Exhibits to this Settlement Agreement: Settlement Class Notice (Exhibit A), [Proposed] Preliminary Approval Order (Exhibit B), and [Proposed] Second Amended Complaint (Exhibit C).

3.6     Solely for purposes of implementing this Agreement and effectuating the proposed Settlement, the Parties agree and stipulate that:

3.6.1   Plaintiffs' Counsel shall amend the letters sent on behalf of Plaintiffs to the LWDA to add any and all claims alleged in the <u>Rimler</u>, <u>Lee</u>, and <u>Albert</u> actions, and any and all potential claims necessary to effectuate the Released Claims.

3.6.2   Plaintiffs shall seek the Court's permission to file the Second Amended Complaint, without material variation from Exhibit C, and Postmates shall consent to such amendment pursuant to Cal. Rule of Court 3.1324.  The Second Amended Complaint shall be filed concurrently with the submission of the motion for preliminary approval of the Settlement Agreement so that the Second Amended Complaint may be filed or deemed filed promptly upon entry of the Preliminary Approval Order.  Obtaining the Court's approval to file the Second Amended Complaint, the subsequent prompt entry of the Second Amended Complaint, and the dismissal of the Lee and Albert Actions are material conditions of this Settlement Agreement. The Parties agree that the filing of the Second Amended Complaint will streamline the settlement process.  The Parties further agree and stipulate that the allegations in the Second Amended Complaint are deemed controverted by the answer previously filed by Postmates in response to the currently operative complaint, such that no further responsive pleading from Postmates is required.  If for any reason the Settlement Agreement does not become Final or the Effective Date does not occur, the Second Amended Complaint shall not be operative and shall be deemed withdrawn; the parties agree to submit a stipulated motion to strike the Second Amended Complaint, and agree the Court shall strike the allegations of the Second Amended Complaint, so the operative complaint in the Rimler Action shall revert to the filed complaint that preceded the Second Amended Complaint; the Lee and Albert Actions shall proceed based on the operative complaints as currently filed; and the amended letters sent to the LWDA pursuant to paragraph 3.6.1 shall be void *ab initio*.

3.6.3   The Court may enter the Preliminary Approval Order, without material variation from Exhibit B, preliminarily approving the Settlement and this Agreement.  Among other things, the Preliminary Approval Order shall grant leave to preliminarily certify the Settlement Class for settlement purposes only; approve the Plaintiffs as class representatives, appoint Settlement Class Counsel to represent the Settlement Class, and appoint the Settlement Administrator; approve the Settlement Class Notice, and the notice plan embodied in the

WP0045

Settlement Agreement, and approve them as consistent with California Code of Civil Procedure § 382 and Rules of Court, Rule 3.769 and due process; set out the requirements for disputing the information upon which Settlement Class Members' share of the Settlement will be calculated, objecting to the Settlement Agreement, excluding Settlement Class Members from the Settlement Class, all as provided in this Settlement Agreement; provide that certification of the Settlement Class and all actions associated with each certification are undertaken on the condition that each certification and other actions shall be automatically vacated and of no force or evidentiary effect if this Agreement is terminated, as provided in this Agreement, or if the Settlement does not become Final; preliminarily enjoin all Settlement Class Members, and their Legally Authorized Representatives and Plaintiffs' Counsel, unless and until they submit a timely request for exclusion pursuant to the Settlement Agreement, from attempting to effect an opt-out of a group, class, or subclass of individuals; and schedule the Final Approval Hearing.

3.7    Within 10 days of the Preliminary Approval Date, Settlement Class Counsel will notify the LWDA of the Preliminary Approval Order.

3.8    At the Final Approval Hearing, Plaintiffs shall request entry of a Final Approval order and Judgment, to be agreed upon by the Parties, the entry of which is a material condition of this Settlement and that, among other things:

3.8.1    Finally approves the Settlement as fair, reasonable, and adequate and directs its consummation pursuant to the terms of the Settlement Agreement;

3.8.2    Finds that Settlement Class Counsel and Plaintiffs adequately represented the Settlement Class for the purpose of entering into and implementing the Agreement;

3.8.3    Re-confirms the appointment of the Settlement Administrator and finds that the Settlement Administrator has fulfilled its initial duties under the Settlement;

3.8.4    Finds that the Settlement Class Notice (i) constituted the best practicable notice; (ii) constituted notice that was reasonably calculated, under the circumstances, to apprise Settlement Class Members of the pendency of the Action, and their right to exclude themselves

WP0046

from or object to the proposed settlement and to appear at the Final Approval Hearing; (iii) was reasonable and constituted due, adequate, and sufficient notice to all persons entitled to receive notice; and (iv) met all applicable requirements of California Rule of Court 3.769, due process, and any other applicable rules or law;

3.8.5    Approves the Opt-Out List and determines that the Opt-Out List is a complete list of all Settlement Class Members who have timely requested exclusion from the Settlement Class and, accordingly, shall neither share in the Settlement nor be bound by the Final Approval order and Judgment;

3.8.6    Directs that the Final Approval order and Judgment of dismissal shall be final and entered forthwith;

3.8.7    Without affecting the finality of the Final Approval order and Judgment, retains continuing jurisdiction over the Plaintiffs, the Settlement Class and Postmates as to all matters concerning the administration, consummation, and enforcement of this Settlement Agreement;

3.8.8    Adjudges that, as of the Final Approval Date, the Plaintiffs and all Settlement Class Members who have not been excluded from the Settlement Class as provided in the Opt-Out List approved by the Court, and their Legally Authorized Representatives, heirs, estates, trustees, executors, administrators, principals, beneficiaries, representatives, agents, assigns, and successors, and/or anyone claiming through them or acting or purporting to act for them or on their behalf, regardless of whether they have received actual notice of the proposed Settlement, have conclusively compromised, settled, discharged, and released the General Released Claims (in the case of the Plaintiffs), the Authorized Claimants' Released Claims (in the case of the Authorized Claimants), and Settlement Class Members' Released Claims (in the case of the Settlement Class Members) against Postmates and the Released Parties, and are bound by the provisions of this Settlement Agreement;

WP0047

3.8.9    Affirms that, notwithstanding the submission of a timely request for exclusion, Settlement Class Members will still be bound by the settlement and release of the PAGA Claims or remedies under the Judgment pursuant to <u>Arias v. Superior Court</u> (2009) 46 Cal. 4th 969, as requests for exclusion do not apply to the PAGA Claims, and further affirms that the State's claims for civil penalties pursuant to PAGA are also extinguished;

3.8.10   Declares this Agreement and the Final Approval order and Judgment to be binding on, and have res judicata and preclusive effect in, all pending and future lawsuits or other proceedings: (i) that encompass the Plaintiffs' Claims, and that are maintained by or on behalf of Plaintiffs and/or their Legally Authorized Representatives, heirs, estates, trustees, executors, administrators, principals, beneficiaries, representatives, agents, assigns, and successors, and/or anyone claiming through them or acting or purporting to act for them or on their behalf; and (ii) that encompass the Settlement Class Members' Released Claims and that are maintained by or on behalf of any Settlement Class Member who has not been excluded from the Settlement Class as provided in the Opt-Out List approved by the Court and/or his or her Legally Authorized Representatives, heirs, estates, trustees, executors, administrators, principals, beneficiaries, representatives, agents, assigns, and successors, and/or anyone claiming through them or acting or purporting to act for them or on their behalf, regardless of whether the Settlement Class Member previously initiated or subsequently initiates individual litigation, arbitration, or other proceedings encompassed by the Settlement Class Members' Released Claims, and even if such Settlement Class Member never received actual notice of the Action or this proposed Settlement;

3.8.11   Determines that the Agreement and the Settlement provided for herein, and any proceedings undertaken pursuant thereto, are not, and should not in any event be offered, received, or construed as evidence of, or a presumption, concession, or admission by, any Party of liability or non-liability or of the certifiability or non-certifiability of a litigation class or collective, or that PAGA representative claims may validly be pursued, or of any

WP0048

misrepresentation or omission in any statement or written document approved or made by any Party; provided, however, that reference may be made to this Agreement and the Settlement provided for herein in such proceedings as may be necessary to effectuate the provisions of this Agreement, as further set forth in this Agreement;

3.8.12  Directs Settlement Class Counsel to seek dismissal of the Lee and Albert Actions with prejudice within 14 days of Final Approval;

3.8.13  Orders that the preliminary approval of the Settlement, certification of the Settlement Class, and Final Approval of the proposed Settlement, and all actions associated with them, are undertaken on the condition that they shall be vacated and void *ab initio* if the Settlement Agreement is terminated or disapproved in whole or in part by the Court, or any appellate court and/or other court of review in which event the Agreement and the fact that it was entered into shall not be offered, received, or construed as an admission or as evidence for any purpose, including but not limited to an admission by any Party of liability or non-liability or of any misrepresentation or omission in any statement or written document approved or made by any Party, or of the certifiability of a litigation class or the appropriateness of maintaining a representative action, as further provided in Section XI;

3.8.14  Authorizes the Parties, with approval from the Court, to agree to and adopt such amendments, modifications, and expansions of this Agreement, including all Exhibits hereto, as (i) shall be consistent in all material respects with the Final Approval order and (ii) do not limit the rights of Settlement Class Members; and

3.8.15  Contains such other and further provisions consistent with the terms of this Settlement Agreement to which the Parties expressly consent in writing.

3.9     At the Final Approval Hearing and as a part of the final approval of this Settlement, Settlement Class Counsel will also request approval of the Plan of Allocation set forth in Section V.  Any modification to the Plan of Allocation by the Court shall not (i) affect the enforceability of the Settlement Agreement, (ii) provide any of the Parties with the right to

WP0049

terminate the Settlement Agreement, or (iii) impose any obligation on Postmates to increase the consideration paid in connection with the Settlement.

3.10    At the Final Approval Hearing, Settlement Class Counsel may also request entry of an Order approving the Settlement Class Counsel Award and for the Service Awards to the Plaintiffs.  Any such Settlement Class Counsel Award or Service Award shall be paid exclusively from the Total Settlement Payment.  In no event shall any Released Party otherwise be obligated to pay for any attorneys' fees and expenses or Service Awards.  The disposition of Settlement Class Counsel's application for a Settlement Class Counsel Award, and for Service Awards, is within the sound discretion of the Court and is not a material term of this Settlement Agreement, and it is not a condition of this Settlement Agreement that such application be granted.  Any disapproval or modification of such application by the Court shall not (i) affect the enforceability of the Settlement Agreement, (ii) provide any of the Parties with the right to terminate the Settlement Agreement, or (iii) increase the consideration any Released Party pays in connection with the Settlement.

3.11    In no event shall any Released Party be obligated to pay settlement administration expenses beyond those provided for in this Agreement.

3.12    Within 10 days after entry of Judgment, Settlement Class Counsel will provide a copy of the Judgment to the LWDA.

## IV.    SETTLEMENT CONSIDERATION

4.1    The Total Settlement Amount is $11,500,000.  This is an "all in" number that will resolve all Released Claims, and which includes, without limitation, all monetary benefits and payments to the Settlement Class and Plaintiffs, Service Awards, Settlement Class Counsel Award, Settlement Administrator Expenses, and the PAGA Payment, and all claims for interest, fees, and costs.  Under no circumstances shall Postmates be required to pay anything more than the Total Settlement Amount.  In no event shall Postmates be liable for making any payments

WP0050

under this Settlement, or for providing any relief to Settlement Class Members, before the deadlines set forth in this Agreement.

4.2    The Plaintiffs and all Settlement Class Members who receive a payment of any kind from the Total Settlement Amount (including, in the case of the Plaintiffs, Service Awards) expressly acknowledge that such payments shall be considered non-wages for which an IRS Form 1099 will be issued, if required. The Plaintiffs and all Settlement Class Members who receive a payment of any kind from the Total Settlement Amount agree to timely pay in full all of the federal, state, and municipal income taxes owed on such payments.

4.3    The terms of this Agreement relating to the Service Awards and Settlement Class Counsel Award were not negotiated by the Parties before full agreement was reached as to all other material terms of the proposed Settlement, including, but not limited to, any terms relating to the relief to the Settlement Class.  Postmates agrees to the amount of Service Awards (if any) granted by the Superior Court.  The Plaintiffs and Settlement Class Counsel agree not to seek Service Awards in excess of the amounts described in Paragraph 2.32.

4.4    Settlement Class Counsel agrees not to seek an award of attorneys' fees, costs and expenses from the Court in excess of one third (1/3) of the Total Settlement Amount. Postmates agrees to the amount of attorneys' fees, costs and expenses (if any) granted by the Superior Court.

4.5    The payment of the Settlement Class Counsel Award, the Service Awards, the Settlement Administrator Expenses, the Individual Settlement Payments, and the PAGA Payment shall be made by the Settlement Administrator from the Total Settlement Amount within thirty (30) days after the Effective Date.

4.6    The Settlement Administrator shall pay the Settlement Class Counsel Award by check, payable to "Lichten & Liss-Riordan, P.C."  Settlement Class Counsel shall provide the Settlement Administrator notice of receipt of the Settlement Class Counsel Award.

**V.    FUNDING AND ALLOCATION OF THE SETTLEMENT**

25
CLASS ACTION SETTLEMENT AGREEMENT AND RELEASE
Case No. CGC-18-567868

WP0051

5.1     Within fourteen (14) calendar days following the Effective Date, Postmates shall provide the Total Settlement Amount ($11,500,000) to the Settlement Administrator.  The Settlement Administrator shall thereafter distribute the funds in the manner and at the times set forth in this Agreement.

5.2     To receive an Individual Settlement Payment from the Total Settlement Amount, a Settlement Class Member or his or her Legally Authorized Representative must timely submit a Claim Form that satisfies the requirements of paragraph 5.3, must not have submitted a request for exclusion, and must be eligible for a payment under the Plan of Allocation.

5.3     A Claim Form is timely if it is postmarked by the Bar Date and mailed or submitted as an attachment to an email to the Settlement Administrator at the address in the Settlement Class Notice, or if it is submitted online to the Settlement Administrator, in accordance with the online submission instructions to be provided by the Settlement Administrator, by the Bar Date.  The Claim Form must be signed (electronically, if submitted via online portal) under penalty of perjury.  To be valid, a Claim Form must be signed without any deletion or amendment to its language regarding the release of FLSA claims and without any deletion or amendment to any other portion.

5.4     Settlement Class Members who timely submit a Claim Form will receive their proportionate share of the Total Settlement Amount.  No Settlement Class Member who timely submits a Claim Form will receive less than $10.

5.5     Settlement Class Members are not eligible to receive any compensation other than the Individual Settlement Payment.

5.6     The Settlement Administrator shall calculate and distribute the Individual Settlement Payments for the Settlement Class Members within thirty (30) days following the Effective Date, provided Postmates has provided the Total Settlement Amount to the Settlement Administrator in accordance with Paragraph 5.1.

WP0052

5.7     Individual Settlement Payments shall be tied to the following distribution formula:

> Settlement class members will be awarded points proportional to the estimated number of miles driven while using the Postmates application as a courier, with one point for every estimated mile driven. Settlement class members who either opt out of arbitration, initiate arbitration, or demonstrate in writing an interest in initiating an arbitration demand against Postmates prior to October 17, 2019 will have their points doubled for purposes of this distribution formula (to account for, from plaintiffs' perspective, these drivers' greater likelihood of having their claims pursued, in light of Postmates' arbitration clauses).

Postmates will produce Settlement Class Information needed for the allocation to be calculated. The Total Settlement Amount is non-reversionary.

5.8     Following distribution of the Individual Settlement Payments to Settlement Class Members, any Settlement Class Members who received checks for more than $100 that remain uncashed more than 60 days after distribution will receive a reminder to cash their check.  All funds not claimed prior to the Void Date (i.e. all funds from uncashed checks and any remaining funds in the Dispute Resolution Fund) shall be redistributed to the Settlement Class Members who received and cashed their Individual Settlement Payments (as well as to Settlement Class Members who submitted late claims by that date, to the extent that settlement funds remain available to pay these late claimants).  These unclaimed funds shall be redistributed pursuant to the same formula described in Paragraph 5.7.  These residual funds will only be distributed to Settlement Class Members for whom this second payment would be at least $50.  The value of any uncashed checks following this residual distribution will be donated on a *cy pres* basis to Legal Aid at Work.

5.9     The Individual Settlement Payments received shall be reported by the Settlement Administrator to the applicable governmental authorities on IRS Form 1099s (if required).  The portions allocated to Service Awards shall likewise be reported on IRS Form 1099s by the Settlement Administrator.  The Settlement Administrator shall be responsible for issuing copies of IRS Form 1099s for the Plaintiffs and Settlement Class Members.

## VI.     NOTICE PROCEDURES

27

CLASS ACTION SETTLEMENT AGREEMENT AND RELEASE
Case No. CGC-18-567868

WP0053

6.1     No more than fourteen (14) calendar days after entry of the Preliminary

Approval Order, Postmates shall provide the Settlement Administrator with the Settlement

Class Information for purposes of sending the Settlement Class Notice to Settlement Class

Members.

6.2     No more than twenty (20) calendar days after entry of the Preliminary Approval

Order (on the Notice Distribution Date), the Settlement Administrator shall send the Settlement

Class Notice to the Settlement Class Members, via electronic mail.

6.3     The Settlement Class Notice will inform Settlement Class Members of their right

to request exclusion from the Settlement, of their right to object to the Settlement, and of their

right to dispute the information upon which their share of the Settlement will be calculated and

the claims to be released.

6.4     The Settlement Class Notice shall include an explanation for how the Estimated

Miles will be used to calculate the Individual Settlement Payments.  The Settlement

Administrator's determination of the amount of any Settlement Class Member's Estimated

Miles shall be binding upon the Settlement Class Member, and the Parties. There will be a

presumption that Postmates' records are correct, absent evidence produced by a Settlement

Class Member to the contrary.

6.5     If any Settlement Class Notice sent via electronic mail to any Settlement Class

Member is undeliverable, the Settlement Administrator shall, within seven (7) days of an

undeliverable email, mail the Settlement Class Notice to each Settlement Class Member whose

Settlement Class Notice was undeliverable.  Before mailing, the Settlement Administrator shall

make a good-faith attempt to obtain the most-current names and postal mail addresses for all

Settlement Class Members to receive such postal mail, including cross- checking the names

and/or postal mail addresses it received from Postmates, as well as any other sources, with

appropriate databases (e.g., the National Change of Address Database) and performing further

reasonable searches (e.g., through Lexis/Nexis) for more-current names and/or postal mail

WP0054

addresses for Settlement Class Member.  All Settlement Class Members' names and postal mail addresses obtained through these sources shall be protected as confidential and not used for purposes other than the notice and administration of this Settlement.  The Settlement Administrator shall exercise its best judgment to determine the current mailing address for each Settlement Class Member. The address determined by the Settlement Administrator as the current mailing address shall be presumed to be the best mailing address for each Settlement Class Member.  The Bar Date and Exclusion/Objection Deadlines shall be extended as necessary in order to ensure that the Settlement Class Member receiving a mailed notice has sixty (60) days to submit a claim form or to opt-out or object to the Settlement.

6.6     If any Settlement Class Notice to a Settlement Class Member is returned to the Settlement Administrator with a forwarding address, the Settlement Administrator shall forward the postal mailing to that address.  For any remaining returned postal mailings, the Settlement Administrator shall make a good-faith search of an appropriate database (as described in the preceding paragraph), and postal mailings shall be forwarded to any new postal mail address obtained through such a search.  In the event that any Settlement Class Notice is returned as undeliverable a second time, no further postal mailing shall be required.  The Settlement Administrator shall maintain a log detailing the instances Settlement Class Notices are returned as undeliverable.

6.7     At least two reminders will be sent to Settlement Class Members following the initial Settlement Class Notice, and the parties will agree to any further reminders that may be reasonably necessary to assure adequate opportunity for class members to participate in the settlement.  These reminders will be sent to Settlement Class Members who have not already submitted a claim form, opt-out request, or objection.  These reminders will be sent via email to those Settlement Class Members whose emailed notices were not returned as undeliverable and via mail for those Settlement Class Members who received their initial Settlement Class Notice in the mail.  Settlement class members who are expected to have their points doubled pursuant

WP0055

to Paragraph 5.7 will receive at least one additional reminder (for a total of at least three reminders) advising them of their right to opt-out and continue to pursue their claims in arbitration or to release their claims in order to participate in the settlement.

6.8     The Parties agree that the procedures set forth in this Section constitute reasonable and the best practicable notice under the circumstances and an appropriate and sufficient effort to locate current addresses for Settlement Class Members such that no additional efforts to do so shall be required.

6.9     The Settlement Administrator will provide Settlement Class Notice by, at a minimum, (i) electronic mail notice without material variation from the form attached as the relevant portion of Exhibit A; (ii) if necessary in accordance with Paragraph 6.7, first-class mail (where available) notice without material variation from the relevant portion of Exhibit A; and (iii) a content-neutral settlement website accessible to Settlement Class Members managed by the Settlement Administrator, and approved by counsel for the Parties, which will contain further information about the Settlement, including relevant pleadings.  The Settlement Class Notice shall comply with California Rule of Court 3.769 and due process.

6.10     Prior to the Final Approval Hearing, the Settlement Administrator shall prepare a declaration of due diligence and proof of dissemination with regard to the mailing of the Settlement Class Notice, and any attempts by the Settlement Administrator to locate Settlement Class Members, its receipt of valid Claim Forms, Opt-outs, and Objections (and copies of same), and its inability to deliver the Settlement Class Notice to Settlement Class Members due to invalid addresses ("Due Diligence Declaration"), to Settlement Class Counsel and counsel for Postmates for presentation to the Court.  Settlement Class Counsel shall be responsible for filing the Due Diligence Declaration with the Court.

6.11     If any individual whose name does not appear in the Settlement Class Information, believes that he or she is a Settlement Class Member, he or she shall have the opportunity to dispute his or her exclusion from the Settlement Class.  If an individual believes

WP0056

he or she is a Settlement Class Member, he or she must notify the Settlement Administrator by

mail, email, or telephone within thirty (30) days after the distribution of the Settlement Class

Notice.  The Parties will meet and confer regarding any such individuals in an attempt to reach

an agreement as to whether any such individual should be regarded as a Settlement Class

Member.  If the Parties so agree, such an individual will have all of the same rights as any other

Settlement Class Member under this Agreement.  In the event that the Parties agree that the

individual is a Settlement Class Member, the Individual Settlement Payment to such individual

shall be disbursed from the Dispute Resolution Fund, as long as sufficient money is left in the

Dispute Resolution Fund.  Under no circumstances will any action under this paragraph increase

the Total Settlement Amount.

### VII.    PROCEDURES FOR REQUESTS FOR EXCLUSION

7.1    Settlement Class Members (with the exception of the Plaintiffs) may opt out of

the Settlement.  Those who wish to exclude themselves (or "opt out") from the Settlement Class

must submit timely, written requests for exclusion.  To be effective, such a request must include

the Settlement Class Member's name, address, and telephone number; a clear and unequivocal

statement that the Settlement Class Member wishes to be excluded from the Settlement Class;

and the signature of the Settlement Class Member or the Legally Authorized Representative

(who is not the Settlement Class Member's counsel) of the Settlement Class Member.  The

request must be mailed or emailed to the Settlement Administrator at the address provided in the

Settlement Class Notice and must be postmarked or emailed no later than the

Exclusion/Objection Deadline.  The date of the postmark shall be the exclusive means used to

determine whether a request for exclusion has been timely submitted.  Requests for exclusion

must be exercised individually by the Settlement Class Member, not as or on behalf of a group,

class, or subclass, except that such individual exclusion requests may be submitted by the

Settlement Class Member's Legally Authorized Representative who is not the Settlement Class

Member's counsel.  All requests for exclusion must be submitted by the requesting Settlement

WP0057

Class Member (or their Legally Authorized Representative who is not the Settlement Class Member's counsel), even if the Settlement Class Member is represented by counsel.

7.2     The Settlement Administrator shall promptly log each request for exclusion that it receives and provide copies of the log and all such requests for exclusion to Settlement Class Counsel and counsel for Postmates upon request.  The Settlement Administrator shall automatically notify Settlement Class Counsel and counsel for Postmates if and when the number of timely-submitted requests for exclusion reaches 250.

7.3     The Settlement Administrator shall prepare a list of all persons who timely and properly requested exclusion from the Settlement Class (the Opt-Out List) and shall, before the Final Approval Hearing, submit an affidavit to the Court attesting to the accuracy of the list.

7.4     All Settlement Class Members who are not included in the Opt-Out List approved by the Court shall be bound by this Settlement Agreement, and all their claims shall be dismissed with prejudice and released as provided for herein, even if they never received actual notice of the Action or this proposed Settlement.

7.5      In the event that a Settlement Class Member submits a request for exclusion that the parties do not believe was timely and/or properly submitted, the Court shall determine whether the request for exclusion was timely and properly submitted.

7.6     The Plaintiffs agree not to request exclusion from the Settlement Class.

7.7     Settlement Class Members may request exclusion from the Settlement.  Any such Settlement Class Member may also object to the PAGA portion of the Settlement.

7.8     Notwithstanding the submission of a timely request for exclusion, Settlement Class Members will still be bound by the settlement and release of the PAGA Claims or remedies under the Judgment pursuant to Arias v. Superior Court (2009) 46 Cal. 4th 969. Requests for exclusion do not apply to the PAGA Claims, and will not be effective to preclude the release of the PAGA Claims.

WP0058

7.9     Settlement Class Members may object to or opt out of the Settlement, but may not do both.  Any Settlement Class Member who submits a timely request for exclusion may not file an objection to the Settlement, submit a Claim, or receive a Settlement Payment, and shall be deemed to have waived any rights or benefits under the Settlement Agreement.

7.10     No later than ten (10) business days after the Exclusion/Objection Deadline, the Settlement Administrator shall provide to Settlement Class Counsel and counsel for Postmates the Opt-Out List together with copies of the exclusion requests.  Notwithstanding any other provision of this Settlement Agreement, if more than two hundred fifty (250) Settlement Class Members exercise their right to opt out of the Settlement, Postmates at its sole and absolute discretion may rescind and revoke the Settlement Agreement by sending written notice that it revokes the Settlement pursuant to this Paragraph to Settlement Class Counsel within fourteen (14) business days following receipt of the Opt-Out List.

## VIII.   PROCEDURES FOR OBJECTIONS

8.1     Any Settlement Class Member who wishes to object to the fairness, reasonableness, or adequacy of this Agreement or the proposed Settlement must provide to the Settlement Administrator and/or file with the Court, a timely statement of the objection.  The Settlement Administrator shall promptly forward any objections to Settlement Class Counsel and counsel for Postmates, who shall ensure that the objections are filed with the Court.

8.2     All written objections must (a) clearly identify the case name and number, (b) be submitted to the Settlement Administrator by mail or email and/or to the Court (either by mailing them to the Civil Clerk, Superior Court of California, San Francisco County, 400 McAllister St., Room 103, San Francisco, CA 94102, or by filing them in person at the same address), and (c) be filed, emailed,  or postmarked no later than the Exclusion/Objection Deadline.  The filing date, the date of the postmark on the return-mailing envelope, or the date of the email shall be the exclusive means used to determine whether the written objection has

been timely submitted.  If an objection is submitted using more than one method (e.g. if it is filed and mailed or mailed and emailed), the earlier date shall be used to determine timeliness.

8.3     The objection must contain at least the following: (i) the objector's full name, address, telephone, and signature; (ii) a clear reference to the Action; (iii) a statement of the basis for each objection argument; and (iv) a statement whether the objecting person or entity intends to appear at the Final Approval Hearing, either in person or through counsel and, if through counsel, a statement identifying that counsel by name, bar number, address, and telephone number.  All objections shall be signed by the objecting Settlement Class Member (or his Legally Authorized Representative), even if the Settlement Class Member is represented by counsel.

8.4     The right to object to the proposed Settlement must be exercised individually by a Settlement Class Member.  Attempted collective, group, class, or subclass objections shall be ineffective and disregarded.  Individual objections may be submitted by a Settlement Class Member's Legally Authorized Representative (who is not the Settlement Class member's counsel).

8.5     Settlement Class Members who object to the proposed Settlement shall remain Settlement Class Members, and shall be deemed to have voluntarily waived their right to exclude themselves from the Settlement Class or pursue an independent remedy against Postmates and the Released Parties.  To the extent any Settlement Class Member objects to the proposed Settlement Agreement, and such objection is overruled in whole or in part, such Settlement Class Member will be forever bound by the Final Approval order and Judgment.

8.6     It shall be Settlement Class Counsel's sole responsibility to respond to any objections made with respect to any application for the Settlement Class Counsel Award and Service Awards.

WP0060

## IX.   RELEASES

9.1     The Released Claims against each and all of the Released Parties shall be released and dismissed with prejudice and on the merits (without an award of costs to any party other than as provided in this Agreement) upon entry of the Final Approval order and Judgment.

9.2     As of the Final Approval Date, the Plaintiffs and all Settlement Class Members who have not been excluded from the Settlement Class as provided in the Opt-Out List, individually and on behalf of their Legally Authorized Representatives, heirs, estates, trustees, executors, administrators, representatives, agents, successors, and assigns, and anyone claiming through them or acting or purporting to act on their behalf, agree to forever release, discharge, hold harmless, and covenant not to sue each and all of the Released Parties from each and all of the Plaintiffs' General Released Claims (in the case of the Plaintiffs), the Authorized Claimants' Released Claims (in the case of the Authorized Claimants), and the Settlement Class Members' Released Claims (in the case of the Settlement Class Members), and by operation of the Judgment becoming Final shall have fully and finally released, relinquished, and discharged all such claims against each and all of the Released Parties; and they further agree that they shall not now or hereafter initiate, maintain, or assert any of the General Released Claims (in the case of the Plaintiffs), the Authorized Claimants' Released Claims (in the case of the Authorized Claimants), or the Settlement Class Members' Released Claims (in the case of the Settlement Class Members), against the Released Parties in any other court action or before any administrative body, tribunal, arbitration panel, or other adjudicating body.  Without in any way limiting the scope of the releases described in Paragraphs 2.16, 2.29, and 2.41, or in the remainder of this Section, this release covers, without limitation, any and all claims for attorneys' fees, costs, or disbursements incurred by Settlement Class Counsel, or by the Plaintiffs or Settlement Class Members, or any of them, in connection with or related in any manner to the Action, the Settlement of the Action, and/or the Released Claims, except to the extent otherwise specified in this Agreement.

WP0061

9.3     As of the Final Approval Date, the Plaintiffs shall be permanently barred and enjoined from initiating, asserting, or prosecuting against the Released Parties in any federal or state court or tribunal any and all General Released Claims.

9.4     The Plaintiffs and the Settlement Class Members expressly acknowledge that they are familiar with principles of law such as Section 1542 of the California Civil Code, which provides:

A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR.

With respect to the Settlement Class Released Claims, as described in Paragraph 2.41, each Settlement Class Member who has not been excluded from the Settlement Class as provided in the Opt-Out List shall be deemed to have expressly, knowingly, and voluntarily waived and relinquished, to the fullest extent permitted by law, the provisions, rights, and benefits he or she may otherwise have had pursuant to Section 1542 of the California Civil Code and all similar federal, state, and local laws, rights, rules, and legal principles of any other jurisdiction that may be applicable herein.  In connection with the release, the Settlement Class Members acknowledge that they are aware that they may hereafter discover claims presently unknown and unsuspected or facts in addition to or different from those which they now know or believe to be true with respect to matters released herein.  Nevertheless, the Settlement Class Members acknowledge that a portion of the consideration received herein is for a release with respect to unknown damages and complaints, whether resulting from known injuries and consequences or from unknown injuries or unknown consequences of known or unknown injuries, and state that it is the intention of the Settlement Class Members in agreeing to this release fully, finally, and forever to settle and release all matters and all claims that exist, hereafter may exist, or might

WP0062

have existed (whether or  not previously or currently asserted in any action), constituting the Settlement Class Members' Released Claims.

9.5     With respect to those claims that could be asserted under the FLSA, an Authorized Claimant's timely and valid submission of a signed Claim Form shall be deemed as that Authorized Claimant's Consent to Join and release of all such matters and claims.  The timely and valid submission of a signed Claim Form shall fully, finally and forever settle and release all such matters and claims as of the Effective Date.

9.6     With respect to the General Released Claims, as described in Paragraph 2.16, each Plaintiff shall be deemed to have expressly, knowingly, and voluntarily waived and relinquished, to the fullest extent permitted by law, the provisions, rights, and benefits he or she may otherwise have had pursuant to Section 1542 of the California Civil Code and all similar federal, state, and local laws, rights, rules, and legal principles of any other jurisdiction that may be applicable herein. In connection with the release, Plaintiffs acknowledge that they are aware that they may hereafter discover claims presently unknown and unsuspected or facts in addition to or different from those which they now know or believe to be true with respect to matters released herein.  Nevertheless, Plaintiffs acknowledge that a portion of the consideration received herein is for a release with respect to unknown damages and complaints, whether resulting from known injuries and consequences or from unknown injuries or unknown consequences of known or unknown injuries, and state that it is the intention of Plaintiffs in agreeing to this release fully, finally, and forever to settle and release all matters and all claims that exist, hereafter may exist, or might have existed (whether or not previously or currently asserted in any action), constituting the General Released Claims.

9.7     Each Plaintiff further acknowledges, agrees, and understands that: (i) he or she has read and understands the terms of this Agreement; (ii) he or she has been advised in writing to consult with an attorney before executing this Agreement; (iii) he or she has obtained and considered such legal counsel as he or she deems necessary; (iv) he or she has been given

twenty-one (21) days to consider whether or not to enter into this Agreement (although he or she may elect not to use the full 21 day period at his option).

9.8    Subject to Court approval, the Plaintiffs and all Settlement Class Members who have not been excluded from the Settlement Class as provided in the Opt-Out List, shall be bound by this Settlement Agreement, and all of the Released Claims shall be dismissed with prejudice and released, even if they never received actual notice of the Action or this Settlement

## X.    ADMINISTRATION OF THE SETTLEMENT FUND

10.1    The Settlement Administrator or its authorized agents in consultation with the Parties and subject to the supervision, direction, and approval of the Court, shall calculate the allocation of and oversee the distribution of the Total Settlement Amount.

10.2    The Total Settlement Amount shall be applied as follows:

10.2.1  To pay the costs and expenses incurred in connection with providing Settlement Class Notice to potential Settlement Class Members, locating Settlement Class Members' last-known postal mail addresses and processing any objections, requests for exclusion or challenges to calculations of Estimated Miles;

10.2.2  After the Effective Date as provided in Paragraph 2.10, and subject to the approval and further order(s) of the Court, to pay Plaintiffs Service Awards based on contributions and time expended assisting in the litigation, up to the amounts described in Paragraph 2.29.

10.2.3  After the Effective Date as provided in Paragraph 2.10, and subject to the approval and further order(s) of the Court, to pay the Settlement Class Counsel Award as ordered by the Court;

10.2.4  After the Effective Date as provided in Paragraph 2.10, and subject to the approval and further order(s) of the Court, to distribute 75% of the PAGA Payment to the LWDA;

WP0064

10.2.5   After the Effective Date as provided in Paragraph 2.10, and subject to the approval and further order(s) of the Court, to distribute the Individual Settlement Payments from the Total Settlement Amount for the benefit of the Settlement Class pursuant to the Plan of Allocation, or as otherwise ordered by the Court.

10.3   If any portion of the Total Settlement Amount is not successfully redistributed to Settlement Class Members after the initial Void Date (i.e. checks are not cashed or checks are returned as undeliverable after the second distribution), then after the Void Date for redistributed checks, the Settlement Administrator shall void the check and shall direct such unclaimed funds to be paid to Legal Aid at Work.  Such unclaimed funds may also be used to resolve disputes regarding the distribution of settlement funds.

10.4   Settlement Class Members who are not on the Opt-Out List approved by the Court, shall be subject to and bound by the provisions of the Settlement Agreement, the releases contained herein, and the Judgment with respect to all Settlement Class Members' Released Claims, regardless of whether they obtain any distribution from the Total Settlement Amount.

10.5   Payment from the Total Settlement Amount shall be deemed conclusive of compliance with this Settlement Agreement as to all Settlement Class Members.

10.6   No Settlement Class Member shall have any claim against the Plaintiffs, Settlement Class Counsel, or the Settlement Administrator based on distributions made substantially in accordance with this Settlement Agreement and/or orders of the Court.  No Settlement Class Member shall have any claim against Postmates or its counsel relating to distributions made under this Settlement.

## XI.   EFFECT OF DISAPPROVAL, CANCELLATION, OR TERMINATION OF SETTLEMENT AGREEMENT

11.1   If the Court does not approve the Settlement as set forth in this Settlement Agreement, or if the Court enters the Judgment and appellate review is sought, and on such review, the entry of Judgment is vacated, modified in any way, or reversed, or if the Final Approval order does not otherwise become Final, then this Settlement Agreement shall be

WP0065

cancelled, terminated, and void *ab initio*, unless all Parties, in their sole discretion within thirty (30) days from the date such ruling becomes final, provide written notice to all other Parties hereto of their intent to proceed with the Settlement under the terms of the Judgment as it may be modified by the Court or any appellate court.

11.2    Postmates shall have the right to withdraw from the Settlement if the number of Settlement Class Members who attempt to exclude themselves from the Settlement Class equals or exceeds 250. If Postmates chooses, pursuant to its sole and absolute discretion, to exercise this right, it must do so within fourteen (14) days of receipt of the Opt-Out List as provided in Paragraphs 7.2 & 7.9, by providing written notice to Settlement Class Counsel.

11.3    In the event that: (i) the Settlement is not approved, is overturned, or is materially modified by the Court or on appeal, (ii) the Judgment does not become Final, or (iii) this Settlement Agreement is terminated, cancelled, or fails to become effective for any reason, then: (a) the Parties stipulate and agree that the Settlement, this Agreement, the Settlement Class Information, the Opt-Out List, and all documents exchanged and filed in connection with the Settlement shall be treated as inadmissible mediation communications under Cal. Evid. Code §§ 1115 et seq., (b) the Settlement shall be without force and effect upon the rights of the Parties hereto, and none of its terms shall be effective or enforceable, with the exception of this Paragraph, which shall remain effective and enforceable; (c) the Parties shall be deemed to have reverted *nunc pro tunc* to their respective status prior to execution of this Agreement, including with respect to any Court-imposed deadlines; (d) all Orders entered in connection with the Settlement, including the certification of the Settlement Class, shall be vacated without prejudice to any Party's position on the issue of class certification, the issue of amending the complaint, or any other issue, in this Action or any other action, and the Parties shall be restored to their litigation positions existing on the date of execution of this Agreement; and (e) the Parties shall proceed in all respects as if the Settlement Agreement and related documentation and orders had not been executed, and without prejudice in any way from the

negotiation or fact of the Settlement or the terms of the Settlement Agreement.  The Settlement Agreement, the Settlement, all documents, orders, and evidence relating to the Settlement, the fact of their existence, any of their terms, any press release or other statement or report by the Parties or by others concerning the Settlement Agreement, the Settlement, their existence, or their terms, and any negotiations, proceedings, acts performed, or documents executed pursuant to or in furtherance of the Settlement Agreement or the Settlement shall not be admissible in any proceeding, and shall not be offered, received, or construed as evidence of a presumption, concession, or an admission of liability, of unenforceability of any arbitration  agreement, of the certifiability of a litigation class, or of any misrepresentation or omission in any statement or written document approved or made, or otherwise used by any Person for any purpose whatsoever, in any trial of this Action or any other action or proceedings.  Plaintiffs, Settlement Class Counsel and the Settlement Administrator shall return to counsel for Postmates all copies of the Settlement Class Information and Opt-Out Lists and shall not use or disclose the Settlement Class Information or Opt-Out List for any purpose or in any proceeding.

11.4    Postmates does not agree or consent to certification of the Settlement Class for any purpose other than to effectuate the Settlement of the Action.  If this Settlement Agreement is terminated pursuant to its terms, or the Effective Date for any reason does not occur, all Orders certifying the Settlement Class for purposes of effecting this Settlement Agreement, and all preliminary and/or final findings regarding the Settlement Class shall be void *ab initio* and automatically vacated upon notice to the Court, the Action shall proceed as though the Settlement Class had never been certified pursuant to this Settlement Agreement and such findings had never been made, and the Action shall revert *nunc pro tunc* to the procedural status quo as of the date and time immediately before the execution of the Settlement Agreement, in accordance with this Settlement Agreement.

WP0067

## XII.   ADDITIONAL PROVISIONS

12.1    In the event that one or more of the Parties to this Settlement Agreement institutes any legal action, arbitration, or other proceeding against any other party to enforce the provisions of this Settlement Agreement or to declare rights and/or obligations under this Settlement Agreement, the prevailing party shall be entitled to recover from the unsuccessful party reasonable attorneys' fees and costs, including expert witness fees incurred in connection with any enforcement actions.

12.2    Unless otherwise specifically provided here, all notices, demands, or other communications given hereunder shall be in writing and shall be deemed to have been duly given as of the third business day after mailing by United States registered or certified mail, return receipt requested, addressed as follows:

To Plaintiffs and the Settlement Class:

> Shannon Liss-Riordan, Esq.
> Lichten & Liss-Riordan, P.C.
> 729 Boylston Street
> Suite 2000
> Boston, MA 02116

To Defendants:

> Theane Evangelis, Esq.
> Gibson, Dunn & Crutcher LLP
> 333 South Grand Avenue
> Los Angeles, CA 90071-3197

12.3    All of the Exhibits to this Settlement Agreement are an integral part of the Settlement and are incorporated by reference as though fully set forth herein.

12.4    The Parties agree that the recitals are contractual in nature and form a material part of this Settlement Agreement.

12.5    The Plaintiffs and Settlement Class Counsel acknowledge that an adequate factual record has been established that supports the Settlement and hereby waive any right to conduct further discovery to assess or confirm the Settlement.  Notwithstanding the prior

WP0068

sentence, the Parties agree to reasonably cooperate with respect efforts to identify the last-known addresses of Settlement Class Members.

12.6    Unless otherwise noted, all references to "days" in this Agreement shall be to calendar days.  In the event any date or deadline set forth in this Agreement falls on a weekend or federal legal holiday, such date or deadline shall be on the first business day thereafter.

12.7    This Agreement supersedes all prior negotiations and agreements and may be amended or modified only by a written instrument signed by counsel for all Parties or the Parties' successors-in-interest.

12.8    The Parties reserve the right, subject to the Court's approval, to agree to any reasonable extensions of time that might be necessary to carry out any of the provisions of this Agreement. Such extensions must be in writing to be enforceable.

12.9    The Settlement Agreement, the Settlement, the fact of the Settlement's existence, any of terms of the Settlement Agreement, any press release or other statement or report by the Parties or by others concerning the Settlement Agreement or the Settlement, and any negotiations, proceedings, acts performed, or documents executed pursuant to or in furtherance of the Settlement Agreement or the Settlement: (i) may not be deemed to be, may not be used as, and do not constitute an admission or evidence of the validity of any Released Claims or of any wrongdoing or liability of Postmates; (ii) may not be deemed to be, may not be used as, and do not constitute an admission or evidence of any fault, wrongdoing, or omission by Postmates in any trial, civil, criminal, arbitration, or administrative proceeding of the Action or any other action or proceedings in any court, administrative agency, arbitral forum or other tribunal; (iii) may not be used as evidence of any waiver of, unenforceability of, or as a defense to any Postmates arbitration agreement; and (iv) may not be used as evidence in any class certification proceeding.

12.10    The Released Parties shall have the right to file the Settlement Agreement, the Final Approval order and Judgment, and any other documents or evidence relating to the

Settlement in any action that may be brought against them in order to support a defense or counterclaim based on principles of *res judicata*, collateral estoppel, release, good-faith settlement, judgment bar, reduction, or any other theory of claim preclusion or issue preclusion or similar defense or counterclaim.

12.11   The Parties to the Settlement Agreement agree that the Total Settlement Amount and the other terms of the Settlement were negotiated at arm's length and in good faith by the Parties, resulted from an arm's-length mediation session facilitated by Tripper Ortman, and reflect a settlement that was reached voluntarily based upon adequate information and sufficient discovery and after consultation with experienced legal counsel.

12.12   The Plaintiffs and Settlement Class Counsel have concluded that the Settlement set forth herein constitutes a fair, reasonable, and adequate resolution of the claims that the Plaintiffs asserted against Postmates, including the claims on behalf of the Settlement Class, and that it promotes the best interests of the Settlement Class.

12.13   To the extent permitted by law, all agreements made and orders entered during the course of the Action relating to the confidentiality of information shall survive this Settlement Agreement.

12.14   The Parties agree that Plaintiffs and Settlement Class Counsel are not required to return any documents or data produced by Postmates until the final resolution of the Action. Within sixty (60) days following the Effective Date, Settlement Class Counsel shall return to Postmates all documents and data produced in the Action or in connection with the Parties' mediation, or confirm in writing that all such documents have been destroyed.

12.15   The waiver by one Party of any breach of this Settlement Agreement by any other Party shall not be deemed a waiver of any other prior or subsequent breach of this Settlement Agreement.

12.16   This Settlement Agreement, including its Exhibits, constitutes the entire agreement among the Parties, and no representations, warranties, or inducements have been

made to any Party concerning this Settlement Agreement or its Exhibits, other than the representations, warranties, and covenants contained and memorialized in this Settlement Agreement and its Exhibits.

12.17  This Settlement Agreement may be executed in one or more counterparts.  All executed counterparts and each of them shall be deemed to be one and the same instrument provided that counsel for the Parties to this Settlement Agreement shall exchange among themselves original signed counterparts.

12.18  This Settlement Agreement may be signed with a facsimile signature and in counterparts, each of which shall constitute a duplicate original.

12.19  The Parties hereto and their respective counsel agree that they will use their best efforts to obtain all necessary approvals of the Court required by this Settlement Agreement.

12.20  This Settlement Agreement shall be binding upon and shall inure to the benefit of the successors and assigns of the Parties hereto, including any and all Released Parties and any corporation, partnership, or other entity into or with which any Party hereto may merge, consolidate, or reorganize.

12.21  This Settlement Agreement has been negotiated among and drafted by Settlement Class Counsel and Postmates' Counsel.  Named Plaintiffs, Settlement Class Members, and Postmates shall not be deemed to be the drafters of this Settlement Agreement or of any particular provision, nor shall they argue that any particular provision should be construed against its drafter or otherwise resort to the *contra proferentem* canon of construction. Accordingly, this Settlement Agreement should not be construed in favor of or against one Party as the drafter, and the Parties agree that the provisions of California Civil Code § 1654 and common law principles of construing ambiguities against the drafter shall have no application. All Parties agree that counsel for the Parties drafted this Settlement Agreement during extensive arm's-length negotiations.  No parol or other evidence may be offered to explain, construe,

WP0071

contradict, or clarify its terms, the intent of the Parties or their counsel, or the circumstances under which this Settlement Agreement was made or executed.

12.22   Except where this Settlement Agreement itself provides otherwise, all terms, conditions, and Exhibits are material and necessary to this Settlement Agreement and have been relied upon by the Parties in entering into this Settlement Agreement.

12.23   This Settlement Agreement shall be governed by California law.  Any action or dispute based on this Settlement Agreement, including any action or to enforce any of the terms of this Settlement Agreement, shall be commenced and maintained only in the Superior Court of California, San Francisco County, which shall retain jurisdiction over all such actions and disputes.

12.24   All Parties to this Settlement Agreement shall be subject to the jurisdiction of the Superior Court of California, San Francisco County for all purposes related to this Settlement Agreement.

12.25   The Court shall retain continuing and exclusive jurisdiction over the Parties to this Settlement Agreement for the purpose of the administration and enforcement of this Settlement Agreement.

12.26   The headings used in this Settlement Agreement are for the convenience of the reader only, and shall not affect the meaning or interpretation of this Settlement Agreement.

12.27   In construing this Settlement Agreement, the use of the singular includes the plural (and vice-versa) and the use of the masculine includes the feminine (and vice-versa).

12.28   Each Party to this Settlement Agreement warrants that he, she, or it is acting upon his, her, or its independent judgment and upon the advice of counsel, and not in reliance upon any warranty or representation, express or implied, of any nature or of any kind by any other Party, other than the warranties and representations expressly made in this Settlement Agreement.

WP0072

1    12.29  Signatory counsel warrant that they are fully authorized to execute this

2  Agreement on behalf of their respective clients listed below.  Each Counsel signing this

3  Settlement Agreement on behalf of his/her clients who are unable to sign the Agreement on the

4  date that it is executed by other  Parties represents that such counsel is fully authorized to sign

5  this Settlement Agreement on behalf of his/her clients; provided, however, that all Parties who

6  have not executed this Agreement on the date that it is executed by the other Parties shall

7  promptly thereafter execute this Agreement and in any event no later than one (1) week after the

8  Agreement has been executed by counsel.

9    IN WITNESS WHEREOF, the Parties hereto, by and through their respective attorneys,

10  and intending to be legally bound hereby, have duly executed this Settlement Agreement as of

11  the date set forth below.

12

13  Dated: January 15, 2020    By:

        Shannon Liss-Riordan
        LICHTEN & LISS-RIORDAN, P.C.

15        Attorneys for Plaintiffs JACOB RIMLER,
        GIOVANNI JONES, DORA LEE,
16        KELLYN TIMMERMAN, and JOSHUA
        ALBERT

18

19  Dated: January 15, 2020    By:

        Theane Evangelis
20        Michele L. Maryott
        Dhananjay S. Manthripragada
21        GIBSON, DUNN & CRUTCHER LLP

22
        Attorneys for Defendant
23        POSTMATES, INC.

24

25

26

27                47
        CLASS ACTION SETTLEMENT AGREEMENT AND RELEASE
28                Case No. CGC-18-567868

Dated:  January __, 2020                    By:    _____
                                                   Robert Rieders
                                                   General Counsel
                                                   POSTMATES INC.

Dated:  January __, 2020                    By:    _____
                                                   Jacob Rimler
                                                   NAMED PLAINTIFF

Dated:  January __, 2020                    By:    _____
                                                   Giovanni Jones
                                                   NAMED PLAINTIFF

Dated:  January __, 2020                    By:    _____
                                                   Dora Lee
                                                   NAMED PLAINTIFF

Dated:  January __, 2020                    By:    _____
                                                   Kellyn Timmerman
                                                   NAMED PLAINTIFF

Dated:  January __, 2020                    By:    _____
                                                   Joshua Albert
                                                   NAMED PLAINTIFF

WP0074

1  ANDREW M. SPURCHISE, Bar No. 245998
   aspurchise@littler.com
2  LITTLER MENDELSON, P.C.
   900 Third Avenue
3  New York, NY  10022.3298
   Telephone:   212.583.9600
4  Fax No.:   212.832.2719

5  MEL M.C. COLE, Bar No. 293265
   KATHERINE KIMSEY, Bar No. 300224
6  LITTLER MENDELSON, P.C.
   333 Bush Street, 34th Floor
7  San Francisco, CA 94104
   Telephone:   415.433.1940
8  Fax No.:   415.399.8490

9  Attorneys for Defendant
   POSTMATES INC.

10

ELECTRONICALLY
F I L E D
Superior Court of California,
County of San Francisco

01/23/2018
Clerk of the Court
BY:SANDRA SCHIRO
Deputy Clerk

11                 SUPERIOR COURT OF CALIFORNIA

12                 COUNTY OF SAN FRANCISCO

13  MELANIE ANNE WINNS, RALPH         Case No. CGC-17-562282
    JOHN HICKEY JR., STEVEN
14  ALVARADO and KRISTIE LOGAN,       **DEFENDANT POSTMATES INC.'S**
    individually, and on behalf of all others   **NOTICE OF MOTION AND MOTION TO**
15  similarly situated,               **COMPEL ARBITRATION AND FOR STAY;**
                                      **MEMORANDUM OF POINTS AND**
16                 Plaintiffs,        **AUTHORITIES IN SUPPORT THEREOF**

17         v.                         Date:       February 28, 2018
                                      Time:       9:30 a.m.
18  POSTMATES, INC., a California     Dept.:      302
    Corporation, DOES 1-10, individuals, and
19  DOES 11-20, inclusive,            Reservation Number: 01110228-04

20                 Defendants.
                                      Complaint Filed:  November 2, 2017
21                                    Trial Date:  None Set

22

23

24

25

26

27

28

LITTLER MENDELSON, P.C.
333 Bush Street
34th Floor
San Francisco, CA 94104
415.433.1940

DEF'S NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION AND FOR STAY; MEMORANDUM
OF POINTS AND AUTHORITIES IN SUPPORT THEREOF
WP0075

**TO PLAINTIFFS AND THEIR ATTORNEYS OF RECORD**:

PLEASE TAKE NOTICE that on February 28, 2018 at 9:30 a.m. or as soon thereafter as the matter can be heard in Department 302 of the above-captioned court, located at 400 McAllister Street, San Francisco, California 94102, Defendant Postmates Inc. ("Postmates") will, and hereby does, move the Court for an order (i) compelling Plaintiffs Melanie Anne Winns, Ralph John Hickey Jr., Steven Alvarado, and Kristie Logan ("Plaintiffs") to arbitrate their claims for damages in the instant dispute—including Plaintiffs' claim for underpaid wages under Labor Code section 558— with Defendant on an individual basis, (ii) striking Plaintiffs' class allegations, and (iii) staying Plaintiffs' claims for penalties brought pursuant to the Private Attorneys General Act of 2004, Cal. Lab. Code §§ 2698, *et seq.* ("PAGA") pending individual arbitration.  This motion is made pursuant to the Federal Arbitration Act, 9 U.S.C. § 1, *et seq.* ("FAA"), and to the extent necessary and not inconsistent with the FAA, California Code of Civil Procedure §§ 1281.2 and 1281.4, and is brought on the grounds that Plaintiffs' non-PAGA claims against Postmates are subject to valid and enforceable arbitration agreements that require each Plaintiff to arbitrate those claims with Postmates on an individual basis only.

This motion is based on this Notice of Motion and Motion, the Memorandum of Points and Authorities included herein, the Declaration of Katherine Kimsey filed herewith, the Declaration of Jason Huey filed herewith, the pleadings and papers on file in this action, and such additional evidence or argument as may be presented at or prior to the time of the hearing.

Dated:  January  23, 2018

_____
ANDREW M. SPURCHISE
MEL M.C. COLE
KATHERINE KIMSEY
LITTLER MENDELSON, P.C.
Attorneys for Defendant
POSTMATES INC.

LITTLER MENDELSON, P.C.
333 Bush Street
34th Floor
San Francisco, CA 94104
415.433.1940

2.

DEF'S NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION AND FOR STAY; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

WP0076

# TABLE OF CONTENTS

**PAGE**

I. INTRODUCTION ................................................................................................. 7

II. STATEMENT OF RELEVANT FACTS ............................................................. 8

    A. Postmates' Innovative Technology Connects Customers With Delivery
       Providers ................................................................................................. 8

    B. The 2015 Terms And Conditions Agreement ........................................... 8

    C. The 2017 Fleet Agreement ....................................................................... 9

    D. Plaintiffs' Acceptances of the Arbitration Agreements ......................... 11

    E. The Relevant Terms Of The Arbitration Agreements ............................ 12

III. THE COURT SHOULD ORDER PLAINTIFFS TO ARBITRATE THEIR CLAIMS
     ON AN INDIVIDUAL BASIS ........................................................................... 13

    A. The Federal Arbitration Act Applies To The Arbitration Agreements ..... 13

    B. The Arbitration Agreements Are Valid And Must Be Enforced .............. 14

       1. The Delegation Clauses In The Arbitration Agreements Are Valid And
          Enforceable .................................................................................... 14

          a. The delegation clauses are clear and unmistakable. .......................... 15

          b. The delegation clauses are enforceable as a matter of law. ............... 16

       2. The Gateway Issues Under The FAA Have Been Satisfied ......................... 16

          a. A valid agreement to arbitrate exists. ................................................. 16

          b. Plaintiffs' claims fall within the scope of the Arbitration
            Agreements. ........................................................................................ 18

    C. This Court Must Enforce The 2017 Class Action Waiver ........................ 18

    D. Plaintiffs' Claims For Penalties Under PAGA Must Be Stayed Pending The
       Outcome Of Arbitration, While Plaintiffs' Claim For Underpaid Wages Under
       Labor Code Section 558 Should Be Ordered To Arbitration ................................... 19

       1. Plaintiffs' Ninth Cause of Action For Underpaid Wages Under Labor
          Code §558 Pursuant To PAGA Must Be Compelled to Arbitration ............. 20

IV. CONCLUSION ................................................................................................ 21

LITTLER MENDELSON, P.C.
900 Third Avenue
New York, NY 10022-3298
212.583.9600

3.

WP0077

1

## TABLE OF AUTHORITIES

2

Page(s)

3

**Cases**

4

*Aanderud v. Superior Court,*
  13 Cal. App. 5th 880, 892 (2017) ...............................................................15, 20, 21

5

6

*AT&T Mobility, LLC v. Concepcion,*
  563 U.S. 333 (2011)........................................................................................13, 17, 19

7

*Brennan v. Opus Bank,*
  796 F.3d 1125 (9th Cir. 2015) ......................................................................15

8

9

*Citizens Bank v. Alafabco, Inc.,*
  539 U.S. 52 (2003).........................................................................................14

10

*Cobarruviaz v. Maplebear, Inc.,*
  143 F. Supp. 3d 930 (N.D. Cal. 2015) ..........................................................19

11

12

*Condee v. Longwood Mgmt. Corp.,*
  88 Cal. App. 4th 215 (2001) ..........................................................................16

13

*Direct TV, Inc. v. Imburgia,*
  136 S. Ct. 463 (2015).....................................................................................14

14

15

*Franco v. Arakelian Enterprises, Inc.,*
  234 Cal. App. 4th 947 (2015) ........................................................................19

16

17

*Iskanian v. CLS Transportation Los Angeles, LLC,*
  59 Cal. 4th 348 (2014) ...................................................................................19, 20

18

*Johnmohammadi v. Bloomingdale's, Inc.,*
  755 F.3d 1072 (9th Cir. 2014) ......................................................................19

19

20

*Kilgore v. KeyBank, Nat. Ass'n,*
  718 F.3d 1052 (9th Cir. 2013) ......................................................................16

21

22

*Lawson v. ZB, N.A.*
  D071279, D071376 (Cal. Ct. App. 4th Dist. Dec. 19, 2017)........................20

23

*Long v. Provide Commerce, Inc.,*
  245 Cal.App.4th 855 (2016) ..........................................................................17

24

25

*Malone v. Superior Court,*
  226 Cal. App. 4th 1551 (2014) ......................................................................16

26

27

28

4.

LITTLER MENDELSON, P.C.
333 Bush Street
34th Floor
San Francisco, CA 94104
415.433.1940

DEF'S NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION AND FOR STAY; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

WP0078

*Mohamed v. Uber Techs. Inc.*,
    848 F.3d 1201 (9th Cir. 2016) ................................................................................16

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
    460 U.S. 1 (1983)....................................................................................................14, 17

*Omar v. Ralphs Grocery Co.*,
    118 Cal. App. 4th 955 (2004) ................................................................................14

*Perry v. Thomas*,
    482 U.S. 483 (1987)................................................................................................14

*Pinnacle Museum Tower Ass'n v. Pinnacle Market Dev. (US), LLC*,
    55 Cal. 4th 223 (2012) ..........................................................................................17

*Rent-A-Center, W., Inc. v. Jackson*,
    561 U.S. 63 (2010) ................................................................................................14

*Rosenthal v. Great Western Fin. Securities Corp.*,
    14 Cal. 4th 394 (1996) ..........................................................................................17

*Schatz v. Allen Matkins Leck Gamble & Mallory LLP*,
    45 Cal. 4th 557 (2009) ..........................................................................................17

*Strotz v. Dean Witter Reynolds, Inc.*,
    223 Cal.App.3d 208 (1990) ..................................................................................17

*Tiri v. Lucky Chances, Inc.*,
    226 Cal. App. 4th 231 (2014) ................................................................................15

*United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*,
    363 U.S. 574 (1960)................................................................................................18

*Vianna v. Doctors' Management Co.*,
    27 Cal. App. 4th 1186 (1994) ................................................................................14

**Statutes**

9 U.S.C. § 1 ....................................................................................................................12

9 U.S.C. § 2 ..............................................................................................................12, 13

9 U.S.C. § 3 ..............................................................................................................12, 19

9 U.S.C. § 4 ......................................................................................................12, 14, 19

9 U.S.C. § 5 ....................................................................................................................12

9 U.S.C. § 6 ....................................................................................................................12

5.

LITTLER MENDELSON, P.C.
333 Bush Street
34th Floor
San Francisco, CA 94104
415.433.1940

DEF'S NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION AND FOR STAY; MEMORANDUM
OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

WP0079

9 U.S.C. § 7 ...................................................................................................................12

9 U.S.C. § 8 ...................................................................................................................12

9 U.S.C. § 9 ...................................................................................................................12

9 U.S.C. § 10 .................................................................................................................12

9 U.S.C. § 11 .................................................................................................................12

9 U.S.C. § 12 .................................................................................................................12

9 U.S.C. § 13 .................................................................................................................12

9 U.S.C. § 14 .................................................................................................................12

9 U.S.C. § 15 .................................................................................................................12

9 U.S.C. § 16 .................................................................................................................12

Cal. Civ. Code § 1550 ...................................................................................................16

Cal. Civ. Code § 1556 ...................................................................................................16

Cal. Code Civ. Proc. §1281.4 .......................................................................................20

Cal. Lab. Code §558 ..........................................................................................7, 19, 20

Cal. Lab. Code §558(a)(3) .............................................................................................20

Federal Arbitration Act ...........................................................................................13, 20

Private Attorneys General Act ..............................................................................7, 19, 20

**Other Authorities**

www.adr.org ...................................................................................................................12

www.google.com .............................................................................................................12

LITTLER MENDELSON, P.C.
333 Bush Street
34th Floor
San Francisco, CA 94104
415.433.1940

6.

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.     INTRODUCTION

Plaintiffs Melanie Anne Winns, Ralph John Hickey Jr., Steven Alvarado, and Kristie Logan ("Plaintiffs") each voluntarily entered into a valid and enforceable agreement to arbitrate disputes arising out of or related to their relationship with Defendant Postmates Inc. ("Postmates"), and to do so only on an individual basis.

Two separate but substantially similar arbitration agreements are at issue.  Plaintiffs Winns, Hickey, and Logan agreed to the arbitration agreement contained in the 2017 Fleet Agreement ("2017 Arbitration Agreement").  Plaintiff Alvarado agreed to the arbitration agreement contained in the 2015 Terms and Conditions Agreement ("2015 Arbitration Agreement").  Both the 2015 and 2017 Arbitration Agreements ("the Arbitration Agreements") govern all disputes arising from the relationship between Postmates and each Plaintiff.

The Arbitration Agreements delegate issues of arbitrability to the arbitrator, explicitly and through reference to the AAA Commercial Arbitration Rules.  Each Plaintiff was required to take affirmative actions to indicate their assent to the agreements in which their respective Arbitration Agreements are contained.  The 2017 Arbitration Agreement provides a 30 day period in which to opt out of arbitration, and also specifically provides that this Court should determine the question of the validity of the class action waiver.  The 2015 Arbitration Agreement leaves the issue of the validity of the class action waiver, along with all other issues of arbitrability, to the arbitrator.

The Court's task is therefore a simple one: enforce the voluntary class action waiver in the 2017 Arbitration Agreement accepted by Plaintiffs Winns, Hickey, and Logan, enforce the delegation clause in both the 2015 and 2017 Arbitration Agreements, order Plaintiffs to individually arbitrate their claims for damages—including their claims for underpaid wages under Labor Code §558—and stay their claim for penalties under Private Attorneys General Act ("PAGA") pending individual arbitration.

LITTLER MENDELSON, P.C.
333 Bush Street
34th Floor
San Francisco, CA 94104
415.433.1940

WP0081

## II.   STATEMENT OF RELEVANT FACTS

### A.   Postmates' Innovative Technology Connects Customers With Delivery Providers

Postmates is a San Francisco-based technology company that connects customers in need of delivery services with independent, third-party delivery providers using an innovative technology platform.   Declaration of Jason Huey in Support of Defendant's Motion to Compel ("Huey Declaration") ¶3.   The platform can be accessed through the Postmates website or a software application ("app") available for download on smartphones.   Huey Declaration ¶3.   The Postmates platform enables customers to quickly and conveniently arrange for the delivery of items from local restaurants, stores, etc.   Huey Declaration ¶3.

Postmates does not perform any delivery services itself, but rather offers the app as a source of potential deliveries for people interested in providing delivery services ("couriers").   Huey Declaration ¶4.   Couriers deliver various types of products, including food, groceries, and even furniture. Huey Declaration ¶4.   When a courier wants to receive delivery requests through the app, she "logs on" to the app.   When the courier no longer wishes to receive delivery requests, she "logs off." Huey Declaration ¶4.

### B.   The 2015 Terms And Conditions Agreement

In September 2015, Postmates issued to couriers a Terms and Conditions Agreement that contained, among other terms, an arbitration agreement, the 2015 Arbitration Agreement.   Huey Declaration ¶5.   Couriers who logged on to use the app for the first time between September 2015 and May 2016 were presented with a screen that looked like this:

LITTLER MENDELSON, P.C.
333 Bush Street
34th Floor
San Francisco, CA 94104
415.433.1940

DEF'S NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION AND FOR STAY; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

WP0082



Huey Declaration ¶5, Exhibit A.  Couriers could take as long as they wanted to scroll through the entire Terms and Conditions Agreement, including the 2015 Arbitration Agreement.  Huey Declaration ¶5.  Then, Couriers could agree to the Terms and Conditions Agreement by clicking the box next to the phrase, "By checking this box, you agree to the terms and conditions above."  Huey Declaration ¶5.

### C.    The 2017 Fleet Agreement

On March 1, 2017, Postmates issued couriers a new agreement governing the relationship between Postmates and the couriers (the "Fleet Agreement").  Huey Declaration ¶6.  When couriers logged into the app on or after March 1, 2017, before they could use the app to receive delivery requests, they would be presented with a screen that looked like this:



Huey Declaration ¶6, Exhibit C.

LITTLER MENDELSON, P.C.
333 Bush Street
34th Floor
San Francisco, CA 94104
415.433.1940

DEF'S NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION AND FOR STAY; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

WP0083

Once couriers pressed on the embedded link to the Fleet Agreement (as reflected above by the terms "Fleet Agreement" and the green symbol to the right) on the first screen, they were shown a copy of the Fleet Agreement on a screen that looked like this:

Huey Declaration ¶6, Exhibit C.  Couriers could then scroll through the entire Fleet Agreement, including Section 11, which contained the 2017 Arbitration Agreement.  Huey Declaration ¶6.  Once couriers pressed accept, after having spent as much time as they desired reading the Fleet Agreement, they would see a pop-up that looked like this:

10.

LITTLER MENDELSON, P.C.
333 Bush Street
34th Floor
San Francisco, CA 94104
415.433.1940

DEF'S NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION AND FOR STAY; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

WP0084

Huey Declaration ¶6, Exhibit C.

**D.    Plaintiffs' Acceptances of the Arbitration Agreements**

Plaintiff Winns began using the app in February 2017.  Huey Declaration ¶8.  Plaintiff Winns logged onto the app on March 2, 2017 and used the app to complete a delivery that same day.  Huey Declaration ¶8.  In order to do so, as described above, she necessarily reviewed and accepted the terms set forth in the Fleet Agreement, including the 2017 Arbitration Agreement.  Plaintiff Logan began using the app November 27, 2017.  Huey Declaration ¶9.  Thus, the first time she began using the app, she likewise reviewed and accepted the terms set forth in the Fleet Agreement, including the 2017 Arbitration Agreement.  Huey Declaration ¶9.  Plaintiff Hickey began using the app on November 12, 2016.  Huey Declaration ¶10.  Plaintiff Hickey logged onto the app on March 5, 2017 and completed a delivery that same day using the app.  Huey Declaration ¶10.  In order to do so, he first had review and accept the terms set forth in the Fleet Agreement including the 2017 Arbitration Agreement.  Huey Declaration ¶10.  Plaintiff Alvarado began using the app in March 12, 2016 and used the app for the last time on June 27, 2016. Huey Declaration ¶11.  When Plaintiff Alvarado signed up to use the app on February 20, 2016, he was prompted to review and accept the 2015 Terms and Conditions Agreement including the 2015 Arbitration Agreement before he used the app to receive delivery requests.  Huey Declaration ¶11.

All Plaintiffs acknowledge they were subject to arbitration agreements.  First Amended Complaint ("FAC") ¶77.  Plaintiffs Winns, Hickey, and Logan each had 30 days to opt of the 2017 Arbitration Agreement contained within the Fleet Agreement.  None did so.  Huey Declaration ¶8-10.

11.

DEF'S NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION AND FOR STAY; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

WP0085

### E.   The Relevant Terms Of The Arbitration Agreements

The 2017 Arbitration Agreement provides, in relevant part, as follows:

> Postmates and Contractor mutually agree to resolve any disputes between them exclusively through final and binding arbitration instead of filing a lawsuit in court.
>
> i. Postmates and Contractor expressly agree that this Mutual Arbitration Provision is governed exclusively by the Federal Arbitration Act (9 U.S.C. §§ 1-16) ("FAA") and shall apply to any and all claims between the Parties, including but not limited to those arising out of or relating to this Agreement, the Contractor's classification as an independent Contractor, Contractor's provision of services under this Agreement, the delivery fees received by Contractor for performing Deliveries . . .including without limitation . . . state and local wage and hour laws . . . and all other federal, state, and/or local claims arising out of or relating to the Contractor's relationship or termination of that relationship with Postmates.

Huey Declaration ¶7, Exhibit D, Section 11A(i).  The 2017 Arbitration Agreement provides, "Any arbitration shall be governed by the AAA Rules . . ."  Huey Declaration ¶7, Exhibit D, Section 11B(vi).  And, states that, "The AAA Rules may be found at www.adr.org or by searching for 'AAA Commercial Arbitration Rules' using a service such as www.google.com or by asking Postmates to provide a copy."  Huey Declaration ¶7, Exhibit D, Section 11B(viii).

The 2015 Arbitration Agreement provides, in relevant part, as follows:

> You and the Company agree that any legal disputes or claims arising out of or related to the Agreement (including but not limited to the use of the software, or the interpretation, enforceability, revocability, or validity of the Agreement, or the arbitrability of any dispute), that cannot be resolved informally shall be submitted to binding arbitration in the state where the Agreement was performed.

Huey Declaration ¶5, Exhibit B, pg. 14.  The 2015 Arbitration Agreement further states, "[t]he arbitration shall be conducted by the American Arbitration Association under its Commercial Arbitration Rules, or as otherwise mutually agreed upon by you and the Company."  Huey Declaration ¶5, Exhibit B, pg. 14.

The 2017Arbitration Agreement further provides that Plaintiffs and Postmates both "waive their right to have any dispute or claim brought, heard or arbitrated as a class and/or collective action, or to participate in any class and/or collective action, and an arbitrator shall not have any authority to hear or arbitrate any class and/or collective action ("Class Action Waiver")."  Huey Declaration ¶7, Exhibit D, Section 11B(ii).  Similarly, the 2015 Arbitration Agreement states, "You and the Company agree that any claim, action or proceeding arising out of or related to the

12.

LITTLER MENDELSON, P.C.
333 Bush Street
34th Floor
San Francisco, CA 94104
415.433.1940

DEF'S NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION AND FOR STAY; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

WP0086

Agreement must be brought in your individual capacity, and not as a plaintiff or class member in any purported class, collective, or representative action." Huey Declaration ¶5, Exhibit B, pg. 14.

The 2017 Arbitration Agreement further provides:

> Only an arbitrator, and not any federal, state, or local court or agency, shall have the exclusive authority to resolve any dispute relating to the interpretation, applicability, enforceability, or formation of this Mutual Arbitration Provision. However, as stated in Section 11B.iv below, the preceding clause shall not apply to the Class Action Waiver and Representative Action Waiver. . . . any claim that all or part of this Class Action Waiver and/or Representative Action Waiver is unenforceable, unconscionable, void, or voidable shall be determined only by a court of competent jurisdiction and not by an arbitrator.

Huey Declaration ¶7, Exhibit D, Section 11A(ii).

The 2017 Arbitration Agreement states:

> **Right to Opt Out of Arbitration. Arbitration is not a mandatory condition of Contractor's contractual relationship with Postmates, and therefore Contractor may submit a statement notifying Postmates that Contractor wishes to opt out of this Mutual Arbitration Provision**. . . In order to be effective, Contractor's opt-out notice must be provided **within thirty (30)** days of Contractor's digital execution of this Agreement. . . If Contractor does not opt out within thirty (30) days of Contractor's execution of this Agreement, Contractor's failure to do so shall constitute mutual acceptance of the terms of this Mutual Arbitration Provision by Postmates and Contractor.

Huey Declaration ¶7, Exhibit D, Section 11B(ix) (emphasis original).  Plaintiffs Winn, Hickey, and Logan – though they chose not to – could have opted out of the 2017 Arbitration Agreement using any one of three different methods: electronically from within the 2017 Arbitration Agreement, on a hardcopy opt out form, or by submitting a written notice.  Huey Declaration ¶5, Exhibit B, pg. 14.

## III. THE COURT SHOULD ORDER PLAINTIFFS TO ARBITRATE THEIR CLAIMS ON AN INDIVIDUAL BASIS

### A. The Federal Arbitration Act Applies To The Arbitration Agreements

The FAA declares a liberal policy favoring the enforcement of arbitration agreements. *AT&T Mobility, LLC v. Concepcion*, 563 U.S. 333, 346 (2011).  It provides: "A written provision in … a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction … shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2.  The FAA

13.

LITTLER MENDELSON, P.C.
333 Bush Street
34th Floor
San Francisco, CA 94104
415.433.1940

DEF'S NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION AND FOR STAY; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

WP0087

is designed "to move the parties to an arbitrable dispute out of court and into arbitration as quickly and easily as possible." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 22 (1983). To this end, the FAA not only places arbitration agreements on equal footing with other contracts, but amounts to a "congressional declaration of a liberal federal policy *favoring* arbitration agreements." *Perry v. Thomas*, 482 U.S. 483, 489 (1987) (emphasis added).

The FAA indisputably governs the 2015 Arbitration Agreement and the 2017 Arbitration Agreement ("the Arbitration Agreements"). First, the 2017 Arbitration Agreement explicitly invokes the FAA, which is sufficient to bring the agreement within the purview of the FAA. Huey Declaration ¶7, Exhibit D, ¶11A(i); *see Direct TV, Inc. v. Imburgia*, 136 S. Ct. 463, 468-471 (2015) (FAA applies even if agreement designates a state choice of law). Second, Plaintiffs use the Postmates app to perform deliveries in connection with the 2017 Fleet Agreement or the 2015 Terms and Conditions Agreement, which plainly involves commerce and is therefore sufficient to the trigger the FAA and its strong policy favoring arbitration. *Citizens Bank v. Alafabco, Inc.*, 539 U.S. 52, 56 (2003) (The FAA's term "involving commerce" is interpreted broadly). The FAA thus controls here.

### B.   The Arbitration Agreements Are Valid And Must Be Enforced

The FAA requires courts to compel arbitration "in accordance with the terms of the agreement" upon the motion of either party to the agreement, consistent with the principle that arbitration is a matter of contract. 9 U.S.C. § 4. In determining whether to compel arbitration under the FAA, generally only two "gateway" issues need to be evaluated: (1) whether there is a valid agreement to arbitrate between the parties; and (2) whether the agreement covers the dispute. *Omar v. Ralphs Grocery Co.,* 118 Cal. App. 4th 955, 960 (2004); *see also Vianna v. Doctors' Management Co.,* 27 Cal. App. 4th 1186, 1189 (1994).

#### 1.   The Delegation Clauses In The Arbitration Agreements Are Valid And Enforceable

Before reaching these gateway issues, however, the Court must examine the underlying contract to determine whether the parties have agreed to commit these threshold questions of arbitrability to the arbitrator. *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 70 (2010). If the

14.

LITTLER MENDELSON, P.C.
333 Bush Street
34th Floor
San Francisco, CA 94104
415.433.1940

DEF'S NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION AND FOR STAY; MEMORANDUM
OF POINTS AND AUTHORITIES IN SUPPORT THEREOF           WP0088

parties have agreed to commit such threshold questions to the arbitrator, only the arbitrator, and not the court, may determine arbitrability. *See, e.g., Tiri v. Lucky Chances, Inc*., 226 Cal. App. 4th 231, 248-250 (2014). Such agreement can be plainly stated, or communicated through "incorporation of the AAA rules." *Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015) ("*Brennan*"). Here, the Agreements do both.

### a.      The delegation clauses are clear and unmistakable.

The Arbitration Agreements clearly and unmistakably provide that, apart the enforceability of the class waiver in the 2017 Arbitration Agreement, the arbitrator must decide issues of arbitrability. Huey Declaration ¶7, Exhibit D, ¶11A(ii) ("Only an arbitrator, and not any federal, state, or local court or agency, shall have the exclusive authority to resolve any dispute relating to the interpretation, applicability, enforceability, or formation of this Mutual Arbitration Provision" (2017 Agreement)); Huey Declaration ¶5, Exhibit B, pg. 14 ("any legal disputes or claims arising out of or related to the Agreement (including . . . the arbitrability of any dispute) . . . shall be submitted to binding arbitration." (2015 Agreement))

Further, both Arbitration Agreements expressly incorporate the AAA Commercial Arbitration Rules ("AAA Rules"), which "constitutes clear and unmistakable evidence of the parties' intent to arbitrate arbitrability." *Brennan*, 796 F.3d at 1130; *see also Aanderud v. Superior Court*, 13 Cal. App. 5th 880, 892 (2017); Huey Declaration ¶7, Exhibit D, ¶11B(vi); Huey Declaration ¶5, Exhibit B, pg. 14. Rule 7(a) of the AAA Rules provides: "The arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim[.]" Declaration of Katherine Kimsey in Support of Motion to Compel Arbitration ¶2, Exhibit A. Per the "consensus" found by the Ninth Circuit, all questions as to the validity of the Arbitration Agreements and whether they apply to this dispute, with the exception of the validity of the class waiver in the 2017 Arbitration Agreement, have been clearly and unmistakably delegated to, and must be decided by, the arbitrator. *Brennan*, 796 F.3d at 1130.

LITTLER MENDELSON, P.C.
333 Bush Street
34th Floor
San Francisco, CA 94104
415.433.1940

15.

DEF'S NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION AND FOR STAY; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

WP0089

### b.     The delegation clauses are enforceable as a matter of law.

California courts have consistently held that delegation clauses like the ones at issue here are valid.  The Ninth Circuit has held that if an arbitration provision provides an opportunity to opt out of arbitration, as the 2017 Arbitration Agreement does, there can be no unconscionability as a matter of law.  *See, e.g., Mohamed v. Uber Techs. Inc.*, 848 F.3d 1201, 1211 (9th Cir. 2016); *see also Kilgore v. KeyBank, Nat. Ass'n*, 718 F.3d 1052, 1059 (9th Cir. 2013) (en banc).  The 2017 Arbitration Agreement contains a highly conspicuous opt-out provision, rendering the 2017 Arbitration Agreement, including the delegation clause, voluntary, and thus free from procedural unconscionability.  Huey Declaration ¶7, Exhibit d, ¶11B(ix).  However, the lack of an explicit opt out opportunity is not enough to make a delegation clause unenforceable.  Where, as in the 2015 Arbitration Agreement, the delegation clause is bilateral and delegates "*all* issues of interpretation, applicability, and enforceability of the agreement" the delegation clause is not unconscionable and must be enforced.  *Malone v. Superior Court*, 226 Cal. App. 4th 1551, 1564 (2014) (emphasis original)(upholding the trial court's grant of motion to compel to resolve "challenges to the validity and enforceability of the arbitration agreement as a whole.")  *See* Huey Declaration ¶5, Exhibit B, pg. 14 (You and the Company agree that any legal disputes or claims arising out of or related to the Agreement (including  . . . the arbitrability of any dispute) . . . shall be submitted to binding arbitration.")  The delegation clauses are enforceable as a matter of law.

### 2.     The Gateway Issues Under The FAA Have Been Satisfied

Even if the Court were to find that it, rather than the arbitrator, should evaluate the enforceability of the Arbitration Agreements, notwithstanding the clear and unmistakable delegation clauses, both of the "gateway" issues have been satisfied here, and thus, Plaintiffs' claims should be compelled to arbitration.

### a.     A valid agreement to arbitrate exists.

Postmates' burden to establish a valid contract to arbitrate is minimal – it only needs to allege that a valid agreement to arbitrate exists and support that allegation with the agreement itself.  *Condee v. Longwood Mgmt. Corp.*, 88 Cal. App. 4th 215, 218-219 (2001).  Under California law, a

16.

LITTLER MENDELSON, P.C.
333 Bush Street
34th Floor
San Francisco, CA 94104
415.433.1940

DEF'S NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION AND FOR STAY; MEMORANDUM
OF POINTS AND AUTHORITIES IN SUPPORT THEREOF
WP0090

valid contract exists when (1) the parties are capable of contracting, (2) there was mutual consent, (3) a lawful object, and (4) sufficient cause or consideration. Cal. Civ. Code § 1550. The Arbitration Agreements meet these requirements.

First, there is no dispute the parties are all capable of contracting. *See* Cal. Civ. Code § 1556 ("All persons are capable of contracting, except minors, persons of unsound mind, and persons deprived of civil rights.").

Second, there is mutual consent. A party's acceptance of an arbitration agreement (as with any contract) may be express or implied in fact. *Pinnacle Museum Tower Ass'n v. Pinnacle Market Dev. (US), LLC,* 55 Cal. 4th 223, 236 (2012). Here, Plaintiffs Winns, Hickey, and Logan expressly accepted the 2017 Arbitration Agreement following the rollout of the 2017 Fleet Agreement on March 1, 2017 by clicking on the Fleet Agreement, then clicking Accept and then clicking Agree on a pop-up that read: "I agree to the Fleet Agreement." Huey Declaration ¶¶6; 8-10, Exhibit C. In the case of Plaintiff Alvarado, he accepted the 2015 Arbitration Agreement by clicking the box next to the phrase, "By checking this box, you agree to the terms and conditions above" the first time he used the app on March 12, 2016. Huey Declaration ¶11; *see, e.g., Long v. Provide Commerce, Inc.,* 245 Cal.App.4th 855, 862-63 (2016) (distinguishing a "browsewrap" agreement where the website sought to bind the plaintiff to Terms of Use agreement merely by visiting the website, from an enforceable "clickwrap" agreement, which required an affirmative act of consent by the user).

Third, there is no dispute that the Arbitration Agreements were made for a lawful purpose, i.e., the prompt and efficient resolution of disputes in arbitration. *See Concepcion*, 563 U.S. at 344-345; *Schatz v. Allen Matkins Leck Gamble & Mallory LLP*, 45 Cal. 4th 557, 564 (2009).

Fourth, the Arbitration Agreements are supported by valid consideration: the parties' mutual promises to arbitrate disputes. *See, e.g., Strotz v. Dean Witter Reynolds, Inc.*, 223 Cal.App.3d 208, 216 (1990) (holding that "[w]here an agreement to arbitrate exists, the parties' mutual promises to forego a judicial determination and to arbitrate their disputes provide consideration for each other") (disapproved in-part on other grounds by *Rosenthal v. Great Western Fin. Securities Corp.*, 14 Cal. 4th 394, 407 (1996). The Arbitration Agreements are valid agreements to arbitrate.

LITTLER MENDELSON, P.C.
333 Bush Street
34th Floor
San Francisco, CA 94104
415.433.1940

DEF'S NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION AND FOR STAY; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

WP0091

b.    **Plaintiffs' claims fall within the scope of the Arbitration
Agreements.**

The second gateway issue is whether the Arbitration Agreements cover the dispute between

the parties.  In making this determination, the FAA requires courts to apply a presumption in favor

of arbitrability.  *See Moses H. Cone*, 460 U.S. at 24-25.  Courts must conclude disputes are covered

"unless it may be said with positive assurance that the arbitration clause is not susceptible of an

interpretation that covers the asserted dispute."  *United Steelworkers of Am. v. Warrior & Gulf

Navigation Co.*, 363 U.S. 574, 582-83 (1960).

There is no reasonable dispute that Plaintiffs' claims fall squarely within the scope the

Arbitration Agreements.  Plaintiffs specifically agreed that the Arbitration Agreements would apply

to their relationships with Postmates and any disputes that arose from those relationships.   Huey

Declaration ¶7, Exhibit D, ¶11A(i) (agreeing to arbitrate "any and all claims between the Parties");

Huey Declaration ¶5, Exhibit B, pg. 14 (agreeing to arbitrate "any legal disputes or claims arising

out of or related to the Agreement.")   Each of Plaintiff's claims concern the use of the app and

interactions with the company.  –Thus, there exists a valid agreement between each Plaintiff and

Postmates to arbitrate Plaintiffs' disputes.

C.    **This Court Must Enforce The 2017 Class Action Waiver**

As discussed above, the Class Action Waiver in the 2017 Arbitration Agreement is the only

enforcement issue before this Court.[1]  Huey Declaration ¶7, Exhibit D, ¶11B(iv) ("Notwithstanding

any other clause . . . any claim that all or part of this Class Action Waiver and/or Representative

Action Waiver[2] is unenforceable, unconscionable, void, or voidable shall be determined only by a

court of competent jurisdiction and not by an arbitrator.")   It is well settled that such waivers are

lawful and enforceable.

The "primary purpose" of the FAA is "ensuring that private agreements to

---

[1] The 2015 Arbitration Agreement also includes an explicit class waiver, but delegates all issues of arbitrability to the
arbitrator.  Huey Declaration ¶5, Exhibit B, pg. 14 ("any claim, action or proceeding arising out of or related to the
Agreement must be brought in your individual capacity, and not as a plaintiff or class member in any purported class [or]
collective."); *Id.* ("any legal disputes or claims arising out of or related to the Agreement (including . . . validity of the
Agreement or the arbitrability of any dispute) . . .shall be submitted to binding arbitration.")   Nevertheless, Postmates
requests that the Court enforce the 2015 Arbitration Agreement as written and order Plaintiff Alvarado to arbitration on
an individual basis only.

[2] The waivers of representative actions in the Arbitration Agreements are not at issue in this case.

18.

LITTLER MENDELSON, P.C.
333 Bush Street
34th Floor
San Francisco, CA 94104
415.433.1940

arbitrate are enforced *according to their terms*." *Volt Info. Sciences v. Bd. of Trustees*, 489 U.S. 468, 479 (1989)(emphasis added).   The 2017 Arbitration Agreement states: "CLASS ACTION WAIVER—PLEASE READ.  Postmates and Contractor mutually agree that any and all disputes or claims between the parties will be resolved in individual arbitration. The Parties further agree that by entering into this Agreement, they waive their right to have any dispute or claim brought, heard or arbitrated as a class and/or collective action, or to participate in any class and/or collective action, and an arbitrator shall not have any authority to hear or arbitrate any class and/or collective action ("Class Action Waiver")."

Huey Declaration ¶7, Exhibit D, ¶11B(ii).

In *Concepcion,* the Supreme Court affirmed the enforceability of class waivers in FAA-governed arbitration agreements.  The Court held that the California Supreme Court's rule restricting enforcement of class action waivers was preempted by the FAA, because it interfered with the fundamental attributes of arbitration and created a scheme inconsistent with the FAA.   *See Concepcion*, 563 U.S. at 352.   The Supreme Court also explained that class arbitration was inconsistent with the fundamental attributes of arbitration as contemplated by the FAA.  *Concepcion*, 563 U.S.at 348.  The California Supreme Court has likewise conclusively determined class waivers are enforceable.  *Iskanian v. CLS Transportation Los Angeles, LLC*, 59 Cal. 4th 348, 366 (2014).

Here, the parties' *voluntarily agreed to a class waiver*, which should be enforced.  *See Johnmohammadi v. Bloomingdale's, Inc.*, 755 F.3d 1072, 1076 (9th Cir. 2014).

**D.     Plaintiffs' Claims For Penalties Under PAGA Must Be Stayed Pending The Outcome Of Arbitration, While Plaintiffs' Claim For Underpaid Wages Under Labor Code Section 558 Should Be Ordered To Arbitration**

Plaintiffs' PAGA claims are entirely derivative of and predicated upon Plaintiffs' claims for damages under the Labor Code.  Under these circumstances, the FAA mandates that courts "shall . . . order" parties to proceed to arbitration and "stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement."  9 U.S.C. §§ 3-4.

Further, because Plaintiffs' PAGA claims will not survive unless Plaintiffs prevail in arbitration on their underlying individual claims, Plaintiffs' eighth cause of action must be stayed pending the outcome of the arbitration.  *See e.g. Cobarruviaz v. Maplebear, Inc.*, 143 F. Supp. 3d 930, 947 (N.D. Cal. 2015).  "The stay's purpose is to preserve the status quo until the arbitration is resolved, preventing any continuing trial court proceedings from disrupting and rendering ineffective

19.

LITTLER MENDELSON, P.C.
333 Bush Street
34th Floor
San Francisco, CA 94104
415.433.1940

DEF'S NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION AND FOR STAY; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

WP0093

the arbitrator's jurisdiction to decide the issues that are subject to arbitration." *Franco v. Arakelian Enterprises, Inc.*, 234 Cal. App. 4th 947, 966 (2015) (citing *Federal Ins. Co. v. Superior Court*, 60 Cal.App.4th 1370, 1374 (1998)); *see also* Cal. Code Civ. Pro. §1281.4.

### 1. Plaintiffs' Ninth Cause of Action For Underpaid Wages Under Labor Code §558 Pursuant To PAGA Must Be Compelled to Arbitration

The lone PAGA claim that must be compelled to individual arbitration is Plaintiffs' claim for underpaid wages pursuant to Labor Code section 558.  "The civil penalties recovered on behalf of the state under the PAGA are distinct from the statutory damages to which employees may be entitled in their individual capacities." *Iskanian*, *supra,* 59 Cal. 4th at 381.  "When there is overlap [between private disputes and claims that could be pursued on behalf of the state], the claims retain their private nature." *Esparza v. KS Industries*, *L.P.*, 13 Cal. App. 5th 1228, 1242 (2017).  "The rule of nonarbitrability adopted in *Iskanian* is limited to representative claims for civil penalties *in which the state has a direct financial interest*." *Id*. (Emphasis added).

With respect to their claim for civil penalties under PAGA, Plaintiffs act as agents of the state to recover civil penalties *on behalf of the state*.  Under §558, however, Plaintiffs seek "underpaid wages owed to them and other former and current" couriers.  FAC ¶150; Cal. Lab. Code §558(a)(3)("Wages recovered pursuant to this section *shall be paid to the affected employee*")(emphasis added.)  Because claims for wages "involve[] victim-specific relief and private disputes," such claims are subject to arbitration under the FAA.  *Esparza*, 13 Cal. App. 5th at 1246 (The "attempt to recover wages on behalf of [Plaintiffs and] *other aggrieved employees* involves victim-specific relief and private disputes.") (emphasis original.)

Postmates anticipates Plaintiffs will argue that, under *Lawson v. ZB, N.A.* D071279, D071376 (Cal. Ct. App. 4th Dist. Dec. 19, 2017), Plaintiffs' §558 claims cannot be compelled to arbitration.  However, such an argument ignores the Plaintiffs' own pleading and the substance of §558.  Plaintiffs specifically seek underpaid wages, all of which, if recovered, will be awarded to Plaintiffs and *not the state*.  Because Plaintiffs are not acting as agents of the state in seeking underpaid wages under § 558, *Iskanian*'s prohibition against the individual arbitration of PAGA claims does not apply.  Instead, the FAA controls, and Plaintiffs' §558 claims must be individually arbitrated in

20.

LITTLER MENDELSON, P.C.
333 Bush Street
34th Floor
San Francisco, CA 94104
415.433.1940

DEF'S NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION AND FOR STAY; MEMORANDUM
OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

WP0094

1  accordance with their Arbitration Agreements.  "To hold otherwise would allow a rule of state law to

2  erode or restrict the scope of the Federal Arbitration Act — a result that cannot withstand scrutiny

3  under federal preemption doctrine."  *Esparza v. KS Industries, L.P.*, 13 Cal. App. 5th 1228, 1246

4  (2017).

5  **IV.     CONCLUSION**

6  The Court should order Plaintiffs to individually arbitrate their non-PAGA claims against

7  Defendant and stay proceedings pending arbitration.

8  Dated:  January 23, 2018

9

10  ANDREW M. SPURCHISE
    MEL M.C. COLE

11  KATHERINE KIMSEY
    LITTLER MENDELSON, P.C.

12  Attorneys for Defendant
    POSTMATES INC.

13

14
    Firmwide:151440244.3 078219.1052

15

16

17

18

19

20

21

22

23

24

25

26

27

28

LITTLER MENDELSON, P.C.
332 Bush Street
34th Floor
San Francisco, CA 94104
415.433.1940

21.

DEF'S NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION AND FOR STAY; MEMORANDUM
OF POINTS AND AUTHORITIES IN SUPPORT THEREOF                    WP0095

**SENATE JUDICIARY COMMITTEE**
**Senator Hannah-Beth Jackson, Chair**
**2019-2020 Regular Session**

SB 707 (Wieckowski)
Version: April 11, 2019
Hearing Date: April 23, 2019
Fiscal: No
Urgency: No
AM

## SUBJECT

Arbitration agreements: enforcement

## DIGEST

This bill provides that if an employment or consumer arbitration requires the drafting party to pay fees and costs regarding the arbitration and those fees or costs are not paid within 30 days of their due date, then the drafting party is in material breach of the arbitration agreement, is in default of the arbitration, and waives its right to compel arbitration, and authorizes the employee or consumer to the arbitration agreement to compel arbitration or proceed in court, as specified. The bill requires the court to sanction a drafting party for failure to pay costs or fees. The bill also requires arbitration companies to include specified demographic data regarding its arbitrators as provided by the arbitrators in a report arbitration companies are already required to make under existing law.

## EXECUTIVE SUMMARY

Companies have been using arbitration agreements for years to prohibit employees and consumers from having their claims heard in court or as a class action. With no other recourse left to adjudicate their claims, employees have begun filing individual arbitration claims, with one employer having over 12,000 individual claims filed against it. Some employers have been refusing to pay fees and costs required to initiate arbitration, effectively placing their employees in a procedural limbo. This bill is intended to affirm that these practices constitute material breach of an employment or consumer arbitration agreement and provide procedures for employees or consumers to pursue in order to have their claims heard in the event of such a breach. The bill also seeks to require arbitration companies to report the same demographic data required to be reported about judicial applicants, judicial appointments, and judicial nominees.

The bill is sponsored by the California Employment Lawyers Association (CELA) and the Consumer Attorneys of California (CAOC) and supported by various labor and

SB 707 (Wieckowski)
Page 2 of 13

other organizations. The bill is opposed by a coalition of business organizations,
including the California Chamber of Commerce.

## PROPOSED CHANGES TO THE LAW

Existing federal law provides, pursuant to the Federal Arbitration Act (FAA), that a
written provision in any maritime transaction or a contract evidencing a transaction
involving commerce to settle by arbitration a controversy thereafter arising out of such
contract or transaction, or the refusal to perform the whole or any part thereof, or an
agreement in writing to submit to arbitration an existing controversy arising out of such
a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon
such grounds as exist at law or in equity for the revocation of any contract.  (9 U.S.C. §
2.)

Existing state law:

1) Provides, pursuant to the Federal Arbitration Act (FAA), that a written provision in
   any maritime transaction or a contract evidencing a transaction involving commerce
   to settle by arbitration a controversy thereafter arising out of such contract or
   transaction, or the refusal to perform the whole or any part thereof, or an agreement
   in writing to submit to arbitration an existing controversy arising out of such a
   contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save
   upon such grounds as exist at law or in equity for the revocation of any contract.  (9
   U.S.C. § 2.)

2) Governs arbitrations in California, pursuant to the California Arbitration Act (CAA),
   including the enforcement of arbitration agreements, rules for neutral arbitrators,
   the conduct of arbitration proceedings, and the enforcement of arbitration awards.
   (Code Civ. Proc. §§ 1280 et. seq.)

3) Provides that on petition of a party to an arbitration agreement alleging the
   existence of a written agreement to arbitrate a controversy and that a party thereto
   refuses to arbitrate such controversy, the court shall order the petitioner and the
   respondent to arbitrate the controversy if it determines that an agreement to
   arbitrate the controversy exists, unless the court determines that:
   a) the right to compel arbitration has been waived by the petitioner;
   b) grounds exist for the rescission of the agreement;
   c) a party to the arbitration agreement is also a party to a pending court action
      or special proceeding with a third party, arising out of the same transaction or
      series of related transactions, and there is a possibility of conflicting rulings
      on a common issue of law or fact.  A pending court action or special
      proceeding includes an action or proceeding initiated by the party refusing to
      arbitrate after the petition to compel arbitration has been filed, but on or
      before the date of the hearing on the petition; or

SB 707 (Wieckowski)
Page 3 of 13

    d) the petitioner is a state or federally chartered depository institution that, on or after January 1, 2018, is seeking to apply a written agreement to arbitrate, contained in a contract consented to by a respondent consumer, to a purported contractual relationship with that respondent consumer that was created by the petitioner fraudulently without the respondent consumer's consent and by unlawfully using the respondent consumer's personal identifying information. (Code Civ. Proc. § 1281.2.)

4) Requires an arbitration company that administers or is otherwise involved in a consumer arbitration to publish and make available to the public, as specified, a single cumulative report that contains certain information, including the name of the arbitrator, the arbitrator's fee for the case, the percentage of the fee the arbitrator collected, and whether a fee waiver was granted. (Code Civ. Proc. § 1281.96.)

5) Requires the Governor, the State Bar, and the Administrative Office of the Courts to collect and release each year, on an aggregate statewide basis, specified information regarding the demographic data relative to ethnicity, race, disability, veteran status, gender, gender identity, and sexual orientation of judicial applicants, judicial appointees, or judicial nominees, as provided by them, and the percentage of respondents who declined to respond. (Gov. Code § 12011.5(n).)

This bill:

1) Provides that if an employment or consumer arbitration requires the drafting party to pay fees and costs before arbitration can proceed and those fees or costs are not paid within 30 days of their due date, then the drafting party is in material breach of the arbitration agreement, is in default of the arbitration, and waives its right to compel arbitration.

    e) If the drafting party materially breaches the arbitration agreement by not paying fees or costs, the employee or consumer may either:

        i. Withdraw the claim from arbitration and proceed in a court of appropriate jurisdiction; or

        ii. Compel arbitration in which the drafting party shall pay reasonable attorney's fees and costs related to the arbitration.

    f) If the employee or consumer withdraws the claim from arbitration and proceeds with an action in a court of appropriate jurisdiction, both of the following apply:

        i. Provides that the statute of limitations with regard to all claims brought or that could have been brought in arbitration are to be tolled as of the date of the first filing of a claim in any court, arbitration forum, or other dispute resolution forum.

        ii. Requires the court to impose sanctions on the drafting party, as specified.

SB 707 (Wieckowski)
Page 4 of 13

2) Provides that if an employment or consumer arbitration requires the drafting party to pay fees or costs during the pendency of an arbitration proceeding and those fees or costs are not paid within 30 days of their due date, then the drafting party is in material breach of the arbitration agreement, is in default of the arbitration, and waives its right to compel arbitration.

    a) If the drafting party materially breaches the arbitration agreement and is in default due to not paying fees or costs, the employee or consumer may:

        i. Withdraw the claim from arbitration and proceed in a court of appropriate jurisdiction. If the employee or consumer does so, the statute of limitations with regard to all claims brought or that could have been brought in arbitration are to be tolled as of the date of the first filing of a claim in any court, arbitration forum, or other dispute resolution forum.

        ii. Continue the arbitration proceeding, if the arbitration company agrees to continue administering the proceeding, notwithstanding the drafting party's failure to pay fees or costs. The neutral arbitrator or arbitration company may institute a collection action at the conclusion of the arbitration proceeding against the drafting party that is in default of the arbitration for payment of all fees associated with the employment or consumer arbitration proceeding, including the cost of administering any proceedings after the default.

        iii. Petition the court for an order compelling the drafting party to pay all arbitration fees that the drafting party is obligated to pay under the arbitration agreement or the rules of the arbitration company.

        iv. Pay the drafting party's fees and proceed with the arbitration proceeding. As part of the award, the employee or consumer is entitled to recover all arbitration fees paid on behalf of the drafting party without regard to any findings on the merits of the underlying arbitration.

    b) If the employee or consumer withdraws the claim from arbitration and proceeds in a court of appropriate jurisdiction, both of the following will apply:

        i. Authorizes the employee or consumer to bring a motion, or a separate action, to recover all attorney's fees and all costs associated with the abandoned arbitration proceeding. The recovery of arbitration fees, interest, and related attorney's fees will be without regard to any findings on the merits in the underlying action or arbitration.

        ii. Requires the court to impose sanctions on the drafting party, as specified.

SB 707 (Wieckowski)
Page 5 of 13

3) Requires the court to impose sanctions on the drafting party that materially breaches an arbitration agreement due to failure to pay fees or costs to initiate or continue the arbitration proceeding, such as any of the following:

   a) A monetary sanction ordering the drafting party to pay the reasonable expenses, including attorney's fees and costs, incurred by the employee or consumer as a result of the material breach.

   b) An evidence sanction by an order prohibiting the drafting party from conducting discovery in the civil action.

   c) A terminating sanction by one of the following orders:

      i. An order striking out the pleadings or parts of the pleadings of the drafting party.

      ii. An order rendering a judgment by default against the drafting party.

   d) A contempt sanction by an order treating the drafting party as in contempt of court.

4) Revises the definition of certain existing terms under the CAA, and defines new terms as follows:

   a) "Consumer" means an individual who seeks, uses, or acquires, by any means, any goods or services whether tangible or intangible, physical or electronic, in whole or in part, for personal, family, or household purposes.

   b) "Drafting party" means the company or business that included a predispute arbitration provision in a contract with a consumer or employee. The term includes any third party relying upon, or otherwise subject to the arbitration provision, other than the employee or consumer.

   c) "Employee" means any current employee, former employee, or applicant for employment. The term includes any person who is, was, or who claims to have been misclassified as an independent contractor or otherwise improperly placed into a category other than employee or applicant for employment.

5) Requires an arbitration company that administers, or is otherwise involved in a consumer arbitration, to also include in the required report the demographic data relative to ethnicity, race, disability, veteran status, gender, gender identity, and sexual orientation of all arbitrators as provided by the arbitrators.

6) Makes various legislative findings and declarations.

WP0100

SB 707 (Wieckowski)
Page 6 of 13

## COMMENTS

1. <u>Stated need for the bill</u>

The author writes:

> With SB 707, individuals who have been forced to submit to mandatory
> arbitration to resolve an employment or consumer dispute would be provided
> with procedural options and remedies under this bill when a company stalls or
> obstructs the arbitration proceeding by refusing to pay the required fees.

> The bill will also require arbitration companies to report the same kind of
> demographic information that our judiciary is required to report (including
> gender, race and ethnicity). The purpose of this is to hopefully galvanize some
> better recruitment and hiring practices by the arbitration companies and
> highlight the fact that arbitration cannot be a fair process when the arbitrators do
> not remotely reflect the diverse experiences and backgrounds of the people who
> are bringing their claims before them, or are forced to bring their claims before
> them, which is very often the case.

2. <u>Troubling trend emerging in employment arbitration</u>

   a. *Background*

Arbitration is a method of alternative dispute resolution where the disputing parties are
required as a matter of law to present their disagreement to one or more private third-
party arbitrators whose decisions are generally final and binding, instead of litigating
the issues in court. Mandatory arbitration clauses, especially in employment and
consumer contracts, have been a topic of significant controversy over the years as a
form of alternative dispute resolution. Generally, supporters of arbitration assert that
private arbitration provides a cheaper, faster, more efficient form of dispute resolution
than the overburdened courts because they are able to limit discovery, set their own
rules for presenting evidence, schedule proceedings at their own convenience, and
select the private arbitrator who will decide their cases.

Recently, a concerning and troubling trend has arisen: employers are refusing to pay
required fees to initiate arbitration, effectively stymieing the ability of employees to
assert their legal rights. For example, Uber won a ruling from the U.S. Ninth Circuit
Court of Appeals that required drivers who worked for the company to bring their
wage claims on an individual basis in arbitration and prohibited them from proceeding
as a class.[1] As a result of this ruling, 12,500 drivers for Uber were forced to file

---

[1] *O'Connor v. Uber Techs.* (2018) 904 F.3d 1087.

SB 707 (Wieckowski)
Page 7 of 13

individual arbitration demands in order to have their claims heard.[2] However, very few of these driver's cases have proceeded. Reuters reported:

> Of the 12,500 arbitration demands filed by Uber drivers, the company has paid the requisite JAMS initial filing fee in just 296 cases, according to a newly filed petition by drivers seeking to compel Uber to pay the fees JAMS requires to launch arbitration. So far, arbitrators have been appointed in only 47 of the cases drivers have brought against Uber – and Uber has paid the arbitrator's nonrefundable $1,500 retainer fee in a mere six cases. (Under Uber's arbitration provisions, it's up to the company to pay initial arbitration fees.) [3]

This situation is exacerbated by the fact that:

> "[w]hen [Uber] was in federal court litigating to enforce its arbitration provisions, the drivers' filings said, Uber assured the 9th Circuit that it would pay the necessary fees to allow drivers to arbitrate their claims individually. But now that drivers have actually filed demands, their lawyers said, Uber has repudiated those representations."[4]

Unfortunately, this situation is not an isolated one. Lyft has also been accused of preventing 3,420 drivers from moving forward on their individual arbitration claims against the company by refusing to pay the initiation fee and case management fee.[5]

Then there is the saga of Chipotle employees who have been trying since July 2013 to have their claims of wage theft adjudicated. Much like in the case of Uber, more than 2,800 employees were required by the court to have their claims for back pay heard individually in arbitration due to an arbitration agreement Chipotle required employees to sign. Ironically, Chipotle is claiming "that the tide of arbitrations could cause it 'irreparable harm'" and asked the court to suspend the arbitration filings.[6] The court denied both motions and stated "Chipotle's attempts to delay and obfuscate the claims of the Arbitration Plaintiffs in both the courts and in arbitration (the forum to which it required these employees to submit) are unseemly."[7] Chipotle continued to frustrate the

---

[2] Frankel, Alison, *Forced into arbitration, 12,500 drivers claim Uber won't pay fees to launch cases*, Reuters (Dec. 6, 2018), available at https://www.reuters.com/article/legal-us-otc-uber/forced-into-arbitration-12500-drivers-claim-uber-wont-pay-fees-to-launch-cases-idUSKBN1O52C6  (as of Apr. 15, 2019).

[3] *Id*.

[4] *Id*.

[5] Frankel, Alison, *3,420 Lyft drivers claim the company won't pay arbitration fees to launch their cases*, Reuters (Dec. 14, 2018) available at https://www.reuters.com/article/legal-us-otc-lyft/3420-lyft-drivers-claim-the-company-wont-pay-arbitration-fees-to-launch-their-cases-idUSKBN1OD2KC  (as of Apr. 15, 2019).

[6] Hitzik, Michael, *Chipotle may have outsmarted itself by blocking thousands of employee lawsuits over wage theft*, L.A. Times (Jan. 4, 2019), available at https://www.latimes.com/business/hiltzik/la-fi-hiltzik-chipotle-20190104-story.html (as of Apr. 15, 2019).

[7] Order Denying Defendant Chipotle Mexican grill, Inc's Motion for Entry of Judgement Pursuant to Fed. R. Civ. P. 54(B) (ECF No. 202) and Motion to Reinstate Stay (ECF No. 203), Kane, J., Case No. 1-14-cv-

SB 707 (Wieckowski)
Page 8 of 13

efforts of its employees to have their claims adjudicated by failing to pay its share of the filing fee.[8] Six years later not a single claim has been heard.

    *b. Failure to pay required fees and costs is material breach of arbitration agreement*

In *Brown v. Dillard's, Inc*, the Ninth Circuit held that refusal to participate in arbitration was a material breach of the arbitration agreement and prohibited the breaching party from asserting its right to arbitrate under the agreement.[9] The court held:

> If we … allowed [an employer] to compel arbitration notwithstanding its breach of the arbitration agreement, we would set up a perverse incentive scheme […] When a defendant in a judicial forum refuses to respond to a complaint that is properly filed and served, the court has the power to enter and enforce a default judgment. Arbitration works differently. The American Arbitration Association could not compel Dillard's to pay its share of the filing fee, and in the absence of the fee it could not proceed. Brown had no choice but to come to court. Many people in Brown's position would simply have given up. Because she did not, we have the occasion to make clear that when an employer enters into an agreement requiring its employees to arbitrate, it must participate in the process or lose its right to arbitrate.[10]

In *Sink v. Aden Enterprises*, the Ninth Circuit affirmed the district court's finding that a party is in default of an arbitration agreement if it fails to pay required arbitration fees.[11] The court stated that interpreting the FAA to allow a party refusing to cooperate with arbitration to indefinitely postpone litigation is "inconsistent with the structure and purpose of the FAA."[12]

    *c. Narrowly tailored response to address an identified issue*

In response to this emerging trend, this bill seeks to affirm that when a company refuses to pay fees required under an employment or consumer arbitration agreement it is in material breach of the arbitration agreement, is in default of the arbitration, and waives its right to compel arbitration and provide procedural options to remedy the breach of contract. In order to deter companies and employers from strategically withholding the payment of arbitration fees, the company in breach is required to pay reasonable attorney's fees and costs and the court is required to impose sanctions. The U.S. Supreme Court has declared that the FAA represents Congress's intent "to move the

---

02612-JLK, Document 212, (Nov. 20, 2018), U.S.D.C. Colorado available at
https://assets.documentcloud.org/documents/5669713/Chipotle-Judge-Denies-Stay-Clean.pdf  (as of Apr. 14, 2019).
[8] *Id.*
[9] *Brown v. Dillard's, Inc*, (2005) 430 F.3d 1004.
[10] *Id.* at 1012-1013.
[11] *Sink v. Aden Enters.* (2003) 32 F.3d 1197.
[12] *Id.*

SB 707 (Wieckowski)
Page 9 of 13

parties to an arbitrable dispute out of court and into arbitration as quickly and easily as possible."[13] As these procedures are intended to stop behavior that would undermine the intent of Congress, this measure should not frustrate the purposes of the FAA.

   *d.  Statements of support*

One of the sponsors of the bill, CELA, writes:

> These cases highlight a glaring loophole in this new era of mandatory arbitration: workers and consumers must submit to arbitration, while corporations may choose their forum by either submitting to arbitration or stalling the process back to court by refusing to pay fees. This tactic typically occurs at two stages in the arbitration process. First, a company could refuse to pay the initial filing fee, which would stall the commencement of the arbitration proceedings – causing costly delays that jeopardize an employee's ability to find evidence and witnesses – and forcing the case to restart in court. Second, a company could refuse to pay fees during the course of the arbitration proceedings – often, to prevent the release of a judgment or award favorable to the worker. Stalling the arbitration in this scenario can be even more damaging and prejudicial, as the employee or consumer has likely already invested significant resources to develop their case. Moreover, even if a case could be restarted in court, all of the work and findings from the arbitration proceeding does not carry over to the new court proceeding. Thus, without clear procedures, consumers and employees are saddled with the consequences of a stalled case, forcing them to abandon their claim or invest even more resources to relitigate in court. SB 707 aims to provide a clear process and remedies for consumers and employees in the event that the company fails to pay its required arbitration fees.

The other sponsor of the bill, CAOC, writes:

> Forced arbitration provisions have become an ever-growing aspect of consumer transactions and employment relationships. Over half of America's workforce has been forced to sign arbitration agreements as a condition of employment. Under these terms, consumers and workers whose rights have been violated cannot pursue their claims in court, and instead must submit their claims to an arbitration proceeding that overwhelmingly favors businesses and employers.

> With workers and consumers then barred from court, businesses are able to strategically withhold payment to the arbitration service provider to obstruct the arbitration proceeding and the ability to pursue a claim.

---

[13] *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, (1983) 460 U.S. 1, at 22.

SB 707 (Wieckowski)
Page 10 of 13

  *e. Statements in opposition*

Opponents of the bill, a coalition of various business organizations, write:

> While we agree with the notion that the failure of a drafting party to intentionally
> pay for a significant amount of the arbitrator's fees in an effort to avoid or delay
> the arbitration, should allow the employee or consumer to proceed to civil court,
> the remaining sanctions and damages proposed in SB 707 are completely
> unjustified, unreasonable, and unprecedented […]

Opponents also raise concerns over the definition of "consumer" and "employee," over
what constitutes a material breach under the provisions of the bill, the remedies provided
for that breach, and the various sanctions in the bill.

3. <u>Demographic data reporting</u>

  *a. Applying existing demographic reporting requirements for the judiciary to
   arbitration companies*

Under existing law, the Governor is required to collect and release, on an aggregate
statewide basis so as not to identify any individual, information regarding the
demographic data relative to ethnicity, race, disability, veteran status, gender, gender
identity, and sexual orientation of judicial applicants, judicial appointees, and judicial
nominees as provided by them and the percentage of respondents who declined to
respond. (Gov. Code § 12011.5(n)(1) & (n)(5).)  This bill seeks to apply this same
requirement to private arbitration companies by requiring arbitration companies to
include this information in the report they are already required under existing law to
provide to the public.

  *b. Statements of support*

CELA, one of the sponsors of the bill writes:

> The alarming lack of diversity in the arbitration industry […] calls into question
> the ability of the industry to fairly adjudicate claims brought by an increasingly
> diverse workforce in California […] The value of diversity in our justice system
> cannot be overstated – to have a jury of one's peers is enshrined in our
> Constitution. In California, "[i]ncreasing the diversity of California's judicial
> officers to reflect the rich diversity of California's populace" is a "key goal" and
> for thirteen years the state has been collecting demographic information of its
> judges and justices in order to track this commitment. However, these values and
> commitments to diversity lie fallow when more and more cases are forced into
> arbitration, a privatized justice system where there is no oversight or
> accountability, particularly when it comes to who is arbitrating these cases.

WP0105

SB 707 (Wieckowski)
Page 11 of 13

CAOC, another sponsor of the bill writes:

> Our courts have made advancements in diversity over the decades and this is not
> the case among private arbitration companies.  Data should be collected and
> reported in order to better evaluate the issue.

*c.   Statements in opposition*

Opponents of the bill, a coalition of various business organizations, write:

> There is no justification that requires a private company to intrude upon the
> privacy of an individual and require them to disclose such personal information.

*d.   Author's amendments*

The author has offered the following clarifying amendments to align the demographic
data reporting requirement for arbitration companies in this bill with the reporting
requirement for judicial applicants, judicial appointees, and judicial nominees.

The specific amendments are as follows:

<u>Amendment 1</u>
On page 3, at line 38, strike out "(2010)" and insert:
 (2003)

<u>Amendment 2</u>
On page 6, at line 34, strike out "data" and insert:
data, reported in the aggregate,

<u>Amendment 3</u>
On page 6, at line 36, strike out "provided" and insert:
self-reported

<u>Amendment 4</u>
On page 6, at line 36, after "arbitrators." insert:
Demographic data disclosed or released pursuant to this subdivision shall also
indicate the percentage of respondents who declined to respond.

## **SUPPORT**

California Employment Lawyer's Association (sponsor)
Consumer Attorneys of California (co-sponsor)
California Conference Board of the Amalgamated Transit Union
California Conference of Machinists

SB 707 (Wieckowski)
Page 12 of 13

California Teamsters
Engineers and Scientists of California, IFPTE Local 21, AFL-CIO
Inlandboatmen's Union of the Pacific
PolicyLink
SEIU California
UNITE-HERE, AFl-CIO
Utility Workers of America

## OPPOSITION

Acclamation Insurance Management Services
Allied Managed Care
California Association of Winegrape Growers
California Chamber of Commerce
California Hospital Association
California League of Food Producers
California Manufacturers and Technology Association
California Restaurant Association
California Retailers Association
California Trucking Association
Flasher Barricade Association
Official Police Garages of Los Angeles
Securities Industry and Financial Markets Association

## RELATED LEGISLATION

Pending Legislation:

AB 692 (Maienschein, 2019) provides that the statute of limitations for filing an action
against an attorney for a wrongful act or omission arising from the performance of
professional services is to be tolled during a dispute between a lawyer and client
concerning fees, costs, or both, as specified, and the provisions regarding tolling the
statutes of limitations are triggered any time arbitration is requested following an
attorney commencing an action in court or any other proceeding. The bill is currently
pending referral in the Senate Rules Committee.

Prior Legislation:

AB 3247 (Assembly Committee on Judiciary, Ch. 10, Stats. 2018) specified that if a court
determines that grounds exist for rescission of an arbitration agreement then the court
does not have to enforce the arbitration agreement.

SB 33 (Dodd, Ch. 480, Stats. 2017) added instances in which a state or federally
chartered depository institution is seeking to apply a written agreement to arbitrate,
contained in a contract consented to by a respondent consumer, to a purported

WP0107

SB 707 (Wieckowski)
Page 13 of 13

contractual relationship with that consumer that was created by the petitioner fraudulently without the consumer's consent and by unlawfully using the consumer's personal identifying information as a determination a court can make which results in an arbitration agreement not being enforceable .

SB 1007 (Wieckowski, Ch. 626, Stats. 2016) provide that a party to an arbitration has the right to have a certified shorthand reporter transcribe any deposition, proceeding, or hearing as the official record, as specified.

SB 1078 (Jackson, 2016) would have required the disclosure of any solicitation made within the last 2 years by, or at the direction of, a private arbitration company to a party or lawyer for a party in a consumer arbitration, and prohibited solicitation of a party or lawyer for a party during the pendency of the arbitration, as specified. The bill was vetoed by then Governor Brown.

AB 1005 (Alejo, Ch. 113, Stats. 2013) expanded the diversity reporting requirements for judicial applicants, appointees, and nominees to include data relative to disability and veteran status, as specified.

SB 182 (Corbett, Ch.720, Stats. 2012), expanded the diversity reporting requirements for judicial applicants, appointees, and nominees to include voluntarily-provided gender identity and sexual orientation data about judicial applicants, appointees, and sitting judges.

SB 56 (Dunn, Ch. 390, Stats. 2006) required, among other things, the Governor to disclose aggregate statewide demographic data relating to ethnicity and gender provided by all judicial applicants, appointees, and sitting judges, as specified.

**************

Date of Hearing:  June 18, 2019

ASSEMBLY COMMITTEE ON JUDICIARY
Mark Stone, Chair
SB 707 (Wieckowski) – As Amended May 20, 2019

**SENATE VOTE**: 29-8

**SUBJECT**:  ARBITRATION  AGREEMENTS:  BREACH  BY DRAFTING  PARTY:
ENFORCEMENT

**KEY ISSUES**:

1)  SHOULD THE DRAFTING PARTY OF AN EMPLOYMENT OR CONSUMER
RELATED  ARBITRATION  AGREEMENT  THAT FAILS TO PAY FOR A
SUBSEQUENT ARBITRATION  PROCEEDING BE SUBJECT TO SANCTIONS?

2)  SHOULD THE FAILURE OF A DRAFTING PARTY TO PAY THE REQUIRED COSTS
AND FEES ASSOCIATED WITH THE ARBITRATION  PROCEEDING PERMIT AN
EMPLOYEE OR CONSUMER OTHERWISE REQUIRED TO ARBITRATE THEIR
CLAIMS TO SEEK REDRESS IN COURT?

3)  SHOULD ARBITRATION  COMPANIES BE REQUIRED TO PUBLISH SPECIFIED
DEMOGRAPHIC INFORMATION REGARDING  ARBITRATORS?

## SYNOPSIS

*Arbitration is a controversial form of alternative dispute resolution held outside of courts where
a third-party, typically a retired judge, makes a binding determination in favor of one party to
the proceeding.  Proponents of arbitration highlight that arbitration can be a more efficient and
somewhat lower cost alternative to litigation.  Opponents of arbitration contend that decisions
can frequently favor the more powerful drafting party, and that rules of evidence or civil
procedure can be limited or waived.  Despite the ongoing debate over the merits of arbitration,
the United States Supreme Court has liberally interpreted the Federal Arbitration Act to preempt
state laws regarding arbitration, resulting in arbitration provisions becoming a dominant
feature of nearly every employment and consumer contract, contracts that frequently are take-it-
or-leave-it contracts of adhesion.  Recognizing  that arbitration is frequently foisted on
consumers and employees by the party drafting these contracts of adhesion, courts have
generally required the drafting party to pay for the cost and fees associated with the arbitration
as a matter of basic fairness.  While case law requires such payment in California, the existing
law remains unclear about what remedies an employee or consumer has if a drafting party failed
to pay for the arbitration in a timely manner.*

*Seeking to provide employees and consumers with a clear set of alternatives in the event a
drafting party fails to pay for arbitration, this bill offers several remedies.  First, this bill
provides that if a drafting party fails to pay any costs or fees associated with the arbitration
within 30 days of the passing of the due date, the consumer or employee is free to remove the
matter to court, or continue with arbitration and seek the recovery of the costs and fees.
Additionally, to deter drafting parties from reneging on their obligation to pay the arbitration-
related costs and fees, this bill imposes mandatory monetary sanctions on drafting parties and*

*permits the adjudicatory body to impose additional evidentiary or related sanctions on the drafting party. Finally, recognizing that there is currently little information on the demographics of arbitrators, this bill would require arbitration companies to publish self-reporting demographic data voluntarily collected from the arbitrators they employ.*

*This bill is sponsored by the California Employment Lawyers Association and the Consumer Attorneys of California and is supported by several other labor or consumer protection organizations. The support coalition, representing the parties most likely to find themselves trapped in an unfunded arbitration proceeding, argue that this bill provides employees and consumers with clear remedies in the event that a drafting parties fails to live up to its clear obligations under state law. This measure is opposed by the California Chamber of Commerce and a coalition of business organizations who believe that the current provisions of the bill providing that any failure to pay for arbitration, even a small non-payment, subjects the drafting party to significant sanctions, go too far.*

**SUMMARY:**  Provides that the drafting party of a commercial or employment related arbitration agreement is in material breach of the arbitration agreement if the drafting party fails to pay, as required by existing law, specified costs and fees associated with the arbitration proceeding.  Specifically,  **this bill**:

1)  Adds the following definitions to the California Arbitration Act:

   a)  "Consumer" means an individual who seeks, uses, or acquires, by purchase or lease, any goods or services for personal, family, or household purposes;

   b)  "Drafting party" means the company or business that included a predispute arbitration provision in a contract with a consumer or employee.  The term includes any third party relying upon, or otherwise subject to the arbitration provision, other than the employee or consumer; and

   c)  "Employee" means any current employee, former employee, or applicant for employment. The term includes any person who is, was, or who claims to have been misclassified as an independent contractor or otherwise improperly placed into a category other than employee or applicant for employment.

2)  Provides that in an employment or consumer arbitration that requires, either expressly or through application of state or federal law or the rules of the arbitration administrator, the drafting party to pay certain fees and costs before the arbitration can proceed, if the fees or costs to initiate an arbitration proceeding are not paid within 30 days after the due date, the drafting party is in material breach of the arbitration agreement, is in default of the arbitration, and waives its right to compel arbitration pursuant to existing law.

3)  Provides that in the event of a material breach of an arbitration agreement pursuant to 2), an employee or consumer may do the following:

   a)  Withdraw the claim from arbitration and proceed in a court of appropriate jurisdiction; or

   b)  Compel arbitration in which the drafting party shall pay reasonable attorney's fees and costs related to the arbitration.

4)  Provides that if an employee or consumer withdraws a claim from arbitration pursuant to 3), the statute of limitations with regard to all claims brought or that relate back to any claim brought in arbitration shall be tolled as of the date of the first filing of a claim in any court, arbitration forum, or other dispute resolution forum.

5)  Provides that if the employee or consumer proceeds with an action in a court of appropriate jurisdiction, pursuant to 3), the court shall impose sanctions on the drafting party in accordance with 10) and 11).

6)  Provides that in an employment or consumer arbitration that requires, either expressly or through application of state or federal law or the rules of the arbitration provider, that the drafting party pay certain fees and costs during the pendency of an arbitration proceeding, if the fees or costs required to continue the arbitration proceeding are not paid within 30 days after the due date, the drafting party is in material breach of the arbitration agreement, is in default of the arbitration, and waives its right to compel employee or consumer to proceed with that arbitration as a result of the material breach.

7)  Provides that in the event of a material breach of an arbitration agreement pursuant to 6), an employee or consumer may unilaterally elect to do any of the following:

   a)  Withdraw the claim from arbitration and proceed in a court of appropriate jurisdiction, and provides that the statute of limitations with regard to all claims brought or that relate back to any claim brought in arbitration shall be tolled as of the date of the first filing of a claim in any court, arbitration forum, or other dispute resolution forum;

   b)  Continue the arbitration proceeding, if the arbitration company agrees to continue administering the proceeding, notwithstanding the drafting party's failure to pay fees or costs and permit the neutral arbitrator or arbitration company to commence a collection action at the conclusion of the arbitration proceeding against the drafting party that is in default of the arbitration for payment of all fees associated with the employment or consumer arbitration proceeding, including the cost of administering any proceedings after the default.

   c)  Petition the court for an order compelling the drafting party to pay all arbitration fees that the drafting party is obligated to pay under the arbitration agreement or the rules of the arbitration company; or

   d)  Pay the drafting party's fees and proceed with the arbitration proceeding and permit, as part of the award, the employee or consumer to recover all arbitration fees paid on behalf of the drafting party without regard to any findings on the merits in the underlying arbitration.

8)  Provides that if an employee or consumer withdraws a claim from arbitration pursuant to 7) both of the following shall apply:

   a)  The employee or consumer may bring a motion, or a separate action, to recover all attorney's fees and all costs associated with the abandoned arbitration proceeding, and the eventual recovery of arbitration fees, interest, and related attorney's fees shall be without regard to any findings on the merits in the underlying action or arbitration; and

b)  The court shall impose sanctions on the drafting party in accordance with 10) and 11).

9)  Provides that if the employee or consumer continues in arbitration pursuant to 7), the arbitrator may pose appropriate sanctions on the drafting party, including monetary sanctions, issue sanctions, evidence sanctions, or terminating sanctions.

10) Requires the court to impose a monetary sanction against a drafting party that materially breaches an arbitration agreement pursuant to 2) or 6) by ordering the drafting party to pay the reasonable expenses, including attorney's fees and costs, incurred by the employee or consumer as a result of the material breach.

11) Permits the court, in addition to the monetary sanctions imposed pursuant to 10) to impose any of the following sanctions against a drafting party that materially breaches an arbitration agreement pursuant 2) or 6), unless the court finds that the drafting party subject to the sanction acted with substantial justification or that other circumstances make the imposition of the sanction unjust:

a)  An evidence sanction by an order prohibiting the drafting party from conducting discovery in the civil action;

b)  A terminating sanction that strikes out the pleadings, or parts thereof, by the drafting party or rendering a judgment by default against the drafting party; or

c)  A contempt sanction by an order treating the drafting party as in contempt of court.

12) Requires an arbitration company that administers, or is otherwise involved in a consumer arbitration, to also include in the required report the demographic data relative to ethnicity, race, disability, veteran status, gender, gender identity, and sexual orientation of all arbitrators as provided by the arbitrators.

13) Makes various findings and declarations providing that existing state and federal case law, generally, holds that the drafting party in an employment or consumer arbitration agreement is obligated to pay for the fees and costs associated with arbitration and that a failure to do so renders the arbitration agreement in breach. Provides that the intent of this bill is to affirm the existing case law into statute.

14) Adopts a severability clause.

**EXISTING LAW**:

1)  Governs arbitrations in California, pursuant to the California Arbitration Act (CAA), including the enforcement of arbitration agreements, rules for neutral arbitrators, the conduct of arbitration proceedings, and the enforcement of arbitration awards. (Code of Civil Procedure Section 1280 *et seq.*)

2)  Provides that on petition of a party to an arbitration agreement alleging the existence of a written agreement to arbitrate a controversy and that a party thereto refuses to arbitrate such controversy, the court shall order the petitioner and the respondent to arbitrate the controversy if it determines that an agreement to arbitrate the controversy exists, unless the court determines specified grounds exist. (Code of Civil Procedure Section 1281.2.)

3)  Provides that if a court of competent jurisdiction has ordered arbitration of a controversy which is an issue involved in an action or proceeding before a court of this state, the court in which such action or proceeding is pending shall, upon a motion of a party, stay the action or proceeding until an arbitration is conducted.  (Code of Civil Procedure Section 1281.4.)

4)  States that if an arbitration agreement provides a method of appointing an arbitrator, that method shall be followed.  Additionally states that if an arbitration agreement does not provide a method for appointing an arbitrator, the parties to the agreement who seek arbitration and against whom arbitration is sought may agree on a method of appointing an arbitrator and that method shall be followed.  (Code of Civil Procedure Section 1281.6.)

5)  Prohibits, generally, a private arbitration company from administering a consumer arbitration if the company has, within the previous year, had a financial interest in any party to the case, or representative thereof.  (Code of Civil Procedure Section 1281.92.)

6)  Requires an arbitration company that administers or is otherwise involved in a consumer arbitration to publish and make available to the public, as specified, a single cumulative report that contains certain information, including the name of the arbitrator, the arbitrator's fee for the case, the percentage of the fee the arbitrator collected, and whether a fee waiver was granted.  (Code of Civil Procedure Section 1281.96.)

7)  Provides that, among other behaviors, it is a misuse of the discovery process to utilize tactics that result in unwarranted annoyance, embarrassment, or oppression, or undue burden and expense.  (Code of Civil Procedure Section 2023.010.)

8)  Provides that the court may impose monetary sanctions on any person engaging in the misuse of the discovery process, or any attorney advising that conduct, or both pay the reasonable expenses, including attorney's fees, incurred by anyone as a result of that conduct.  (Code of Civil Procedure Section 2023.030 (a).)

9)  Provides that the court may impose an evidentiary sanction by an order prohibiting any party engaging in the misuse of the discovery process from introducing designated matters in evidence.  (Code of Civil Procedure Section 2023.030 (c).)

10) Requires the Governor, the State Bar, and the Administrative Office of the Courts to collect and release each year, on an aggregate statewide basis, specified information regarding the demographic data relative to ethnicity, race, disability, veteran status, gender, gender identity, and sexual orientation of judicial applicants, judicial appointees, or judicial nominees, as provided by them, and the percentage of respondents who declined to respond. (Government Code Section 12011.5 (n).)

**FISCAL EFFECT**:  As currently in print this bill is keyed non-fiscal.

**COMMENTS**: Recognizing that many arbitration agreements are placed into contracts of adhesion, this bill seek to protect employees and consumers by ensuring that the party that drafts the arbitration agreement cannot delay adjudication of a dispute by refusing to participate in, or pay for, arbitration.  Specifically, building on an existing body of case law, this bill would hold that if the fees or costs required to initiate or continue an arbitration proceeding are not paid by the drafting party within 30 days of the due date, that party is in default of the agreement and the

employee or consumer may seek to pursue their claims in court and trigger sanctions on the drafting parties.  In support of this bill, the author states:

> SB 707 ensures that individuals who have been forced to submit to mandatory arbitration to resolve an employment or consumer dispute would be provided with procedural options and remedies under this bill when a company stalls or obstructs the arbitration proceeding by refusing to pay the required fees.

***As arbitration provisions have become ubiquitous in employment and consumer contracts, the parties drafting these adhesion contracts have gained significant advantages.***  Arbitration is a form of alternative dispute resolution held outside of courts where a third-party, rather than a judge, makes a binding decision regarding a potential award that is rarely appealable. Arbitration can pose significant difficulties for the party forced to adjudicate its claims outside of court.  Existing law permits arbitration agreements to contain limits on evidence presented and the claims that can be considered.  Arbitration can also save employers and providers of consumer goods and services significant time and costs when compared to court, thus there is little question why the more powerful signatory to a contract would demand arbitration.

Most arbitration agreements are contained within a broader contract, usually a contract that is adhesive or take-it-or-leave-it.  The arbitration agreement will lay-out the procedures that will be followed during the arbitration hearing.  For example, the terms of the arbitration agreement may stipulate that the award need not be written or justified, unlike in court, and that the entire process be kept in secret.  Arbitrators do not need to be lawyers, nor do they need to be trained in the law.  Arbitrators who issue favorable awards to a particular company can be repeatedly-hired by that same company to serve as the arbitration-neutral without ever notifying the public about that award-history.  It's easy to predict the calls if you can hire the umpire.

Over the past twenty years, federal courts have significantly expanded the validity of arbitration provisions in contracts of adhesion and considerably infringed on state's ability to regulate such agreements.  (*See, e.g.*, *AT&T Mobility LLC v. Concepcion* (2011) 562 U.S. 333.)  Recognizing that many arbitration agreements are contained within contracts of adhesion, courts have sought to add some modicum of fairness to the process by holding that in such contracts, especially when statutory rights are being arbitrated, the agreements cannot require the employee or consumer to "pay either unreasonable costs or any arbitrators' fees or expenses as a condition of access to the arbitration forum."  (*Cole v. Burns International Security Services* (1997) 105 F.3d 1465, 1482.)  In California, both state and federal courts have adopted the standard utilized by the United States Court of Appeals for the District of Columbia Circuit in the *Cole* decision. Accordingly, any time an employment or consumer contract requires arbitration, the drafting party should be paying the associated fees.

Given that employees and consumers frequently possess little if any choice in agreeing to arbitrate claims, the requirement that a drafting party pay for the cost of the arbitration is wholly reasonable.  However, when the drafting party fails to properly pay for the arbitration, existing law does not provide the employee and customer with a clear means to redress their harms. Although courts have held that such failures to pay for arbitration may be grounds to invalidate an arbitration agreement, state law does not provide clear guidance for courts and litigants in the event a drafting party fails to properly pay to commence arbitration in a timely manner.

***While existing case law requires the drafting party to pay for arbitration, some companies fail to comply with these requirements.***  As remedies for employees and consumers have narrowed,

the rate of arbitration  filings  has increased  significantly.   For example,  after Uber won the right
to prohibit  its drivers  from contesting  wage claims  as a class, the company was forced to
arbitrate  the claims  of over 12,500 drivers.   (*O'Connor v. Uber Techs.* (2018) 904 F.3d 1087.)
Similarly,  the burrito chain Chipotle  was forced to arbitrate  over 2,800 wage theft claims  in
recent years.  While proponents  of arbitration  continue  to argue that it is a cheaper, faster, more
efficient  way to resolve  disputes  in comparison  to the overburdened  court system,  arbitration
requirements  can quickly  burdensome  for companies  facing  significant  numbers of claims.

Though  there is a significant  degree of irony that many company's strident  instance  on inserting
class action waivers into arbitration  agreements  is now burdening  their corporate  legal
departments  with thousands  of individual  claims  in arbitration,  the side effect of such actions  are
now being  felt by employees  and consumers  as well as the companies.   For example,  of the
12,500 demands  for arbitration  filed by Uber drivers,  the company  has only paid its initial  filing
fee in 296 cases.  (Frankel,  Alison,  *Forced into arbitration, 12,500 drivers claim Uber won't pay
fees to launch cases*, Reuters  (Dec. 6, 2018).)  As a result,  only 47 arbitrators  have been
appointed  to handle the Uber disputes;  of those, Uber has only paid the $1,500 retention  fee in
six cases.  (*Ibid.*)  Paradoxically,  by refusing  to pay the arbitration  costs and fees as required  by
law, Uber and other similarly  situated  companies  are managing  to delay the adjudication  of
claims  and postpone  the payment  of any potential  judgments  against  the company  in the name of
a process  that is supposed  to be cheaper and easier for the parties.   Because  existing  case law
forces companies  to pay for arbitration,  but does not provide  clear remedies  for employees  or
consumers  who are caught in limbo by unpaid arbitration  fees, this lack of clarity  means that a
drafting  party can avoid the consequences  of their behavior  by not paying for the dispute  to be
arbitrated.

***This bill.***  Recognizing  that the failure  of a drafting  party to pay arbitration  fees in a timely
manner  can inflict  significant  harm on consumer  and employees,  this bill adds several  provisions
to existing  law to enable  employees  and consumers  to seek redress  of their claims  in a timely
manner,  and establishes  disincentives  to ensure that such behavior  does not occur in the first
place.

First, this bill provides  that any drafting  party that fails to pay the fees necessary  to commence  or
continue  arbitration,  within 30 days after such fees being  due to be tendered  to the arbitrator,  the
drafting  party is held to have materially  breached  the arbitration  and is in default  of the
agreement.

Second,  this bill provides  consumers  or employees  several  remedies  in the event a drafting  party
breaches  the arbitration  agreement  by failing  to pay the arbitration  costs and fees.  The bill would
permit,  should  the drafting  party fail to pay the costs necessary  to commence  arbitration,  the
employee  or consumer  to remove the matter to court or move to compel  the arbitration.   In the
event that the drafting  party fails to pay the fees or costs necessary  to continue  an arbitration
currently  in progress,  the bill enables  the employee  or consumer  to move the matter to court,
seek a court order compelling  the payment  of the fees, continue  the arbitration  and permit the
arbitrator  to seek collection  of their fees, or pay the costs and fees and seek those fees from the
drafting  party at the conclusion  of the arbitration  regardless  of the ultimate  outcome.

Finally,  to deter drafting  parties  from failing  to pay arbitration  costs and fees in a timely  manner,
this bill imposes  mandatory  monetary  sanctions  on any drafting  party found to be in default  of an

arbitration agreement for failure to pay costs and fees, and permits the imposition of additional evidentiary, terminating, or contempt sanctions, as the court or arbitrator sees fit.

Furthermore, recognizing that the state has very little information regarding the demographics of those serving as arbitrators, this bill would require arbitration companies to report demographic data, on an aggregate basis, regarding the ethnicity, race, disability status, veteran status, gender, gender identity, and sexual orientation of all arbitrators. The bill would permit this information to be provided on a self-reporting basis by arbitrators and would require the arbitration company to disclose the percentage of arbitrators who declined to respond.

***Justice delayed is justice denied.*** As noted above, employees and consumers forced to arbitrate claims against large companies are at a distinct disadvantage. Should the ambiguity in existing statutes permit companies that draft arbitration agreements to delay the adjudication of claims, these drafting parties can simply deny claimants any semblance of justice by simply refusing to pay for the arbitration they contracted for. Indeed, if such a system were permitted to continue, courts have suggested this would create a, "perverse incentive scheme" whereby "employers… would have an incentive to refuse to arbitrate claims brought by employees in the hope that the frustrated employees would simply abandon them." (*Brown v. Dillards, Inc.* (2005) 430 F.3df 1004, 1012.)

To ensure that a drafting party cannot unilaterally prevent a party from adjudicating their claims in the forum that the drafting party unilaterally foisted onto the claimant, this bill would provide employees and consumers remedies if a drafting party refuses to pay. Most importantly, this bill provides employees and consumers to get their claim adjudicated in the venue of their choice in a timely manner.

***The sanctions provided in this bill are intended to deter bad actors.*** In opposition to this measure, the California Chamber of Commerce, and a coalition of business organizations, object to the provisions of this bill providing that failure to pay arbitration costs and fees in a timely manner constitutes a material breach of a contract. A material breach is typically viewed as a breach of contract so serious as to permit the non-breaching party to excuse additional performance of the contract, in this case remain in arbitration. Not only would this bill excuse the performance of the contract in the case of a material breach, but it would also impose sanctions on the breaching party. The California Chamber of Commerce notes that these provisions may impose sanctions even if, "the drafting party paid a majority of the fees and costs, but yet a small, minor portion was not paid." The opposition appears to argue that a relative small non-payment of arbitration fees or costs should not constitute a material breach of the contract.

The opposition is not incorrect in stating that a failure to pay the required costs and fees in full would expose a company to significant monetary penalties and potentially serious evidentiary sanctions or a contempt holding. However, this risk should also be viewed in light of the harm that the drafting party's breach of contract could impose on employees or consumers who are in limbo, with no avenue to pursue their legal rights. Particularly in employment matters, the plaintiff's livelihood may be the subject of the adjudication. Although a large company may view its failure to pay a few hundred dollars for arbitration as a minor, immaterial, mistake, that mistake may delay the hearing of an employee's claims. While immaterial to the drafting party, the ensuing delay associated with this minor error could be significant to the employee, who may not be able to pay bills, rent or other expenses that could result in the loss of their residence, or

damage to their credit rating, while the dispute remains unresolved. For example, when chastising Chipotle's request to delay the filing of arbitration claims on the grounds that the claims were overwhelming the company, the court stated that the company's attempt to delay and obfuscate the adjudication of claims was "unseemly." (Order Denying Defendant Chipotle Mexican Grill, Inc's Motion for Entry of Judgement Pursuant to Fed. R. Civ. P. 54(B) (ECF No. 202) and Motion to Reinstate Stay (ECF No. 203), Kane, J., Case No. 1-14-cv-02612-JLK, Document 212, (Nov. 20, 2018), U.S.D.C. Colorado.) Furthermore, as noted in the *Dillard's* case, a failure to stop such conduct would establish a perverse incentive for drafting parties to demand arbitration in a contract of adhesion and then refuse to pay the arbitrator when a claim was made. In light of the extreme hardship that needlessly delaying arbitration may cause to plaintiffs, the material breach and sanction provisions of this bill would seem to be a strict yet reasonable method to ensure the timely adjudication of employee and consumer claims that are subject to arbitration.

***This bill appears to narrowly target those who are most at risk from predatory arbitration delays.*** In keeping this bill in line with much of the existing case law, the author focuses on arbitration involving employment and consumer disputes. After negotiations between the stakeholders, the definition of consumer was narrowed in the Senate to only include persons who "purchase or lease" good and services. The bill currently defines an employee as, "any current employee, former employee, or applicant for employment" and includes any person who "is, was, or who claims to have been misclassified as an independent contractor," or otherwise misclassified in their employment.

Beyond the opposition to this bill stated by the California Chamber of Commerce and their associated coalition, the San Gabriel Valley Economic Partnership contends that the definition of employee provided by this bill is too broad. In particular, the Partnership objects to the inclusion of employees who allege they are misclassified as independent contractors. This objection appears to encompass many of the "gig economy" employees who have fought for years in courts and in arbitration to be properly classified under the law. The Partnership contends that, "under the proposed definition, this individual could request the company pay for the arbitrator…even if the actual contract between a company and independent contractor provides otherwise. If the company refuses to pay within 30 days on the basis that the individual is not an employee…this would be a material breach."

Ironically, many of the "independent contractors" that the San Gabriel Valley Economic Partnership would like to see pay their share of the fees actually involve employees misclassified as independent contractors. For example, entwined within the wage claims against Uber, discussed above, included allegations of employee misclassification. It should be noted that nothing in this bill would preclude an arbitrator from subsequently requiring a plaintiff to reimburse a drafting party for arbitration costs and fees should the arbitrator determine the plaintiff was in fact an independent contractor. Furthermore, the intent of the case law requiring the drafting party to pay for arbitration reflects the general belief that fairness dictates that the law "places the cost of arbitration on the party that imposes it." (*Armendariz v. Foundation Health Psychcare Services, Inc.* (2000) 24 Cal. 83, 111.) The case law notes that in the absence of such a rule there is "significant risk that employees will have to bear large costs to vindicate their statutory right." (*Id.* at p. 110.) Many of the independent contractors in the "gig economy" face similar economic hardships as employees. Recognizing that the intent of the case law this bill seeks to codify is to protect the economically vulnerable party in an arbitration, including

misclassified workers, incorporating such plaintiffs into the definition of employee seems wholly consistent with the case law and is a reasonable component this bill.

**Changes in corporate circumstances and the burdens of arbitration.** The entire coalition opposing this bill also notes that the strict provisions surrounding the breach of the contract and associated sanctions are unfair to companies who no longer possess the "same financial means" at the time arbitration is demanded as the company did when they drafted the contract providing arbitration as the only venue for consumers or employees to adjudicate issues. While they concede that such a circumstance may warrant moving the dispute to court they contend imposing sanctions in such a case would be unwarranted.

The concerns of the business community are not wholly unjustified. For example, should a recession drive a company to the brink of bankruptcy, the company may truly have no ability to pay for arbitration through no fault of their own. Nevertheless, regardless of a company's situation, a business that finds itself stuck in an arbitration it cannot afford can easily trace its own choice – perhaps motivated by corporate America's zealous insistence on placing binding arbitration provisions in nearly every contract of adhesion it signs with employees or consumers – to require arbitration. Furthermore, regardless of a company's finances, it should be noted that existing binding arbitration agreements leave employees and consumers with few remedies. While a company is attempting to determine its ability to afford arbitration, the existing law is leaving employee and consumer claims in limbo. Accordingly, the sanctions, while unforgiving, seem justified regardless of the present economic status of the drafting party. Perhaps, in order to lessen their risk of sanctions, drafting parties should reconsider their liberal use of binding arbitration provisions in contracts, or at a minimum, consider drafting these agreement in a manner that provides all parties increased access to the court system in the event circumstances arise that warrant adjudicating disputes in court.

**Presently the legal profession is attempting to study and address its struggle to diversify, however, despite their critical role in the legal system, very little data exists regarding the diversity of arbitrators.** Last month, this Committee held an informational hearing examining the legal profession's striking lack of diversity. As a part of the background for that hearing the Committee highlighted data from the State Bar of California that noted that 80 percent of California attorneys were white, compared with just 37 percent of the state's population as a whole. The Committee also expressed a concern that the present lack of diversity found within the bar and on the bench may translate into the ranks of arbitrators, especially given that most arbitrators are typically retired attorneys or judges. Notably, iconic music mogul Jay-Z raised this concern when he challenged the American Arbitration Association's purported lack of qualified African Americans on its roster of arbitrators. Jay-Z stated, "It would stand to reason that prospective litigants – which undoubtable include minority owned and operated business – expect there to be the possibility that the person who stands in the shoes of both judge and jury reflect the diverse population." (Dan Packel, *Jay-Z, Quinn Emanuel Say AAA Offers Only "Token" Black Arbitrators,* The Recorder (Nov. 28, 2018), quoting Jay-Z.)

A 2015 survey of arbitrators nationwide would seem to justify the concerns of both Jay-Z and this Committee, finding that a staggering 92 percent of arbitrators were white and 74 percent were male. (Colvin & Stone, *The Arbitration Epidemic- Mandatory arbitration deprives workers and consumers of their rights,* Economic Policy Institute (Dec. 7, 2015).) The proponents of this measure note that although California collects significant information regarding arbitration companies' behavior, as well as significant demographic data about judges

and attorneys, the state does not collect demographic data regarding arbitrators. Accordingly, this bill seeks to impose a modest, self-reporting demographic data requirement on arbitration companies. In support of these provisions the author states:

> SB 707 will also require arbitration companies to report the same kind of demographic information that our judiciary is required to report (including gender, race and ethnicity). The purpose of this is to hopefully galvanize some better recruitment and hiring practices by the arbitration companies and highlight the fact that arbitration cannot be a fair process when the arbitrators do not remotely reflect the diverse experiences and backgrounds of the people who are bringing their claims before them, or are forced to bring their claims before them, which is very often the case.

It should be noted that none of the opposition to this measure objects to the demographic data collection provisions.

**ARGUMENTS IN SUPPORT:** This bill is co-sponsored by the Consumer Attorneys of California and the California Employment Lawyers Association who represent many of the parties in the arbitration proceedings in which the drafting party may fail to pay for the costs of the proceedings. In support of the bill the California Employment Lawyers Association states:

> SB 707 bill addresses two distinct problems in arbitration. First, the procedural limbo and delay workers and consumers face when they submit to arbitration, pursuant to a mandatory arbitration agreement, but the employer fails or refuses to pay their share of the arbitration fees. Second, the alarming lack of diversity in the arbitration industry, which calls into question the ability of the industry to fairly adjudicate claims brought by an increasingly diverse workforce in California.

**ARGUMENTS IN OPPOSITION:** This bill is opposed by the California Chamber of Commerce and a coalition of affiliated business organizations. Writing for the coalition, the Chamber of Commerce states:

> The main remaining concern is the actions or omissions that qualify as a "material breach" and trigger loss of opportunity to arbitrate, monetary damages/sanctions, and possibly more severe sanctions such as evidentiary or terminating sanctions. For example, we are concerned that, even if the drafting party paid a majority of the fees and costs, but yet a small, minor portion was not paid, SB 707 would deem that nominal amount a "material breach," thereby subjecting the employer or company to the same list of punishments as an employer or company who intentionally withheld the entire payment in an effort to delay the arbitration.

**REGISTERED SUPPORT / OPPOSITION**:

**Support**

California Employment Lawyers Association (co-sponsor)
Consumer Attorneys of California (co-sponsor)
California Labor Federation
California Professional Firefighters
Conference of California Bar Associations
Equal Rights Advocates

SEIU California
United Food and Commercial Workers, Western States Council

**Opposition**

Allied Managed Care and Acclamation Insurance Management Services
California Apartment Association
California Association of Joint Powers Authorities
California Association of Winegrape Growers
California Chamber of Commerce
California Hospital Association
California League of Food Producers
California Manufacturers and Technology Association
California Restaurant Association
California Retailers Association
California Trucking Association
CSAC – Excess Insurance Authority
Flasher Barricade Association
Official Police Garages of Los Angeles
San Gabriel Valley Economic Partnership
Securities Industry and Financial Markets Association

**Analysis Prepared by**: Nicholas Liedtke / JUD. / (916) 319-2334

**From:** **Warren Postman** wdp@kellerlenkner.com
**Subject:** RE: 10,356 Individuals v. Postmates, Inc.
**Date:** May 22, 2020 at 7:21 PM
**To:** Manthripragada, Dhananjay S. DManthripragada@gibsondunn.com, Fogelman, James P. JFogelman@gibsondunn.com, Mathur, Shaun SMathur@gibsondunn.com, Evangelis, Theane TEvangelis@gibsondunn.com, Cochrane, Thomas TCochrane@gibsondunn.com, Maryott, Michele L. MMaryott@gibsondunn.com, McKenna, Madeleine MMcKenna@gibsondunn.com
**Cc:** Ashley Keller ack@kellerlenkner.com, Travis Lenkner tdl@kellerlenkner.com, Sean Duddy skd@kellerlenkner.com, Marquel Reddish mpr@kellerlenkner.com

WP

DJ,

First, you don't dispute (and cannot dispute) the following statement: "In response to my questions, you stated that Postmates is willing to commence individual arbitrations with <u>all</u> of our clients, and to have <u>all</u> of their arbitrations promptly assigned to arbitrators right away."  We can debate later what the necessary implications of that are.  As I stated in my prior email, if Postmates will not comply with its agreement even when it is under a federal court order to do so, we respectfully do not believe you when you say Postmates is interested in commencing individual arbitration with all of our clients in the manner required by the Fleet Agreement.  Your continued resistance to the idea that "it is possible to conduct thousands of individual arbitrations at once without producing a 'de facto class arbitration'" only increases our skepticism and illustrates why we are not willing to delay our clients' motion to compel.

We accordingly do not agree to discuss a departure from the forum and process Postmates agreed to in the Fleet Agreement.  And you have rejected our proposal that Postmates demonstrate its good faith by paying the filing fees AAA required for the remaining *Adams* Petitioners.  It is therefore clear that we are at an impasse.  Moreover, we have plainly satisfied Judge Gutierrez's standing order, which requires counsel to "discuss the issues to a sufficient degree that if a motion is still necessary, the briefing may be directed to those substantive issues requiring resolution by the Court."  You obviously know the issues in dispute, as you preemptively filed a declaratory judgment action and sought a temporary restraining order to resolve them.

Sincerely,

**Warren D. Postman**
Partner

**Keller | Lenkner**
1300 I Street, N.W., Suite 400E | Washington, D.C. 20005
<u>202.749.8334</u> | <u>Website</u> | <u>Email</u>

**From:** Manthripragada, Dhananjay S. <DManthripragada@gibsondunn.com>
**Sent:** Friday, May 22, 2020 6:20 PM
**To:** Warren Postman <wdp@kellerlenkner.com>; Fogelman, James P. <JFogelman@gibsondunn.com>; Mathur, Shaun <SMathur@gibsondunn.com>; Evangelis, Theane <TEvangelis@gibsondunn.com>; Cochrane, Thomas <TCochrane@gibsondunn.com>; Maryott, Michele L. <MMaryott@gibsondunn.com>; McKenna, Madeleine <MMcKenna@gibsondunn.com>
**Cc:** Ashley Keller <ack@kellerlenkner.com>; Travis Lenkner <tdl@kellerlenkner.com>; Sean Duddy <skd@kellerlenkner.com>; Marquel Reddish <mpr@kellerlenkner.com>
**Subject:** RE: 10,356 Individuals v. Postmates, Inc.

Warren,

Thank you for speaking yesterday and for sending over your proposal.  We are disappointed to see that you could not refrain from mischaracterizing what I said, even though we specifically discussed yesterday why what you wrote below is inaccurate.

You state that "Postmates now concedes that it is possible to conduct thousands of individual arbitrations at once without producing a 'de facto class arbitration.'"  While Ashley may have said that during our call, Postmates did not.  Rather, Postmates extended an offer in good faith to move your clients' claims to another arbitral forum in light of AAA's statement that it "will decline to administer any future cases involving" Postmates, absent a court order, and request that Postmates "remove [AAA's] name from its arbitration agreements so there is no confusion to the public."  Cheryl Florio Email, April 20, 2020 at 2:56 PM PST.  Postmates proposed that the parties work together to identify another arbitral forum that is suitable for all parties (if one exists), and to identify a process to resolve all your clients' claims individually (if one exists).  Postmates extended this offer so that the parties could end their year-long logjam, and so that your clients could have their day in arbitration.

In response, you said that the parties can arbitrate before AAA or settle.  It was clear that your clients have no interest in actually arbitrating their claims, and prefer to insist that Postmates participate in the same non-individual proceedings before AAA.  We even asked if your clients would agree to have an arbitrator decide procedurally how the arbitrations should proceed.  You expressly denied that request, but suggested that Postmates offer another specific proposal.

Postmates proposes (i) that the parties move their disputes to FedArb, (ii) that the parties agree to have one arbitrator

Postmates proposes (i) that the parties move their disputes to FedArb, (ii) that the parties agree to have one arbitrator assigned to each case, (iii) that FedArb's appellate rules apply, and (iv) that the parties work together and with FedArb on a process to resolve all your clients' claims in the individualized manner required by the parties' arbitration agreements.

As discussed yesterday, this is but one proposal, and Postmates is open to moving your clients' claims to other providers aside from FedArb.  For instance, Postmates is open to distributing your clients' claims among multiple different providers, assuming the parties can agree on those providers and the process for resolving your clients' claims in an individual manner.

As for your proposal, it is not much of a proposal at all.  Indeed, you propose that the parties engage in the same process that has led to the extended standoff that has, unfortunately, transpired between the parties.  If you have another proposal that would actually move your clients closer to having their claims resolved in arbitration, then Postmates would be happy to hear it.  In the meantime, we think it makes little sense for you to move forward with your motion to compel arbitration while the parties exchange ideas on how your clients' claims may be resolved in arbitration.

Finally, and as discussed during yesterday's call, Postmates believes that it would violate Local Rule 7-3 for you to file your motion to compel arbitration today.  Postmates reserves its right to move to strike your motion to compel arbitration for failure to comply with the Local Rules and Judge Gutierrez's Standing Order.

Thanks,
DJ
**Dhananjay S. Manthripragada**

### GIBSON DUNN

Gibson, Dunn & Crutcher LLP
333 South Grand Avenue, Los Angeles, CA 90071-3197
Tel +1 213.229.7366 • Fax +1 213.229.6366
DManthripragada@gibsondunn.com • www.gibsondunn.com

**From:** Warren Postman <wdp@kellerlenkner.com>
**Sent:** Friday, May 22, 2020 9:59 AM
**To:** Manthripragada, Dhananjay S. <DManthripragada@gibsondunn.com>; Fogelman, James P. <JFogelman@gibsondunn.com>; Mathur, Shaun <SMathur@gibsondunn.com>; Evangelis, Theane <TEvangelis@gibsondunn.com>; Cochrane, Thomas <TCochrane@gibsondunn.com>; Maryott, Michele L. <MMaryott@gibsondunn.com>; McKenna, Madeleine <MMcKenna@gibsondunn.com>
**Cc:** Ashley Keller <ack@kellerlenkner.com>; Travis Lenkner <tdl@kellerlenkner.com>; Sean Duddy <skd@kellerlenkner.com>; Marquel Reddish <mpr@kellerlenkner.com>
**Subject:** RE: 10,356 Individuals v. Postmates, Inc.

[External Email]
DJ,

Thank you for the discussion yesterday regarding our forthcoming motion to compel arbitration. On the call, you said Postmates was interested in discussing a process and arbitral forum through which the parties could resolve their claims in individual arbitration. In response to my questions, you stated that Postmates is willing to commence individual arbitrations with all of our clients, and to have all of their arbitrations promptly assigned to arbitrators right away.

This was surprising to us, as Postmates has refused for the better part of a year to do this at AAA. We responded that, if Postmates is now willing to engage in such a process, it should do so at AAA under the rules required by the Fleet Agreement. You were not willing to agree to this on the phone in part because you believe AAA will not administer future arbitrations involving Postmates absent a judicial order compelling arbitration. But you suggested that we send you a proposal in writing.

Our proposal is this: Postmates should pay the filing fees AAA required for the remaining *Adams* Petitioners so that AAA can immediately assign those arbitrations to arbitrators. That will result in individual arbitration of each claimant's claims. It will be the precise process agreed to under the parties' agreements and ordered by a federal court. And AAA has made clear that it will administer those arbitrations. Indeed, taking your statements yesterday at face value, we do not understand Postmates's refusal to move forward with the *Adams* claimants. If Postmates now concedes that it is possible to conduct thousands of individual arbitrations at once without producing a "de facto class arbitration," then the only objection Postmates could have to individual arbitration at AAA is that AAA's fees are too high. That is plainly not a legitimate objection given that Postmates agreed by contract to arbitrate at AAA under AAA's Rules and fee schedule.

If Postmates pays the filing fees to proceed with the remaining *Adams* Petitioners, we will happily discuss a similar process for our remaining clients. But if Postmates will not comply with its agreement even when it is under a federal court order to do so, we respectfully do not believe you when you say Postmates is interested in commencing individual arbitration with all of our clients in the manner required by the Fleet Agreement. For this same reason, we do not think it is in the interests of our clients to delay their motion to compel arbitration when Postmates has to date shown no willingness to engage in individual arbitration with each client as required by the Fleet Agreement voluntarily.

Sincerely,

**Warren D. Postman**
Partner
**Keller | Lenkner**
1300 I Street, N.W., Suite 400E | Washington, D.C. 20005
202.749.8334 | Website | Email

---

**From:** Warren Postman
**Sent:** Wednesday, May 20, 2020 3:05 PM
**To:** Manthripragada, Dhananjay S. <DManthripragada@gibsondunn.com>; Fogelman, James P. <JFogelman@gibsondunn.com>; Mathur, Shaun <SMathur@gibsondunn.com>; Evangelis, Theane <TEvangelis@gibsondunn.com>; Cochrane, Thomas <TCochrane@gibsondunn.com>; Maryott, Michele L. <MMaryott@gibsondunn.com>; McKenna, Madeleine <MMcKenna@gibsondunn.com>
**Cc:** Ashley Keller <ack@kellerlenkner.com>; Travis Lenkner <tdl@kellerlenkner.com>; Sean Duddy <skd@kellerlenkner.com>; Marquel Reddish <mpr@kellerlenkner.com>
**Subject:** RE: 10,356 Individuals v. Postmates, Inc.

DJ,

We can do Thursday at 4pm.  I'll send a conference line.

Sincerely,

**Warren D. Postman**
Partner
**Keller | Lenkner**
1300 I Street, N.W., Suite 400E | Washington, D.C. 20005
202.749.8334 | Website | Email

---

**From:** Manthripragada, Dhananjay S. <DManthripragada@gibsondunn.com>
**Sent:** Wednesday, May 20, 2020 2:24 PM
**To:** Warren Postman <wdp@kellerlenkner.com>; Fogelman, James P. <JFogelman@gibsondunn.com>; Mathur, Shaun <SMathur@gibsondunn.com>; Evangelis, Theane <TEvangelis@gibsondunn.com>; Cochrane, Thomas <TCochrane@gibsondunn.com>; Maryott, Michele L. <MMaryott@gibsondunn.com>; McKenna, Madeleine <MMcKenna@gibsondunn.com>
**Cc:** Ashley Keller <ack@kellerlenkner.com>; Travis Lenkner <tdl@kellerlenkner.com>; Sean Duddy <skd@kellerlenkner.com>; Marquel Reddish <mpr@kellerlenkner.com>
**Subject:** RE: 10,356 Individuals v. Postmates, Inc.

Warren – Thank you for following up.  We are available to meet and confer with you on Thursday after 4pm.  In the alternative, we are available from 3-4pm on Friday.  Let us know what works best for you.

Thank you,
DJ
**Dhananjay S. Manthripragada**

**GIBSON DUNN**

Gibson, Dunn & Crutcher LLP
333 South Grand Avenue, Los Angeles, CA 90071-3197
Tel +1 213.229.7366 • Fax +1 213.229.6366
DManthripragada@gibsondunn.com • www.gibsondunn.com

---

**From:** Warren Postman <wdp@kellerlenkner.com>
**Sent:** Tuesday, May 19, 2020 4:41 PM
**To:** Manthripragada, Dhananjay S. <DManthripragada@gibsondunn.com>; Fogelman, James P. <JFogelman@gibsondunn.com>; Mathur, Shaun <SMathur@gibsondunn.com>; Evangelis, Theane <TEvangelis@gibsondunn.com>; Cochrane, Thomas <TCochrane@gibsondunn.com>; Maryott, Michele L. <MMaryott@gibsondunn.com>; McKenna, Madeleine <MMcKenna@gibsondunn.com>
**Cc:** Ashley Keller <ack@kellerlenkner.com>; Travis Lenkner <tdl@kellerlenkner.com>; Sean Duddy <skd@kellerlenkner.com>; Marquel Reddish <mpr@kellerlenkner.com>
**Subject:** RE: 10,356 Individuals v. Postmates, Inc.

[External Email]
DJ,

On April 21, I confirmed that we intended to file a motion to compel on behalf of clients whose arbitrations had been closed as a result of Postmates's failure to pay its filing fees.  You stated that Postmates intends to roll out a new

WP0123

arbitration agreement soon and proposed that the parties meet and confer regarding moving our clients' arbitrations to a different arbitral forum.  I responded that we would be happy to confer regarding how to proceed with individual arbitration of our clients' claims after receiving a draft of Postmates's revised arbitration agreement.  On April 28, I further confirmed that we would treat the agreement as settlement privileged.

We have not received any response from you since then and plan to file our motion to compel arbitration on Friday.  If you would like to resume discussion of how to proceed with individual arbitrations, thereby avoiding the need for a motion, we would be happy to do so.  Please let me know if you or someone on your team is available tomorrow or Thursday to discuss.

Sincerely,

**Warren D. Postman**
Partner

**Keller | Lenkner**
1300 I Street, N.W., Suite 400E | Washington, D.C. 20005
202.749.8334 | Website | Email

**From:** Warren Postman
**Sent:** Saturday, April 25, 2020 10:39 PM
**To:** Manthripragada, Dhananjay S. <DManthripragada@gibsondunn.com>; Fogelman, James P. <JFogelman@gibsondunn.com>; Mathur, Shaun <SMathur@gibsondunn.com>; Evangelis, Theane <TEvangelis@gibsondunn.com>; Cochrane, Thomas <TCochrane@gibsondunn.com>; Maryott, Michele L. <MMaryott@gibsondunn.com>; McKenna, Madeleine <MMcKenna@gibsondunn.com>
**Cc:** Ashley Keller <ack@kellerlenkner.com>; Travis Lenkner <tdl@kellerlenkner.com>; Sean Duddy <skd@kellerlenkner.com>; Marquel Reddish <mpr@kellerlenkner.com>
**Subject:** RE: 10,356 Individuals v. Postmates, Inc.

DJ,

To the extent we are able to review the draft agreement and have a discussion with you before Postmates sends a new agreement to our clients, we agree that any such agreement and discussion would be covered by the settlement communication privilege.  Like you, we reserve all rights regarding the permissibility of you sending a new arbitration agreement to our clients without our consent.  And while it should go without saying, any arbitration agreement that is sent to our clients directly rather than to us would not be covered by the settlement communication privilege.  Please let us know when you can be available for a call.

Sincerely,

**Warren D. Postman**
Partner

**Keller | Lenkner**
1300 I Street, N.W., Suite 400E | Washington, D.C. 20005
202.749.8334 | Website | Email

**From:** Manthripragada, Dhananjay S. <DManthripragada@gibsondunn.com>
**Sent:** Friday, April 24, 2020 3:28 PM
**To:** Warren Postman <wdp@kellerlenkner.com>; Fogelman, James P. <JFogelman@gibsondunn.com>; Mathur, Shaun <SMathur@gibsondunn.com>; Evangelis, Theane <TEvangelis@gibsondunn.com>; Cochrane, Thomas <TCochrane@gibsondunn.com>; Maryott, Michele L. <MMaryott@gibsondunn.com>; McKenna, Madeleine <MMcKenna@gibsondunn.com>
**Cc:** Ashley Keller <ack@kellerlenkner.com>; Travis Lenkner <tdl@kellerlenkner.com>; Sean Duddy <skd@kellerlenkner.com>; Marquel Reddish <mpr@kellerlenkner.com>
**Subject:** RE: 10,356 Individuals v. Postmates, Inc.

Warren,

We obviously disagree with your interpretation of Rule 4.2, which makes no sense from a legal or practical standpoint.  And we have no obligation to provide you a copy of the revised Fleet Agreement in advance of our client's update.  That said, reserving our rights, we are willing to schedule a call with you to discuss and to send you a copy pursuant to the settlement communication privilege before the call so you have a chance to review it.  We would want you to agree in advance of the call that the discussion would be covered by the settlement communication privilege so that each of us could speak frankly during the call.  Let us know if you have any interest in that, and if so we will send you our available dates to discuss.

Thanks,
DJ
**Dhananjay S. Manthripragada**

WP0124

## GIBSON DUNN

Gibson, Dunn & Crutcher LLP
333 South Grand Avenue, Los Angeles, CA 90071-3197
Tel +1 213.229.7366 • Fax +1 213.229.6366
DManthripragada@gibsondunn.com • www.gibsondunn.com

---

**From:** Warren Postman <wdp@kellerlenkner.com>
**Sent:** Wednesday, April 22, 2020 12:46 PM
**To:** Manthripragada, Dhananjay S. <DManthripragada@gibsondunn.com>; Fogelman, James P. <JFogelman@gibsondunn.com>; Mathur, Shaun <SMathur@gibsondunn.com>; Evangelis, Theane <TEvangelis@gibsondunn.com>; Cochrane, Thomas <TCochrane@gibsondunn.com>; Maryott, Michele L. <MMaryott@gibsondunn.com>; McKenna, Madeleine <MMcKenna@gibsondunn.com>
**Cc:** Ashley Keller <ack@kellerlenkner.com>; Travis Lenkner <tdl@kellerlenkner.com>; Sean Duddy <skd@kellerlenkner.com>; Marquel Reddish <mpr@kellerlenkner.com>
**Subject:** RE: 10,356 Individuals v. Postmates, Inc.

[External Email]
DJ,

I will address each of your points in turn.

First, your interpretation of Rule 4.2 attacks a strawman. I did not suggest that Rule 4.2 applies to the situation approved of in the cases you cite—i.e., where an attorney contacts someone to alter a contract *before* learning that the party is represented in a related matter. None of the cases you cite approves of what you seem to be contemplating here, which would involve attorneys indirectly contacting a party they already know is represented about a matter related to the representation. That conduct is expressly prohibited by Rule 4.2, as recognized in *S.F. Unified Sch. Dist. ex rel. Contreras*. Indeed, in the *Cobell* case you cite, the court referred the attorneys in question to a disciplinary panel, explaining that although standard billing communications are ordinarily permissible, the statements at issue would have extinguished claims in the litigation and therefore were a violation of Rule 4.2. 212 F.R.D. 14, 22 (D.D.C. 2002). We withdrew the TRO motion in *Abernathy* because DoorDash so thoroughly retreated from its misguided position that we felt we had already won. Judge Alsup agreed. *See* Hearing Tr. 63:13–18 ("Mr. Fogelman: 'The relief that they are requesting wasn't necessary, and they claim they've got it.' The Court: 'It was necessary.'"). The withdrawal did not reflect any doubt regarding the requirements of Rule 4.2.

Second, Keith Chapman is an attorney, the Associate General Counsel for Postmates, and has participated in these disputes as counsel to Postmates. To our knowledge, he is plainly not a represented party but, rather, *counsel for* a represented party. Once again, the case you cite on this issue says nothing about the proposition you cite it for—i.e., it says nothing about the permissibility of contacting an in-house attorney who is acting as counsel to a represented party. If Gibson Dunn represents Keith Chapman in his personal capacity in these matters, or if Keith is not in fact serving as Postmates's counsel in these matters, please let us know and we will avoid future contact.

Third, the purpose of Rule 4.2, which obviously is implicated here, is to ensure that a represented party has the ability to receive the advice of counsel before an adversary's lawyer asks them to do something that would impact their legal rights. However, as counsel to our clients, we may consent to our clients' being asked directly to sign a new arbitration agreement if we have been informed in advance of the terms of the agreement and have an opportunity to advise our clients before they are sent the agreement. To that end, please provide us with a copy of any agreement you intend to send to our clients and tell us when you would like to send it. After receiving that information, we would be happy to confer regarding how to proceed with individual arbitration of our clients' claims.

Sincerely,

**Warren D. Postman**
Partner

## Keller | Lenkner

1300 I Street, N.W., Suite 400E | Washington, D.C. 20005
202.749.8334 | Website | Email

---

**From:** Manthripragada, Dhananjay S. <DManthripragada@gibsondunn.com>
**Sent:** Tuesday, April 21, 2020 9:11 PM
**To:** Warren Postman <wdp@kellerlenkner.com>; Fogelman, James P. <JFogelman@gibsondunn.com>; Mathur, Shaun <SMathur@gibsondunn.com>; Evangelis, Theane <TEvangelis@gibsondunn.com>; Cochrane, Thomas <TCochrane@gibsondunn.com>; Maryott, Michele L. <MMaryott@gibsondunn.com>; McKenna, Madeleine <MMcKenna@gibsondunn.com>
**Cc:** Ashley Keller <ack@kellerlenkner.com>; Travis Lenkner <tdl@kellerlenkner.com>; Sean Duddy <skd@kellerlenkner.com>; Marquel Reddish <mpr@kellerlenkner.com>
**Subject:** RE: 10,356 Individuals v. Postmates, Inc.

Warren,

Rule 4.2 does not apply to Postmates providing access to its new Fleet Agreement by the independent contractors who use Postmates' platform as couriers.  While the rule has usually been applied to communications between companies and their employees, such cases make clear that Postmates can communicate with anyone who accesses its App, including anyone you claim to represent.  Rule 4.2 has been held not to prevent a company from rolling out a new arbitration agreement to all workers in the ordinary course of business.  *See, e.g., Davis v. Nordstrom, Inc.*, 755 F.3d 1089, 1093 (9th Cir. 2014) (a business is "permitted to unilaterally change the terms of [a worker's] employment"); *Azeveda v. Comcast Cable Commc'ns LLC*, 2019 WL 5102607, at *6 (N.D. Cal. Oct. 11, 2019) (plaintiff bound by revised arbitration agreement); *Trudeau v. Google LLC*, 349 F. Supp. 3d 869, 877 (N.D. Cal. 2018) (plaintiff bound by updated terms of service); *Lee v. Postmates Inc.*, 2018 WL 4961802, at *5 (N.D. Cal. Oct. 15, 2018) (plaintiff subject to revised arbitration terms received and accepted after filing class action complaint).  Nothing you cite suggests otherwise.  Indeed, Rule 4.2 "does not prevent represented persons from communicating directly with one another with respect to the subject of representation, nor does it prohibit a lawyer from advising a client concerning such communication."  Rule 4.2 cmt. 3.  And courts regularly hold that communications between a business and workers are proper, even when a worker has brought suit against the business.  *See, e.g., Lillehagen v. Alorica, Inc.*, 2014 WL 12768156, at *5-7 (C.D. Cal. Dec. 18, 2014) (new hires signed arbitration agreement as condition of employment six months after putative class action filed); *Cobell v. Norton*, 212 F.R.D. 14, 20 (D.D.C. 2002) ("Defendants will be permitted to continue engaging in the regular sorts of business communications with class members that occur in the ordinary course of business.").  I am confident that you know of the litany of cases contradicting your position, given that you withdrew the motion for a temporary restraining order that you attached to your email.

Ironically, your email violates the very Rule of Professional Conduct that you cite.  Rule 4.2 prohibits a lawyer from communicating directly or indirectly with a represented party about the subject of the representation, yet you directly emailed our client representative, Keith Chapman, without our consent.  Courts have held that sending communications to opposing counsel and their in-house counsel violates Rule 4.2.  *See, e.g., SEC v. ACI Investors Protective Ass'n*, 99 F.3d 1146 (9th Cir. 1996).  Certainly you are aware that the Rules of Professional Conduct apply equally to plaintiffs' counsel as they do to defendants' counsel.  *See Diva Limousine, Ltd. v. Uber Techs., Inc.*, 2019 WL 144589 (N.D. Cal. Jan. 9, 2019).

I am sure you are aware that each courier must accept the most recent version of the Fleet Agreement before they may begin receiving delivery opportunities through the Postmates platform.  In light of AAA's instruction that Postmates remove all reference to AAA in the Fleet Agreement, Postmates intends to roll out a revised Fleet Agreement designating a new arbitral forum.  All couriers who wish to continue using the platform must accept the terms of the revised Fleet Agreement before they access the platform.  Given the position taken in your email, it appears you are asking Postmates not to roll out the revised Fleet Agreement to your clients, which would mean a potential inability to access the platform.  Please confirm if this is indeed what you are requesting.  If it is, and if Postmates chooses to accommodate your request, it may have to direct all inquiries concerning such a potential inability to access the platform to you and your law firm.

As for your clients' existing claims, Postmates remains willing and ready to arbitrate their claims in individual arbitration.  Given AAA's refusal to administer arbitrations involving Postmates, Postmates offers that the parties meet and confer on moving your clients' claims to another arbitral forum.

Best,
DJ
**Dhananjay S. Manthripragada**

GIBSON DUNN

Gibson, Dunn & Crutcher LLP
333 South Grand Avenue, Los Angeles, CA 90071-3197
Tel +1 213.229.7366 • Fax +1 213.229.6366
DManthripragada@gibsondunn.com • www.gibsondunn.com

**From:** Warren Postman <wdp@kellerlenker.com>
**Sent:** Tuesday, April 21, 2020 6:35 AM
**To:** Manthripragada, Dhananjay S. <DManthripragada@gibsondunn.com>; Fogelman, James P. <JFogelman@gibsondunn.com>; Mathur, Shaun <SMathur@gibsondunn.com>; Evangelis, Theane <TEvangelis@gibsondunn.com>; Cochrane, Thomas <TCochrane@gibsondunn.com>; Maryott, Michele L. <MMaryott@gibsondunn.com>; McKenna, Madeleine <MMcKenna@gibsondunn.com>; keith@postmates.com
**Cc:** Ashley Keller <ack@kellerlenker.com>; Travis Lenkner <tdl@kellerlenker.com>; Sean Duddy <skd@kellerlenker.com>; Marquel Reddish <mpr@kellerlenker.com>
**Subject:** RE: 10,356 Individuals v. Postmates, Inc.

[External Email]
All,

I am writing to confirm that Keller Lenkner intends to file a motion to compel arbitration on behalf of its clients whose arbitrations have been administratively closed as a result of Postmates's failure to pay its filing fees.

I also write to confirm for you that the terms of our clients' arbitration agreements with Postmates are within the scope of our representation. As a result, all of Postmates's in-house lawyers and outside counsel have an ethical obligation not to arrange, draft, or participate in any part of the process of a revised arbitration agreement's being sent directly to our clients. *See, e.g., S.F. Unified Sch. Dist. ex rel. Contreras v. First Student, Inc.*, 213 Cal. App. 4th 1212, 1235 (2013) ("[A]n attorney is prohibited from drafting documents, correspondence, or other written materials, to be delivered to an opposing party represented by counsel even if they are prepared at the request of the client, are conveyed by the client and appear to be from the client rather than the attorney."); Cal R. Prof. Conduct 4.2(a) ("[A] lawyer shall not communicate directly or indirectly about the subject of the representation with a person the lawyer knows to be represented by another lawyer in the matter, unless the lawyer has the consent of the other lawyer.").

Although I expect you are familiar with the motion for a temporary restraining order our clients filed after Gibson Dunn lawyers arranged to send a revised arbitration agreement directly to Keller Lenkner clients with claims against DoorDash, I am attaching the motion, which contains a more detailed explanation of the applicable ethical rules, for your reference.

Should you wish to discuss any of the terms of Postmates's arbitration agreements with our clients, please contact us directly.

Sincerely,

**Warren D. Postman**
Partner

**Keller | Lenkner**
1300 I Street, N.W., Suite 400E | Washington, D.C. 20005
202.749.8334 | Website | Email

---

**From:** AAA Cheryl Florio <CherylFlorio@adr.org>
**Sent:** Monday, April 20, 2020 2:56 PM
**To:** Warren Postman <wdp@kellerlenkner.com>; Ashley Keller <ack@kellerlenkner.com>; Sean Duddy <skd@kellerlenkner.com>; Travis Lenkner <tdl@kellerlenkner.com>; Marquel Reddish <mpr@kellerlenkner.com>; Brett Walker <baw@kellerlenkner.com>; Tom Kayes <tk@kellerlenkner.com>; Manthripragada, Dhananjay S. <DManthripragada@gibsondunn.com>; Fogelman, James P. <JFogelman@gibsondunn.com>; Mathur, Shaun <SMathur@gibsondunn.com>; Evangelis, Theane <TEvangelis@gibsondunn.com>; Cochrane, Thomas <TCochrane@gibsondunn.com>; Maryott, Michele L. <MMaryott@gibsondunn.com>; McKenna, Madeleine <MMcKenna@gibsondunn.com>
**Cc:** AAA Cheryl Florio <CherylFlorio@adr.org>; AAA Heather Santo <heathersanto@adr.org>
**Subject:** RE: 10,356 Individuals v. Postmates, Inc.

Dear Counsel:

This will confirm Claimants advanced the initial and arbitrator selection fees for Respondent's share on 100 of the 10,356 cases. Claimants intend to seek recovery of the aforementioned fees from the arbitrator(s) once appointed. Inasmuch as the AAA has not received payment from Respondent for the 10,356 cases and the deadline of April 15, 2020 has passed, we are closing the remaining 10,256 cases. Claimants initial filing fees for the 10,256 cases will be refunded.

We hoped that this situation did not escalate to this level, but we want you to be aware that it is the policy of the AAA that if a company does not comply with our request to pay the administrative fees stated in the Employment/Workplace Fee Schedule, the AAA will decline to administer any future cases involving the Respondent. We ask that Respondent remove our name from its arbitration agreements so there is no confusion to the public.

Please do not hesitate to contact me should you have any questions.

Sincerely,

Cheryl Florio



**AAA Cheryl Florio**
**Manager of ADR Services**

American Arbitration Association

T: 401 431 4887  F: 866 644 0234  E: CherylFlorio@adr.org
1301 Atwood Ave, Suite 211N, Johnston, RI 02919
adr.org | icdr.org | aaamediation.org



The information in this transmittal (including attachments, if any) is privileged and/or confidential and is intended only for the recipient(s) listed above. Any review, use, disclosure, distribution or

The information in this transmittal (including attachments, if any) is privileged and confidential and is intended only for the recipient(s) listed above. If you or your reader, distribution or copying of this transmittal is prohibited except by or on behalf of the intended recipient. If you have received this transmittal in error, please notify me immediately by reply email and destroy all copies of the transmittal. Thank you.

**From:** AAA Cheryl Florio <CherylFlorio@adr.org>
**Sent:** Monday, February 24, 2020 4:06 PM
**To:** Warren Postman <wdp@kellerlenkner.com>; Ashley Keller <ack@kellerlenkner.com>; Sean Duddy <skd@kellerlenkner.com>; Travis Lenkner <tdl@kellerlenkner.com>; Marquel Reddish <mpr@kellerlenkner.com>; Brett Walker <baw@kellerlenkner.com>; Tom Kayes <tk@kellerlenkner.com>; Manthripragada, Dhananjay S. <DManthripragada@gibsondunn.com>; Fogelman, James P. <JFogelman@gibsondunn.com>; Mathur, Shaun <SMathur@gibsondunn.com>; Evangelis, Theane <TEvangelis@gibsondunn.com>; Cochrane, Thomas <TCochrane@gibsondunn.com>; Maryott, Michele L. <MMaryott@gibsondunn.com>; McKenna, Madeleine <MMcKenna@gibsondunn.com>
**Cc:** AAA Cheryl Florio <CherylFlorio@adr.org>
**Subject:** 10,356 Individuals v. Postmates, Inc.

Dear Counsel,

This confirms AAA's receipt on February 15, 2020 of ten thousand three hundred and fifty-six (10,356) individual demands for arbitration involving the above referenced parties, each of which has been filed with us in accordance with a contract containing a clause providing for administration by the AAA.

The outcome of our preliminary administrative review, which is subject to review by the arbitrators, is that these disputes will be administered in accordance with the American Arbitration Association ("AAA") Employment Arbitration Rules amended and in effect November 1, 2009, and the Employment/Workplace Fee Schedule amended and in effect November 1, 2019, both of which can be found on our website, www.adr.org.  Pursuant to the applicable fee schedule, these cases will be administered in accordance with the "Administrative Group Filing Fees" section of the schedule.

Claimants have met their filing fee requirements for the 7,620 Claimants subject to the 2019 Fleet Agreement. Accordingly, we request that the company pay its share of the fees in the amount of $3,048,000.00.

For the remaining 2,736 Claimants subject to the 2017 & 2018 Fleet Agreement, in which the arbitration agreement states Postmates will pay all fees, we request that the company pay fees in the amount of $1,641,600.00

Respondent's portion of filing fees is due on or before March 16, 2020. Respondent's invoice will follow under separate cover. **Please note that these matters are subject to California Code of Civil Procedure 1281.97 and 1281.98. As such, payment must be received by April 15, 2020 or the AAA may close the parties' cases.  The AAA will not grant any extensions to this payment deadline.**

Payment may be submitted via check, money order, credit card, or wire transfer. Money orders and checks should be made payable to the American Arbitration Association and mailed to American Arbitration Association, 13727 Noel Road, Suite 700, Dallas, TX 75340. When submitting payment, please include a copy of your invoice to ensure that payment is properly applied. To pay online by credit card, please contact the undersigned directly and request an AAA Paylink.

The AAA's administrative fees are based on filing and service charges. Arbitrator compensation is not included in this schedule. The AAA may require the arbitrators' compensation deposits in advance of any hearings. Unless the individuals, post-dispute choose to pay a portion of the arbitrators' compensation, the company shall pay such compensation in total.

Please note: no answering statements or counterclaims are due at this time. The AAA will notify the parties of the response deadlines when initial filing fees have been received.

If you have any questions, please email the undersigned and we will be happy to assist you.

Thank you,


**AAA Cheryl Florio**
**Manager of ADR Services**
Labor, Employment & Elections
T: 401 431 4887  F: 866 644 0234  E: CherylFlorio@adr.org
1301 Atwood Ave, Suite 211N, Johnston, RI 02919

This message may contain confidential and privileged information for the sole use of the intended recipient. Any review, disclosure, distribution by others or forwarding without express permission is strictly prohibited. If it has been sent to you in error, please reply to advise the sender of the error and then immediately delete this message.

Please see our website at https://www.gibsondunn.com/ for information regarding the firm and/or our privacy policy.

This message may contain confidential and privileged information for the sole use of the intended recipient. Any review, disclosure, distribution by others or forwarding without express permission is strictly prohibited. If it has been sent to you in error, please reply to advise the sender of the error and then immediately delete this message.

Please see our website at https://www.gibsondunn.com/ for information regarding the firm and/or our privacy policy.

This message may contain confidential and privileged information for the sole use of the intended recipient. Any review, disclosure, distribution by others or forwarding without express permission is strictly prohibited. If it has been sent to you in error, please reply to advise the sender of the error and then immediately delete this message.

Please see our website at https://www.gibsondunn.com/ for information regarding the firm and/or our privacy policy.

This message may contain confidential and privileged information for the sole use of the intended recipient. Any review, disclosure, distribution by others or forwarding without express permission is strictly prohibited. If it has been sent to you in error, please reply to advise the sender of the error and then immediately delete this message.

Please see our website at https://www.gibsondunn.com/ for information regarding the firm and/or our privacy policy.

WP0129