Aaron Zigler (#327318)
 amz@kellerlenkner.com
Ashley Keller (*pro hac vice*)
 ack@kellerlenkner.com
KELLER LENKNER LLC
150 N. Riverside Plaza, Suite 4270
Chicago, Illinois 60606
(312) 741-5220

Warren Postman (*pro hac vice*)
 wdp@kellerlenkner.com
KELLER LENKNER LLC
1300 I Street, N.W., Suite 400E
Washington, D.C. 20005
(202) 749-8334

Keith A. Custis (#218818)
 kcustis@custislawpc.com
CUSTIS LAW, P.C.
1999 Avenue of the Stars
Suite 1100
Los Angeles, California 90067
(213) 863-4276

*Attorneys for Defendants/Cross-Petitioners*

# UNITED STATES DISTRICT COURT
# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| POSTMATES INC., <br><br> *Plaintiff*, <br><br> vs. <br><br> 10,356 INDIVIDUALS, <br><br> *Defendants*. <br><br> GREENWOOD, et al., <br><br> *Cross-Petitioners*, <br><br> vs. <br><br> POSTMATES INC., <br><br> *Cross-Respondent*. | Case No: 2:20-cv-02783-PSG <br><br> **REPLY ISO CROSS-PETITIONERS' MOTION TO COMPEL ARBITRATION** <br><br> *[Third Declaration of Marquel Reddish]* <br><br> **Judge:** Hon. Philip S. Gutierrez <br> **Date:** July 20, 2020 <br> **Time:** 1:30 p.m. |

## **TABLE OF CONTENTS**

I. INTRODUCTION ..................................................................................................1

II. ARGUMENT .........................................................................................................2

    A. Postmates Concedes That At Least 5,057 Petitioners Have Valid Agreements to Arbitrate Their Misclassification Claim With Postmates. 3

    B. Postmates's Arbitrability Arguments Are Delegated to Arbitration. ........3

    C. Petitioners Have Sought Individual Arbitration Under the MAP..............5

    D. The Court Should Order Postmates To Arbitrate With Petitioners and Award Remedies under SB 707......................................................................7

        1. Postmates must comply with AAA's administrative determinations..7

        2. The Court should award remedies under SB 707 ................................9

    E. The September Petitioners Are Properly Joined......................................12

III. CONCLUSION..................................................................................................12

# TABLE OF AUTHORITIES

**CASES**                                                                                           **PAGE(s)**

*Adams v. Postmates Inc.*,
    414 F. Supp. 3d 1246 (N.D. Cal. 2019) .................................................. 1, 4, 5, 8

*Adams v. Postmates Inc.*,
    No. 19-3042 SBA, 2020 WL 1066980 (N.D. Cal. March 5, 2020) ................ 1, 5

*Allemeir v. Zyppah, Inc.*,
    No. 18-7437-PA (AGRx), 2018 WL 6038340 (C.D. Cal. Sept. 21,
    2018) ..................................................................................................... 8

*AT&T Mobility LLC v. Concepcion*,
    563 U.S. 333 (2011) .............................................................................. 5, 7

*Blair v. Rent-A-Center, Inc.*,
    928 F.3d 819 (9th Cir. 2019) ...................................................................... 6

*Brandwein v. Butler*,
    218 Cal. App. 4th 1485 (2013) ................................................................... 4

*Bronson v. Kinzie*,
    42 U.S. 311 (1843) ................................................................................. 11

*Chamber of Commerce of the U.S. v. Becerra*,
    No. 2:19-cv-02456-KJM-DB, 2020 WL 605877 (E.D. Cal. Feb. 7,
    2020) .................................................................................................... 10

*Chiron Corp. v. Ortho Diagnostic Sys., Inc.*,
    207 F.3d 1126 (9th Cir. 2000) ................................................................ 2, 3

*Dilts v. Penske Logistics, LLC*,
    769 F.3d 637 (9th Cir. 2014) ................................................................... 11

*Halloran v. Davis*,
    No. 2:12-cv-01011-CBM, 2013 WL 12153551 (C.D. Cal. Aug. 15,
    2013) ..................................................................................................... 8

*Henry Schein, Inc. v. Archer & White Sales, Inc.*,
    139 S. Ct. 524 (2019) ............................................................................... 2

*Kasap v. Folger Nolan Fleming & Douglas, Inc.*,
    166 F.3d 1243 (D.C. Cir. 1999) ............................................................... 12

**CASES (cont.)** **PAGE(s)**

*Kindred Nursing Ctrs. Ltd P'ship v. Clark*, 137 S. Ct. 1421 (2017) .......... 10

*KKE Architects, Inc. v. Diamond Ridge Dev.*, LLC, No. CV 07-06866 MMM (FMO), 2008 WL 11422047 (C.D. Cal. Apr. 21, 2008) .......... 12

*Lamps Plus, Inc. v. Varela*, 139 S. Ct. 1407 (2019) .......... 7

*Lifescan, Inc. v. Premier Diabetic Servs., Inc.*, 363 F.3d 1010 (9th Cir. 2004) .......... 8

*Sakkab v. Luxottica Retail N.A., Inc.*, 803 F.3d 425 (9th Cir. 2015) .......... 9

*Volt Info. Scis., Inc. v. Bd. of Trustees of Leland Stanford Junior Univ.*, 489 U.S. 468 (1989) .......... 9

**STATUTES**

9 U.S.C. § 2 .......... 9

9 U.S.C. § 4 .......... 7, 12

Cal. Civ. Proc. Code § 1281.2 .......... 10

**OTHER AUTHORITIES**

AAA Comm. Arb. Rule R-56 .......... 8

AAA Comm. Arb. Rule R-8 .......... 8

## I. INTRODUCTION

Postmates has argued for over a year, in five separate courts that when thousands of couriers attempt to pursue misclassification claims in arbitration, the resulting costs and complexity convert these filings into a "de facto class arbitration." That argument does not withstand scrutiny and has never prevailed. TRO Order, p. 10, ECF No. 30; *Adams v. Postmates Inc.*, 414 F. Supp. 3d 1246, 1254–55 (N.D. Cal. 2019) (*Adams I*); *Adams v. Postmates Inc.*, No. 19-3042 SBA, 2020 WL 1066980, at *6 (N.D. Cal. March 5, 2020) (*Adams II*).

Postmates has finally given up on that argument and conceded the obvious: costs and complexity do not convert thousands of individual arbitrations into a representative action. So Postmates pivots to the vague assertion that Petitioners are pursuing "non-individual" arbitrations. For at least two reasons, Postmates's change in nomenclature should not justify a different result.

First, Postmates's newfangled argument is even more plainly delegated to arbitration. Postmates's opposition asserts that Petitioners' individual demands for arbitration are inconsistent with the requirements of Postmates's Mutual Arbitration Provision ("MAP"). But that (false) assertion is delegated to arbitration under the MAP. May 2019 Fleet Agreement § 10A.i, ECF No. 43-5. And because Postmates's claims do not challenge the enforceability of the Class Action and/or Representative Action Waivers they do not fall within the sole carveout to the delegation clause. *Id*. § 10B.iv; *Adams I*, 414 F. Supp. at 1254 ("[T]he salient issue is simply whether Petitioners' demands meet the requirements of the Mutual Arbitration Provision. That determination is within the arbitrator's exclusive authority.").

Second, Postmates cannot identify a single provision in the MAP that Petitioners violated. Petitioners filed demands on AAA's standard demand forms, AAA held that the demands were properly filed, and AAA made clear that it will assign each arbitration to an arbitrator, who will in turn conduct an individual arbitration. Postmates retorts (1) that some of the Petitioners waited several months

to file their demands, (2) that AAA required Postmates to submit fees for each individual arbitration at once, rather than stage the arbitrations, and (3) that Postmates faces greater "pressure" because of the many claims it faces. There is no "therefore" that follows from these assertions. One will search the MAP in vain for a provision requiring Petitioners to file their demands immediately upon retaining counsel, obligating AAA to delay or stage payment of its fees, or capping the amount of "pressure" Postmates faces. *Cf.* TRO Order at 12 ("Plaintiff does not attempt to show how prevailing on its 'class arbitration' argument would reduce its filing fees, or how Defendants would be required to proceed."). The Federal Arbitration Act ("FAA") requires courts to enforce agreements to arbitrate according to their terms, not the post-hoc provisions Postmates wishes it had inserted into the MAP.

Finally, Postmates attempts to argue that SB 707 is preempted by the FAA and violates the Contracts Clause. But SB 707 requires the <u>enforcement</u>, rather than interference with, agreements to arbitrate. It therefore falls outside both the plain text and the purpose of the FAA's preemption clause. And a law that <u>requires</u> the enforcement of a contract does not abrogate or impair it in violation of the Contracts Clause. Postmates argues that SB 707 reflects hostility toward arbitration. But the law reflects hostility towards parties who <u>breach</u> arbitration agreements, which is the <u>opposite</u> of hostility toward arbitration. Petitioners' motion should be granted.

## II.   ARGUMENT

A motion to compel arbitration must be granted if (1) the parties have entered into a valid arbitration agreement and (2) the agreement covers the dispute. *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000). If the parties have agreed that an arbitrator should decide threshold questions about whether the parties should arbitrate, that agreement must also be enforced. *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 530 (2019).

Postmates claims that the timing of and manner in which Petitioners filed their demands violates the MAP. But that argument is delegated to individual arbitrators

and is therefore not a basis for avoiding arbitration. And it is groundless in any event. This Court should compel Postmates to arbitrate in the manner required by its agreement and award remedies under SB 707 for Postmates's refusal to arbitrate.

### A. Postmates Concedes That At Least 5,057 Petitioners Have Valid Agreements to Arbitrate Their Misclassification Claim With Postmates.

While disputing the existence of an arbitration agreement with 233 Petitioners, Postmates concedes that 5,057 Petitioners have a valid arbitration agreement. Those individuals have a right to arbitrate without delay. *Chiron*, 207 F.3d at 1130. Any factual dispute with regard to the 233 remaining individuals can be resolved through a good-faith, meet-and-confer process. Petitioners have asked Postmates to identify any individuals it cannot locate for over a year. Third Reddish Decl. ¶ 4; MR5291. Yet, Postmates identified these 233 Petitioners for the first time in its opposition. *Id*. While Petitioners' counsel is still investigating Postmates's claims, it is already clear that Postmates has overstated its position. Third Reddish Decl. ¶ 5 (documenting the existence of accounts that Postmates disputes). Even Postmates disputes Postmates's claims. In its Second Amended Complaint it states 48 of the 233 are parties to an arbitration agreement with Postmates. *Id*. ¶ 6; MR5292–93 . Petitioners are renewing their request to confer in good faith to resolve these factual disputes. *Id*. ¶ 7. If a meet-and-confer process establishes that any Petitioner is not party to, or opted out of, an arbitration agreement, that Petitioner will withdraw from the motion to compel. *Id*. If Postmates will simply confer in good faith, there will likely be no need to burden the Court with factual disputes.[1]

### B. Postmates's Arbitrability Arguments Are Delegated to Arbitration.

Postmates asserts that Petitioners are improperly seeking "non-individual arbitration"—whatever that means. The MAP unambiguously delegates Postmates's

---

[1] If such disputes remain with regard to a small number of Petitioners, Postmates appears to concede, as it must, that this would not be a basis to deny the right to promptly arbitrate for the remaining Petitioners. Opp'n at 7 ("[T]he Motion with respect to those individuals should be denied") (emphasis added).

argument to arbitration. Section 10B.iv of the MAP narrowly limits judicial review to disputes over whether the Class Action or Representative Action Waiver "is unenforceable, unconscionable, void, or voidable." May 2019 Fleet Agreement. But as the *Adams* court reasoned, and Postmates has never disputed: "No [Keller Lenkner client] has made any claim that either [the Class Action or Representative Action] Waiver is unenforceable, unconscionable, void, or voidable." *Adams I*, 414 F. Supp. at 1254. Deciding whether Petitioners' demands comply with the MAP requires interpreting the arbitration clause; it does not involve a challenge to the validity or enforceability of the class and representative action waivers.

Postmates contends that the more general language of Section 10A.ii allows a court to decide "any dispute relating to or arising out of the Class Action Waiver and Representative Action Waiver." Opp'n at 12 (emphasis omitted). But that carveout expressly applies only "as stated in Section 10B.iv below." Under California law, courts "strive to interpret the parties' agreement to give effect to all of a contract's terms, and to avoid interpretations that render any portion superfluous, void or inexplicable." *Brandwein v. Butler*, 218 Cal. App. 4th 1485, 1507 (2013). And Postmates cannot dispute that its reading of the MAP would render § 10B.iv entirely superfluous. If a court could decide <u>any</u> "dispute relating to or arising out of the Class Action Waiver," it would have been entirely unnecessary to state that a court may decide only the subset of disputes over whether the Waiver is enforceable.

Postmates attempts to justify the superfluity created by its position by asserting that the first sentence of § 10B.iv is merely provided in an "abundance of caution." Opp'n at 13. But § 10B.iv does not contain any language suggesting that unconscionability, unenforceability, or voidability are mere subsets of a broader category of non-arbitrable disputes. To the contrary, the very next sentence of § 10B.iv <u>expressly states</u> that the first sentence contains not merely an illustration but, rather, the sole exceptions to the delegation clause: "all other disputes . . . shall be determined exclusively by an arbitrator." May 2019 Fleet Agreement. The first

sentence cannot be an illustration when the second sentence says it is exhaustive.

Finally, Postmates argues that the *Adams* court's reading would render superfluous the more general language of § 10A.i. Opp'n at 13. But that does not follow. Contracts often highlight a key provision that will be discussed in more detail later. Such signposting sentences are helpful aids, not superfluous, and they necessarily are less precise than the more specific sections that follow. That is why drafters qualify such sentences with phrases like "as stated in Section 10B.iv." Section 10A.i. simply flags for the reader that there is a carveout from the delegation clause related to the Class Action Waiver, and that the carveout is "as stated in Section 10B.iv." Because Postmates's arguments do not fall within the carveout "as stated in Section 10B.iv," they must be submitted to an arbitrator.

C. **Petitioners Have Sought Individual Arbitration Under the MAP.**

The AAA determined Petitioners' demands satisfied the requirements of the AAA Rules and the MAP for commencing <u>individual</u> arbitrations. TRO Order at 10 ("AAA determined that Defendants had brought 'individual' arbitration demands."). The *Adams* court likewise found that the same process for commencing arbitration satisfied the MAP's requirements. *Adams II*, 2020 WL 1066980, at *4 ("Petitioners did what they are contractually required to do: submit individual arbitration demands to the arbitrator."). Asking this Court to disregard those determinations, Postmates claims that Petitioners have in fact sought "non-individual" arbitrations.

Postmates purports to rely on the reasoning in *AT&T Mobility LLC v. Concepcion* in which the Supreme Court recognized the costs, procedural complexity, and risk involved in deciding the rights of an entire class, including absent class members, in a single judgment without express consent. *See* TRO Order at 10 (quoting *Lamps Plus, Inc. v. Varela*, 139 S. Ct. 1407, 1416 (2019); citing *Concepcion*, 563 U.S. 333, 347–48 (2011); *Sakkab v. Luxottica Retail N.A., Inc.*, 803 F.3d 425, 435 (9th Cir. 2015)). Using brackets, ellipses, and carefully spliced snippets from *Concepcion* and its progeny, Postmates attempts to argue that

1  otherwise bilateral arbitrations can become a prohibited "non-individual"
2  proceeding if the number of bilateral arbitrations the company is facing at any one
3  time means arbitrating those claims is less convenient and more costly to the
4  company than when it faces only one arbitration at a time. Opp'n at 15. Postmates's
5  position finds no support in plain English; a claimant's demand for arbitration does
6  not become "non-individual" simply because numerous other claimants have
7  similarly demanded arbitrations. And Postmates position ignores the very logic
8  underpinning *Concepcion*, which turned on the "serious due process concerns
9  [raised] by adjudicating the rights of absent class members of the plaintiff class."
10 TRO Order at 10 (collecting cases and quoting *Lamps Plus*, 139 S. Ct. at 1416).
11 Indeed, the Court's holding in *Concepcion* necessarily <u>requires</u> that companies may
12 have  to face thousands of arbitrations when they violate the rights of thousands of
13 workers, require arbitration, and prohibit class actions.

14 The Ninth Circuit is in accord. In *Blair v. Rent-A-Center, Inc.*, the court
15 considered whether the FAA preempts California law that voids contractual
16 provisions purporting to waive a consumer's right to seek public injunctive relief.
17 928 F.3d 819, 922 (9th Cir. 2019). The court upheld the California law on the ground
18 that public-injunction claims can be brought in individual arbitration. *Id.* at *829–
19 30. In so holding, the court rejected the argument that a public injunction claim
20 should be treated as the equivalent of a class action under the FAA, even if a public
21 injunction claim may "involve high stakes and could affect a lucrative business
22 practice." *Id.* at 830. As the Ninth Circuit explained, it is the <u>representative</u> nature
23 of an arbitration, not its high stakes or complexity that interferes with the
24 fundamental nature of traditional bilateral arbitration. *Id*.

25 Ironically, it is Postmates's approach that would introduce more complexity
26 and procedural formality, and would create more questions than answers. Postmates
27 complains that Petitioners introduce complexity and delay by filing their demands
28 in a single day. Opp'n at 16–17. But nothing in the MAP limits the number of

bilateral arbitrations that can be brought at one time. And Postmates provides no guidance for how courts could write such provisions into the MAP without denying couriers the ability to assert their claims in a timely fashion. Similarly, Postmates complains that the cost and expense of paying AAA's filing fees creates unfair "pressure" for it to settle. Opp'n at 18. But Postmates <u>chose</u> AAA as its arbitration forum knowing full well the fees AAA charges for its services. Is Postmates asking this Court to re-write the MAP to choose an alternative forum with lower fees? Is it asking the Court to cap the amount of fees AAA can charge companies that choose to invoke it in their arbitration agreements? No answer is apparent.

Postmates's real complaint is not that Petitioners have violated the MAP but that Postmates never thought so many couriers would simultaneously invoke it.[2] So Postmates is now asking this Court to wield a conjured "three-part framework" to rewrite the parties' contract. Opp'n at 15. But there is no sour-grapes exception to the most fundamental tenet of FAA jurisprudence: "to ensur[e] that private arbitration agreements are enforced according to their terms." *Concepcion*, 563 U.S. at 344 (internal quotation marks omitted). The FAA leaves parties free to "shape [arbitration] agreements to their liking by specifying with whom they will arbitrate, the issues subject to arbitration, [and] the rules by which they will arbitrate." *Lamps Plus*, 139 S. Ct. at 1416. Postmates may no longer like the contract it drafted, but the FAA requires that courts enforce Postmates's agreement, not alter it.

**D.     The Court Should Order Postmates To Arbitrate With Petitioners and Award Remedies under SB 707.**

*1.     Postmates must comply with AAA's administrative determinations.*

This Court should order Postmates to arbitrate "in the manner provided for in [its] agreement." 9 U.S.C. § 4. Postmates's MAP obligates Postmates to comply with AAA's administrative determinations, including AAA's filing fee requirements.

---

[2] As this Court observed, although Postmates complains about the way counsel has filed Petitioners' claims, Postmates "do[es] not point to anything about *Defendants' claims themselves* that make them 'class actions.'" TRO Order at 10.

Postmates attacks a strawman when it argues that the Court should not order Postmates specifically to pay all AAA fees. Opp'n at 19. Petitioners have not argued that the FAA requires the Court to order that Postmates pay a specific amount of fees. Rather, Petitioners ask the Court to order Postmates to arbitrate "in the manner provided for in [its] agreement," which includes the obligation to comply with AAA's administrative requirements and all conditions precedent to commencing arbitration. And that is precisely what the court ordered in *Adams*. While the *Adams* court declined to order Postmates to pay a specific amount of fees, it also made clear that "the payment of arbitration fees, including related expenses, is a procedural condition precedent to be decided by the arbitrator." *Adams* I, 414 F. Supp. 3d at 1255. AAA Rule 56—which the *Adams* court cited, *see id.*—states that AAA may "require the parties to deposit" fees. And Rule 8 provides that, before an arbitrator is appointed, the Rules "shall be interpreted and applied by the AAA."

The *Adams* court further underscored that AAA's determinations are binding, citing *Lifescan, Inc. v. Premier Diabetic Servs., Inc.*, 363 F.3d 1010, 1012–13 (9th Cir. 2004), as holding that "the AAA Commercial Arbitration Rules confer the arbitrator with discretion regarding the payment of arbitration fees." *Id*. The decisions in *Allemeir v. Zyppah, Inc.*, No. 18-7437-PA (AGRx), 2018 WL 6038340, at *1 (C.D. Cal. Sept. 21, 2018), and *Halloran v. Davis*, No. 2:12-cv-01011-CBM (CWx), 2013 WL 12153551, at *3 (C.D. Cal. Aug. 15, 2013) are in accord.[3]

Postmates's position not only is legally incorrect but also would produce absurd results. AAA does not have the judicial power to order Postmates to pay fees, on pain of contempt. That is why Section 4 of the FAA creates a cause of action for contractual counterparties to compel arbitration in court. If Postmates's position were accepted, no one would have the ability to ever force Postmates to proceed with

---

[3] Postmates attempts to distinguish these cases by noting that the agreements at issue "did not incorporate AAA's Commercial Arbitration Rules." Opp'n at 19. But Postmates does not even attempt to explain how a particular set of AAA Rules alters this Court's authority to make Postmates commence arbitration.

arbitration and Section 4 would be a false promise; this Court could "compel" Postmates to commence arbitration, but that order would be precatory so long as Postmates refused to pay the fees necessary for arbitration to begin.[4] To state that position is to refute it.

### 2. The Court should award remedies under SB 707.

Postmates does not dispute that if this Court concludes that Postmates has breached its obligation to pay filing fees at AAA, SB 707 requires that Postmates be ordered to pay Petitioners' reasonable costs and attorneys' fees regardless of the outcome of the arbitration. Instead, Postmates argues that this requirement is preempted by the FAA. Postmates is incorrect.

The FAA does not "reflect a congressional intent to occupy the entire field of arbitration." *Volt Info. Scis., Inc. v. Bd. of Trustees of Leland Stanford Junior Univ.*, 489 U.S. 468, 477 (1989). Rather, the preemptive effect of the FAA flows from the statute's command that a written agreement to arbitrate "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. State statutes that prevent arbitration agreements from being "valid, irrevocable, and enforceable" conflict with, and are preempted by, the FAA unless they fall within the so-called "saving clause" in Section 2. *See Sakkab*, 803 F.3d at 431–32. The saving clause allows state laws to render arbitration agreements invalid so long as they apply equally to "any contract." *See id.* at 431–40.

Section 1281.97 does not even plausibly prevent any arbitration agreement from being "valid, irrevocable, and enforceable." To the contrary, its whole purpose is to ensure that agreements to arbitrate <u>are</u> enforced. Thus, there is no conflict between § 1281.97 and the FAA, and no cause to analyze whether § 1281.97 fits

---

[4] Postmates's *ex parte* application for a TRO claimed Postmates would be irreparably injured by being required to pay AAA's filing fees. Mem. ISO TRO, pp. 20–23, ECF No. 17-1. If Postmates truly believes that it cannot be required to pay filing fees, then it was never in danger of being irreparably injured.

within the "saving clause." Stated differently, the FAA says nothing about state laws <u>unless</u> they render an agreement to arbitrate invalid, revocable, or unenforceable. The cases Postmates cites to describe the preemptive effect of the FAA involved a state law that prevented an agreement to arbitrate from being "valid, irrevocable, and enforceable." *See Kindred Nursing Ctrs. Ltd P'ship v. Clark*, 137 S. Ct. 1421, 1424–25 (2017) (holding that FAA preempted Kentucky rule that invalidated arbitration provision); *Chamber of Commerce of the U.S. v. Becerra*, No. 2:19-cv-02456-KJM-DB, 2020 WL 605877, at *3–4 (E.D. Cal. Feb. 7, 2020) (invalidating a law that imposed criminal sanctions on employers who require employees to arbitrate claims brought under the California Labor Code).

Even if one ignored the text of the FAA, it is absurd to suggest that a statute that <u>promotes</u> compliance with arbitration agreements is <u>hostile</u> to their enforcement or stands as an obstacle to the FAA's objectives.[5] For instance, many states have analogs to Sections 4 of the FAA. *E.g.*, Cal. Civ. Proc. Code. § 1281.2. Yet no court has ever held that a state that makes it even <u>easier</u> than the FAA to grant a motion to compel has somehow undermined the strong federal policy favoring arbitration.

Further, Postmates asserts that SB 707 is preempted because it "'singles out arbitration agreements for disfavored treatment," and "was in fact *designed* to discourage the use of arbitration agreements." Opp'n at 22 (citations omitted, emphasis in original). But the legislative history Postmates cites shows only that the proponents were hostile to "companies withhold[ing] payment to delay arbitration," and were upset that this tactic was "delaying hearings [and] leaving victims with no avenue for justice." *Id.* at 22, fn.7-8. A desire to make companies <u>comply</u> with arbitration agreements does not show that the statute was "designed to discourage the use of arbitration agreements." *Id*. at 22 (emphasis omitted). And Postmates does

---

[5] Postmates also cannot argue that § 1281.97 is inconsistent with the MAP. The MAP does not limit remedies that otherwise would be available to the parties; to the contrary, the MAP incorporates AAA rules, which require that Petitioners have access to all available remedies. *See* Employment Due Process Protocol.

not identify a single example of a company declining to enter into an arbitration agreement because of SB 707's passage. Postmates does not even assert that <u>it</u> will stop entering into arbitration agreements because of SB 707. In fact, it recently just issued a new arbitration agreement to its couriers on May 22, 2020. Unsupported speculation does not satisfy the heavy burden Postmates bears to show that a duly enacted state statute is preempted by federal law. *See Dilts v. Penske Logistics, LLC*, 769 F.3d 637, 649 (9th Cir. 2014) ("Defendants, who bear the burden of proof in establishing the affirmative defense of preemption, submitted no evidence to show that the break laws in fact would decrease the availability of routes . . . .").

As a last resort, Postmates also claims that SB 707 violates the Contracts Clause of the United States and California Constitutions because it "substantially impairs Postmates' arbitration agreements." Opp'n at 24. But for nearly 200 years, Supreme Court precedent has held that a law merely adjusting remedies for a breach of contract does not violate the Contracts Clause. *See, e.g.*, *Bronson v. Kinzie*, 42 U.S. 311, 315–16 (1843). SB 707 only clarifies the contractual <u>remedies</u> available to Petitioners for Postmates's breach of the MAP. As already noted, SB 707 does not render arbitration agreements invalid, revocable, or unenforceable in any way; for that same reason, SB 707 works no impairment—let alone a <u>substantial</u> one—on the parties' agreement. Indeed, Postmates's Contracts Clause argument does not add anything beyond its meritless FAA preemption argument. The standard for finding a Contracts Clause violation is significantly higher than the standard for finding a statute preempted under the FAA. That is presumably why there are dozens of decisions striking down state statutes regulating arbitration under the FAA, but Postmates has not identified a single case in which such a statute was held to violate the Contracts Clause. If SB 707 is not preempted under the FAA, it cannot possibly be a violation of the Contracts Clause.

E.   **The September Petitioners Are Properly Joined.**

Postmates asserts that the September Petitioners cannot be joined in this action because, "Rule 20(a) 'does not provide a mechanism for a defendant to join parties' *unless* the defendant 'is asserting a crossclaim or counterclaim.'" Opp'n at 9 (quoting *Nixon v. Guzzetta*, 272 F.R.D. 260, 262 (D.D.C. 2011)). But Postmates concedes that "'counterclaiming or crosclaiming defendants' may seek joinder." *Id.* (quoting 7 Wright & Miller, Federal Practice and Procedure, § 1657 (3d ed. 2002)).

The petition is not merely a motion; rather, it is a case-initiating document that asserts a <u>claim</u> for injunctive relief under 9 U.S.C. § 4. *See, e.g., Kasap v. Folger Nolan Fleming & Douglas, Inc.*, 166 F.3d 1243, 1245 (D.C. Cir. 1999) ("The [FAA] creates several federal causes of action relating to arbitration agreements (to be initiated by 'petition' or 'application'), including an action under § 4 to compel arbitration."); *KKE Architects, Inc. v. Diamond Ridge Dev.,* LLC, No. CV 07-06866 MMM (FMO), 2008 WL 11422047, at *9 (C.D. Cal. Apr. 21, 2008) ("[T]he <u>affirmative claim</u> that initiated the action was a petition to compel arbitration.") (emphasis omitted and added). All of the cross-petitioners could plainly be joined if they filed this action originally, rather than a cross-petition. That they have presented their claims through a cross-petition does not change the analysis. Opp'n at 9 ("counterclaiming or crossclaiming defendants may seek joinder.") (internal quotation marks omitted).

### III.   CONCLUSION

For the foregoing reasons, Petitioners' motion to compel arbitration should be granted.

Dated: July 6, 2020

Keith A. Custis (#218818)
 kcustis@custislawpc.com
CUSTIS LAW, P.C.
1999 Avenue of the Stars
Suite 1100
Los Angeles, California 90067
(213) 863-4276

Respectfully submitted,

/s/ Warren Postman
Warren Postman (*pro hac vice*)
 wdp@kellerlenkner.com
KELLER LENKNER LLC
1300 I Street, N.W., Suite 400E
Washington, D.C. 20005
(202) 749-8334

Aaron Zigler (#327318)
 amz@kellerlenkner.com
Ashley Keller (*pro hac vice*)
 ack@kellerlenkner.com
KELLER LENKNER LLC
150 N. Riverside Plaza, Suite 4270
Chicago, Illinois 60606
(312) 741-5220

*Attorneys for Defendants/Cross-Petitioners*