THEANE EVANGELIS, SBN 243570
  tevangelis@gibsondunn.com
DHANANJAY S. MANTHRIPRAGADA, SBN 254433
  dmanthripragada@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA 90071-3197
Telephone: 213.229.7000
Facsimile: 213.229.7520

MICHELE L. MARYOTT, SBN 191993
  mmaryott@gibsondunn.com
SHAUN A. MATHUR, SBN 311029
  smathur@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
3161 Michelson Drive
Irvine, CA 92612-4412
Telephone: 949.451.3800
Facsimile: 949.451.4220

Attorneys for Plaintiff POSTMATES INC.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| POSTMATES INC., <br><br> Plaintiff, <br><br> v. <br><br> 10,356 INDIVIDUALS, <br><br> Defendants. | CASE NO. 2:20-cv-02783-PSG-JEM <br><br> **JOINT REPORT** <br><br> Trial Date: TBD |
| GREENWOOD, et al., <br><br> Cross-Petitioners, <br><br> v. <br><br> POSTMATES INC., <br><br> Cross-Respondent. | |

Pursuant to this Court's July 22, 2020 Order (ECF No. 71), Plaintiff-Respondent Postmates Inc. ("Postmates"), Defendants 10,356 Individuals ("Defendants"), and Cross-Petitioners (collectively, the "Parties") respectfully submit this Joint Report. The Parties have set forth below the issues they agree on and their respective statements regarding the status of the case and how it should proceed.

## I.   AGREED SCHEDULE FOR POSTMATES' MOTION

The Court gave the Attorney General of California until September 10, 2020 to intervene. *See* ECF No. 71. The Attorney General has declined to intervene and Postmates intends to file a motion for judgment on the pleadings related to its SB 707 claims. The Parties have agreed on the following schedule for Postmates' motion for judgment on the pleadings:

- Postmates' opening brief: October 5, 2020
- Defendants' opposition brief: October 19, 2020
- Postmates' reply brief: October 26, 2020

## II.   RULE 26(F) CONFERENCE

The Parties conducted a Rule 26(f) conference on July 8, 2020, and Postmates shared a draft of the Rule 26(f) Report with Defendants before its due date of July 22, 2020. *See* ECF No. 54 (requiring the parties to "file a joint statement with the Court not later than 14 days after they confer, as required by" Rule 26 and the Local Rules). Before the Parties could submit the report, the Court stayed the case and ordered the Parties to submit a joint report by September 17, 2020 that would propose a "game plan as to how to proceed." July 22, 2020 Hr'g Tr. at 18:10–12; ECF No. 71.

Postmates respectfully submits this statement as its Rule 26(f) Report pursuant to Fed. R. Civ. P. 26(f) and L.R. 26-1. Parties are typically afforded one opportunity to conduct a Rule 26(f) conference, and are required to submit a single 26(f) Report after that conference. Parties are, of course, free to change strategy after that conference has occurred, but a mere change in strategy does not entitle a party to another Rule 26(f) conference. Accordingly, Postmates' understanding is that the Court ordered the Parties

to jointly submit their Rule 26(f) Report by September 17, 2020, and that the Court would hold a status conference on September 21, 2020 so that the parties and the Court could discuss a game plan for how the case should proceed.

Defendants and Cross-Petitioners understood the deadline for filing the Rule 26(f) report to have been vacated when this Court stayed the case until September 21, 2020, ECF No. 71, and vacated the Rule 26(f) scheduling conference, originally scheduled for August 3, ECF No. 73. It has been several months since the parties had their Rule 26(f) conference, and several developments, including the upcoming September 21 status conference may change or inform their thinking on the case. If and when the Court re-calendars the Rule 26(f) scheduling conference, Defendants and Cross-Petitioners will seek to have a current Rule 26(f) conference with Postmates and will submit their Rule 26(f) report. For now, Defendants and Cross-Petitioners are addressing in this report the issues they believe the Court ordered them to address: "a game plan as to how to proceed with the current petition that's on file and the -- any motions that would be brought by Postmates and the State and the defendants and cross-petitioners." July 22, 2020 Hr'g Tr. at 18:6–13.

Because Defendants and Cross-Petitioners do not agree to file a full Rule 26(f) Report, Postmates has included its 26(f) Report as a statement within this "Joint Report."

### III.  POSTMATES' STATEMENT

#### A.  Introduction and Statement of the Case

Postmates operates an online marketplace and mobile platform through which consumers connect with local merchants and, if consumers request delivery, independent couriers to facilitate the purchase, fulfillment, and local delivery of products from merchants to consumers. Defendants are 10,356 individuals who coordinated with each other, aggregated their claims together, and simultaneously filed 10,356 boilerplate arbitration demands with the American Arbitration Association ("AAA") on Saturday, February 15, 2020. Defendants then insisted that their arbitrations be administered collectively and proceed at the same time, in some cases before the same arbitrator. They

also demanded that Postmates pay over $4 million in up-front filing fees before any one arbitration could commence—even though over 1,200 of them lack an agreement to arbitrate or viable claims and thus have no business before the AAA. According to a diligent search of Postmates' records based on the information provided by Defendants, more than 650 Defendants never agreed to arbitrate their disputes with Postmates, and more than 600 Defendants never completed a single delivery using Postmates' platform or have released their claims in a prior settlement.

Defendants' manner of arbitration contravenes the Mutual Arbitration Provision and Class Action Waiver's individual arbitration requirement because it undermines the principal advantages of traditional individual arbitration. Postmates may not be compelled to arbitrate in such a manner absent its consent. *See Lamps Plus, Inc. v. Varela*, 139 S. Ct. 1407, 1415–16 (2019); 9 U.S.C. § 4 (permitting district courts to compel arbitration only "in the manner provided for in [the parties'] agreement"). The Supreme Court has articulated a three-part framework for analyzing whether an approach to arbitration interferes with traditional arbitration. Under that framework, courts ask whether an approach to arbitration (1) "makes the process slower" and "more costly" than individual arbitration, (2) "requires procedural formality" that is unnecessary in individual arbitration, and (3) "greatly increases risks to defendants" by imposing "pressure[]" to "settl[e] questionable claims." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 348–50 (2011); *see also Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1622–23 (2018) ("*Concepcion* teaches that we must be alert to new devices and formulas that," like class arbitration, would undermine the "fundamental attribute[s] of arbitration"). All three factors demonstrate that Defendants have sought to arbitrate in a manner that is fundamentally at odds with traditional individual arbitration.

Further, Defendants have attempted to enforce a recently enacted California statute, SB 707, against Postmates. SB 707 is preempted by the FAA, and violates the United States and California Constitutions' Contracts Clauses. SB 707 is preempted because it singles out arbitration agreements for disfavored treatment and discourages

companies from drafting arbitration agreements, contrary to the FAA's goal of promoting arbitration. SB 707 also violates the federal and state Contracts Clauses by substantially impairing Postmates' arbitration agreements—specifically, the requirement that both parties abide by their contractual obligations and pay their share of filing fees. SB 707 is therefore unconstitutional.

Postmates seeks a declaratory judgment that Postmates cannot be compelled to arbitrate the parties' disputes in a non-individualized manner, that SB 707 is preempted by the FAA, and that SB 707 is unconstitutional. Postmates also requests that the Court enjoin Defendants—all of whom are properly before this Court—from pursuing the non-individualized arbitration and enforcing SB 707 against Postmates. *See* ECF No. 40 (Postmates explaining that it properly joined all 10,356 Defendants in this action, that a justiciable controversy exists under Article III and the Declaratory Judgment Act, and that this Court should retain jurisdiction over this declaratory judgment suit).

### B. Jurisdiction and Service

This Court has jurisdiction over the case pursuant to 9 U.S.C. § 4 and 28 U.S.C. §§ 1331 and 1367 and venue is proper in the Central District of California. Joinder of Defendants is proper because this case arises out of one transaction and presents common questions. *See* ECF No. 40. Defendants' counsel waived service of process for the initial complaint and registered to receive electronic service for this lawsuit; the Second Amended Complaint was electronically served on July 1, 2020. All Parties have been served via service upon counsel.

### C. Synopsis of Principal Legal Issues

The primary legal issues presented by this lawsuit are (1) whether Postmates can be compelled to arbitrate with Defendants and Cross-Petitioners in a manner that violates the Mutual Arbitration Provision and Class Action Waiver's individual arbitration requirement; (2) whether SB 707 is preempted by the FAA and therefore may not be enforced against Postmates; and (3) whether SB 707 is unconstitutional under the United States Constitution and the California Constitution's Contracts Clauses.

### D. Additional Parties / Amendment Of Pleadings

At this time, the Postmates does not anticipate the appearance of additional parties or further amendment of the pleadings in this matter.

### E. Discovery Plan

On July 22, 2020, the Parties stipulated to delay service of their initial disclosures. Postmates is prepared to promptly exchange initial disclosures with Defendants and requests that Defendants agree upon a date for the exchange. During the July 8, 2020 Rule 26(f) conference, Defendants took the position that initial disclosures are unnecessary. If Defendants do not agree upon a mutual date for the Parties to exchange initial disclosures, Postmates asks the Court to order the Parties to promptly serve their initial disclosures pursuant to Rule 26(a)(1)(c).

Postmates anticipates deposing Defendants and other witnesses who may be revealed through discovery and through Postmates' further investigation. Postmates also intends to propound written discovery, including interrogatories, requests for admissions, and document requests.

The subjects of Postmates' discovery include, but are not limited to, the following: (1) the existence of an arbitration agreement between each Defendant and Postmates, and Defendants' efforts to create an arbitration agreement where one does not exist; (2) whether or not Defendants have ever used the Postmates platform as couriers, or have released all claims through binding settlements; (3) whether Defendants have filed arbitration demands or are pursuing arbitration asserting overlapping claims against Postmates through counsel other than Keller Lenkner at the same time as they are seeking a Court order compelling arbitration in this matter; and (4) Defendants' concerted efforts to seek arbitration together in a non-individualized manner, as alleged in Plaintiff's Second Amended Complaint (ECF No. 61).

Postmates may retain experts with regard to the claims. At this time, Postmates does not believe that non-expert discovery should be conducted in phases, or that non-expert discovery should be completed before expert discovery begins. Postmates intends

to promptly begin discovery. Defendants have suggested that the Parties resolve these issues through an informal meet and confer, but it is that informal process that has caused the supposed discrepancies they have identified. For instance, Defendants have provided Postmates incomplete and inaccurate information in a piecemeal fashion, including multiple email addresses for individuals that might correspond to an account on Postmates' system. Proceeding in this fashion has imposed a heavy cost on Postmates, and there is no reason to believe that an informal exchange of information not under penalty of perjury will allow the Parties to get to the bottom of who has an agreement and who does not, and who is simultaneously pursuing arbitration of the same claims through one or more other counsel in separate proceedings while at the same time seeking an order compelling arbitration here. And now that litigation has commenced and the Parties have conducted the Rule 26(f) conference, the best, most efficient, and least intrusive way to get to resolve this issue is through formal discovery that Postmates is entitled to under the Federal Rules of Civil Procedure and the FAA. *See, e.g.*, *Guidotti v. Legal Helpers Debt Res., LLC*, 716 F.3d 764, 776 (3d Cir. 2013) (where evidence is "unclear regarding the agreement to arbitrate," then "the parties should be entitled to discovery on the question of arbitrability"); *Champ v. Siegel Trading Co.*, 55 F.3d 269, 276 (7th Cir. 1995) ("[i]n a proceeding under section 4, which consists of a preliminary determination on whether the parties intended an issue to be referred to arbitration, a district court could order discovery … on matters relevant to the existence of an arbitration agreement"); *Erwin v. Citibank, N.A.*, 2017 WL 1047575, at *6 (S.D. Cal. Mar. 20, 2017) (denying motion to compel arbitration and ordering discovery on plaintiff's alleged opt-out, "because genuine issues of fact concerning the making and existence of the agreement to arbitrate remain"); *Chime Inst. v. Haney*, 2013 WL 12114616, at *4 (C.D. Cal. Oct. 28, 2013) (allowing "discovery as to the making of the arbitration agreement"); *Alvarez v. T-Mobile USA, Inc.*, 822 F. Supp. 2d 1081, 1086 (E.D. Cal. 2011) (holding that "[d]iscovery is appropriate" to determine "whether an agreement to arbitrate … was ever formed").

Postmates intends to request the Parties come to an agreement on a reasonable ESI protocol and a Protective Order. Postmates does not anticipate any unusual issues regarding privilege or protection of trial-preparation materials. Postmates' proposed protective order will provide a procedure for asserting these claims after production.

Postmates believes that the 10 deposition limit of Fed. R. Civ. P. 30 is inadequate in this case, given the quantity of Defendants and the differences between Defendants. Other than increasing the number of depositions, Postmates does not believe any other changes to the limitations on discovery are necessary at this time, but reserves the right to seek modifications at a later date.

Postmates believes the Court should set a discovery schedule for non-expert and expert disclosures and discovery.

### F. Whether the Court Should Enter Other Orders

Postmates anticipates that the Parties will enter into an ESI protocol and a protective order covering the production of documents and ESI in this case.

Postmates does not anticipate requesting that the Court enter other orders under Rule 26(c) or under Rule 16(b) and (c) at this time.

### G. Evidence Preservation

Postmates is concerned about Defendants' document preservation efforts given the number of Defendants and lack of clarity regarding whether Defendants are represented by their counsel of record in this case or by other counsel through which some Defendants are simultaneously bringing similar claims in separate proceedings. Plaintiff requests Defendants take reasonable preservation efforts.

### H. Trial Estimate & Case Schedule

Postmates has requested a jury trial, and estimates that trial likely will require seven to ten days, depending on the number of witnesses called by the Parties.

### I. Manual for Complex Litigation

Postmates believes this action should not be designated as complex and that the procedures of the Manual for Complex Litigation should not be utilized. Postmates believes the Court should set a trial date, and dates for a discovery cutoff.

### J. Defendants' Motion to Compel Arbitration Should Be Held in Abeyance Pending the Ninth Circuit's Decision in *Adams*

Postmates also believes that the Court should hold Defendants' motion to compel arbitration in abeyance until the Ninth Circuit issues its opinion in *Adams v. Postmates, Inc.*, No. 19-17362, which held oral argument on September 15, 2020. *See* ECF No. 65. The Ninth Circuit's resolution of the appeal in *Adams* may "provide guidance to the [C]ourt in deciding [an] issue[] before it" (*Ali v. Trump*, 2017 WL 2222873, at *2 (W.D. Wash. May 22, 2017))—namely, whether the Mutual Arbitration Provision's delegation clause "clearly and unmistakably" delegates to an arbitrator the Parties' dispute as to whether Defendants have sought to arbitrate in a manner that violates the Class Action Waiver's individual arbitration requirement (*Shivkov v. Artex Risk Soln's*, --- F.3d ---, 2020 WL 5405687, at *9 (9th Cir. Sept. 9, 2020); *see also* Oral Argument at 14:56, 15:18, *Adams v. Postmates Inc.* (Sept. 15, 2020) (No. 19-17362) (The Honorable Paul J. Watford stated, "I just beg to differ with you when you say that [the delegation clause] is clear . . . I think that [the delegation clause] is somewhat ambiguous").

Postmates does not believe that the Court should stay the case in its entirety until the Ninth Circuit rules, but that it should consider holding Defendants' motion to compel arbitration in abeyance until the Ninth Circuit issues its opinion. Holding Defendants' motion in abeyance for a brief period until the Ninth Circuit issues its decision would not cause any harm to Defendants, particularly because their interests in "hav[ing] this case heard expeditiously" is undermined by their own delay in waiting months, and in some cases over a year, to pursue their claims in arbitration. *Bradshaw v. City of Los Angeles*, 2020 WL 2065007, at *7 (C.D. Cal. Mar. 23, 2020); *see also* ECF No. 61 ¶ 5. By contrast, the Parties may be harmed if the Court does not hold the motion to compel

arbitration in abeyance if the Ninth Circuit interprets the delegation clause in a manner that conflicts with this Court's interpretation.

With respect to Defendants' request that the Court hear argument on their motion to compel arbitration on September 22, 2020—just five days after the Parties' submit this Joint Report—this Court has already indicated that it would prefer to hear argument on the motion to compel arbitration at the same time as Postmates' forthcoming motion for judgment on the pleadings. *See* July 22, 2020 Hr'g Tr. at 17:3–6 ("my preference probably is, if you do set up a motion for judgment on the pleadings, to not delay the cross-petition too much more so that any judgment on the pleadings would be done on an expedited basis"); *id.* at 5:22–23 (asking whether Postmates' motion for judgment on the pleadings "could simultaneously be heard with the cross-petitioner's motion to compel arbitration"). And Defendants have not identified a single Defendant who suffered any harm while this case was stayed or would suffer harm if the Parties' motions are heard together after Postmates' motion for judgment on the pleadings is fully briefed.

### K.  Settlement/Alternate Dispute Resolution Procedures

The Parties have been engaged in settlement discussions but have not yet reached an agreement. Postmates believes that it may be useful to attend mediation with a Magistrate Judge at a mutually agreeable date and time after discovery is complete and in advance of trial.

## IV.  CROSS-PETITIONERS' POSITION

Cross-Petitioners' motion to compel arbitration has been fully briefed and was scheduled for argument on July 22, but was not argued because of Postmates unjustified delay in complying with Federal Rule of Civil Procedure 5.1. Because the State of California has decided not to intervene, the motion is once again ready for decision. Cross-Petitioners therefore request that the Court hear argument on their motion to compel as part of the upcoming September 21 status conference, or as soon thereafter as possible.

Seven months have passed since the majority of Cross-Petitioners filed their demands for individual arbitration against Postmates with the American Arbitration Association ("AAA"). For the other Cross-Petitioners, September 24 marks an entire year since they first filed their demands. In their demands, Cross-Petitioners asserted claims for unpaid wages and other protections under the California Labor Code due to Postmates's continued refusal to properly classify them as employees rather than independent contractors despite the clear mandate to do so established by the ABC test articulated in *Dynamex Operations West, Inc., v. Superior Court*, 4 Cal. 5th 903 (2019), reh'g denied (June 20, 2019) and later codified at Cal Lab. Code § 2775 *et seq*.

But Postmates has flatly refused to proceed with Cross-Petitioners' arbitrations based on the untenable theory that thousands of individual arbitrations are somehow a contractually prohibited "class arbitration." Cross-Petitioners moved to compel Postmates to arbitrate on May 22, 2020, and that motion was fully-briefed and ready for argument on July 22. But, after delaying Cross-Petitioners' arbitrations through its failure to comply with the administrative determinations of AAA, Postmates further delayed these proceeding by failing to comply with Federal Rule of Civil Procedure 5.1 for four months. *Compare* Complaint, ECF No. 1 (filed on March 25, 2020 and raising constitutional challenges to SB 707) *with* Notice of Constitutional Challenge, ECF No. 64 (filed on July 10, 2020). Although Postmates is represented by able counsel with extensive experience bringing constitutional challenges in federal court, Postmates offered no justification for its delay. Nonetheless, Postmates's conduct left the Court with no choice but to continue the hearing on the motion to compel scheduled for July 22 until after the time had passed for the State to intervene:

> I just alluded to one [delay tactic] at the outset. I mean, I wish the notice would have gone out in March of this year, not July, four months later. But having said that, I think under Rule 5.1, there's really -- looking at the various subdivisions, there's -- of the statute or the rule, rather, there's not a whole lot I can do about the delay.

July 22, 2020 Hr'g Tr. at 8:12–17.

The State has chosen not to intervene. Because no additional briefing is necessary on Cross-Petitioners motion, Cross-Petitioners respectfully request that the Court hear their fully briefed motion at the conference scheduled for September 21 (or at the next available date). Under the FAA and the Fleet Agreement, each Cross-Petitioner has a right to have their claims heard in arbitration in a speedy and efficient manner. As this Court has observed, "[t]he Federal Arbitration Act represents Congress's intent 'to move the parties to an arbitrable dispute out of court and into arbitration as quickly and easily as possible.'" ECF 30 at 13 (quoting *Bushley v. Credit Suisse First Boston*, 360 F.3d 1149, 1153 (9th Cir. 2004)). For that reason, unnecessarily delaying the commencement of arbitration would be "antithetical to the spirit and intent of the arbitration process." *Id.* (quoting *In re Cintas Corp. Overtime Pay Arbitration Litig.*, No. C06-1781-SBA, 2009 WL 1766595, at *5 (N.D. Cal. June 22, 2009).

Moreover, Cross-Petitioners are low-income workers who, in the middle of a pandemic and mass unemployment, are seeking to recover unpaid wages that would materially affect their lives, but have been denied any forum in which to pursue their claims. Given the nature of the claims and the history of delay and litigation gamesmanship, any further delay, even by a few weeks, would substantially prejudice Cross-Petitioners.

Postmates asks this Court to stay its decision on the motion to compel pending the Ninth Circuit's decision in *Adams v. Postmates, Inc.*, No. 19-17362. Postmates's argument appears to assume that this Court will hold that Cross-Petitioners have a right to arbitrate, but then posits that Postmates might convince the Ninth Circuit that the separate couriers in the *Adams* case do not have a right to arbitrate. But where a party has a right to arbitrate, she has a right to do so without delay. That is why this Court previously ruled that the balance of equities and the public interest cut against enjoining Cross-Petitioners from arbitrating. ECF 30 at 13 ("Defendants have an interest in being permitted to pursue their wage and hour claims in arbitration, which 'is supposed to be a speedy and inexpensive alternative to litigation,' and which the agreement they entered

into and Postmates' drafted expressly requires."). And that is why the court in *Adams* itself denied Postmates motion for a stay pending appeal. *Adams v. Postmates, Inc.*, No. 19-3042 SBA, 2020 WL 1066980, at *6 (N.D. Cal. Mar. 5, 2020) ("Petitioners filed their arbitration demands over eight months ago but no arbitrations have commenced, due largely to Postmates' litigation strategy, which is based on its untenable assertion that Petitioners are attempting to arbitrate on a classwide basis."). For these same reasons, the Court should not stay its decision of Cross-Petitioners' motion to compel based on Postmates's speculation that the Ninth Circuit might accept Postmates's meritless arguments.[1]

## V. DEFENDANTS' POSITION

The Defendants who are not Cross-Petitioners submit that their inclusion is improper. Postmates has sought declaratory and injunctive relief on legal issues that are not affirmative causes of action but, rather, defenses to a motion to compel arbitration. Moreover, Postmates has already failed to meet AAA's deadline to pay filing fees, which has resulted in Defendants' arbitrations being closed. Unless and until Defendants file a motion to compel arbitration, Postmates does not face any threat of injury, or any upcoming decision that it must make. Defendants filed their demands for arbitration, Postmates refused to arbitrate, those arbitrations are not proceeding, and nobody, except a Defendant through a motion to compel, could force Postmates to take any action or incur any costs. For those who have not filed a motion to compel arbitration, Postmates faces no cognizable injury.

---

[1] The Ninth Circuit panel's reaction to Postmates's arguments during the September 15 oral argument in *Adams*, makes Postmates's speculation particularly unfounded. *See* Oral Argument at 11:19, *Adams v. Postmates*, 19-17362, Hr'g Recording (Sept. 15, 2020), *available at* https://youtu.be/r2n57A0zT34 ("I'm completely unsympathetic to your arguments on the merits."); *id.* at 0:57 ("The individual plaintiffs here, they didn't do anything other than file their own individual arbitration demands. . . . They didn't do anything wrong from my vantage point.").

Moreover, because the legal questions Postmates has asked this Court to answer overlap in their entirety with the legal issues presented in the motion to compel, the Court's ruling on Cross-Petitioners' motion to compel will be, in effect, dispositive of the entire action. For that reason, Defendants believe the speediest and most efficient path to resolving this action is to decide Cross-Petitioners' motion to compel arbitration, which is already fully briefed. After the Court's decision, the parties will know more regarding how to resolve the remainder of the case.

In the meantime, because each of these issues can be decided as a matter of law in the motion to compel, Defendants do not believe it is the best use of time or resources to engage in extensive discovery, particularly in the current global climate. It is not uncommon for Courts to stay discovery and other obligations pending a motion to compel arbitration. *See, e.g., Okada v. Nevada Prop. 1, LLC*, No. 2:14-CV-01601-LDG, 2014 WL 6634446, at *2 (D. Nev. Nov. 21, 2014) (staying discovery pending a motion to compel discovery because "the issues in the motion to compel arbitration are potentially dispositive of the entire case"). A stay is particularly warranted here because the motion to compel has been fully briefed for several months and is ready for resolution imminently. *Id*. And while Defendants do not object to Postmates filing a redundant motion on the pleadings on the constitutionality of SB 707, the most economical path forward is to stay all other aspects of the case pending a decision on Cross-Petitioners' motion to compel arbitration.

Dated: September 17, 2020

GIBSON, DUNN & CRUTCHER LLP

By: /s/ *Theane Evangelis*
Theane Evangelis

Attorneys for Plaintiffs Postmates Inc.

Dated: September 17, 2020

WARREN POSTMAN
KELLER LENKNER LLC

By: /s/ *Warren Postman*
         Warren Postman

Attorneys for Defendant

### SIGNATURE ATTESTATION

Pursuant to Local Rule 5-4.3.4(a)(2), I attest that concurrence in the filing of this document has been obtained from the other signatories.

Dated: September 17, 2020         By: /s/ *Theane Evangelis*

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing was served on all counsel of record by electronic service through the Court's CM/ECF system.

Dated:  September 17, 2020          By: /s/  *Theane Evangelis*