1  THEANE EVANGELIS, SBN 243570
      tevangelis@gibsondunn.com
2  BRADLEY J. HAMBURGER, SBN 266916
      bhamburger@gibsondunn.com
3  DHANANJAY S. MANTHRIPRAGADA, SBN 254433
      dmanthripragada@gibsondunn.com
4  GIBSON, DUNN & CRUTCHER LLP
   333 South Grand Avenue
5  Los Angeles, CA  90071-3197
   Telephone:  213.229.7000
6  Facsimile:   213.229.7520

7  MICHELE L. MARYOTT, SBN 191993
      mmaryott@gibsondunn.com
8  SHAUN A. MATHUR, SBN 311029
      smathur@gibsondunn.com
9  GIBSON, DUNN & CRUTCHER LLP
   3161 Michelson Drive
10 Irvine, CA  92612-4412
   Telephone:  949.451.3800
11 Facsimile:   949.451.4220

12 Attorneys for Plaintiff POSTMATES INC.

13                  UNITED STATES DISTRICT COURT

14                CENTRAL DISTRICT OF CALIFORNIA

15 POSTMATES INC.,                    CASE NO. 2:20-cv-02783-PSG_

16              Plaintiff,            **NOTICE OF MOTION AND MOTION
                                      FOR JUDGMENT ON THE
17       v.                           PLEADINGS ON POSTMATES'
                                      SECOND, THIRD, AND FIFTH
18 10,356 INDIVIDUALS,                CAUSES OF ACTION;
                                      MEMORANDUM OF POINTS AND
19              Defendants.           AUTHORITIES IN SUPPORT
                                      THEREOF
20
21                                    **Hearing:**
                                      Date:      November 17, 2020
22                                    Time:      1:30 P.M.
                                      Judge:     Hon. Philip S. Gutierrez
23 GREENWOOD, et al.,

24              Cross-Petitioners,

25       v.

26 POSTMATES INC.,

27              Cross-Respondent.

28

Gibson, Dunn &
Crutcher LLP

**NOTICE OF MOTION**

PLEASE TAKE NOTICE THAT on November 17, 2020, or as soon thereafter as the matter may be heard, in Courtroom 10A of the above-entitled court, located at 350 West 1st Street, Courtroom 6A, 6th Floor, Los Angeles, California 90012-4565, Plaintiff Postmates Inc. will and hereby does move the Court pursuant to Federal Rule of Civil Procedure 12(c) for an order entering judgment in its favor on its Second, Third, and Fifth Causes of Action.  These Causes of Action seek, respectively, (1) declaratory judgment that California's Senate Bill 707 ("SB 707") is preempted by the Federal Arbitration Act, 9 U.S.C. §§ 1, *et seq.* ("FAA") (Dkt. 61 ("SAC") ¶¶ 106–15); (2) declaratory judgment that SB 707 violates the United States and California Constitutions' Contracts Clauses (SAC ¶¶ 116–22); and (3) injunctive relief enjoining enforcement of SB 707 (SAC ¶¶ 128–34).

*First*, SB 707 is preempted by the FAA because it "singles out arbitration agreements for disfavored treatment" and discourages their use by providing that only a drafting party of an arbitration agreement is in material breach for not paying arbitration fees, regardless of the reason for the nonpayment.  *See* 9 U.S.C. § 2.  *Second*, SB 707 is unconstitutional because it substantially impairs the parties' contractual relationships and undermines their reasonable expectations.  *See* U.S. Const. art. I, sec. X, cl. 1; Cal. Const. art. I, § 9.  *Third*, because SB 707 is preempted and/or unconstitutional, Postmates is entitled to declaratory and injunctive relief.

This Motion is based upon this Notice of Motion and Motion, the attached Memorandum of Points and Authorities, the pleadings and papers on file in this action, and upon such further evidence or arguments as the Court may consider.

This Motion is made following the conference of counsel pursuant to L.R. 7-3 which took place on July 8, 2020, and pursuant to the briefing schedule set by the Court. Dkt. 76.  Postmates understands Defendants will oppose this Motion.

Gibson, Dunn &
Crutcher LLP

Dated:  October 5, 2020

THEANE EVANGELIS
BRADLEY J. HAMBURGER
DHANANJAY S. MANTHRIPRAGADA
MICHELE L. MARYOTT
SHAUN A. MATHUR
GIBSON, DUNN & CRUTCHER LLP

By: /s/ *Theane Evangelis*
            Theane Evangelis

Attorneys for Plaintiff POSTMATES INC.

# TABLE OF CONTENTS

Page

MEMORANDUM OF POINTS AND AUTHORITIES .................................................. 1

I. INTRODUCTION ................................................................................................... 1

II. FACTUAL BACKGROUND AND PROCEDURAL HISTORY ........................... 3

    A.    The FAA Establishes a Pro-Arbitration Policy that the California Legislature Frequently Disregards ................................................. 3

    B.    California Enacts SB 707 with the Intent to Force Companies to "Reconsider" Their Use of Arbitration Agreements ................................... 4

        1.    SB 707 Creates Contract Law Applicable Only to Arbitration Agreements and Targets Companies that Use Them ...................... 4

        2.    The California Legislature Confirms that SB 707 Targets the Use of Arbitration Agreements ........................................ 5

    C.    Postmates Contracts with Independent Couriers Who May Agree to Resolve Disputes with Postmates in Individual Arbitration .................... 6

    D.    Defendants File Arbitration Demands Against Postmates ......................... 7

    E.    Postmates Files This Lawsuit and 4,933 Defendants Cross-Petition for an Order Enforcing SB 707 Against Postmates .................................. 8

III. LEGAL STANDARD ........................................................................................... 9

IV. ARGUMENT ....................................................................................................... 10

    A.    SB 707 Is Preempted by the FAA ...................................................... 10

        1.    SB 707 Singles Out Arbitration Agreements for Disfavored Treatment ............................................................... 11

        2.    SB 707 Interferes with the Fundamental Attributes of Arbitration ................................................................. 15

    B.    SB 707 Unconstitutionally Impairs Postmates' Contracts ...................... 19

    C.    The Court Should Enter Declaratory Judgment in Postmates' Favor and Enjoin Defendants from Enforcing SB 707 Against Postmates ....... 22

V. CONCLUSION ..................................................................................................... 24

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Adams v. Postmates, Inc.*,
414 F. Supp. 3d 1246 (N.D. Cal. 2019) ................................................................ 7, 18

*Adams v. Postmates, Inc.*,
--- F. App'x ---, 2020 WL 5793745 (9th Cir. Sept. 29, 2020) ............................... 7

*Allied Structural Steel Co. v. Spannaus*,
438 U.S. 234 (1978) ................................................................................ 19, 21, 22

*Altaville Drug Store, Inc. v. Emp. Dev. Dep't*,
44 Cal. 3d 231 (1988) ...................................................................................... 17

*Amoco Prod. Co. v. Vill. of Gambell*,
480 U.S. 531 (1987) ........................................................................................ 23

*AT&T Mobility LLC v. Concepcion*,
563 U.S. 333 (2011) ...................................................................... 2, 3, 4, 11, 15, 18

*Blair v. Rent-A-Center, Inc.*,
928 F.3d 819 (9th Cir. 2019) ..................................................................... 2, 11, 15

*Brown v. Dillard's, Inc.*,
430 F.3d 1004 (9th Cir. 2005) .......................................................................... 13, 21

*Brown v. Grimes*,
192 Cal. App. 4th 265 (2011) .......................................................................... 13, 21

*Buckeye Check Cashing, Inc. v. Cardegna*,
546 U.S. 440 (2006) ......................................................................................... 4

*Cal Fire Local 2881 v. Cal. Pub. Emps. Ret. Sys.*,
6 Cal. 5th 965 (2019) ....................................................................................... 19

*Calfarm Ins. Co. v. Deukmejian*,
48 Cal. 3d 805 (1989) ....................................................................................... 20

*Campanelli v. Allstate Life Ins. Co.*,
322 F.3d 1086 (9th Cir. 2003) ........................................................................... 21

# TABLE OF AUTHORITIES
(continued)

<div align="right">Page(s)</div>

*Chamber of Com. v. Becerra,*
    438 F. Supp. 3d 1078 (E.D. Cal. 2020) .........................................2, 11, 15, 17, 19, 24

*Colon De Sanchez v. Morgan Stanley Dean Witter,*
    376 F. Supp. 2d 132 (D.P.R. 2005) ........................................................................ 16

*Cont'l Airlines v. Intra Brokers, Inc.,*
    24 F.3d 1099 (9th Cir. 1994) ................................................................................ 23

*Costello v. BeavEx, Inc.,*
    810 F.3d 1045 (7th Cir. 2016) .............................................................................. 15

*Curry v. Baca,*
    497 F. Supp. 2d 1128 (C.D. Cal. 2007) ................................................................... 9

*Doctor's Assocs., Inc. v. Casaratto,*
    517 U.S. 681 (1996)............................................................................................. 11

*Epic Sys. Corp. v. Lewis,*
    138 S. Ct. 1612 (2018)................................................................................3, 11, 18

*Eureka Fed. Sav. & Loan Ass'n. v. Am. Cas. Co.,*
    873 F.2d 229 (9th Cir. 1989) ..........................................................................22, 23

*G.C. & K.B. Invs., Inc. v. Wilson,*
    326 F.3d 1096 (9th Cir. 2003) .............................................................................. 10

*Gen. Motors Corp. v. Romein,*
    503 U.S. 181 (1992)............................................................................................. 20

*Gilmer v. Interstate/Johnson Lane Corp.,*
    500 U.S. 20 (1991)................................................................................................. 3

*Heliotrope Gen., Inc. v. Ford Motor Co.,*
    189 F.3d 971 (9th Cir. 1999) ................................................................................ 10

*Hellinger v. Farmers Grp., Inc.,*
    91 Cal. App. 4th 1049 (2001)................................................................................ 20

*Huynh v. Vu,*
    111 Cal. App. 4th 1183 (2003) ............................................................................. 14

**TABLE OF AUTHORITIES**
(continued)

Page(s)

*Johnson v. Hologic, Inc.*,
  2014 WL 2581421 (E.D. Cal. June 9, 2014) ......................................................... 9

*Kindred Nursing Ctrs. Ltd. P'ship v. Clark*,
  137 S. Ct. 1421 (2017)......................................................2, 11, 12, 13, 14, 15

*Lamps Plus, Inc. v. Varela*,
  139 S. Ct. 1407 (2019) ...................................................................................... 18

*Med. Mut. of Ohio v. deSoto*,
  245 F.3d 561 (6th Cir. 2001) ............................................................................ 15

*MedImmune, Inc. v. Genentech, Inc.*,
  549 U.S. 118 (2007)...........................................................................10, 22, 23

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
  460 U.S. 1 (1983)................................................................................................. 3

*Nelson v. City of Irvine*,
  143 F.3d 1196 (9th Cir. 1998) ............................................................................ 9

*Nelson v. Nat'l Aeronautics & Space Admin.*,
  530 F.3d 865 (9th Cir. 2008) ........................................................................... 23

*Palmer v. Liggett Grp., Inc.*,
  825 F.2d 620 (1st Cir. 1987)............................................................................. 18

*Partnoy v. Shelley*,
  277 F. Supp. 2d 1064 (S.D. Cal. 2003) ........................................................10, 24

*Perry v. Thomas*,
  482 U.S. 483 (1987)............................................................................................ 4

*Preston v. Ferrer*,
  552 U.S. 346 (2008)..................................................................................3, 4, 11

*Rich & Whillock, Inc. v. Ashton Dev., Inc.*,
  157 Cal. App. 3d 1154 (1984) .......................................................................... 13

*RUI One Corp. v. City of Berkeley*,
  371 F.3d 1137 (9th Cir. 2004) .......................................................................... 20

# TABLE OF AUTHORITIES
(continued)

Page(s)

*S. Cal. Gas Co. v. City of Santa Ana,*
336 F.3d 885 (9th Cir. 2003) ..................................................................... 20

*Saheli v. White Mem'l Med. Ctr.,*
21 Cal. App. 5th 308 (2018) ...................................................................... 17

*Saturn Distrib. Corp. v. William,*
905 F.2d 719 (4th Cir. 1990) ...................................................................... 15

*Schwann v. FedEx Ground Package Sys., Inc.,*
813 F.3d 429 (1st Cir. 2016) ...................................................................... 15

*Secs. Indus. Ass'n v. Connolly,*
703 F. Supp. 146 (D. Mass. 1998) .............................................................. 18

*Southland Corp. v. Keating,*
465 U.S. 1 (1984) .............................................................................. 3, 4, 21

*Summit Media LLC v. City of Los Angeles,*
530 F. Supp. 2d 1084 (C.D. Cal. 2008) ...................................................... 10

*Susan B. Anthony List v. Driehaus,*
573 U.S. 149 (2014) ................................................................................. 23

*Sveen v. Melin,*
138 S. Ct. 1815 (2018) .............................................................. 2, 19, 20, 21

*United States v. 50.50 Acres of Land,*
931 F.2d 1349 (9th Cir. 1991) ...................................................................... 9

*Whitney Inv. Co. v. Westview Dev. Co.,*
273 Cal. App. 2d 594 (1969) ...................................................................... 13

*In re Workers' Comp. Refund,*
46 F.3d 813 (8th Cir. 1995) ...................................................................... 21

*Young v. U.S. ex rel. Vuitton et Fils S.A.,*
481 U.S. 787 (1987) ................................................................................. 16

**Statutes**

9 U.S.C. § 2 .......................................................................................... 3, 11

# TABLE OF AUTHORITIES
(continued)

<u>Page(s)</u>

28 U.S.C. § 2201 .................................................................................................... 22

Cal. Civ. Proc. Code § 1281.97(a) ...........................................................4, 12, 14, 20

Cal. Civ. Proc. Code § 1281.97(b) ........................................................................ 1, 5

Cal. Civ. Proc. Code § 1281.97(b)(2) ........................................................................ 5

Cal. Civ. Proc. Code § 1281.97(d) ....................................................................... 5, 12

Cal. Civ. Proc. Code § 1281.98(a) ............................................................................. 1

Cal. Civ. Proc. Code § 1281.98(d) ........................................................................ 1, 5

Cal. Civ. Proc. Code § 1281.99 .......................................................................... 1, 16

Cal. Civ. Proc. Code § 1281.99(a) ............................................................................. 5

Cal. Civ. Proc. Code § 1281.99(b) ....................................................................... 5, 12

**Constitutional Provisions**

Cal. Const. art I, § 9 ............................................................................................... 19

U.S. Const. art I, § 10, cl. 1 .................................................................................... 19

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. INTRODUCTION

In enacting California Senate Bill 707 ("SB 707"), the California Legislature expressly disparaged arbitration as a "controversial form of dispute resolution," and proclaimed its intent to force businesses to "*reconsider* their liberal use of binding arbitration provisions in contracts." Declaration of Theane Evangelis in Support of Request for Judicial Notice ("Evangelis Decl.") Ex. 1 at 16 (emphasis added); Dkt. 61 ("SAC") at ¶¶ 18, 67. The statute is a blatant attack on arbitration agreements in California. It effectuates the Legislature's hostility to arbitration agreements by rewriting them to target and disadvantage the drafting party with special provisions deeming that party in "material breach of the arbitration agreement," "in default of the arbitration," and having waived "its right to compel" arbitration if it does not pay arbitration fees within 30 days of any due date—regardless of the amount of the unpaid fee, the extent of the delay in paying, or even the *reason* for the nonpayment. Cal. Civ. Proc. Code § 1281.98(a). The statute also allows the "employee or consumer" to unilaterally elect whether to proceed in court or arbitration if arbitration fees are not paid. *Id.* § 1281.97(b). The statute further requires courts and arbitrators to impose a wide range of sanctions against drafting parties who, even when justified, do not timely pay arbitration fees. These sanctions include the mandatory payment of the other party's attorneys' fees and costs and may include additional monetary, issue, evidentiary, case terminating, and even *contempt* sanctions—even if the putative employee or consumer themselves breached the agreement before the company declined to pay fees. *Id.* § 1281.98(d), 1281.99.

SB 707 follows a long line of dubious California rules and statutes that the U.S. Supreme Court has held are preempted by the Federal Arbitration Act ("FAA") because they impermissibly single out arbitration agreements for disfavored treatment. The Supreme Court has repeatedly emphasized that the FAA reflects "a liberal federal policy favoring arbitration agreements" and requires "the enforcement of arbitration

agreements according to their terms." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 344, 346 (2011). Any state law that "stand[s] as an obstacle" to that national policy, *Blair v. Rent-A-Center, Inc.*, 928 F.3d 819, 828 (9th Cir. 2019), or "singles out arbitration agreements for disfavored treatment" is preempted. *Kindred Nursing Ctrs. Ltd. P'ship v. Clark*, 137 S. Ct. 1421, 1425 (2017). Here, SB 707 frustrates the FAA's objectives by discouraging the use of arbitration agreements under fear of unique and sweeping penalties, and by usurping the contracting parties' ability to enforce such agreements according to the mutually accepted terms. *See, e.g.*, *Chamber of Com. v. Becerra*, 438 F. Supp. 3d 1078, 1099 (E.D. Cal. 2020) (enjoining AB 51 in part because its sanctions will "likely [have a] deterrent effect on the use of [arbitration] agreements"). SB 707 also "singles out arbitration" for "unequal treatment," *id.* at 1096–97, by creating a new body of contract law that applies only to arbitration agreements, and that precludes only a drafting party from enforcing such agreements even where the non-drafting party's breach is the reason for the nonpayment of fees. Simply put, the FAA preempts SB 707 because the California Legislature, acting with express hostility to arbitration, has targeted arbitration agreements for disfavored and unequal treatment.

SB 707 is also unconstitutional under the United States and California Constitutions' Contracts Clauses, which prohibit statutes from substantially impairing parties' settled contractual expectations. *See Sveen v. Melin*, 138 S. Ct. 1815, 1821–22 (2018). Postmates' 2019 Fleet Agreement explicitly allocates the parties' arbitration fee responsibilities and incorporates the American Arbitration Association's ("AAA") rules governing the payment and nonpayment of arbitration fees. SB 707 upends the parties' expectations by requiring only Postmates to honor that agreement and imposing strict penalties on Postmates for any potential nonpayment of fees—even when justified—but does not impose comparable obligations or penalties on the non-drafting party. SB 707 targets only arbitration agreements, and is thus motivated by an *illegal* purpose that violates clearly established federal law.

In short, SB 707 is unenforceable because it is preempted by the FAA and unconstitutional under the federal and state constitutions. Thus, the Court should grant Postmates' motion for judgment on the pleadings on its Second, Third, and Fifth Causes of Action, and enter declaratory and injunctive relief barring Defendants from enforcing SB 707 against Postmates.

## II.  FACTUAL BACKGROUND AND PROCEDURAL HISTORY

### A. The FAA Establishes a Pro-Arbitration Policy that the California Legislature Frequently Disregards

When it enacted the FAA in 1925, Congress's "purpose was to reverse the longstanding judicial hostility to arbitration agreements that had existed at English common law and had been adopted by American courts, and to place arbitration agreements upon the same footing as other contracts." *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 24 (1991). Congress recognized that arbitration has much to offer, "not least the promise of quicker, more informal, and often cheaper resolutions for everyone involved." *Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1621 (2018). Congress thus enacted the FAA to facilitate "streamlined proceedings and expeditious results," *Preston v. Ferrer*, 552 U.S. 346, 357 (2008), and to "ensur[e] that private arbitration agreements are enforced according to their terms," *Concepcion*, 563 U.S. at 344. To advance those goals, the FAA mandates that arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2.

The FAA thus represents "a congressional declaration of a liberal federal policy favoring arbitration agreements, notwithstanding any state substantive or procedural policies to the contrary." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983). Through the FAA, "Congress intended to foreclose state legislative attempts to undercut the enforceability of arbitration agreements," *Southland Corp. v. Keating*, 465 U.S. 1, 16 (1984), and to replace those state rules evidencing hostility to

arbitration with a "national policy favoring arbitration," *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 443 (2006).

Despite Congress's expressed intent, California has a long tradition of enacting statutes and rules taking aim at arbitration agreements, and the Supreme Court has a concomitant tradition of declaring California's statutes and rules unconstitutional.  For example, in *Perry v. Thomas*, 482 U.S. 483, 491 (1987), the Court held that a California rule permitting wage collection claims to proceed in court notwithstanding an arbitration agreement was preempted by the FAA.  In *Preston*, the Court held that a California rule requiring the exhaustion of administrative remedies before arbitration was preempted because it "frustrated" the FAA's "policy favoring arbitration when the parties contract for that mode of dispute resolution."  552 U.S. at 349, 358.  And in *Concepcion*, the Court held that a California rule "conditioning the enforceability of certain arbitration agreements on the availability of classwide arbitration procedures" was preempted because it "interferes with arbitration."  563 U.S. at 336, 346; *see also Keating*, 465 U.S. at 10 (statute prohibiting arbitration of any claims arising under it is preempted).

**B. California Enacts SB 707 with the Intent to Force Companies to "Reconsider" Their Use of Arbitration Agreements**

**1.    SB 707 Creates Contract Law Applicable Only to Arbitration Agreements and Targets Companies that Use Them**

Governor Newsom signed SB 707 into law on October 13, 2019, and it became effective on January 1, 2020.  The law provides that a party who drafts an arbitration agreement and does not pay arbitration fees "within 30 days after the due date," as determined by an arbitration provider, is in "material breach of the arbitration agreement, is in default of the arbitration, and waives its right to compel arbitration"—regardless of the amount of the unpaid fee, the extent of the delay in paying, or the reason for nonpayment.  Cal. Civ. Proc. Code § 1281.97(a).  SB 707 applies *only* to arbitration agreements and penalizes *only* drafting parties, even if the non-drafting party fails to pay its arbitration fees, materially breaches the agreement, or lacks an arbitration agreement altogether.  If the drafting party fails to pay its fees, then the non-drafting party

unilaterally decides whether to proceed with its claim in court or compel arbitration. *Id.* § 1281.97(b). If the non-drafting party elects to proceed in court, the court "*shall* impose a monetary sanction against a drafting party" by ordering it "to pay the reasonable expenses, including attorney's fees and costs" incurred by the non-drafting party. *Id.* § 1281.99(a) (emphasis added). And the Court may order additional non-monetary sanctions against the drafting party, including:

- "An evidence sanction by an order prohibiting the drafting party from conducting discovery in the civil action,"

- "An order striking out the pleadings or parts of the pleadings of the drafting party,"

- "An order rendering a judgment by default against the drafting party," and/or

- "A contempt sanction by an order treating the drafting party as in contempt of court."

*Id.* § 1281.99(b); *see also id.* §§ 1281.97(d), 1281.98(c)(2).

If the non-drafting party elects to compel arbitration, "the drafting party *shall* pay reasonable attorney's fees and costs related to the arbitration," *id.* § 1281.97(b)(2) (emphasis added), and "the arbitrator *shall* impose appropriate sanctions on the drafting party, including monetary sanctions, issue sanctions, evidence sanctions, or terminating sanctions," *id.* § 1281.98(d) (emphasis added).

SB 707's new definition of material breach and new remedies are not reciprocal: If the *non-drafting* party fails to pay fees or otherwise breaches the agreement, SB 707 offers no remedy to the drafting party.

### 2. The California Legislature Confirms that SB 707 Targets the Use of Arbitration Agreements

On its face, SB 707 discriminates against arbitration agreements in California. And the legislative history confirms this—the California Legislature expressly stated its intent to target arbitration and to discourage companies' use of arbitration agreements through SB 707. The Assembly Committee on the Judiciary acknowledged that SB 707 authorizes "unforgiving" sanctions even against parties that do not pay arbitration fees

"through no fault of their own," yet concluded that sanctions are "justified" as a means to force "***drafting parties* [*to*] *reconsider their liberal use of binding arbitration provisions in contracts*.***"** Evangelis Decl. Ex. 1 at 16 (emphasis added); SAC ¶¶ 18, 67. The Judiciary Committee further decried arbitration as "a controversial form of alternative dispute resolution" that it believed gave companies "significant advantages." Evangelis Decl. Ex. 1 at 16; SAC ¶¶ 18, 67.

The bill's author and sponsor, Senator Bob Wieckowski, noted that SB 707 would "reform . . . [a] rigid arbitration process" of arbitration that "overwhelmingly favors employers over employees" and permits companies "to game the system." Evangelis Decl. Exs. 3 at 24, 4 at 27, 5 at 29; SAC ¶¶ 68–69. Senator Wieckowski explained that "[i]t's bad enough that companies get away with forcing arbitration on consumers and workers," and that SB 707 "will ensure that these cases don't become orphans in a system being gamed by big corporations." Evangelis Decl. Ex. 5 at 29; SAC ¶ 69.

## C. Postmates Contracts with Independent Couriers Who May Agree to Resolve Disputes with Postmates in Individual Arbitration

Postmates operates an online marketplace and mobile platform through which consumers connect with local merchants and, if consumers request delivery, couriers to facilitate the purchase, fulfillment, and, when applicable, delivery of products from merchants to consumers. SAC ¶ 31. Individuals who wish to access Postmates' platform to begin receiving delivery opportunities must accept Postmates' Fleet Agreement, which is presented to them during an online registration process. *See* Evangelis Decl. Ex. 6; SAC ¶¶ 33–39 (incorporating by reference Postmates' May 2019 Fleet Agreement). The Fleet Agreement contains a Mutual Arbitration Provision, and states that the "Mutual Arbitration Provision is governed exclusively by the Federal Arbitration Act (9 U.S.C. §§ 1-16)." SAC ¶ 36; Evangelis Decl. Ex. 6 at 39 § 10A(i).

"Arbitration is not a mandatory condition of [couriers'] contractual relationship with Postmates, and therefore [couriers] may opt out of [the] Mutual Arbitration Provision" by submitting an opt-out notice. SAC ¶ 34; Evangelis Decl. Ex. 6 at 41

§ 10B(ix).  Couriers who do not opt out "agree to resolve any disputes" with Postmates "exclusively through final and binding arbitration."  SAC ¶ 35; Evangelis Decl. Ex. 6 at 39 § 10A.

For couriers who choose not to opt out of arbitration, the Mutual Arbitration Provision sets forth the terms governing any arbitration between the courier and Postmates.  For example, the Mutual Arbitration Provision includes an express Class Action Waiver that requires that "any and all disputes or claims between the Parties will be resolved in individual arbitration."  SAC ¶ 37; Evangelis Decl. Ex. 6 at 40 § 10B(ii). It also provides that Postmates and couriers "shall equally share filing fees and other similar and usual administrative costs, as are common to both court and administrative proceedings."  SAC ¶ 42; Evangelis Decl. Ex. 6 at 40–41 § 10B(vi).  And it incorporates "the AAA Rules"—including provisions regarding the payment of arbitration fees.  SAC ¶ 42; *see also* Evangelis Decl. Ex. 6 at 40 §10B(vi); *Adams v. Postmates, Inc.*, 414 F. Supp. 3d 1246, 1255 (N.D. Cal. 2019) (noting that the Mutual Arbitration Provision incorporates AAA's Rules "regarding the payment of arbitration fees . . . , as well [as] the available remedies for non-payment").[1]  Moreover, the Fleet Agreement specifically identifies nine ways in which the parties may "material[ly] breach" the agreement, such as a courier's failure to maintain insurance coverage or "abuse or manipulation" of Postmates' promotional programs.  Evangelis Decl. Ex. 6 at 43–44 § 11B.

### D. Defendants File Arbitration Demands Against Postmates

On February 15, 2020, Defendants filed 10,356 arbitration demands against Postmates.  SAC ¶ 74.  AAA notified Postmates of the new arbitration filing on February 24, 2020.  *Id.* ¶ 82.  AAA collectively assessed $4,689,600 in initial fees against Postmates, stating that the demands are subject to SB 707 and that "payment must be received by April 15, 2020 or the AAA may close the parties' cases."  *Id.* ¶¶ 84–85. AAA asserted that it "will not grant any extensions to this payment deadline."  *Id.* ¶ 88.

---

[1]   On September 29, 2020, the Ninth Circuit issued an unpublished decision affirming the district court's order in *Adams.  See Adams v. Postmates, Inc.*, --- F. App'x ---, 2020 WL 5793745 (9th Cir. Sept. 29, 2020).

Postmates objected to the assessment of filing fees for hundreds of Defendants where Postmates' records indicated that they have no right to arbitrate at all because they either never signed the Fleet Agreement or signed the Fleet Agreement but opted out of arbitration. *Id.* ¶ 7. Postmates also objected to the assessment of fees for hundreds of additional Defendants who had no claims because they had never completed a delivery through the Postmates platform or had released all of their claims in a prior settlement. *Id.* And Postmates objected to the manner in which Defendants filed their arbitration demands, which Postmates maintains violates the individual arbitration requirement in the Mutual Arbitration Provision's Class Action Waiver. *Id.* For these reasons, including that Defendants materially breached the agreement's individual arbitration requirement, Postmates elected not to pay the fees assessed by AAA and to instead seek declaratory and injunctive relief in court through this action. *See id.* ¶ 94.

### E. Postmates Files This Lawsuit and 4,933 Defendants Cross-Petition for an Order Enforcing SB 707 Against Postmates

Postmates filed this lawsuit on March 25, 2020, seeking an order declaring that it cannot be compelled to arbitrate with Defendants on a non-individual basis; declaring that the FAA preempts SB 707; declaring that SB 707 is unconstitutional; and enjoining Defendants from seeking to arbitrate non-individually and from enforcing SB 707 against Postmates. *See* Dkt. 1; SAC. Postmates filed a Second Amended Complaint asserting the same causes of action on July 1 (Dkt. 61), and Defendants answered on July 15 (Dkt. 66).

On May 22, 4,933 Defendants filed a cross-petition and motion to compel arbitration seeking, in part, "an Order, under California Senate Bill 707 . . . requiring Postmates to pay Petitioners' costs and reasonable attorneys' fees in arbitration." Dkt. 43 ¶ 33; *see* Dkt. 44.[2] In its opposition, Postmates argued that Cross-Petitioners

---

[2] Defendants also joined 357 individuals who filed arbitration demands against Postmates in 2019 to their cross-petition to compel arbitration. SAC ¶ 93. The cross-petition did not seek a remedy under SB 707 as to those individuals, presumably because

impermissibly sought to arbitrate with Postmates on a non-individual basis, and that the 4,933 cross-petitioning Defendants cannot enforce SB 707 because it is preempted by the FAA and unconstitutional under the Contracts Clauses of the United States and California Constitutions. *See* Dkt. 56.

On July 22, this Court held a hearing on Defendants' cross-petition and elected to reserve ruling pending the State's potential intervention in support of SB 707, explaining that "[i]f the State intervenes, I think obviously they are going to support [Defendants'] arguments, maybe make them stronger." July 22, 2020 Hrg. Tr. at 6:2-4.

The State has elected not to defend SB 707. Dkt. 75 at 2. The Court then adopted the parties' proposed briefing schedule for the instant motion for judgment on the pleadings on Postmates' Second, Third, and Fifth Causes of Action. Dkt. 76 at 1.

### III.  LEGAL STANDARD

A party is entitled to judgment on the pleadings under Federal Rule of Civil Procedure 12(c) "when, taking all the allegations in the pleadings as true, the moving party is entitled to judgment as a matter of law." *Nelson v. City of Irvine,* 143 F.3d 1196, 1200 (9th Cir. 1998). The interpretation of a statute constitutes a pure question of law properly resolved in a motion for judgment on the pleadings. *United States v. 50.50 Acres of Land*, 931 F.2d 1349, 1352 (9th Cir. 1991); *see Johnson v. Hologic, Inc.*, 2014 WL 2581421 (E.D. Cal. June 9, 2014). A party may move for "partial" judgment on the pleadings, disposing of some, but not all, of the claims at issue in a suit. *See Curry v. Baca*, 497 F. Supp. 2d 1128, 1131 (C.D. Cal. 2007). A court evaluating a motion for judgment on the pleadings may take into account the parties' pleadings, the record in the case, and any matter subject to judicial notice or incorporated by reference into the

---

SB 707 did not go into effect until January 2020 and is not retroactive. *See* Dkt. 43 ¶ 33. Defendants' counsel explained that not all 10,356 Defendants in this action joined the cross-petition to compel arbitration because it was their personal election not to do so at this time. *See* July 22, 2020 Hrg. Tr. at 11:19–12:8 ("And the clients who were ready for that fight did it [*i.e.*, joined the cross-petition]. You know, we did what our clients wanted.").

parties' pleadings. *Heliotrope Gen., Inc. v. Ford Motor Co.*, 189 F.3d 971, 981 n.18 (9th Cir. 1999); *Summit Media LLC v. City of Los Angeles*, 530 F. Supp. 2d 1084, 1096 (C.D. Cal. 2008).

If a plaintiff moving for judgment on the pleadings establishes its entitlement to relief as a matter of law, the court may grant declaratory relief and issue a permanent injunction. *See, e.g.*, *Partnoy v. Shelley*, 277 F. Supp. 2d 1064, 1079 (S.D. Cal. 2003) (granting plaintiff's motion for judgment on pleadings, declaring Elections Code provision unconstitutional, and enjoining its operation). Declaratory relief is appropriate when "a substantial controversy" between the parties exists "of sufficient immediacy and reality" to justify a declaration of the parties' rights. *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007). Further, a plaintiff is entitled to a permanent injunction if it prevails on the merits and establishes an inadequate remedy at law. *See G.C. & K.B. Invs., Inc. v. Wilson*, 326 F.3d 1096, 1107 (9th Cir. 2003).

## IV.  ARGUMENT

SB 707 is unenforceable as a matter of law for at least two reasons. *First*, SB 707 is preempted by the FAA because it singles out arbitration agreements for disfavored treatment and stands as an obstacle to the accomplishment of the FAA's purposes. *Second*, SB 707 is unconstitutional under the federal and state Contracts Clauses because it substantially impairs the rights of parties to the Fleet Agreement and is not reasonably tailored to a legitimate purpose. Because SB 707 is preempted and unconstitutional, Postmates is entitled to declaratory and injunctive relief. Several Defendants have already sought to enforce SB 707 against Postmates. Absent declaratory and injunctive relief, Postmates would suffer irreparable harm by being subject to harsh penalties arising from the application of an unconstitutional and unenforceable statute. The Court should grant Postmates' motion for judgment on the pleadings.

### A.  SB 707 Is Preempted by the FAA

Section 2 of the FAA provides that arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the

revocation of any contract."  9 U.S.C. § 2.  The FAA reflects a "liberal federal policy favoring arbitration, . . . and the fundamental principle that arbitration is a matter of contract."  *Concepcion*, 563 U.S. at 339.  For this reason, courts must "place arbitration agreements on equal footing with all other contracts," *Kindred*, 137 S. Ct. at 1424, and "rigorously . . . enforce arbitration agreements according to their terms."  *Epic Sys.*, 138 S. Ct. at 1621.

The FAA's displacement of state laws that conflict with these principles is "now well-established."  *Preston*, 552 U.S. at 353.  "A state-law rule can be preempted by the FAA in two ways."  *Blair*, 928 F.3d at 825.  *First*, Section 2 "establishes a sort of 'equal-treatment' rule for arbitration contracts," *Epic Sys.*, 138 S. Ct. at 1622, and thus the FAA preempts state laws that "single[] out arbitration agreements for disfavored treatment" and "flout[]" the FAA's "command to place those agreements on an equal footing with all other contracts." *Kindred*, 137 S. Ct. at 1425, 1429.  *Second*, the FAA preempts state laws that "stand as an obstacle to the accomplishment of the FAA's objectives," and "interferes with [the] fundamental attributes of arbitration."  *Concepcion*, 563 U.S. at 339, 344.  Here, SB 707 is preempted under both tests.

**1.  SB 707 Singles Out Arbitration Agreements for Disfavored Treatment**

SB 707 is "preempted by the FAA because it singles out arbitration" agreements for "unequal treatment," *Chamber of Com.*, 438 F. Supp. 3d at 1097, 1099, by creating a special set of rules governing arbitration agreements that are "applicable only to [such] provisions," *Doctor's Assocs., Inc. v. Casaratto*, 517 U.S. 681, 687 (1996).  "[O]n its face," *Kindred*, 137 S. Ct. at 1426, SB 707 applies *only* to arbitration agreements, and creates its own body of contract law unique to arbitration agreements—impermissibly holding just *one* party to those agreements to a higher standard than is applied in contexts other than arbitration.

SB 707's lopsided scheme punishes only drafters of arbitration agreements.  It provides that *only* the "drafting party" is "in material breach of the arbitration agreement, is in default of the arbitration, and waives its right to compel arbitration" if it fails to pay

certain arbitration fees "within 30 days after the due date"—regardless of the amount of the unpaid fee, the extent of the delay in paying, or even the reason for the nonpayment. Cal. Civ. Proc. Code § 1281.97(a).  SB 707 then casts aside and overrides the parties' agreement—including any provisions defining a "material breach" and concerning the nonpayment of arbitration fees—and allows the non-drafting party to elect its preferred form of dispute resolution at the drafting party's expense.  Specifically, the non-drafting party may elect to compel arbitration or proceed in court.  And in either scenario, the drafting party is subject to mandatory monetary sanctions, including an obligation to pay the other party's attorneys' fees and costs, and potentially additional non-monetary sanctions that far exceed those available for an ordinary breach of contract, including:

- "An evidence sanction by an order prohibiting the drafting party from conducting discovery in the civil action,"

- "An order striking out the pleadings or parts of the pleadings of the drafting party,"

- "An order rendering a judgment by default against the drafting party," and/or

- "A contempt sanction by an order treating the drafting party as in contempt of court."

*Id.* § 1281.99(b); *see also id.* §§ 1281.97(d), 1281.98(c)(2).  By contrast, if the *non-drafting* party breaches a fee payment (or any other) obligation, SB 707 is completely silent; the drafting party must *still* pay the fees or else face sanctions.  SB 707 thus engrafts onto arbitration agreements an onerous and novel definition of material breach, and then applies it exclusively to drafting parties.  The goal is clear:  to discourage parties from entering into arbitration agreements.

SB 707 "fails to put arbitration agreements on an equal plane with other contracts" in at least five ways. *Kindred*, 137 S. Ct. at 1426–27. *First*, SB 707 conditions a drafting party's ability to enforce its agreement on its continued payment of arbitration fees— even if the non-drafting party first breached the agreement by seeking to arbitrate in a contractually forbidden manner, refusing to pay its own fees, or otherwise.  In other words, even if the non-drafting party materially breaches the agreement, SB 707 requires

a drafting party to continue performing as a condition to enforcing the agreement.  Under ordinary contract law, a drafting party would be "discharged from its duty to perform under the contract" if the other party materially breaches the contract, *Brown v. Grimes*, 192 Cal. App. 4th 265, 277 (2011)—meaning that it would ordinarily not have to continue paying fees to enforce the agreement against the breaching party.  SB 707 thus subjects arbitration agreements "to uncommon barriers" by requiring the drafting party of an arbitration agreement—and no other type of agreement—to continue performing just to enforce its agreement, or risk having the agreement invalidated.  *Kindred*, 137 S. Ct. at 1427.

*Second*, SB 707 permits a breaching non-drafting party to enforce the agreement if the drafting party later refuses to pay arbitration fees as a result of the non-drafting party's breach.  Cal. Civ. Proc. Code § 1281.98(b)(2)–(4).  Permitting breaching non-drafting parties to arbitration agreements—and no other type of agreement—to enforce the agreement is plainly contrary to the very "bedrock principle of California contract law" that SB 707 purports to implement:  that "[h]e who seeks to enforce a contract must show that he has complied with the conditions and agreements of the contract on his part to be performed."  *Brown v. Dillard's, Inc.*, 430 F.3d 1004, 1010 (9th Cir. 2005).

*Third*, "[n]ormally the question of whether a breach of an obligation is a material breach . . . is a question of fact."  *Grimes*, 192 Cal. App. 4th at 277; *see also Whitney Inv. Co. v. Westview Dev. Co.*, 273 Cal. App. 2d 594, 601 (1969) (similar).  But SB 707 changes the rules *only* for arbitration agreements, and proclaims that a material breach occurs *every* time a drafting party declines to pay arbitration fees within 30 days of the due date—no matter the factual circumstances or the reasons for nonpayment.  SB 707's automatic material breach rule is "tailor-made to arbitration agreements," and thus the statute cannot "survive the FAA's edict against singling out those contracts for disfavored treatment."  *Kindred*, 137 S. Ct. at 1427.

*Fourth*, SB 707 fails to recognize that "'efficient' breaches" are "acceptable, even desirable, in our economic system."  *Rich & Whillock, Inc. v. Ashton Dev., Inc.*, 157 Cal.

App. 3d 1154, 1159 (1984).  A rational party may weigh its options and elect to breach a contract, reasoning that intentionally breaching would be more beneficial to the breaching party than performing under the contract.  *See Huynh v. Vu*, 111 Cal. App. 4th 1183, 1198–99 (2003).  But SB 707 deprives drafting parties of arbitration agreements the option to efficiently breach.  For example, a drafting party may rationally elect not to pay arbitration fees and defend a claim, deciding instead that it would cost less to accept default judgment than to pay fees and defend.  SB 707 takes that choice away from drafting parties solely because the agreements at issue "have the defining features of arbitration agreements."  *Kindred*, 137 S. Ct. at 1426.

*Fifth*, SB 707 treats arbitration agreements differently than other contracts by permitting them to be enforced by non-parties.  Cal. Civ. Proc. Code § 1281.97(a).  For example, if an individual files an arbitration demand seeking to arbitrate against Postmates on the basis of the Mutual Arbitration Provision that Postmates drafted, but Postmates refuses to pay arbitration filing fees based on a good-faith belief that it has no agreement to arbitrate with the individual, SB 707 still appears to allow the individual to enforce the non-existent agreement and obtain penalties based on Postmates' nonpayment of fees.  Similarly, if an individual opts out of an arbitration agreement— as couriers entering into the Fleet Agreement are permitted to do—he or she may still seek to enforce the arbitration agreement under SB 707.  This concern is not merely academic.  Here, Postmates' records indicate that hundreds of Defendants have no right to arbitrate because they either never accepted the Fleet Agreement or accepted the agreement but opted out of arbitration.  Yet many of those very Defendants have sought to enforce SB 707 against Postmates in this lawsuit.  *See* Dkt. 56 at 8.

SB 707 rewrites arbitration agreements, actively discourages their use, and even creates arbitration agreements out of thin air by bestowing rights upon non-parties to either arbitrate anyway or collect steep penalties.  This is exactly what the FAA forbids.

## 2.    SB 707 Interferes with the Fundamental Attributes of Arbitration

SB 707 is also preempted because it "disfavors arbitration," *Concepcion*, 563 U.S. at 341, and "stand[s] as an obstacle to the accomplishment of the FAA's objectives," *Blair*, 928 F.3d at 828. "'The FAA was designed to promote arbitration,' as it reflects a 'national policy favoring arbitration.'" *Chamber of Com.*, 438 F. Supp. 3d at 1099 (quoting *Concepcion*, 563 U.S. at 345–46). "Any law, therefore, that 'stands as an obstacle to the accomplishment . . . of the full purposes and objectives of Congress . . . is pre-empted by the FAA,'" *id.*, as well as "any state rule discriminating on its face against arbitration" or that "covertly accomplishes the same objective by disfavoring contracts that . . . have the defining features of arbitration agreements." *Kindred*, 137 S. Ct. at 1426. SB 707 interferes with the FAA's objectives in at least two ways.

*First*, SB 707 "stands as an obstacle" to "the FAA's objective[]" of promoting arbitration by showing outright hostility toward arbitration and seeking to deter the use of arbitration agreements altogether. "The FAA does not allow a state legislature to circumvent Congressional intent by enacting special rules to discourage or prohibit the formation of agreements to arbitrate." *Saturn Distrib. Corp. v. Williams*, 905 F.2d 719, 723 (4th Cir. 1990). In the preemption context, courts regularly recognize that they may "look[] to the logical effect that a particular scheme has" when determining whether it is preempted by federal law. *Schwann v. FedEx Ground Package Sys., Inc.*, 813 F.3d 429, 437 (1st Cir. 2016); *see Costello v. BeavEx, Inc.*, 810 F.3d 1045, 1055 (7th Cir. 2016); *Med. Mut. of Ohio v. deSoto*, 245 F.3d 561, 574 (6th Cir. 2001).

For example, Judge Mueller of the Eastern District of California held earlier this year that Assembly Bill 51 ("AB 51"), SB 707's sister bill that passed in the same legislative session, is preempted because it undermines the FAA's "bedrock principle" of "promot[ing] arbitration" by attaching civil penalties to the use of arbitration agreements by employers. *Chamber of Com.*, 438 F. Supp. 3d at 1099. The court reasoned that the new law "will likely have a deterrent effect on employers' use of arbitration agreements given the civil and criminal sanctions associated with violating

the law," and that it therefore undermined the FAA's pro-arbitration policy. *Id.* at 1099–1100. In support, Judge Mueller cited the statute's legislative history, which "acknowledges" that "the primary target of the bill is agreements to arbitrate." *Id.* at 1097 (citing Senate Floor Analysis, Third Reading at 3–4).

Like AB 51, SB 707 undermines the FAA's objectives by targeting and deterring the drafting of arbitration agreements through the use of draconian penalties that attach only in the arbitration context. *See, e.g.*, *Colon De Sanchez v. Morgan Stanley Dean Witter*, 376 F. Supp. 2d 132, 136 n.3 (D.P.R. 2005) ("the FAA preempts any state law that discourages arbitration"). Beyond stating that a drafting party (and *only* a drafting party) is automatically in material breach of its arbitration agreement if it does not pay arbitration fees for any reason, SB 707 mandates "monetary sanction[s]" and also permits significant non-monetary sanctions, including evidentiary, case-terminating, and even contempt sanctions. *See* Cal. Civ. Proc. Code § 1281.99.

In other words, under SB 707, failure to timely pay arbitration fees for *any* reason not only costs a drafting party the right to an arbitral forum—it may also cost the drafting party *substantive rights* related to the parties' underlying dispute, such as the right to conduct discovery, the right to present a pleading, or the right to advance or defend against claims *at all*. And on top of that, SB 707 renders the breach of a *private* arbitration contract grounds for being held in contempt of court—a punishment traditionally reserved only for violation of a *court's* orders or interference with a *court's* proceedings. *See Young v. U.S. ex rel. Vuitton et Fils S.A.*, 481 U.S. 787, 820–21 (1987) (Scalia, J., concurring) (describing contempt as a "power of self-defense," limited to "those who interfere with the orderly conduct of [court] business or disobey orders necessary to the conduct of that business"). These draconian penalties apply even if the failure to pay was inadvertent or excused by the non-drafting party's breach, and far exceed those available for an ordinary breach of contract under state law.

Moreover, "[t]he United States Supreme Court has suggested that the legislative or judicial intent behind a state law is relevant to the question of FAA preemption,"

*Saheli v. White Mem'l Med. Ctr.*, 21 Cal.App.5th 308, 325 n.9 (2018), and here SB 707's legislative history confirms that the statute was designed to target and discourage arbitration. *See, e.g.*, *Chamber of Com.*, 438 F. Supp. 3d at 1097 (looking to AB 51's legislative history in concluding that statute is preempted by the FAA).

For example, the court in *Saheli* held that AB 2617, which imposed special requirements on arbitration agreements arising under California civil rights laws, was preempted by the FAA because the statute's legislative history "confirm[ed]" that the statute's "special requirements represent a hostility to arbitration and their purpose is primarily, if not exclusively, to discourage arbitration" of civil rights claims. *See Saheli*, 21 Cal. App. 5th at 324–25. In particular, the legislative history "detail[ed] numerous supposed shortcomings of arbitration" and decried "private arbitration [as] controversial." *Id.* at 325–26. The court found that the legislative history "clearly shows the motivating force behind the enactment of [AB 2617] was a belief that arbitration is inherently inferior to the courts," and displayed "precisely [the] sort of hostility to arbitration that the FAA prohibits." *Id.* at 326.

So too here. In enacting SB 707, the Assembly Committee on the Judiciary made clear that the statute's purpose was to discourage the use of arbitration agreements altogether, stating bluntly that "***drafting parties should reconsider their liberal use of binding arbitration provisions in contracts***." Evangelis Decl. Ex. 1 at 16 (emphasis added); SAC ¶¶ 18, 67. In fact, the California Legislature made no secret of its intent through SB 707 to discourage companies from using arbitration agreements, which it described as "a controversial form of alternative dispute resolution" that lacks even a "modicum of fairness" and supposedly gives companies "significant advantages." Evangelis Decl. Ex. 1 at 5, 11; *see Altaville Drug Store, Inc. v. Emp. Dev. Dep't*, 44 Cal. 3d 231, 238 (1988) ("[s]tatements of legislative committees pertaining to the purpose of legislation are presumed to express the legislative intent of statutes as enacted"). The bill's author and sponsor, Senator Bob Wieckowski, also declared in his press releases that SB 707 is necessary to "reform . . . [a] rigid arbitration process," because arbitration

"overwhelmingly favors employers over employees" and permits companies "to game the system." Evangelis Decl. Exs. 3 at 24, 4 at 27, 5 at 29; SAC ¶¶ 68–69.

There can be no question that the Legislature enacted SB 707 "to *limit* the use of the arbitral process." *Secs. Indus. Ass'n v. Connolly*, 703 F. Supp. 146, 151 (D. Mass. 1998), *aff'd*, 883 F.2d 1114 (1st Cir. 1989). Such direct targeting clearly leads to preemption—indeed, even "[*i*]*ndirect* regulation through a system of sanctions" is considered "every bit as 'potent [a] method of governing conduct and controlling policy' as direct proscriptions regarding arbitration." *Id.* at 156 (emphasis added) (quoting *Palmer v. Liggett Grp., Inc.*, 825 F.2d 620, 628 (1st Cir. 1987)).

*Second*, SB 707 prevents arbitration agreements from being enforced "according to their terms." *Epic Sys.*, 138 S. Ct. at 1619; *Concepcion*, 563 U.S. at 344. Parties to arbitration agreements often "specify the rules that would govern their arbitrations," including their intention to use a certain arbitration provider's rules or "to use individualized rather than class or collective action procedures." *Epic Sys.*, 138 S. Ct. at 1621. But SB 707 permits non-drafting parties to bypass both types of contractual provisions.

Here, for example, the parties agreed to use "the AAA Rules," including the AAA's rules "regarding the payment of arbitration fees . . . , as well [as] the available remedies for non-payment." *Adams*, 414 F. Supp. 3d at 1255; Evangelis Decl. Ex. 6 at 40 §10B(vi); *see* SAC ¶ 42. But if enforced, SB 707 would disregard the parties' agreement to resolve fee-related disputes in arbitration, and would therefore flout rather than enforce the parties' agreement "according to [its] terms." *Concepcion*, 563 U.S. at 339.

Further, SB 707 would permit a non-drafting party to skirt an agreement to arbitrate individually rather than as a class or collective. The Supreme Court has held that parties may not be compelled to class arbitration if their agreement is silent or ambiguous on the availability of class arbitration—rather, there must be "a contractual basis for concluding that the part[ies] *agreed* to do so." *Lamps Plus, Inc. v. Varela*, 139

S. Ct. 1407, 1412 (2019).  But a non-drafting party could invoke SB 707 to pursue forbidden class arbitration.  For instance, if an individual files a class arbitration demand, and the company declines to pay arbitration fees because the parties' agreement expressly waives class arbitration, the plain language of SB 707 would entitle the individual to obtain an order compelling class arbitration or, at least, to pursue their claims in court—even though the company never had any obligation to pay fees in the first place.

In short, the plain language and legislative history of SB 707 demonstrate the legislature's unmistakable hostility toward arbitration agreements, and guarantee that SB 707 will, in direct contravention of the FAA's pro-arbitration policy, "have a deterrent effect on [companies'] use of arbitration agreements." *Chamber of Com.*, 438 F. Supp. 3d at 1099–1100.  The Court should issue an order declaring that SB 707 is preempted by the FAA.

## B. SB 707 Unconstitutionally Impairs Postmates' Contracts

SB 707 also violates the Contracts Clauses of the United States and California Constitutions, both of which prohibit the legislature from enacting a "law impairing the obligation of contracts." U.S. Const. art I, § 10, cl. 1; Cal. Const. art I, § 9.  The Contracts Clauses "restrict[] the power of States to disrupt contractual arrangements." *Cal Fire Local 2881 v. Cal. Pub. Emps. Ret. Sys.*, 6 Cal. 5th 965, 977 (2019) (quoting *Sveen*, 138 S. Ct. at 1821).  The federal Contracts Clause "was perhaps the strongest single constitutional check on state legislation during our early years as a Nation." *Allied Structural Steel Co. v. Spannaus*, 438 U.S. 234, 241 (1978).

To determine whether a statute violates the Contracts Clause, courts "appl[y] a two-step test." *Sveen*, 138 S. Ct. at 1821.  The threshold issue is whether the statute has "operated as a substantial impairment of a contractual relationship." *Id.* at 1821–22.  If the statute imposes a substantial impairment, "the inquiry turns to . . . whether the state law is drawn in an 'appropriate' and 'reasonable' way to advance 'a significant and legitimate public purpose.'" *Id.* at 1822.  The same analysis applies to the California

Constitution's Contracts Clause.  *See Calfarm Ins. Co. v. Deukmejian*, 48 Cal. 3d 805, 830 (1989); *Hellinger v. Farmers Grp., Inc.*, 91 Cal. App. 4th 1049, 1062 (2001).  Both elements are satisfied here.

**Substantial Impairment.**  The substantial impairment inquiry has three components: "whether there is a contractual relationship, whether a change in law impairs that contractual relationship, and whether the impairment is substantial."  *Gen. Motors Corp. v. Romein*, 503 U.S. 181, 186 (1992).  The first component is satisfied if there is an agreement regarding the specific terms at issue.  *RUI One Corp. v. City of Berkeley*, 371 F.3d 1137, 1147 (9th Cir. 2004).  Courts evaluating whether the impairment is substantial consider "the extent to which the law undermines the contractual bargain, interferes with a party's reasonable expectations, and prevents the party from safeguarding or reinstating his rights."  *Sveen*, 138 S. Ct. at 1822.

Here, SB 707 substantially impairs Postmates' arbitration agreement and undermines the parties' reasonable expectations—and, specifically, the requirement that *both* parties abide by their contractual obligations and pay their share of filing fees.  The Mutual Arbitration Provision provides that, as a condition of commencing arbitration, "Postmates *and* [courier] shall equally share filing fees and other similar and usual administrative costs, as are common to both court and administrative proceedings." SAC ¶ 42; Evangelis Decl. Ex. 6 at 40–41 § 10B(vi)(2) (emphasis added).  But SB 707 substantially impairs the parties' agreements by requiring *only* Postmates to pay a share of the arbitration fees—even if the courier materially breaches the contract by filing an arbitration demand in contravention of the agreement's individual arbitration mandate, failing to pay its share of the fees, or otherwise.  SB 707 forgives a courier's non-compliance with the parties' agreement, yet requires Postmates to continue performing under the contract even if the courier has already materially breached.  *See* Cal. Civ. Proc. Code § 1281.97(a).  SB 707 therefore "defeats the expectations of the parties," *S. Cal. Gas Co. v. City of Santa Ana*, 336 F.3d 885, 890 (9th Cir. 2003), both of which entered into the agreement expecting that one party's material breach would excuse the

other's continued performance, *Dillard's*, 430 F.3d at 1010; *Grimes*, 192 Cal. App. 4th at 277; *see also* Evangelis Decl. Ex. 6 at 43 §§ 11A(iv), 11B.

**"Appropriate" and "Reasonable" Tailoring.**  Courts next inquire "whether the state law is drawn in an appropriate and reasonable way to advance a significant and legitimate public purpose." *Sveen*, 138 S. Ct at 1822.  Where, as here, the law imposes a substantial impairment, a "more searching . . . examination of the legislation" is warranted.  *Campanelli v. Allstate Life Ins. Co.*, 322 F.3d 1086, 1098 (9th Cir. 2003); *In re Workers' Comp. Refund*, 46 F.3d 813, 819 (8th Cir. 1995) ("heightened impairment triggers heightened scrutiny").  Even "significant and legitimate public purposes" cannot justify impairment of contracts without "moderation or reason" or if it is done "in a spirit of oppression." *Allied Structural*, 438 U.S. at 243.

Here, SB 707 does not advance any legitimate purpose.  As described above, *supra* at 15–19, SB 707 was drafted and passed in part to discourage companies' use of arbitration agreements.  In light of the FAA's expressly contrary *pro*-arbitration policy, though, targeting and disfavoring arbitration agreements is not a legitimate purpose; it is an *illegal* purpose that violates federal law.  *See Keating*, 465 U.S. at 13 (holding that the FAA is to be "unencumbered by state law constraints").

Moreover, the law is not reasonably tailored.  SB 707 was primarily designed to address arbitration agreements in which non-drafting parties "have been *forced* to submit to *mandatory* arbitration" as a condition of employment.  Evangelis Decl. Exs. 2 at 21 (emphases added), 7 at 52; SAC ¶ 20 n.1; *see* Evangelis Decl. Ex. 8 at 57.  But the law's text goes much further than this stated purpose and authorizes substantial penalties on *all* drafting parties of arbitration agreements—including companies like Postmates that do not "force" individuals to submit to "mandatory" arbitration (every courier may opt out of arbitration by submitting an opt-out request within 30 days of signing the Fleet Agreement, SAC ¶ 34).  That SB 707's text goes far beyond its stated purpose in order to reach *all* drafting parties of *all* arbitration agreements demonstrates that the law was enacted "in a spirit of oppression" and to discourage the drafting of arbitration

agreements—in violation of federal law.  *Allied Structural*, 438 U.S. at 243.

## C.  The Court Should Enter Declaratory Judgment in Postmates' Favor and Enjoin Defendants from Enforcing SB 707 Against Postmates

The Court should grant Postmates' motion for judgment on the pleadings and grant its request for declaratory and injunctive relief on all its claims concerning SB 707.

*First*, pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201, this Court should declare that Defendants may not enforce SB 707 against Postmates because it is preempted by the FAA and violates the United States and California Constitutions' Contracts Clauses.  Declaratory judgment is warranted because there is "a substantial controversy" between the parties "of sufficient immediacy and reality to warrant the issuance of a declaratory judgment."  *MedImmune*, 549 U.S. at 127.  "[D]eclaratory relief is appropriate (1) when the judgment will serve a useful purpose in clarifying and settling the legal relations in issue, and (2) when it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding."  *Eureka Fed. Sav. & Loan Ass'n. v. Am. Cas. Co.*, 873 F.2d 229, 231 (9th Cir. 1989) (internal citations and quotations omitted).

Here, Defendants have filed a cross-petition to compel arbitration seeking "an Order, under California Senate Bill 707 . . . requiring Postmates to pay Petitioners' costs and reasonable attorneys' fees in arbitration."  Dkt. 43 ¶ 33.  That petition was joined by 4,933 Defendants, and there is therefore a live controversy between Postmates and each Defendant regarding whether SB 707 may be wielded against Postmates.  Further, declaratory relief will also "serve a useful purpose" in elucidating the rights of Postmates and the remaining Defendants who did *not* join the 4,933 Defendant Cross-Petitioners seeking to presently enforce SB 707 against Postmates, to the extent that they have not waived their right to compel arbitration and intend to enforce SB 707 at a later time.[3]

---

[3]  Defendants have waived any argument that declaratory relief is improper or that the Court's discretion to issue such relief should not be exercised, having argued in response to the Court's Order to Show Cause that the Court should retain this action because a

*Eureka Fed. Sav. & Loan Ass'n.*, 873 F.2d at 231  As counsel for Defendants explained at the July 22 initial hearing on the cross-petition, the remaining Defendants who have not yet sought to enforce SB 707 against Postmates only withheld from joining the cross-petition because of their personal preference not to seek to compel arbitration at this time, rather than because of any procedural or ripeness barrier.  *See* July 22, 2020 Hrg. Tr. at 11:19-12:8 ("And the clients who were ready for that fight did it [*i.e.*, joined the cross-petition].  You know, we did what our clients wanted.")

Postmates has declined to pay arbitration fees that have been improperly assessed against it.  Courts routinely find declaratory relief warranted where a party has "taken the final step of refusing to make . . . payments" based on the belief that they are not properly due, thus subjecting itself to potential liability if it is wrong.  *MedImmune*, 549 U.S. at 128; *see also Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014) (justiciable controversy exists where threatened injury poses a "substantial risk").

Because a live controversy exists between Postmates and Defendants regarding SB 707's enforceability, and because SB 707 is preempted and unconstitutional as a matter of law, the Court should enter declaratory judgment in Postmates' favor.

*Second*, this court should enjoin Defendants from enforcing SB 707 against Postmates.  A permanent injunction is warranted where the party seeking the injunction succeeds on the merits and demonstrates that there is no adequate remedy at law.  *See Amoco Prod. Co. v. Vill. of Gambell*, 480 U.S. 531, 546 n.12 (1987); *Cont'l Airlines v. Intra Brokers, Inc.*, 24 F.3d 1099, 1104 (9th Cir. 1994).  Constitutional violations are *per se* irreparable harms for which no remedy exists.  *Nelson v. Nat'l Aeronautics & Space Admin.*, 530 F.3d 865, 882 (9th Cir. 2008) ("Unlike monetary injuries, constitutional violations cannot be adequately remedied through damages and therefore generally constitute irreparable harm."), *rev'd on other grounds*, 562 U.S. 134 (2011);

---

live controversy regarding SB 707 is imminent.  *See* Dkt. 39 at 3 ("Defendants' motion to compel arbitration will provide a mechanism for this Court to resolve the parties' disputes in full.  In light of that motion, this Court should retain this action.").

*Chamber of Com.*, 438 F. Supp. 3d at 1105 (holding that if businesses are subjected to California law preempted by FAA, irreparable injury for which there is no legal remedy would follow); *Partnoy*, 277 F. Supp. 2d at 1079 (enjoining Elections Code provision following motion for judgment on the pleadings).

Here, SB 707 is preempted and unconstitutional as a matter of law, and thus an injunction prohibiting Defendants from enforcing SB 707 against Postmates is necessary to prevent Postmates from suffering the irremediable injury of being subjected to unconstitutional penalties. *See Chamber of Com.*, 438 F. Supp. 3d at 1100.

## V.  CONCLUSION

The Court should enter an order declaring that SB 707 is preempted by the FAA and unconstitutional, and enjoining the enforcement of SB 707 against Postmates.

Dated:  October 5, 2020

<div style="margin-left: 40%;">

THEANE EVANGELIS
BRADLEY J. HAMBURGER
DHANANJAY S. MANTHRIPRAGADA
MICHELE L. MARYOTT
SHAUN A. MATHUR
GIBSON, DUNN & CRUTCHER LLP

By:  */s/ Theane Evangelis*
　　　　　Theane Evangelis

Attorneys for Plaintiff POSTMATES INC.

</div>

Gibson, Dunn &
Crutcher LLP