# EXHIBIT 1

Exhibit 1
Page 4

SB 707
Page 1

Date of Hearing: June 18, 2019

1) ASSEMBLY COMMITTEE ON JUDICIARY

Mark Stone, Chair

2) SB 707

(Wieckowski) – As Amended May 20, 2019

**SENATE VOTE**: 29-8

**SUBJECT**: ARBITRATION AGREEMENTS: BREACH BY DRAFTING PARTY: ENFORCEMENT

**KEY ISSUES**:

1) SHOULD THE DRAFTING PARTY OF AN EMPLOYMENT OR CONSUMER RELATED ARBITRATION AGREEMENT THAT FAILS TO PAY FOR A SUBSEQUENT ARBITRATION PROCEEDING BE SUBJECT TO SANCTIONS?

2) SHOULD THE FAILURE OF A DRAFTING PARTY TO PAY THE REQUIRED COSTS AND FEES ASSOCIATED WITH THE ARBITRATION PROCEEDING PERMIT AN EMPLOYEE OR CONSUMER OTHERWISE REQUIRED TO ARBITRATE THEIR CLAIMS TO SEEK REDRESS IN COURT?

3) SHOULD ARBITRATION COMPANIES BE REQUIRED TO PUBLISH SPECIFIED DEMOGRAPHIC INFORMATION REGARDING ARBITRATORS?

**SYNOPSIS**

*Arbitration is a controversial form of alternative dispute resolution held outside of courts where a third-party, typically a retired judge, makes a binding determination in favor of one party to the proceeding. Proponents of arbitration highlight that arbitration can be a more efficient and somewhat lower cost alternative to litigation. Opponents of arbitration contend that decisions can frequently favor the more powerful drafting party, and that rules of evidence or civil procedure can be limited or waived. Despite the ongoing debate over the merits of arbitration, the United States Supreme Court has liberally interpreted the Federal Arbitration Act to preempt state laws regarding arbitration, resulting in arbitration provisions becoming a dominant feature of nearly every employment and consumer contract, contracts that frequently are take-it-or-leave-it contracts of adhesion. Recognizing that arbitration is frequently foisted on consumers and employees by the party drafting these contracts of adhesion, courts have generally required the drafting party to pay for the cost and fees associated with the arbitration as a matter of basic fairness. While case law requires such payment in California, the existing law*

Exhibit 1
Page 5

*remains unclear about what remedies an employee or consumer has if a drafting party failed to pay for the arbitration in a timely manner.*

*Seeking to provide employees and consumers with a clear set of alternatives in the event a drafting party fails to pay for arbitration, this bill offers several remedies. First, this bill provides that if a drafting party fails to pay any costs or fees associated with the arbitration within 30 days of the passing of the due date, the consumer or employee is free to remove the matter to court, or continue with arbitration and seek the recovery of the costs and fees. Additionally, to deter drafting parties from reneging on their obligation to pay the arbitration-related costs and fees, this bill imposes mandatory monetary sanctions on drafting parties and permits the adjudicatory body to impose additional evidentiary or related sanctions on the drafting party. Finally, recognizing that there is currently little information on the demographics of arbitrators, this bill would require arbitration companies to publish self-reporting demographic data voluntarily collected from the arbitrators they employ.*

*This bill is sponsored by the California Employment Lawyers Association and the Consumer Attorneys of California and is supported by several other labor or consumer protection organizations. The support coalition, representing the parties most likely to find themselves trapped in an unfunded arbitration proceeding, argue that this bill provides employees and consumers with clear remedies in the event that a drafting parties fails to live up to its clear obligations under state law. This measure is opposed by the California Chamber of Commerce and a coalition of business organizations who believe that the current provisions of the bill providing that any failure to pay for arbitration, even a small non-payment, subjects the drafting party to significant sanctions, go too far.*

**SUMMARY:** Provides that the drafting party of a commercial or employment related arbitration agreement is in material breach of the arbitration agreement if the drafting party fails to pay, as required by existing law, specified costs and fees associated with the arbitration proceeding. Specifically, **this bill**:

1) Adds the following definitions to the California Arbitration Act:

   a) "Consumer" means an individual who seeks, uses, or acquires, by purchase or lease, any goods or services for personal, family, or household purposes;

   b) "Drafting party" means the company or business that included a predispute arbitration provision in a contract with a consumer or employee. The term includes any third party relying upon, or otherwise subject to the arbitration provision, other than the employee or consumer; and

   c) "Employee" means any current employee, former employee, or applicant for employment. The term includes any person who is, was,

Exhibit 1
Page 6

or who claims to have been misclassified as an independent contractor or otherwise improperly placed into a category other than employee or applicant for employment.

2) Provides that in an employment or consumer arbitration that requires, either expressly or through application of state or federal law or the rules of the arbitration administrator, the drafting party to pay certain fees and costs before the arbitration can proceed, if the fees or costs to initiate an arbitration proceeding are not paid within 30 days after the due date, the drafting party is in material breach of the arbitration agreement, is in default of the arbitration, and waives its right to compel arbitration pursuant to existing law.

3) Provides that in the event of a material breach of an arbitration agreement pursuant to 2), an employee or consumer may do the following:

   a) Withdraw the claim from arbitration and proceed in a court of appropriate jurisdiction; or

   b) Compel arbitration in which the drafting party shall pay reasonable attorney's fees and costs related to the arbitration.

4) Provides that if an employee or consumer withdraws a claim from arbitration pursuant to 3), the statute of limitations with regard to all claims brought or that relate back to any claim brought in arbitration shall be tolled as of the date of the first filing of a claim in any court, arbitration forum, or other dispute resolution forum.

5) Provides that if the employee or consumer proceeds with an action in a court of appropriate jurisdiction, pursuant to 3), the court shall impose sanctions on the drafting party in accordance with 10) and 11).

6) Provides that in an employment or consumer arbitration that requires, either expressly or through application of state or federal law or the rules of the arbitration provider, that the drafting party pay certain fees and costs during the pendency of an arbitration proceeding, if the fees or costs required to continue the arbitration proceeding are not paid within 30 days after the due date, the drafting party is in material breach of the arbitration agreement, is in default of the arbitration, and waives its right to compel the employee or consumer to proceed with that arbitration as a result of the material breach.

7) Provides that in the event of a material breach of an arbitration agreement pursuant to 6), an employee or consumer may unilaterally elect to do any of the following:

   a) Withdraw the claim from arbitration and proceed in a court of appropriate jurisdiction, and provides that the statute of limitations with regard to all claims brought or that relate back to any claim

Exhibit 1
Page 7

    brought in arbitration shall be tolled as of the date of the first filing of a claim in any court, arbitration forum, or other dispute resolution forum;

    b) Continue the arbitration proceeding, if the arbitration company agrees to continue administering the proceeding, notwithstanding the drafting party's failure to pay fees or costs and permit the neutral arbitrator or arbitration company to commence a collection action at the conclusion of the arbitration proceeding against the drafting party that is in default of the arbitration for payment of all fees associated with the employment or consumer arbitration proceeding, including the cost of administering any proceedings after the default.

    c) Petition the court for an order compelling the drafting party to pay all arbitration fees that the drafting party is obligated to pay under the arbitration agreement or the rules of the arbitration company; or

    d) Pay the drafting party's fees and proceed with the arbitration proceeding and permit, as part of the award, the employee or consumer to recover all arbitration fees paid on behalf of the drafting party without regard to any findings on the merits in the underlying arbitration.

8) Provides that if an employee or consumer withdraws a claim from arbitration pursuant to 7) both of the following shall apply:

    a) The employee or consumer may bring a motion, or a separate action, to recover all attorney's fees and all costs associated with the abandoned arbitration proceeding, and the eventual recovery of arbitration fees, interest, and related attorney's fees shall be without regard to any findings on the merits in the underlying action or arbitration; and

    b) The court shall impose sanctions on the drafting party in accordance with 10) and 11).

9) Provides that if the employee or consumer continues in arbitration pursuant to 7), the arbitrator may pose appropriate sanctions on the drafting party, including monetary sanctions, issue sanctions, evidence sanctions, or terminating sanctions.

10) Requires the court to impose a monetary sanction against a drafting party that materially breaches an arbitration agreement pursuant to 2) or 6) by ordering the drafting party to pay the reasonable expenses, including attorney's fees and costs, incurred by the employee or consumer as a result of the material breach.

11) Permits the court, in addition to the monetary sanctions imposed pursuant to 10) to impose any of the following sanctions against a drafting party that materially breaches an arbitration agreement

Exhibit 1
Page 8

pursuant 2) or 6), unless the court finds that the drafting party subject to the sanction acted with substantial justification or that other circumstances make the imposition of the sanction unjust:

a) An evidence sanction by an order prohibiting the drafting party from conducting discovery in the civil action;

b) A terminating sanction that strikes out the pleadings, or parts thereof, by the drafting party or rendering a judgment by default against the drafting party; or

c) A contempt sanction by an order treating the drafting party as in contempt of court.

12) Requires an arbitration company that administers, or is otherwise involved in a consumer arbitration, to also include in the required report the demographic data relative to ethnicity, race, disability, veteran status, gender, gender identity, and sexual orientation of all arbitrators as provided by the arbitrators.

13) Makes various findings and declarations providing that existing state and federal case law, generally, holds that the drafting party in an employment or consumer arbitration agreement is obligated to pay for the fees and costs associated with arbitration and that a failure to do so renders the arbitration agreement in breach. Provides that the intent of this bill is to affirm the existing case law into statute.

14) Adopts a severability clause.

**EXISTING LAW**:

1) Governs arbitrations in California, pursuant to the California Arbitration Act (CAA), including the enforcement of arbitration agreements, rules for neutral arbitrators, the conduct of arbitration proceedings, and the enforcement of arbitration awards. (Code of Civil Procedure Section 1280 *et seq*.)

2) Provides that on petition of a party to an arbitration agreement alleging the existence of a written agreement to arbitrate a controversy and that a party thereto refuses to arbitrate such controversy, the court shall order the petitioner and the respondent to arbitrate the controversy if it determines that an agreement to arbitrate the controversy exists, unless the court determines specified grounds exist. (Code of Civil Procedure Section 1281.2.)

3) Provides that if a court of competent jurisdiction has ordered arbitration of a controversy which is an issue involved in an action or proceeding before a court of this state, the court in which such action or proceeding is pending shall, upon a motion of a party, stay the action or proceeding

Exhibit 1
Page 9

until an arbitration is conducted. (Code of Civil Procedure Section 1281.4.)

4) States that if an arbitration agreement provides a method of appointing an arbitrator, that method shall be followed. Additionally states that if an arbitration agreement does not provide a method for appointing an arbitrator, the parties to the agreement who seek arbitration and against whom arbitration is sought may agree on a method of appointing an arbitrator and that method shall be followed. (Code of Civil Procedure Section 1281.6.)

5) Prohibits, generally, a private arbitration company from administering a consumer arbitration if the company has, within the previous year, had a financial interest in any party to the case, or representative thereof. (Code of Civil Procedure Section 1281.92.)

6) Requires an arbitration company that administers or is otherwise involved in a consumer arbitration to publish and make available to the public, as specified, a single cumulative report that contains certain information, including the name of the arbitrator, the arbitrator's fee for the case, the percentage of the fee the arbitrator collected, and whether a fee waiver was granted. (Code of Civil Procedure Section 1281.96.)

7) Provides that, among other behaviors, it is a misuse of the discovery process to utilize tactics that result in unwarranted annoyance, embarrassment, or oppression, or undue burden and expense. (Code of Civil Procedure Section 2023.010.)

8) Provides that the court may impose monetary sanctions on any person engaging in the misuse of the discovery process, or any attorney advising that conduct, or both pay the reasonable expenses, including attorney's fees, incurred by anyone as a result of that conduct. (Code of Civil Procedure Section 2023.030 (a).)

9) Provides that the court may impose an evidentiary sanction by an order prohibiting any party engaging in the misuse of the discovery process from introducing designated matters in evidence. (Code of Civil Procedure Section 2023.030 (c).)

10) Requires the Governor, the State Bar, and the Administrative Office of the Courts to collect and release each year, on an aggregate statewide basis, specified information regarding the demographic data relative to ethnicity, race, disability, veteran status, gender, gender identity, and sexual orientation of judicial applicants, judicial appointees, or judicial nominees, as provided by them, and the percentage of respondents who declined to respond . (Government Code Section 12011.5 (n).)

**FISCAL EFFECT**: As currently in print this bill is keyed non-fiscal.

Exhibit 1
Page 10

**COMMENTS** : Recognizing that many arbitration agreements are placed into contracts of adhesion, this bill seek to protect employees and consumers by ensuring that the party that drafts the arbitration agreement cannot delay adjudication of a dispute by refusing to participate in, or pay for, arbitration. Specifically, building on an existing body of case law, this bill would hold that if the fees or costs required to initiate or continue an arbitration proceeding are not paid by the drafting party within 30 days of the due date, that party is in default of the agreement and the employee or consumer may seek to pursue their claims in court and trigger sanctions on the drafting parties. In support of this bill, the author states:

> SB 707 ensures that individuals who have been forced to submit to mandatory arbitration to resolve an employment or consumer dispute would be provided with procedural options and remedies under this bill when a company stalls or obstructs the arbitration proceeding by refusing to pay the required fees.

*As arbitration provisions have become ubiquitous in employment and consumer contracts, the parties drafting these adhesion contracts have gained significant advantages.* Arbitration is a form of alternative dispute resolution held outside of courts where a third-party, rather than a judge, makes a binding decision regarding a potential award that is rarely appealable. Arbitration can pose significant difficulties for the party forced to adjudicate its claims outside of court. Existing law permits arbitration agreements to contain limits on evidence presented and the claims that can be considered. Arbitration can also save employers and providers of consumer goods and services significant time and costs when compared to court, thus there is little question why the more powerful signatory to a contract would demand arbitration.

Most arbitration agreements are contained within a broader contract, usually a contract that is adhesive or take-it-or-leave-it. The arbitration agreement will lay-out the procedures that will be followed during the arbitration hearing. For example, the terms of the arbitration agreement may stipulate that the award need not be written or justified, unlike in court, and that the entire process be kept in secret. Arbitrators do not need to be lawyers, nor do they need to be trained in the law. Arbitrators who issue favorable awards to a particular company can be repeatedly-hired by that same company to serve as the arbitration-neutral without ever notifying the public about that award-history. It's easy to predict the calls if you can hire the umpire.

Over the past twenty years, federal courts have significantly expanded the validity of arbitration provisions in contracts of adhesion and considerably infringed on state's ability to regulate such agreements. (*See, e.g.*, *AT&T Mobility LLC v. Concepcion* (2011)562 U.S. 333.) Recognizing that many arbitration agreements are contained within contracts of adhesion, courts have sought to add some modicum of fairness to the process by holding that in such contracts, especially when statutory rights are being arbitrated, the

Exhibit 1
Page 11

agreements cannot require the employee or consumer to "pay either unreasonable costs or any arbitrators' fees or expenses as a condition of access to the arbitration forum." (*Cole v. Burns International Security Services* (1997) 105 F.3d 1465, 1482.) In California, both state and federal courts have adopted the standard utilized by the United States Court of Appeals for the District of Columbia Circuit in the *Cole* decision. Accordingly, any time an employment or consumer contract requires arbitration, the drafting party should be paying the associated fees.

Given that employees and consumers frequently possess little if any choice in agreeing to arbitrate claims, the requirement that a drafting party pay for the cost of the arbitration is wholly reasonable. However, when the drafting party fails to properly pay for the arbitration, existing law does not provide the employee and customer with a clear means to redress their harms. Although courts have held that such failures to pay for arbitration may be grounds to invalidate an arbitration agreement, state law does not provide clear guidance for courts and litigants in the event a drafting party fails to properly pay to commence arbitration in a timely manner.

***While existing case law requires the drafting party to pay for arbitration, some companies fail to comply with these requirements.*** As remedies for employees and consumers have narrowed, the rate of arbitration filings has increased significantly. For example, after Uber won the right to prohibit its drivers from contesting wage claims as a class, the company was forced to arbitrate the claims of over 12,500 drivers. (*O'Connor v. Uber Techs.* (2018) 904 F.3d 1087.) Similarly, the burrito chain Chipotle was forced to arbitrate over 2,800 wage theft claims in recent years. While proponents of arbitration continue to argue that it is a cheaper, faster, more efficient way to resolve disputes in comparison to the overburdened court system, arbitration requirements can quickly burdensome for companies facing significant numbers of claims.

Though there is a significant degree of irony that many company's strident instance on inserting class action waivers into arbitration agreements is now burdening their corporate legal departments with thousands of individual claims in arbitration, the side effect of such actions are now being felt by employees and consumers as well as the companies. For example, of the 12,500 demands for arbitration filed by Uber drivers, the company has only paid its initial filing fee in 296 cases. (Frankel, Alison, *Forced into arbitration, 12,500 drivers claim Uber won't pay fees to launch cases*, Reuters (Dec. 6, 2018).) As a result, only 47 arbitrators have been appointed to handle the Uber disputes; of those, Uber has only paid the $1,500 retention fee in six cases. (*Ibid.*) Paradoxically, by refusing to pay the arbitration costs and fees as required by law, Uber and other similarly situated companies are managing to delay the adjudication of claims and postpone the payment of any potential judgments against the company in the name of a process that is supposed to be cheaper and easier for the parties. Because existing case law forces companies to pay for arbitration, but does not provide clear remedies for employees or consumers who are

Exhibit 1
Page 12

caught in limbo by unpaid arbitration fees, this lack of clarity means that a drafting party can avoid the consequences of their behavior by not paying for the dispute to be arbitrated.

*This bill.* Recognizing that the failure of a drafting party to pay arbitration fees in a timely manner can inflict significant harm on consumer and employees, this bill adds several provisions to existing law to enable employees and consumers to seek redress of their claims in a timely manner, and establishes disincentives to ensure that such behavior does not occur in the first place.

First, this bill provides that any drafting party that fails to pay the fees necessary to commence or continue arbitration, within 30 days after such fees being due to be tendered to the arbitrator, the drafting party is held to have materially breached the arbitration and is in default of the agreement.

Second, this bill provides consumers or employees several remedies in the event a drafting party breaches the arbitration agreement by failing to pay the arbitration costs and fees. The bill would permit, should the drafting party fail to pay the costs necessary to commence arbitration, the employee or consumer to remove the matter to court or move to compel the arbitration. In the event that the drafting party fails to pay the fees or costs necessary to continue an arbitration currently in progress, the bill enables the employee or consumer to move the matter to court, seek a court order compelling the payment of the fees, continue the arbitration and permit the arbitrator to seek collection of their fees, or pay the costs and fees and seek those fees from the drafting party at the conclusion of the arbitration regardless of the ultimate outcome.

Finally, to deter drafting parties from failing to pay arbitration costs and fees in a timely manner, this bill imposes mandatory monetary sanctions on any drafting party found to be in default of an arbitration agreement for failure to pay costs and fees, and permits the imposition of additional evidentiary, terminating, or contempt sanctions, as the court or arbitrator sees fit.

Furthermore, recognizing that the state has very little information regarding the demographics of those serving as arbitrators, this bill would require arbitration companies to report demographic data, on an aggregate basis, regarding the ethnicity, race, disability status, veteran status, gender, gender identity, and sexual orientation of all arbitrators. The bill would permit this information to be provided on a self-reporting basis by arbitrators and would require the arbitration company to disclose the percentage of arbitrators who declined to respond.

*Justice delayed is justice denied.* As noted above, employees and consumers forced to arbitrate claims against large companies are at a distinct disadvantage. Should the ambiguity in existing statutes permit companies that draft arbitration agreements to delay the adjudication of claims, these drafting parties can simply deny claimants any semblance of

Exhibit 1
Page 13

justice by simply refusing to pay for the arbitration they contracted for. Indeed, if such a system were permitted to continue, courts have suggested this would create a, "perverse incentive scheme" whereby "employers… would have an incentive to refuse to arbitrate claims brought by employees in the hope that the frustrated employees would simply abandon them." (*Brown v. Dillards, Inc.* (2005) 430 F.3df 1004, 1012.)

To ensure that a drafting party cannot unilaterally prevent a party from adjudicating their claims in the forum that the drafting party unilaterally foisted onto the claimant, this bill would provide employees and consumers remedies if a drafting party refuses to pay. Most importantly, this bill provides employees and consumers to get their claim adjudicated in the venue of their choice in a timely manner.

***The sanctions provided in this bill are intended to deter bad actors.*** In opposition to this measure, the California Chamber of Commerce, and a coalition of business organizations, object to the provisions of this bill providing that failure to pay arbitration costs and fees in a timely manner constitutes a material breach of a contract. A material breach is typically viewed as a breach of contract so serious as to permit the non-breaching party to excuse additional performance of the contract, in this case remain in arbitration. Not only would this bill excuse the performance of the contract in the case of a material breach, but it would also impose sanctions on the breaching party. The California Chamber of Commerce notes that these provisions may impose sanctions even if, "the drafting party paid a majority of the fees and costs, but yet a small, minor portion was not paid." The opposition appears to argue that a relative small non-payment of arbitration fees or costs should not constitute a material breach of the contract.

The opposition is not incorrect in stating that a failure to pay the required costs and fees in full would expose a company to significant monetary penalties and potentially serious evidentiary sanctions or a contempt holding. However, this risk should also be viewed in light of the harm that the drafting party's breach of contract could impose on employees or consumers who are in limbo, with no avenue to pursue their legal rights. Particularly in employment matters, the plaintiff's livelihood may be the subject of the adjudication. Although a large company may view its failure to pay a few hundred dollars for arbitration as a minor, immaterial, mistake, that mistake may delay the hearing of an employee's claims. While immaterial to the drafting party, the ensuing delay associated with this minor error could be significant to the employee, who may not be able to pay bills, rent or other expenses that could result in the loss of their residence, or damage to their credit rating, while the dispute remains unresolved. For example, when chastising Chipotle's request to delay the filing of arbitration claims on the grounds that the claims were overwhelming the company, the court stated that the company's attempt to delay and obfuscate the adjudication of claims was "unseemly." (Order Denying Defendant Chipotle Mexican Grill, Inc's Motion for Entry of

Exhibit 1
Page 14

Judgement Pursuant to Fed. R. Civ. P. 54(B) (ECF No. 202) and Motion to Reinstate Stay (ECF No. 203), Kane, J., Case No. 1-14-cv-02612-JLK, Document 212, (Nov. 20, 2018), U.S.D.C. Colorado.) Furthermore, as noted in the *Dillard's* case, a failure to stop such conduct would establish a perverse incentive for drafting parties to demand arbitration in a contract of adhesion and then refuse to pay the arbitrator when a claim was made. In light of the extreme hardship that needlessly delaying arbitration may cause to plaintiffs, the material breach and sanction provisions of this bill would seem to be a strict yet reasonable method to ensure the timely adjudication of employee and consumer claims that are subject to arbitration.

***This bill appears to narrowly target those who are most at risk from predatory arbitration delays.*** In keeping this bill in line with much of the existing case law, the author focuses on arbitration involving employment and consumer disputes. After negotiations between the stakeholders, the definition of consumer was narrowed in the Senate to only include persons who "purchase or lease" good and services. The bill currently defines an employee as, "any current employee, former employee, or applicant for employment" and includes any person who "is, was, or who claims to have been misclassified as an independent contractor," or otherwise misclassified in their employment.

Beyond the opposition to this bill stated by the California Chamber of Commerce and their associated coalition, the San Gabriel Valley Economic Partnership contends that the definition of employee provided by this bill is too broad. In particular, the Partnership objects to the inclusion of employees who allege they are misclassified as independent contractors. This objection appears to encompass many of the "gig economy" employees who have fought for years in courts and in arbitration to be properly classified under the law. The Partnership contends that, "under the proposed definition, this individual could request the company pay for the arbitrator…even if the actual contract between a company and independent contractor provides otherwise. If the company refuses to pay within 30 days on the basis that the individual is not an employee…this would be a material breach."

Ironically, many of the "independent contractors" that the San Gabriel Valley Economic Partnership would like to see pay their share of the fees actually involve employees misclassified as independent contractors. For example, entwined within the wage claims against Uber, discussed above, included allegations of employee misclassification. It should be noted that nothing in this bill would preclude an arbitrator from subsequently requiring a plaintiff to reimburse a drafting party for arbitration costs and fees should the arbitrator determine the plaintiff was in fact an independent contractor. Furthermore, the intent of the case law requiring the drafting party to pay for arbitration reflects the general belief that fairness dictates that the law "places the cost of arbitration on the party that imposes it." (*Armendariz v. Foundation Health Psychcare Services, Inc.* (2000) 24 Cal. 83, 111.) The case law notes that in the absence of such a rule there is

Exhibit 1
Page 15

"significant risk that employees will have to bear large costs to vindicate their statutory right." (*Id.* at p. 110.) Many of the independent contractors in the "gig economy" face similar economic hardships as employees. Recognizing that the intent of the case law this bill seeks to codify is to protect the economically vulnerable party in an arbitration, including misclassified workers, incorporating such plaintiffs into the definition of employee seems wholly consistent with the case law and is a reasonable component this bill.

*Changes in corporate circumstances and the burdens of arbitration.* The entire coalition opposing this bill also notes that the strict provisions surrounding the breach of the contract and associated sanctions are unfair to companies who no longer possess the "same financial means" at the time arbitration is demanded as the company did when they drafted the contract providing arbitration as the only venue for consumers or employees to adjudicate issues. While they concede that such a circumstance may warrant moving the dispute to court they contend imposing sanctions in such a case would be unwarranted.

The concerns of the business community are not wholly unjustified. For example, should a recession drive a company to the brink of bankruptcy, the company may truly have no ability to pay for arbitration through no fault of their own. Nevertheless, regardless of a company's situation, a business that finds itself stuck in an arbitration it cannot afford can easily trace its own choice – perhaps motivated by corporate America's zealous insistence on placing binding arbitration provisions in nearly every contract of adhesion it signs with employees or consumers – to require arbitration. Furthermore, regardless of a company's finances, it should be noted that existing binding arbitration agreements leave employees and consumers with few remedies. While a company is attempting to determine its ability to afford arbitration, the existing law is leaving employee and consumer claims in limbo. Accordingly, the sanctions, while unforgiving, seem justified regardless of the present economic status of the drafting party. Perhaps, in order to lessen their risk of sanctions, drafting parties should reconsider their liberal use of binding arbitration provisions in contracts, or at a minimum, consider drafting these agreement in a manner that provides all parties increased access to the court system in the event circumstances arise that warrant adjudicating disputes in court.

*Presently the legal profession is attempting to study and address its struggle to diversify, however, despite their critical role in the legal system, very little data exists regarding the diversity of arbitrators.* Last month, this Committee held an informational hearing examining the legal profession's striking lack of diversity. As a part of the background for that hearing the Committee highlighted data from the State Bar of California that noted that 80 percent of California attorneys were white, compared with just 37 percent of the state's population as a whole. The Committee also expressed a concern that the present lack of diversity found within the bar and on the bench may translate into the ranks of arbitrators,

Exhibit 1
Page 16

especially given that most arbitrators are typically retired attorneys or judges. Notably, iconic music mogul Jay-Z raised this concern when he challenged the American Arbitration Association's purported lack of qualified African Americans on its roster of arbitrators. Jay-Z stated, "It would stand to reason that prospective litigants – which undoubtable include minority owned and operated business – expect there to be the possibility that the person who stands in the shoes of both judge and jury reflect the diverse population." (Dan Packel, *Jay-Z, Quinn Emanuel Say AAA Offers Only "Token" Black Arbitrators,* The Recorder (Nov. 28, 2018), quoting Jay-Z.)

A 2015 survey of arbitrators nationwide would seem to justify the concerns of both Jay-Z and this Committee, finding that a staggering 92 percent of arbitrators were white and 74 percent were male. (Colvin & Stone, *The Arbitration Epidemic- Mandatory arbitration deprives workers and consumers of their rights,* Economic Policy Institute (Dec. 7, 2015).) The proponents of this measure note that although California collects significant information regarding arbitration companies' behavior, as well as significant demographic data about judges and attorneys, the state does not collect demographic data regarding arbitrators. Accordingly, this bill seeks to impose a modest, self-reporting demographic data requirement on arbitration companies. In support of these provisions the author states:

> SB 707 will also require arbitration companies to report the same kind of demographic information that our judiciary is required to report (including gender, race and ethnicity). The purpose of this is to hopefully galvanize some better recruitment and hiring practices by the arbitration companies and highlight the fact that arbitration cannot be a fair process when the arbitrators do not remotely reflect the diverse experiences and backgrounds of the people who are bringing their claims before them, or are forced to bring their claims before them, which is very often the case.

It should be noted that none of the opposition to this measure objects to the demographic data collection provisions.

***ARGUMENTS IN SUPPORT:*** This bill is co-sponsored by the Consumer Attorneys of California and the California Employment Lawyers Association who represent many of the parties in the arbitration proceedings in which the drafting party may fail to pay for the costs of the proceedings. In support of the bill the California Employment Lawyers Association states:

> SB 707 bill addresses two distinct problems in arbitration. First, the procedural limbo and delay workers and consumers face when they submit to arbitration, pursuant to a mandatory arbitration agreement, but the employer fails or refuses to pay their share of the arbitration fees. Second, the alarming lack of diversity in the arbitration industry, which calls into question the ability of the industry to fairly adjudicate claims brought by an increasingly diverse workforce in California.

Exhibit 1
Page 17

*ARGUMENTS IN OPPOSITION:* This bill is opposed by the California Chamber of Commerce and a coalition of affiliated business organizations. Writing for the coalition, the Chamber of Commerce states:

> The main remaining concern is the actions or omissions that qualify as a "material breach" and trigger loss of opportunity to arbitrate, monetary damages/sanctions, and possibly more severe sanctions such as evidentiary or terminating sanctions. For example, we are concerned that, even if the drafting party paid a majority of the fees and costs, but yet a small, minor portion was not paid, SB 707 would deem that nominal amount a "material breach," thereby subjecting the employer or company to the same list of punishments as an employer or company who intentionally withheld the entire payment in an effort to delay the arbitration.

**REGISTERED SUPPORT / OPPOSITION** :

**Support**

California Employment Lawyers Association (co-sponsor)
Consumer Attorneys of California (co-sponsor)
California Labor Federation
California Professional Firefighters
Conference of California Bar Associations
Equal Rights Advocates
SEIU California
United Food and Commercial Workers, Western States Council

**Opposition**

Allied Managed Care and Acclamation Insurance Management Services
California Apartment Association
California Association of Joint Powers Authorities
California Association of Winegrape Growers
California Chamber of Commerce
California Hospital Association
California League of Food Producers
California Manufacturers and Technology Association
California Restaurant Association
California Retailers Association
California Trucking Association
CSAC – Excess Insurance Authority
Flasher Barricade Association
Official Police Garages of Los Angeles
San Gabriel Valley Economic Partnership
Securities Industry and Financial Markets Association

**Analysis Prepared by**: Nicholas Liedtke / JUD. / (916) 319-2334

Exhibit 1
Page 18