ARCHIS A. PARASHARAMI (SBN 321661)
aparasharami@mayerbrown.com
ANDREW J. PINCUS (*pro hac vice* to be filed)
apincus@mayerbrown.com
DANIEL E. JONES (*pro hac vice* to be filed)
djones@mayerbrown.com
MAYER BROWN LLP
1999 K Street, N.W.
Washington, D.C. 20006-1101
Telephone: (202) 263-3000
Facsimile: (202) 263-3300

Attorneys for *Amicus Curiae*
THE CHAMBER OF COMMERCE OF THE
UNITED STATES OF AMERICA

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| POSTMATES INC.,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>10,356 INDIVIDUALS,<br><br>　　　　Defendants.<br><br>---<br><br>GREENWOOD, et al.,<br><br>　　　　Cross-Petitioners,<br><br>　v.<br><br>POSTMATES INC.,<br><br>　　　　Cross-Respondent. | Case No. 2:20-cv-02783-PSG<br><br>**BRIEF OF *AMICUS CURIAE* THE CHAMBER OF COMMERCE OF THE UNITED STATES OF AMERICA IN SUPPORT OF POSTMATES' MOTION FOR JUDGMENT ON THE PLEADINGS**<br><br>Date: November 17, 2020<br>Time: 1:30 P.M.<br>Judge: Hon. Philip S. Gutierrez |

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ...................................................................................................... ii
INTEREST OF THE *AMICUS CURIAE* ............................................................................... 1
INTRODUCTION AND SUMMARY OF ARGUMENT ........................................... 2
ARGUMENT .................................................................................................................. 4
SB 707 Is Preempted By The Federal Arbitration Act. ................................................. 4
    A.    SB 707 Violates Section 2 Of The Federal Arbitration Act. ................. 5
    B.    SB 707 Interferes With The Purposes And Objectives Of The Federal Arbitration Act. ................................................................................................ 9
CONCLUSION ............................................................................................................. 11

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*AT&T Mobility LLC v. Bernardi*,
  2011 WL 5079549 (N.D. Cal. Oct. 26, 2011) ......................................................... 8

*AT&T Mobility LLC v. Bushman*,
  2011 WL 5924666 (S.D. Fla. Sept. 23, 2011) ........................................................ 8

*AT&T Mobility LLC v. Concepcion*,
  563 U.S. 333 (2011) ........................................................................................*passim*

*AT&T Mobility LLC v. Gonnello*,
  2011 WL 4716617 (S.D.N.Y. Oct. 7, 2011) .......................................................... 8

*AT&T Mobility LLC v. Princi*,
  2011 WL 6012945 (D. Mass. Dec. 2, 2011) ........................................................... 8

*AT&T Mobility LLC v. Smith*,
  2011 WL 5924460 (E.D. Pa. Oct. 7, 2011) ............................................................ 8

*Brown v. Grimes*,
  192 Cal. App. 4th 265 (2011) ................................................................................. 6

*Chamber of Commerce v. Becerra*,
  438 F. Supp. 3d 1078 (E.D. Cal. 2020) ...................................................... 1, 10, 11

*Doctor's Associates, Inc. v. Casarotto*,
  517 U.S. 681 (1996) ................................................................................................ 5

*EEOC v. Waffle House, Inc.*,
  534 U.S. 279 (2002) ................................................................................................ 9

*Epic Sys. Corp. v. Lewis*,
  138 S. Ct. 1612 (2018) .................................................................................... 4, 5, 9

*In re Findley*,
  593 F.3d 1048 (9th Cir. 2010) .............................................................................. 10

*Gilmer v. Interstate/Johnson Lane Corp.*,
  500 U.S. 20 (1991) ................................................................................................ 10

*Gonzales v. CarMax Auto Superstores, LLC*,
  840 F.3d 644 (9th Cir. 2016) ................................................................................ 10

*Granite Rock Co. v. Int'l Bhd. of Teamsters*,
  561 U.S. 287 (2010) ................................................................................................ 7

*Hines v. Davidowitz*,
   312 U.S. 52 (1941) ................................................................................... 4, 5, 9

*Howsam v. Dean Witter Reynolds, Inc.*,
   537 U.S. 79 (2002) ............................................................................................ 8

*Kindred Nursing Centers Ltd. P'ship v. Clark*,
   137 S. Ct. 1421 (2017) .............................................................................. 3, 5, 8

*Lamps Plus, Inc. v. Varela*,
   139 S. Ct. 1407 (2019) ................................................................................. 2, 4

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
   460 U.S. 1 (1983) ....................................................................................... 2, 4, 9

*MZM Constr. Co. v. N.J. Building Laborers Statewide Benefit Funds*,
   --- F. 3d ----, 2020 WL 5509703 (3d Cir. Sept. 14, 2020) ............................... 7

*Perry v. Thomas*,
   482 U.S. 483 (1987) ......................................................................................... 2

*Preston v. Ferrer*,
   552 U.S. 346 (2008) ..................................................................................... 2, 4

*Pry Corp. of Am. v. Leach*,
   177 Cal. App. 2d 632 (1960) ........................................................................... 6

*Saturn Distrib. Corp. v. Williams*,
   905 F.2d 719 (4th Cir. 1990) ....................................................................... 9, 10

*Securities Indus. Ass'n v. Connolly*,
   883 F.2d 1114 (1st Cir. 1989) .......................................................................... 9

*Southland Corp. v. Keating*,
   465 U.S. 1 (1984) ............................................................................................. 4

*Whitney Inv. Co. v. Westview Dev. Co.*,
   273 Cal. App. 2d 594 (1969) ........................................................................... 6

**Statutes**

9 U.S.C. § 2 ........................................................................................... 3, 4, 5, 6

Cal. Civ. Proc. Code § 1281.97(a) ....................................................................... 3

Cal. Civ. Proc. Code § 1281.97(b)(2) .................................................................. 3

Cal. Civ. Proc. Code § 1281.98(d) ....................................................................... 3

Cal. Civ. Proc. Code § 1281.99(a) ....................................................................... 3

iii
BRIEF OF AMICUS CURIAE ISO POSTMATES' MOT. FOR JUDGMENT ON THE PLEADINGS;
Case No. 2:20-cv-02783-PSG

Cal. Civ. Proc. Code § 1281.99(b) .................................................................................. 3

**Other Authorities**

1 Witkin, Summary of Cal. Law, Contracts, § 813 (10th ed. 2005) ........................... 6

1 Witkin, Summary of Cal. Law, Contracts, § 873 (11th ed. 2020) ........................... 6

# INTEREST OF THE *AMICUS CURIAE*

The Chamber of Commerce of the United States of America is the world's largest business federation. The Chamber represents approximately 300,000 direct members and indirectly represents the interests of more than three million companies and professional organizations of every size, in every industry sector, and from every region of the country. One of the Chamber's responsibilities is to represent the interests of its members in matters before the courts, Congress, and the Executive Branch. To that end, the Chamber regularly files *amicus curiae* briefs in cases that raise issues of concern to the nation's business community, including cases involving the interpretation of the Federal Arbitration Act (the "Act"), 9 U.S.C. §§ 1-16.[1]

Many of the Chamber's members and affiliates regularly rely on arbitration agreements in their contractual relationships. Based on the policy reflected in the Act, the Chamber's members and affiliates have structured millions of contractual relationships around the use of arbitration to resolve disputes.

The Chamber has a strong interest in explaining why California's Senate Bill 707 is preempted by the Federal Arbitration Act and therefore unconstitutional under the Supremacy Clause of the Constitution. The Chamber is one of the plaintiffs in a case challenging on preemption grounds a sister piece of legislation passed during the same session, Assembly Bill 51—a case in which Chief Judge Mueller issued a preliminary injunction against California's enforcement of that statute as applied to arbitration agreements governed by the Federal Arbitration Act. *See Chamber of Commerce v. Becerra*, 438 F. Supp. 3d 1078 (E.D. Cal. 2020), *appeal pending*, No. 20-15291 (9th Cir.). SB 707 is enforced by private parties rather than the State, but it too impermissibly singles out arbitration agreements for disfavored treatment by subjecting their drafters to unique and one-sided sanctions if they do not pay

---

[1] No counsel for a party authored this brief in whole or in part, and no person other than the Chamber, its members, or its counsel contributed money that was intended to fund the preparation or submission of this brief.

arbitration fees in full within 30 days of the due date, regardless of the reason for non-payment or the amount not paid. And the consequent deterrent effect of those sanctions on the use and enforcement of arbitration agreements—an *explicitly stated* purpose of the California Legislature in passing SB 707—plainly stands as an obstacle to the pro-arbitration objectives of the Federal Arbitration Act and threatens to deprive businesses, workers, and consumers alike of the benefits of the national policy favoring arbitration. The Chamber therefore has a strong interest in participating in this case and in an order concluding that SB 707, like Assembly Bill 51, is preempted by the Federal Arbitration Act.

### INTRODUCTION AND SUMMARY OF ARGUMENT

Congress enacted the Federal Arbitration Act to "promote arbitration." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 345 (2011). The Act's "'liberal federal policy favoring arbitration agreements'" applies "'notwithstanding any state substantive or procedural policies to the contrary.'" *Id.* at 346 (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983)).

Nonetheless, California has repeatedly sought to restrict arbitration as a matter of state public policy, particularly in the employment and consumer contexts, and the Supreme Court has held that the Federal Arbitration Act preempted several of those efforts.[2] SB 707, which applies to consumer and workplace arbitration agreements, represents more of the same. It violates the Federal Arbitration Act for two independent reasons.

---

[2] *See*, *e.g.*, *Lamps Plus, Inc. v. Varela*, 139 S. Ct. 1407, 1417-18 (2019) (use of California "public policy" rule interpreting ambiguities against the drafter to impose class procedures on the parties where the contract did not expressly authorize class arbitration); *Concepcion*, 563 U.S. at 352 (California judicial rule declaring class-action waivers unconscionable); *Preston v. Ferrer*, 552 U.S. 346, 353 (2008) (California Labor Code provision requiring an agency to hear certain disputes before arbitration); *Perry v. Thomas*, 482 U.S. 483, 491 (1987) (California Labor Code provision requiring judicial forum for wage collection actions).

2

BRIEF OF AMICUS CURIAE ISO POSTMATES' MOT. FOR JUDGMENT ON THE PLEADINGS;
Case No. 2:20-cv-02783-PSG

*First*, by singling out arbitration agreements by name and imposing mandatory and one-sided penalties on the drafters of arbitration agreements that do not apply outside of the arbitration context, SB 707 violates Section 2 of the Federal Arbitration Act, which requires courts and state legislatures to "place arbitration agreements 'on equal footing with all other contracts.'" *Kindred Nursing Centers Ltd. P'ship v. Clark*, 137 S. Ct. 1421, 1424 (2017). SB 707 treats *any* non-payment of arbitral fees by the drafting party (no matter the amount), regardless of the reasons for non-payment, as a "material breach of the arbitration agreement" that "waives [that party's] right to compel arbitration." Cal. Civ. Proc. Code § 1281.97(a). If the non-drafting party elects to proceed in court notwithstanding his or her agreement to arbitrate, SB 707 *mandates* a "sanction against the drafting party" in the form of an order "to pay the reasonable expenses" of the non-drafting party, "including attorney's fees and costs." *Id.* § 1281.99(a). And SB 707 further authorizes the court to impose a panoply of non-monetary and potentially case-dispositive sanctions as well, including orders "prohibiting the drafting party from conducting discovery in court"; "striking out the pleadings or parts of the pleadings of the drafting party"; "rendering a judgment by default against the drafting party"; or "treating the drafting party as in contempt of court." *Id.* § 1281.99(b). If the non-drafting party elects arbitration instead, SB 707 mandates that the arbitrator order fee shifting and authorizes the arbitrator to impose numerous other sanctions as well. *Id.* §§ 1281.97(b)(2), 1281.98(d).

The differential treatment is clear. SB 707 not only creates a unique rule of contract law that applies solely to arbitration agreements, but also treats such agreements as a specific type of contract from which non-drafting parties need heightened protection in the event of non-performance (however slight or justified). That singling out of arbitration is the very unequal treatment that the Federal Arbitration Act forbids.

*Second*, and for similar reasons, SB 707 is also preempted because it "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress," as expressed in the Federal Arbitration Act. *Concepcion*, 563 U.S. at 352 (quoting *Hines v. Davidowitz*, 312 U.S. 52, 67 (1941)). The stated goal of the California Legislature in imposing harsh and "unforgiving" sanctions on businesses through SB 707 is to deter businesses from the "liberal use of binding arbitration provisions in contracts." Dkt. No. 78-2, at 16. That result is antithetical to the longstanding "liberal federal policy favoring arbitration agreements." *Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1621 (2018) (quoting *Moses H. Cone*, 460 U.S. at 24).

The anti-arbitration sentiment animating the California Legislature's enactment of SB 707 is not only impermissible under the Federal Arbitration Act, but also is bad policy. SB 707 in fact harms businesses, workers, and consumers by deterring the use of arbitration agreements and thereby preventing them from obtaining the benefits of arbitration secured by the Act.

## ARGUMENT

**SB 707 Is Preempted By The Federal Arbitration Act.**

The Supreme Court has identified at least two ways in which a state-law rule may run afoul of the Federal Arbitration Act. *First*, any state-law rule that "conflicts with § 2 of the Federal Arbitration Act . . . violates the Supremacy Clause." *Southland Corp. v. Keating*, 465 U.S. 1, 10 (1984); *see Preston*, 552 U.S. at 353 ("The FAA's displacement of conflicting state law is 'now well-established.'"). Section 2 of the Act specifies that a "written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation *of any contract*." 9 U.S.C. § 2 (emphasis added). Under Section 2, "courts must place arbitration agreements on an equal footing with other contracts." *Concepcion*, 563 U.S. at 339; *accord Lamps Plus*, 139 S. Ct. at 1412.

*Second*, a state-law rule that "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress," as expressed in the Federal Arbitration Act, is preempted and invalid. *Concepcion*, 563 U.S. at 352 (quoting *Hines*, 312 U.S. at 67).

The Act preempts SB 707 for these two reasons—each of which is independently sufficient to declare the state statute unconstitutional under the Supremacy Clause.

### A.   SB 707 Violates Section 2 Of The Federal Arbitration Act.

Under Section 2's "equal footing" principle, the Act preempts state-law rules that "single out" arbitration agreements for disfavored treatment. *Kindred*, 137 S. Ct. at 1428. Moreover, as Justice Kagan explained for the *Kindred* Court, Section 2 not only prohibits States from discriminating against arbitration on its face, but also prohibits States from achieving the same result "covertly," by "disfavoring contracts that (oh so coincidentally) have the defining features of arbitration agreements." *Id.* at 1426. The Supreme Court recently reiterated that Section 2's "savings clause does not save defenses that target arbitration either by name or by more subtle methods." *Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1622 (2018).

Here, the preemption analysis is even clearer than in *Kindred* or *Epic*. There is nothing "covert[]" or "subtle" about SB 707: It targets arbitration agreements by name. It therefore more closely resembles the Montana statute that the Supreme Court held preempted in *Doctor's Associates, Inc. v. Casarotto*, 517 U.S. 681 (1996), which required contracts containing an arbitration clause to include a notice of the clause in underlined capital letters on the first page of the contract. *Id.* at 683. As Justice Ginsburg explained for the Court, that state statute "directly conflicts with § 2 of the FAA" because it imposes "a special notice requirement not applicable to contracts generally," and instead governs "specifically and solely contracts 'subject to arbitration.'" *Id.* at 687.

As Postmates' motion points out (at 12-14), Section 2's savings clause does not save SB 707 because SB 707 does not reflect generally applicable contract doctrine, but instead represents a stark departure from ordinary California contract principles.

*First*, California ordinarily treats "the question of whether a breach of an obligation is a material breach . . . [as] a question of fact." *Brown v. Grimes*, 192 Cal. App. 4th 265, 277 (2011) (collecting cases). That reflects the common-sense point that the materiality of a breach is a case-specific determination, focusing on "the specific obligations undertaken by" the parties and the nature and "timing of a breach." *Whitney Inv. Co. v. Westview Dev. Co.*, 273 Cal. App. 2d 594, 601-02 (1969). SB 707, by contrast, treats *any* failure by the drafting party to pay arbitration fees in full as a material breach, as a matter of law—regardless of the underlying factual circumstances or whether the amount not paid is nominal or substantial.

*Second*, California ordinarily treats contracting parties equally in the context of a material breach by the other party: "When a party's failure to perform a contractual obligation constitutes a material breach of the contract, the other party may be discharged from its duty to perform under the contract." *Brown*, 192 Cal. App. 4th at 277 (citing 1 Witkin, Summary of Cal. Law, Contracts, §§ 813, 814 (10th ed. 2005)). SB 707, by contrast, applies only to breaches by the drafting party, and in fact obligates the drafting party to perform under the contract by paying arbitration fees regardless of whether the consumer or worker breached the contract first. It also applies if the business has a good-faith basis to dispute the arbitrability of the claims asserted against it, so that its non-payment of the arbitration fees associated with those claims would be justified until a court resolves the arbitrability issue.

*Third*, and relatedly, California ordinarily requires a plaintiff seeking to recover for a breach of contract to demonstrate that he or she has properly performed under the contract. *See* 1 Witkin, Summary of Cal. Law, Contracts, § 873 (11th ed. 2020) (citing, *inter alia*, *Pry Corp. of Am. v. Leach*, 177 Cal. App. 2d 632, 639 (1960)). Yet SB 707 allows even a consumer or worker who has breached an arbitration agreement

to demand the drafting party's continued performance in the form of paying arbitration fees—and authorizes sanctions on a business that declines to perform in light of non-performance on the worker's or consumer's part. For example, a consumer who breaches the arbitration agreement by filing a single arbitration claim that purports to be on behalf of hundreds of customers—conduct that is often expressly barred under the governing arbitration provision—could obtain enforcement of the arbitration agreement, notwithstanding such an express prohibition, if the targeted defendant fails to pay the full arbitration fees for the improper group arbitration.

Moreover, the problems posed by SB 707's departure from ordinary contract principles are real, not hypothetical. In this case, for example, Postmates has objected to the assessment and payment of filing fees for hundreds of claimants who Postmates asserts never agreed to arbitrate or who opted out of arbitration. If those objections turn out to have merit, then the claimants have no basis to initiate an arbitration and force Postmates to incur the associated fees. And the question of whether those claimants agreed to arbitration with Postmates is a question of contract formation that is reserved for courts to decide in the first instance. *See, e.g.*, *Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 296 (2010) ("It is . . . well settled that where the dispute at issue concerns contract formation, the dispute is generally for courts to decide."); *MZM Constr. Co. v. N.J. Building Laborers Statewide Benefit Funds*, --- F. 3d ----, 2020 WL 5509703, at *6-7 (3d Cir. Sept. 14, 2020) (holding that the court must "decide[] whether an arbitration agreement exists when the formation or existence of the [underlying] contract is disputed"). Only in the arbitration context is Postmates forced to perform in advance in order to preserve its right to a court determination of that contract issue—as the general contract principles discussed above demonstrate.

More generally, a business may have a good-faith basis to challenge either "whether the parties are bound by a given arbitration agreement" or "whether an

arbitration clause in a concededly binding contract applies to a particular type of controversy," both which by default are "for a court to decide." *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 84 (2002). But SB 707 does not permit the business to take the position that such challenges must be resolved by the courts before paying arbitration fees. In addition, a consumer or worker—perhaps at the encouragement of counsel seeking to maximize the imposition of arbitral fees—may fail to comply with an arbitration agreement's standard pre-arbitration notice and dispute resolution procedures designed to encourage the informal and amicable resolution of claims without the need for an adversarial proceeding. Or a consumer or worker may initiate an improper class or representative arbitration—the types of arbitrations that courts have repeatedly enjoined when they are prohibited by an arbitration agreement.[3]

Yet in all of these scenarios, SB 707 obligates the business to pay the arbitration fees in full, on pain of weighty sanctions, and with no guarantee of recouping the fees that it pays for even illegitimate claims.

In short, because California law would not impose the harsh and one-sided sanctions of SB 707 outside of the arbitration context, SB 707 plainly applies state contract doctrine "in a fashion that disfavors arbitration," and is preempted. *Concepcion*, 563 U.S. at 341; *see also Kindred*, 137 S. Ct. at 1428.

---

[3] For example, one law firm filed copycat arbitrations on behalf of over 1,000 claimants seeking to block or impose conditions on a merger. Every court to consider the issue held that the arbitrations were improper class or representative arbitrations that violated the arbitration agreement. *See, e.g.*, *AT&T Mobility LLC v. Princi*, 2011 WL 6012945, at *1 (D. Mass. Dec. 2, 2011); *AT&T Mobility LLC v. Bernardi*, 2011 WL 5079549, at *13 (N.D. Cal. Oct. 26, 2011); *AT&T Mobility LLC v. Smith*, 2011 WL 5924460, at *8 (E.D. Pa. Oct. 7, 2011); *AT&T Mobility LLC v. Gonnello*, 2011 WL 4716617, at *4 (S.D.N.Y. Oct. 7, 2011); *AT&T Mobility LLC v. Bushman*, 2011 WL 5924666, at *2 (S.D. Fla. Sept. 23, 2011).

### B. SB 707 Interferes With The Purposes And Objectives Of The Federal Arbitration Act.

Much of the preceding discussion also explains why SB 707 is preempted for the additional reason that it "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress" expressed in the Federal Arbitration Act. *Concepcion*, 563 U.S. at 352 (quoting *Hines*, 312 U.S. at 67).

Congress enacted the Act in 1925 to "reverse the longstanding judicial hostility to arbitration agreements." *EEOC v. Waffle House, Inc.*, 534 U.S. 279, 289 (2002) (quotation marks omitted); *see Allied-Bruce*, 513 U.S. at 272 (the Act "seeks broadly to overcome judicial hostility to arbitration agreements"). The Supreme Court's "cases place it beyond dispute that the FAA was designed to promote arbitration," *Concepcion*, 563 U.S. at 345-46, and that the Act "establishes 'a liberal federal policy favoring arbitration agreements,'" *Epic*, 138 S. Ct. at 1621 (quoting *Moses H. Cone*, 460 U.S. at 24).

By imposing unique and weighty penalties on the drafters of arbitration agreements, SB 707 forcefully impedes the Act's purpose "to promote arbitration." *Concepcion*, 563 U.S. at 345. The First Circuit has held, for example, that "[a] policy designed to prevent one party from enforcing an arbitration contract or provision by visiting a penalty on that party is, without much question, contrary to the policies of the FAA." *Securities Indus. Ass'n v. Connolly*, 883 F.2d 1114, 1122-24 (1st Cir. 1989) (holding that the Act preempted Massachusetts state-law allowing state officials to revoke the licenses of broker-dealers who required customers to sign pre-dispute arbitration agreements). And the Fourth Circuit has expressly endorsed *Connolly*, agreeing that the Act bars state-law rules that "discourage" arbitration, not just those that "prohibit" it outright. *Saturn Distrib. Corp. v. Williams*, 905 F.2d 719, 722-24 (4th Cir. 1990).

There can be no serious dispute that SB 707 embodies the improper attempt by the California Legislature to discourage businesses from forming and enforcing

9

BRIEF OF AMICUS CURIAE ISO POSTMATES' MOT. FOR JUDGMENT ON THE PLEADINGS; Case No. 2:20-cv-02783-PSG

arbitration agreements with their customers and workers. Indeed, there is no need to speculate about that point, because the California Legislature admitted as much. The Assembly Committee on the Judiciary stated that the statute's "unforgiving" sanctions are "justified" to make "drafting parties reconsider their liberal use of binding arbitration agreements in contracts." Dkt. No. 78-2, at 16. The Committee made plain its dislike of arbitration by characterizing it as a "controversial form of dispute resolution" (*id.*)—which is "far out of step" with Congress's endorsement of arbitration agreements. *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 30 (1991) (quotation marks omitted). And the bill's sponsor stated that the purpose of SB 707 is to "reform" the use of arbitration, which he characterizes as something "forc[ed] . . . on consumers and workers" and that "overwhelmingly favors employers over employees." Dkt. Nos. 78-4, at 24, 78-5, at 27, 78-6, at 29. Courts in this Circuit routinely look to California legislative history of this kind as confirmatory evidence of the effect of the statutory text. *See, e.g.*, *Gonzales v. CarMax Auto Superstores, LLC*, 840 F.3d 644, 652 & n.8 (9th Cir. 2016); *In re Findley*, 593 F.3d 1048, 1053 (9th Cir. 2010); *Chamber of Commerce*, 438 F. Supp. 3d at 1097.

Moreover, as explained above (at 6-8), SB 707 penalizes any business that fails to pay arbitration fees in full, regardless of whether the business has a good-faith basis to challenge the arbitrability of the claims or to challenge whether the consumer or worker has complied with his or her own obligations under the contract. The statute therefore increases the costs to businesses of enforcing arbitration agreements and invites misuse of the arbitration process by enterprising plaintiffs' lawyers who know that businesses will be on the hook for fees even if the claimant is not actually a customer, is not asserting an arbitrable claim, or has failed to comply with any necessary prerequisites to initiating an arbitration.

As Judge Mueller determined in the context of Assembly Bill 51, this "deterrent effect on [the] use of arbitration agreements" means that the California statute

"interferes with the FAA and for this reason as well as preempted." *Chamber of Commerce*, 438 F. Supp. 3d at 1100. The same is true of SB 707 here.

## CONCLUSION

Postmates' Motion for Judgment on the Pleadings should be granted.

DATED: October 13, 2020

Respectfully submitted,

By:   /s/ Archis A. Parasharami
Archis A. Parasharami (SBN 321661)
aparasharami@mayerbrown.com
Andrew J. Pincus*
apincus@mayerbrown.com
Daniel E. Jones*
djones@mayerbrown.com
MAYER BROWN LLP
1999 K Street, N.W.
Washington, D.C., 20006-1101
(202) 263-3000

Attorneys for *Amicus Curiae* the Chamber of Commerce of the United States of America

**Pro Hac Vice* to be filed