1
2
3
4
5
6
7
8
9
10

Aaron Zigler (#327318)
  amz@kellerlenkner.com
Ashley Keller (*pro hac vice*)
  ack@kellerlenkner.com
KELLER LENKNER LLC
150 N. Riverside Plaza, Suite 4270
Chicago, Illinois 60606
(312) 741-5220

Warren Postman (*pro hac vice*)
  wdp@kellerlenkner.com
KELLER LENKNER LLC
1300 I Street, N.W., Suite 400E
Washington, D.C. 20005
(202) 749-8334

Keith A. Custis (#218818)
  kcustis@custislawpc.com
CUSTIS LAW, P.C.
1999 Avenue of the Stars
Suite 1100
Los Angeles, California 90067
(213) 863-4276

11

*Attorneys for Defendants/Cross-Petitioners*

12
13

**UNITED STATES DISTRICT COURT**
**FOR THE CENTRAL DISTRICT OF CALIFORNIA**

14
15
16
17
18
19
20

21
22
23
24
25
26
27
28

POSTMATES INC.,

      *Plaintiff,*

    vs.

10,356 INDIVIDUALS,

      *Defendants.*

_____

GREENWOOD, et al.,

      *Cross-Petitioners,*

    vs.

POSTMATES INC.,

      *Cross-Respondent.*

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Case No: 2:20-cv-02783-PSG

**DEFENDANTS' OPPOSITION TO**
**MOTION FOR JUDGMENT ON**
**THE PLEADINGS ON**
**POSTMATES'S SECOND, THIRD,**
**AND FIFTH CAUSES OF ACTION**

**Judge:**   Hon. Philip S. Gutierrez
**Date:**    November 17, 2020
**Time:**    1:30 p.m.

# TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................ii

INTRODUCTION.................................................................1

RELEVANT FACTUAL BACKGROUND .....................................5

    **A.**   THE LEGISLATURE PASSES SB 707 IN AID OF ARBITRATION.......................5

    **B.**   POSTMATES REQUIRES DEFENDANTS TO AGREE TO ARBITRATION. .............7

    **C.**   POSTMATES REFUSES TO ARBITRATE WITH DEFENDANTS. ...........................9

LEGAL STANDARD .........................................................9

ARGUMENT.......................................................................10

    **A.**   POSTMATES HAS NOT IDENTIFIED A SUFFICIENT BASIS FOR THE COURT TO EXERCISE JURISDICTION UNDER THE DECLARATORY JUDGMENT ACT.......10

    **B.**   SB 707 DOES NOT OFFEND THE FAA'S REQUIREMENT THAT ARBITRATION CONTRACTS REMAIN VALID, IRREVOCABLE, AND ENFORCEABLE.............13

    **C.**   SB 707 IS NOT HOSTILE TO ARBITRATION. ................................................. 16

        ***1.***    *SB 707 Does not Disfavor Arbitration on Its Face.* .......................17

        ***2.***    *SB 707 Does not Erect Obstacles to Arbitration.*...........................20

    **D.**   SB 707 DOES NOT VIOLATE THE CONTRACTS CLAUSE. ...........................24

CONCLUSION .....................................................................25

1

# TABLE OF AUTHORITIES

2

**Cases**                                                                 **Page(s)**

3

*Adams v. Postmates, Inc.*,
4
    414 F. Supp. 3d 1246 (N.D. Cal. 2019)................................................................1

5

*Adams v. Postmates, Inc.*,
6
    No. 19-17362, 2020 WL 5793745 (9th Cir. Sept. 29, 2020)................................8

7

*Aeromech Eng'g Corp. v. Aeromech Inc.*,
8
    No. 09-cv-7009 PSG, 2009 WL 10675940 (C.D. Cal. Dec. 21, 2009).............12

9

*American Express Co. v. Italian Colors Restaurant*,
10
    570 U.S. 228 (2013)......................................................................................16, 17

11

*AT&T Mobility LLC v. Concepcion*,
12
    563 U.S. 333 (2011).........................................................................2, 14, 15, 17

13

*Bhd. Mut. Ins. Co. v. Vinkov*,
    No. 19-cv-01821 CJC, 2020 WL 4873519 (C.D. Cal. July 7, 2020) .................10

14

*Borden, Inc. v. Meiji Milk Prods. Co.*,
15
    919 F.2d 822 (2d Cir. 1990) ...............................................................................16

16

*Britton v. Co-op Banking Grp.*,
17
    916 F.2d 1405 (9th Cir. 1990) ............................................................................18

18

*Bronson v. Kinzie*,
19
    42 U.S. 311 (1843)..............................................................................................25

20

*Chamber of Commerce of the U.S. v. Becerra*,
21
    438 F. Supp. 3d 1078 (E.D. Cal. Feb. 7, 2020 ............................................15, 24

22

*Chastain v. Union Sec. Life Ins. Co.*,
23
    502 F. Supp. 2d 1072 (C.D. Cal. 2007)..........................................................3, 20

24

*Dekker v. Vivint Solar, Inc.*,
    No. 19-cv-07918 WHA, 2020 WL 4732194 (N.D. Cal. Aug. 14, 2020).......3, 17

25

*Dilts v. Penske Logistics, LLC*,
26
    769 F.3d 637 (9th Cir. 2014) ..............................................................................24

27

*Elizalde v. J.P.Morgan Chase Nat'l Corp. Servs., Inc.*,
28
    No. 09-cv-5827 PSG, 2009 WL 10682092 (C.D. Cal. Dec. 22, 2009)........12, 13

*English v. Gen. Elec. Co.*,
  496 U.S. 72 (1990)...........................................................................................14

*Epic Sys. Corp. v. Lewis*,
  138 S. Ct. 1612 (2018)..............................................................................14, 16, 24

*ExxonMobil Oil Corp. v. Gasprom Inc.*,
  No. 08-cv-7259 PSG, 2010 WL 11512194 (C.D. Cal. Feb. 12, 2010) ..............11

*Gen. Conference Corp. of Seventh-Day Adventists v. Seventh-Day*
  *Adventist Congregational Church*,
  887 F.2d 228 (9th Cir. 1989) ...........................................................................10

*Kindred Nursing Centers Ltd. P'ship v. Clark*,
  137 S. Ct. 1421 (2017)................................................................................14, 15

*Lai v. Quality Loan Serv. Corp.*,
  No. 10-cv-2308 PSG, 2010 WL 3419179 (C.D. Cal. Aug. 26, 2010) .....2, 12, 13

*Lueck v. Nevada Judicial Ethics & Election Practices Comm'n*,
  106 F. App'x 552 (9th Cir. 2004) .....................................................................13

*McClenon v. Postmates Inc.*,
  No. 19-CV-06415, 2020 WL 4053472 (N.D. Ill. July 20, 2020) ........................1

*Medtronic, Inc. v. Lohr*,
  518 U.S. 470 (1996)..........................................................................................16

*Merit Healthcare Int'l, Inc. v. Merit Med. Sys., Inc.*,
  721 F. App'x 628 (9th Cir. 2018) ..........................................................2, 11, 12

*Milner v. Dep't of Navy*,
  562 U.S. 562 (2011)..........................................................................................21

*Mock v. City of Santa Ana*,
  No. 8:14-CV-00778 CAS, 2015 WL 2084608 (C.D. Cal. May 5, 2015)...........12

*Mortg. Elec. Registration Sys. v. Robinson*,
  45 F. Supp. 3d 1207 (C.D. Cal. 2014) .........................................................5, 10

*N.L.R.B. v. SW Gen., Inc.*,
  137 S. Ct. 929 (2017).......................................................................................23

*Nw. Airlines, Inc. v. U.S. Dep't of Transp.*,
  15 F.3d 1112 (D.C. Cir. 1994).......................................................................3, 20

*In re Quaker Oats Maple & Brown Sugar Instant Oatmeal Litig.*,
   No. 16-cv-1442 PSG, 2017 WL 4676585 (C.D. Cal. Oct. 10, 2017) ............... 14

*In re R2D2, LLC*,
   No. 13-cv-3799 PSG, 2014 WL 12589668 (C.D. Cal. Jan. 9, 2014) ................ 11

*Relman Colfax PLLC v. Fair Hous. Council of San Fernando Valley*,
   No. CV 19-8612 PSG (JCX), 2020 WL 5260475 (C.D. Cal. May 28,
   2020) .................................................................................................. 5, 9, 10

*Royal Palm Filmworks, Inc. v. Fifty-Six Hope Rd. Music, Ltd.*,
   No. 17-cv-2336 PSG, 2017 WL 4685550 (C.D. Cal. Aug. 17, 2017),
   *aff'd*, 747 F. App'x 624 (9th Cir. 2019) ...................................................... 11, 13

*Saheli v. White Mem'l Med. Ctr.*,
   21 Cal. App. 5th 308 (2018) ............................................................................. 21

*Sink v. Aden Enters., Inc.*,
   352 F.3d 1197 (9th Cir. 2003) ......................................................................... 19

*Soling v. McCain*,
   224 F. App'x 563 (9th Cir. 2007) ..................................................................... 13

*Sveen v. Melin*,
   138 S. Ct. 1815 (2018) ........................................................................... 4, 5, 25

*Tawfilis v. Allergan, Inc.*,
   No. 15-cv-307 JLS, 2016 WL 3919488 (C.D. Cal. May 31, 2016) .................. 10

*Varian Med. Sys., Inc. v. Delfino*,
   35 Cal. 4th 180 (2005) ..................................................................................... 18

*Volt Info. Scis., Inc. v. Bd. of Trustees of Leland Stanford Junior Univ.*,
   489 U.S. 468 (1989) ............................................................................................ 4

**Statutes**

9 U.S.C. § 2 ............................................................................................. 2, 14, 15

28 U.S.C. § 2201 .............................................................................................. 11

Cal. Civ. Proc. Code § 1281.2 ................................................................... 16, 18

Cal. Civ. Proc. Code § 1281.4 ......................................................................... 16

Cal. Civ. Proc. Code § 1281.97 ............................................................... 6, 19

California Senate Bill 707 ......................................................................... 1

**Other Authorities**

AAA Commercial Rule 1 ........................................................................... 8

AAA Commercial Rule 2 ........................................................................... 8

AAA Commercial Rule 8 ........................................................................... 8

AAA Employment Due Process Protocol ................................................ 15

AAA Employment/Workplace Fee Schedule ...................................... 8, 18

U.S. Const. Art. VI, cl. 2 ......................................................................... 13

# INTRODUCTION

In 2019, the California Legislature recognized a growing trend of companies "fail[ing] to pay the fees of an arbitration service provider in accordance with [their] obligations contained within an arbitration agreement."  California Senate Bill 707 ("SB 707") § 1(c).[1]  Because this failure prevents arbitration from occurring as envisioned by the parties' agreement, the Legislature found that the "strategic non-payment of fees and costs severely prejudices the ability of employees or consumers to vindicate their rights" and "hinders the efficient resolution of disputes."  *Id.* § 1(d), (c).  SB 707 therefore imposed various remedies that both codified existing law and imposed additional penalties on parties who breach the arbitration agreements they drafted.

For the better part of a year, Postmates has refused to pay the fees necessary to arbitrate with Defendants, relying on grounds that five federal judges have already rejected.  *Adams v. Postmates, Inc.*, 414 F. Supp. 3d 1246 (N.D. Cal. 2019)*, aff'd,* No. 19-17362, 2020 WL 5793745 (9th Cir. Sept. 29, 2020); *Adams v. Postmates, Inc.*, No. 19-3042 SBA, 2020 WL 1066980 (N.D. Cal. Mar. 5, 2020); *McClenon v. Postmates Inc.*, No. 19-CV-06415, 2020 WL 4053472 (N.D. Ill. July 20, 2020).  This "strategic non-payment of fees and costs," SB 707 § 1(d), has deprived Defendants of the streamlined, speedy, and efficient forum for dispute resolution to which Postmates agreed.  Immune to irony, Postmates now argues that because the Federal Arbitration Act ("FAA") "promise[s] quicker, more informal, and often cheaper resolutions for everyone involved," the FAA <u>preempts</u> California's efforts to curb Postmates's abusive delay tactics and force Postmates to arbitrate.  Postmates's Mot. for Judgment on the Pleadings ("Mot.") at 3, ECF No. 77 (quoting *Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1621 (2018)).  Postmates is wrong.

Postmates's motion fails at the threshold because Postmates cannot show that relief under the Declaratory Judgment Act ("DJA") is appropriate in this case.  Postmates's complaint does not even <u>allege</u> that 5,423 Defendants will ever pursue

---

[1] *Available at* https://kl.link/2T9zaY9.

1   remedies against it under SB 707, let alone establish that Postmates faces "a real and

2   immediate injury" at the hands of these Defendants, *Merit Healthcare Int'l, Inc. v. Merit*

3   *Med. Sys., Inc*., 721 F. App'x 628, 629 (9th Cir. 2018) (emphasis in original).  And while

4   the 4,933 remaining Defendants have sought relief against Postmates under SB 707, that

5   very fact eliminates the need for declaratory judgment from this Court.  *See Lai v.*

6   *Quality Loan Serv. Corp.,* No. 10-cv-2308 PSG, 2010 WL 3419179, at *3 (C.D. Cal.

7   Aug. 26, 2010) (declining declaratory relief where the question would be answered

8   without declaratory relief).  Once this Court decides the cross-motion to compel

9   arbitration filed by those 4,933 Defendants, there will be no reason to address the

10  broader, hypothetical applications of SB 707 that Postmates attempts to raise here.

11      In all events, Postmates cannot meet its burden to show that SB 707 is preempted,

12  for two independent reasons.

13      First, Postmates cannot show that SB 707 conflicts with the FAA's command that

14  arbitration contracts must be "valid, irrevocable, and enforceable."   9 U.S.C.  § 2.

15  Nothing in SB 707 makes Postmates's arbitration agreement invalid, revocable, or

16  unenforceable.  To the contrary, California law enforces the arbitration agreement to the

17  letter.  There is no conflict between SB 707 and the FAA.  The legal tests Postmates

18  invokes apply only where a state law invalidates an arbitration agreement.  They have

19  no applicability in this context.

20      Second, Postmates cannot even satisfy the tests applicable to laws that invalidate

21  arbitration agreements.  Postmates claims SB 707 conflicts with the objects and purposes

22  of the FAA.  But the FAA pursues the twin goals of "enforcement of private agreements

23  and encouragement of efficient and speedy dispute resolution."  *AT&T Mobility LLC v.*

24  *Concepcion*, 563 U.S. 333, 345 (2011).  And California has furthered those goals by

25  penalizing an abusive delay tactic in which Postmates continues to engage.  SB 707 does

26  not penalize arbitration agreements.   It penalizes parties who breach arbitration

27  agreements and undermine the goals of the FAA.  Indeed, another federal court has

28  already recognized that SB 707 "is not 'to the contrary' of th[e policies of the FAA].

1    Rather, in enacting the statute, it was the intent of the legislature to better enforce the

2    federal policy of fast and inexpensive dispute resolution." *Dekker v. Vivint Solar, Inc.*,

3    No. 19-cv-07918 WHA, 2020 WL 4732194, at *3 (N.D. Cal. Aug. 14, 2020).

4         Postmates's efforts to argue that SB 707 interferes with arbitration distort the plain

5    meaning of the statute and the policies of the FAA and ask the Court to adjudicate

6    counterfactuals not presented by this case.  For example, Postmates breathlessly warns

7    that SB 707 would impose sanctions on a drafting party that refuses to pay fees even if

8    no fees are required under the applicable arbitration agreement, or if no arbitration

9    agreement exists at all.  Mot. at 12–14.  But that bogeyman ignores the plain text of

10   SB 707 and common sense: a drafting party faces sanctions only if an arbitration

11   agreement "<u>requires</u>, either expressly or through application of state or federal law or

12   the rules of the arbitration provider, that the drafting party pay certain fees and costs."

13   § 1291.98(a) (emphasis added).  A stranger who has no arbitration agreement with

14   Postmates, or a courier who materially breaches her agreement such that Postmates is

15   not "require[d]" to pay any fees obviously cannot invoke remedies under SB 707.  And

16   in all events, Defendants have denied all allegations that they have breached their

17   agreements or lack an agreement with Postmates, and those denials control in this

18   procedural posture, where Postmates seeks judgment on the pleadings.

19        Postmates complains that SB 707 does not allow a drafting party to engage in

20   "efficient breach."  Mot. at 13.  But <u>the FAA itself</u> rejects the concept of efficient breach

21   by authorizing specific performance in lieu of consequential damages.  *See Chastain v.*

22   *Union Sec. Life Ins. Co*., 502 F. Supp. 2d 1072, 1075 (C.D. Cal. 2007) ("[A] motion to

23   compel arbitration is in essence a suit in equity seeking specific performance of an

24   arbitration agreement."); *Nw. Airlines, Inc. v. U.S. Dep't of Transp.,* 15 F.3d 1112, 1120

25   n. 5 (D.C. Cir. 1994) ("'Efficient breach' refers to the principle that a breaching party

26   has the option of paying damages rather than performing its contractual obligations").

27   The FAA would preempt a state law <u>allowing</u> efficient breach of arbitration agreements.

28   The FAA does not preempt SB 707's refusal to let Postmates off the hook.

DEFS.' OPP'N TO MOT. FOR JUDGMENT ON THE PLEADINGS
CASE NO. 2:20-CV-02783-PSG

1    Finally, Postmates complains that SB 707 would provide stronger remedies for
2    the breach of an arbitration agreement than general contract law.  But the FAA does not
3    preempt all state laws simply because they refer specifically to arbitration.  *Volt Info.*
4    *Scis., Inc. v. Bd. of Trustees of Leland Stanford Junior Univ.*, 489 U.S. 468, 477 (1989)
5    (holding that arbitration-specific state laws are preempted only to the extent they
6    "stand[] as an obstacle to the accomplishment and execution of the full purposes and
7    objectives of Congress").  Postmates never explains why extra-aggressive <u>enforcement</u>
8    of arbitration agreements conflicts with the pro-arbitration policies of the FAA.

9    To the extent Postmates contends SB 707 will chill the adoption of arbitration
10   agreements, it offers no actual support for that claim.  On its face, SB 707 does not
11   interfere with a fundamental attribute of arbitration.  If anything, paying fees on time—
12   rather than not paying—is itself a fundamental attribute of arbitration.  And while
13   Postmates's reliance on legislative history is irrelevant because the unambiguous
14   operation of SB 707 favors arbitration.  But even if examining legislative history were
15   necessary to assess the operation of SB 707, Postmates's descriptions of that history are
16   egregiously misleading.  The legislative history shows that the Legislature recognized
17   that the pro-arbitration policy of the FAA is here to stay, and enacted SB 707 to ensure
18   that drafting parties could not undermine that policy.  SB 707 is hostile only to parties
19   who breach arbitration agreements, not to arbitration itself.  And Postmates cannot point
20   to any provision of the law that penalizes prompt arbitration or parties who comply with
21   arbitration agreements.  Postmates has a burden to produce evidence that SB 707 would
22   <u>actually deter</u> parties from entering into arbitration contracts, and it has not even
23   attempted to meet that burden.

24   Postmates's last-gasp assertion that the Contracts Clause of the Constitution
25   prevents California from ensuring compliance with a contract is wholly meritless.
26   Modifying remedies for breach of contract has never constituted a "substantial
27   impairment" of a contract that would implicate the Contracts Clause, *Sveen v. Melin*,
28   138 S. Ct. 1815, 1817 (2018).  And even if adjusting contract remedies constituted a

1  substantial impairment of contracts (which it does not), SB 707 is an "appropriate" and

2  "reasonable" measure that advances "a significant and legitimate public purpose." *Id.*

3                           **RELEVANT FACTUAL BACKGROUND**

4          Postmates's opening brief states that, in reviewing its Rule 12(c) motion, the

5  Court must "'tak[e] all the allegations in the pleadings as true.'"  Mot. at 9 (quoting

6  *Nelson v. City of Irvine*, 143 F.3d 1196, 1200 (9th Cir. 1998)).  That is obviously

7  incorrect.  The Court cannot take "all the allegations in the pleadings" as true, because

8  the Complaint makes allegations that the Answer denies.  Rather, "all material

9  allegations of the <u>non-moving party</u> must be accepted as true and construed in the light

10 most favorable to that party."  *Relman Colfax PLLC v. Fair Hous. Council of San*

11 *Fernando Valley*, No. CV 19-8612 PSG (JCX), 2020 WL 5260475, at *2 (C.D. Cal. May

12 28, 2020) (emphasis added).  In addition, all "allegations of the moving party that have

13 been denied are assumed to be false."  *Mortg. Elec. Registration Sys. v. Robinson*, 45 F.

14 Supp. 3d 1207, 1209 (C.D. Cal. 2014).  While Postmates is eager to rely on its Complaint

15 and draw inferences in its favor, the <u>opposite</u> standard applies here.

16 **A.    The Legislature Passes SB 707 in Aid of Arbitration.**

17         In 2019, the California Legislature identified a troubling trend of companies that

18 imposed arbitration agreements on employees, yet refused to pay the fees necessary to

19 commence arbitration.  As a result of this trend, tens of thousands of employees had

20 faced extensive delay when they attempted to pursue arbitration.  Ex. 1 to Evangelis

21 Decl. at 8, ECF No. 78-2 ("For example, of the 12,500 demands for arbitration filed by

22 Uber drivers, the company has only paid its initial filing fee in 296 cases.  As a result,

23 only 47 arbitrators have been appointed to handle the Uber disputes; of those, Uber has

24 only paid the $1,500 retention fee in six cases.") (internal citations omitted).

25         As the Legislature acknowledged, "[o]ver the past twenty years, federal courts

26 have significantly expanded the validity of arbitration provisions."  *Id.* at 7 (citing

27 *Concepcion*, 562 U.S. 333).  However, defendants' strategic non-payment of fees had

28 frustrated the very goals of arbitration: speedy and efficient dispute resolution:

> In *Sink v. Aden Enterprises*, the Ninth Circuit affirmed the district court's finding that a party is in default of an arbitration agreement if it fails to pay required arbitration fees. The court stated in *Sink* that interpreting the FAA to allow a party refusing to cooperate with arbitration to indefinitely postpone litigation is "inconsistent with the structure and purpose of the FAA."

Ex. 7 to Evangelis Decl. at 5, ECF No. 78-8. The Legislature therefore passed SB 707 "to stop behavior that would undermine the intent of Congress." *Id.*

SB 707 provides that a party who drafts an arbitration agreement and then fails to pay arbitration fees when required is in material breach of that agreement:

> In an employment or consumer arbitration that requires, either expressly or through application of state or federal law or the rules of the arbitration administrator, the drafting party to pay certain fees and costs before the arbitration can proceed, if the fees or costs to initiate an arbitration proceeding are not paid within 30 days after the due date, the drafting party is in material breach of the arbitration agreement, is in default of the arbitration, and waives its rights to compel arbitration under Section 1281.2.

Cal. Code Civ. P. § 1281.97(a). The statute lets a non-breaching party choose between several options and potential sanctions:

> If the drafting party materially breaches the arbitration agreement and is in default under subdivision (a), the employee or consumer may do either of the following:
>
> (1) Withdraw the claim from arbitration and proceed in a court of appropriate jurisdiction.
>
> (2) Compel arbitration in which the drafting party shall pay reasonable attorney's fees and costs related to the arbitration.

*Id.* § 1281.97(b). If the non-breaching party proceeds in court, any statutes of limitation are tolled as of the date of the prior arbitration filing, and the non-breaching party may seek sanctions including attorneys' fees and expenses or, in the discretion of the court, evidentiary sanctions, a default judgment, or contempt. *Id.* § 1281.99.

SB 707 was not motivated by any animus toward arbitration and was not designed

to discourage companies from using arbitration agreements as a form of dispute resolution. *See* Answer ¶¶ 18, 66, 68 (denying allegations), ECF No. 66. Rather, the intent of SB 707 was to promote and enforce arbitration agreements: "SB 707 allows workers to pursue their claims <u>and deter companies from breaching their own arbitration clauses</u>." Ex. 5 to Evangelis Decl. at 1, ECF No. 78-6 (emphasis added); Ex. 1 to Evangelis Decl. at 8 ("The sanctions provided in this bill are intended to deter bad actors."); *Id.* ("In light of the extreme hardship that needlessly delaying arbitration may cause to plaintiffs, the material breach and sanction provisions of this bill would seem to be a strict yet reasonable method <u>to ensure the timely adjudication of employee and consumer claims that are subject to arbitration</u>.") (emphasis added).

Contrary to Postmates's allegations, SB 707 does not, in fact, have the effect of discouraging the drafting of arbitration agreements. Answer ¶ 113 (denying allegation). And Postmates's complaint does not allege that a single company has ever eliminated its use of arbitration agreements as a result of SB 707. *See generally id*. Indeed, not even Postmates has eliminated its use of arbitration agreements due to SB 707. *See id.* ¶ 33 ("[A]ll new couriers must accept Postmates' Fleet Agreement[, which] contains a conspicuous Mutual Arbitration Provision."). Nor does Postmates allege anywhere that it would ever eliminate its use of arbitration agreements if SB 707 is not preempted.

**B.   Postmates Requires Defendants to Agree to Arbitration.**

Postmates requires its couriers to sign the Fleet Agreement, which contains a Mutual Arbitration Provision ("MAP"), before couriers can begin working for Postmates. Answer ¶ 33. Each Defendant asserts she is a Postmates courier and has a right to arbitrate with Postmates. *Id.* ¶ 41. The MAP provides that Postmates and the courier "mutually agree to resolve any disputes between them exclusively through final and binding arbitration instead of filing a lawsuit in court." 2019 Fleet Agreement § 10A, Ex. 6 to Evangelis Decl., ECF No. 78-7.

If the parties dispute their obligation to commence arbitration under the MAP, or how that provision should be applied, that dispute itself must be submitted to an

7

arbitrator. *See* May 2019 Fleet Agreement § 10A.ii. The only exception to this broad delegation clause is that a court may decide whether the MAP's "Class Action Waiver and/or Representative Action Waiver is unenforceable, unconscionable, void, or voidable." *Id.* § 10B.iv. No party has contended that the Class- and Representative-Action Waivers are "unenforceable, unconscionable, void or voidable. *See generally* Answer. Accordingly, as the Ninth Circuit recently held, Postmates's arguments about whether couriers have properly filed individual arbitrations do not eliminate Postmates's obligation to proceed with arbitration under the MAP. *Adams v. Postmates, Inc.*, No. 19-17362, 2020 WL 5793745, at *1 (9th Cir. Sept. 29, 2020).

The MAP also provides that each Defendant's arbitration shall be governed by the AAA Commercial Arbitration Rules. May 2019 Fleet Agreement. §§ 10B.vi(1), 10B.viii. By designating the Commercial Arbitration Rules to govern disputes, Postmates and couriers are "deemed to have made th[o]se rules a part of their arbitration agreement" and thereby "authorize the AAA to administer the arbitration." Commercial Rules 1(a), 2, *available at* https://kl.link/2yspRMx. Once an individual arbitrator is appointed, "[t]he arbitrator shall interpret and apply the[] rules insofar as they relate to the arbitrator's powers and duties." Commercial Rule 8. But before an individual arbitrator has been appointed, the rules "shall be interpreted and applied by the AAA." *Id.*

The Commercial Rules specify that AAA's Employment Fee Schedule applies where, as here, workers bring claims asserting they were misclassified as independent contractors. Commercial Rule 1, n*. Under the fee schedule that applies when numerous claimants file similar claims against the same defendant, AAA caps the claimant's initial filing fee at $200 and imposes a $400 filing fee on companies responding to arbitration demands. Employment Fee Schedule at 3, *available at* https://kl.link/3cpkr2H. Once both parties satisfy the initial filing fee, AAA imposes an additional fee before the arbitrator selection process. *Id.* at 4. AAA caps the claimant's arbitrator selection fee at $100 and imposes a $1,750 fee on the company. *Id.*

1    Neither the MAP nor the AAA rules address in any way what judicial remedies

2    are available where a party refuses to pay the fees necessary to commence arbitration.

3    **C.    Postmates Refuses to Arbitrate with Defendants.**

4    Defendants filed their demands for arbitration with AAA and served them on

5    Postmates on February 15, 2020.  Answer at ¶ 74.  Defendants demands were properly

6    filed and did not violate the terms of the MAP or the AAA Rules in any way.  *See, e.g.,*

7    *id*. ¶¶ 4, 6, 9, 12, 13 (denying contrary allegations).  Each demand: (i) asserted that the

8    Defendant had an arbitration agreement with Postmates, (ii) identified the Defendant's

9    individual information, (iii) was on AAA's standard demand form, and (iv) provided the

10   basis for the Defendant's claims.  *Id*. ¶¶ 75–78.  AAA found that each Defendant had

11   satisfied her fee obligation and determined that Postmates was required to pay its share

12   of the arbitration filing fees by March 16, 2020.  Ex. A to Answer at 1, ECF No. 66-1.

13   In so doing, AAA informed Postmates that "these matters are subject to California Code

14   of Civil Procedure 1281.97 and 1281.98.  As such, payment must be received by April

15   15, 2020 or the AAA may close the parties' cases."  *Id*.  On April 20, AAA confirmed

16   that 100 Defendants had advanced Postmates's share of the AAA filing fees, and closed

17   the remaining Defendants' arbitrations due to Postmates's non-payment.  *Id*. at 15.

18   On May 22, 2020, more than 4,933 Defendants filed a motion to compel

19   arbitration against Postmates.  Pet. & Mot. to Compel, ECF Nos. 43 & 44.  That motion

20   requested that this Court apply SB 707 and compel arbitration in which Postmates would

21   be required to pay the associated attorney's fees and costs.  *Id*.  In opposition, Postmates

22   has raised the same arguments that it raised here: that SB 707 is preempted by the FAA

23   and violates the Contracts Clause.  Opp'n to Mot. to Compel, ECF No. 56.

24   **LEGAL STANDARD**

25   As noted, in considering a motion for judgment on the pleadings, "all material

26   allegations of the <u>non-moving party</u> must be accepted as true and construed in the light

27   most favorable to that party."  *Relman Colfax PLLC*, 2020 WL 5260475, at *2 (emphasis

28   added).  In addition, all "allegations of the moving party that have been denied are

9

assumed to be false." *Mortg. Elec. Registration Sys.*, 45 F. Supp. 3d at 1209.  The Court may only grant a Rule 12(c) motion if "'the moving party clearly establishes on the face of the pleadings that no material issue of fact remains to be resolved and that it is entitled to judgment as a matter of law.'" *Relman*, 2020 WL 5260475, at *2.  "A plaintiff is not entitled to judgment on the pleadings when the answer raises issues of fact that, if proved, would defeat recovery." *Gen. Conference Corp. of Seventh-Day Adventists v. Seventh-Day Adventist Congregational Church*, 887 F.2d 228, 230 (9th Cir. 1989).

Because the standard a plaintiff filing a Rule 12(c) motion must meet is so high, those motions are rarely filed and, when filed, are routinely denied. *See, e.g. Bhd. Mut. Ins. Co. v. Vinkov*, No. 19-cv-01821 CJC, 2020 WL 4873519, at *3 (C.D. Cal. July 7, 2020); *Tawfilis v. Allergan, Inc.*, No. 15-cv-307 JLS, 2016 WL 3919488, at *2 (C.D. Cal. May 31, 2016).  In fact, well-established Ninth Circuit precedent requires that Postmates Rule 12(c) motion be denied solely on the ground that Defendants have raised five affirmative defenses in their Answer.  *See* Answer at 58; *Seventh-Day*, 887 F.2d at 230 (overturning the district court's granting of a Rule 12(c) motion that was <u>unopposed</u> because the defendant had asserted affirmative defenses and issues of fact remained) (citing 5 C. Wright & A. Miller, Federal Practice and Procedure § 1368 (1969)).

Postmates has not come close to meeting its burden to show that it is entitled to relief, and its motion should be denied.

## ARGUMENT

## A.     Postmates Has Not Identified a Sufficient Basis for the Court to Exercise Jurisdiction Under the Declaratory Judgment Act.

Postmates invokes the DJA and asks this Court to opine that SB 707 conflicts with the policies of the FAA in a host of hypothetical situations not presented on this record. For example, Postmates asserts that imposing contempt sanctions or a default judgment under SB 707 would undermine the policies of the FAA, Mot. at 11, 12, 14-16, but no party here has sought, or threatened to seek, such sanctions, *see* Answer ¶¶ 104, 131; *see*

*also* Mot. at 22.  Postmates complains that couriers who breached the MAP or are not subject to the MAP could seek sanctions under SB 707, but the Answer denies that any such parties exist in this case.  *See, e.g.*, *id.* ¶¶ 3, 4, 6, 7, 9, 12, 13, 17 (contending Defendants have a right to arbitrate and denying contrary allegations).  The only current controversy regarding the impact of SB 707 will be fully resolved when this Court decides Cross-Petitioners' cross-motion to compel arbitration.  A declaration under the DJA is accordingly not justified or appropriate.

The DJA provides that "[i]n a case of actual controversy within its jurisdiction . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such a declaration[.]"  28 U.S.C. § 2201(a).  An "actual controversy" under the DJA "must be based on a <u>real</u> and <u>immediate</u> injury or threat of future injury that is <u>caused by the defendants</u>."  *Merit Healthcare Int'l, Inc.*, 721 F. App'x at 629 (emphases in original).  "Such a dispute must be 'definite and concrete, touching the legal relations of parties having adverse legal interests,' be 'real and substantial,' and 'admi[t] of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts.'" *Royal Palm Filmworks, Inc. v. Fifty-Six Hope Rd. Music, Ltd*., No. 17-cv-2336 PSG, 2017 WL 4685550, at *3 (C.D. Cal. Aug. 17, 2017), *aff'd*, 747 F. App'x 624 (9th Cir. 2019) (quoting *MedImmune, Inc. v. Genentech, Inc*., 549 U.S. 118, 127 (2007)).

Moreover, as this Court has emphasized, even where an actual controversy exists, a district court has wide discretion to decline declaratory relief.  *See In re R2D2, LLC*, No. 13-cv-3799 PSG, 2014 WL 12589668, at *6 (C.D. Cal. Jan. 9, 2014) (declining to decide DJA claim and noting "'[w]e have repeatedly characterized the Declaratory Judgment Act as an enabling Act, which confers discretion on the courts rather than an absolute right upon the litigant.'" (quoting *Wilton v. Seven Falls Co*., 515 U.S. 277, 286-87 (1995)); *ExxonMobil Oil Corp. v. Gasprom Inc.*, No. 08-cv-7259 PSG, 2010 WL 11512194, at *6 (C.D. Cal. Feb. 12, 2010)*, aff'd,* 462 F. App'x 737 (9th Cir. 2011) (declining to resolve DJA claim); *Lai*, 2010 WL 3419179, at *3 (same).  In particular,

1    courts decline to decide requests for relief under the DJA where "there exist alternative
2    remedies that are convenient for the parties," *Aeromech Eng'g Corp. v. Aeromech Inc.*,
3    No. CV 09-7009 PSG,  2009 WL 10675940, at *1 (C.D. Cal. Dec. 21, 2009), or where
4    "a declaration of the rights and duties of the parties" would "be wholly redundant to the
5    Court's findings on [the parties'] substantive claims," *Elizalde v. J.P.Morgan Chase
6    Nat'l Corp. Servs., Inc.*, No. 09-cv-5827 PSG, 2009 WL 10682092, at *6 (C.D. Cal.
7    Dec. 22, 2009).

8        As to the 5,423 Defendants in this action who have not cross-moved to compel
9    arbitration, Postmates cannot show any "actual controversy" sufficient to obtain a
10   judgment under the DJA.  Postmates complaint does not even attempt to argue that these
11   Defendants <u>will</u> injure Postmates or threaten Postmates in any "real and immediate"
12   way.  *Merit Healthcare Int'l, Inc.*, 721 F. App'x at 629.  Rather, the most that Postmates
13   has alleged is that these Defendants "may [compel arbitration] at any time, and have
14   expressly declined to waive their right to move to compel arbitration."  Answer ¶ 104.
15   The assertion that Defendants <u>might</u> seek remedies against Postmates at some undefined
16   time between tomorrow and never is not an allegation of a "real and immediate" threat.
17   *Merit Healthcare Int'l, Inc.*, 721 F. App'x at 629; *see also Mock v. City of Santa Ana*,
18   No. 8:14-CV-00778 CAS, 2015 WL 2084608, at *1 (C.D. Cal. May 5, 2015) ("[F]actual
19   allegations must be enough to raise a right to relief above the speculative level.").  And
20   the mere fact that Defendants did not affirmatively "waive their right" to seek remedies
21   in the future is far from establishing an immediate injury.  *See Merit Healthcare Int'l*,
22   721 F. App'x at 629–30 (finding no actual controversy where opposing party refused to
23   consent to plaintiff's use of potentially disputed trademarks because the opposing party
24   "had no obligation to agree to a coexistence agreement or even to analyze its position
25   with respect to [plaintiff's] use of the marks").  Postmates's request for a declaration is
26   particularly speculative given that Defendants, if they ever took action, could choose
27   among different alternative remedies under SB 707.  Any dispute between Postmates
28   and the 5,423 Defendants is accordingly not "definite and concrete" and does not

"admi[t] of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts." *Royal Palm Filmworks, Inc*, 2017 WL 4685550, at *3 (internal quotation marks omitted).[2]

The 4,933 remaining Defendants who have sought relief against Postmates under SB 707 through a cross-motion to compel (the Cross-Petitioners) agree that they have a concrete and actual controversy with Postmates.  However, the Cross-Petitioners' motion eliminates any reason for this Court to grant relief under the DJA.  *See Lai,* 2010 WL 3419179, at *3 (exercising discretion to decline a request for declaratory relief where question presented would be answered anyway without declaratory relief). *Elizalde*, 2009 WL 10682092, at *6 (same).  And the breadth of the advisory opinion sought by Postmates in this motion further counsels against relief under the DJA.[3]

## B.    SB 707 Does Not Offend the FAA's Requirement That Arbitration Contracts Remain Valid, Irrevocable, and Enforceable.

Federal preemption follows from the Supremacy Clause, which provides that "the Judges in every State shall be bound" by federal law, "Laws of any State to the Contrary notwithstanding."  U.S. Const. Art. VI, cl. 2.  "The Supreme Court has identified 'two cornerstones' of its preemption jurisprudence: first, 'the purpose of Congress is the ultimate touchstone in every pre-emption case,' and second, '[i]n all pre-emption cases, and particularly in those in which Congress has legislated in a field which the States

---

[2] For similar reasons, Postmates's complaint does not establish Article III standing to seek a declaration against the 5,423 Defendants who have not filed a motion to compel arbitration.  *See Soling v. McCain*, 224 F. App'x 563, 564 (9th Cir. 2007) (affirming dismissal of claims where "allegations of harm [we]re merely hypothetical"); *Lueck v. Nevada Judicial Ethics & Election Practices Comm'n*, 106 F. App'x 552, 554 (9th Cir. 2004) (before a court opines on the constitutionality of a state law, "[s]uch law must be brought into actual or threatened operation upon rights properly falling under judicial cognizance").

[3] Postmates's complaint identifies no independent ground for jurisdiction and no independent cause of action other than under the DJA.  The complaint's requests for injunctive relief therefore fail as well.

have traditionally occupied, we start with the assumption that the historic police powers of the States were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress.'" *In re Quaker Oats Maple & Brown Sugar Instant Oatmeal Litig.*, No. 16-cv-1442 PSG, 2017 WL 4676585, at *4 (C.D. Cal. Oct. 10, 2017) (quoting *Wyeth v. Levine*, 555 U.S. 555, 565 (2009)). "The latter cornerstone mandates that courts give an express preemption provision a 'narrow reading,' and, when there is a 'plausible alternative reading,' that courts 'accept the reading that disfavors pre-emption.'" *Quaker*, 2017 WL 4676585, at *4 (citations omitted). "Pre-emption fundamentally is a question of congressional intent, and when Congress has made its intent known through explicit statutory language, the courts' task is an easy one." *English v. Gen. Elec. Co.*, 496 U.S. 72, 78–79 (1990). That is the case here.

As the Supreme Court has instructed, the preemption inquiry "begin[s] with the Arbitration Act and the question of its saving clause." *Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1621 (2018). The source of FAA preemption is the statute's command that: A written provision . . . to settle by arbitration a controversy . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract. 9 U.S.C. § 2. A state law that <u>does not</u> render an arbitration clause invalid, revocable, or unenforceable, does not conflict with the command of Section 2. A state law that <u>does</u> render an arbitration clause invalid, revocable, or unenforceable must fit within the saving clause to survive. That is, a law that invalidates an arbitration agreement can avoid conflicting with the FAA only if it is a "ground[] as exist[s] at law or in equity for the revocation of any contract." *Id.* Critically, both of Postmates's legal tests derive from the saving clause: its "unequal treatment" theory, *see Kindred Nursing Centers Ltd. P'ship v. Clark*, 137 S. Ct. 1421, 1426 (2017) (describing the saving clause as "an equal-treatment principle: A court may invalidate an arbitration agreement based [only] on 'generally applicable contract defenses'"), and its "obstacles" theory, *see Concepcion*, 563 U.S. at 343 ("Although § 2's saving clause preserves generally applicable contract defenses, nothing in it suggests an intent to preserve state-

law rules that stand as an obstacle to the accomplishment of the FAA's objectives.").[4]

Postmates's motion leaps to apply the "unequal treatment" and "obstacles" tests that are derived from the saving clause, but ignores a fatal problem: because SB 707 respects Postmates's arbitration clause as "valid, irrevocable, and enforceable," it poses no conflict with Section 2 regardless of whether it satisfies the saving clause as a "ground[] as exist[s] at law or equity for the revocation of any contract."

A simple recitation of the facts shows why.  Postmates and each Defendant entered into the MAP.  That contract sets out who must pay fees to AAA.  Defendants filed arbitration demands and paid all necessary fees on their part, but Postmates has refused to pay its fees, so the arbitrations cannot proceed.  SB 707 creates a remedy for Postmates's intransigence that is perfectly consistent with the parties' arbitration agreement.  Nothing in the MAP says Postmates may refuse to pay at its option, or that certain judicial remedies for Postmates's refusal are incompatible with the contract.  To the contrary, the MAP incorporates AAA Rules, which themselves require that couriers have access to all available remedies.  *See* Employment Due Process Protocol at 4, *available at* https://kl.link/34nLEjP.  And the AAA itself noted that SB 707 applied, thereby recognizing that parties arbitrating under the AAA rules retain the right to all available judicial remedies.  Ex A to Answer at 1.  There is simply no conflict between SB 707 and the MAP or AAA Rules.[5]

---

[4] Similarly, every FAA preemption case Postmates cites involves this second inquiry.  *See, e.g., Kindred Nursing*, 137 S. Ct. at 1424–25 (holding that FAA preempted Kentucky rule that invalidated arbitration provisions signed through power of attorney); *Concepcion*, 563 U.S. at 343 (holding that FAA preempted California rule invalidating arbitration provisions with class waivers); *Chamber of Commerce of the U.S. v. Becerra*, 438 F. Supp. 3d 1078, 1087-1088 (E.D. Cal. Feb. 7, 2020), *appeal docketed*, No. 20-15291 (9th Cir. February 24, 2020)(invalidating a law that imposed criminal sanctions on employers who require employees to arbitrate claims brought under the California Labor Code).

[5] In fact, even if the MAP did purport to determine the judicial remedies for a breach of the MAP, that still would not help Postmates's preemption argument because such a term, even if placed in an arbitration provision, would fall outside the scope of the FAA.  The FAA protects only a "written provision . . . to settle by arbitration a controversy," 9 U.S.C. § 2.  The Supreme Court has explained that "Congress require[d] courts to respect

It is not surprising that state law can provide targeted remedies <u>in aid</u> of arbitration clauses without running afoul of the FAA.  Many state laws codify remedies in aid of arbitration, which federal courts uphold.  *See, e.g.*, *Borden, Inc. v. Meiji Milk Prods. Co.*, 919 F.2d 822, 826 (2d Cir. 1990) ("[F]ar from trying to bypass arbitration, Borden sought to have the court compel arbitration.  New York law specifically provides for provisional remedies in connection with an arbitrable controversy, and the equitable powers of federal courts include the authority to grant it.").  For example, numerous states provide for <u>specific performance</u> of arbitration agreements, which itself could be said to "single out" arbitration clauses, since damages are the default remedy for breach of contract.  *See, e.g.*, Cal. Civ. Proc. Code § 1281.2.  The same is true of the California law providing for a stay of litigation pending arbitration, which has no analog for other contractual breaches.  Cal. Civ. Proc. Code § 1281.4.  The FAA does not preempt state laws that make arbitration more effective.  These laws are <u>pro</u>-arbitration, and federal preemption doctrine routinely allows <u>additional</u> state remedies for violations even while blocking plenary regulation.  *See, e.g.*, *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 495 (1996) ("The presence of a [state law] remedy does not amount to the additional or different 'requirement' that is [preempted] under the statute; rather, it merely provides <u>another reason for manufacturers to comply</u> with identical existing 'requirements' under federal law." (emphasis added)).

## C.   SB 707 Is Not Hostile to Arbitration.

Even if SB 707 were subject to the legal standards Postmates invokes, it would still not be preempted because it <u>furthers</u> rather than undermines the policies of the FAA. Postmates's two preemption arguments blur together, *compare* Mot. at 11 *with id.* at 15

---

and enforce agreements to arbitrate . . . [and] the parties' chosen arbitration procedures . . . 'including terms that specify with whom the parties choose to arbitrate their disputes and the rules under which that arbitration will be conducted.'" *Epic Sys. Corp.*, 138 S. Ct. at 1621 ( (first citing 9 U.S.C. §§ 3, 4, then quoting *American Express Co. v. Italian Colors Restaurant*, 570 U.S. 228, 233 (2013)).  Even if a provision purporting to govern the judicial remedies available for non-compliance existed in Postmates's contract—and it does not—any such clause is not itself a provision to arbitrate or set arbitration procedures.  Therefore, the FAA does not cover it, and SB 707 would not be preempted.

(both quoting *Kindred*, 137 S. Ct. at 1426), but it suffices to respond that SB 707 neither disfavors arbitration on its face nor erects subtler obstacles to the pro-arbitration policies embodied in the FAA.

The Supreme Court has always emphasized "two goals of the Arbitration Act— enforcement of private agreements and encouragement of efficient and speedy dispute resolution." *Concepcion*, 563 U.S. at 345. These goals are linked: "The point of affording parties discretion in designing arbitration processes is to allow for efficient, streamlined procedures tailored to the type of dispute. . . . And the informality of arbitral proceedings . . . reduc[es] the cost and increase[es] the speed of dispute resolution." *Id.* at 344–45. Thus, the Court has held that states may not require class arbitration, as class arbitration would "destroy the prospect of speedy resolution that arbitration in general and bilateral arbitration in particular was meant to secure." *Italian Colors*, 570 U.S. at 239. Arbitration is supposed to be an In-N-Out drive-through, not the DMV.

As explained in Defendants' answer, SB 707 was intentionally tailored to protect the arbitral process and <u>further</u> the policies of the FAA by cracking down on bad actors who tactically delay arbitrations by refusing to pay the fees necessary to move forward. SB 707 is accordingly "not 'to the contrary' of th[e policies of the FAA]. Rather, in enacting [SB 707], it was the intent of the legislature to better enforce the federal policy of fast and inexpensive dispute resolution." *Dekker*, 2020 WL 4732194, at *3. The FAA does not preempt state laws such as SB 707 that crack down on parties' attempts to stall arbitration by disregarding their contractual commitments. Postmates's preemption arguments turn the policy of the FAA on its head by complaining that California has prevented Defendants from ignoring its own private agreements in order to force them to wait months or years longer to resolve their disputes.

**1.    SB 707 Does not Disfavor Arbitration on Its Face.**

Postmates's overarching argument is that SB 707's provisions work together "to discourage parties from entering into arbitration agreements," Mot. at 12, but its argument relies on pervasive distortions of the statute.

First, Postmates objects that the law is "lopsided" because it punishes "only drafters of agreements." Mot at 11. This is wrong because there is no symmetrical abuse of arbitration agreements that California permits. When an employee files a demand, AAA only invoices the employer <u>after</u> the employee has paid applicable filing fees. *See* Ex. A to Answer at 1 ("Claimants have met their filing fee requirements for the 7,620 Claimants subject to the 2019 Fleet Agreement. Accordingly, we request that the company pay its share of the fees in the amounts of $3,048,000.00."); *see also* AAA Employment Workplace Fee Schedule at 1 (the employer must pay the "balance" of the fees). And when the employer brings an arbitration against an employee, it must pay all fees. AAA Employment Workplace Fee Schedule at 1, 4. Accordingly, there is simply no scenario in which a courier could delay an arbitration for tactical advantage by refusing to pay fees. That the Legislature did not address a nonexistent scenario says nothing about preemption.[6] And in any event, no principle of the FAA requires that California address every theoretical way any party could undermine arbitration before it addresses the most salient threat to arbitration. California saw a growing trend of defendants undermining arbitration and responded to protect the integrity of the arbitral process. The fact that the appropriate remedy fell more heavily on corporate defendants than on plaintiffs is of no consequence. The FAA is pro-arbitration, not pro-corporation.

Second, Postmates argues that SB 707 "overrides the parties' agreement" on "material breach" and "nonpayment of arbitration fees." Mot. at 12. Any such dispute

---

[6] Moreover, when it comes to the typical scenario in which plaintiffs refuse to comply with arbitration agreements by filing a class action in court, California <u>already</u> has in place statutory mechanisms to remedy that non-compliance. *See* Cal. Civ. Proc. Code § 1281.2 (detailing procedures for motions to compel arbitration). In fact, California procedure is <u>more favorable</u> to a party seeking to compel arbitration than federal procedure. *Compare Britton v. Co-op Banking Grp.*, 916 F.2d 1405, 1412 (9th Cir. 1990) (a party who appeals the denial of its motion to compel arbitration is not entitled to an automatic stay of litigation while it pursues its right to arbitrate on appeal) *with Varian Med. Sys., Inc. v. Delfino*, 35 Cal. 4th 180, 190 (2005) ("[A]n appeal from the denial of a motion to compel arbitration automatically stays all further trial court proceedings on the merits."). Postmates presumably does not believe that this procedure—which favors arbitration in a manner that typically benefits <u>defendants</u>—is preempted by the FAA.

is not ripe, since SB 707 does not override the MAP here.  Nothing in Postmates's MAP addresses the judicial remedies for a breach of the MAP or nonpayment of fees.  *See supra* at 15–16.  But even if it did, the Ninth Circuit has already held that "failure to pay required costs of arbitration [i]s a material breach under the FAA that allows the counterparty to elect to proceed in court or compel specific performance.  *See Sink v. Aden Enters., Inc.*, 352 F.3d 1197, 1201 (9th Cir. 2003) ("Aden had a fair chance to proceed with arbitration, but Aden scuttled that prospect by its non-payment of costs").[7]  SB 707 does not undermine the FAA by adopting the FAA's definition of material breach.

Third, in its zeal to show the punitive nature of SB 707, Postmates implausibly exaggerates what SB 707 does.  According to Postmates, "if the non-drafting party breaches a fee payment . . . obligation" then "the drafting party must still pay the fees or else face sanctions."  Mot. at 12.  Similarly, Postmates claims that SB 707 "permits a breaching non-drafting party to enforce the agreement if the drafting party later refuses to pay arbitration fees."  *Id*. at 13.  And Postmates even goes so far as to claim that SB 707 "allow[s] [an] individual to enforce [a] non-existent agreement and obtain penalties based on Postmates's nonpayment of fees."  *Id*. at 14.  Each of these claims is nonsense.  Remedies are only triggered under SB 707 where an arbitration agreement "requires . . . the drafting party to pay certain fees and costs before the arbitration can proceed" and the drafting party is more than 30 days overdue.  Cal. Civ. Proc. Code § 1281.97(a).  Necessarily, then, a stranger who has no arbitration agreement, or a courier who materially breaches her agreement such that Postmates is not "require[d]" to pay any fees, cannot invoke remedies under SB 707.  And in all events, Defendants have denied all allegations that they have breached their agreements or lack an agreement with

---

[7] Any dispute over the discovery, striking, default, and contempt sanctions are also not ripe, since no party has requested such sanctions.  Even if such sanctions were implicated here, empowering courts to penalize parties that delay arbitration is consistent with the FAA.

1  Postmates, and those denials control in this procedural posture.[8]

2      Fourth, Postmates complains that SB 707 does not allow "efficient breach." Mot.

3  at 13.   But the FAA itself rejects the concept of efficient breach of arbitration

4  agreements.  Section 4 of the FAA authorizes a non-breaching party to require specific

5  performance through a motion to compel.  *See Chastain*, 502 F. Supp. 2d at 1075 ("A

6  petition or motion to compel arbitration is in essence a suit in equity seeking specific

7  performance of an arbitration agreement.").  And allowing specific performance reflects

8  a policy that parties are not permitted to engage in "efficient breach."  *Nw. Airlines,* 15

9  F.3d at 1120 n. 5 (explaining that "'[e]fficient breach' refers to the principle that a

10  breaching party has the option of paying damages rather than performing its contractual

11  obligations").  A state law allowing efficient breach of arbitration agreements would be

12  preempted by the FAA; SB 707's refusal to let Postmates evade its obligations is not.

13      Finally, Postmates asserts SB 707 undermines arbitration because it "proclaims

14  that a material breach occurs" by law, rather than as a factual question. Mot. at 13.  That

15  is backwards.  Alleviating evidentiary burdens to show a material breach could only aid

16  arbitration by speeding it up.  And motivating parties who have no right to "efficient

17  breach" to scrupulously comply with their arbitration agreements favors arbitration.  In

18  any case, Postmates cannot allege that its nonpayment in this case was immaterial.

19      **2.    SB 707 Does not Erect Obstacles to Arbitration.**

20      Postmates's argument that SB 707 "Interferes with the Fundamental Attributes of

21  Arbitration" is preposterous for the simple reason that paying fees on time—not failing

22  _____

23      [8] Postmates's opposition to Cross-Petitioners' motion to compel arbitration confirms
that Postmates does not actually believe these arguments.  After all, Postmates has raised
24  the very arguments it claims SB 707 precludes it from making: that the Court should not
grant Cross-Petitioners' motion because all Cross-Petitioners have filed their demands
25  in a contractually forbidden manner, and at least certain Cross-Petitioners have no right
to arbitrate at all.  Opp'n to Mot. to Compel at 8–9, 14–19.  If Postmates's absurd
26  interpretation of SB 707 is correct and SB 707 requires a court to grant the relief without
regard to whether a defendant was actually required to pay arbitration fees, then the only
27  questions before this Court are whether SB 707 survives preemption and is
constitutional.  Upon a finding that SB 707 is valid, this Court would have no choice but
28  to grant the February Cross-Petitioners' motion and award remedies under SB 707.

1    to pay them—has always been a fundamental attribute of arbitration.  If California
2    required a one-year waiting period before arbitration fees could be paid, that would be
3    an obvious interference with the arbitral system.  It is equally obvious that requiring
4    prompt payment is pro-arbitration, unless, like Postmates, one simply views arbitration
5    as a cynical device to avoid liability.  The FAA does not view arbitration that way.

6            Perhaps recognizing that the text, operation, and effect of SB 707 do nothing to
7    impede arbitration, Postmates relies heavily on the legislative history contained in the
8    Assembly Committee Report.  That reliance is misplaced because the operation of SB
9    707 is clearly compatible with the FAA.  As the Supreme Court has explained, the
10   "Legislative history, for those who take it into account, is meant to clear up ambiguity,
11   not create it."  *Milner v. Dep't of Navy*, 562 U.S. 562, 574 (2011).  Following this
12   fundamental point, the intent of legislators is relevant only to confirm in ambiguous
13   cases that a statute's operation conflicts with a federal statute; intent alone cannot create
14   a federal conflict where the actual operation of a state law creates none.  *See* Mot. at 15
15   (conceding that courts "'look to the logical <u>effect</u> that a particular scheme has' when
16   determining whether it is preempted by federal law") (quoting *Schwann v. FedEx
17   Ground Package Sys., Inc.*, 813 F.3d 429, 437 (1st Cir. 2016) (emphasis added)).[9]

18          But in all events, Postmates's discussion of SB 707's legislative history relies on
19   egregious distortions.  The Assembly Committee Report noted that arbitration has been
20   "a controversial form of alternative dispute resolution."  Ex. 1 to Evangelis Decl. at 1.
21   But it also recognized repeatedly that the Supreme Court has spoken, and arbitration is

---

23   [9] Both cases cited by Postmates for the relevance of legislative history invoke
24   legislative history only after concluding that <u>the operation</u> of the law in question
     conflicted with federal law.  *See Saheli v. White Mem'l Med. Ctr.*, 21 Cal. App. 5th 308,
25   324 (2018) (referencing legislative history only after concluding that a law imposing
     "limitations on the enforcement of arbitration agreements" absent heightened formation
26   requirements interfered with arbitration agreements); *Chamber of Com.*, 438 F. Supp.
     3d 1097 (referencing legislative history in connection with concluding that a law
27   criminalizing the formation of arbitration agreements by "its operation, . . . singles out"
     and disfavors arbitration agreements).  Postmates has not cited and cannot cite <u>any case</u>
28   in which a law that does not interfere with arbitration agreements was held preempted
     simply because the legislators who enacted it did not like arbitration.

1  here to stay.  *See id.* ("[T]he United States Supreme Court has liberally interpreted the

2  Federal Arbitration Act to preempt state laws regarding arbitration."); *id.* at 6 ("Over the

3  past twenty years, federal courts have significantly expanded the validity of arbitration

4  provisions.") (citing *Concepcion*, 562 U.S. 333).   Recognizing the federal policy

5  favoring arbitration, the Legislature drafted SB 707 to ensure that drafting parties—who

6  routinely benefit from the policy—respect that policy even when it is not convenient to

7  do so.  *See id.* at 8 ("The sanctions provided in this bill are intended to deter bad actors.");

8  *id.* ("In light of the extreme hardship that needlessly delaying arbitration may cause to

9  plaintiffs, the material breach and sanction provisions of this bill would seem to be a

10  strict yet reasonable method <u>to ensure the timely adjudication of employee and consumer</u>

11  <u>claims that are subject to arbitration</u>.") (emphasis added).

12       Postmates's attempts to shade the legislative history are transparent.  For example,

13  Postmates claims that "the California Legislature" "inten[ded] to force businesses to

14  'reconsider their liberal use of binding arbitration provisions in contracts.'"  Mot. at 1

15  (quoting Ex. 1 to Evangelis Decl. at 12).  But the quoted Assembly Committee Report

16  actually stated that parties who "truly have no ability to pay for arbitration" should

17  "reconsider their liberal use of binding arbitration provisions in contracts, or at a

18  minimum, consider drafting these agreement[s] in a manner that provides all parties

19  increased access to the court system in the event circumstances arise that warrant

20  adjudicating disputes in court."  Ex. 1 to Evangelis Decl. at 12.  That does not reflect

21  hostility to arbitration, but simply points out the obvious: if a company cannot afford

22  arbitration, it should not require arbitration, or at least should create an option to move

23  to court when it cannot pay for the alternative.  Like the rest of SB 707, this at most

24  reflects hostility to parties who undermine arbitration by failing to pay for it.

25       Postmates claims that "the California Legislature" said arbitration "lacks even a

26  'modicum of fairness.'"  Mot. at 17.  In fact, the Assembly Committee Report says that

27  "courts have sought to add some modicum of fairness to the process by holding . . . the

28  agreements cannot require the employee or consumer to 'pay either unreasonable costs

or any arbitrators' fees.'" Ex. 1 to Evangelis Decl. at 7–8 (quoting *Cole v. Burns Int'l Sec'y Servs.*, 105 F.3d 1465, 1482 (D.C. Cir. 1997)). This statement accurately describes the legal standards adopted by courts and that shaped the MAP, which itself does not require couriers to pay unreasonable costs or fees.[10]

After presenting its misleading decoupage of legislative history, Postmates asserts that "[t]here can be no question that the Legislature enacted SB 707 to limit the use of the arbitral process," Mot. at 18, without even addressing the <u>actual</u> purpose of SB 707, which was to prevent the precise abuses Postmates has engaged in:

> In light of the extreme hardship that needlessly delaying arbitration may cause to plaintiffs, the material breach and sanction provisions of this bill would seem to be a strict yet reasonable method <u>to ensure the timely adjudication of employee and consumer claims that are subject to arbitration</u>."

Ex. 1 to Evangelis Decl. at 11 (emphasis added). SB 707 targets defendants' refusal to arbitrate, not the speedy resolution of disputes.

Postmates's statutory arguments fair no better. Postmates objects that SB 707 overrides the parties' agreements, "including the AAA's rules 'regarding the payment of arbitration fees . . ., as well [as] the available remedies for nonpayment," Mot. at 18, but ignores that the MAP and AAA Rules speak only to what happens when the parties proceed with arbitration as required by their agreement; they say nothing about what judicial remedies apply when a party breaches that agreement. *See supra* at 15–16. Postmates also argues that "a non-drafting party could invoke SB 707 to pursue forbidden class arbitration." Mot. at 19. This is not ripe, since the couriers have done no such thing. *See, e.g., id.* ¶¶ 4, 6, 9, 12, 13 (denying allegations). Further, SB 707 says nothing at all about permitting class arbitration and applies only if an agreement

---

[10] Postmates also cites press releases from a single legislative sponsor, but such materials clearly do not reflect the intent of the entire Legislature. *N.L.R.B. v. SW Gen., Inc.*, 137 S. Ct. 929, 943 (2017) ("[S]tatements by individual legislators rank among the least illuminating forms of legislative history."). A validly enacted state law cannot be preempted based on the press release of a single legislator.

1    "requires . . . the drafting party to pay certain fees."

2         Postmates claims that "SB 707 will, in direct contravention of the FAA's pro-

3    arbitration policy, have a deterrent effect on [companies'] use of arbitration

4    agreements," but provides no evidence to support this claim at all.  Mot. at 19 (citation

5    omitted).  *Chamber of Commerce v. Becerra* is off the mark since it involved "civil or

6    criminal penalties" for requiring employees to sign "agreements to arbitrate instead of

7    litigate in court."  438 F. Supp. 3d at 1097.  And the plaintiffs in *Chamber of Commerce*

8    provided no fewer than 7 declarations as actual evidence that businesses would

9    (unsurprisingly) stop using arbitration agreements if doing so was a crime.  *Id.* at 1094–

10   95.  Criminalizing the signing of arbitration agreements obviously deters arbitration in

11   a way that adjusting remedies for breaching such agreements does not.  Postmates

12   needed to provide evidence that companies are in fact deterred from arbitrating.  *See*

13   *Dilts v. Penske Logistics, LLC*, 769 F.3d 637, 649 (9th Cir. 2014) ("Defendants, who

14   bear the burden of proof in establishing the affirmative defense of preemption, submitted

15   no evidence to show that the break laws in fact would decrease the availability of routes

16   . . . , or would meaningfully decrease the availability of routes to motor carriers in

17   California.").  Postmates has not included any such evidence in its complaint or its

18   response to Cross-Petitioners' motion to compel.  Indeed, the only evidence on this

19   issue—Postmates's continued use of arbitration in its Fleet Agreements—suggests that

20   companies are not deterred.  Answer ¶ 33.

21        SB 707 does no more than vindicate "the virtues Congress originally saw in

22   arbitration, its speed and simplicity and inexpensiveness."  *Epic Sys. Corp.*, 138 S. Ct.

23   at 1623.  It is not preempted.

24   **D.   SB 707 Does not Violate the Contracts Clause.**

25        SB 707 imposes remedies for the breach of an arbitration agreement; it does not

26   alter the agreement itself.  For nearly 200 years, Supreme Court precedent has held that

27   a law merely adjusting remedies for a breach of contract does not violate the Contracts

28   Clause: "If the laws of the state passed afterwards had done nothing more than change

24

the remedy upon contracts of this description, they would be liable to no constitutional objection. . . . Whatever belongs merely to the remedy may be altered according to the will of the state, provided the alteration does not impair the obligation of the contract." *Bronson v. Kinzie*, 42 U.S. 311, 315–16 (1843).  Just two Terms ago, the Supreme Court reaffirmed the meaning of the Contracts Clause, holding that a state law is constitutional unless it works a "substantial impairment of a contractual relationship" and, even if that threshold is met, the law is not drawn in an "appropriate and reasonable way to advance a significant and legitimate public purpose."  *Sveen*, 138 S. Ct. at 1817, 1821–22 (citations and internal quotation marks omitted).

Applying that framework, there is no basis for Postmates to argue that SB 707 violates the Contracts Clause.  As described above, SB 707 merely imposes additional remedies that are targeted to enforce compliance with arbitration agreements.  That does not constitute a "substantial impairment" of contracts under *Sveen*, which clearly allows statutes to create remedies for breach of contract. 138 S. Ct. at 1822 (rejecting a Contracts Clause argument because, in part, the law "support[ed], rather than impair[ed], the contractual scheme" at issue).  And, in all events, a remedial scheme that sanctions companies for violating arbitration agreements is an "appropriate and reasonable way" to advance the State of California's "significant and legitimate" interest in ensuring that companies do not violate their arbitration agreements with impunity.

## CONCLUSION

For the foregoing reasons, Postmates's motion for judgment on the pleadings should be denied.

1

2

Dated: October 19, 2020

Respectfully submitted,

/s/ Warren Postman

3

4

5

6

7

Keith A. Custis (#218818)
  kcustis@custislawpc.com
CUSTIS LAW, P.C.
1999 Avenue of the Stars
Suite 1100
Los Angeles, California 90067
(213) 863-4276

Warren Postman (*pro hac vice*)
  wdp@kellerlenkner.com
KELLER LENKNER LLC
1300 I Street, N.W., Suite 400E
Washington, D.C. 20005
(202) 749-8334

8

9

10

11

12

13

Aaron Zigler (#327318)
  amz@kellerlenkner.com
Ashley Keller (*pro hac vice*)
  ack@kellerlenkner.com
KELLER LENKNER LLC
150 N. Riverside Plaza, Suite 4270
Chicago, Illinois 60606
(312) 741-5220

14

*Attorneys for Defendants/Cross-Petitioners*

15

16

17

18

19

20

21

22

23

24

25

26

27

28