THEANE EVANGELIS, SBN 243570
 tevangelis@gibsondunn.com
BRADLEY J. HAMBURGER, SBN 266916
 bhamburger@gibsondunn.com
DHANANJAY S. MANTHRIPRAGADA, SBN 254433
 dmanthripragada@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA  90071-3197
Telephone:  213.229.7000
Facsimile:   213.229.7520

MICHELE L. MARYOTT, SBN 191993
 mmaryott@gibsondunn.com
SHAUN A. MATHUR, SBN 311029
 smathur@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
3161 Michelson Drive
Irvine, CA  92612-4412
Telephone:  949.451.3800
Facsimile:   949.451.4220

Attorneys for Plaintiff POSTMATES INC.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| POSTMATES INC., <br><br>         Plaintiff, <br><br>   v. <br><br> 10,356 INDIVIDUALS, <br><br>         Defendants. <br><br> GREENWOOD, et al., <br><br>         Cross-Petitioners, <br><br>   v. <br><br> POSTMATES INC., <br><br>         Cross-Respondent. | CASE NO. 2:20-cv-02783-PSG <br><br> **REPLY IN SUPPORT OF POSTMATES' MOTION FOR JUDGMENT ON THE PLEADINGS ON POSTMATES' SECOND, THIRD, AND FIFTH CAUSES OF ACTION** <br><br> **Hearing:** <br> Date:    November 17, 2020 <br> Time:    1:30 P.M. <br> Judge:   Hon. Philip S. Gutierrez |

Gibson, Dunn &
Crutcher LLP

**TABLE OF CONTENTS**

Page

I. INTRODUCTION ........................................................................................... 1

II. ARGUMENT .................................................................................................. 2

    A. SB 707 is Preempted by the FAA .......................................................... 2

        1. SB 707 Singles Out Arbitration Agreements for Disfavored Treatment ....................................................................................... 3

        2. SB 707 Interferes with the Fundamental Attributes of Arbitration .................................................................................... 8

    B. SB 707 Unconstitutionally Impairs Postmates' Contracts ..................... 10

    C. The Court Should Enter Declaratory Judgment in Postmates' Favor and Enjoin Defendants from Enforcing SB 707 Against Postmates ....... 11

III. CONCLUSION ............................................................................................. 12

# TABLE OF AUTHORITIES

Page(s)

## Cases

*Adams v. Postmates, Inc.*,
   823 F. App'x 535, 535 (9th Cir. 2020) .................................................................... 7

*Adams v. Postmates, Inc.*,
   414 F. Supp. 3d 1246 (N.D. Cal. 2019) .................................................................. 6

*AT&T Mobility LLC v. Concepcion*,
   563 U.S. 333 (2011) .................................................................................. 1, 3, 4, 10

*Blair v. Rent-A-Center, Inc.*,
   928 F.3d 819 (9th Cir. 2019) ................................................................................... 8

*Brown v. Dillard's, Inc.*,
   430 F.3d 1004 (9th Cir. 2005) ................................................................................. 5

*Brown v. Grimes*,
   192 Cal. App. 4th 265 (2011) .................................................................................. 5

*Cardenas v. AmeriCredit Fin. Servs. Inc.*,
   2011 WL 2884980 (N.D. Cal. July 19, 2011) ......................................................... 9

*Chamber of Com. v. Becerra*,
   438 F. Supp. 3d 1078 (E.D. Cal. 2020) .............................................................. 4, 10

*Chastain v. Union Sec. Life Ins. Co.*,
   502 F. Supp. 2d 1072 (C.D. Cal. 2007) ................................................................... 4

*Chesebrough–Pond's, Inc. v. Faberge, Inc.*,
   666 F.2d 393 (9th Cir. 1982) ............................................................................ 11, 12

*Dekker v. Vivint Solar, Inc.*,
   2020 WL 4732194 (N.D. Cal. Aug. 14, 2020) ........................................................ 5

*Dilts v. Penske Logistics, LLC*,
   769 F.3d 637 (9th Cir. 2014) ................................................................................. 10

*E.E.O.C. v. Waffle House, Inc.*,
   534 U.S. 279 (2002) ................................................................................................. 4

*Epic Sys. Corp. v. Lewis*,
  138 S. Ct. 1612 (2018) ............................................................................................... 4

*Eureka Fed. Sav. & Loan Ass'n v. Am. Cas. Co.*,
  873 F.2d 229 (9th Cir. 1989) ................................................................................... 12

*Hellinger v. Farmers Grp., Inc.*,
  91 Cal. App. 4th 1049 (2001) .................................................................................. 10

*Kindred Nursing Centers Ltd. Partnership v. Clark*,
  137 S. Ct. 1421 (2017) ........................................................................................... 4, 8

*MedImmune, Inc. v. Genentech, Inc.*,
  549 U.S. 118 (2007) .................................................................................................. 11

*Nelson v. Nat'l Aeronautics & Space Admin.*,
  530 F.3d 865 (9th Cir. 2008) ................................................................................... 12

*Rent-A-Center, W., Inc. v. Jackson*,
  561 U.S. 63 (2010) ..................................................................................................... 1

*Rich & Whillock, Inc. v. Ashton Dev., Inc.*,
  157 Cal. App. 3d 1154 (1984) ................................................................................... 5

*Saturn Distribution Corp. v. Williams*,
  905 F.2d 719 (4th Cir. 1990) ................................................................................. 4, 8

*Secs. Indus. Ass'n v. Connolly*,
  703 F. Supp. 146 (D. Mass. 1998) ............................................................................ 9

*Sink v. Aden Enters., Inc.*,
  352 F.3d 1197 (9th Cir. 2003) ................................................................................... 6

*Southland Corp. v. Keating*,
  465 U.S. 1 (1984) ............................................................................................... 10, 11

*Sveen v. Melin*,
  138 S. Ct. 1815 (2018) ............................................................................................. 10

*Uniloc Luxembourg, S.A. v. Broderick*,
  2016 WL 9343897 (C.D. Cal. June 30, 2016) ........................................................ 11

*Valley View Health Care, Inc. v. Chapman*,
  2013 WL 4541602 (E.D. Cal. Aug. 27, 2013) ..................................................... 2, 9

Gibson, Dunn &
Crutcher LLP

iii

*Valley View Health Care, Inc. v. Chapman*,
   992 F. Supp. 2d 1016 (E.D. Cal. 2014) ..........................................................2, 11, 12

*Weddington Prods., Inc. v. Flick*,
   60 Cal. App. 4th 793 (1998) .........................................................................................5

**Statutes**

9 U.S.C. § 2 ..............................................................................................................................3

Cal. Code Civ. Proc. §§ 1281.97–98 ...................................................................................1, 7

Cal. Code Civ. Proc. § 1281.97(a) ......................................................................................3, 5

Cal. Code Civ. Proc. § 1281.97(b) ...........................................................................................5

Cal. Code Civ. Proc. § 1281.99 ............................................................................................5, 8

Cal. Code Civ. Proc. § 1281.99(a) ...........................................................................................5

Cal. Civ. Code § 1692 ..............................................................................................................5

Cal. Civ. Code § 3300 ..............................................................................................................5

Cal. Civ. Code § 3384 ..............................................................................................................5

## I. INTRODUCTION

By the admission of its own supporters, SB 707 is designed to disfavor and discourage the use of arbitration agreements. It imposes stiff penalties on parties that draft such agreements if they do not pay arbitration fees within 30 days, regardless of the amount of the unpaid fee or the reason for nonpayment, including the non-drafting party's material breach. Because SB 707 rewrites arbitration agreements—but no other types of contracts—to redefine "material breach," and singles out arbitration agreements for disfavored treatment, it is preempted by the FAA and unconstitutional under the federal and state Contracts Clauses.

Relying on a strained interpretation of Section 2 of the FAA, Defendants argue that the FAA displaces only state laws that "render an arbitration clause invalid, revocable, and unenforceable." Opp. at 14. But as the Supreme Court has held time and time again, the FAA preempts state laws that (1) place "arbitration agreements on [un]equal footing with other contracts," *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 67 (2010), or (2) "stand as an obstacle to the accomplishment of the FAA's objective[]" of enforcing "arbitration agreements according to their terms," *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 343–44 (2011). SB 707 does just that, by creating a new body of contract law that applies *only* to arbitration agreements, rewriting the definition of "material breach," altering the agreed-upon remedies for nonpayment of fees, and precluding only the drafting party from enforcing an arbitration agreement, even if the non-drafting party's breach is the reason for nonpayment.

Defendants do not dispute that SB 707 treats arbitration agreements differently than other contracts; rather, they argue that the way SB 707 singles out arbitration agreements "furthers rather than undermines the policies of the FAA." Opp. at 16. But Defendants ignore the plain operation of the statute, which imposes harsh penalties *only* on the drafting party of an arbitration agreement for *any* nonpayment of fees. *See* Cal. Code Civ. Proc. §§ 1281.97–98. And they fail to support an argument that SB 707 "merely imposes additional remedies that are targeted to enforce compliance with

arbitration agreements," Opp. at 25, because SB 707 alters the parties' agreement by offering additional remedies *only to the non-drafting party* (even if that party materially breached the contract), waives the drafting party's ability to enforce its arbitration agreement, and mandates monetary sanctions for any nonpayment of fees. It also permits courts to interfere with the drafting party's *substantive rights* by imposing evidentiary and contempt sanctions.

Seeking to avoid the inevitable, Defendants argue that Postmates' claims are not ripe, and that factual disputes preclude judgment in Postmates' favor at this stage. Opp. at 10–13. But an actual "case or controversy" exists because 4,933 Defendants *have already asked* this Court to enforce SB 707 against Postmates, Dkt. 44 at 23–25, and the other 5,423 Defendants have asserted that they may do so at any time. "The parties['] differing views as to the viability of the challenged arbitration law[] demonstrates an actual controversy" sufficient for a declaratory judgment. *Valley View Health Care, Inc. v. Chapman*, 992 F. Supp. 2d 1016, 1042 (E.D. Cal. 2014). And any supposed "factual disputes" are immaterial to Postmates' motion, because whether SB 707 is preempted and constitutional are "legal issue[s]" tailored for judgment on the pleadings. *See Valley View Health Care, Inc. v. Chapman*, 2013 WL 4541602, at *9 (E.D. Cal. Aug. 27, 2013).

The Court should enter an order declaring SB 707 preempted and unconstitutional and permanently enjoining Defendants from enforcing SB 707 against Postmates.

## II.  ARGUMENT

SB 707 is preempted by the FAA because it creates new contract rules that apply only to arbitration agreements and not to any other contracts, and is specifically designed to discourage the use of arbitration agreements. It also violates the federal and state Contracts Clauses because it redefines "material breach" and alters the parties' agreed-upon remedies by offering additional remedies only to non-drafting parties. The Court should grant Postmates' motion for judgment on the pleadings.

**A. SB 707 is Preempted by the FAA**

Defendants argue that even if SB 707 materially interferes with arbitration

agreements, it cannot be preempted because it "does not render [the parties'] arbitration clause invalid, revocable or unenforceable." Opp. at 14–15. Defendants do not cite any case supporting their novel and erroneous reading of the FAA's preemptive scope. The FAA's savings clause provides that arbitration agreements "shall be valid, irrevocable, and enforceable, *save upon such grounds as exist at law or in equity for the revocation of any contract*." 9 U.S.C. § 2 (emphasis added). This language means that states may regulate arbitration agreements only to the extent state laws apply to "any contract," such as generally applicable defenses concerning contract formation or unconscionability. As the Supreme Court has repeatedly held, the FAA displaces state laws that fail to "place arbitration agreements on equal footing with all other contracts," or that "stand as an obstacle to the accomplishment of the FAA's objectives"—regardless whether the state law renders the agreement invalid, unenforceable, or revocable. *Concepcion*, 563 U.S. at 339, 343.

In any event, SB 707 *specifically* renders arbitration agreements unenforceable—by only the drafting party of such agreements. If the drafting party fails to pay fees assessed against it within 30 days of the due date for any reason, "the drafting party . . . waives its right to compel arbitration." Cal. Code Civ. Proc. § 1281.97(a). SB 707 is preempted even under Defendants' erroneous view of the FAA.

**1.  SB 707 Singles Out Arbitration Agreements for Disfavored Treatment**

Defendants do not dispute that SB 707 treats arbitration agreements differently than other contracts; they merely argue that the way SB 707 singles out arbitration agreements aids arbitration, rather than disfavors it. *See* Opp. at 16. Defendants suggest that SB 707 is "pro-arbitration" because it seeks to aid in "efficient and speedy dispute resolution" by requiring drafting parties to pay their share of arbitration fees in a timely manner. *Id.* at 16–17. But speedy dispute resolution is not the FAA's only goal, particularly if faster resolution comes at the expense of the arbitration agreement's terms and the state law creates lopsided remedies that apply only to one party. Congress

enacted the FAA to ensure that courts "enforce arbitration agreements *according to their terms*." *Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1619 (2018) (emphasis added).[1]

SB 707 creates rules that interfere only with arbitration agreements, thereby failing to place arbitration agreements on an "equal footing" with other contracts. *Concepcion*, 563 U.S. at 333, 339. The "'equal-footing,' or 'equal treatment' principle reflects the notion that 'the FAA is at bottom a policy guaranteeing the enforcement of private contractual arrangements.'" *Chamber of Com. v. Becerra*, 438 F. Supp. 3d 1078, 1096 (E.D. Cal. 2020) (quoting *E.E.O.C. v. Waffle House, Inc.*, 534 U.S. 279, 294 (2002)). The "equal treatment" analysis is simple: state laws "may invalidate an arbitration agreement based on generally applicable contract defenses like fraud or unconscionability, but not on legal rules that apply only to arbitration or that derive their meaning from the fact that an agreement to arbitrate is at issue." *Id.* (internal quotations omitted). State laws that do the latter are preempted by the FAA. *See id.*

For example, in *Saturn Distribution Corp. v. Williams*, the Fourth Circuit held that a state law ran afoul of the FAA because it required arbitration agreements in car dealership contracts to be optional instead of nonnegotiable. 905 F.2d 719, 725 (4th Cir. 1990). Virginia's general contract law did not restrict parties from including "nonnegotiable provisions in standardized contracts." *Id.* at 726. Because the challenged law imposed an additional requirement that arbitration agreements be optional—beyond what Virginia's general contract law requires—the challenged law was preempted by the FAA. *Id.* at 725–26; *see also Kindred Nursing Centers Ltd. Partnership v. Clark*, 137 S. Ct. 1421, 1426–27 (2017) (the Kentucky Supreme Court's "clear-statement rule," which "serve[d] to safeguard a person's 'right to access the courts

---

[1] Defendants concede that SB 707 does not allow for "efficient breach" of contract, but argue that SB 707 is consistent with the FAA, which also rejects the concept of efficient breach. Opp. at 20. Defendants do not cite a single case to support that proposition. Even if the FAA allows a party to an arbitration agreement to seek specific performance, *see Chastain v. Union Sec. Life Ins. Co.*, 502 F. Supp. 2d 1072, 1075 (C.D. Cal. 2007), once a party is compelled to arbitrate, nothing precludes that party from efficiently breaching by accepting a default judgment rather than paying the arbitration fees and defending against the other party's claims. *See* Mot. at 13–14.

Gibson, Dunn & Crutcher LLP

4

and to trial by jury,'" was preempted by the FAA because it failed "to put arbitration agreements on an equal plane with other contracts").

As depicted in the chart below, SB 707 singles out arbitration agreements for disfavored treatment in at least five separate ways:

| | **SB 707** | **California Contract Law** |
|---|---|---|
| 1. | A drafting party must continue performing as a condition of enforcing the agreement, even if the non-drafting party materially breaches the agreement. Cal. Code Civ. Proc. § 1281.97(a). | If a party materially breaches the contract, the non-breaching party is "discharged from its duty to perform under the contract." *Brown v. Grimes*, 192 Cal. App. 4th 265, 277 (2011). |
| 2. | A breaching non-drafting party may enforce the agreement if the drafting party later refuses to pay arbitration fees as a result of the non-drafting party's breach. Cal. Code Civ. Proc. § 1281.97(b). | "He who seeks to enforce a contract must show that he has complied with the conditions and agreements of the contract on his part to be performed." *Brown v. Dillard's, Inc.*, 430 F.3d 1004, 1010 (9th Cir. 2005). |
| 3. | A material breach occurs *every* time a drafting party does not pay fees within 30 days of the due date, no matter the reasons for nonpayment. Cal. Code Civ. Proc. § 1281.97(a). | "Normally the question of whether a breach of an obligation is a material breach . . . is a question of fact." *Grimes*, 192 Cal. App. 4th at 277. |
| 4. | Drafting parties may not efficiently breach an arbitration agreement. Cal. Code Civ. Proc. §§ 1281.97(a), 1281.99(a). | "'[E]fficient' breaches" are "acceptable, even desirable, in our economic system." *Rich & Whillock, Inc. v. Ashton Dev., Inc.*, 157 Cal. App. 3d 1154, 1159 (1984). |
| 5. | Drafting parties face sanctions if they do not pay fees for arbitration demands filed by individuals who lack an agreement to arbitrate. Cal. Code Civ. Proc. § 1281.99. | Only parties to a contract may enforce the contract. *See Weddington Prods., Inc. v. Flick*, 60 Cal. App. 4th 793, 797 (1998).[2] |

As the court in *Dekker v. Vivint Solar, Inc.*, 2020 WL 4732194, at *2 (N.D. Cal. Aug. 14, 2020) recognized, SB 707, "on its face, modifies substantive state contract law" as to arbitration agreements and "substantially determines both the forum and the relief available."[3] Because SB 707 requires drafting parties to continue to pay fees or risk

---

[2] SB 707 additionally overrides California contract law by imposing sanctions on the non-drafting party for non-payment of fees, Cal. Code Civ. Proc. § 1281.99, while remedies for breach of contract in California generally include damages, specific performance, or rescission and restitution, *see* Cal. Civ. Code §§ 1692, 3300, 3384.

[3] Defendants cite *Dekker*, 2020 WL 4732194, at *3 in support of their argument that SB 707 is not preempted by the FAA. But the *Dekker* court did not consider FAA preemption, the equal-treatment principle, or the legislature's outright hostility to arbitration.

Gibson, Dunn & Crutcher LLP

5

sanctions—even if the non-drafting party materially breaches the contract—it fails to place arbitration agreements on equal footing with other contracts under California law.

Defendants also argue that "SB 707 does not override the [Mutual Arbitration Provision] here" because nothing in the parties' agreement addresses remedies for material breach or nonpayment of fees. Opp. at 18–19. But the Mutual Arbitration Provision identifies nine ways that a party may "material[ly] breach" the agreement, such as a courier's failure to maintain insurance or Postmates' failure to pay fees for a completed delivery within 21 days, and expressly incorporates "the AAA Rules," including provisions regarding remedies available for the nonpayment of arbitration fees. *See* Dkt. 78-7 §§ 10B(vi), 11B(i)–(ix); *Adams v. Postmates, Inc.*, 414 F. Supp. 3d 1246, 1255 (N.D. Cal. 2019) (the Mutual Arbitration Provision incorporates AAA's Rules "regarding the payment of arbitration fees . . . , as well [as] the available remedies for non-payment"). SB 707 alters the parties' agreed-upon definition of "material breach" by mandating that a non-drafting party is in material breach of the arbitration agreement if it fails to pay fees for any reason and creates lopsided remedies available only to the non-drafting party (even if that party materially breached the agreement).

Defendants argue that "the Ninth Circuit has already held that 'failure to pay required costs of arbitration is a material breach' under the FAA." Opp. at 19 (quoting *Sink v. Aden Enters., Inc.*, 352 F.3d 1197, 1201 (9th Cir. 2003)). But in *Sink*, it was undisputed that the employer was obligated to pay the arbitration costs, and the employer never objected to paying fees because the employee materially breached the agreement or because the parties did not have a valid agreement to arbitrate. 352 F.3d at 1198–1199 (employer "gave no prior notice" that it would not pay fees). By contrast, Postmates has always objected to paying the $4 million in fees assessed against it because (1) Postmates' records indicate hundreds of Defendants have no right to arbitrate because they never signed the Fleet Agreement or opted out of arbitration, (2) hundreds of Defendants have no claims because they have never completed a delivery through Postmates' platform or have released all of their claims in a prior

settlement, and (3) Defendants have sought to arbitrate in a manner that violates the individual arbitration requirement in the Mutual Arbitration Provision's Class Action Waiver. Second Amended Complaint ("SAC") ¶ 7.

Postmates has never suggested that drafting parties to arbitration agreements should be able to avoid their obligations to arbitrate whenever they want by simply refusing to pay fees they are obligated to pay. Rather, Postmates objects to paying fees for demands filed in violation of the *individual* arbitration requirement, *see* Dkt. 56 at 10–20, and for Defendants who have no right to arbitrate with Postmates. Nor have "five federal judges . . . already rejected" Postmates' argument that Defendants have sought to arbitrate in a manner that violates the Mutual Arbitration Provision's individual arbitration requirement. Opp. at 1. *No* federal court has considered Postmates' argument on the merits. Rather, courts have held only that an *arbitrator* (rather than a AAA administrator) must resolve the dispute. *See Adams v. Postmates, Inc.*, 823 F. App'x 535, 535 (9th Cir. 2020).

Defendants argue that SB 707's remedies are triggered only when an arbitration agreement "requires" the drafting party to pay certain fees and costs, and thus couriers who have no arbitration agreement with Postmates or who materially breach their agreement with Postmates cannot invoke remedies under SB 707. Opp. at 19–20. But nothing in the text of SB 707 allows a court to consider the factual circumstances surrounding a drafting party's nonpayment of fees before determining whether it is in material breach of the arbitration agreement. *See* Cal. Code Civ. Proc. §§ 1281.97–98. This case illustrates that point, as AAA assessed fees without inquiry into Postmates' objections that hundreds of Defendants have no right to arbitrate, and without allowing an *arbitrator* to determine whether Defendants have sought to arbitrate in a manner that violates the Mutual Arbitration Provision. SAC ¶¶ 74–82; Answer ¶¶ 74–82.

Finally, Defendants argue that although SB 707 penalizes only the drafting party of arbitration agreements, SB 707 is not "lopsided" because AAA invoices the company only after the alleged employee has paid its share of fees, and thus "there is simply no

scenario in which a courier could delay an arbitration for tactical advantage by refusing to pay fees." Opp. at 18. But SB 707 is lopsided because it punishes only the drafting party, even if the drafting party is not in material breach under the terms of the parties' agreement, but does not punish the non-drafting party, even if the non-drafting party *is* in material breach of the agreement (by, for example, pursuing prohibited non-individual arbitration). Moreover, just because *AAA* assesses fees against claimants before it assesses fees against respondent companies does not mean other arbitration administrators do the same. And the enforceability of SB 707 certainly does not rise and fall with how one arbitration forum structures its payment schedule.

SB 707 fails to place arbitration agreements on equal footing with other contracts, and is preempted by the FAA. *See Kindred*, 137 S. Ct. at 1427; *Saturn*, 905 F.2d at 726.

### 2.  SB 707 Interferes with the Fundamental Attributes of Arbitration

SB 707 is also preempted because it "impermissibly disfavor[s] arbitration" and "stands as an obstacle to the accomplishment of the FAA's objectives." *Blair v. Rent-A-Center, Inc.*, 928 F.3d 819, 825, 829 (9th Cir. 2019). Defendants insist that SB 707 aids arbitration, but that is false. Rather, it shows outright hostility toward arbitration and seeks to deter the use of arbitration agreements altogether by imposing draconian penalties that apply only in the arbitration context and only to drafting parties. Mot. at 15–19. In fact, SB 707 *mandates* monetary sanctions and authorizes further sanctions— such as contempt and evidentiary sanctions—against the drafting party if it fails to pay arbitration fees. *See* Cal. Code Civ. Proc. § 1281.99. The drafting party may lose substantive rights if it fails to pay fees (regardless of the reasons why), such as the rights to arbitrate, conduct discovery, and defend claims. *See id.* The threat of such harsh, one-sided penalties obviously deters parties from using arbitration agreements.

That SB 707 was designed to target and discourage the use of arbitration agreements is evident from its legislative history. Defendants argue that Postmates "egregious[ly] distort[ed]" SB 707's legislative history because the California Legislature recognized that the Supreme Court has repeatedly emphasized and expanded

the validity of arbitration provisions. Opp. at 21–22. It is not surprising that the Legislature—which has a long history of enacting state laws that the Supreme Court has held were preempted by the FAA—would thoughtfully craft its synopsis of SB 707 to suggest it supports arbitration. But Postmates has not distorted direct quotes from the Assembly Committee on the Judiciary in enacting SB 707 that "drafting parties should reconsider their liberal use of binding arbitration provisions in contracts," Dkt. 78-2 at 16, and that arbitration is a "controversial form of alternative dispute resolution" that lacks even a "modicum of fairness" and purportedly gives companies "significant advantages," *id.* at 5, 11; *see also* Dkt. 78-4 at 24, Dkt. 78-5 at 27, Dkt. 78-6 at 29 (similar statements by bill author and sponsor); SAC ¶¶ 68–69. Moreover, even if the "sanctions provided in [SB 707] are intended to deter bad actors," Dkt. 78-2 at 14, the Legislature missed the mark by *mandating* sanctions against a drafting party for not paying fees, even if the non-drafting party is the "bad actor" who materially breached the contract. And contrary to Defendants' belief, Postmates does not argue that this legislative history *alone* shows that SB 707 is hostile to arbitration, Opp. at 21 n.9, but instead that these statements confirm what is already evident from the text of SB 707: SB 707 was enacted "to *limit* the use of the arbitral process." *Secs. Indus. Ass'n v. Connolly*, 703 F. Supp. 146, 151 (D. Mass. 1998), *aff'd*, 883 F.2d 1114 (1st Cir. 1989) (emphasis in original).

Defendants also complain that Postmates "provides no evidence to support" its argument that SB 707 will have a deterrent effect on companies' use of arbitration agreements. Opp. at 24. Defendants cite *Chamber of Commerce*, 438 F. Supp. 3d at 1097, because the plaintiffs there submitted declarations from companies stating they would stop using arbitration agreements if AB 51 was not enjoined. But the court in *Chamber of Commerce* did *not* hold that such evidence is necessary to determine whether a state law is preempted by the FAA, *see id.* at 1096–98, and Plaintiffs cite no authority for such a rule. In fact, courts have concluded just the opposite: whether the FAA preempts state law is a "purely legal issue." *See Valley View Health Care, Inc. v. Chapman*, 2013 WL 4541602, at *9 (E.D. Cal. Aug. 27, 2013) ("The issue in this case

is a legal issue: does the FAA preempt the California statutes and regulations? The 'factual' development proposed . . . does not aid in adjudication of a purely legal issue."); *Cardenas v. AmeriCredit Fin. Servs. Inc.*, 2011 WL 2884980, at *3 (N.D. Cal. July 19, 2011) ("the question of whether *Broughton* and *Cruz* are now preempted by the FAA under *Concepcion* presents a purely legal question"). The other case on which Defendants rely, *Dilts v. Penske Logistics, LLC*, 769 F.3d 637 (9th Cir. 2014), is irrelevant, as it concerns preemption under the Federal Aviation Administration Authorization Act ("FAAAA"), not the FAA.

SB 707's text demonstrates, and its legislative history confirms, that SB 707 stands as an obstacle to the FAA's objective of promoting arbitration. *Concepcion*, 563 U.S. at 352. For this reason alone, SB 707 is preempted by the FAA.

### B. SB 707 Unconstitutionally Impairs Postmates' Contracts

Defendants argue that SB 707 does not impair the parties' agreement because it "merely imposes additional remedies that are targeted to enforce compliance with arbitration agreements." Opp. at 25. But SB 707 rewrites the definition of material breach only for the *drafting party* and creates additional remedies for such breach only for the *non-drafting party*, even though the parties contracted otherwise. Specifically, SB 707 alters the Mutual Arbitration Provision's requirement that both parties satisfy their contractual obligations and pay their share of arbitral filing fees. Mot. at 19–20; SAC ¶ 42; Dkt. 78-7 at 40–41 § 10B(vi)(2); *Sveen v. Melin*, 138 S. Ct. 1815, 1821 (2018); *Hellinger v. Farmers Grp., Inc.*, 91 Cal. App. 4th 1049, 1062 (2001). By rewriting the definition of material breach and altering the remedies available in the parties' agreement, SB 707 substantially impairs the parties' agreement.

Further, SB 707 does not advance any legitimate purpose, since it was passed in part to discourage companies' "liberal use of binding arbitration provisions in contracts." Dkt. 78-2 at 16; *Sveen*, 138 S. Ct. at 1822. SB 707 targets and disfavors arbitration agreements, which is an *illegal* purpose under federal law. *See Southland Corp. v. Keating*, 465 U.S. 1, 13 (1984). SB 707 also is not reasonably tailored, as it was

purportedly designed to address "*mandatory* arbitration" agreements, Dkt. 78-3 at 21 (emphasis added), Dkt. 78-8 at 52; SAC ¶ 20 n.1; *see* Dkt. 78-9 at 57, but also applies to companies like Postmates that give all couriers 30 days to opt out of arbitration from the date of their acceptance of the Fleet Agreement, SAC ¶ 34. Accordingly, SB 707 is unconstitutional under the state and federal Contracts Clauses.

### C. The Court Should Enter Declaratory Judgment in Postmates' Favor and Enjoin Defendants from Enforcing SB 707 Against Postmates

The Court should reject Defendants' already-denied argument that Postmates is not entitled to declaratory and injunctive relief because there is no live controversy between Postmates and the 5,423 Defendants who have not moved to compel arbitration. In response to the Court's Order to Show Cause, Dkt. 34, Postmates explained that a live controversy exists and that the Court should exercise its authority under the Declaratory Judgment Act, Dkt. 40 at 6–10. The Court subsequently retained the action and invited Postmates to file its motion for judgment on the pleadings. *See* Dkt. 76. The Court need not revisit its earlier conclusion that a live controversy exists.

In any event, declaratory judgment is appropriate because "a substantial controversy" exists between the parties "of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007). Defendants argue that there is no live controversy between Postmates and the 5,423 Defendants who have not moved to compel arbitration against Postmates. Opp. at 11–12. But "one does not have to await the consummation of threatened injury to obtain preventive relief." *Valley View Health Care*, 992 F. Supp. 2d at 1032. "Instead, a plaintiff's 'real and reasonable apprehension that [it] will be subject to liability' is sufficient for a district court to find that an actual controversy exists for the purposes of issuing a declaratory judgment." *Uniloc Luxembourg, S.A. v. Broderick*, 2016 WL 9343897, at *3 (C.D. Cal. June 30, 2016) (quoting *Chesebrough–Pond's, Inc. v. Faberge, Inc.*, 666 F.2d 393, 396 (9th Cir. 1982)).

Here, all 10,356 Defendants have filed arbitration demands against Postmates with AAA, and AAA assessed over $4 million in unrecoverable filing fees against Postmates for the 10,356 demands and cited SB 707 when closing the demands. Answer ¶¶ 6–8. The 5,423 Defendants who have not moved to compel arbitration admitted they "may do so at any time, and have expressly declined to waive their right to move to compel arbitration." *Id.* ¶ 104. Postmates need not wait until they move to enforce SB 707 against it to seek declaratory relief. And that SB 707 provides the non-drafting party options of different additional remedies to choose from (Opp. at 12) is irrelevant to whether there is a live controversy. Rather, "[t]he parties['] differing views as to the viability of the challenged arbitration law[] demonstrates an actual controversy," and Postmates is "entitled to declaratory relief that [SB 707 is] invalid, unlawful and preempted by the FAA." *Valley View Health Care*, 992 F. Supp. 2d at 1042.

Defendants admit there is a live controversy sufficient for declaratory judgment between Postmates and the 4,933 remaining Defendants who have moved to compel arbitration and sought penalties under SB 707, but argue that declaratory judgment is unnecessary because the issue will be addressed with their motion. Opp. at 13. But an order declaring SB 707 preempted by the FAA and unconstitutional "will serve a useful purpose in clarifying and settling the legal relations in issue, and . . . will terminate and afford [Postmates] relief from the uncertainty, insecurity, and controversy giving rise to the proceeding." *Eureka Fed. Sav. & Loan Ass'n v. Am. Cas. Co.*, 873 F.2d 229, 231 (9th Cir. 1989). Postmates is also entitled to permanent injunctive relief because no adequate remedy at law exists for constitutional violations. *See Nelson v. Nat'l Aeronautics & Space Admin.*, 530 F.3d 865, 882 (9th Cir. 2008), *rev'd on other grounds*, 562 U.S. 134 (2011).

### III. CONCLUSION

This Court should grant Postmates' motion for judgment on the pleadings as to its second, third, and fifth causes of action, and enter an order declaring that SB 707 is preempted by the FAA and unconstitutional and enjoining its enforcement.

Dated: October 26, 2020

                                                 THEANE EVANGELIS
BRADLEY J. HAMBURGER
DHANANJAY S. MANTHRIPRAGADA
MICHELE L. MARYOTT
SHAUN A. MATHUR
GIBSON, DUNN & CRUTCHER LLP

By: /s/ *Theane Evangelis*
               Theane Evangelis

Attorneys for Plaintiff POSTMATES INC.