UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**                     #44/77

| Case No. | CV 20-2783 PSG (JEMx) | Date | January 19, 2021 |
|---|---|---|---|
| Title | Postmates Inc. v. 10,356 Individuals | | |

Present: The Honorable    Philip S. Gutierrez, United States District Judge

| Wendy Hernandez | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter |
| Attorneys Present for Plaintiff(s): | Attorneys Present for Defendant(s): |
| Not Present | Not Present |

**Proceedings (In Chambers):    The Court DENIES the motion for judgment on the pleadings and GRANTS IN PART and DENIES IN PART the motion to compel arbitration**

　　Before the Court is (1) a motion to compel arbitration filed by Cross-Petitioners in this action, *see* Dkt. # 44 ("*MCA*"), and (2) a motion for judgment on the pleadings filed by Plaintiff Postmates Inc. ("Plaintiff" or "Postmates"), *see* Dkt. # 77 ("*MJP*").  Postmates opposed the motion to compel, *see* Dkt. # 56 ("*Opp. MCA*"), and Cross-Petitioners replied, *see* Dkt. # 62 ("*Reply MCA*").  Cross-Petitioners opposed the motion for judgment on the pleadings, *see* Dkt. # 88 ("*Opp. MJP*"), and Postmates replied, *see* Dkt. # 89 ("*Reply MJP*").  The Chamber of Commerce filed an amicus brief in support of Postmates' motion for judgment on the pleadings. *See* Dkt. # 81.  The Court held a hearing on the matter on January 13, 2021.  Having considered the moving, opposing, and reply papers, the amicus brief, and the arguments made at the hearing, the Court **GRANTS IN PART** the motion to compel arbitration as to 5,057 Cross-Petitioners, orders Postmates to pay attorney's fees and costs, and **DENIES** the motion for judgment on the pleadings.

I.　　Background

　　A.　　Postmates and the Fleet Agreement

　　Postmates operates an online marketplace and mobile platform through which consumers connect with local merchants and, if consumers request delivery, independent couriers to facilitate the purchase, fulfillment, and, when applicable, local delivery of products from merchants to consumers.  *Declaration of Caitlin Modlin*, Dkt. # 59 ("*Modlin Decl.*"), ¶ 3.  When consumers place orders through Postmates' platform, they can decide whether to pick up the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 20-2783 PSG (JEMx) | Date | January 19, 2021 |
|---|---|---|---|
| Title | Postmates Inc. v. 10,356 Individuals | | |

order or have it delivered. *Id.* If a consumer chooses delivery, couriers receive a notification and can choose whether to pick up and deliver the goods. *Id.* ¶ 4.

Anyone can sign up to be a courier. *Id.* ¶ 5. Before couriers can access Postmates' platform, they must accept Postmates' Fleet Agreement, which is presented to them during an online registration process. *Id.*[1]

The Fleet Agreement governs the relationship between the courier and Postmates. *Id.* ¶ 6, Ex. A ("*Fleet Agreement*"), § 1A. The Fleet Agreement contains a Mutual Arbitration Provision (the "Arbitration Provision") that "is governed exclusively" by the Federal Arbitration Act, 9 U.S.C. §§ 1–16 ("FAA"). *Fleet Agreement* § 10A(i). Couriers may opt out of arbitration by submitting an opt-out notice within thirty days of accepting the Fleet Agreement. *Id.* § 10B(ix). For those who do not opt out, the Arbitration Provision states that Postmates and the courier "mutually agree to resolve any disputes between them exclusively through final and binding arbitration instead of filing a lawsuit in court." *Id.* § 10A. The Arbitration Provision also provides that arbitration shall be governed by the American Arbitration Association ("AAA") Commercial Arbitration Rules. *Id.* §§ 10A(vi)(1), 10A(viii).

The Arbitration Provision contains an express Class Action Waiver and Representative Action Waiver. *Id.* § 10B(ii)–(iii). The Class Action Waiver states:

CLASS ACTION WAIVER—PLEASE READ. Postmates and You mutually agree that any and all disputes or claims between the Parties will be resolved in individual arbitration. The Parties further agree that by entering into this Agreement, they waive their right to have any dispute or claim brought, heard or arbitrated as a class and/or collective action, or to participate in any class and/or collective action, and an arbitrator shall not have any authority to hear or arbitrate any class and/or collective action ("Class Action Waiver").

---

[1] The parties agree that there are not material changes for the purposes of this motion to Postmates' Fleet Agreement over the applicable years, and both parties cite to the 2019 Fleet Agreement as the version that most of Cross-Petitioners alleged to have signed. *See MCA.* 4 n.3; *Opp. MCA* 3 n.2. "Each version of the Fleet Agreement contains a substantively similar Mutual Arbitration Provision with a Class Action Waiver and Representative Action Waiver, delegation clause, and the ability for couriers to opt out of arbitration within 30 days of accepting the Fleet Agreement." *Modlin Decl.* ¶ 9, Exs. A, B, C.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 20-2783 PSG (JEMx) | Date | January 19, 2021 |
|---|---|---|---|
| Title | Postmates Inc. v. 10,356 Individuals | | |

*Id.* § 10B(ii).

The Arbitration Provision also contains a delegation clause, which provides:

*Only an arbitrator*, and not any federal, state, or local court or agency, shall have the *exclusive authority to resolve any dispute relating to the interpretation, applicability, enforceability*, or formation of this Mutual Arbitration Provision, including without limitation any dispute concerning *arbitrability. However, as stated in Section 10B.iv below, the preceding clause shall not apply to any dispute relating to or arising out of the Class Action Waiver and Representative Action Waiver*, which must proceed in a court of competent jurisdiction and cannot be heard or arbitrated by an arbitrator.

*Id.* § 10A(ii) (emphases added).  Section 10B.iv provides:

Notwithstanding any other clause contained in this Agreement, this Mutual Arbitration Provision, or the American Arbitration Association Commercial Arbitration Rules ("AAA Rules"), *any claim that all or part of this Class Action Waiver and/or Representative Action Waiver is unenforceable, unconscionable, void, or voidable* shall be determined only by a court of competent jurisdiction and not by an arbitrator.  As stated above, all other disputes regarding interpretation, applicability, enforceability, or formation of this Mutual Arbitration Provision shall be determined exclusively by an arbitrator.

*Id.* § 10B(iv) (emphasis added).

Finally, under the Arbitration Provision, if a party wishes to initiate arbitration, the party must notify the other party in writing, and the demand must include "(1) the name and address of the Party seeking arbitration, (2) a statement of the legal and factual basis of the claim, and (3) a description of the remedy sought."  *Id.* § 10B(I).

B.     *Adams* Action

In April and May 2019, 5,274 individuals who worked as couriers for Postmates filed individual arbitration demands with the AAA.  *See Adams v. Postmates, Inc.*, 414 F. Supp. 3d 1246, 1250 (N.D. Cal. 2019) ("*Adams I*").  In June 2019, these claimants filed a Petition to Compel Arbitration in the Northern District of California, seeking an order compelling Postmates to (1) pay arbitration filing fees and (2) commence arbitration.  *Id.*  On October 22, 2019, the court granted in part and denied in part the parties' motions.  *See generally id*.  The

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 20-2783 PSG (JEMx) | Date | January 19, 2021 |
|---|---|---|---|
| Title | Postmates Inc. v. 10,356 Individuals | | |

court ordered the parties to arbitrate in accordance with the Arbitration Provision of the Fleet Agreement, but it declined to order Postmates to pay the outstanding or future arbitration fees, or to order the claimants to "refile their demands and to proceed in a specific manner." *See id*. at 1252–56. The Ninth Circuit affirmed the district court's order. *See generally Adams v. Postmates, Inc.*, 823 F. App'x 535 (9th Cir. 2020).

C.     1,250 Individuals File Arbitration Demands in September 2019

On September 24, 2019, 1,250 individuals simultaneously filed with the AAA arbitration demands against Postmates. *See Declaration of Dhananjay S. Manthripragada*, Dkt. # 57 ("*Manthripragada Decl.*"), ¶ 16, Ex. L; *see, e.g.*, *id.*, Ex. M. On September 30, 2019, the AAA determined that the 1,250 demands filed on September 24, 2019 met the AAA's filing requirements. *See Declaration of Warren Postman*, Dkt. # 45-1 ("*Postman Decl.*"), WP016, WP018 ("AAA's filing requirements are specified under Rule 4 of the Commercial Arbitration Rules. We have made an administrative determination that the minimum filing requirements have been met by Claimants. Respondent may raise any further challenges to the arbitrator(s) once appointed."). The AAA determined that under the applicable fee schedule, Postmates was obligated to pay the applicable fees by October 21, 2019 for the commencement of arbitration. *See id.* The AAA eventually set November 6, 2019 as the final deadline for Postmates to pay the fees to commence arbitration. *See id.* WP020. On November 8, 2019, AAA confirmed that Postmates had not paid the fees and administratively closed the cases. *See id.* WP021. Postmates proposed that fifty randomly selected arbitrations proceed at a time on a rolling basis, but that proposal was rejected. *See Manthripragada Decl.* ¶¶ 21, 22, Exs. R, S.

D.     10,356 Individual Defendants File Arbitration Demands in February 2020

On February 15, 2020, the 10,356 individual Defendants in this action, represented by Keller Lenkner, filed 10,356 arbitration demands against Postmates. *See Manthripragada Decl.* ¶ 42. Each Defendant alleges worker misclassification and violations of California wage and hour laws, as well as "applicable Municipal Codes," and many allege violations of the Fair Labor Standards Act. *See id.* ¶ 43, Exs. AA–CC.

Defendants' counsel notified Postmates about these demands in an email. *See id.* ¶ 42, Ex. Z. Defendants did not provide proof (1) that they accepted the Fleet Agreement, (2) that they performed any work on the platform, or (3) whether they opted out of the Arbitration Agreement. *See id.* ¶ 43.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 20-2783 PSG (JEMx) | Date | January 19, 2021 |
|---|---|---|---|
| Title | Postmates Inc. v. 10,356 Individuals | | |

The AAA notified Postmates of the new filing on February 24, 2020. *See id.* ¶ 45, Ex. EE at 13–14. The email confirmed the AAA's receipt of "ten thousand three hundred and fifty-six (10,356) individual demands for arbitration involving the above referenced parties, each of which has been filed with us in accordance with a contract containing a clause providing for administration by the AAA." *Id.* The email stated that the AAA's preliminary review had determined that the cases would "be administered" under the "American Arbitration Association ('AAA') Employment Arbitration Rules," and in accordance with the "'Administrative Group Filing Fees' section" of the AAA Employment/Workplace Fee Schedule, and stated that Postmates must pay a total of over $4,000,000 in initial fees by March 16, 2020. *Id.* The AAA also stated that "payment must be received by April 15, 2020 or the AAA may close the parties' cases." *Id.* The AAA asserted that it "[would] not grant any extensions to this payment deadline." *Id.*

       E.    *Rimler* Action

On July 9, 2019, Postmates conducted a mediation with another law firm, Lichten & Liss-Riordan, in *Rimler v. Postmates*, No. CGC-18567868 (San Fran. Sup. Ct.). *See Postman Decl.* ¶ 19. On October 8, 2019, the plaintiff in *Rimler* moved for preliminary approval of a settlement-only class. *See id.* ¶ 20. The settlement would release PAGA claims against Postmates, as well as the individual claims of California couriers, including Cross-Petitioners. *See id.* ¶¶ 20–21, WP027–74.

       F.    This Action

On March 25, 2020, Postmates filed this action against 10,356 individuals who filed arbitration demands on February 15. *See generally Complaint*, Dkt. # 1 ("*Compl.*"). Postmates subsequently amended its complaint. *See First Amended Complaint*, Dkt. # 7 ("*FAC*"). Postmates brought causes of action seeking (1) declaratory judgments that Postmates cannot be compelled to arbitrate on a "de facto class basis," and that California Senate Bill 707 ("SB 707") is preempted and unconstitutional, and (2) injunctive relief enjoining the arbitration and enjoining enforcement of SB 707. *See id.* ¶¶ 77–114.

On April 8, 2020, Plaintiff filed an *ex parte* application for a temporary restraining order and order to show cause why a preliminary injunction should not issue. *See* Dkt. # 17. On April 15, 2020, this Court denied Plaintiff's application. *See* Dkt. # 30.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 20-2783 PSG (JEMx) | Date | January 19, 2021 |
|---|---|---|---|
| Title | Postmates Inc. v. 10,356 Individuals | | |

On April 20, 2020, the Court issued an order to show cause, requesting the parties brief two issues regarding improper joinder and discretionary dismissal of the action. *See generally* Dkt. # 34 ("*OSC*"). The Court received the parties' responses on May 8, 2020. *See* Dkts. # 39 ("*Defendants' Resp.*"); 40 ("*Plaintiff's Resp.*").

Also on April 20, the AAA confirmed that Postmates had failed to pay its share of the initial filing fees necessary to commence 10,256 of the cases filed on February 15, 2020, and administratively closed those cases. *See Postman Decl.* WP0024.

On May 22, 2020, 5,290 individual Cross-Petitioners filed a Cross-Petition to compel arbitration, and this motion to compel arbitration against Postmates. *See generally* Dkt. # 43 ("*Cross-Petition*"); *MCA*. Of those, 4,933 are Defendants in the action that filed demands for arbitration on February 15, 2020 ("February 2020 Cross-Petitioners"), and 357 are non-parties who filed arbitration demands on September 24, 2019 ("September 2019 Cross-Petitioners"). *See MCA* at 1 n.1; *Opp*. *MCA* at 1 n.1.

On July 1, 2020, Postmates filed the operative Second Amended Complaint ("SAC"). *See generally Second Amended Complaint*, Dkt. # 61 ("*SAC*"). Relevant to these motions are the following causes of action:

> Second Cause of Action: Declaratory Judgment: FAA preemption of SB 707. *SAC* ¶¶ 106–15.

> Third Cause of Action: Declaratory Judgment: SB 707 violates the United States and California Constitutions. *Id*. ¶¶ 116–22.

> Fifth Cause of Action: Injunctive relief: enjoining enforcement of SB 707. *Id*. ¶¶ 128–34.

The Court held a status conference on September 21, 2020, during which Postmates requested permission to file a motion for judgment on the pleadings and to consolidate the hearings on that motion and the motion to compel arbitration. *See generally* Dkt. # 76. The Court approved the request and set a hearing date for both motions on January 13, 2021, which has now been completed. The Court therefore turns to consideration of the motions.

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 20-2783 PSG (JEMx) | Date | January 19, 2021 |
|---|---|---|---|
| Title | Postmates Inc. v. 10,356 Individuals | | |

II.    Legal Standard

    A.    Motion for Judgment on the Pleadings

Federal Rule of Civil Procedure 12(c) provides that "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c).  A Rule 12(c) motion is "functionally identical" to a motion under Rule 12(b)(6) and "'the same standard of review' applies to motions brought under either rule." *Cafasso v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1054 n.4 (9th Cir. 2011) (quoting *Dworkin v. Hustler Magazine Inc.*, 867 F.2d 1188, 1192 (9th Cir. 1989)).  Thus, on a Rule 12(c) motion, all material allegations of the non-moving party must be accepted as true and construed in the light most favorable to that party.  *See Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1550 (9th Cir. 1989).  A Rule 12(c) motion is properly granted if "the moving party clearly establishes on the face of the pleadings that no material issue of fact remains to be resolved and that it is entitled to judgment as a matter of law."  *Id*.  Although detailed factual allegations are not required to survive a motion under Rule 12(b)(6) or Rule 12(c), a complaint that "offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  Rather, the complaint must allege sufficient facts to support a plausible claim to relief.  *See Iqbal*, 556 U.S. at 678.

    B.    Motion to Compel Arbitration

"The 'principal purpose' of the FAA [Federal Arbitration Act] is to 'ensur[e] that private arbitration agreements are enforced according to their terms.'"  *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 344 (2011) (quoting *Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ.*, 489 U.S. 468, 478 (1989)).  The FAA states that written arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2.

The FAA allows "[a] party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration [to] petition any United States district court . . . for an order directing that such arbitration proceed in the manner provided for in such agreement."  *Id.* § 4.  "Because the FAA mandates that 'district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed[,]' the FAA limits courts' involvement to 'determining (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue.'"  *Cox v. Ocean View*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 20-2783 PSG (JEMx) | Date | January 19, 2021 |
|---|---|---|---|
| Title | Postmates Inc. v. 10,356 Individuals | | |

*Hotel Corp.*, 533 F.3d 1114, 1119 (9th Cir. 2008) (quoting *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000)) (emphasis in original).  When deciding whether a valid arbitration agreement exists, courts generally apply "ordinary state-law principles that govern the formation of contracts." *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995).  Any doubts about the scope of arbitrable issues must be resolved in favor of arbitration. *See Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983).

If an arbitration agreement exists and covers the dispute at issue, § 4 of the FAA "requires courts to compel arbitration in accordance with the terms of the agreement." *Concepcion*, 563 U.S. at 344 (internal quotation marks omitted).

III.   Discussion

The Court first addresses Postmates' motion for judgment on the pleadings and then Cross-Petitioners' motion to compel arbitration.

A.   Postmates' Motion for Judgment on the Pleadings

Postmates requests that the Court enter judgment under Fed. R. Civ. P. 12(c) on its second, third, and fifth causes of action. *See MJP* 2:1–7.  These causes of action seek, respectively, (1) a declaratory judgment that SB 707 is preempted by the FAA, (2) a declaratory judgment that SB 707 violates the United States and California Constitutions' Contracts Clauses, and (3) injunctive relief enjoining enforcement of SB 707. *See id*. 2:7–12; *SAC* ¶¶ 16–22, 128–34.

Cross-Petitioners argue that (1) Postmates has not identified a sufficient basis for the Court to exercise jurisdiction under the Declaratory Judgment Act ("DJA"), *see Opp. MJP* 10:21–13:12; (2) the FAA does not preempt SB 707, *see id*. 13:13–24:23; and (3) SB 707 does not violate the Contracts Clauses of the United States or California Constitutions, *see id*. 24:24–25:19.  The Court addresses each argument in turn and then considers Postmates' request for injunctive relief.

i.   *The Court's Jurisdiction Under the DJA*

Cross-Petitioners argue that Postmates has not identified a sufficient basis for the Court to exercise jurisdiction under the DJA. *See id*. 10:21–13:12.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 20-2783 PSG (JEMx) | Date | January 19, 2021 |
|---|---|---|---|
| Title | Postmates Inc. v. 10,356 Individuals | | |

The federal DJA provides that "[i]n a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." *See* 28 U.S.C. § 2201. As indicated by the Act's use of the word "may," it is within the discretion of the district court whether to entertain a claim for declaratory relief. *See id.* Such declaratory relief is appropriate "(1) when the judgment will serve a useful purpose in clarifying and settling the legal relations in issue, and (2) when it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding." *See Guerra v. Sutton,* 783 F.2d 1371, 1376 (9th Cir. 1986).

Cross-Petitioners argue there is no "actual controversy" as to the 5,423 Defendants in this action who have not cross-moved to compel arbitration. *See Opp. MJP* 12:8–10. The Court agrees. These Defendants do not have pending arbitration demands against Postmates, and Postmates does not allege that such Defendants even *plan* to enforce SB 707. Therefore, the relief Postmates seeks is purely speculative, and Postmates has failed to "show a substantial controversy between these parties 'of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.'" *Merit Healthcare Int'l, Inc. v. Merit Med. Sys., Inc.*, 721 F. App'x 628, 629 (9th Cir. 2018) (citing *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007)).

Accordingly, at this stage, the Court declines to exercise its discretion under the DJA as to the 5,423 Defendants who have not cross-moved to compel arbitration, and, thus, the Court **DENIES** the motion for judgment on the pleadings as to these Defendants.

As for the remaining Defendants, Cross-Petitioners admit there is a "concrete and actual controversy" between Postmates and the 4,933 Defendants who have sought relief under SB 707 through the motion to compel, but they contend the motion to compel "eliminates any reason for this Court to grant relief under the DJA." *See id*. 13:5–12. The Court disagrees. Because there is a "concrete and actual controversy," declaratory judgment is appropriate—such an order "will serve a useful purpose in clarifying and settling the legal relations in issue, and . . . will terminate and afford [the parties] relief from the uncertainty, insecurity, and controversy giving rise to the proceedings." *Eureka Fed. Sav. & Loan Ass'n v. Am. Cas. Co.*, 873 F.2d 229, 231 (9th Cir. 1989).

Accordingly, an "actual controversy" exists under the DJA as to Postmates and the 4,933 Defendants who have moved to compel arbitration. The Court now discusses whether to issue the requested declaratory judgments.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 20-2783 PSG (JEMx) | Date | January 19, 2021 |
|---|---|---|---|
| Title | Postmates Inc. v. 10,356 Individuals | | |

      ii.     *Whether the FAA Preempts SB 707*

          a.     *SB 707*

SB 707, effective January 1, 2020, states in relevant part:

(a) In an employment or consumer arbitration that requires, either expressly or through application of state or federal law or the rules of the arbitration administrator, the drafting party to pay certain fees and costs before the arbitration can proceed, if the fees or costs to initiate an arbitration proceeding are not paid within 30 days after the due date, the drafting party is in material breach of the arbitration agreement, is in default of the arbitration, and waives its right to compel arbitration under Section 1281.2.

(b) If the drafting party materially breaches the arbitration agreement and is in default under subdivision (a), the employee or consumer may do either of the following:

      (1) Withdraw the claim from arbitration and proceed in a court of appropriate jurisdiction.

      (2) Compel arbitration in which the drafting party shall pay reasonable attorney's fees and costs related to the arbitration.

Cal. Civ. Proc. Code § 1281.97(a)–(b).  In addition, "[i]f the employee or consumer proceeds with an action in a court of appropriate jurisdiction, the court shall impose sanctions on the drafting party." *Id.* § 1281.97(d).  Specifically, "[t]he court shall impose a monetary sanction against a drafting party," and "may order" additional sanctions, including evidentiary sanctions, default on the underlying claims, and contempt of court. *Id.* § 1281.99.

          b.     *Preemption*

      Section 2 of the FAA provides that written arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2.  The FAA "contains no express pre-emptive provision, nor does it reflect a congressional intent to occupy the entire field of arbitration." *Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ.*, 489 U.S. 468, 477 (1989). However, "state law may nonetheless be pre-empted to the extent that it actually conflicts with

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 20-2783 PSG (JEMx) | Date | January 19, 2021 |
|---|---|---|---|
| Title | Postmates Inc. v. 10,356 Individuals | | |

federal law—that is, to the extent that it 'stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.'" *Id.* (internal citation omitted).

### 1. The Proper Reading of § 2

The parties disagree as to the proper reading of § 2 of the FAA. Postmates argues that, under § 2, "states may regulate arbitration agreements only to the extent state laws apply to 'any contract.'" *Reply MJP* 3:6–9. There are two ways to determine whether a law is preempted because it regulates arbitration agreements differently than other contracts—the "disfavored treatment" theory and the "obstacles" theory. *See id.* 3:9–13; *see generally MJP*.

Under the disfavored treatment theory, a state law may be preempted if it "discriminat[es] on its face against arbitration—for example, a 'law prohibit[ing] outright the arbitration of a particular type of claim.'" *Kindred Nursing Ctrs. Ltd. P'ship v. Clark*, 137 S. Ct. 1421, 1426 (2017). A state law is also displaced if it "covertly accomplishes the same objective by disfavoring contracts that (oh so coincidentally) have the defining features of arbitration agreements." *Id*.

Under the obstacles theory, a state law may be preempted if it "stand[s] as an obstacle to the accomplishment of the FAA's objectives" and "interferes with fundamental attributes of arbitration and thus creates a scheme inconsistent with the FAA." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 343–44 (2011); *Blair v. Rent-A-Ctr., Inc.*, 928 F.3d 819, 825 (9th Cir. 2019). In other words, a state law may be preempted if it would "undermine the goals and policies of the FAA." *Volt*, 489 U.S. at 477.

Cross-Petitioners contend that the Court need not reach these theories because SB 707 respects Postmates' arbitration agreement as "valid, irrevocable, and enforceable" and therefore does not conflict with § 2. *See Opp. MJP* 15:2–6. According to Cross-Petitioners, "[a] state law that *does not* render an arbitration clause invalid, revocable, or unenforceable, does not conflict with the command of Section 2. A state law that *does* render an arbitration clause invalid, revocable, or unenforceable must fit within the saving clause to survive." *See id.* 15:17–20.

The Court agrees that this is the better reading of § 2. Section 2 says that courts can render arbitration agreements invalid on grounds that include "generally applicable contract defenses, such as fraud, duress, or unconscionability" but does not include defenses that "apply only to arbitration or that derive their meaning from the fact that an agreement to arbitrate is at issue." *Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1619 (2018); *Concepcion*, 563 U.S. at 343;

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 20-2783 PSG (JEMx) | Date | January 19, 2021 |
|---|---|---|---|
| Title | Postmates Inc. v. 10,356 Individuals | | |

*Kindred*, 137 S. Ct. at 1426.   And if a state law does not require a court to render arbitration agreement invalid, there is no need to apply the saving clause tests because there is no conflict.

The cases Postmates cites involve state laws that in fact rendered certain arbitration agreements invalid.   For example, in *Kindred*, the Supreme Court ruled that the FAA preempted a Kentucky rule that invalidated arbitration provisions signed through power of attorney.  *See Kindred*, 137 S. Ct. at 1424–25.  And in *Concepcion*, the Court invalidated a California law that invalidated arbitration provisions with class waivers.  *See Concepcion*, 563 U.S. at 343.  These laws explicitly invalidated certain types of arbitration agreements and were therefore subject to the tests under the saving clause to determine their validity.  The initial inquiry under § 2 was simple because the laws, on their face, invalidated certain arbitration agreements.

Here, rather than render arbitration agreements invalid or unenforceable, SB 707 *encourages* arbitration by changing the remedies available to non-drafting parties when drafting parties delay the process and refuse to pay required fees.  Cal. Civ. Proc. Code § 1281.97(a)–(d). Therefore, SB 707 is pro-arbitration because it makes arbitration more effective and efficient. Instead of nullifying arbitration agreements, the law ensures a speedy resolution under their terms by preventing parties such as Postmates from holding hostage employees' or consumers' validly arbitrable claims.

Postmates insists that SB 707 renders arbitration agreements unenforceable "[i]f the drafting party fails to pay fees assessed against it within 30 days of the due date." *See Reply MJP* 3:14–17.  This argument is unpersuasive for three reasons.

First, SB 707 does not automatically render arbitration agreements unenforceable—it simply gives non-drafting parties the option to choose to litigate their claim in a court of appropriate jurisdiction or to compel arbitration.  Cal. Civ. Proc. Code § 1281.97(b).

Second, as Postmates recognizes, this choice is only available if the drafting party drags its feet by refusing to pay fees within 30 days.  Cal. Civ. Proc. Code § 1281.97(a).  Thus, rather than render arbitration agreements invalid, SB 707 encourages their prompt enforcement by expanding the remedies available to parties seeking to enforce their rights through arbitration in an efficient manner.

Third, there is a difference between laws that invalidate arbitration agreements and laws that codify remedies available to assist arbitration.  For example, numerous states provide for specific performance of arbitration agreements, which could be said to "single out" arbitration

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 20-2783 PSG (JEMx) | Date | January 19, 2021 |
|---|---|---|---|
| Title | Postmates Inc. v. 10,356 Individuals | | |

clauses, since damages are the default remedy for breach of contract. *See, e.g.*, Cal. Civ. Proc. Code § 1281.2. However, no court has struck down these laws as preempted by § 2 because they encourage arbitration. The same is true of the California law providing for a stay of litigation pending arbitration, which has no analog for other contractual breaches. Cal. Civ. Proc. Code § 1281.4. Clearly, the FAA does not preempt state laws that make arbitration *more effective* by providing targeted remedies *in aid* of arbitration. These laws are pro-arbitration, and federal preemption doctrine routinely allows additional state remedies for violations of arbitration agreements. *See Borden, Inc. v. Meiji Milk Prods. Co.*, 919 F.2d 822, 826 (2d Cir. 1990) ("[F]ar from trying to bypass arbitration, Borden sought to have the court compel arbitration. New York law specifically provides for provisional remedies in connection with an arbitrable controversy, and the equitable powers of federal courts include the authority to grant it.").

Accordingly, SB 707 is not preempted by the FAA because it does not invalidate arbitration agreements and therefore there is no conflict with § 2. However, even if the Court were to agree with Postmates' reading of § 2 and apply the disfavored treatment and obstacles tests, the Court would still hold that SB 707 is not preempted. The Court briefly discusses these theories below.

### 2.        *The Disfavored Treatment Theory*

A state law may be preempted if it "discriminat[es] on its face against arbitration—for example, a 'law prohibit[ing] outright the arbitration of a particular type of claim.'" *Kindred Nursing*, 137 S. Ct. at 1426. Postmates asserts various arguments in support of its position that SB 707 disfavors arbitration, none of which are convincing. *See MJP* 11:17–14:26.

For example, Postmates insists that SB 707 is "lopsided" because it punishes "only the drafters of agreements." *See id*. 11:26. But Postmates fails to explain how this indicates that SB 707 disfavors arbitration agreements. Furthermore, as Cross-Petitioners explain, couriers cannot "abuse" arbitration agreements the way drafters of agreements, like Postmates, can. *See Opp. MJP* 18:2–3. If the employee initiates a demand, AAA only invoices the employer after the employee has paid applicable filing fees. *See Answer*, Ex. A at 1; *see also* AAA Employment Workplace Fee Schedule at 1. If the employer initiates arbitration against the employee, the employer pays all the fees. *See id*. at 1, 4. "Accordingly, there is simply no scenario in which a courier could delay an arbitration for a tactical advantage by refusing to pay fees." *See Opp. MJP* 18:10–11. Therefore, to the extent SB 707 is "lopsided," it is only because the power dynamic surrounding arbitration agreements is lopsided—employers and corporations can delay

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 20-2783 PSG (JEMx) | Date | January 19, 2021 |
|---|---|---|---|
| Title | Postmates Inc. v. 10,356 Individuals | | |

initiating arbitration by refusing to pay, while employees and consumers cannot. SB 707 simply addresses this issue and encourages speedy resolution through arbitration.

Postmates also exaggerates SB 707's reach. For example, Postmates argues that (1) "if the non-drafting party breaches a fee payment (or any other) obligation" then "the drafting party must *still* pay the fees or else face sanctions," s*ee MJP* 12:18–21; and (2) SB 707 "allow[s] [an] individual to enforce [a] non-existent agreement and obtain penalties based on Postmates' non-payment of fees," *see id*. 14:15–17.

These claims misconstrue the reach of SB 707. The remedies under SB 707 are only triggered where (1) an arbitration agreement "*requires* . . . the drafting party to pay certain fees and costs" and (2) the drafting party is more than 30 days overdue. Cal. Civ. Proc. Code § 1281.97(a) (emphasis added). Thus, couriers (1) who do not have arbitration agreements with Postmates, or (2) who materially breach an obligation under the contract such that Postmates is not required to pay fees, cannot invoke SB 707's remedies.

Finally, Postmates contends that SB 707 "overrides the parties' agreement" on "material breach" and "nonpayment of arbitration fees." *See MJP* 12:3–6. Postmates fails to indicate which specific language in the arbitration agreement SB 707 overrides, likely because the agreement does not actually address judicial remedies for nonpayment of fees. But even if it did, the Ninth Circuit has already held that, under the FAA, "failure to pay required costs of arbitration [i]s a material breach" that allows the counterparty to elect to proceed in court or compel specific performance. *See Sink v. Aden Enters., Inc.*, 352 F.3d 1197, 1201 (9th Cir. 2003); *Dekker v. Vivint Solar, Inc.*, No. C 19-07918 WHA, 2020 WL 4732194, at *3 (N.D. Cal. Aug. 14, 2020) ("[O]ur court of appeals has found the principle embodied in § 1281.97 is consistent with the FAA.").

Accordingly, SB 707 is valid under the disfavored treatment theory.

### 3.    *The Obstacles Theory*

Postmates' arguments under the obstacles test are even more unavailing. Under the obstacles test, a state law may be preempted if it "stand[s] as an obstacle to the accomplishment of the FAA's objectives" and "interferes with fundamental attributes of arbitration and thus creates a scheme inconsistent with the FAA." *Concepcion*, 563 U.S. at 343–44; *Blair*, 928 F.3d at 825. In other words, a state law may be preempted if it would "undermine the goals and policies of the FAA." *Volt*, 489 U.S. at 477. The "two goals of the Arbitration Act" are "[1]

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 20-2783 PSG (JEMx) | Date | January 19, 2021 |
|---|---|---|---|
| Title | Postmates Inc. v. 10,356 Individuals | | |

enforcement of private agreements and [2] encouragement of efficient and speedy dispute resolution." *Concepcion*, 563 U.S. at 345.

Postmates insists that SB 707 discourages arbitration by "showing outright hostility toward arbitration and seeking to deter the use of arbitration agreements altogether." *See MJP* 15:12–14. According to Postmates, the Court should adhere to the reasoning in *Chamber of Commerce of United States v. Becerra*, 438 F. Supp. 1078 (E.D. Cal. 2020), in which the district court ruled that Assembly Bill 51 ("AB 51"), "SB 707's sister bill," was preempted by the FAA. *See MJP* 15:22–16:4. This argument lacks merit.

AB 51 clearly posed an obstacle to arbitration because it imposed *criminal penalties* on employers who required employees to arbitrate claims brought under the California Labor Code. *See Chamber of Commerce*, 438 F. Supp. at 1088, 1099–100. SB 707, on the other hand, *facilitates* arbitration by "cracking down on bad actors who tactically delay arbitrations by refusing to pay the fees necessary to move forward." *See Opp. MJP* 17:18–21. The dichotomy between AB 51, which punished those who require arbitration, and SB 707, which punishes those who stand in the way of arbitration, is obvious. Thus, because SB 707 *removes* obstacles to the arbitration process, the Court rejects Postmates' comparison of SB 707 to AB 51.

Accordingly, the Court **DENIES** Postmates' motion for judgment on the pleadings on its second cause of action, which seeks a declaratory judgment that the FAA preempts SB 707.

iii.    *Whether SB 707 Violates the Contracts Clauses of the United States and California Constitutions*

Both the United States Constitution and the California Constitution prohibit the passage of laws that impair the obligation of contracts. *See* U.S. Const. art. I, § 10; Cal. Const., art. I, § 9. To determine whether a law violates the federal Contracts Clause, courts apply a two-step inquiry. *See Sveen v. Melin,* 138 S. Ct. 1815, 1821 (2018). "The threshold issue is whether the state law has operated as a substantial impairment of a contractual relationship." *Id*. at 1821–22. "In answering that question, the Court has considered the extent to which the law undermines the contractual bargain, interferes with a party's reasonable expectations, and prevents the party from safeguarding or reinstating his rights." *Id*. at 1822.

"If such factors show a substantial impairment, the inquiry turns to the means and ends of the legislation." *Id*. "In particular, the Court has asked whether the state law is drawn in an 'appropriate' and 'reasonable' way to advance 'a significant and legitimate public purpose.'" *Id*.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 20-2783 PSG (JEMx) | Date | January 19, 2021 |
|---|---|---|---|
| Title | Postmates Inc. v. 10,356 Individuals | | |

(citing *Energy Reserves Grp., Inc. v. Kansas Power & Light Co.,* 459 U.S. 400, 411–12 (1983)). The same analysis applies under the Contracts Clause of the California constitution. *See Barrett v. Dawson*, 61 Cal. App. 4th 1048, 1054–55 (1998).

Here, the inquiry stops at the first step because SB 707 does not substantially impair contractual relationships. As explained above, SB 707 does not "undermine the contractual bargain" or "interfere with a party's reasonable expectations" because it merely imposes additional remedies that foster compliance with arbitration agreements. Statutory remedies that "support, rather than impair, the contractual scheme" do not violate the Contracts Clause. *See Sveen*, 138 S. Ct. at 1822.

Accordingly, the Court **DENIES** Postmates' motion for judgment on the pleadings on its third cause of action, which seeks a declaratory judgment that the SB 707 violates the Contracts Clauses of the United States and California Constitutions.

> *iv.*    *Injunctive Relief*

In its fifth cause of action, Postmates seeks an injunction preventing the enforcement of SB 707. *SAC* ¶¶ 128–34. Postmates argues that, absent an injunction, it will suffer irreparable harm because SB 707 is preempted and unconstitutional. *See MJP* 24:5–8. Because the Court finds that SB 707 is not preempted by the FAA and does not violate the California or United States Constitution, the Court **DENIES** Postmates' motion for judgment on the pleadings on its fifth cause of action, which seeks injunctive relief enjoining enforcement of SB 707.

The Court now turns to Cross-Petitioners' motion to compel arbitration.

> B.    <u>Cross-Petitioners' Motion to Compel Arbitration</u>

Cross-Petitioners move (1) to compel Postmates to arbitration and, (2) for the February 2020 Cross-Petitioners only, to compel Postmates to pay costs and reasonable attorneys' fees associated with the arbitration pursuant to SB 707. *See generally MCA.*

The Court turns first to joinder issues and then to whether the Court should compel Postmates to arbitrate with Cross-Petitioners.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 20-2783 PSG (JEMx) | Date | January 19, 2021 |
|---|---|---|---|
| Title | Postmates Inc. v. 10,356 Individuals | | |

      *i.*    *Joinder as To September 2019 Cross-Petitioners*

Postmates argues that the Court should deny the motion as to the September 2019 Cross-Petitioners, who are not named as Defendants in the operative complaint, due to improper joinder. *See Opp. MCA* 9–10.

Permissive joinder of non-party defendants is proper only where (1) "any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences," and (2) a "question of law or fact common to all defendants will arise in the action." Fed. R. Civ. P. 20(a)(2). "A defendant may not seek permissive joinder under Rule 20(a) unless he has filed a crossclaim or counterclaim." *Moss v. Spartanburg Cty. Sch. Dist. No. 7*, No. C.A.7:09-1586-HMH, 2010 WL 2136642, at *2 (D.S.C. May 25, 2010); *Nixon v. Guzzetta*, 272 F.R.D. 260, 262 (D.D.C. 2011) ("Rule 20(a)(2) provides the framework for plaintiffs to join defendants; it does not provide a mechanism for a defendant to join parties, unless the defendant is asserting a crossclaim or counterclaim."); *see also* 7 Wright & Miller, Federal Practice and Procedure, § 1657 (3d ed. 2002).

Postmates argues that the Cross-Petition filed by Cross-Petitioners is not equivalent to a counterclaim or crossclaim and does not suffice to permit joinder. *See Opp. MCA* 10:1–7. Postmates also argues that any claims for relief the two groups have against Postmates do not "aris[e] out of the same transaction, occurrence or series of transactions or occurrences," in part because the September 2019 Cross-Petitioners cannot seek relief under SB 707, and because they had nothing to do with the events in February 2020 complained about in Postmates' complaint. *See id.* 10:8–23.

Cross-Petitioners respond that a petition to compel arbitration is a case-initiating document that asserts a claim for injunctive relief under 9 U.S.C. § 4, equivalent to a crossclaim or counterclaim. *See Reply MCA* at 12; *Kasap v. Folger Nolan Fleming & Douglas, Inc.*, 166 F.3d 1243, 1245 (D.C. Cir. 1999) ("The Federal Arbitration Act creates several federal causes of action relating to arbitration agreements (to be initiated by 'petition' or 'application'), including an action under § 4 to compel arbitration."); *KKE Architects, Inc. v. Diamond Ridge Dev., LLC*, No. CV0706866MMMFMO, 2008 WL 11422047, at *9 (C.D. Cal. Apr. 21, 2008) ("[T]he affirmative claim that initiated the action was a petition to compel arbitration."). They argue that all of the Cross-Petitioners could be joined if they filed this action originally. *See Reply MCA* at 12.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 20-2783 PSG (JEMx) | Date | January 19, 2021 |
| --- | --- | --- | --- |
| Title | Postmates Inc. v. 10,356 Individuals | | |

Rule 13 of the Federal Rules of Civil Procedure states that a "pleading may state as a counterclaim against an opposing party any claim that is not compulsory." Fed. R. Civ. P. 13(b). "A counterclaim need not diminish or defeat the recovery sought by the opposing party. It may request relief that exceeds in amount or differs in kind from the relief sought by the opposing party." Fed. R. Civ. P. 13(c). A person may be added as a party to a counterclaim or crossclaim pursuant to Rule 20, *see* Fed. R. Civ. P. 13(h); *see also* 7 Wright & Miller, Federal Practice and Procedure, § 1657 (3d ed. 2002) ("[A]ny party who asserts a counterclaim or crossclaim under Federal Rule of Civil Procedure 13 may join additional parties under Rule 20. In this situation, the counterclaiming or crossclaiming defendants are considered to be plaintiffs and the parties they seek to join will be viewed as defendants."). Courts tend to construe joinder broadly in order to promote judicial efficiency. *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 724 (1966).

The parties have not pointed the Court to any case with a similar procedural posture to this case, and the Court has not identified any. However, the Court finds that by filing a § 4 petition to compel arbitration against Postmates, 4,933 Defendants have effectively filed a crossclaim asserting a claim for relief, and have added as parties 357 individuals who also filed arbitration demands against Postmates in September 2019 and seek to compel Postmates to arbitrate. Cross-Petitioners contend that they seek relief severally (an order compelling Postmates to arbitrate with each) that arises out of the same "series of transactions or occurrences" because Postmates has refused to arbitrate with each, and the motion presents common questions of law and fact. *See Defendants' Resp.* 4–5. The Court is satisfied that this satisfies Rule 20.

Ultimately, the Court concludes that joinder is proper as to the September 2019 Cross-Petitioners.

### ii.    *Whether the Court Should Compel Postmates to Arbitrate*

At the hearing, Postmates conceded that the Court should grant the motion to compel arbitration as to the Cross-Petitioners that have valid arbitration agreements with Postmates. *See Adams v. Postmates, Inc.*, 823 F. App'x 535 (9th Cir. 2020).

Nonetheless, Postmates contends that 233 of the Cross-Petitioners that now seek arbitration have no "valid arbitration agreement" with Postmates, including 208 who never accepted the Fleet Agreement and an additional 25 who accepted the Fleet Agreement but affirmatively opted out of the Arbitration Provision. *See Opp. MCA* 8:10–9:8; *Declaration of*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 20-2783 PSG (JEMx) | Date | January 19, 2021 |
|---|---|---|---|
| Title | Postmates Inc. v. 10,356 Individuals | | |

*Jerica Sunga*, Dkt. # 58 ("*Sunga Decl.*"), ¶¶ 4–6, Exs. A (list of 206 Cross-Petitioners who never signed up to use the Postmates platform), B (list of 2 Cross-Petitioners who started to sign up but did not accept the Fleet Agreement), C (list of 25 Cross-Petitioners who signed up to use the Postmates platform and accepted the Fleet Agreement but opted out of the Mutual Arbitration Provision). Cross-Petitioners respond that any factual dispute as to these individuals can be resolved through the meet-and-confer process. *See Reply MCA* 3:9–22.

It is the burden of the party who is moving to compel arbitration under the FAA to demonstrate a valid agreement to arbitrate exists. *See Ashbey v. Archstone Prop. Mgmt., Inc.*, 785 F.3d 1320, 1323 (9th Cir. 2015). Given the factual disputes as to the existence of a valid agreement to arbitrate with respect to 233 Cross-Petitioners, the Court concludes that it cannot compel arbitration as to those 233 individuals at this time. The Court agrees with Postmates that the motion to compel must be denied as to those individuals.

At the hearing, Postmates indicated for the first time that around 400 Cross-Petitioners, represented by different counsel, had already initiated separate arbitration proceedings regarding the underlying claims. Keller Lenkner responded that they would not seek to compel Postmates to arbitrate with individuals who are already in arbitration proceedings. As such, the Court rules as follows:

The Court **DENIES** the motion to compel as to the 233 Cross-Petitioners based on factual disputes regarding the existence of an agreement to arbitrate between the parties.

The Court **GRANTS** the motion to compel as to the remaining Cross-Petitioners.

      *iii.*    *Remedies*

Cross-Petitioners seek two remedies: (1) an order that Postmates comply with the AAA's determinations and (2) remedies under SB 707.

      *a.*    *Requested Order*

The parties appear to dispute the exact order that Cross-Petitioners are requesting. Cross-Petitioners agree with Postmates that they do not request that the Court order Postmates to pay certain filing fees or future invoices, and both cite to the *Adams I* court's decision that the payment of arbitration fees is a "procedural condition precedent to be decided by the arbitrator." *See MCA.* 14:12–17; *Opp. MCA* 19:17–18:1; *Reply MCA* 8:1–20 ("Petitioners have not argued

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 20-2783 PSG (JEMx) | Date | January 19, 2021 |
|---|---|---|---|
| Title | Postmates Inc. v. 10,356 Individuals | | |

that the FAA requires the Court to order that Postmates pay a specific amount of fees."); *Adams I*, 414 F. Supp. 3d at 1255; *see also Lifescan Inc. v. Premier Diabetic Servs., Inc.*, 363 F.3d 1010, 1011–13 (deferring to determination of the AAA to require fees). Accordingly, the Court declines to direct Postmates to tender payment of certain fees. Postmates is required to arbitrate with Cross-Petitioners pursuant to the Fleet Agreement under § 4 of the FAA, and Cross-Petitioners are entitled to an "order directing that such arbitration proceed in the manner provided for in such agreement." *See Reply MCA* 8:4–5.

> *b.*    *SB 707 Remedies*

Cross-Petitioners also request that for the February 2020 Cross-Petitioners the Court award substantive remedies under SB 707. *See MCA.* 23:10–25:12. Specifically, Cross-Petitioners request that the Court "[c]ompel arbitration in which the drafting party shall pay reasonable attorney's fees and costs related to the arbitration." *Id.* 25:8–10; Cal. Civ. Proc. Code § 1281.97(b)(2). Postmates opposes and makes three arguments: (1) SB 707 is preempted by the Federal Arbitration Act, (2) SB 707 violates the Federal Contracts Clause, and (3) SB 707 violates the State Contracts Clause. *See Opp. MCA* 20–25. Because the Court concludes that SB 707 is not preempted by the FAA and it does not violate the United States or California Contracts Clauses, *see* section III *supra*, the Court **GRANTS** Cross-Petitioners' request for reasonable attorneys' fees and costs related to the arbitration proceedings of the February 2020 Cross-Petitioners that are compelled to arbitrate pursuant to this order.

IV.    Conclusion

For the foregoing reasons, the Court rules as follows:

- The Court **DENIES** Postmates' motion for judgment on the pleadings on its second cause of action, which seeks declaratory judgment that SB 707 is preempted by the FAA.

- The Court **DENIES** Postmates' motion for judgment on the pleadings on its third cause of action, which seeks a declaratory judgment that the SB 707 violates the Contracts Clauses of the United States and California Constitutions.

- The Court **DENIES** Postmates' motion for judgment on the pleadings as to its fifth cause of action, seeking injunctive relief enjoining enforcement of SB 707.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 20-2783 PSG (JEMx) | Date | January 19, 2021 |
|---|---|---|---|
| Title | Postmates Inc. v. 10,356 Individuals | | |

- The Court **DENIES** the motion to compel as to the 233 Cross-Petitioners based on factual disputes regarding the existence of an agreement to arbitrate between the parties.

- The Court **GRANTS** the motion to compel as to the remaining Cross-Petitioners and **ORDERS** Postmates to commence arbitration with those Cross-Petitioners pursuant to 9 U.S.C. § 4.

- The Court **GRANTS** Cross-Petitioners' request for attorneys' fees and costs and **ORDERS** Postmates to pay the attorneys' fees and costs related to the arbitration proceedings of the February 2020 Cross-Petitioners who are compelled to arbitrate pursuant to this order.

**IT IS SO ORDERED**.